**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| JACKSONVILLE POLICE AND FIRE PENSION FUND, on behalf of itself and all others similarly situated, | : : : : | 08 Civ. 4772 (RJS) |
| Plaintiff, | : : | |
| v. | : : | |
| | : | CLASS ACTION |
| AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO and ROBERT LEWIS, | : : : : : | |
| Defendants. | : : | |

| | | |
|---|---|---|
| JAMES CONNOLLY, | : : | 08 Civ. 5072 (RJS) |
| Plaintiff, | : : : | |
| v. | : : : | |
| AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO, ROBERT LEWIS, and DAVID L. HERZOG, | : : : : : : | |
| Defendants. | : : : | |

**MEMORANDUM OF LAW IN SUPPORT OF THE**
**MOTION OF STATE TREASURER OF THE STATE OF**
**MICHIGAN, AS CUSTODIAN OF THE MICHIGAN PUBLIC**
**SCHOOL EMPLOYEES RETIREMENT SYSTEM, THE STATE**
**EMPLOYEES' RETIREMENT SYSTEM, THE MICHIGAN STATE**
**POLICE RETIREMENT SYSTEM, AND THE MICHIGAN JUDGES RETIREMENT**
**SYSTEM FOR CONSOLIDATION OF THE RELATED ACTIONS, APPOINTMENT AS**
**LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF CO-LEAD COUNSEL**

17686v1

| | | |
|---|---|---|
| MAINE PUBLIC EMPLOYEES RETIREMENT SYSTEM, on behalf of itself and all others similarly situated, | : : : : | 08 Civ. 5464 (RJS) |
| Plaintiff, | : : | |
| v. | : : | CLASS ACTION |
| AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO and ROBERT LEWIS, | : : : : : | |
| Defendants. | : : : | |
| ONTARIO TEACHERS' PENSION PLAN BOARD, on behalf of itself and others similarly situated, | : : : : | 08 Civ. 5560 (RJS) |
| Plaintiff, | : : | |
| v. | : : | CLASS ACTION |
| AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO and ROBERT LEWIS, | : : : : : : | |
| Defendants. | : : | |

2

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 2

ARGUMENT ............................................................................................................................ 6

I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED ...................................... 6

      A.    The Court Should Resolve The Consolidation Issue As a
            Prerequisite to The Determination of Lead Plaintiff .................................. 6

II.   THE COURT SHOULD APPOINT SMRS AS LEAD PLAINTIFF ............................... 7

      A.    The Procedure Required By The PSLRA .................................................... 7

            1.    SMRS Is Willing To Serve As Class Representative ...................... 8

            2.    SMRS Is The Most Adequate Lead Plaintiff .................................. 9

                  (a)    SMRS Is An Institutional Investor With The
                         Largest Financial Interest In The Relief Sought By
                         The Class ............................................................................ 9

                  (b)    SMRS Meets The Requirements Of F.R.C.P. Rule
                         23 ...................................................................................... 12

III.  THE COURT SHOULD APPROVE SMRS's CHOICE OF COUNSEL ........................ 14

CONCLUSION ......................................................................................................................... 17

17686v1

# TABLE OF AUTHORITIES

## CASES

*Bowman v. Legato Sys.*,
    195 F.R.D. 655 (N.D. Cal. 2000) .................................................................................10

*Drexel Burnham Lambert Group, Inc.*,
    960 F.2d 285 (2d Cir. 1992) .......................................................................................13

*General Tel. Co. v. Falcon*,
    457 U.S. 147 (1982) ...................................................................................................13

*Gluck v. CellStar Corp.*,
    976 F. Supp. 542 (N.D. Tex. 1997) ...........................................................................10

*Greebel v. FTP Software, Inc.*,
    939 F. Supp. 57 (D. Mass. 1996) ...............................................................................10

*In re Baan Co. Sec. Litig.*,
    186 F.R.D. 214 (D.D.C. 1999) ..................................................................................10

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) .......................................................................................10

*In re CIGNA Corp. Sec. Litig.*,
    459 F. Supp. 2d 338 (E.D. Pa. 2006) ……………………………………………...12

*In re Donnkenny Inc. Sec. Litig.*,
    171 F.R.D. 156 (S.D.N.Y. 1997) ..............................................................................14

*In re NASDAQ Market-Makers Antitrust Litig.*,
    172 F.R.D. 119 (S.D.N.Y. 1997) ..............................................................................13

*In re Network Associates Inc., Sec. Litig.*,
    76 F. Supp. 2d 1017 (N.D. Cal. 1999) ......................................................................10

*In re Oxford Health Plans, Inc., Sec. Litig.*,
    182 F.R.D. 42 (S.D.N.Y. 1998) ................................................................................12

*In re Razorfish, Inc. Sec. Litig.*,
    143 F. Supp. 2d 304 (S.D.N.Y. 2001) ...................................................................2, 11

ii

*Johnson v. Celotex Corp.*,
    899 F.2d 1281 (2d Cir. 1990)......................................................................7

*Mitchell v. Complete Mgmt., Inc.*,
    No. 99-CV-1454 (DAB), 1999 WL 728678
    (S.D.N.Y. Sept. 17, 1999).........................................................................6

*Primavera Familienstiftung v. Askin*,
    173 F.R.D. 115 (S.D.N.Y. 1997)................................................................7

*Ravens v. Iftikar*,
    174 F.R.D. 651 (N.D. Cal. 1997)..............................................................10

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)....................................................................12

