**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____
                                        )
JACKSONVILLE POLICE AND FIRE            )
PENSION FUND, on behalf of itself and   )
all others similarly situated,          )
                                        )   08-CV-4772 (RJS)
                    Plaintiff,          )   ECF Case
                                        )
            v.                          )
                                        )
AMERICAN INTERNATIONAL GROUP,           )   **ELECTRONICALLY FILED**
INC., MARTIN SULLIVAN, STEVEN           )
BENSINGER, JOSEPH CASSANO and           )
ROBERT LEWIS,                           )
                                        )
                    Defendants.         )
_____)
    (captions continued on following pages)

**MEMORANDUM OF LAW IN SUPPORT OF THE AIG INSTITUTIONAL INVESTOR GROUP'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF ITS SELECTION OF COUNSEL**

_____
| | |
|---|---|
| JAMES CONNOLLY, individually and on behalf of all others similarly situated, ) ) ) | |
| ) Plaintiff, ) ) | 08-CV-5072 (RJS) ECF Case |
| v. ) ) | |
| AMERICAN INTERNATIONAL GROUP, INC., MARTIN J. SULLIVAN, STEVEN J. BENSINGER, JOSEPH J. CASSANO, ROBERT E. LEWIS and DAVID L. HERZOG, ) ) ) ) ) ) | |
| Defendants. ) | |

_____

| | |
|---|---|
| MAINE PUBLIC EMPLOYEES RETIREMENT SYSTEM, on behalf of itself and all others similarly situated, ) ) ) | |
| ) Plaintiff, ) ) | 08-CV-5464 (RJS) ECF Case |
| v. ) ) | |
| AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO and ROBERT LEWIS, ) ) ) ) ) | |
| Defendants. ) | |

_____

|  |  |
|---|---|
| _____ ) <br> ONTARIO TEACHERS' PENSION PLAN ) <br> BOARD, on behalf of itself and all others ) <br> similarly situated, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> AMERICAN INTERNATIONAL GROUP, ) <br> INC., MARTIN SULLIVAN, STEVEN ) <br> BENSINGER, JOSEPH CASSANO and ) <br> ROBERT LEWIS, ) <br> Defendants. ) <br> _____) | 08-CV-5560 (RJS) <br> ECF Case |

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

FACTUAL BACKGROUND .................................................................................................... 2

PROCEDURAL BACKGROUND ............................................................................................ 3

ARGUMENT ............................................................................................................................. 4

    I.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED ....................................... 4

    II.  THE AIG INSTITUTIONAL INVESTOR GROUP  SHOULD BE APPOINTED LEAD PLAINTIFF .................................................................................................................. 4

        A.  The Legal Requirements Under The PSLRA ........................................................... 4

        B.  The AIG Institutional Investor Group Satisfies The Lead Plaintiff Requirements Of The Exchange Act ..................................................................................................... 5

            1.  The AIG Institutional Investor Group Has Complied With the Exchange Act and Should Be Appointed Lead Plaintiff ......................................................................... 5

            2.  The AIG Institutional Investor Group Is Precisely the Type of Lead Plaintiff Congress Envisioned When It Passed the PSLRA ................................................. 5

            3.  The AIG Institutional Investor Group Has the Requisite Financial Interest in the Relief Sought by the Class ....................................................................................... 8

            4.  The AIG Institutional Investor Group Otherwise Satisfies the Requirements of Rule 23 ........................................................................................................................ 8

    III. THE COURT SHOULD APPROVE  THE AIG INSTITUTIONAL INVESTOR GROUP'S CHOICE OF COUNSEL .................................................................................. 11

CONCLUSION ........................................................................................................................ 11

## INTRODUCTION

Pursuant to Section 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4, KBC Asset Management NV ("KBC"), Union Asset Management Holding AG ("Union"), and the General Retirement System of the City of Detroit ("Detroit") (collectively, "AIG Institutional Investor Group") respectfully move this Court for an order consolidating these related actions,[1] appointing the AIG Institutional Investor Group as the Lead Plaintiff on behalf of all persons[2] who purchased the securities of American International Group, Inc. ("AIG" or the "Company") between November 10, 2006 and June 6, 2008, inclusive (the "Class Period"),[3] and for approval and appointment of its selection of Motley Rice LLC ("Motley Rice") and Kirby McInerney LLP as Co-Lead Counsel.

