**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JACKSONVILLE POLICE AND FIRE PENSION FUND, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO, and ROBERT LEWIS,<br><br>Defendants. | **CIVIL ACTION NO. 08-CV-4772-RJS**<br><br>**ECF Filed** |
| JAMES CONNOLLY, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN INTERNATIONAL GROUP, MARTIN J. SULLIVAN, STEVEN J. BENSINGER, JOSEPH J. CASSANO, ROBERT E. LEWIS, and DAVID L. HERZOG,<br><br>Defendants. | **CIVIL ACTION NO. 08-CV-5072-RJS** |

(Caption continued on subsequent page)

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF ONTARIO TEACHERS' PENSION PLAN BOARD AND PGGM FOR (1) APPOINTMENT AS LEAD PLAINTIFF; (2) APPROVAL OF THEIR SELECTION OF COUNSEL AS LEAD COUNSEL FOR THE CLASS; AND (3) CONSOLIDATION OF ALL RELATED ACTIONS**

| | |
|---|---|
| MAINE PUBLIC EMPLOYEES RETIREMENT SYSTEM, on behalf of itself and all others similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO, and ROBERT LEWIS, )<br><br>Defendants. ) | **CIVIL ACTION NO. 08-CV-5464-RJS** |
| ONTARIO TEACHERS' PENSION PLAN BOARD, on behalf of itself and all others similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO, and ROBERT LEWIS, )<br><br>Defendants. ) | **CIVIL ACTION NO. 08-CV-5560-RJS** |

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND OF THE ACTION ........................................................................................ 3

ARGUMENT .............................................................................................................................. 6

I.   Ontario Teachers and PGGM Should Be Appointed Lead Plaintiff ........................... 6

    a.   Ontario Teachers and PGGM Believe That They Have
the Largest Financial Interest In the Relief Sought By the Class ..................... 6

    b.   Ontario Teachers and PGGM Otherwise Satisfy the
Requirements of Rule 23 .................................................................................. 8

II.  The Court Should Approve Ontario Teachers' and PGGM's Selection
of Lead Counsel ......................................................................................................... 11

III. The Related Actions Should Be Consolidated .......................................................... 12

CONCLUSION ........................................................................................................................ 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Corwin v. Seizinger*,
   Nos. 07 Civ. 6728(DC), 07 Civ. 7016(DC), 07 Civ. 7476(DC), 2008 WL
   123846 (S.D.N.Y. Jan. 8, 2008) ................................................................................................ 8

*Glauser v. EVCI Center Colleges Holding Corp.*,
   236 F.R.D. 184 (S.D.N.Y. 2006) ................................................................................. 8, 11, 12

*In re Cendant Corp. Sec. Litig.*,
   404 F.3d 173 (3d Cir. 2005) .................................................................................................. 11

*In re Comverse Tech., Inc. Sec. Litig.*,
   No. 06-cv-1825(NGG)(RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ........................... 7

*In re Fuwei Films Sec. Litig.*,
   247 F.R.D. 432 (S.D.N.Y. 2008) ......................................................................................... 6, 7

*In re Initial Pub. Offering Sec. Litig.*,
   214 F.R.D. 117 (S.D.N.Y. 2002) ............................................................................................ 9

*In re Party City Sec. Litig.*,
   189 F.R.D. 91 (D.N.J. 1999) .................................................................................................. 6

*Kaplan v. Gelfond*,
   240 F.R.D. 88 (S.D.N.Y. 2007) .............................................................................................. 6

*Reimer v. Ambac Fin. Group, Inc.*,
   No. 08 Civ. 411(NRB), 2008 WL 2073931 (S.D.N.Y. May 9, 2008) ................................. 6, 8

*Weiss v. Friedman, Billings, Ramsey Group, Inc.*,
   No. 05-CV-4617 (RJH), 2006 WL 197036 (S.D.N.Y. Jan 25, 2006) ..................................... 7

**STATUTES**

15 U.S.C. § 78u-4 ........................................................................................................... 1, 6, 11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ............................................................................................................2, 6, 8

Fed. R. Civ. P. 42 .......................................................................................................................1

H.R. Conf. Rep. No. 104-369, 104th Cong. 1st Sess. (1995),
   *reprinted in* 1995 U.S.C.C.A.N. 730 ........................................................................10

Ontario Teachers' Pension Plan Board ("Ontario Teachers") and Stichting Pensioenfonds Zorg en Welzijn, duly represented by PGGM Vermogensbeheer B.V. ("PGGM"), respectfully submit this memorandum in support of their motion (i) for appointment as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), (ii) for approval of their selection of the law firms of Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") and Schiffrin Barroway Topaz & Kessler, LLP ("SBTK") as Lead Counsel for the Class, and (iii) for consolidation of all related securities class actions pursuant to Fed. R. Civ. P. 42(a).

