# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACKSONVILLE POLICE AND FIRE PENSION FUND, *on behalf of itself and all others similarly situated*, | 08 Civ. 4772 (RJS) |
| Plaintiff, | |
| v. | CLASS ACTION |
| AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO and ROBERT LEWIS, | |
| Defendants. | |
| JAMES CONNOLLY, | 08 Civ. 5072 (RJS) |
| Plaintiff, | |
| v. | CLASS ACTION |
| AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO, ROBERT LEWIS, and DAVID L. HERZOG, | |
| Defendants | |

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF THE STATE TREASURER OF THE STATE OF MICHIGAN FOR CONSOLIDATION OF THE RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS

18129v1

| | |
|---|---|
| MAINE PUBLIC EMPLOYEES RETIREMENT SYSTEM, *on behalf of itself and all others similarly situated*, | 08 Civ. 5464 (RJS) |
| Plaintiff, | |
| v. | CLASS ACTION |
| AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO and ROBERT LEWIS, | |
| Defendants. | |
| ONTARIO TEACHERS' PENSION PLAN BOARD, *on behalf of itself and others similarly situated*, | 08 Civ. 5560 (RJS) |
| Plaintiff, | |
| v. | CLASS ACTION |
| AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO and ROBERT LEWIS, | |
| Defendants. | |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................1

ARGUMENT ..........................................................................................................................5

I.   SMRS HAS THE LARGEST FINANCIAL INTEREST AND
     SATISFIES RULE 23 .................................................................................................5

     A.   SMRS Prevails Under The *Olsten* Factors.................................................5

     B.   SMRS Also Prevails When Holdings At The
          Currently-Alleged Disclosure Points Are Analyzed................................8

II.  COURTS HAVE FOUND THE SINGLE LARGEST
     FINANCIAL INTEREST A DETERMINING FACTOR
     ON LEAD PLAINTIFF MOTIONS ...........................................................................10

III. ONTARIO/PGGM'S NUMBERS ARE UNRELIABLE .................................................13

IV.  ONTARIO SUFFERS FROM A CONFLICT OF INTEREST .........................................14

CONCLUSION.......................................................................................................................17

18089v1

# TABLE OF AUTHORITIES

## CASES

*Albert Fadem Trust v. Citigroup, Inc.*,
    239 F. Supp. 2d 344 (S.D.N.Y. 2002)..................................................................14

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997).......................................................................................14

*Andrada v. Atherogenics, Inc.*,
    No. 05 Civ. 00061, 2005 WL 912359 (S.D.N.Y. Apr. 19, 2005)..........................5

*In re Bausch & Lomb Sec. Litig.*,
    244 F.R.D. 169 (W.D.N.Y. 2007)........................................................................7

*Bhojwani v. Pistiolis*,
    No. 06 Civ. 13761, 2007 WL 2197836 (S.D.N.Y. July 31, 2007) ................5, 7, 10

*Boyd v. NovaStar Financial, Inc.*,
    No. 07-0139-CV-W-ODS, 2007 WL 2026130 (W.D. Mo. July 9, 2007)....................9

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)...............................................................................5

*In re Cigna Corp. Sec. Litig.*,
    459 F. Supp. 2d 338 (E.D. Pa. 2006) ..................................................................9

*In re Comverse Tech, Inc. Sec. Litig.*,
    No. 06 Civ. 1825, 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ..........................5, 9

*Corwin v. Seizinges*,
    No. 07 Civ. 6728, 2008 WL 123846 (S.D.N.Y. Jan. 8, 2008).............................5

*In re Critical Path, Inc. Sec. Litig.*,
    156 F. Supp. 2d 1102 (N.D. Cal. 2001)..............................................................11

*In re Donnkenny Inc. Sec. Litig.*,
    171 F.R.D. 156 (S.D.N.Y. 1997) ......................................................................10

*In re Doral Fin. Corp. Sec. Litig.*,
    414 F. Supp. 2d 398 (S.D.N.Y. 2006).................................................................10

*Dunnigan v. Metro. Life Ins. Co.*,
    214 F.R.D. 125 (S.D.N.Y. 2003) ......................................................................14

*Dura Pharmaceuticals, Inc. v. Broudo,*
    544 U.S. 336 (2005)............................................................................9

*In re eSpeed, Inc. Sec. Litig.,*
    232 F.R.D. 95 (S.D.N.Y. 2005) .......................................................5, 7

*In re Enron Corp. Sec. Litig.,*
    206 F.R.D. 427 (S.D. Tex. 2002)...................................................10, 11

*Ferrari v. Impath, Inc.,*
    No. 03 Civ. 5667, 2004 WL 1637053 (S.D.N.Y. July 20, 2004) ...........5

*In re Fuwei Films Sec Litig.,*
    247 F.R.D. 432 (S.D.N.Y. 2008) ..............................................5, 7, 14

*Glauser v. EVCI Ctr. Colls. Holding Corp.,*
    236 F.R.D. 184 (S.D.N.Y. 2006) ......................................................5

*In re Joint E. & S. Dist. Asbestos Litig.,*
    133 F.R.D. 425 (E.D.N.Y. 1990)......................................................14

*Kaplan v. Gelfond,*
    240 F.R.D. 88 (S.D.N.Y. 2007) .......................................................7

*Kops v. NVE Corp.,*
    No. CIV. 06-574 (MJD/JJG), 2006 WL 2035508 (D. Minn. July 19, 2006).....................9

*Lax v. First Merchs. Acceptance Corp.,*
    No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997)....................2

*Leech v. Brooks Automation, Inc.,*
    No. CIV A 06 11068, 2006 WL 3690736 (D. Mass. Dec. 13, 2006) ....................5, 6

*In re Network Assocs., Inc., Sec. Litig.,*
    76 F. Supp. 2d 1017 (N.D. Cal. 1999) ...............................................11

*In re Olsten Corp. Sec. Litig.,*
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) ...............................................2, 5, 8

*In re Orion Sec. Litig.,*
    No. 08 CIV. 1328, 2008 WL 2811358 (S.D.N.Y. July 8, 2008) ...............5

*In re Pfizer Inc. Sec. Litig.,*
    233 F.R.D. 334 (S.D.N.Y. 2005) ......................................................7

iii

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985).................................................................................................16

*Pirelli Armstrong Tire Corp Retiree Med. Benefits Trust v. LaBranche & Co.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) .............................................................................5

*In re Priceline.com, Inc.*,
    236 F.R.D. 89 (D. Conn. 2006)...............................................................................14

*In re Razorfish, Inc. Sec. Litig.*,
    143 F. Supp. 2d 304 (S.D.N.Y. 2001).....................................................................11

*Richardson v. TVIA, Inc.*,
    No. C 06 06304, 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007)...............................5

*Sakhrani v. Brightpoint, Inc.*,
    78 F. Supp. 2d 845 (S.D. Ind. 1999) ......................................................................11

*Vanamringe v. Royal Group Techs. Ltd*,
    237 F.R.D. 55 (S.D.N.Y. 2006) ...............................................................................5

*Weltz v. Lee*,
    199 F.R.D. 129 (S.D.N.Y. 2001) ...........................................................................16

## STATUTES

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ..........................................................................2, 5

## OTHER AUTHORITIES

7A Charles Alan Wright & Arthur R. Miller,
*Federal Practice and Procedure* § 1768 (2d ed. 1981) ...............................................16

iv

Class member The State Treasurer of the State of Michigan, as custodian of the Michigan Public School Employees Retirement System, the State Employees' Retirement System, the Michigan State Police Retirement System, and the Michigan Judges Retirement System ("State of Michigan Retirement Systems" or "SMRS"), is an institutional investor which suffered the largest loss as a result of its investments in American International Group, Inc. ("AIG") securities compared to all other lead plaintiff candidates. Thus, SMRS respectfully submits this memorandum in opposition to the competing motions to appoint lead plaintiff and approve lead counsel that are pending before this Court,[1] and in further support of its motion for consolidation,[2] appointment as lead plaintiff and for approval of its selection of Barrack Rodos & Bacine ("Barrack Rodos") and Bernstein Liebhard & Lifshitz, LLP ("Bernstein Liebhard") as co-lead counsel.

## PRELIMINARY STATEMENT

SMRS should be appointed as lead plaintiff and its selection of co-lead counsel should be approved. SMRS suffered a significant loss as a result of the fraud at AIG – over $109.5 million – which constitutes the largest financial interest in these actions. SMRS also satisfies the requirements of the Private Securities Litigation Reform Act ("PSLRA") and Fed. R. Civ. P. 23(a)(3) and (4) in that SMRS asserts claims that are typical of the class and has no interests that

---

[1] Competing motions for appointment as lead plaintiff were made by: (1) Ontario Teachers' Pension Plan Board ("Ontario") and Stichting Pensioenfonds Zorgen Welzijn, as represented by PGGM ("PGGM"); (2) KBC Asset Management NV ("KBC"), Union Asset Management Holding AG ("Union"), and General Retirement System of the City of Detroit ("Detroit") (collectively, "KBC Group"); (3) Oakland County, Michigan ("Oakland"); and (4) the City of Saginaw Police and Fire Pension Board ("Saginaw"). The KBC Group withdrew its motion on August 4, 2008.

