# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JACKSONVILLE POLICE AND FIRE PENSION FUND, on behalf of himself and all others similarly situated, | ) ) ) ) | **CIVIL ACTION NO. 08-CV-4772-RJS** **ECF Filed** |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO, and ROBERT LEWIS, | ) ) ) ) ) | |
| Defendants. | ) ) | |
| JAMES CONNOLLY, Individually and On Behalf of All Others Similarly Situated, | ) ) | **CIVIL ACTION NO. 08-CV-5072-RJS** |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| AMERICAN INTERNATIONAL GROUP, MARTIN J. SULLIVAN, STEVEN J. BENSINGER, JOSEPH J. CASSANO, ROBERT E. LEWIS, and DAVID L. HERZOG, | ) ) ) ) ) ) | |
| Defendants. | ) | |

(Captions continued on subsequent page)

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF ONTARIO TEACHERS' PENSION PLAN BOARD AND PGGM FOR APPOINTMENT AS LEAD PLAINTIFF AND IN OPPOSITION TO ALL OTHER MOTIONS

| | |
|---|---|
| MAINE PUBLIC EMPLOYEES RETIREMENT SYSTEM, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO, and ROBERT LEWIS,<br><br>Defendants. | **CIVIL ACTION NO. 08-CV-5464-RJS** |
| ONTARIO TEACHERS' PENSION PLAN BOARD, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO, and ROBERT LEWIS,<br><br>Defendants. | **CIVIL ACTION NO. 08-CV-5560-RJS** |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT ....................................................................................................................... 6

   I. OTPP and PGGM are the Presumptive Lead Plaintiff............................................. 6

     A. OTPP and PGGM Have the Largest Financial Interest under the FIFO and LIFO
       Methodologies..................................................................................................... 6

     B. SMRS's Asserted LIFO Financial Loss Is Artificially Inflated by an Inappropriate
       Mathematical Methodology that Is Inconsistent with SMRS's Prior Submissions and
       the Manner in which Every Other Movant Calculated Losses in This Case ................... 8

   II. OTPP and PGGM Are the Paradigmatic Lead Plaintiff Under the PSLRA and the
     Statutory Presumption Cannot Be Rebutted ...................................................... 16

CONCLUSION.................................................................................................... 19

## **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Baughman v. Pall Corp.*,
No. 07-CV-3359 (JS), 2008 WL 2244975 (E.D.N.Y. May 28, 2008)..................................6, 7

*Bhojwani v. Pistiolis*,
No. 06-CV-13761 (CM) (KNF), 2007 WL 2197836 (S.D.N.Y. June 26, 2007)......................3

*Ferrari v. Gisch*,
225 F.R.D. 599, (C.D. Cal. 2004) ..........................................................................................2

*Glauser v. EVCI Center Colleges Holding Corp.*,
236 F.R.D. 184 (S.D.N.Y. 2006) ..........................................................................................17

*In re Ambac Fin. Group, Inc.*,
No. 08 Civ. 411 (NRB), 2008 WL 2073931 (S.D.N.Y. May 9, 2008)..................................18

*In re Am. Int'l Group, Inc. Sec. Litig.*,
No. 04-CV-8141 (JES), 2008 WL 2795141 (S.D.N.Y. July 18, 2008) ............................5, 17

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.,* No. 02-CV-5575 (SWK),
2006 WL 903236 (S.D.N.Y. April 6, 2006) ............................................................................4

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ...........................................................................................9, 13

*In re Cigna Corp. Sec. Litig.*,
459 F. Supp. 2d 338 (E.D. Pa. 2006) .........................................................................8, 14, 15

*In re Doral Fin. Corp. Sec. Litig.*,
414 F. Supp. 2d 398 (S.D.N.Y. 2006)....................................................................................7

*In re eSpeed, Inc. Sec. Litig.*,
232 F.R.D. 95 (S.D.N.Y. 2005) ...............................................................................7, 13, 14

*In re Fuwei Films Sec. Litig.*,
247 F.R.D. 432 (S.D.N.Y. 2008) .................................................................................. *passim*

*In re Orion Sec. Litig.*,
No. 08-CV-1238 (RJS), 2008 WL 2811358 (S.D.N.Y. July 8, 2008)........................... *passim*

*In re Veeco Instrs., Inc.*,
233 F.R.D. 330 (S.D.N.Y. 2005) ......................................................................................6, 7

*Thompson v. Shaw Group, Inc.*,
    No. Civ.A.04-1685 (HGB), 2004 WL 2988503 (E.D. La. Dec. 14, 2004)..........................7, 11

*Vladimir v. Bioenvision, Inc.*,
    No. 07-CV-6416 (SHS) (AJP), 2007 WL 4526532 (S.D.N.Y. Dec. 21, 2007)..............2, 6, 14

*Weiss v. Friedman, Billings, Ramsey Group, Inc.*,
    No. 05-CV-4617 (RJH), 2006 WL 197036 (S.D.N.Y. Jan 25, 2006).......................................6

*Wight v. BankAmerica Corp.*,
    219 F.3d 79 (2d Cir. 2000).......................................................................................................10

## STATUTES

15 U.S.C. § 78bb(e)(1)..............................................................................................................10

15 U.S.C. § 78u-4 ............................................................................................................ *passim*

Fed. R. Civ. P. 23 ..................................................................................................................1, 5

## PRELIMINARY STATEMENT

Presently before the Court in this securities class action against American International Group, Inc. ("AIG") are five motions for appointment as lead plaintiff under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Pursuant to the PSLRA, the movant with the "largest financial interest" in the action who also meets the typicality and adequacy requirements of Rule 23 is presumptively entitled to appointment as the lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii); *see In re Orion Sec. Litig.*, No. 08-CV-1238 (RJS), 2008 WL 2811358, at *4 (S.D.N.Y. July 8, 2008) (Sullivan, J.); *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008) (Sullivan, J.). This Court has held that the critical consideration in determining the relative financial interests of lead plaintiff movants is their approximate financial loss. *See Orion*, 2008 WL 2811358, at *5; *Fuwei*, 247 F.R.D. at 437.