*Schulman v. Lumenis, Ltd.*,
    No. 02 Civ. 1989 (DAB), 2003 WL 21415287
    (S.D.N.Y. June 18, 2003)....................................................................10, 12

*Smith v. Suprema Specialties, Inc.*,
    206 F. Supp. 2d 627 (D.N.J. 2002) ...........................................................2

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
    216 F.R.D. 248 (S.D.N.Y. 2003) .............................................................12

*Weltz v. Lee*,
    199 F.R.D. 129 (S.D.N.Y. 2001) ............................................................12

## STATUTES & OTHER AUTHORITIES

Fed. R. Civ. P. 42(a) ..................................................................................6

15 U.S.C. §§ 78u-4(a)(1) ...........................................................................7

15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II)...........................................................8, 9

15 U.S.C. § 78u-4(a)(3)(B) ......................................................................1, 7

15 U.S.C. § 78u-4(a)(3)(B)(i) .....................................................................9

15 U.S.C. § 78u-4(a)(3)(B)(ii) ..................................................................6, 7

iii

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ...................................................................................8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa) ...........................................................................9

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ...............................................................................8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) .......................................................................14

H.R. Conf. Rep. No. 104-369 (1995), reprinted in 1995 U.S.C.C.A.N. 730 ....................10

S. Rep. No. 104-98, at 11 (1995), reprinted in 1995 U.S.C.C.A.N. 679 ..........................11

*Elliot J. Weiss & John S. Beckerman, Let The Money Do The Monitoring: How*
    *Institutional Investors Can Reduce Agency Costs In Securities Class Actions,*
    104 Yale L.J. 2053 (1995) .......................................................................................11

## PRELIMINARY STATEMENT

Presently pending before the Court are four securities class action lawsuits (the "Actions") brought on behalf of all persons or entities (the "Class") who purchased or otherwise acquired the securities of American International Group, Inc. ("AIG" or the "Company") between November 10, 2006 and June 6, 2008 (the "Class Period"), inclusive. Plaintiffs in the Actions allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated under Section 10(b), against Defendants AIG, Martin Sullivan, Steven Bensinger, Joseph Cassano, Robert Lewis, and David Herzog.

The State Treasurer of the State of Michigan, as custodian of the Michigan Public School Employees Retirement System, the State Employees' Retirement System, the Michigan State Police Retirement System, and the Michigan Judges Retirement System ("State of Michigan Retirement Systems" or "SMRS") lost $109,539,775 under the last-in-first-out (LIFO) accounting method and $141,870,327 under the first-in-first-out (FIFO) accounting method as a result of Defendants' alleged fraud in connection with its purchases of AIG common stock during the Class Period. SMRS respectfully submits this memorandum of law in support of its motion: (a) to consolidate the above-captioned actions; (b) for its appointment as lead plaintiff, pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B); and (c) for approval of its selection of Barrack Rodos & Bacine ("Barrack Rodos") and Bernstein Liebhard & Lifshitz, LLP ("Bernstein Liebhard") as co-lead counsel.

SMRS believes that it has the largest financial interest in the outcome of the case. As such, SMRS meets the requirements of the PSLRA for appointment as lead plaintiff. Moreover, SMRS satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in that its claims are typical of the claims of the Class, and it will fairly and adequately represent the interests of the Class.

SMRS is precisely the type of institutional investor envisioned by Congress to serve as lead plaintiff when it enacted the PSLRA. The PSLRA provides for the Court to appoint as lead plaintiff the movant that has both the largest financial interest in the litigation and has made a *prima facie* showing that it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. *See In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 307 (S.D.N.Y. 2001); *Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 632 (D.N.J. 2002) (holding that the movant has the burden to show that it has a significant financial interest and that it is adequate). SMRS is an institutional investor that satisfies both of these requirements.

## STATEMENT OF FACTS

AIG is "the leading international insurance organization with operations in more than 130 countries and jurisdictions. AIG companies serve commercial, institutional, and individual customers through the most extensive worldwide property-casualty and life insurance networks of any insurer. In addition, AIG companies are leading providers of retirement services, financial services and asset management around the world." Defendants issued a series of false and misleading statements relating to the Company's finances, which artificially inflated the price of AIG securities and misrepresented the Company's risk management practices. Specifically, defendants repeatedly reassured the market that the Company was well-positioned to continue producing significant earnings, despite turmoil in 2007 resulting from the meltdown of the U.S. sub-prime residential mortgage market. Further, defendants represented that the Company's risk management strategies were effective, sophisticated and conservative.

However, on February 11, 2008, the truth about the losses faced by AIG began to be disclosed to the market in a Form 8-K filing with the Securities and Exchange Commission (the "SEC"). In that filing, AIG revealed to investors that the Company's independent auditor, PricewaterhouseCoopers LLC ("PWC"), had discovered "material weaknesses in [AIG's]

internal control over financial reporting and oversight relating to the fair valuations of the super senior credit default swap portfolio." Consequently, AIG was required to drastically modify its method of accounting in its credit default swap ("CDS") portfolio. AIG's actual losses on its CDS portfolio more than quadrupled to between $4.5 and $6.0 billion as of November 30, 2007, from the $1.4 billion to $1.5 billion loss valuation first reported by the Company at a December 5, 2007 investor meeting. As a result of this disclosure, AIG's stock plunged 12%, wiping out $15 billion in shareholder value.