For the reasons set forth below, the AIG Institutional Investor Group is the most adequate plaintiff, and hence the presumptive lead plaintiff, in this proceeding. The AIG Institutional Investor Group is comprised of large institutional investors, who are accustomed to acting as fiduciaries. As their duly executed certifications show, members of the AIG Institutional Investor Group purchased 672,759 shares of AIG securities on the NYSE during the Class

---

[1] Four actions (the "Related Actions") are pending in this Court against American International Group, Inc. and certain of its officers and directors for violations of Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5, 17 C.F.R. § 240.10b-5. The four Actions are Jacksonville Police and Fire Pension Fund v. American International Group, Inc., No. 08-cv-4772 (RJS) (S.D.N.Y. filed May 21, 2008); Connolly v. American International Group, Inc., No. 08-cv-5072 (RJS) (S.D.N.Y. filed June 3, 2008); Maine Public Employees Retirement System v. American International Group, Inc., No. 08-cv-5464 (S.D.N.Y. filed June 17, 2008); and Ontario Teachers' Pension Plan Board v. American International Group, Inc., No. 08-cv-5560 (RJS) (S.D.N.Y. filed June 19, 2008). No motion for consolidation has previously been made. The Ontario Teachers' Complaint alleges a Class Period from November 10, 2006 through June 6, 2008; the other three Complaints allege a Class Period from May 11, 2007 through May 9, 2008.

[2] The Class excludes Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

[3] The AIG Institutional Investor Group has used the longest class period alleged for purposes of its Motion. See In re Party City Sec. Litig., 189 F.R.D. 91, 94 n.3 (D.N.J. 1999) (relying on the longest class period alleged in the class actions filed against the defendants).

Period.  See Declaration of William H. Narwold ("Narwold Decl."), filed herewith.  Attached as Exhibit C to the accompanying Narwold Declaration is the AIG Institutional Investor Group's members' loss charts, showing that the AIG Institutional Investor Group had net expenditures of $19,309,137 during the Class Period and losses of $18,879,971.[4]  As a group comprised of sophisticated institutional investors, the AIG Institutional Investor Group is ideally suited to serve as the lead plaintiff in this action.  The AIG Institutional Investor Group should be appointed lead plaintiff and its proposed Lead Counsel should be approved.

## FACTUAL BACKGROUND[5]

This putative class action involves allegations that AIG, the world's largest insurer, and certain of its officers and directors, issued a series of false and misleading statements relating to the Company's finances that artificially inflated the price of AIG securities.  On November 9, 2006, AIG announced its financial results for the third quarter of 2006, reporting income that was more than $1 billion higher than the previous quarter.  The increase was due to an increased demand for AIG's Capital Markets division's "super senior" credit default swaps ("CDSs"), although AIG would later be forced to admit that it had improperly valued its CDS portfolio.

Throughout the Class Period, Defendants misrepresented the Company's earnings and financial condition, misrepresenting to investors that AIG's "super senior" product was a stable, secure, and virtually risk-free profit center for the Company.  However, the truth about the losses faced by AIG as a result of the deterioration in its CDS portfolio began to emerge on February 11, 2008, when its independent auditor insisted that the Company drastically modify its method of accounting in its CDS portfolio.  In response to this, AIG stock declined 12%, from $50.86

---

[4] The loss is calculated using the "first in-first out" (FIFO) method.  Under the "last in-first out" (LIFO) method, The AIG Institutional Investor Group still suffered a loss of $12,379,449.

[5] This factual summary is based on the Complaint filed in Ontario Teachers' Pension Plan Board v. American International Group, Inc., No. 08-cv-5560 (RJS) (S.D.N.Y. filed June 19, 2008).

2

per share to $44.74 per share. On February 28, 2008, AIG announced that the cumulative losses in the CDS portfolio jumped to $11.5 billion. On May 8, 2008, AIG stunned the market by reporting a loss of $7.8 billion in the first quarter of 2008, and the total losses on the CDS portfolio were revised to $20 billion. These announcements caused AIG shares to drop an additional 13%, from $44.15 per share to $38.37 per share.