## PRELIMINARY STATEMENT

These securities class action lawsuits arise from allegations concerning violations of the federal securities laws by American International Group, Inc. ("AIG" or the "Company") and certain of its senior executives (collectively, "Defendants"). During the period from November 10, 2006 through June 6, 2008 (the "Class Period"), Defendants disseminated materially false and misleading information to investors regarding the Company's financial condition, while concealing or recklessly ignoring information known to them about the Company's business and finances, including the mounting losses in AIG's portfolio of "super senior" credit default swaps ("CDSs") and other investments and assets tied to the imploding housing and credit markets. Defendants' misstatements artificially inflated the trading price of AIG securities and caused substantial damage to AIG investors as information correcting Defendants' misrepresentations began entering the market causing the price of AIG securities to decline.

Ontario Teachers and PGGM believe that they are the "most adequate plaintiff" under the PSLRA and should be appointed as Lead Plaintiff in this action. Ontario Teachers and PGGM respectfully submit that they have the largest financial interest in the relief sought by the Class, having suffered over $156 million in losses on their Class Period investment in AIG securities as a result of the Defendants' misconduct.[1] In addition, Ontario Teachers and PGGM satisfy the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure as they both are adequate Class representatives with claims that are typical of the other Class members' claims. As set forth in a Joint Declaration submitted by the two institutions, both Ontario Teachers and PGGM are sophisticated public pension fund systems with hundreds of billions of dollars of assets under management that have extensive combined experience serving as fiduciaries and are committed to ensuring that the Class will benefit from the active supervision of class counsel.[2] As such, Ontario Teachers and PGGM respectfully submit that they are the paradigmatic Lead Plaintiff contemplated by Congress in enacting the PSLRA—sophisticated institutional investors with a real financial interest in the action who have the resources and desire to vigorously prosecute the action in the best interests of the Class.

---

[1] A copy of the Certifications of Ontario Teachers and PGGM are attached as Exhibits A and B, respectively, to the Declaration of Gerald H. Silk ("Silk Decl."). As required by the PSLRA, these Certifications set forth the transactions of Ontario Teachers and PGGM in AIG securities during the Class Period. In addition, charts setting forth calculations of Ontario Teachers' and PGGM's losses on both a first-in, first-out ("FIFO") and a last-in, first-out ("LIFO") basis are attached as Exhibits C and D, respectively, to the Silk Decl.

[2] *See* Joint Declaration of Ontario Teachers' Pension Plan Board and PGGM in Support of Their Motion for Appointment as Lead Plaintiff ("Joint Decl."), attached as Exhibit E to the Silk Decl.

## BACKGROUND OF THE ACTION

AIG is the world's largest insurer and one of the thirty members of the Dow Jones Industrial Average. The Company's stock trades on the New York Stock Exchange under the ticker "AIG." Almost 2.5 billion shares are outstanding and held by the investing public.

Throughout the Class Period, Defendants violated the federal securities laws by issuing press releases, financial statements, filings with the Securities and Exchange Commission ("SEC"), and other statements to the investing public that served to artificially inflate the trading price of the Company's securities. In particular, Defendants falsely reported the Company's earnings and financial condition, misrepresenting to investors that AIG's portfolio of "super senior" CDSs—credit derivatives that are used to hedge risk on complex securities tied to the subprime mortgage market—was a stable, secure, and virtually risk-free profit center for the Company. (Compl. ¶¶2, 5-7, 62-64.)[3] When the mortgage crisis began to make headlines, AIG made repeated statements to investors that it was able to weather the crisis due to its size, diversification, and superior risk management, and that the Company's conservative and careful underwriting of the CDS portfolio had rendered these instruments impervious to even the most severe recessionary market conditions. (Compl. ¶¶71-74, 79-81, 85.)