[2] SMRS respectfully refers the Court to its arguments in favor of consolidating the actions given in its opening brief.

are antagonistic to the members of the class. Thus, SMRS is presumptively the most adequate class member to serve as lead plaintiff in these actions. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

This Court regularly determines financial interest on lead plaintiff motions under the seminal *Olsten* factors.[3] *See infra* at 5-7. SMRS prevails on all four *Olsten* factors when viewed against all other movants individually and on three of the four – including the fourth and most important factor, estimated losses – when viewed against the competing groups collectively. SMRS lost $109,539,775 under the last-in-first-out (LIFO) accounting method – the prevailing method used by this Court and others on lead plaintiff motions. SMRS' LIFO loss is the largest of all competing movants and movant groups. *See infra* at 7.

In recent years this Court and others have shifted to the LIFO methodology, and away from the first-in-first-out (FIFO) methodology, when determining financial interest on lead plaintiff applications. This is because, under FIFO, proceeds from sales made *during* the class period of shares bought *prior* to the class period are ignored. Thus, under FIFO, if an entity has pre-class period transactions, monies received from an applicant's initial class period sales will be excluded from the movant's transactions in the subject stock, since such sales will be "matched" against pre-class period holdings, notwithstanding that such sales were made when the stock was artificially inflated. This can increase loss figures and give a skewed vision of a movant's losses. Here, as many courts have recognized, it is significant that SMRS has the single largest financial interest in these actions based on its LIFO loss. Indeed, SMRS suffered a loss ($109 million) well over twice that of the movants with the next largest financial interests, Ontario ($47 million) and PGGM ($44 million), and $18 million more than their combined losses.

---

[3] The four factors were first promulgated in *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997), and later in *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998).

Analysis of the various corrective disclosures gives additional support to the size of SMRS's financial interest. The complaint filed by Ontario on June 19, 2008, which asserts a class period from November 10, 2006 through June 6, 2008, inclusive (the "Class Period") contains four alleged partial disclosures (February 11, 2008, February 28, 2008, May 9, 2008, and May 20, 2008) – when the truth about AIG began to be disclosed – and a final curative disclosure of June 6, 2008.[4] As more fully shown below, the shares that SMRS purchased during the Class Period and held through the times of Ontario's alleged curative disclosures, compared to the shares that Ontario and PGGM purchased during the Class Period and held through the times of Ontario's alleged curative disclosures (all calculated on the basis of the LIFO methodology that is preferred in this District), suffered significantly larger losses as a result of the price declines associated with the corrective disclosures cited in Ontario's complaint. *See infra* at 8-9. This further supports that SMRS has the largest financial interest in the relief sought in these actions.

However, it is impossible to accurately divine Ontario and PGGM's financial interest because their loss charts apparently contain errors. First, PGGM provided inconsistent pre-Class Period holding figures on its LIFO and FIFO loss charts. Second, PGGM (in one iteration of its holdings) and Ontario report the exact same opening position (2,469,089 shares) in their AIG stock holdings. This is a rather unlikely coincidence, and suggests that at least one set of the figures is reported inaccurately. An error of mixing up loss figures between two members of a group provides strong evidence of an inability to coordinate and shows why a single lead plaintiff is preferable.

---

[4] *See, e.g., Ontario* Complaint, paragraphs 92-123, within the section of the Complaint entitled "The Truth Concerning AIG's Real CDS Exposure, Losses and Accounting Begins to Emerge."

3

Third, Ontario and PGGM each report a sale of 111,231 AIG shares – the exact same figure – on June 17th and June 18th, respectively. This, too, is either an extraordinary coincidence or another significant error. Fourth, there are significant discrepancies between Ontario's reported figures and the figures that would be derived from its publicly-filed Forms 13-F during and just prior to the Class Period. *See infra* at 12-14. In total, these significant errors and discrepancies make it impossible to judge Ontario/PGGM's true financial interest, and could potentially be raised by defendants against these funds to effectively challenge their adequacy under Rule 23.

Moreover, in contrast to SMRS's status as a strong, single lead plaintiff, Ontario and PGGM are a group whose "pre-existing relationship" is very limited. Indeed, the evidence these funds provide for such a relationship consists of meeting at two investor conferences – one of which was sponsored by their current proposed co-lead counsel.

Finally, Ontario suffers from Rule 23 impediments. In 2004, Ontario bought a 50% interest in Northern Star Generation LLC ("Northern Star"), a wholly owned subsidiary of AIG Highstar Generation, LLC, which is a unit of AIG Global Investment Group. Further, AIG Financial Products Corp. ("AIGFP"), the same AIG business unit that holds the troubled CDS portfolio at issue in these actions, funded AIG's acquisition of Northern Star. Then, in April 2005, Ontario and an AIG subsidiary, AIG Highstar Capital II LP ("AIG Highstar"), formed a joint venture to purchase InterGen N.V. ("InterGen") and ten of its power plants for $1.75 billion. Thus, Ontario has a stronger pre-existing relationship with AIG, the defendant in this case, than with its proposed co-lead plaintiff, PGGM. Courts have found such financial entanglements with entities related to a defendant to create Rule 23 conflict problems sufficient to defeat lead plaintiff appointment.

In contrast to Ontario and PGGM (and all other competing movants), SMRS is a single, strong pension fund that has the largest financial interest and is not hampered by Rule 23 problems. Accordingly, SMRS should be appointed as lead plaintiff and its choice of counsel approved.

## ARGUMENT

### I.    SMRS HAS THE LARGEST FINANCIAL INTEREST AND SATISFIES RULE 23

The PSLRA provides that there is a "rebuttable presumption . . . that the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also In re Fuwei Films Sec Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008) (Sullivan, J.); *Glauser v. EVCI Ctr. Colls. Holding Corp.*, 236 F.R.D. 184, 187-89 (S.D.N.Y. 2006); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 97-98 (S.D.N.Y. 2005).

#### A.    SMRS Prevails Under The *Olsten* Factors

Courts generally look to four factors in determining which movant has the "largest financial interest" under the PSLRA. As noted, these factors, sometimes called the *Olsten* factors, are well-accepted by this Court and in courts across the country.[5]

---

[5] *See In re Orion Sec. Litig*, No. 08 CIV. 1328, 2008 WL 2811358, at *5 (S.D.N.Y. July 8, 2008) (Sullivan, J.); *Fuwei Films*, 247 F.R.D. at 436-37; *Corwin v. Seizinges*, No. 07 Civ. 6728, 2008 WL 123846, at *2 (S.D.N.Y. Jan. 8, 2008); *Bhojwani v. Pistiolis*, No. 06 Civ. 13761, 2007 WL 2197836, at *6 (S.D.N.Y. July 31, 2007) (Fox, M.J.); *In re Comverse Tech, Inc. Sec. Litig.*, No. 06 Civ. 1825, 2007 WL 680779, at *3, *7 (E.D.N.Y. Mar. 2, 2007); *Vanamringe v. Royal Group Techs. Ltd*, 237 F.R.D. 55, 58 (S.D.N.Y. 2006); *Andrada v. Atherogenics, Inc.*, No. 05 Civ. 00061, 2005 WL 912359, at *2-*3 (S.D.N.Y. Apr. 19, 2005); *Pirelli Armstrong Tire Corp Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 404 (S.D.N.Y. 2004); *Ferrari v. Impath, Inc.*, No. 03 Civ. 5667, 2004 WL 1637053, at *4 (S.D.N.Y. July 20, 2004); *see also Richardson v. TVIA, Inc.*, No. C 06 06304, 2007 WL 1129344, at *3 (N.D. Cal. Apr. 16, 2007); *Leech v. Brooks Automation, Inc.*, No. CIV A 06-11068, 2006 WL 3690736, at *3 (D. Mass. Dec. 13, 2006); *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001).