Ontario Teachers' Pension Plan Board ("OTPP") and Stichting Pensioenfonds Zorg en Welzijn, duly represented by PGGM Vermogensbeheer B.V. ("PGGM"), have the largest financial loss of any movant, satisfy the adequacy and typicality requirements of Rule 23, and are, therefore, the presumptive Lead Plaintiff.[1] Specifically, under the "first in first out" ("FIFO") and "last in first out" ("LIFO") methodologies accepted in the Southern District of New York, OTPP and PGGM have a loss of approximately $156 million on a FIFO basis and approximately $90.5 million on a LIFO basis.

---

[1] In addition to the motion of OTPP and PGGM, the other movants are: (i) the State of Michigan Retirement Systems ("SMRS"); (ii) the AIG Institutional Investor Group; (iii) Oakland County; and (iv) the City of Saginaw Police and Fire Pension Board ("Saginaw"). Since filing its motion, the AIG Institutional Investor Group has filed papers acknowledging that it does not have the largest financial interest in this action. Likewise, Oakland County and Saginaw each assert a *de minimis* financial interest in comparison to OTPP and PGGM.

No movant claims a higher loss under the FIFO methodology, and OTPP and PGGM should be appointed as Lead Plaintiff on this basis alone. Further, only one movant, SMRS,[2] *claims* an ostensibly larger financial loss than OTPP and PGGM under LIFO. Specifically, SMRS asserts a LIFO loss of $109 million, which, on its face, exceeds the LIFO loss sustained by OTPP and PGGM. But SMRS's asserted FIFO and LIFO loss figures are ***not correct*** and are calculated in a manner specifically designed to manipulate SMRS's purported loss figure. When properly calculated, SMRS's losses are significantly lower (under both the FIFO and LIFO methodologies) than those sustained by OTPP and PGGM, as reflected in the following chart:

| MOVANT | FIFO LOSS | LIFO LOSS |
|---|---|---|
| OTPP and PGGM | $155,961,436.08 | $90,531,174.80[3] |
| SMRS | $144,336,357.65 | $77,452,513.91[4] |

Here, SMRS manipulated its calculation to inflate its LIFO loss. Rather than calculating its loss on an aggregate "one fund" basis—as every other movant did and as SMRS itself has

---

[2] SMRS is comprised of the Michigan Public School Employees Retirement System, the Michigan State Employees' Retirement System, the Michigan State Police Retirement System, and the Michigan Judges Retirement System.

[3] Although the PSLRA-required certifications of OTPP and PGGM are accurate, the loss calculations originally submitted by OTPP and PGGM contained two inadvertent typographical errors. These errors resulted in no material change to the loss figures asserted by OTPP and PGGM. First, PGGM's LIFO loss calculation chart inadvertently listed an incorrect number of shares as PGGM's pre-class holdings. The correct number, consistent with the pre-class purchases listed in PGGM's FIFO chart, is 2,447,104. This misprint has no impact on PGGM's stated LIFO loss, which remains the same. *See* Corrected PGGM LIFO loss calculation chart, attached as Ex. A to the Supplemental Declaration of Gerald H. Silk in Further Support of the Motion of OTPP and PGGM for Appointment as Lead Plaintiff ("Silk Supp. Decl."). Second, OTPP's FIFO and LIFO loss calculation charts set forth a sale on June 17, 2008 of 111,231 shares. The correct figure is 126,000 shares, which lowers OTPP's FIFO and LIFO figures by only $73,088.09. *See* Corrected OTPP FIFO and LIFO loss calculation charts, attached as Ex. B to the Silk Supp. Decl. It is well established that such immaterial typographical errors have no bearing on the analysis under the PSLRA. *See, e.g., Vladimir v. Bioenvision, Inc.*, No. 07-CV-6416 (SHS) (AJP), 2007 WL 4526532, at *9 (S.D.N.Y. Dec. 21, 2007) (allowing movant to submit revised certification to correct typographical errors); *Ferrari v. Gisch*, 225 F.R.D. 599, 605 (C.D. Cal. 2004) (appointing a group as lead plaintiff, holding that "[t]he relatively minor miscalculations do not serve as a basis for disqualifying . . . [a movant from consideration as a lead plaintiff].") (*citing In re Advanced Tissue Sciences Sec. Litig.*, 184 F.R.D. 346, 351 n.12 (S.D.Cal.1998)).

[4] Correct calculations of SMRS's financial losses under the aggregate method consistent with the submissions of the other movants herein are attached as Ex. C to the Silk Supp. Decl.

done in every other lead plaintiff motion it has ever filed—SMRS performed individual loss calculations for ten of its trading "accounts" and then added the loss derived for each of these accounts together to arrive at its asserted financial loss. This "account-by-account" method has the impact of significantly exaggerating SMRS's LIFO loss while slightly reducing its FIFO loss. Indeed, SMRS's account-by-account methodology inflated its LIFO loss from $77.4 million to $109 million, representing an increase of more than 40%, or approximately $31.4 million.