Two weeks later, on February 28, 2008, AIG filed its 2007 Form 10-K with the SEC. The Company again revised the valuation of the CDS portfolio, reporting $11.5 billion losses as of December 30, 2007. Thus, in just three months, AIG's losses on its CDS portfolio appeared to jump from $1.4 to 1.5 billion in December to $6.5 billion in mid-February, to $11.5 billion on February 28, 2008. Further, AIG reported a fourth quarter loss of $5.3 billion, its largest quarterly loss ever.

In addition, AIG disclosed for the first time in its 2007 Form 10-K that it had notional exposure over $6.5 billion in liquidity puts that it had written on collateralized debt obligations ("CDOs") linked to U.S. residential subprime mortgages.[1] According to its 2007 Form 10-K, unknown to investors, the Company had been forced to repurchase over $754 million in CDO securities at par value in 2007 pursuant to the terms of the liquidity puts, and had provided $3 billion in liquidity facilities in case the Company was required by counterparties to repurchase additional CDOs over the next three years.

These disclosures only marked the beginning of the bad news for AIG's investors. On May 8, 2008, AIG announced its first quarter 2008 results, reporting a massive $7.8 billion loss.

---

[1] Liquidity puts are defined as the right of Collateralized Debt Obligation (CDO) holders to sell back the CDO to its issuer at the original price.

This loss was due, for the most part, to an astonishing $9.1 billion additional decline in the valuation of the CDS portfolio. The Company also disclosed that it had sustained capital losses of $6.09 billion primarily from other-than-temporary impairment charges relating to certain residential mortgage-backed securities and other structured securities. These disclosures caused AIG's stock to decline 13% over the next two trading days.

Immediately after releasing the dismal quarterly results on May 8, 2008, the Company informed investors of its plan to raise $12.5 billion in the capital markets to shore up its tattered balance sheet, leading to the very shareholder dilution that Defendant Sullivan assured investors was not a concern at a December 5, 2007 investor meeting. The major credit ratings agencies - Moody's Investors' Service ("Moody's"), Standard & Poor's Ratings Service ("S&P") and Fitch Ratings ("Fitch") - took immediate action in response to the revelations regarding the Company's financial condition. S&P and Fitch both downgraded the Company by one notch and assigned a negative outlook to the AIG's financial strength ratings. Reminiscent of his pronouncements on December 5, 2007, CEO Sullivan again pointed to AIG's size and diversification, describing the ratings agencies' actions on a May 9, 2008 conference call as "manageable."

On May 20, 2008, AIG reported that it had raised over $20 billion through debt and equity offerings - almost double the $12.5 billion the Company originally said it would seek from the capital markets days earlier. The unwelcome news regarding the capital raised surprised shareholders, who were informed just weeks before that the Company had the equivalent of $20 billion in excess capital, and sent shares tumbling another 3%, from $38.12 per share to $36.96 per share. Even after this most recent influx of capital, Moody's downgraded AIG debt to Aa3 from Aa2 and assigned the Company a "negative" outlook, citing market losses

on CDSs, realized losses of $5 billion on residential mortgage-backed securities, as well as uncertainty surrounding the strategic direction of AIG Financial Products ("AIGFP"), the business unit that had issued the CDSs.

Finally, on June 6, 2008, AIG admitted that it had received inquires from both the SEC and the United States Department of Justice regarding the Company's handling of its CDS portfolio valuations. According to news reports, the Department of Justice, through the U.S. Attorneys' Office in the Eastern District of New York, has sought documents gathered by the SEC, indicating that officials are contemplating a criminal investigation. As reported in the press, the regulators' inquiries were, in part, prompted by valuation disputes between AIG and some of its swap partners, such as Goldman Sachs, that resulted in AIG being required to post additional capital pursuant to the swap terms. According to news reports, the disagreements over valuation indicated to regulators that AIG may have deliberately undervalued these instruments.

The announcement of the SEC and Department of Justice inquiries further revealed the extent of the problems with AIG's accounting and reporting of the losses in its CDS portfolio, causing shares to plummet an addition 6.8%, from a $36.41 per share close on June 5, 2008 to a close of $33.93 per share on June 6, 2008. Subsequently, New York State insurance regulators announced that that they had initiated a probe into AIG derivatives accounting. A spokesman for the New York State Insurance Superintendent Eric R. Dinallo said that while the state officials had already had extensive discussions with AIG's management, the agency was planning a further review of the matter. Like the SEC and Department of Justice inquiries, the New York Insurance Commissioner's investigation is focused on whether losses were understated in the Company's CDS portfolio.

Following the announcements of the various investigations by federal and state regulators, on June 15, 2008, AIG announced that Defendant Sullivan was leaving his post as AIG's Chief Executive Officer and as a member of AIG's Board of Directors.

Defendants' knowing or reckless statements and inadequate disclosure of the massive losses inflicted on the Company's CDS portfolio artificially inflated the price of AIG stock throughout the Class Period, which reached as high as $72.54 per share on June 5, 2007. When the truth regarding AIG's financial condition was finally disclosed, the price of AIG shares plummeted, wiping out tens of billions of dollars in shareholder value and causing substantial damage to the Class. Indeed, after AIG's admission that it was being investigated by both the SEC and the Department of Justice, AIG shares had plunged to $33.93 per share - an astounding 53% decline from the Class Period high.