Finally, on June 6, 2008, AIG announced that it had received inquiries from both the SEC and the Department of Justice concerning the Company's handling of its CDS portfolio valuations. This announcement caused shares to drop an additional 6.8%, from $36.41 per share to $33.93 per share.

## PROCEDURAL BACKGROUND

The PSLRA requires the counsel who files the first complaint to issue a notice to investors in a widely circulated national business-oriented publication within twenty days of the date the complaint is filed, advising class members of the pendency of the lawsuit and the nature of the allegations, their right to seek appointment as lead plaintiff within sixty days of the publication of the notice, and the purported class period. See 15 U.S.C. § 78u-4(a)(3)(A)(1). The first action against AIG was filed on May 21, 2008. The next day, counsel in the first-filed action issued the required Notice on MarketWire.[6]

The PSLRA requires putative class members to move for appointment as lead plaintiff within 60 days of the date the Notice was issued. See 15 U.S.C. § 78u-4(a)(3)(A)(1). The AIG Institutional Investor Group has satisfied this requirement by filing its motion within the sixty-day period. Accordingly, the procedural mandates of the PSLRA have been satisfied.

---

[6] MarketWire has been recognized as a suitable vehicle for meeting the PSLRA's statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire service." See, e.g., In re Delphi Corp. Sec., Deriv. & "ERISA" Litig., 458 F. Supp. 2d 455, 457 (E.D. Mich. 2006). A copy of the Notice is attached as Exhibit B to the Narwold Decl.

# ARGUMENT

## POINT I

### THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Each of the Related Actions involves class action claims on behalf of class members who purchased publicly traded securities of AIG during the Class Period in reliance on the materially false and misleading statements and omissions at all relevant times. Consolidation is appropriate when, as here, there are actions involving common questions of law or fact. See Fed. R. Civ. P. 42(a); Werner v. Satterlee, Stephen, Burke & Burke, 797 F. Supp. 1196 (S.D.N.Y. 1992) (ruling consolidation appropriate in securities actions when complaints are based on same public statements and reports and there are common questions of law and fact). That test is met here. Therefore, the Related Actions should be consolidated.

## POINT II

### THE AIG INSTITUTIONAL INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

**A.    The Legal Requirements Under The PSLRA**

The PSLRA provides a rebuttable presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (1997); see generally Bassin v. deCODE Genetics, Inc., 230 F.R.D. 313 (S.D.N.Y. 2005).

**B.     The AIG Institutional Investor Group Satisfies The Lead Plaintiff Requirements Of The Exchange Act**

    **1.     The AIG Institutional Investor Group Has Complied With the Exchange Act and Should Be Appointed Lead Plaintiff**

The 60-day time period in which class members may move to be appointed Lead Plaintiff under 15 U.S.C. § 78u-4(a)(3)(A)-(b) expires on Monday, July 21, 2008.  Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice, the AIG Institutional Investor Group timely moves this Court to be appointed lead plaintiff on behalf of all members of the Class.

The duly authorized signatories of the AIG Institutional Investor Group's members have signed and filed sworn certifications pursuant to the PSLRA.  See Narwold Decl., Ex. A.  In addition, the AIG Institutional Investor Group has selected and retained competent counsel to represent it and the class.  See Narwold Decl., Exs. D and G.  Therefore, the AIG Institutional Investor Group has satisfied the individual requirements of 15 U.S.C. § 78u-4(a)(3)(B) and is entitled to have its application for appointment as lead plaintiff and selection of lead counsel considered and, for the reasons set forth herein, approved by the Court.

    **2.     The AIG Institutional Investor Group Is Precisely the Type of Lead Plaintiff Congress Envisioned When It Passed the PSLRA**

The AIG Institutional Investor Group is comprised of large institutional investors.  The Congressional objective in enacting the lead plaintiff provisions was to encourage large, organized institutional investors to play a more prominent role in securities class actions.  See H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."); see also Glauser v. EVCI Ctr. Colleges Holding Corp., 236 F.R.D.

184, 188 (S.D.N.Y. 2006) ("'[T]he PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one.'") (quoting In re Veeco Instruments, Inc., 233 F.R.D. 330, 332-33 (S.D.N.Y. 2005)).

Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation. The AIG Institutional Investor Group, which is comprised of large institutional investors, is precisely the type of lead plaintiff Congress envisioned when it passed the PSLRA. See H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 733 ("Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.").

The fact that some of the members of the AIG Institutional Investor Group are foreign investors is of no moment. This is especially true given that the AIG Institutional Investor Group's members' purchases occurred on the NYSE. See In re NPS Pharm., Inc. Sec. Litig., No. 2:06-cv-00570-PGG-PMW (D. Utah Nov. 17, 2006) (rejecting argument that foreign institutional investor that bought shares of a U.S. company on a U.S. exchange may be subject to the unique defenses of subject matter jurisdiction and res judicata) (attached as Narwold Decl., Ex. E). Courts across the country have frequently appointed foreign investors lead plaintiffs in putative securities class actions. See, e.g., In re Molson Coors Brewing Co. Sec. Litig., 233 F.R.D. 147, 151 (D. Del. 2005) (observing that a foreign lead plaintiff movant was "correct in its assertion that many courts, including this one, have approved foreign investors as lead plaintiffs in cases such as this" and holding that a group of investors led by a German investment firm was entitled to appointment as

6

lead plaintiff because it had the largest financial interest of any movant, was otherwise adequate and typical, and would not be subject to unique defenses because of its foreign status) (citing cases).[7]

In <u>In re: The Goodyear Tire & Rubber Co. Sec. Litig.</u>, No. 5:03 CV 2166, 2004 WL 3314943, at *5-6 (N.D. Ohio, May 12, 2004) (Narwold Decl., Ex. F-4B) the court appointed a foreign investor lead plaintiff in a putative securities class action against an American corporation, despite an opposing movant's "attempt to discredit Capital Invest on the ground that it is a non-domestic (Austrian) investment firm." <u>Goodyear</u>, 2004 WL 3314943, at *5-6. The court there recognized that many foreign citizens are "entitled by treaty to the same rights and privileges before United States Courts as United States citizens" and observed that "[e]ven in the absence of a treaty, to exclude a foreign investor from lead plaintiff status on nationality grounds would defy the realities and complexities of today's increasingly global economy." <u>Id.</u>

The AIG Institutional Investor Group is comprised of sophisticated institutional investors that are familiar with the provisions governing the appointment of lead plaintiffs in PSLRA actions. KBC is a Belgian asset management company, responsible for managing mutual funds, private funds, and institutional funds. Union is a large German institutional investor. Detroit is a governmental trust fund qualified under IRC § 401(a) that exists for the benefit of current and

---

[7] Cases in which courts have appointed foreign investors as lead plaintiff in securities class actions include <u>In re Dell Inc., Sec. Litig.</u>, No. A-06-CA-726-SS (W.D. Tex. Apr. 9, 2007); <u>Mass. Laborers' Annuity Fund v. Encysive Pharm. Inc.</u>, No. H-06-3022 (S.D. Tex. Mar. 20, 2007); <u>Welmon v. Chicago Bridge & Iron Co. N.V.</u>, No. 06-CV-01283 (JES) (S.D.N.Y. May 11, 2006); <u>In re Able Labs. Sec. Litig.</u>, No. 05-2681 (JAG) (D.N.J. Mar. 17, 2006); <u>Mirco Investors, LLC v. Inspire Pharm., Inc.</u>, No. 1:05CV00118 (M.D.N.C. Mar. 1, 2006); <u>Kadagian v. Harley-Davidson, Inc.</u>, No. 05-C-0547 (E.D. Wis. Feb. 14, 2006); <u>In re General Motors Corp. Sec. Litig.</u>, No. 05-CV-8088 (RMB) (S.D.N.Y. Feb. 6, 2006); <u>In re Conagra Foods, Inc. Sec. Litig.</u>, No. 8:05-cv-00292-LES-TDT (D. Neb. Dec. 2, 2005); <u>In re Dreamworks Animation SKG, Inc., Sec. Litig.</u>, No. CV 05-03966 (C.D. Cal. Nov. 7, 2005); <u>Olsen v. New York Cmty. Bancorp, Inc.</u>, No. 04-CV-4165 (E.D.N.Y. Aug. 9, 2005); <u>Cox v. Delphi Corp.</u>, No. 1:05-CV-2637(NRB) (S.D.N.Y. June 27, 2005); <u>In re Sipex Corp. Sec. Litig.</u>, No. C 05-00392 WHA (N.D. Cal. May 24, 2005); <u>South Ferry LP #2 v. Killinger</u>, No. CV04-1599 JCC (W.D. Wash. Nov. 30, 2004); <u>Conway Inv. Club v. Corinthian Colleges, Inc.</u>, No. 2:04-cv-05025 (C.D. Cal. Nov. 1, 2004); <u>Curtis v. BEA Sys., Inc.</u>, No. C04-2275 SI (N.D. Cal. Sept. 24, 2004); <u>In re: Goodyear Tire & Rubber Co. Sec. Litig.</u>, No. 5:03 CV 2166, 2004 WL 3314943, at *5-6 (N.D. Ohio, May 12, 2004); <u>In re Nortel Networks Corp. Sec. Litig.</u>, No. 01 Civ. 1855 (S.D.N.Y. Sept 5, 2003); <u>In re Williams Sec. Litig.</u>, No. 02-CV-0072-H(M) (N.D. Okla. July 8, 2002). A compendium of copies of these decisions is attached hereto as Exhibits F1-F6 to the Narwold Decl.