The truth about the Company's financial condition and the losses incurred as a result of the deterioration in its CDS portfolio began to emerge on February 11, 2008, when AIG revealed that the Company's independent auditor, PricewaterhouseCoopers LLC, had discovered a material weakness in its financial reporting and oversight controls

---

[3] References herein to "Compl. ¶__" are to the Class Action Complaint filed by Ontario Teachers, *Ontario Teachers' Pension Plan Board v. American International Group, Inc., et al.*, No. 08-cv-5560-RJS (S.D.N.Y. filed June 19, 2008) [Dkt# 1].

3

and that the Company was drastically modifying its method of accounting for its CDS portfolio. (Compl. ¶92.) In applying the new, proper valuation method, AIG's losses on its CDS portfolio were recalculated to be between $4.5 and $6.0 billion as of November 30, 2007—more than quadruple the $1.5 billion loss valuation first reported by the Company at a December 5, 2007 investor meeting. (Compl. ¶¶93-98.) In response to the February 11, 2008 disclosures, AIG stock plunged 12%, from $50.86 per share to $44.74 per share, wiping out $15 billion in shareholder value. (Compl. ¶10.)

In a series of subsequent corrective disclosures, AIG revealed further losses on the CDS portfolio and the concomitant damage to the Company's financial condition. On May 8, 2008, AIG reported a massive $7.8 billion loss—the worst-performing quarter in the Company's history—which was attributed to a $9.1 billion single-quarter valuation decline in the CDS portfolio, and disclosed that cumulative CDS losses had skyrocketed to $20 billion. (Compl. ¶¶111-12.) Moreover, AIG reversed its earlier position that the valuation fluctuations in the CDS portfolio did not reflect any actual economic impact and admitted that actual losses on the CDS portfolio were now estimated to be up to $2.4 billion. (Compl. ¶114.) These disclosures sent shares tumbling an additional 13% over the next two trading days, from $44.15 per share to $38.37 per share, eliminating $14.4 billion in AIG's market capitalization.

On June 6, 2008, AIG disclosed that it had received inquires from both the SEC and the United States Department of Justice regarding the Company's handling of its CDS portfolio valuations. (Compl. ¶¶17, 121-23.) These disclosures further revealed the extent of the problems with AIG's accounting of the CDS portfolio and caused shares to

4

drop an additional 6.8%, from a $36.41 per share close on June 5, 2008 to $33.93 per share on June 6, 2008.  (Compl. ¶18.)

Defendants' false and misleading statements concerning the massive losses in the Company's CDS portfolio artificially inflated the price of AIG stock throughout the Class Period.  When the truth regarding AIG's financial condition was finally disclosed, the price of AIG shares plummeted, wiping out tens of billions of dollars in shareholder value and causing substantial damage to the Class.

At least four securities class action lawsuits were filed in the Southern District of New York following the revelations concerning the true nature of the Company's financial condition and consequent market corrections.  The first such action— *Jacksonville Police and Fire Pension Fund v. American International Group, Inc., et al.*, 08-cv-4722-RJS—was filed on May 21, 2008 and alleges a class period of May 11, 2007 through May 9, 2008.  As required by the PSLRA, notice of the pendency of this action was published the next day, alerting investors to the July 21, 2008 deadline to file motions seeking appointment as Lead Plaintiff.[4]  Subsequently, on June 19, 2008, Ontario Teachers filed a complaint against AIG, captioned *Ontario Teachers' Pension Plan Board v. American International Group, Inc., et al.*, No. 08-cv-5560-RJS, which expanded the class period in this action to run from November 10, 2006 through June 6, 2008.  Ontario Teachers' counsel, BLB&G, published a supplemental notice informing investors of the extended class period and referencing the July 21, 2008 deadline for

---

[4] This first-published notice is attached as Exhibit F to the Silk Decl.

filing a motion for lead plaintiff appointment.[5]  With the filing of this motion, Ontario Teachers and PGGM satisfy the statutory deadline to move to be appointed as Lead Plaintiff in this action.