Under the *Olsten* factors, courts determine a plaintiff's financial interest by considering the following factors: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period. *See, e.g.*, *Fuwei Films*, 247 F.R.D. at 437. SMRS has the largest amounts in each of these four categories compared to all other lead plaintiffs when viewed individually, and also has the largest amounts − even when measured against the groups applying for appointment as lead plaintiffs − under factors two (net shares bought), three (net funds expended), and four (estimated losses):

| First Factor (Number of shares purchased during the Class Period) | |
| --- | --- |
| SMRS | 4,883,924 |
| Ontario | 4,040,739 |
| PGGM | 2,488,946 |
| Ontario/PGGM Totals | 6,529,685 |
| KBC | 368,915 |
| Union | 155,219 |
| Detroit | 148,625 |
| KBC Group Totals | 672,759 |
| Oakland | 37,063 |
| Saginaw | 8,230 |
| Second Factor (Net number of shares purchased during the Class Period) | |
| SMRS | 2,008,164 |
| Ontario | 1,527,790 |
| PGGM | 397,510 |
| Ontario/PGGM Totals | 1,925,300 |
| KBC | 141,696 |
| Union | 126,219 |
| Detroit | 4,335 |
| KBC Group | 272,250 |
| Oakland | 29,987 |
| Saginaw | (9,230) |
| Third Factor (Net funds expended during the Class Period) | |
| SMRS | $135,066,739 |
| Ontario | $71,750,919 |
| PGGM | $30,645,216 |
| Ontario/PGGM Totals | $102,396,135 |
| KBC | ** n/a |
| Union | n/a |
| Detroit | n/a |
| KBC Group Totals | $19,309,137 |
| Oakland | $2,128,171 |
| Saginaw | ($220,640) |

6

| Fourth Factor (Approximate Loss Suffered (AS FILED)) | | |
|---|---|---|
| Movant | LIFO Loss | FIFO Loss |
| **SMRS** | **($109,539,775)** | **($141,870,327)** |
| Ontario | ($46,698,451) | ($94,589,508) |
| PGGM | ($43,905,812) | ($61,445,016) |
| **Ontario/PGGM Totals** | **($90,604,263)** | **($156,034,524)** |
| KBC | | ($9,121,969) |
| Union | | ($4,736,562) |
| Detroit | | ($5,021,440) |
| **KBC Group Totals** | **($12,379,449)** | **($18,879,971)** |
| **Oakland\*** | **($1,123,450)** | **($1,123,450)** |
| **Saginaw\*** | **($188,662)** | **($268,680)** |

\* Saginaw and Oakland used the shorter 5/11/07 - 5/9/08 class period pled in the first three complaints, rather than the longer 11/10/06 – 6/6/08 class period pled in the *Ontario* complaint.
\*\* not available

The fourth factor is by far the most important. *Fuwei Films*, 247 F.R.D. at 437 ("This Court, like many others, 'shall place the most emphasis on the last of the four factors: the approximate loss suffered by the movant.'") (citing *Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007)). Although SMRS lists loss figures for the fourth factor under both LIFO and FIFO to include all information provided by the filers, LIFO has *indisputably* become this Court's preferred method, and SMRS clearly has the largest loss of any competing lead plaintiff applicant – whether viewed individually or collectively – under the LIFO method of calculating losses. *See, e.g.*, *Bhojwani*, 2007 WL 2197836, at \*7 ("Many courts favor the LIFO method in securities cases because, unlike FIFO, it offsets gains accrued to the plaintiffs due to the inflation of stock prices during the class period."); *Kaplan*, 240 F.R.D. at 94 n.7 ("Many courts have stated a preference for LIFO over FIFO in securities cases, since the inflation of stock prices over the course of the class period may have resulted in gains accrued to plaintiffs. As a result, FIFO may overstate actual losses suffered by stockholders, whereas LIFO takes into account these gains"); *eSpeed*, 232 F.R.D. at 101 ("more recently, courts have preferred LIFO and have generally rejected FIFO as an appropriate means of calculating losses in securities cases")

(internal quotations omitted); *see also In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 337 n.3

(S.D.N.Y. 2005); *In re Bausch & Lomb Sec. Litig.*, 244 F.R.D. 169, 173 n.4 (W.D.N.Y. 2007).[6]

As a result, under the *Olsten* factors, SMRS should be appointed as the lead plaintiff.

## B. SMRS Also Prevails When Holdings At The Currently-Alleged Disclosure Points Are Analyzed

SMRS's presumptive status as the lead plaintiff movant with the largest financial interest

is further supported by the fact that SMRS held the most shares, and suffered the greatest losses,

in total, at the times of the four currently-alleged partial disclosures and the final disclosure.  For

purposes of this analysis, SMRS took the shares purchased during the Class Period and

continued to hold on a LIFO basis on the dates of the alleged partial disclosures and the final

disclosure, based on the information contained in the lead plaintiff motion papers, and then

multiplied the resulting number of shares by the dollar amounts by which AIG's stock decline

following each of the disclosures.  This analysis shows the following:

| Damages on Disclosure Dates | | | | | | |
|---|---|---|---|---|---|---|
| | **02/11/08** | **02/28/08** | **05/09/08*** | **05/20/08** | **06/06/08** | **TOTALS** |
| SMRS Shares Held | 2,222,789 | 2,424,864 | 1,325,364 | 1,494,764 | 1,983,164 | **9,450,945** |
| Per/Share Drop | ($5.94) | ($3.29) | ($3.87) | ($1.99) | ($2.48) | |
| **SMRS (P/S Drop x's Shares Held) Totals** | **($13,203,367)** | **($7,977,803)** | **($5,129,159)** | **($2,974,580)** | **($4,918,247)** | **($34,203,155)** |
| | **02/11/08** | **02/28/08** | **05/09/08*** | **05/20/08** | **06/06/08** | **TOTALS** |
| Ontario Shares Held | 0** | 0*** | 336,990 | 758,690 | 1,527,790 | 2,623,470 |
| PGGM Shares Held | 57,130 | 57,130 | 1,462,462 | 1,643,030 | 397,510 | 3,617,262 |
| Ontario & PGGM Total Shs Held | 57,130 | 57,130 | 1,799,452 | 2,401,720 | 1,925,300 | **6,240,732** |
| Per/Share Drop | ($5.94) | ($3.29) | ($3.87) | ($1.99) | ($2.48) | |

---

[6] The only factor where SMRS arguably does not prevail (factor one-shares purchased) is the least important because the number of shares bought during the class period is only a starting point in determining an applicant's financial interest.  By itself, it bears no relation to the loss that an applicant suffered as a result of the totality of its transactions in the subject security.  As further noted above, at 3-4, and below, at 12-14, the figures presented by Ontario and PGGM are riddled with questionable data.  SMRS reserves the right to re-evaluate that data if and when Ontario or PGGM provide the Court with figures that differ from those contained in their initial motion papers.

| Ontario & PGGM (P/S Drop x's Shares Held) Totals | ($339,352) | ($187,958) | ($6,963,879) | ($4,779,423) | ($4,774,744) | ($17,045,356) |
|---|---|---|---|---|---|---|

*The Per/Share drop for the 05/20/08 disclosure was calculated by subtracting the 05/19/08 close from the 05/21/08 close - all other drops were calculated by subtracting the prior trading day's close from the close following the disclosure

**As of the close of trading on 02/10/08, Ontario had sold 492,461 more shares than it had purchased (1,552,239 purchases compared to 2,044,700 sales)

***As of the close of trading on 02/28/08, Ontario had sold 547,910 more shares than it had purchased (1,960,539 purchases compared to 2,508,449 sales)

Under this analysis SMRS suffered a loss of $34.2 million from the stock price declines associated with the partial disclosures and final disclosure alleged in this case, whereas the Ontario/PGGM group suffered an aggregate loss of $17 million – about half SMRS's loss. Notable, as well, is that Ontario did not suffer any loss from its Class Period purchases and sales as a result of the either the first or second partial disclosures of February 11, 2008 and February 28, 2008, since it was a "net seller" as of those points during the Class Period.[7] This analysis, therefore, serves to reinforce that SMRS has the largest financial interest of any lead plaintiff applicant.[8]

_____

[7] Indeed, based on the allegations in the *Ontario* Complaint and the law of loss causation as enunciated by the U.S. Supreme Court in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), Defendants could argue that any losses suffered by class members from purchases and sales of AIG stock prior to February 11, 2008, are generally not compensable in this Section 10(b) case, since any stock price decline prior to that disclosure would not be attributable to the disclosure of corrective information about the fraud pled in the *Ontario* Complaint. Here, if losses attributable to sales of shares of AIG stock purchased and sold during the Class Period before February 11, 2008, are deducted from the overall LIFO losses claimed by Ontario, PGGM and SMRS, the result is that Ontario has a compensable loss of $28.8 million, PGGM has a compensable loss of $19 million, and SMRS has a compensable loss of $105.4 million. *See* attached charts as Exhibit A. This fact further supports the conclusion that SMRS has the largest financial interest in the relief sought in these actions, which is the PSLRA standard, and therefore, the appointment of SMRS as the lead plaintiff and the denial of the motions filed by Ontario/PGGM and all other competing movants. *See, e.g., Boyd v. NovaStar Financial, Inc.*, No. 07-0139-CV-W-ODS, 2007 WL 2026130,at *3 (W.D. Mo. July 9, 2007) (examining *Dura* issues on lead plaintiff motion and holding that "if an investor buys and sells the stock after the fraud occurs and before the truth is revealed, any fluctuation in the stock price cannot be attributed to the fraud"); *see also Comverse*, 2007 WL 680779, at *3, *7; *Kops v. NVE Corp.*, No. CIV. 06-574 (MJD/JJG), 2006 WL 2035508, at *5 (D. Minn. July 19, 2006).

[8] SMRS only compares itself to Ontario/PGGM in this chart because the rest of the applicants are far behind in financial interest.

II.   **COURTS HAVE FOUND THE SINGLE LARGEST FINANCIAL
INTEREST A DETERMINING FACTOR ON LEAD PLAINTIFF MOTIONS**

SMRS respectfully submits that granting the motion of SMRS for appointment of a single

lead plaintiff would be more appropriate than the granting of any of the competing motions for

appointment of co-lead plaintiffs. First, SMRS has the largest financial interest compared to any

of the other proposed lead plaintiffs. *See supra* at Section I. Indeed, based on calculations of

loss under the LIFO method, the loss suffered by SMRS of $109 million is over double the loss

suffered by Ontario ($47 million), over double the loss suffered by PGGM ($44 million), and

many times larger than the losses suffered by each of the other proposed lead plaintiffs. *Id.*[9]

Additionally, the loss suffered by SMRS associated with the partial and final disclosures asserted

in the *Ontario* Complaint is double *the combined losses* suffered by Ontario and PGGM

associated with the same events.