SMRS's account-by-account methodology is improper and should be rejected. The methodology is not supported by the facts or the well-established conventions in this District for calculating and comparing the losses of lead plaintiff movants in a uniform and consistent manner under the PSLRA. We are unaware of any court in this District ever appointing an institutional investor as lead plaintiff based on loss calculations performed under the account-by-account method, and a survey of the last two years' worth of lead plaintiff motions submitted in this District by institutional investors claiming losses on equity investments reveals that the loss calculations filed in every one of these cases were conducted on an aggregate basis. This uniformity of practice is in harmony with the language of the PSLRA, which requires the Court to appoint the "person"—not the account—with the largest financial interest in the relief sought by the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii). Here, it is SMRS, not any "account," that is seeking appointment as Lead Plaintiff.

SMRS knows full well the proper method for calculating losses on a motion for appointment as lead plaintiff under the PSLRA. It has previously sought appointment as a lead plaintiff under the PSLRA on three occasions and in each of these prior motions SMRS presented its loss calculations on an aggregate basis. Two of these prior motions were filed in this courthouse—one in 2004 in the previous securities class action against AIG (the "*AIG I*"

action) before the Honorable John E. Sprizzo, and the other ***only two months ago*** before the Honorable Robert W. Sweet in the Bear Stearns & Co. securities class action.  These prior submissions demonstrate unequivocally that SMRS knows precisely how to calculate its losses correctly and its shift to an inconsistent account-by-account methodology appears to have occurred for no reason other than to inflate its LIFO loss.  The manipulation of loss calculations to gain an unfair advantage should not be tolerated.  *See, e.g., Bhojwani v. Pistiolis*, No. 06-CV-13761 (CM) (KNF), 2007 WL 2197836, at *7 (S.D.N.Y. June 26, 2007) ("Determining the method of analysis is important because prospective lead plaintiffs may manipulate their analysis in order to inflate their measure of damages, thereby gaining an advantage over movants who use a different method of assessing damages.") (*quoting In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.,* No. 02-CV-5575 (SWK), 2006 WL 903236, at *18 (S.D.N.Y. April 6, 2006) (internal quotation marks omitted)).

SMRS's fund structure likewise supports its prior use of the aggregate loss calculation methodology and undermines its creative attempt to inflate its claimed LIFO loss.  SMRS's own public statements demonstrate that it is a unified fund with commingled assets that operates and holds itself out as a single investor.  Indeed, SMRS files its holdings with the U.S. Securities and Exchange Commission ("SEC") on an aggregated fund-wide basis, and not on the basis of any of its individual accounts.  It is for this reason that—unlike its manipulated loss calculations—the sworn certification submitted by SMRS in this action does not segregate its transactions into accounts and, instead, provides all of its class period transactions in AIG stock in the aggregate, as required by the PSLRA.

When calculated using the consistently-applied aggregate methodology that SMRS has previously used, SMRS's financial losses are indisputably lower than those of OTPP and PGGM.

Accordingly, under the standard articulated in *Orion* and *Fuwei*, OTPP and PGGM have the largest financial interest, satisfy the adequacy and typicality requirements of Rule 23, and are entitled to the lead plaintiff presumption afforded by the PSLRA.  15 U.S.C. § 78u-4(a)(3)(B); *Orion*, 2008 WL 2811358, at *5; *Fuwei*, 247 F.R.D. at 437.

The presumption afforded OTPP and PGGM cannot be rebutted.  There is simply no "proof," as required by the PSLRA, that OTPP and PGGM will not fairly and adequately protect the interests of the Class or are otherwise subject to unique defenses.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  To the contrary, OTPP and PGGM—both among the largest and most sophisticated institutional investors in the world—have shown themselves to be vigorous advocates of the interests of the Class from the earliest stages of this action.  OTPP is the only movant that filed a complaint in this action.  OTPP and PGGM, themselves and through their counsel, committed significant resources to ensuring that this action was not combined, to the detriment of the Class, with *AIG I.  See In re Am. Int'l Group, Inc. Sec. Litig.*, No. 04-CV-8141 (JES), 2008 WL 2795141, at *5 (S.D.N.Y. July 18, 2008) (denying motion to amend operative complaint in *AIG I*).  OTPP and PGGM have further submitted a Joint Declaration detailing their efforts and willingness to serve on behalf of their fellow Class members and, as set forth in that declaration, have been and continue to be in almost daily contact with their counsel and each other concerning this matter.  In sum, OTPP and PGGM are ideally situated to represent and promote the interests of their fellow Class members, have the largest financial interest in this action, and should be appointed as Lead Plaintiff.

## ARGUMENT

### I.    OTPP and PGGM Are the Presumptive Lead Plaintiff

The PSLRA directs that the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be…the 'most adequate plaintiff'"— *i.e.*, the movant(s) that the Court determines is "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA requires further that the Court "shall adopt a presumption that the most adequate plaintiff…is the person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the [adequacy and typicality] requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii); *Orion*, 2008 WL 2811358, at *4; *Fuwei*, 247 F.R.D. at 436.

### A.    OTPP and PGGM Have the Largest Financial Interest under the FIFO and LIFO Methodologies

OTPP and PGGM have the largest financial interest of any movant in this action, by virtue of their approximately $156 million FIFO and $90.5 million LIFO loss. OTPP and PGGM are therefore entitled to the PSLRA's presumption and should be appointed as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B).