## ARGUMENT

## I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this [sub-]chapter has been filed," the Court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii). Thereafter, the Court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions." *Id.*

### A.    The Court Should Resolve The Consolidation Issue
### As a Prerequisite to The Determination of Lead Plaintiff

Under Rule 42(a) of the Federal Rules of Civil Procedure, consolidation is appropriate when the actions involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a). Consolidation is particularly appropriate in securities class action litigation. *See Mitchell v. Complete Mgmt., Inc.,* No. 99-CV-1454 (DAB), 1999 WL 728678, at *1 (S.D.N.Y. Sept. 17,

1999) ("In securities actions where the complaints are based on the same 'public statements and reports,' consolidation is appropriate if there are common questions of law and fact . . . .") (citation omitted); *see also Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997).

The complaints filed in the Actions are substantially similar and arise from the same set of facts and conduct. As a result, the Court should consolidate the aforementioned cases, and any others filed subsequent to this motion. *See Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990).

Once the Court decides the consolidation motion, the PSLRA mandates that the Court decide the lead plaintiff issue "[a]s soon as practicable." Section 21D(a)(3)(B)(ii), 15 U.S.C. § 78u-4(a)(3)(B)(ii). As SMRS has an interest in moving the Actions forward, it respectfully urges the Court to resolve the consolidation motion as soon as practicable. A prompt determination is reasonable and warranted under Rule 42(a), especially given the common questions of law and fact presented by the related actions now pending in this District.

## II.    THE COURT SHOULD APPOINT SMRS AS LEAD PLAINTIFF

### A.    The Procedure Required By The PSLRA

The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." Sections 21D(a)(1) and (a)(3)(B), 15 U.S.C. §§ 78u-4(a)(1) and (a)(3)(B).

First, the plaintiff who files the initial action must publish notice to the class within 20 days after filing the action, informing class members of their right to file a motion for appointment of lead plaintiff. Section 21D(a)(3)(B)(ii), 15 U.S.C. § 78u-4(a)(3)(B)(ii). The PSLRA requires the court to consider within 90 days all motions that were filed within 60 days

after publication of that notice made by any person or group of persons who are members of the proposed class to be appointed lead plaintiff. Sections 21D(a)(3)(A)(i)(II) and (a)(3)(B)(i), 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (a)(3)(B)(i).

The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

> i) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> ii) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> iii) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

Section 21D(a)(3)(B)(iii)(I), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." Section 21D(a)(3)(B)(iii)(II), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). *See also In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008) (Sullivan, J.).

As set forth below, SMRS satisfies the foregoing criteria and it is not aware of any unique defenses that Defendants could raise against it. Therefore, SMRS is entitled to the presumption that it is the most adequate plaintiff to represent the Class and, as a result, should be appointed lead plaintiff in the Actions.

### 1.    SMRS Is Willing To Serve As Class Representative

On May 22, 2008, counsel caused a notice (the "Notice") to be published pursuant to Section 21D(a)(3)(A)(i), which announced that a securities class action had been filed against, among others, AIG, and which advised putative class members that they had until July 21, 2008

to file a motion to seek appointment as a lead plaintiff in the action.  *See* Seidman Decl. Ex. 1.[2] SMRS has reviewed one of the complaints filed in the Actions and has timely filed its motion pursuant to the Notice.  In doing so, SMRS has attached its certification attesting to its willingness to serve as representative of the Class and provide testimony at deposition and trial, if necessary.  *See* Seidman Decl. Ex. 3.  Accordingly, SMRS satisfies the first requirement to serve as lead plaintiff for the Class.  Section 21D(a)(3)(B)(iii)(I)(aa), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa).

**2.    SMRS Is The Most Adequate Lead Plaintiff**

**(a)    SMRS Is An Institutional Investor With The Largest Financial Interest In The Relief Sought By The Class**

Under the PSLRA, any member of the purported class may move for appointment as lead plaintiff within 60 days of the publication of notice that the action has been filed.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).  Subsequently, the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(i).

The legislative history of the PSLRA demonstrates that it was intended to encourage institutional investors, such as SMRS, to serve as lead plaintiff.  The explanatory report accompanying the PSLRA's enactment specifically states that:

> The Conference Committee seeks to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring courts to presume that the member of the purported class with the largest financial stake in the relief sought is the "most adequate plaintiff."

> \* \* \*

> The Conference Committee believes that . . . in many cases the

---

[2] A notice announcing a complaint filed with an expanded class period was published on June 19, 2008.  *See* Seidman Decl. Ex. 2.

> beneficiaries of pension funds -- small investors -- ultimately have the greatest stake in the outcome of the lawsuit. Cumulatively, these small investors represent a single large investor interest. Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.

H.R. CONF. REP. NO. 104-369, at 34 (1995), reprinted in, 1995 U.S.C.C.A.N. 730, 733.

This Court has noted a Congressional preference to appoint institutional investors. *See Schulman v. Lumenis, Ltd.*, No. 02 Civ. 1989 (DAB), 2003 WL 21415287, at *2 (S.D.N.Y. June 18, 2003) (one purpose behind the PSLRA is to ensure that "parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel") (internal quotations and citations omitted). "Congress believed that this could best be achieved by encouraging institutional investors to serve as lead plaintiffs." *Id.* *See also In re Cendant Corp. Litig.*, 264 F.3d 201, 244 (3d Cir. 2001) (Congress "anticipated and intended that [institutional investors] would serve as lead plaintiffs.").[3]

Indeed, Congress deemed institutional investors "presumptively most adequate to serve as lead plaintiffs in securities class actions." *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 63 (D. Mass. 1996). Furthermore, Congress believed that "increasing the role of institutional investors in class actions [would] ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions." *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 221 (D.D.C. 1999) (citations omitted); *Ravens v. Iftikar*, 174 F.R.D. 651, 661 (N.D. Cal.