retired employees of the City of Detroit who are/were members of the retirement system. After due consideration, the members of the AIG Institutional Investor Group, after reviewing the merits of this action and the qualifications of its proposed lead counsel, have affirmatively decided to seek appointment together as lead plaintiff. The AIG Institutional Investor Group is fully committed to serving as a fiduciary to the class and to the zealous prosecution of this matter as the lead plaintiff.

### 3. The AIG Institutional Investor Group Has the Requisite Financial Interest in the Relief Sought by the Class

As shown in the Certifications, members of the AIG Institutional Investor Group collectively purchased 272,250 net shares of AIG securities on the NYSE during the putative Class Period and had net expenditures of $19,309,137 and losses of over $18.8 million. Narwold Decl., Exs. A-1 ¶ 9; A-2 ¶ 9; A-3 ¶ 4; C. Upon information and belief, the AIG Institutional Investor Group thus has the largest financial interest in the relief sought by the class of any class member who has appeared and is presumptively the most adequate plaintiff to serve as lead plaintiff.

### 4. The AIG Institutional Investor Group Otherwise Satisfies the Requirements of Rule 23

The PSLRA requires that lead plaintiffs, in addition to having the largest financial interest, must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(1)(cc).

Rule 23(a) requires that: (1) the class be so numerous that joinder of all members is impracticable; (2) there be questions of law or fact common to the class; (3) such claims be typical of those of the class; and (4) the representatives fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In deciding a lead plaintiff motion, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the

remaining requirements until the lead plaintiff moves for class certification.  See Glauser, 236 F.R.D. at 188 ("Typicality and adequacy of representation, however, 'are the only provisions relevant to a determination of lead plaintiff under the PSLRA.'") (quoting Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. 42, 49 (S.D.N.Y. 1998)).  Also, at the lead plaintiff stage, the moving party need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23.  Id.

The typicality requirement is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality exists if the "claims of the Lead Plaintiff arise from the same event or course of conduct that gives rise to the claims of the other class members, where these claims are based on the same legal theory, and where the class members and Lead Plaintiff were injured by the same conduct." Glauser, 236 F.R.D. at 188-89 (citing Dietrich v. Bauer, 192 F.R.D. 119, 124 (S.D.N.Y. 2000)); see also In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992).  Also, a difference in the factual situations of class members alone does not defeat typicality under Rule 23(a)(3).  See Priest v. Zayre Corp., 118 F.R.D. 552, 555 (D. Mass. 1988).  Thus, courts have repeatedly held that typicality is satisfied in securities class actions when the class representative, like all other class members, purchased the subject stock during the relevant time period at prices that they allege were artificially inflated by false and misleading statements by defendants and allegedly suffered damages.  See, e.g., Glauser, 236 F.R.D. at 189; In re Sprint Corp. Sec. Litig., 164 F. Supp. 2d 1240, 1243-44 (D. Kan. 2001); Chisholm v. Transouth Fin. Corp., 184 F.R.D. 556, 563 (E.D. Va. 1999).