## ARGUMENT

I. **Ontario Teachers and PGGM Should Be Appointed Lead Plaintiff**

Ontario Teachers and PGGM respectfully submit that they should be appointed Lead Plaintiff because they are "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).  The PSLRA establishes a presumption that the "most adequate plaintiff" is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii); *see also In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008) (Sullivan, J.); *Reimer v. Ambac Fin. Group, Inc.*, No. 08 Civ. 411(NRB), 2008 WL 2073931, at *2 (S.D.N.Y. May 9, 2008) (Buchwald, J.).

    a. **Ontario Teachers and PGGM Believe That They Have the Largest Financial Interest In the Relief Sought By the Class**

Ontario Teachers and PGGM should be appointed Lead Plaintiff because they believe they have the largest financial interest in the relief sought by the Class.  15 U.S.C. § 78u-4(a)(3)(B)(iii).  Courts focus on the approximate financial losses of the movants to determine which movant has the largest financial interest in the litigation.  *See, e.g., In re*

---

[5]  For purposes of determining a lead plaintiff movant's financial interest under the PSLRA, the longest filed and publicly-noticed class period applies.  *See*, *e.g.*, *Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007) ("For the purposes of this analysis, we use the longer class period with the earlier start date."); *In re Party City Sec. Litig.*, 189 F.R.D. 91, 94 n.3 (D.N.J. 1999) ("The *Catanzarite Action* is relied upon for purposes of this motion because the class period alleged therein covers the longest class period alleged in the actions filed against the Defendants.").  In this case, the complaint filed by Ontario Teachers alleges the longest filed class period—November 10, 2006 through June 6, 2008.  The notice published in connection with the filing of Ontario Teachers' complaint is attached as Exhibit G to the Silk Decl.

6

*Fuwei Films Sec. Litig.*, 247 F.R.D. at 437 (appointing as lead plaintiff the movant with the largest financial loss).  Although courts may also consider other factors—such as the number of gross shares purchased during the class period, the number of net shares purchased during the class period, and the total net funds expended during the class period—the greatest weight is placed on the movants' approximate financial losses.  *See, e.g., id.* ("This Court, like many others, shall place the most emphasis on . . . the approximate losses suffered by the movant.") (quoting *Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007) (internal quotation marks omitted); *see also Weiss v. Friedman, Billings, Ramsey Group, Inc.*, No. 05-CV-4617 (RJH), 2006 WL 197036, at *3 (S.D.N.Y. Jan. 25, 2006) ("The amount of financial loss is the most significant of the . . . elements.") (internal citation and quotation marks omitted).

Ontario Teachers and PGGM believe that they have the largest financial interest in this action by virtue of the significant losses they suffered on their investment in AIG securities.  As a result of the market corrections caused by the revelation of AIG's misconduct, Ontario Teachers and PGGM suffered approximately $156,034,524.17 in losses on their investment on a FIFO basis and sustained $90,604,262.89 in losses on a LIFO basis.[6]  Accordingly, Ontario Teachers and PGGM believe that they have the largest financial interest of any qualified movant seeking appointment as Lead Plaintiff.

---

[6] Courts commonly employ either the FIFO or LIFO accounting methods to determine a movant's financial interest under the PSLRA.  *See, e.g., In re Comverse Tech., Inc. Sec. Litig.*, No. 06-cv-1825(NGG)(RER), 2007 WL 680779, at *7 n.10 (E.D.N.Y. Mar. 2, 2007) (noting that "Courts have recognized two potential accounting methods when assessing gains/losses that result from the purchase and sale of securities" and identifying FIFO and LIFO as those methods).  Under the FIFO method, sales are offset against the movant's inventory of stock acquisitions, starting with the earliest and moving chronologically forward.  Under the alternative LIFO method, sales are offset against the movant's inventory of stock acquisitions, starting with the latest and moving chronologically backward.  Ontario Teachers' and PGGM's losses calculated on both a FIFO and LIFO basis are included in the charts attached as Exhibits C and D, respectively, to the Silk Decl.

### b. Ontario Teachers and PGGM Otherwise Satisfy the Requirements of Rule 23

Ontario Teachers and PGGM should be appointed Lead Plaintiff because they also satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. On a motion to serve as Lead Plaintiff, the movant "need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23." *Glauser v. EVCI Center Colleges Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) (*quoting In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998)); *Corwin v. Seizinger*, Nos. 07 Civ. 6728(DC), 07 Civ. 7016(DC), 07 Civ. 7476(DC), 2008 WL 123846, at *2 (S.D.N.Y. Jan. 8, 2008). Ontario Teachers and PGGM satisfy both of these requirements.