Second, while SMRS recognizes that courts have often approved groups of lead plaintiff

applicants, and that the PSLRA allows a "person or group of persons" to be appointed, other

courts have concluded that there are advantages to having a single decision-maker, especially

when that decision-maker is a sophisticated, large institutional investor. In *In re Enron Corp.*

*Security Litigation*, 206 F.R.D. 427, 455 (S.D. Tex. 2002), for example, the court appointed one

institutional investor lead plaintiff, and not the two funds that jointly moved for co-lead plaintiff

---

[9] As noted in SMRS' moving papers, SMRS calculated its LIFO and FIFO losses based on its
transactions during the Class Period on an account-by-account method, which provides a more
precise loss calculation and is consistent with the methodology accepted by the court in *In re
Cigna Corp. Security Litigation*, 459 F. Supp. 2d 338 (E.D. Pa. 2006). None of the other lead
plaintiff applicants appears to have broken their transactions down by account. As a result,
SMRS is constrained to respond to the other motions based on loss calculations done on a
cumulative basis (*i.e.*, using these other applicants' listings of their transactions in AIG securities
chronologically but not broken down by account). SMRS reserves the right to review and
respond to any revised loss calculations that other applicants might proffer to the Court in their
subsequent filings including, as further noted above, any revised loss calculations that Ontario
and PGGM might submit given the apparent deficiencies in the figures they presented to the
Court in their initial motion papers.

even though the two proposed co-lead plaintiffs together had a larger loss than the appointed investor. The court based its decision, among other things, on its finding that the co-lead plaintiff movants were not the kind of "cohesive" group envisioned by the PSLRA and stated that there was no clear or persuasive reason why the movants were entitled to lead plaintiff status. *Id.* The court explained that the group aggregated its claims primarily to have the largest financial losses. *Id.* The court also found that although the two funds stated in very general terms their pre-litigation connection (*i.e.*, both were active members of the Council of Institutional Investors and worked together on corporate governance), they failed to provide any specific details about their joint work aside from their joint application for lead plaintiff. *Id.* Thus, the two funds failed to demonstrate that they had an actual pre-existing relationship that would justify their moving together as proposed co-lead plaintiffs in the *Enron* case. *Accord In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997) ("to allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff").[10]

---

[10] *See also Bhojwani*, 2007 WL 2197836, at *6 ("That [the] PSLRA does not explicitly prohibit a group of persons from being appointed lead counsel is not, in the Court's view, a sufficient reason to allow otherwise unrelated group members to aggregate their losses for the sole purpose of claiming to have the largest financial interest in the relief sought by the class"); *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 401 (S.D.N.Y. 2006) (Owen, J.) ("random cumulations of plaintiffs" may result in "case control problems and rival disagreements, resulting in delay and increased expense"); *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 308-09 (S.D.N.Y. 2001) (Rakoff, J.) (rejecting group application on the grounds that allowing an aggregation of unrelated plaintiffs to serve as lead plaintiffs would defeat the purpose of choosing a lead plaintiff and would encourage lawyers to direct the litigation); *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1025 (N.D. Cal. 1999) (court opted for a single lead plaintiff over a group with larger losses, stating that "it seems clear that Congress intended a single, strong lead plaintiff to control counsel and the litigation"); *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1111-12 (N.D. Cal. 2001) (court appointed movant with losses of $2.3 million notwithstanding that where competing groups had suffered $14 million and $15 million in losses); *Sakhrani v. Brightpoint, Inc.*, 78 F. Supp. 2d 845, 853 (S.D. Ind. 1999) (court appointed individual with largest loss over group with larger aggregate losses, stating that "this court sees no benefit in giving any weight to a mechanical aggregation of the losses of investors as a 'group of persons' whose only connection is their common losing investment").

Here, Ontario and PGGM do not have a pre-litigation relationship such that they should be appointed as co-lead plaintiffs. Indeed, the argument made in their motion papers – that Ontario and PGGM had an ongoing and pre-existing relationship prior to filing the lead plaintiff motion – is weak. In a joint declaration, Ontario and PGGM state that their relationship predates the commencement of these actions and did not originate for the purpose of seeking joint lead plaintiff status. Further, the declaration states that the parties "are familiar with each other and have participated together in numerous conferences and other fora . . . ." The declaration lists two such conferences. What the declaration does not say, however, is that one of the conferences, the Forum for Institutional Investors, was sponsored by Bernstein Litowitz Berger & Grossmann LLP, the law firm that filed Ontario's initial complaint and one of the two law firms seeking to represent Ontario, PGGM and the putative class as co-lead counsel. *See* *http://www.blbglaw.com/publications/2007FormHighlights.pdf.* The other conference, the Annual Conference of International Corporate Governance Network Conference, where Ontario and PGGM "met and socialized," was attended by almost 400 delegates from forty-nine countries. This conference, with hundreds of participants attending, is hardly the place where Ontario and PGGM could have built a meaningful relationship. Indeed, it is noteworthy that Ontario filed its own complaint, without PGGM, on June 19, 2008, and it was only at the lead plaintiff motion deadline that Ontario and PGGM joined forces to seek appointment as co-lead plaintiffs. Finally, a possible error in which both Ontario and PGGM certify that they held the exact same number of pre-Class Period shares (2,469,069) illustrates the concern of coordination problems in this particular group.

For these reasons, as well, this Court should reject the joint application submitted by Ontario and PGGM to serve as co-lead plaintiffs, and instead appoint SMRS as the sole lead plaintiff for this important litigation.

## III.    ONTARIO/PGGM'S NUMBERS ARE UNRELIABLE

As noted above, Ontario and PGGM's numbers raise serious questions about the actual amounts of their losses.  First, PGGM provided inconsistent pre-Class Period holding figures on its loss charts.  On its FIFO chart, PGGM reported pre-Class Period holdings of 2,447,104 shares – a different number than that on its LIFO chart, where it reports 2,469,089 shares as its pre-Class Period holdings.    Second, PGGM's reported opening position on its LIFO chart (2,469,089) matches exactly the opening position on both of Ontario's charts (LIFO and FIFO). This is either a very odd coincidence or yet another serious error.  Third, Ontario and PGGM each report a sale of 111,231 AIG shares – the exact same figure – on June 17th and June 18th, respectively.  This, too, appears unlikely and requires further explanation.

Fourth, Ontario's reported figures are significantly different from figures that would be calculated from a review of Ontario's publicly-filed Form 13-F and the transactional information contained in its certification.  Possibly, either the 13-F or Ontario's loss charts are mistaken. Thus, for example, whereas Ontario listed its AIG stock holdings on its Form 13-F for December 31, 2006 as 1,669,700 shares, its loss chart shows that its stock holding as of December 31, 2006 would have been 2,458,679 – a discrepancy of 788,979 shares based on its claimed opening balance as of November 10, 2006 (the start of the class period) and its transactions between that time and December 31, 2006.  Similar discrepancies are included in the following summary chart and a full chart for Ontario's figures on its loss charts versus its figures reported to the SEC is attached hereto as Exhibit B):

| 13-F Date | 13-F Holdings[11] | Cumulative Holdings | Discrepancy |
|-----------|-------------------|---------------------|-------------|
| 12/31/2006 | 1,669,700 | 2,458,679 | 788,979 |
| 3/31/2007 | 2,206,079 | 3,221,388 | 1,015,309 |

---

[11] Cumulative holdings were calculated using the opening balance for Ontario and the subsequent transactions listed in the motion papers.

| | | | |
|---|---|---|---|
| 6/30/2007 | 2,240,079 | 3,385,538 | 1,145,459 |
| 9/30/2007 | 2,630,979 | 3,781,598 | 1,150,619 |
| 12/31/2007 | 1,122,779 | 1,976,628 | 853,849 |
| 3/31/2008 | 1,300,479 | 2,238,379 | 937,900 |

All told, the errors and discrepancies appear to be not mere typographical or negligible errors – but are substantial errors calling into question the reliability of Ontario/PGGM's entire motion. Further, these serious errors not only make it impossible to judge Ontario/PGGM's true financial interest, they could be raised by defendants against these funds to challenge their adequacy under Rule 23.

## IV.    ONTARIO SUFFERS FROM A CONFLICT OF INTEREST

The application seeking appointment of Ontario and PGGM as co-lead plaintiffs should also be denied for an entirely independent reason. Ontario has a pre-existing and ongoing business relationship with AIG, which creates an inherent conflict of interest, thereby preventing it from fulfilling the adequacy requirement of Fed. R. Civ. P. 23(a) and precluding Ontario from serving as lead plaintiff in these actions. As this Court has stated:

> In order to satisfy the adequacy requirement, the lead plaintiff must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Thus, "(1) there should be no conflict between the interests of the class and the named plaintiff nor should there be collusion among the litigants . . . ."