As this Court has held, the central consideration on a motion for appointment as lead plaintiff is the approximate financial loss of the movants. *See, e.g., Orion*, 2008 WL 2811358, at *5 ("This Court, like many others, shall place the most emphasis on…the approximate losses suffered by the movant.") (*quoting Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007)) (internal quotation marks omitted); *Fuwei*, 247 F.R.D. at 437 (same); *see also Weiss v. Friedman, Billings, Ramsey Group, Inc.*, No. 05-CV-4617 (RJH), 2006 WL 197036, at *3 (S.D.N.Y. Jan. 25, 2006) ("The amount of financial loss is the most significant of

6

the…elements.") (internal citation and quotation marks omitted); *Baughman v. Pall Corp.*, No. 07-CV-3359 (JS), 2008 WL 2244975, at *3 (E.D.N.Y. May 28, 2008).

Courts in this District have endorsed two methodologies for calculating the approximate financial losses of movants in the context of lead plaintiff motions under the PSLRA—the FIFO and LIFO methods. *See, e.g., Bioenvision*, 2007 WL 4526532, at *5 ("To determine a class member's approximate losses in the context of securities class actions, courts employ two accounting methods: First-In-First-Out ('FIFO') and Last-In-First-Out ('LIFO')."). The FIFO method has been the traditional method accepted historically for purposes of appointing a lead plaintiff under the PSLRA. *See, e.g., In re Veeco Instrs., Inc.*, 233 F.R.D. 330, 333 (S.D.N.Y. 2005) ("FIFO is the appropriate methodology to apply in matching purchases and sales for the purpose of considering the financial stake of a movant for lead plaintiff status, just as it is the well-settled methodology for computing losses on securities for tax purposes."); *see also Baughman*, 2008 WL 2244975, at *3 n.2 ("All approximations of loss incurred were calculated under the 'first in first out' ('FIFO') method"); *Thompson v. Shaw Group, Inc.*, No. Civ.A.04-1685 (HGB), 2004 WL 2988503, at *4 (E.D. La. Dec. 14, 2004) (explaining that FIFO is the "status quo method" of loss calculation for lead plaintiff motions). In recent years, several courts in this District have endorsed the LIFO method over FIFO. *See, e.g., In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 403 n.7 (S.D.N.Y. 2006) (explaining that FIFO "has fallen out of favor in this district"); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005) ("The main advantage of LIFO is that, unlike FIFO, it takes into account gains that might have accrued to plaintiffs during the class period due to the inflation of the stock price. FIFO…ignores sales occurring during the class period and hence may exaggerate losses.").

Irrespective of which method is adopted, as set forth above, OTPP and PGGM have the largest financial losses of any movant under *either* FIFO *or* LIFO. As noted above, no movant asserts a larger FIFO financial loss than OTPP and PGGM—a sufficient basis on its own for appointing OTPP and PGGM as Lead Plaintiff. *See, e.g., In re Veeco Instrs., Inc.*, 233 F.R.D. at 333. SMRS, with its smaller FIFO loss than OTPP and PGGM, *purports* to have a larger LIFO loss. As explained below, however, SMRS's loss calculations are greatly exaggerated and entirely inconsistent with, among other things, the method accepted in this District and universally employed by institutional investors to present losses on lead plaintiff motions, as well as SMRS's own past and present lead plaintiff motions in other cases.

**B.    SMRS's Asserted LIFO Financial Loss Is Artificially Inflated by an Inappropriate Mathematical Methodology that Is Inconsistent with SMRS's Prior Submissions and the Manner in which Every Other Movant Calculated Losses in This Case**

SMRS's asserted LIFO financial loss is inflated by more than $31 million by its use of an inappropriate and misleading mathematical methodology. Although SMRS claims to present its losses on the basis of standard FIFO and LIFO calculations, in reality SMRS has computed its asserted loss in an unprecedented manner that distorts its financial loss by treating SMRS as if it were ten separate entities rather than a single investor seeking appointment as Lead Plaintiff. To do so, SMRS isolates ten of its comingled investment accounts and calculates each of their losses independently, as if each account were a separate free-standing investor.[5]

OTPP and PGGM have been unable to identify a single case, in the Southern District or any other court, in which SMRS's method of calculation—of "disaggregating" itself for purposes

---

[5] To the extent SMRS asks the Court to consider its individual accounts as candidates for appointment as Lead Plaintiff, SMRS has failed to provide any information concerning these accounts other than their code names, as follows: MEX4; MEX3; MEX7; MER2; MBV2; MBV3; MBV4; MBV6; MLE0; and MLE4. These code names alone provide a wholly insufficient basis for the Court or any competing movant to assess the adequacy or typicality of any of these accounts.

of calculating its losses—has been accepted, and institutional investors seeking appointment as lead plaintiff in this District invariably calculate their losses in the aggregate.[6]  Indeed, a survey of every lead plaintiff motion filed by one or more institutional investor(s) claiming losses on equity investments in this District during the last two years reveals that every such motion was supported by each institution's aggregate losses.  *See* Chart of all motions for appointment as lead plaintiff filed by institutional investors claiming losses on equity investments in the Southern District of New York in 2007 and 2008, attached as Ex. D to the Silk Supp. Decl.  Along similar lines, the lead plaintiff motions in the most significant and well-known recent cases from this District—including those in the securities class actions involving WorldCom, Inc., Nortel Networks Corporation, Refco, Inc., Citigroup, Inc., and UBS AG—were all based on aggregate loss calculations.  *See* Chart of additional notable motions for appointment as lead plaintiff in the Southern District of New York, attached as Ex. E to the Silk Supp. Decl.  Courts require lead plaintiff movants to present their losses in a consistent manner.  *See, e.g., In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002) ("[T]o make this comparison, the district court must calculate each potential lead plaintiff's financial interest in the litigation.  In so doing, the court may select accounting methods that are both rational and consistently applied.").