---

[3] *See also Bowman v. Legato Sys.*, 195 F.R.D. 655, 657 (N.D. Cal. 2000) (institutional investors are "exactly the type of lead plaintiff envisioned by Congress when it instituted the [PSLRA] lead plaintiff requirements. . ."); *In re Network Assocs. Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1020 (N.D. Cal. 1999) ("Congress expected that the lead plaintiff would normally be an institutional investor"); *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 548 (N.D. Tex. 1997) ("through the PSLRA, Congress has unequivocally expressed its preference for securities fraud litigation to be directed by large institutional investors").

1997) (stating that Congress wanted to encourage large, sophisticated institutional investors to direct securities class actions, thereby supplanting the prior regime of "figurehead plaintiffs who exercise no meaningful supervision of litigation"). Congress reasoned that the empowerment of institutional investors would result in the appointment of lead plaintiffs that can best prosecute the claims and are best able to negotiate with and oversee counsel. *See Razorfish*, 143 F. Supp. 2d at 309 (stating that Congress intended that "institutional plaintiffs with expertise in the securities market and real financial interest in the integrity of the market would control the litigation . . . ."); *Gluck*, 976 F. Supp. at 548 ("The legislative history of the Reform Act is replete with statements of Congress' desire to put control of such litigation in the hands of large, institutional investors").

This presumption is rooted in Congress' belief that "increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts." S. REP. NO. 104-98, at 11 (1995), reprinted in, 1995 U.S.C.C.A.N. 679, 690. In reaching this conclusion, Congress reasoned that:

> Institutions' large stakes give them an incentive to monitor, and institutions have or readily could develop the expertise necessary to assess whether plaintiffs' attorneys are acting as faithful champions for the plaintiff class.

Elliot J. Weiss & John S. Beckerman, *Let The Money Do The Monitoring: How Institutional Investors Can Reduce Agency Costs In Securities Class Actions*, 104 Yale L.J. 2053, 2095 (1995) ("Weiss & Beckerman"). *See also* S. REP. NO. 104-98, at 11 n.32 (noting that Weiss & Beckerman provided "the basis for the most adequate plaintiff provision").

SMRS is ideally suited for the role as lead plaintiff. SMRS lost over $109.5 million under LIFO during the Class Period and $141.8 million under FIFO. *See* Seidman Decl. Ex. 4.[4] As a large institutional investor with significant resources dedicated to overseeing and supervising the prosecution of the litigation, SMRS will be able to actively represent the class and "drive the litigation" to ensure that the Class obtains the best recovery possible and implement corporate governance changes to correct the environment which allowed this fraud to take place and to prevent a recurrence ever again. *See Gluck*, 976 F. Supp. at 549.

### (b)    SMRS Meets The Requirements Of F.R.C.P. Rule 23

Equally important, SMRS has affirmatively shown that it satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure, which are the provisions of Rule 23 relevant to the appointment of lead plaintiff under the PSLRA. *See Fuwei Films*, 247 F.R.D. at 436; *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003); *Schulman*, 2003 WL 21415287, at *19. *See also Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) (considering only typicality and adequacy on a motion for consolidation and for designation of lead plaintiff and lead counsel).

SMRS' certification affirmatively establishes that it meets the typicality requirement of Rule 23 because it: (i) suffered the same injuries as the absent class members; (ii) suffered as a result of the same course of conduct by Defendants; and (iii) its claims are based on the same legal issues. *See Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *see also In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 50 (S.D.N.Y. 1998) (typicality inquiry analyzes whether plaintiffs' claims "arise from the same conduct from which other class members' claims

---

[4] SMRS measured its losses as they occurred in each specific trading account, rather than in the aggregate, which is an acceptable method of measuring losses. *See, e.g.*, *In re CIGNA Corp. Sec. Litig.*, 459 F. Supp. 2d 338, 354 (E.D. Pa. 2006).

and injuries arise").  Rule 23 does not require that the named plaintiffs be identically situated with all class members.  It is enough if their situations share a common issue of law or fact.  *See In re NASDAQ Market-Makers Antitrust Litig.*, 172 F.R.D. 119, 127 (S.D.N.Y. 1997).  A finding of commonality frequently supports a finding of typicality.  *See General Tel. Co. v. Falcon*, 457 U.S. 147, 158 n.13 (1982) (noting how the commonality and typicality requirements "merge").  Here, the questions of law and fact common to the members of the Class and which may affect individual Class members include the following:

- whether the federal securities laws were violated by Defendants' acts;
- whether statements made by Defendants to the investing public during the Class Period contained material misrepresentations concerning the facts about the business and operations of AIG;
- whether Defendants acted knowingly or recklessly in issuing false and misleading statements; and
- whether the members of the Class sustained damages and, if so, what is the proper measure of damages.

These questions apply equally to SMRS as to all members of the purported Class. Similar to all of the other members of the Class, SMRS purchased shares of AIG common stock at prices materially distorted as a result of Defendants' misrepresentations.  Because SMRS' claims are based on the same legal theories and "arise from the same course of conduct that gives rise to the claims of other Class members," the typicality requirement is satisfied.  *See NASDAQ Market-Makers*, 172 F.R.D. at 126; *Fuwei Films*, 247 F.R.D. at 437 (citing *Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

Further, SMRS is uniquely able to fulfill the duties and responsibilities required to serve as lead plaintiff.  Specifically, SMRS will be diligent in leading the litigation, including supervising lead counsel and directing litigation strategy and any settlement discussions to obtain the largest recovery for the Class.