The AIG Institutional Investor Group's claims are typical of those of the putative class. The AIG Institutional Investor Group's members purchased AIG securities during the Class

Period at prices artificially inflated and distorted by Defendants' misrepresentations and omissions. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the class claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied when it is established that a representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is met when the proposed Lead Plaintiff "does not have interests that are antagonistic to the class that he seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class that he seeks to represent." Glauser, 236 F.R.D. at 189.

The AIG Institutional Investor Group is an adequate representative of the class. The interests of the AIG Institutional Investor Group are clearly aligned with the interests of the members of the class because it, like other class members, paid artificially inflated prices due to Defendants' materially false and misleading statements. There is no antagonism between the AIG Institutional Investor Group's interests and those of the putative class. Finally, the AIG Institutional Investor Group has taken significant steps that demonstrate that it will protect the interests of the class: (1) the AIG Institutional Investor Group's members have executed sworn certifications detailing their Class Period transactions and expressing their willingness to serve as lead plaintiffs; (2) the AIG Institutional Investor Group has timely moved this Court for appointment as lead plaintiff; and (3) the AIG Institutional Investor Group has retained competent and experienced counsel to prosecute these claims. As shown below, the AIG Institutional Investor Group's proposed counsel are highly qualified, experienced, and able to conduct this complex litigation in a professional manner. Thus, the AIG Institutional Investor

Group prima facie satisfies the typicality and adequacy requirements of Rule 23 for the purposes of this Motion.

## POINT THREE

### THE COURT SHOULD APPROVE
### THE AIG INSTITUTIONAL INVESTOR GROUP'S CHOICE OF COUNSEL

The PSLRA provides that the lead plaintiff shall, subject to court approval, select and retain lead counsel. 15 U.S.C. § 78u-4(a)(3)(B)(v); Glauser, 236 F.R.D. at 190. A court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). The AIG Institutional Investor Group has selected the law firms of Motley Rice LLC and Kirby McInerney LLP as proposed Co-Lead Counsel. Motley Rice LLC members have substantial experience in the prosecution of shareholder and securities class actions.[8] See Motley Rice Securities Resume, Narwold Decl., Ex. D. Likewise, Kirby McInerney has extensive experience in the prosecution of securities fraud class action cases.[9] See Kirby McInerney Firm Brochure, Narwold Decl., Ex. G. Therefore, the Court should approve the AIG Institutional Investor Group's selection of counsel.

### CONCLUSION

For all of the above reasons, the AIG Institutional Investor Group respectfully requests that the Court: (1) consolidate the Related Actions; (2) appoint the AIG Institutional Investor Group as lead plaintiff in the proposed consolidated actions; and (3) approve its selection of counsel.

---

[8] As the district court noted when appointing Motley Rice Co-Lead Counsel in Marsden v. Select Med. Corp., No. 04-4020 (E.D. Pa. Order entered Oct. 5, 2006), "Motley Rice LLC possess[es] the requisite knowledge and skill in securities litigation to ably prosecute this matter on behalf of the class."

[9] "Resolution of this matter was greatly accelerated by the creative dynamism of counsel . . . .We have seen the gifted execution of responsibilities by a lead counsel." In re Cendant Corporation PRIDES Litigation, 98 cv 2819 (WHW) (D.N.J. 1999) (commenting on Kirby McInerney's work in the case).

Respectfully submitted this 21st day of July, 2008,

/s/ William H. Narwold
William H. Narwold (WN-1713)
MOTLEY RICE LLC
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT  06103
Tel: (860) 882-1676
Fax: (860) 882-1682

MOTLEY RICE LLC
Joseph F. Rice
James M. Hughes
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
Tel: (843) 216-9000
Fax: (843) 216-9450

KIRBY McINERNEY LLP
Ira M. Press (IP-5315)
Peter S. Linden (PL-8945)
825 Third Avenue
New York, NY  10022
Tel: (212) 371-6600
Fax: (212) 751-2540

[Proposed] Lead Counsel

STURMAN LLC
Deborah Sturman, Esq.
112 Madison Avenue
New York, New York 10016-7416
Tel: 646-932-2040
Fax: 917-546-2544

Counsel for KBC and Union