Ontario Teachers' and PGGM's claims are typical of the claims of other Class members. Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Reimer*, 2008 WL 2073931, at *4 (*quoting In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). Ontario Teachers' and PGGM's claims in this action arise from the very same course of misconduct at AIG as the claims of the other Class members—*i.e.*, the artificial inflation and consequent market correction of AIG stock caused by Defendants' fraudulent public disclosures. *See, e.g.*, *Glauser*, 236 F.R.D. at 188-89 (finding a lead plaintiff movant's claim to be typical where the movant "like all class members, (1) purchased or acquired EVCI securities during the proposed class period, (2) at prices allegedly artificially inflated by Defendants' false and misleading statements and/or omissions, and (3) suffered damages thereby."); *Corwin*, 2008 WL 123846, at *3 (finding typicality where the lead plaintiff movant "purchased or acquired GPC securities during the Class Period at prices allegedly artificially inflated by

8

defendants' purported materially false and misleading statements and/or omissions, and suffered damages when the truth was disclosed to the market"). Accordingly, Ontario Teachers and PGGM meet the typicality requirement of Rule 23.

Ontario Teachers and PGGM likewise satisfy the adequacy requirement of Rule 23. The adequacy requirement is satisfied where "the class members' interests are not antagonistic to one another;" the movant "has a sufficient interest in the outcome of the case to ensure vigorous advocacy," and where "class counsel is qualified, experienced, and generally able to conduct the litigation." *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002). Ontario Teachers and PGGM satisfy each of these elements of the adequacy requirement.

Ontario Teachers and PGGM are adequate to represent the Class because their interests are perfectly aligned with those of the other class members and are not antagonistic in any way. Ontario Teachers and PGGM seek the exact same relief under identical claims and legal theories as the other members of the Class. Moreover, there are no facts to suggest that Ontario Teachers and PGGM have any actual or potential conflict of interest with other Class members or that any other antagonism exists between Ontario Teachers and PGGM and the Class.

Ontario Teachers and PGGM have also demonstrated their adequacy by submitting Certifications and a Joint Declaration that reflect their understanding of the duties owed to Class members and their commitment to oversee the prosecution of this action. *See* Certifications of Ontario Teachers and PGGM, attached as Exhibits A and B, respectively, to the Silk Decl.; Joint Decl. ¶¶13-14. Through the Joint Declaration and Certifications, Ontario Teachers and PGGM have accepted their fiduciary obligations to

9

protect the interests of the Class and to pursue a maximum recovery from all culpable parties.

As set forth in the Joint Declaration, prior to the filing of this motion (and without the participation of outside counsel), and after extensive direct communications between representatives of the two funds in which they discussed their shared views of the AIG litigation, the benefits of combining their resources and experience as sophisticated public pension fund systems, as well as their common goals in ensuring the action is litigated efficiently and effectively in the best interests of the Class, Ontario Teachers and PGGM resolved to jointly seek appointment to prosecute the action on behalf of the Class.  *See* Joint Decl. ¶¶1-2, 7-8.  To that end, Ontario Teachers and PGGM have established joint decision-making procedures, discussed litigation strategies and the subject matter and allocation of key drafting assignments, and have negotiated a highly competitive fee arrangement with counsel.  *See* Joint Decl. ¶¶9-10.  Indeed, Ontario Teachers and PGGM have already demonstrated their adequacy by working together and actively monitoring the progress of the litigation, maintaining regular contact with each other and almost daily contact with their chosen counsel.  *See* Joint Decl. ¶13.

Moreover, Ontario Teachers and PGGM are also adequate to represent the interests of the Class because they have a significant financial interest in the action— having suffered losses of over $156 million—that will ensure their vigorous prosecution of this case.  As such, Ontario Teachers and PGGM are the ideal Lead Plaintiff envisioned by Congress in its enactment of the PSLRA—sophisticated institutional investors with a real financial interest in the litigation.  *See* H.R. Conf. Rep. No. 104-369, at 34, 104th Cong. 1st Sess. (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (explaining

10

that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *see also In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 180 (3d Cir. 2005) (holding that the PSLRA establishes "a paradigm in which the plaintiff with the largest stake in the case, usually a large and sophisticated institution, is accorded the status of lead plaintiff and assigned the right to appoint and duty to monitor lead counsel for the class"); *Glauser*, 236 F.R.D. at 188.

Finally, Ontario Teachers and PGGM have demonstrated their adequacy through their selection of BLB&G and SBTK as counsel to represent the Class. As discussed more fully below, BLB&G and SBTK have repeatedly demonstrated an ability to effectively prosecute complex securities class actions.