*Fuwei Films*, 247 F.R.D. at 436. *See also In re Priceline.com Inc.*, 236 F.R.D. 89, 95 (D. Conn. 2006) ("The lead plaintiff is not the sole client in a PSLRA class action; instead, the lead plaintiff serves as a fiduciary for the entire class."). As such, "[t]he adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent") (citing *Amchem Prods.*, 521 U.S. at 625); *Albert Fadem Trust v. Citigroup, Inc.*, 239 F. Supp. 2d 344, 348 (S.D.N.Y. 2002) (identifying lack of evidence of conflicts of interest as an

14

element of Rule 23 adequacy); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997) (the court's inquiry into the adequacy of representation "serves to uncover conflicts of interest between named parties and the class they seek to represent"); *Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125, 137 (S.D.N.Y. 2003) (requiring plaintiff to demonstrate that "she has no interests that are antagonistic to the proposed class members and . . . shares the desire to vigorously prosecute the action"); *In re Joint E. & S. Dist. Asbestos Litig.*, 133 F.R.D. 425, 430 (E.D.N.Y. 1990) (stating "Rule 23 cautions against permitting potential conflicts of interest and demands unassailable loyalty and vigorous prosecution on behalf of the class").

Here, Ontario and AIG have had business relationships since 2004, when Ontario, through its subsidiary OTPPB US Power LLC, purchased a 50% interest in Northern Star, a wholly owned subsidiary of AIG Highstar Generation, LLC, which is a unit AIG Global Investment Group. *Ontario pension plan takes 50% stake in financial group buying El Paso plants*, Global Power Report, February 19, 2004. Indeed, AIGFP, the same AIG business unit that holds the troubled CDS portfolio at issue in these actions, funded AIG's acquisition of Northern Star in early 2004. *AIG Highstar Generation Transfers 50% Interest in Northern Star Generation to Ontario*, Business Wire, Feb. 17, 2004.

Approximately fourteen months later, in April 2005, while their first business relationship was still ongoing, Ontario and a subsidiary of AIG, AIG Highstar, formed a joint venture to purchase InterGen and ten of its power plants for $1.75 billion.[12] Steve Gelsi, *AIG, Ontario Teachers Buy InterGen for $1.8 Billion*, Marketwatch, April 19, 2005. Ontario and the AIG subsidiary were equal partners in the joint venture. *Id.*

---

[12] AIG subsequently sold its interest in its 2004 investment in Northern Star to UBS. *UBS fund buying into US generation assets with 50% of independent power producer*, Power Markets Week, May 21, 2007.

The Ontario/AIG joint venture business relationship was still intact when Ontario filed suit against AIG on June 19, 2008. *Ontario Teachers' Pension Plan Board v. AIG*, No. 08 Civ. 5560 (JS). It was only thereafter announced, on June 25, 2008, that AIG Highstar's 50% interest in InterGen would be acquired by a third party for $1.1 billion. *GMR Buys 50% in Power Utility InterGen for $1b*, Economic Times (India), June 27, 2008. Ontario still holds the remaining 50% of InterGen, and remains a joint venture partner – with all of the fiduciary duties that partners in a joint venture owe to each other – pending the closing of that transaction. However, the transaction through which AIG is slated to terminate its interest in InterGen is still subject to final agreement and regulatory approvals, and has not yet closed. Thus, while the announcement of the sale of AIG's interest stated that the sale is expected to close some time later this year, at this point, AIG and Ontario remain as joint venture business parties in InterGen, and there are numerous contingencies that must be cleared before that business relationship might be terminated.

As a result of these ongoing business relations, which encompass the entire Class Period pled in these actions, Ontario has a conflict and cannot meet the adequacy requirements of Rule 23(a). Through these dealings, Ontario was and remains a business partner of AIG which could influence its service as a lead plaintiff for this litigation. Clearly, claims could arise between AIG and Ontario relating to their still existing joint venture, or AIG's efforts to sell its 50% interest in its joint venture with Ontario, and Ontario may be subjected to unique defenses under Rule 23. Moreover, given the central role of AIGPF in this litigation, the fact that Ontario partnered with an AIG entity funded by AIGPF makes it all the more problematic for this Court to saddle the class with this conflicted lead plaintiff applicant.

The conflict described herein should disqualify Ontario from serving as lead plaintiff in this action. This principle is stated in the Supreme Court's decision in *Phillips Petroleum Co. v.*

*Shutts*, 472 U.S. 797, 812 (1985), where the Court held that "the Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members" (citations omitted). *See also Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) (holding that the adequacy requirement is satisfied only when the lead plaintiff candidate in question has the ability and incentive to represent the claims of the class vigorously, has obtained adequate counsel, and there is no conflict between the movant's claims and those asserted on behalf of the class); 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1768 (2d ed. 1981) ("It is axiomatic that a putative representative cannot adequately protect the class if [his] interests are antagonistic to or in conflict with the objectives of [the class he purports to represent].").

Since Ontario is an integral part of the lead plaintiff motion of Ontario and PGGM, the business relationship between Ontario and AIG provides yet another sufficient reason for this Court to deny the Ontario/PGGM application for appointment as co-lead plaintiffs. Moreover, without Ontario in the application, it is clear that SMRS has a vastly larger financial interest in the relief sought in this action when compared to PGGM.

## CONCLUSION

For the foregoing reasons and the reasons stated in its opening brief, SMRS respectfully requests that this Court: (1) consolidate the captioned, and all subsequently-filed, related actions; (2) appoint SMRS as lead plaintiff in the captioned, and all subsequently-filed, related actions; and (3) approve SMRS's selection of Barrack Rodos and Bernstein Liebhard as co-lead counsel.

17

Dated: August 7, 2008

Respectfully submitted,

**BERNSTEIN LIEBHARD & LIFSHITZ, LLP**

/s/

_____

Sandy A. Liebhard (liebhard@bernlieb.com)
Francis P. Karam (karam@bernlieb.com)
Joseph R. Seidman, Jr. (seidman@bernlieb.com)
10 East 40th Street, 22nd Floor
New York, NY  10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218

**BARRACK, RODOS & BACINE**
Regina M. Calcaterra (rcalcaterra@barrack.com)
1350 Broadway, Suite 1001
New York, NY  10018
Telephone: (212) 688-0782
Facsimile: (212) 688-0783

- and -

Leonard Barrack
Jeffrey W. Golan
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838

**Attorneys for the State Treasurer of Michigan,
Custodian of the Michigan Public School
Employees Retirement System, State Employees'
Retirement System, Michigan State Police
Retirement System, and Michigan Judges
Retirement System and [Proposed] Co-Lead
Counsel for Plaintiffs and the Class**

E. Powell Miller
Marc L. Newman
The Miller Law Firm P.C.
Miller Building
950 West University Drive, Suite 300
Rochester, MI  48307
Telephone: (248) 841-2200

18

Facsimile: (248) 652-2852

**Liaison Counsel for the State Treasurer of
Michigan, Custodian of the Michigan Public
School Employees Retirement System, State
Employees' Retirement System, Michigan State
Police Retirement System, and Michigan Judges
Retirement System**

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the attached was served upon the following counsel of record in the actions filed in this Court, First Class Mail prepaid, this 7th day of August 2008

*Attorneys for Plaintiffs:*

David Robertson Hassel
Gerald H. Silk
Noam Noah Mandel
**Bernstein Litowitz Berger & Grossmann LLP**

Jonathan Scott Shapiro
Robert Jason Shapiro
**The Shapiro Law Firm, LLP**
500 Fifth Avenue, 14th Floor
New York, NY  10110

Jeffrey Charles Zwerling
**Zwerling, Schachter & Zwerling**
41 Madison Avenue
New York, NY  10010


*Attorneys for Defendants:*

Joseph S. Allerhand
Robert F. Carangelo
**Weil Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY  10153

Christopher L. Nelson
Darren J. Check
Sean M. Handler
Stuart Berman

**Schiffrin Barroway Topaz & Kessler, LLP**
280 King of Prussia Road
Radnor, PA  19087


/s/

_____

JOSEPH R. SEIDMAN, JR.