SMRS's own history of lead plaintiff motions is consistent with the aggregate method of calculation—and entirely inconsistent with its calculations in this case.  In 2004, SMRS sought to serve as the lead plaintiff in this District in the earlier-filed *AIG I* securities class action presently pending before Judge Sprizzo, *In re American International Group, Inc. Sec. Litig.,*

---

[6] Case law research likewise failed to reveal a single case outside the Southern District of New York in which an institutional investor was appointed as lead plaintiff on the basis of non-aggregate loss calculations.  Indeed, even in *In re Cigna Corp. Sec. Litig.*, 459 F. Supp. 2d 338 (E.D. Pa. 2006), discussed *infra*, which is the only case cited by SMRS in support of its account-by-account calculations, all of the lead plaintiff movants submitted their loss calculations in the aggregate.

No. 04-CV-8141 (S.D.N.Y.).   SMRS's lead plaintiff motion in that action was premised exclusively, and properly, on an aggregate calculation of its losses under FIFO.   *See* Ex. F to the Silk Supp. Decl.   In 2005, SMRS submitted a motion for appointment as lead plaintiff in the HealthSouth Corporation securities class action in the Northern District of Alabama.   SMRS's loss calculations in the *HealthSouth* action were again calculated properly on an aggregate basis under FIFO.   *See* Ex. G to the Silk Supp. Decl.   Most recently, **only two months ago**, SMRS submitted another lead plaintiff motion in the Southern District of New York in the securities class action against Bear Stearns & Co. presently before Judge Sweet, *Eastside Holdings Inc., v. The Bear Stearns Companies Inc., et al.*, No. 08-CV-2793 (S.D.N.Y.).   Once again, the *Bear Stearns* lead plaintiff motion, which is *sub judice*, is supported by SMRS's aggregate financial losses.   *See* Ex. H to the Silk Supp. Decl.[7]

Consistent with the uniform practice by SMRS and other institutional investors of calculating financial losses in the aggregate for purposes of lead plaintiff motions, the plain language of the PSLRA supports the view that an investor's losses must be calculated for the investor as a whole and, in contrast, offers no basis for a single investor to artificially disaggregate its transactions in the subject securities into separate accounts in order to derive an inflated loss figure.   Such a practice masks the economic reality that the investor is a single entity that can only have one "financial interest."   For example, the PSLRA requires appointment of the "**member** or **members**" of the class that are most adequate, as well as the "**person** or group of **persons**" with the largest financial interest—terms that contemplate the investor in its entirety.

---

[7] Given SMRS's repeated reliance on the aggregate method of calculation in these other judicial proceedings, there is good cause to bar SMRS from relying on a different method of calculation in this case under the doctrine of judicial estoppel. *See, e.g., Wight v. BankAmerica Corp.*, 219 F.3d 79, 89 (2d Cir. 2000) ("Judicial estoppel is designed to prevent a party who plays fast and loose with the courts from gaining unfair advantage through the deliberate adoption of inconsistent positions in successive suits.").

15 U.S.C. § 78u-4(a)(3)(B)(i), (iii) (emphasis added).  In contrast, the statute makes no mention of "accounts" or any other vehicle through which an investor might own securities.  *Id.*[8]  Thus, the PSLRA regards each investor seeking lead plaintiff appointment as a single entity—*i.e.*, in the aggregate.[9]  In contrast to the plain language of the PSLRA, SMRS's calculations manipulate its losses by isolating the financial interest of ten accounts holding AIG securities and treating these accounts as though each is an autonomous investor.

In fact, and contrary to its account-by-account loss calculations, SMRS is a unified retirement system that invests assets, discloses holdings, conducts litigation, and otherwise holds itself out to the world as a single institutional investor.  Numerous publicly available facts reflect SMRS's status as a single investor:

- <u>Comingled Accounts</u>:  SMRS is composed of four underlying funds, each of which is responsible for the retirement savings of a different category of public employee in the State of Michigan.  SMRS combines and invests these funds' assets in securities collectively through a series of commingled accounts.  As the annual reports for each of the SMRS funds explain, their "investments are commingled in various pooled accounts. Amounts, par value and number of shares represent the System's pro-rata share based on ownership of the investment pools."  *See* Ex. I to the Silk Supp. Decl.  Thus, the ten accounts that SMRS's loss calculations purport to treat as free-standing entities are, in fact, the commingled accounts of a single investor, SMRS.

- <u>Transfers Among Accounts</u>:  As the loss calculations submitted by SMRS themselves reveal, SMRS freely transfers securities among its commingled accounts.  Further, SMRS does not treat the movement of these securities between accounts as arms' length purchases and sales.  Rather, they are simply treated as internal transfers of securities with no impact on the accounts' profit and loss statement.  There is, thus, no justification for treating each of these accounts as a separate entity.  Rather, these accounts are an integrated set of vehicles through which SMRS itself holds and invests in securities.  *See*

---

[8] Significantly, the term "account" is used in other provisions of the Securities Exchange Act of 1934, indicating that Congress knows how to refer to an "account" when that is its intent.  *See, e.g.,* 15 U.S.C. § 78bb(e)(1) ("No person…in the exercise of investment discretion with respect to an ***account*** shall be deemed to have acted unlawfully or to have breached a fiduciary duty….") (emphasis added).