III.    **THE COURT SHOULD APPROVE SMRS's CHOICE OF CO-LEAD COUNSEL**

Pursuant to the PSLRA, the proposed lead plaintiff shall, subject to court approval, select and retain counsel to represent the Class. *See In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 158 (S.D.N.Y. 1997). The Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). In that regard, SMRS requests the appointment of the law firms of Barrack Rodos and Bernstein Liebhard to serve as co-lead counsel in this case.

Barrack Rodos has extensive experience litigating securities class actions and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors. *See* Barrack Rodos firm resume attached to Seidman Decl. Ex. 5. Barrack Rodos has been appointed as lead counsel in dozens of securities class actions, including numerous cases since the passage of the PSLRA. Further, Barrack Rodos has served as co-lead counsel in two of the largest securities class action recoveries in history: *In re WorldCom, Inc. Securities Litigation,* No. 02 Civ. 3288 (DLC) (S.D.N.Y.) and *In re Cendant Corp. Securities Litigation,* No. 98-CV-1664 (WHW) (D.N.J.).

The Honorable Denise L. Cote of the Southern District of New York granted final approval of settlements totaling more than $6.13 billion reached by the *WorldCom* lead plaintiff, the New York State Common Retirement Fund, represented by Barrack Rodos as co-lead counsel. The recovery included a $65 million settlement with WorldCom's former outside auditor, Arthur Andersen LLP. This nearly doubled the previous record recovery of $3.1 billion achieved in the *Cendant* securities fraud class action filed against Cendant Corporation, certain of its officers and directors, and its outside auditor, Ernst & Young. Both cases involved complex accounting transactions and restatements. Thus, Barrack Rodos is particularly well-suited to serve as co-lead counsel in this AIG class action.

14

In her opinion approving a partial settlement of over $2.5 billion with the Citigroup

Defendants in *WorldCom,* Judge Cote described the services provided by Barrack Rodos as co-

lead counsel as follows:

> The quality of the representation given by Lead Counsel is unsurpassed in this
> Court's experience with plaintiffs' counsel in securities litigation.  Lead Counsel
> has been energetic and creative.  Its skill has matched that of able and well-funded
> defense counsel.  It has behaved professionally and has taken care not to burden
> the Court or other parties with needless disputes.  Its negotiations with the
> Citigroup Defendants have resulted in a settlement of historic proportions.  It has
> cooperated with other counsel in ways that redound to the benefit of the class and
> those investors who have opted out of the class.  The submissions of Lead
> Counsel to the Court have been written with care and have repeatedly been of
> great assistance.
>
> In sum, the quality of representation that Lead Counsel has provided to the class
> has been superb…Lead Counsel has performed a valuable public service in
> prosecuting this action with vigor and skill.

*In re WorldCom, Inc. Sec. Litig.,* No. 02 civ. 3288 (DLC), 2004 U.S. Dist. LEXIS 22992, at *67-

*68, *72-*73 (S.D.N.Y. Nov. 12, 2004).

Moreover, Barrack Rodos has already participated actively in these cases, filing the

complaint on behalf of the Maine Public Employees Retirement System – which has a loss of

$7.1 million and supports the lead plaintiff application of SMRS – and appearing before this

Court at the conference of June 26, 2008.  Thus, SMRS has clearly selected counsel who are

highly qualified to vigorously prosecute the litigation.

Similarly, Bernstein Liebhard has extensive experience in successfully prosecuting

securities fraud actions, has frequently been appointed as lead counsel since the passage of the

PSLRA, and has frequently appeared in major actions before this and other courts throughout the

country.  *See* Bernstein Liebhard's firm resume, attached as Ex. 6 to the Seidman Decl.  Indeed,

*The National Law Journal* has recognized Bernstein Liebhard for five consecutive years as one

of the top plaintiffs' firms in the country.  Of the thirteen firms named to the list in 2007,

Bernstein Liebhard is one of only two named five years in a row.  Of those two, Bernstein Liebhard is the only one to make securities litigation its primary focus.  In both 2007 and 2008, Bernstein Liebhard was also one of only six plaintiffs' securities class action firms listed in THE LEGAL 500, a guide (in the words of its editor) to "'the best of the best' – the pre-eminent firms in the world's strongest and most competitive legal market."

Three of Bernstein Liebhard's recent outstanding successes include:

- *In re Royal Dutch/Shell Transport Securities Litigation*, No. 04-374 (JAP) (D.N.J. 2008) (preliminarily approved settlement up to $180 million or more (depending on certain contingencies), including attorneys' fees and expenses to be paid by Shell, but not including $29 million to enhance a previous European settlement of $340 million that Bernstein Liebhard's work was a substantial factor in achieving.  Total value of global settlement: well over $500 million);

- *In re Deutsche Telekom AG Securities Litigation*, No. 00-CV-9475 (SHS) (S.D.N.Y. 2005) (settlement: $120 million, representing 188% of the recognized losses); and

- *In re Cigna Corp. Securities Litigation*, No. 2:02CV8088 (E.D. Pa. 2007) (settlement: $93 million).