## II.     The Court Should Approve Ontario Teachers' and PGGM's Selection of Lead Counsel

The Court should approve Ontario Teachers' and PGGM's choice of the law firms of BLB&G and SBTK to serve as Lead Counsel. Pursuant to Section 21D(a)(3)(B)(v) of the PSLRA, *codified at* 15 U.S.C. § 78u-4(a)(3)(B)(v), the Lead Plaintiff is to select and retain Lead Counsel to represent the Class, subject to Court approval. Ontario Teachers and PGGM have selected and retained the law firms of BLB&G and SBTK, two of the preeminent securities class action law firms in the country.

Both BLB&G and SBTK have been appointed lead counsel in numerous complex securities class actions in this District and around the country. Indeed, the two firms have helped investors to obtain two of the three largest securities class action recoveries in history.[7]  BLB&G served as co-lead counsel in *In re WorldCom, Inc. Securities*

---

[7] BLB&G's and SBTK's firm biographies are attached as Exhibits H and I, respectively, to the Silk Decl.

11

*Litigation*, No. 02-CV-3288 (DLC) (S.D.N.Y.), in which settlements totaling in excess of $6 billion—one of the largest recoveries in securities class action history—were obtained for the class. BLB&G was also counsel for Ontario Teachers in the successful prosecutions of *In re Nortel Networks Corp. Securities Litigation*, No. 05-MD-1659 (LAP) (S.D.N.Y.) and *In re Biovail Securities Litigation*, No. 03-CV-8917 (RO) (S.D.N.Y.) in this District. Likewise, SBTK also has a distinguished record of success serving as counsel in securities class action lawsuits. For example, SBTK served as a co-lead counsel in *In re Tyco International Ltd. Securities Litigation*, No. 02-266-PB (D.N.H.), in which over $3.2 billion was recovered on behalf of shareholders—one of the three largest securities class action settlements of all time.

Accordingly, the Court should approve Ontario Teachers' and PGGM's selection of BLB&G and SBTK as Lead Counsel for the Class.

### III.    The Related Actions Should Be Consolidated

There are at least four securities class action complaints pending in the Southern District of New York on behalf of investors in AIG securities:

| Case Number | Abbreviated Case Name | Date Filed |
|---|---|---|
| 08-CV-4722 | *Jacksonville Police and Fire Pension Fund v. American International Group, Inc., et al.* | May 21, 2008 |
| 08-CV-5072 | *James Connolly v. American International Group, Inc., et al.* | June 3, 2008 |
| 08-CV-5464 | *Maine Public Employees Retirement System v. American International Group, Inc., et al.* | June 17, 2008 |
| 08-CV-5560 | *Ontario Teachers' Pension Plan Board v. American International Group, Inc., et al.* | June 19, 2008 |

All of these actions present virtually identical factual and legal issues, as they all arise out of the same alleged misstatements regarding the financial condition of AIG. Accordingly, consolidation is appropriate here. *See, e.g., Glauser*, 236 F.R.D. at 186

12

("[T]his Court has recognized that consolidation is particularly appropriate in the context of securities class actions if the complaints are based on the same public statements and reports.") (internal quotation marks omitted) (*quoting Weiss*, 2006 WL 197036, at *1).

## CONCLUSION

For the foregoing reasons, Ontario Teachers and PGGM respectfully request that the Court: (i) appoint Ontario Teachers and PGGM as Lead Plaintiff pursuant to the PSLRA; (ii) approve Ontario Teachers' and PGGM's selection of BLB&G and SBTK as Lead Counsel for the Class; (iii) consolidate all related actions; and (iv) grant such other and further relief as the Court may deem just and proper.

Dated: July 21, 2008                    Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

/s/ Gerald H. Silk
John P. Coffey (JC-3832)
Gerald H. Silk (GS-4565)
Noam Mandel (NM-0203)
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
(212) 554-1400
(212) 554-1444 (fax)

*Counsel for Ontario Teachers' Pension Plan Board and Proposed Lead Counsel for the Class*

**SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP**

Sean M. Handler
Darren J. Check
Christopher L. Nelson
Naumon A. Amjed
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706
(610) 667-7056 (fax)

13

*Counsel for Stichting Pensioenfonds Zorg en Welzijn, duly represented by PGGM Vermogensbeheer B.V., and Proposed Lead Counsel for the Class*