EXHIBIT A

**American International Group, Inc. (NYSE: AIG)**

Class Period: 11/10/06 - 06/06/08
Hold price: $28.5093

**DURA ANALYSIS**

| ACCOUNT | DATE | SHARES | COST | PURCHASE AMOUNT | DATE | SHARES | SALES PRICE | SALES AMOUNT | SHARES HELD | ESTIMATED VALUE | ESTIMATED LOSSES |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | PURCHASE TRANSACTIONS | | | | SALES TRANSACTIONS | | | | | |
| **STATE TREASURER OF THE STATE OF MICHIGAN** | | | | | | | | | | | |
| MEX4 | 07/18/07 | 34,500 | 69.6200 | 2,401,890.00 | 04/24/08 | 385,054 | 47.1125 | 18,140,856.58 | (350,554) | (9,994,049.15) | 5,744,917.42 |
| | 07/18/07 | 219,279 | 69.2238 | 15,179,325.64 | 04/25/08 | 29,946 | 47.2862 | 1,416,032.55 | 189,333 | 5,397,751.30 | (8,365,541.80) |
| | 07/18/07 | 344,274 | 69.1938 | 23,821,626.30 | 04/29/08 | 20,900 | 47.2865 | 988,287.85 | 323,374 | 9,219,166.38 | (13,614,172.07) |
| | 07/18/07 | 13,900 | 69.5000 | 966,050.00 | 05/01/08 | 49,100 | 47.8325 | 2,348,575.75 | (35,200) | (1,003,527.36) | 378,998.39 |
| | 07/18/07 | 8,100 | 69.5000 | 562,950.00 | | | | | 8,100 | 230,925.33 | (332,024.67) |
| | 07/19/07 | 3,600 | 69.6600 | 250,776.01 | | | | | 3,600 | 102,633.48 | (148,142.53) |
| | 07/19/07 | 1,900 | 69.6600 | 132,354.01 | | | | | 1,900 | 54,167.67 | (78,186.34) |
| | 07/19/07 | 9,300 | 69.7000 | 648,210.00 | | | | | 9,300 | 265,136.49 | (383,073.51) |
| | 07/19/07 | 35,923 | 69.6719 | 2,502,823.66 | | | | | 35,923 | 1,024,139.58 | (1,478,684.08) |
| | 07/20/07 | 180,338 | 69.4166 | 12,518,450.81 | | | | | 180,338 | 5,141,310.14 | (7,377,140.67) |
| | 07/30/07 | 28,300 | 65.1354 | 1,843,331.82 | | | | | 28,300 | 806,813.19 | (1,036,518.63) |
| | 07/31/07 | 210,000 | 64.7957 | 13,607,097.00 | | | | | 210,000 | 5,986,953.00 | (7,620,144.00) |
| | 08/09/07 | 120,000 | 64.1537 | 7,698,444.00 | | | | | 120,000 | 3,421,116.00 | (4,277,328.00) |
| | 08/10/07 | 90,000 | 64.2856 | 5,785,704.00 | | | | | 90,000 | 2,565,837.00 | (3,219,867.00) |
| | 08/14/07 | 50,000 | 63.5961 | 3,179,805.00 | | | | | 50,000 | 1,425,465.00 | (1,754,340.00) |
| | 08/14/07 | 30,000 | 63.4306 | 1,902,918.00 | | | | | 30,000 | 855,279.00 | (1,047,639.00) |
| | 08/15/07 | 75,000 | 63.6343 | 4,772,572.50 | | | | | 75,000 | 2,138,197.50 | (2,634,375.00) |
| | 08/16/07 | 135,000 | 63.0713 | 8,514,625.50 | | | | | 135,000 | 3,848,755.50 | (4,665,870.00) |
| | 10/23/07 | 206,700 | 63.9440 | 13,217,224.80 | | | | | 206,700 | 5,892,872.31 | (7,324,352.49) |
| | 10/24/07 | 40,000 | 63.5251 | 2,541,004.00 | | | | | 40,000 | 1,140,372.00 | (1,400,632.00) |
| | 10/25/07 | 245,000 | 60.5220 | 14,827,890.00 | | | | | 245,000 | 6,984,778.50 | (7,843,111.50) |
| | 02/11/08 | 150,000 | 44.9327 | 6,739,905.00 | | | | | 150,000 | 4,276,395.00 | (2,463,510.00) |
| | 02/22/08 | 50,000 | 47.3308 | 2,366,540.00 | | | | | 50,000 | 1,425,465.00 | (941,075.00) |
| | 02/29/08 | 100,000 | 46.5276 | 4,652,760.00 | | | | | 100,000 | 2,850,930.00 | (1,801,830.00) |
| | 03/07/08 | 60,000 | 43.4296 | 2,605,776.00 | | | | | 60,000 | 1,710,558.00 | (895,218.00) |
| | 03/19/08 | 125,000 | 43.1004 | 5,387,550.00 | | | | | 125,000 | 3,563,662.50 | (1,823,887.50) |
| | 05/09/08 | 45,000 | 40.2770 | 1,812,465.00 | | | | | 45,000 | 1,282,918.50 | (529,546.50) |
| | 05/27/08 | 130,000 | 36.6608 | 4,765,904.00 | | | | | 130,000 | 3,706,209.00 | (1,059,695.00) |
| | 05/28/08 | 130,000 | 35.3673 | 4,597,749.00 | | | | | 130,000 | 3,706,209.00 | (891,540.00) |
| | 05/29/08 | 25,000 | 35.3498 | 883,745.00 | | | | | 25,000 | 712,732.50 | (171,012.50) |
| | 05/30/08 | 75,000 | 36.2099 | 2,715,742.50 | | | | | 75,000 | 2,138,197.50 | (577,545.00) |
| | 06/02/08 | 50,000 | 35.9438 | 1,797,190.00 | | | | | 50,000 | 1,425,465.00 | (371,725.00) |
| | 06/04/08 | 65,000 | 35.9372 | 2,335,918.00 | | | | | 65,000 | 1,853,104.50 | (482,813.50) |
| | 06/05/08 | 15,000 | 35.7772 | 536,658.00 | | | | | 15,000 | 427,639.50 | (109,018.50) |
| | 06/06/08 | 25,000 | 34.1043 | 852,607.50 | | | | | 25,000 | 712,732.50 | (139,875.00) |
| **MEX4 Totals** | | **3,126,114** | | **178,925,583.06** | | **485,000** | | **22,893,752.72** | **2,641,114** | **75,296,311.36** | **($80,735,518.98)** |
| MEX3 | | | | 0.00 | | | | | 0 | 0.00 | 0.00 |
| **MEX3 Totals** | | **-** | | **0.00** | | **-** | | **0.00** | **-** | **0.00** | **$0.00** |
| MEX7 | 03/20/08 | 1,200 | 42.6000 | 51,120.00 | | | | | 1,200 | 34,211.16 | (16,908.84) |
| | 05/13/08 | 64,400 | 39.1600 | 2,521,904.00 | | | | | 64,400 | 1,835,998.92 | (685,905.08) |
| | 05/20/08 | 60,000 | 38.0864 | 2,285,184.00 | | | | | 60,000 | 1,710,558.00 | (574,626.00) |
| **MEX7 Totals** | | **125,600** | | **4,858,208.00** | | **-** | | **0.00** | **125,600** | **3,580,768.00** | **($1,277,439.92)** |
| MER2 | 08/15/07 | 225,000 | 63.4126 | 14,267,835.00 | 03/24/08 | 300,000 | 46.5140 | 13,954,200.00 | (75,000) | (2,138,197.50) | (2,451,832.50) |
| | 08/16/07 | 200,000 | 62.8126 | 12,562,520.00 | 03/25/08 | 400,000 | 45.8500 | 18,340,000.00 | (200,000) | (5,701,860.00) | 75,620.00 |
| | 11/28/07 | 90,000 | 57.3864 | 5,164,776.00 | 03/26/08 | 200,000 | 44.6463 | 8,929,260.00 | (110,000) | (3,136,023.00) | 628,461.00 |

American International Group, Inc. (NYSE: AIG)

Class Period: 11/10/06 - 06/06/08                                                                                          Hold price:      $28.5093

**DURA ANALYSIS**

| ACCOUNT | DATE | SHARES | COST | PURCHASE AMOUNT | DATE | SHARES | SALES PRICE | SALES AMOUNT | SHARES HELD | ESTIMATED VALUE | ESTIMATED LOSSES |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 11/29/07 | 120,000 | 56.7496 | 6,809,952.00 | | | | | 120,000 | 3,421,116.00 | (3,388,836.00) |
| | 11/30/07 | 290,000 | 58.2400 | 16,889,600.00 | | | | | 290,000 | 8,267,697.00 | (8,621,903.00) |
| | 12/03/07 | 80,000 | 56.3849 | 4,510,792.00 | | | | | 80,000 | 2,280,744.00 | (2,230,048.00) |
| | 12/04/07 | 100,000 | 55.4449 | 5,544,490.00 | | | | | 100,000 | 2,850,930.00 | (2,693,560.00) |
| | 12/06/07 | 140,000 | 60.4087 | 8,457,218.00 | | | | | 140,000 | 3,991,302.00 | (4,465,916.00) |
| **MER2 Totals** | | **1,245,000** | | **74,207,183.00** | | **900,000** | | **41,223,460.00** | **345,000** | **9,835,708.50** | **($23,148,014.50)** |
| MBV2 | | | | 0.00 | | | | | 0 | 0.00 | 0.00 |
| **MBV2 Totals** | | **-** | | **0.00** | | **-** | | **0.00** | **-** | **0.00** | **$0.00** |
| MBV3 | 05/22/08 | 600 | 37.4665 | 22,479.90 | | | | | 600 | 17,105.58 | (5,374.32) |
| | 06/03/08 | 1,400 | 36.2367 | 50,731.38 | | | | | 1,400 | 39,913.02 | (10,818.36) |
| **MBV3 Totals** | | **2,000** | | **73,211.28** | | **-** | | **0.00** | **2,000** | **57,018.60** | **($16,192.68)** |
| MBV4 | 10/16/07 | 4,000 | 66.7900 | 267,160.00 | 03/25/08 | 100 | 46.2113 | 4,621.13 | 3,900 | 111,186.27 | (151,352.60) |
| | 11/01/07 | 100 | 60.9200 | 6,092.00 | 05/01/08 | 600 | 46.8062 | 28,083.72 | (500) | (14,254.65) | 7,737.07 |
| | 02/25/08 | 200 | 48.6700 | 9,734.00 | 05/27/08 | 3,600 | 36.7300 | 132,228.00 | (3,400) | (96,931.62) | 25,562.38 |
| | | | | 0.00 | | | | | 0 | 0.00 | 0.00 |
| **MBV4 Totals** | | **4,300** | | **282,986.00** | | **4,300** | | **164,932.85** | **-** | **0.00** | **($118,053.15)** |
| MBV6 | 10/16/07 | 2,125 | 66.7900 | 141,928.75 | | | | | 2,125 | 60,582.26 | (81,346.49) |
| | 02/11/08 | 1,875 | 45.0600 | 84,487.50 | | | | | 1,875 | 53,454.94 | (31,032.56) |
| **MBV6 Totals** | | **4,000** | | **226,416.25** | | **-** | | **0.00** | **4,000** | **114,037.20** | **($112,379.05)** |
| MLE0 | | | | 0.00 | | | | | 0 | 0.00 | 0.00 |
| **MLE0 Totals** | | **-** | | **0.00** | | **-** | | **0.00** | **-** | **0.00** | **$0.00** |
| MLE4 | | | | 0.00 | | | | | 0 | 0.00 | 0.00 |
| **MLE4 Totals** | | **-** | | **0.00** | | **-** | | **0.00** | **-** | **0.00** | **$0.00** |
| **TOTALS** | | **4,507,014** | | **258,573,587.59** | | **1,389,300** | | **64,282,145.57** | **3,117,714** | **88,883,843.74** | **($105,407,598.28)** |