[9] Cases interpreting the PSLRA support the same conclusion.  *See, e.g., Thompson v. Shaw Group, Inc.*, 2004 WL 2988503, at *4 ("Under the LIFO approach, a ***plaintiff's*** sales of the defendant's stock during the class period are matched against the last shares purchased, resulting in an off-set of class-period gains from a ***plaintiff's*** ultimate losses.") (emphasis added).

Loss calculations submitted by SMRS, attached as Exhibit 4 to the Declaration of Joseph R. Seidman in Support of SMRS's Motion for Appointment as Lead Plaintiff ("Seidman Decl.") (Dkt. #16).

- <u>SEC Filings</u>:  SMRS discloses its share holdings to the investing public on a quarterly basis on SEC Form 13F.  SMRS's Form 13F filings consistently set forth SMRS's aggregate share holdings, without any distinction concerning the accounts in which the securities are held.  A review of SMRS's 13F filings reveals no information concerning the accounts in which SMRS's securities are held, instead only disclosing SMRS's holdings in the aggregate.  *See* Ex. J to the Silk Supp. Decl.

- <u>Litigation</u>:  SMRS's conduct in securities class actions likewise reveals that SMRS regards its own holdings in the aggregate.  For example, the PSLRA-required certification submitted in this action—just like the certifications submitted in *AIG I*, *HealthSouth*, and *Bear Stearns*—simply lists all of SMRS's relevant transactions in the aggregate without any breakdown by account or other subdivision.  Further, as discussed above, SMRS's loss calculations in connection with lead plaintiff motions in other securities class actions have uniformly been performed in the aggregate.

- <u>Disclosure of Asset Distribution</u>:  Numerous other public disclosures by SMRS likewise deal with SMRS's investments on an aggregate basis.  For example, SMRS annually discloses its asset allocation, market value, and asset allocation by market value, all on an aggregate basis.  *See* Ex. K to the Silk Supp. Decl.  Along similar lines, SMRS annually discloses its "active" equity investments; "passive" U.S. equity investments; international equity investments; "alternative" investments; equity real estate investments; and fixed income holdings—all on an aggregate basis. *See* Exs. L, M, N, O, P and Q, respectively, to the Silk Supp. Decl.[10]   In contrast, SMRS makes no disclosure concerning the allocation of investments in any specific account.

- <u>Public Statements</u>:  SMRS consistently refers to itself and describes its activities as those of a single investor.  For example, in its July 22, 2008 press release touting its filing of a lead plaintiff motion in this action, SMRS stated that the "State of Michigan Retirement Systems…holds combined assets of approximately $60 billion, making the SMRS one of the largest pension systems in the nation."   Given public statements such as these, SMRS's contemporaneous effort to deal with SMRS's accounts as if each were a separate investor is unavailing.  *See* Ex. R to the Silk Supp. Decl.

- <u>Proxy Voting</u>:  SMRS—not any account or other subdivision of the fund—directly casts proxy votes in connection with SMRS's aggregate holdings.  *See* Ex. S to the Silk Supp. Decl.  In connection with voting its aggregate interest in its public shareholdings, SMRS maintains a system-wide "Proxy Voting Policy" that establishes the principles upon which SMRS is to cast its aggregated votes.  *See* Ex. T to the Silk Supp. Decl.

---

[10] The documents attached as Exhibits K through Q to the Silk Supp. Decl. may also be found on the website of the Bureau of Investments of the Department of Treasury of the State of Michigan, *available at* http://www.michigan.gov/treasury/0,1607,7-121-1753_37621---,00.html.

In light of the above, there is no reasonable basis for disputing that SMRS is a single unitary investor. SMRS's account-by-account loss calculations are, therefore, unfounded and should not be permitted. *See Cavanaugh*, 306 F.3d at 730 n.4 (calculation of financial interest must be consistent and rational).

SMRS's inflation of its LIFO loss by over $31 million through its account-by-account calculation is impermissible creative accounting. The LIFO method assumes that the shares most recently purchased are the first to be sold. Thus, under normal circumstances, LIFO takes the proceeds of class period sales into account by netting them against prior class period purchases, thereby reducing the amount of loss by the value of the proceeds of sales during the class period. *See, e.g.*, *eSpeed*, 232 F.R.D. at 101. All things being equal, the greater the number of class period sales that are netted against class period purchases, the lower the economic loss. Conversely, decreasing the number of class period sales that are netted against class period purchases generally increases the economic loss.

By artificially segregating its transactions by account, however, SMRS is able to significantly reduce the number of class period sales that are netted against class period purchases, thus removing the proceeds of these sales from the loss calculation and dramatically increasing the LIFO figure.[11] According to the PSLRA-required certification filed by SMRS with its motion, SMRS sold a total of 2,875,760 shares during the class period. *See* Certification

---

[11] Notably, the principal justification for the preference many courts in this District have expressed for LIFO is that LIFO, by offsetting class period sales against class period purchases, prevents the exaggeration of losses said to be associated with FIFO. *See, e.g., eSpeed*, 232 F.R.D. at 101; *see also Bioenvision*, 2007 WL 4526532, at *5 ("Many courts favor the LIFO method to calculate the financial stake of movants for lead plaintiff status in securities class actions. Unlike FIFO, LIFO offsets gains accrued to the plaintiffs due to the inflation of stock prices during the class period…. While FIFO may overstate actual losses suffered by stockholders, LIFO takes into account gains and can disregard losses that are not causally related to the misstatement claims."). Thus, by preventing class period sales from netting against class period purchases, SMRS's new account-by-account method end-runs the fundamental rationale of a LIFO loss calculation.