Bernstein Liebhard is also currently counsel to SMRS in *In re HealthSouth Sec. Litig.* No. 03-1500 (KB) (N.D. Ala.).  SMRS, who is currently serving as co-lead plaintiff and class representative in *HealthSouth*, helped achieve a $445 partial settlement in that matter.

Further, Bernstein Liebhard partner Stanley Bernstein serves as Chairman of the Executive Committee in the *Initial Public Offering Sec. Litig.*, 21 MC 92 (SS) case pending in the Southern District of New York before Judge Shira Scheindlin.  The *IPO* litigation is one of the biggest securities class actions ever prosecuted.

SMRS further notes that, if appointed as lead plaintiff, The Miller Law Firm P.C. (the "Miller Firm"), of Rochester, Michigan, would participate in the litigation as liaison counsel for SMRS and would further provide services to the putative class.  The Miller Firm has extensive

16

experience handling securities and other class actions.  *See* The Miller Firm's resume, attached as Ex. 7 to the Seidman Decl.  The Miller Firm has been commended by the bench for its exceptional handling of class action matters.  For example, on May 5, 2005, the Hon. Mark I. Bernstein of the Philadelphia Court of Common Pleas stated that if the work done by The Miller Firm (and its co-counsel) "does not restore public confidence in the class action system, then nothing will."  *Street v. Siemens*, Case No. 03-885.

## <u>CONCLUSION</u>

For the foregoing reasons, SMRS respectfully requests that this Court: (1) consolidate the captioned, and all subsequently-filed, related actions; (2) appoint SMRS as lead plaintiff in the captioned, and all subsequently-filed, related actions; and (3) approve SMRS' selection of Barrack Rodos and Bernstein Liebhard as co-lead counsel.

Dated: July 21, 2008

Respectfully submitted,

**BERNSTEIN LIEBHARD & LIFSHITZ, LLP**

/s/
_____
Sandy A. Liebhard (liebhard@bernlieb.com)
Francis P. Karam (karam@bernlieb.com)
Joseph R. Seidman, Jr. (seidman@bernlieb.com)
10 East 40th Street, 22nd Floor
New York, NY 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218

**BARRACK, RODOS & BACINE**
Regina M. Calcaterra (rcalcaterra@barrack.com)
1350 Broadway, Suite 1001
New York, NY 10018
Phone: (212) 688-0782
Fax: (212) 688-0783

- and -

Leonard Barrack
Jeffrey W. Golan
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Phone: (215) 963-0600
Fax: (215) 963-0838

**Attorneys for the State Treasurer of Michigan, Custodian of the Michigan Public School Employees Retirement System, State Employees' Retirement System, Michigan State Police Retirement System, and Michigan Judges Retirement System and [Proposed] Co-Lead Counsel for Plaintiffs and the Class**

E. Powell Miller
Marc L. Newman
The Miller Law Firm P.C.
Miller Building
950 West University Drive, Suite 300
Rochester, MI  48307
Phone: 248-841-2200
Fax:  248-652-2852

**Liaison Counsel for the State Treasurer of Michigan, Custodian of the Michigan Public School Employees Retirement System, State Employees' Retirement System, Michigan State Police Retirement System, and Michigan Judges Retirement System**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a copy of the attached was served upon the following counsel of record in the actions filed in this Court, First Class Mail prepaid, this 21st day of July, 2008:

*Attorneys for Plaintiffs:*

David Robertson Hassel
Gerald H. Silk
Noam Noah Mandel
**Bernstein Litowitz Berger & Grossmann LLP**

Jonathan Scott Shapiro
Robert Jason Shapiro
**The Shapiro Law Firm, LLP**
500 Fifth Avenue, 14th Floor
New York, NY  10110

Jeffrey Charles Zwerling
**Zwerling, Schachter & Zwerling**
41 Madison Avenue
New York, NY  10010

*Attorneys for Defendants:*

Joseph S. Allerhand
Robert F. Carangelo
**Weil Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153

Christopher L. Nelson
Darren J. Check
Sean M. Handler
Stuart Berman

**Schiffrin Barroway Topaz & Kessler, LLP**
280 King of Prussia Road
Radnor, PA  19087

/s/
_____
JOSEPH R. SEIDMAN, JR.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JACKSONVILLE POLICE AND FIRE     :     08 Civ. 4772 (RJS)
PENSION FUND, on behalf of itself and all others   :
similarly situated,     :
    :
          Plaintiff,     :
    :
          v.     :
    :     <u>CLASS ACTION</u>
AMERICAN INTERNATIONAL     :
GROUP, INC., MARTIN SULLIVAN,     :
STEVEN BENSINGER, JOSEPH     :
CASSANO, and ROBERT LEWIS,     :
    :
          Defendants.     :
    :

---

JAMES CONNOLLY,     :     08 Civ. 5072 (RJS)
    :
          Plaintiff,     :
    :
          v.     :
    :
AMERICAN INTERNATIONAL     :
GROUP, INC., MARTIN SULLIVAN,     :
STEVEN BENSINGER, JOSEPH     :
CASSANO, ROBERT LEWIS,     :
and DAVID L. HERZOG,     :
    :
          Defendants.     :
    :
    :