Shares held as of the date of this filing are valued using the average price of $28.5093 per share.

**American International Group, Inc. (NYSE: AIG)**

Class Period: 11/10/06 - 06/06/08                                                                                               Hold price:          $28.6900

**DURA ANALYSIS**

| MOVANT | PURCHASE TRANSACTIONS | | | SALES TRANSACTIONS | | | | SHARES HELD | ESTIMATED VALUE | ESTIMATED LOSSES |
|---|---|---|---|---|---|---|---|---|---|---|
| | DATE | SHARES | COST | PURCHASE AMOUNT | DATE | SHARES | SALES PRICE | SALES AMOUNT | | | |

| MOVANT | DATE | SHARES | COST | PURCHASE AMOUNT | DATE | SHARES | SALES PRICE | SALES AMOUNT | SHARES HELD | ESTIMATED VALUE | ESTIMATED LOSSES |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Ontario Teachers' Pension Plan Board | 02/12/08 | 66,400 | 45.1507 | 2,998,006.48 | 02/13/08 | 14,549 | 46.0759 | 670,358.27 | 51,851 | 1,487,605.19 | (840,043.02) |
| | 02/14/08 | 111,300 | 45.4210 | 5,055,357.30 | 02/13/08 | 51,851 | 45.5520 | 2,361,916.75 | 59,449 | 1,705,591.81 | (987,848.74) |
| | 02/22/08 | 45,600 | 47.3143 | 2,157,532.08 | 02/20/08 | 111,300 | 47.1515 | 5,247,961.95 | (65,700) | (1,884,933.00) | 1,205,496.87 |
| | 02/22/08 | 9,900 | 47.2563 | 467,837.37 | 04/08/08 | 4,500 | 47.2370 | 212,566.50 | 5,400 | 154,926.00 | (100,344.87) |
| | 02/22/08 | 92,700 | 47.3642 | 4,390,661.34 | 06/17/08 | 111,231 | 33.6388 | 3,741,671.80 | (18,531) | (531,654.39) | (1,180,643.93) |
| | 02/25/08 | 82,400 | 49.5971 | 4,086,801.04 | | | | | 82,400 | 2,364,056.00 | (1,722,745.04) |
| | 03/11/08 | 70,000 | 43.9473 | 3,076,311.00 | | | | | 70,000 | 2,008,300.00 | (1,068,011.00) |
| | 03/18/08 | 95,500 | 41.9693 | 4,008,068.15 | | | | | 95,500 | 2,739,895.00 | (1,268,173.15) |
| | 03/25/08 | 53,000 | 46.2048 | 2,448,854.40 | | | | | 53,000 | 1,520,570.00 | (928,284.40) |
| | 03/28/08 | 98,700 | 43.5050 | 4,293,943.50 | | | | | 98,700 | 2,831,703.00 | (1,462,240.50) |
| | 04/02/08 | 156,300 | 47.3342 | 7,398,335.46 | | | | | 156,300 | 4,484,247.00 | (2,914,088.46) |
| | 04/04/08 | 70,400 | 47.2941 | 3,329,504.64 | | | | | 70,400 | 2,019,776.00 | (1,309,728.64) |
| | 04/11/08 | 247,800 | 44.7726 | 11,094,650.28 | | | | | 247,800 | 7,109,382.00 | (3,985,268.28) |
| | 05/06/08 | 97,700 | 48.1472 | 4,703,981.44 | | | | | 97,700 | 2,803,013.00 | (1,900,968.44) |
| | 05/12/08 | 268,600 | 38.0000 | 10,206,800.00 | | | | | 268,600 | 7,706,134.00 | (2,500,666.00) |
| | 05/16/08 | 111,300 | 39.2626 | 4,369,927.38 | | | | | 111,300 | 3,193,197.00 | (1,176,730.38) |
| | 05/20/08 | 41,800 | 37.9800 | 1,587,564.00 | | | | | 41,800 | 1,199,242.00 | (388,322.00) |
| | 05/21/08 | 60,200 | 37.8328 | 2,277,534.56 | | | | | 60,200 | 1,727,138.00 | (550,396.56) |
| | 05/21/08 | 154,700 | 37.3629 | 5,780,040.63 | | | | | 154,700 | 4,438,343.00 | (1,341,697.63) |
| | 05/23/08 | 369,000 | 36.9608 | 13,638,535.20 | | | | | 369,000 | 10,586,610.00 | (3,051,925.20) |
| | 05/30/08 | 59,200 | 36.2130 | 2,143,809.60 | | | | | 59,200 | 1,698,448.00 | (445,361.60) |
| | 06/05/08 | 126,000 | 36.2940 | 4,573,044.00 | | | | | 126,000 | 3,614,940.00 | (958,104.00) |
| **Ontario Teachers' Pension Plan Board Totals** | | **2,488,500** | | **104,087,099.85** | | **293,431** | | **12,234,475.27** | **2,195,069** | **62,976,529.61** | **($28,876,094.97)** |
| PGGM | 10/04/07 | 7,355 | 68.87717 | 506,591.60 | 05/13/08 | 2,386 | 39.1573 | 93,429.26 | 4,969 | 142,560.61 | (270,601.73) |
| | 10/05/07 | 39,540 | 69.48229 | 2,747,329.90 | 05/30/08 | 45,520 | 35.9973 | 1,638,597.02 | (5,980) | (171,566.20) | (1,280,299.08) |
| | 10/09/07 | 429 | 70.11249 | 30,078.26 | 05/30/08 | 1,200,000 | 35.9926 | 43,191,118.08 | (1,199,571) | (34,415,691.99) | 8,745,347.83 |
| | 10/09/07 | 2,250 | 70.11750 | 157,764.38 | 06/18/08 | 111,231 | 33.4033 | 3,715,486.17 | (108,981) | (3,126,664.89) | 431,056.90 |
| | 12/04/07 | 2,506 | 55.50190 | 139,087.77 | | | | | 2,506 | 71,897.14 | (67,190.63) |
| | 01/04/08 | 4,806 | 55.57070 | 267,072.79 | | | | | 4,806 | 137,884.14 | (129,188.65) |
| | 01/07/08 | 244 | 55.65480 | 13,579.77 | | | | | 244 | 7,000.36 | (6,579.41) |
| | 02/29/08 | 1,200,000 | 46.61452 | 55,937,425.25 | | | | | 1,200,000 | 34,428,000.00 | (21,509,425.25) |
| | 03/20/08 | 680 | 44.99500 | 30,596.60 | | | | | 680 | 19,509.20 | (11,087.40) |
| | 03/31/08 | 22,575 | 43.25250 | 976,425.19 | | | | | 22,575 | 647,676.75 | (328,748.44) |
| | 03/31/08 | 182,077 | 43.54390 | 7,928,342.68 | | | | | 182,077 | 5,223,789.13 | (2,704,553.55) |
| | 05/13/08 | 29,212 | 39.08460 | 1,141,739.34 | | | | | 29,212 | 838,092.28 | (303,647.06) |
| | 05/13/08 | 146,392 | 39.15500 | 5,731,978.76 | | | | | 146,392 | 4,199,986.48 | (1,531,992.28) |
| | 05/13/08 | 7,350 | 38.48770 | 282,884.57 | | | | | 7,350 | 210,871.50 | (72,013.07) |
| **PGGM Totals** | | **1,645,416** | | **75,890,896.86** | | **1,359,137** | | **48,638,630.53** | **286,279** | **8,213,344.51** | **($19,038,921.82)** |
| **TOTALS** | | **4,133,916** | | **179,977,996.71** | | **1,652,568** | | **60,873,105.80** | **2,481,348** | **71,189,874.12** | **($47,915,016.79)** |