of SMRS, attached as Ex. 3 to the Seidman Decl. (Dkt. #16).  Under an aggregate LIFO calculation—*i.e.*, a calculation consistent with the submissions of every other movant herein and with SMRS's own practices in other cases—every one of these sales is netted against a class period purchase, resulting in a LIFO loss of approximately $77 million.  *See* Calculation of aggregate LIFO losses of SMRS, reflecting netting of all class period sales, attached as Ex. U to the Silk Supp. Decl.[12]  In contrast, under SMRS's novel account-by-account calculations, only 1,763,960 class period sales are netted against class period purchases.  *See* Loss calculations submitted by SMRS, attached as Exhibit 4 to the Seidman Decl. (Dkt. #16).  Thus, under the calculations submitted by SMRS herein, the proceeds of fully 1,111,800 AIG shares sold by SMRS during the class period are simply removed from the analysis, thus exaggerating SMRS's asserted LIFO loss by over 40%.[13]

Realizing the novel nature of its loss calculation methodology, SMRS preemptively cites, in a footnote, to an inapposite summary judgment decision from another jurisdiction—*In re Cigna Corp. Sec. Litig.*, 459 F. Supp. 2d 338 (E.D. Pa. 2006)—that has no bearing on this lead plaintiff motion.  That decision does not, as SMRS claims, endorse measuring losses for each

---

[12] Exhibit U to the Silk Supp. Decl. presents in detail the calculations underlying and supporting the aggregate LIFO figures set forth in the LIFO loss chart attached as Exhibit C to the Silk Supp. Decl.  The detail set forth in Exhibit U identifies the specific class period purchases against which the proceeds of each class period sale are required to be netted under a standard aggregate LIFO calculation.  These detailed calculations demonstrate that, when properly calculated in the aggregate, all of SMRS's class period sales of AIG stock are netted against its prior class period purchases, resulting in a LIFO loss figure that is 40% lower than the inflated account-by-account LIFO loss claimed by SMRS.  *Id.*

[13] An example—drawn from SMRS's own motion—helps illustrate the point.  SMRS's loss calculations reveal that, between January 3, 2008 and January 7, 2008, SMRS sold 950,000 AIG shares that were held in SMRS's MEX3 account.  *See* Loss calculations submitted by SMRS, at 2, attached as Exhibit 4 to the Seidman Decl. (Dkt. #16).  Each of these 950,000 shares was sold at a price between $56.14 and $56.86, returning approximate proceeds of $53.4 million to SMRS.  *Id.*  Under the account-by-account loss calculations submitted by SMRS in support of its motion, the proceeds of all of these transactions are not netted against any class period purchases and, as a result, are not factored into SMRS's consequent loss figure.  *Id.*  In contrast, under aggregate loss calculations, the proceeds of each of these sales are netted against specific class period purchases, reducing SMRS's loss figure accordingly. *Compare id. with* the Calculation of aggregate LIFO losses of SMRS, reflecting netting of all class period sales, at 1, attached as Ex. U to the Silk Supp. Decl.

account separately as "an acceptable method of measuring losses." *See* SMRS Memorandum of Law in Support of Its Motion for Appointment as Lead Plaintiff, at 12 n.4 (Dkt. #17). To the contrary, the *Cigna* court—after reviewing extensive competing evidence from multiple plaintiff and defense experts—declined to reject an account-by-account calculation of damages as a matter of law, a decision focused entirely on the high standard applicable on a summary judgment motion and having nothing to do with a lead plaintiff motion. *Cigna*, 459 F. Supp. 2d at 354 ("The specific calculation of damages in this case should be resolved based on a trial record, rather than at the summary judgment stage."). Further, the court in *Cigna* "reserve[d] any final decision about Defendants' contentions until after a record has been made at a trial, where all the evidence relevant [to the lead plaintiff's] purchases can be presented and subjected to cross-examination"—a process that ultimately never occurred because the action was settled. *Id.* at 355.

As a result, SMRS essentially asks this Court to appoint it as Lead Plaintiff based on an untested theory of loss that does not appear to have ever actually been accepted by any court appointing a lead plaintiff. Further highlighting the irrelevance of the *Cigna* decision is the fact that the lead plaintiff in that case, the Pennsylvania Employees Retirement System—a state-wide public pension fund structured similarly to SMRS—was actually appointed to that position on the basis of a lead plaintiff motion supported by ***aggregate*** loss calculations. *See* Ex. V to the Silk Supp. Decl. Accordingly, to the extent *Cigna* has any bearing at all on this lead plaintiff motion, the case supports the conclusion that the PSLRA requires a proposed lead plaintiff's loss calculations to be performed on an aggregate basis.

As set forth previously, when calculated on an aggregate basis in a fashion consistent with the loss calculations of every movant other than SMRS, both SMRS's LIFO and FIFO loss

figures are significantly lower than those of OTPP and PGGM. Accordingly, SMRS does not have the highest financial loss, is entitled to no presumption under the PSLRA, and its motion should be denied.

## II.    OTPP and PGGM Are the Paradigmatic Lead Plaintiff Under the PSLRA and the Statutory Presumption Cannot Be Rebutted

As the lead plaintiff movant with the largest financial interest in this action, OTPP and PGGM are entitled to the statutory presumption as the "most adequate plaintiff," and should be appointed Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B). The statutory presumption afforded OTPP and PGGM is a powerful one that may be rebutted "only upon proof" of inadequacy. *See* 15 U.S.C. § 78u-4(a)(3)(B); *Orion*, 2008 WL 2811358, at *4; *Fuwei*, 247 F.R.D. at 436. As evidenced by their extensive involvement and efforts in the litigation thus far to protect the interests of the Class, OTPP and PGGM have unequivocally established their ability to fairly and adequately represent the Class. Further, to the extent that SMRS or other opposing movants challenge OTPP's and PGGM's entitlement to the statutory presumption, such self-interested arguments are without merit and should be rejected out of hand.