---

**[PROPOSED] ORDER CONSOLIDATING ACTIONS, APPOINTING
STATE TREASURER OF THE STATE OF MICHIGAN, AS CUSTODIAN
OF THE MICHIGAN PUBLIC SCHOOL EMPLOYEES RETIREMENT SYSTEM,
THE STATE EMPLOYEES' RETIREMENT SYSTEM, THE MICHIGAN STATE
POLICE RETIREMENT SYSTEM, AND THE MICHIGAN JUDGES RETIREMENT
<u>SYSTEMS AS LEAD PLAINTIFF, AND APPROVING ITS SELECTION OF COUNSEL</u>**

| | | |
|---|---|---|
| MAINE PUBLIC EMPLOYEES RETIREMENT SYSTEM, on behalf of itself and all others similarly situated, | : | 08 Civ. 5464 (RJS) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | CLASS ACTION |
| AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO and ROBERT LEWIS, | : | |
| | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| ONTARIO TEACHERS' PENSION PLAN BOARD, on behalf of itself and others similarly situated, | : | 08 Civ. 5560 (RJS) |
| | : | |
| Plaintiff, | : | |
| | : | CLASS ACTION |
| v. | : | |
| | : | |
| AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO and ROBERT LEWIS, | : | |
| | : | |
| Defendants. | : | |

17688v1

Having considered the Motion of The State Treasurer of the State of Michigan, as custodian of the Michigan Public School Employees Retirement System, the State Employees' Retirement System, the Michigan State Police Retirement System, and the Michigan Judges Retirement System ("State of Michigan Retirement Systems" or "SMRS") to consolidate actions, be appointed as lead plaintiff, and for approval of selection of co-lead counsel, the memorandum of law and declaration in support thereof, and good cause appearing,

IT IS HEREBY ORDERED THAT: ·

1.      The captioned actions are consolidated for all purposes (the "Consolidated Action"). This order (the "Order") shall apply to the Consolidated Action and to each case that relates to the same subject matter that is subsequently filed in this Court or is transferred to this Court and is consolidated with the Consolidated Action.

2.      A Master File is established for this proceeding. The Master File shall be Civil Action No.: 08-CV-4772 (RJS). The Clerk shall file all pleadings in the Master File and note such filings on the Master Docket.

3.      An original of this Order shall be filed by the Clerk in the Master File.

4.      The Clerk shall mail a copy of this Order to counsel of record in the Consolidated Action.

5.      Every pleading filed in the Consolidated Action shall have the following caption:

---

IN RE AIG INTERNATIONAL, INC.              Civ No. 08-CV-4772 (RJS)
SECURITIES LITIGATION

---

6.      The Court requests the assistance of counsel in calling to the attention of the Clerk

17688v1

of this Court the filing or transfer of any case that might properly be consolidated as part of the Consolidated Action.

7.    When a case that arises out of the same subject matter of the Consolidated Action is hereinafter filed in this Court or transferred from another Court, the Clerk of this Court shall

a.    File a copy of this Order in the separate file for such action;

b.    Mail a copy of this Order to the attorneys for the plaintiff(s) in the newly-filed or transferred case and to any new defendant(s) in the newly-filed or transferred case; and

c.    Make the appropriate entry in the Master Docket for the Consolidated Action.

8.    Each new case that arises out of the subject matter of the Consolidated Action, which is filed in this Court or transferred to this Court, shall be consolidated with the Consolidated Action and this Order shall apply thereto, unless a party objects to consolidation, as provided for herein, or any provision of this Order, within ten (10) days after the date upon which a copy of this Order is served on counsel for such party, by filing an application for relief and this Court deems it appropriate to grant such application.  Nothing in the foregoing shall be construed as a waiver of Defendants' right to object to consolidation of any subsequently-filed or transferred related action.

9.    SMRS is appointed to serve as lead plaintiff in the captioned actions and any related action subsequently transferred to or filed in this Court, pursuant to Section 21D(a)(3)(B), 15 U.S.C. § 78u-4 of the Securities Exchange Act of 1934.

17688v1                                2

10.    The law firms of Barrack Rodos & Bacine and Bernstein Liebhard & Lifshitz, LLP are hereby appointed co-lead counsel for the Class.  Co-lead counsel shall provide general supervision of the activities of plaintiffs' counsel and shall ensure that all work performed by plaintiffs' counsel is neither duplicative nor unproductive.  Co-lead counsel shall have the following responsibilities and duties to perform or delegate as appropriate to:

      a.    brief and argue motions;

      b.    initiate and conduct discovery, including, without limitation, coordination of discovery with defendants' counsel, the preparation of written interrogatories, requests for admissions, and requests for production of documents;

      c.    direct and coordinate the examination of witnesses in depositions;

      d.    act as spokesperson at pretrial conferences;

      e.    call and chair meetings of plaintiffs' counsel as appropriate or necessary from time to time;

      f.    initiate and conduct any settlement negotiations with counsel for defendants;

      g.    provide general coordination of the activities of plaintiffs' counsel and to delegate work responsibilities to selected counsel as may be required in such a manner as to lead to the orderly and efficient prosecution of this litigation and to avoid duplication or unproductive effort;

      h.    consult with and employ experts;

    i.    collect time reports of all attorneys on behalf of plaintiffs and to determine if the time is being spent appropriately and for the benefit of plaintiffs; and

    j.    perform such other duties as may be expressly authorized by further order of this Court.

11.    SMRS shall cause a Consolidated Amended Complaint to be filed with the Court and served on defendants' counsel within sixty (60) days of the date of entry of the Order.

12.    Defendants shall have no obligation to file any answer or otherwise responsive papers to any of the pending individual complaints hereby consolidated other than the Consolidated Complaint.

IT IS SO ORDERED.

DATED: _____

_____
United States District Court Judge

17688v1             4