EXHIBIT B

| MOVANT | DATE | SHARES | PRICE | CUMULATIVE HOLDINGS | 13-F HOLDINGS | DISCREPANCY |
|---|---|---|---|---|---|---|
| Ontario | pre-class | 2,469,089 | | | | |
| | 11/17/06 | (27,000) | 65.0000 | 2,442,089 | | |
| | 12/15/06 | 14,840 | 72.0990 | 2,456,929 | | |
| | 12/15/06 | 14,840 | 72.0990 | 2,471,769 | | |
| | 12/15/06 | (53,900) | 72.1300 | 2,417,869 | | |
| | 12/21/06 | 40,810 | 71.9581 | 2,458,679 | 1,669,700 | 788,979 |
| | 01/17/07 | 286,100 | 71.3625 | 2,744,779 | | |
| | 01/18/07 | 29,400 | 71.2683 | 2,774,179 | | |
| | 01/22/07 | 8,979 | 70.4600 | 2,783,158 | | |
| | 01/24/07 | 18,550 | 69.7520 | 2,801,708 | | |
| | 01/25/07 | 31,600 | 69.1571 | 2,833,308 | | |
| | 02/02/07 | 17,200 | 69.0662 | 2,850,508 | | |
| | 02/02/07 | 8,770 | 69.2150 | 2,859,278 | | |
| | 02/16/07 | 11,372 | 69.6283 | 2,870,650 | | |
| | 02/16/07 | 7,178 | 69.7058 | 2,877,828 | | |
| | 02/16/07 | 176,600 | 69.6031 | 3,054,428 | | |
| | 02/27/07 | 19,577 | 68.0233 | 3,074,005 | | |
| | 02/27/07 | 2,683 | 68.0451 | 3,076,688 | | |
| | 03/07/07 | 64,700 | 69.7574 | 3,141,388 | | |
| | 03/12/07 | 29,200 | 68.3817 | 3,170,588 | | |
| | 03/13/07 | 50,800 | 68.2987 | 3,221,388 | 2,206,079 | 1,015,309 |
| | 04/17/07 | 33,390 | 68.3622 | 3,254,778 | | |
| | 04/24/07 | 17,700 | 69.2206 | 3,272,478 | | |
| | 04/30/07 | 22,260 | 70.2305 | 3,294,738 | | |
| | 05/08/07 | 39,400 | 71.6473 | 3,334,138 | | |
| | 05/17/07 | 9,800 | 72.3103 | 3,343,938 | | |

| MOVANT | DATE | SHARES | PRICE | CUMULATIVE HOLDINGS | 13-F HOLDINGS | DISCREPANCY |
|---|---|---|---|---|---|---|
| | 06/15/07 | 6,500 | 72.5000 | 3,350,438 | | |
| | 06/20/07 | 35,100 | 72.1679 | 3,385,538 | 2,240,079 | 1,145,459 |
| | 07/05/07 | 385,000 | 70.1194 | 3,770,538 | | |
| | 07/25/07 | 5,700 | 67.8444 | 3,776,238 | | |
| | 07/31/07 | 20,000 | 65.2429 | 3,796,238 | | |
| | 08/01/07 | 20,000 | 63.4731 | 3,816,238 | | |
| | 08/09/07 | 31,400 | 65.5585 | 3,847,638 | | |
| | 08/09/07 | (1,400) | 65.1807 | 3,846,238 | | |
| | 08/30/07 | 1,600 | 65.3588 | 3,847,838 | | |
| | 09/18/07 | (88,500) | 65.8222 | 3,759,338 | | |
| | 09/19/07 | 22,260 | 67.7489 | 3,781,598 | 2,630,979 | 1,150,619 |
| | 10/29/07 | 3,100 | 62.8369 | 3,784,698 | | |
| | 11/05/07 | (4,500) | 60.0434 | 3,780,198 | | |
| | 11/05/07 | (120,000) | 59.9131 | 3,660,198 | | |
| | 11/12/07 | (98,600) | 57.4317 | 3,561,598 | | |
| | 11/13/07 | 24,115 | 59.1009 | 3,585,713 | | |
| | 11/19/07 | (144,000) | 55.3324 | 3,441,713 | | |
| | 11/20/07 | (230,100) | 54.8269 | 3,211,613 | | |
| | 11/21/07 | (16,300) | 51.9134 | 3,195,313 | | |
| | 11/28/07 | 7,091 | 57.5039 | 3,202,404 | | |
| | 11/28/07 | 9,838 | 57.4048 | 3,212,242 | | |
| | 11/28/07 | 2,459 | 57.4048 | 3,214,701 | | |
| | 11/28/07 | 4,727 | 57.5039 | 3,219,428 | | |
| | 11/28/07 | (234,400) | 56.5038 | 2,985,028 | | |
| | 12/03/07 | (222,300) | 56.6279 | 2,762,728 | | |
| | 12/05/07 | (111,000) | 58.1500 | 2,651,728 | | |

| MOVANT | DATE | SHARES | PRICE | CUMULATIVE HOLDINGS | 13-F HOLDINGS | DISCREPANCY |
|--------|------|--------|-------|---------------------|---------------|-------------|
|  | 12/07/07 | (107,700) | 61.4500 | 2,544,028 |  |  |
|  | 12/11/07 | (127,800) | 59.2500 | 2,416,228 |  |  |
|  | 12/12/07 | (21,100) | 58.3123 | 2,395,128 |  |  |
|  | 12/13/07 | (130,800) | 56.6878 | 2,264,328 |  |  |
|  | 12/14/07 | (176,100) | 56.0223 | 2,088,228 |  |  |
|  | 12/17/07 | 17,600 | 55.5451 | 2,105,828 |  |  |
|  | 12/18/07 | (129,200) | 55.6371 | 1,976,628 | 1,122,779 | 853,849 |
|  | 02/11/08 | (17,886) | 44.8942 | 1,958,742 |  |  |
|  | 02/11/08 | (28,603) | 45.2647 | 1,930,139 |  |  |
|  | 02/11/08 | (18,435) | 45.2550 | 1,911,704 |  |  |
|  | 02/12/08 | 66,400 | 45.1507 | 1,978,104 |  |  |
|  | 02/13/08 | (14,549) | 46.0759 | 1,963,555 |  |  |
|  | 02/13/08 | (57,700) | 45.5520 | 1,905,855 |  |  |
|  | 02/13/08 | (1,950) | 46.0000 | 1,903,905 |  |  |
|  | 02/14/08 | 111,300 | 45.4210 | 2,015,205 |  |  |
|  | 02/20/08 | (324,626) | 47.1515 | 1,690,579 |  |  |
|  | 02/22/08 | 45,600 | 47.3143 | 1,736,179 |  |  |
|  | 02/22/08 | 9,900 | 47.2563 | 1,746,079 |  |  |
|  | 02/22/08 | 92,700 | 47.3642 | 1,838,779 |  |  |
|  | 02/25/08 | 82,400 | 49.5971 | 1,921,179 |  |  |
|  | 03/11/08 | 70,000 | 43.9473 | 1,991,179 |  |  |
|  | 03/18/08 | 95,500 | 41.9693 | 2,086,679 |  |  |
|  | 03/25/08 | 53,000 | 46.2048 | 2,139,679 |  |  |
|  | 03/28/08 | 98,700 | 43.5050 | 2,238,379 | 1,300,479 | 937,900 |
|  | 04/02/08 | 156,300 | 47.3342 | 2,394,679 |  |  |
|  | 04/04/08 | 70,400 | 47.2941 | 2,465,079 |  |  |

| MOVANT | DATE | SHARES | PRICE | CUMULATIVE HOLDINGS | 13-F HOLDINGS | DISCREPANCY |
|---|---|---|---|---|---|---|
| | 04/08/08 | (4,500) | 47.2370 | 2,460,579 | | |
| | 04/11/08 | 247,800 | 44.7726 | 2,708,379 | | |
| | 05/06/08 | 97,700 | 48.1472 | 2,806,079 | | |
| | 05/12/08 | 268,600 | 38.0000 | 3,074,679 | | |
| | 05/16/08 | 111,300 | 39.2626 | 3,185,979 | | |
| | 05/20/08 | 41,800 | 37.9800 | 3,227,779 | | |
| | 05/21/08 | 60,200 | 37.8328 | 3,287,979 | | |
| | 05/21/08 | 154,700 | 37.3629 | 3,442,679 | | |
| | 05/23/08 | 369,000 | 36.9608 | 3,811,679 | | |
| | 05/30/08 | 59,200 | 36.2130 | 3,870,879 | | |
| | 06/05/08 | 126,000 | 36.2940 | 3,996,879 | | |
| | 06/17/08 | (111,231) | *33.6388* | 3,885,648 | | |