OTPP and PGGM have worked closely to advance the interests of the Class. As two of the twenty largest public pension funds in the world with hundreds of billions of dollars in assets under management, they are the paradigmatic lead plaintiff envisioned by Congress in enacting the PSLRA. Indeed, OTPP's and PGGM's partnership exemplifies why Congress sought to place control of securities class actions into the hands of sophisticated institutional investors that have the resources, fiduciary experience, and desire to prosecute the action in the best interests of the Class.

As detailed in their Joint Declaration, the relationship between OTPP and PGGM predates this action and grew out of their joint participation in conferences and other fora as experts and leaders in the global pension fund community. *See* Joint Declaration of Ontario Teachers' Pension Plan Board and PGGM in Support of Their Motion for Appointment as Lead Plaintiff, at ¶ 11, attached as Ex. E to the Declaration of Gerald H. Silk, dated July 21, 2008 (Dkt. # 23) ("Joint Decl."). After learning that each had an extremely large financial interest in the litigation and had common views as to how to best protect the interests of the Class, OTPP and PGGM, separately and apart from their counsel, determined to work together and prosecute the claims against AIG. *See* Joint Decl. at ¶¶ 8, 12.

One of the factors motivating OTPP's and PGGM's joint participation in the AIG litigation was their shared view that the attempt by the lead plaintiff in *AIG I* to amend the complaint in that action and subsume the claims that would be more effectively and efficiently prosecuted in this separate action posed a significant threat to the interests of the Class. *See* Joint Decl. at ¶¶ 4-5, 7-8. To advance their common interests in this regard, OTPP and PGGM held extensive meetings to plan and coordinate a strategy for opposing the *AIG I* lead plaintiff's motion—efforts that led to a successful outcome and produced significant tangible benefits to the Class. *See Am. Int'l Group Inc. Sec. Litig.*, 2008 WL 2795141, at *5.

The two funds have taken additional steps to protect the interests of the Class. OTPP, the only movant seeking lead plaintiff appointment that has filed a complaint in this action, and PGGM have both been actively engaged in monitoring and pursuing the litigation since its inception. The two funds have also negotiated a highly competitive fee agreement with counsel and have made arrangements to ensure that action is litigated efficiently and without duplication of work. *See* Joint Decl. at ¶¶ 10, 15. They have committed to actively supervising counsel,

have maintained almost daily contact with each other and their counsel, and each has devoted substantial time and resources, including the involvement of dedicated professionals charged with overseeing the litigation, to ensure the effective prosecution of the action. *See* Joint Decl. at ¶¶ 12-13. *See also Glauser v. EVCI Center Colleges Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) (noting Congress' intention to have institutional investors serve as lead plaintiffs and appointing public pension fund that "is experienced in securities class action litigation, having dedicated in-house attorneys charged with monitoring its selected counsel and this litigation" as "precisely the type of sophisticated institutional investor that Congress and this Court have recognized as being ideally suited to control this type of securities class action litigation").

Recognizing the benefits that can inure to the Class in having two or more sophisticated institutions lead securities class actions, courts have repeatedly appointed small, cohesive lead plaintiff groups that have articulated an ability and desire to work together and oversee the conduct of their counsel. *See, e.g., In re Ambac Fin. Group, Inc.*, No. 08 Civ. 411 (NRB), 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008) (appointing group of three institutional investors, noting it was "cooperating and pursuing the litigation separately and apart from their lawyers"). Thus, any attempt to paint OTPP's and PGGM's relationship and decision to prosecute this action jointly as somehow improper under the PSLRA should be rejected.

In sum, OTPP and PGGM are ideally suited to represent the interests of the Class and any argument seeking to overturn the statutory presumption in favor of appointing OTPP and PGGM as Lead Plaintiff is inconsistent with the PSLRA and should be rejected.

## CONCLUSION

For the foregoing reasons, and those set forth in their opening papers, OTPP and PGGM respectfully request that the Court: (i) appoint OTPP and PGGM as Lead Plaintiff pursuant to the PSLRA; (ii) approve OTPP's and PGGM's selection of Bernstein Litowitz Berger & Grossmann LLP and Schiffrin Barroway Topaz & Kessler, LLP as Lead Counsel for the Class; (iii) consolidate all related actions; and (iv) grant such other and further relief as the Court may deem just and proper.

Dated: August 7, 2008                    Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER &**
**    GROSSMANN LLP**

/s/ Gerald H. Silk
John P. Coffey (JC-3832)
Gerald H. Silk (GS-4565)
Noam Mandel (NM-0203)
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
(212) 554-1400
(212) 554-1444 (fax)
sean@blbglaw.com
jery@blbglaw.com
noam@blbglaw.com

*Counsel for Ontario Teachers' Pension Plan Board*
*and Proposed Lead Counsel for the Class*

**SCHIFFRIN BARROWAY TOPAZ &**
**    KESSLER, LLP**

Sean M. Handler
Darren J. Check
Christopher L. Nelson
Naumon A. Amjed
280 King of Prussia Road
Radnor, PA 19087

19

(610) 667-7706
(610) 667-7056 (fax)

*Counsel for Stichting Pensioenfonds Zorg en Welzijn, duly represented by PGGM Vermogensbeheer B.V., and Proposed Lead Counsel for the Class*