**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JACKSONVILLE POLICE AND FIRE PENSION FUND, on behalf of himself and all others similarly situated, | **CIVIL ACTION NO. 08-CV-4772-RJS** |
| Plaintiff, | **ECF Filed** |
| v. | |
| AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO, and ROBERT LEWIS, | |
| Defendants. | |
| JAMES CONNOLLY, Individually and On Behalf of All Others Similarly Situated, | **CIVIL ACTION NO. 08-CV-5072-RJS** |
| Plaintiff, | |
| v. | |
| AMERICAN INTERNATIONAL GROUP, MARTIN J. SULLIVAN, STEVEN J. BENSINGER, JOSEPH J. CASSANO, ROBERT E. LEWIS, and DAVID L. HERZOG, | |
| Defendants. | |

**(Captions continued on subsequent page)**

**ONTARIO TEACHERS' PENSION PLAN BOARD AND
PGGM'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFF
<u>AND IN OPPOSITION TO ALL OTHER MOTIONS</u>**

| | | |
|---|---|---|
| MAINE PUBLIC EMPLOYEES RETIREMENT SYSTEM, on behalf of itself and all others similarly situated, | ) ) ) ) | **CIVIL ACTION NO. 08-CV-5464-RJS** |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO, and ROBERT LEWIS, | ) ) ) ) ) | |
| Defendants. | ) ) | |
| ONTARIO TEACHERS' PENSION PLAN BOARD, on behalf of itself and all others similarly situated, | ) ) ) ) | **CIVIL ACTION NO. 08-CV-5560-RJS** |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO, and ROBERT LEWIS, | ) ) ) ) ) | |
| Defendants. | ) | |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 3

    I.    OTPP and PGGM Have the Largest Financial Interest in this Litigation..................... 3

    II.    SMRS's Newly Created Loss Theories Misrepresent Its Financial Interest................. 5

    III.    OTPP's and PGGM's Status as the Presumptive Lead Plaintiff Has Not
          Been Rebutted ................................................................................................................ 8

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Borenstein v. Finova Group, Inc.*,
  No. Civ. 00-619PHXSMM, 2000 WL 34524743 (D. Ariz. Aug. 30, 2000) ............................8

*Borochoff v. Glaxosmithkline PLC*,
  246 F.R.D. 201 (S.D.N.Y. 2007) ....................................................................................6

*Boyd v. Novastar Fin. Inc.*,
  No. 07-0139-CV-W-ODS, 2007 WL 2026130 (W.D. Mo. Jul. 9, 2007) .................................7

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005) ....................................................................................2, 6, 7, 8

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ........................................................................................9, 10

*In re Centerline Holding Co. Sec. Litig.*,
  No. 08 Civ. 505(SAS), 2008 WL 1959799 (S.D.N.Y. May 5, 2008) ......................................5

*In re Cigna Corp. Sec. Litig.*,
  459 F. Supp. 2d 338 (E.D. Pa. 2006) ..................................................................................7, 8

*In re Comverse Tech., Inc. Sec. Litig.*,
  No. 06-CV-1825 (NGG)(RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ..........................7

*In re eSpeed, Inc. Sec. Litig.*,
  232 F.R.D. 95 (S.D.N.Y. 2005) ..........................................................................................6

*In re Fannie Mae Sec. Litig.*,
  355 F. Supp. 2d 261 (D.D.C. 2005) ..................................................................................9

*In re Fuwei Films Sec. Litig.*,
  247 F.R.D. 432 (S.D.N.Y. 2008) ................................................................................ *passim*

*In re Orion Sec. Litig.*,
  No. 08-CV-1238 (RJS), 2008 WL 2811358 (S.D.N.Y. July 8, 2008) ......................................1

*In re Williams Sec. Litig.*, slip op., No. 02-CV-72-H (N.D. Okla. filed Dec. 29, 2004) .............10

*Kops v. NVE Corp.*,
  No. Civ.06-574(MJD/JJG), 2006 WL 2035508 (D. Minn. Jul. 19, 2006) ...............................7

*Reimer v. Ambac Fin. Group, Inc.*,
  No. 08 Civ. 411(NRB), 2008 WL 2073931 (S.D.N.Y. May 9, 2008) ..................................5, 9

*Vladimir v. Bioenvision, Inc.*,
  No. 07-CV-6416 (SHS) (AJP), 2007 WL 4526532 (S.D.N.Y. Dec. 21, 2007) ........................ 7

**STATUTES**

15 U.S.C. § 78u-4(a)(3)(B) .......................................................................................................... 4, 8

15 U.S.C. § 78u-4(a)(3)(B)(iii) ....................................................................................................... 4

15 U.S.C. § 78u-4(e)(1) .................................................................................................................. 7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ........................................................................................................................... 1

Ontario Teachers' Pension Plan Board ("OTPP") and Stichting Pensioenfonds Zorg en Welzijn, duly represented by PGGM Vermogensbeheer B.V. ("PGGM"), respectfully submit this reply in further support of their motion for appointment as Lead Plaintiff.

## PRELIMINARY STATEMENT

OTPP and PGGM have the largest financial interest in this litigation, meet the typicality and adequacy requirements of Rule 23 and are, therefore, presumptively the most adequate plaintiff under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). It is beyond dispute that, when calculated consistently with the other motions, OTPP's and PGGM's FIFO and LIFO losses of approximately $156 million and $90.5 million, respectively, represent significantly larger financial losses than those sustained by any other movant. OTPP and PGGM, therefore, satisfy the decisive criterion established by this Court for appointment as Lead Plaintiff. *See In re Orion Sec. Litig.*, No. 08-CV-1238 (RJS), 2008 WL 2811358, at *4 (S.D.N.Y. July 8, 2008) (Sullivan, J.); *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436-37 (S.D.N.Y. 2008) (Sullivan, J.).

One movant with a smaller financial interest—the State of Michigan Retirement Systems ("SMRS")—relies on an incompatible calculation to claim that its LIFO figure is larger. As demonstrated in the OTPP/PGGM opposition brief,[1] however, SMRS's inconsistent methodology is improper and in conflict with every other lead plaintiff motion SMRS itself has ever filed. When SMRS's transactions are analyzed in accordance with the established methodologies used by every other movant in this case, OTPP and PGGM clearly have the largest financial interest in this action and are entitled to appointment as Lead Plaintiff.

---

[1] Memorandum Of Law In Further Support Of The Motion Of Ontario Teachers' Pension Plan Board And PGGM For Appointment As Lead Plaintiff, filed on August 7, 2008 ("OTPP/PGGM Opp.").

Recognizing OTPP's and PGGM's superior financial interest, SMRS reaches for new and ever-more creative ways to calculate losses in an effort to seize control of this case. SMRS first asks the Court to look to the number of shares held by each movant on a LIFO basis on five dates of alleged corrective disclosures, and to multiply the per share price declines on each alleged date by the relevant number of shares held. Leaving aside that SMRS never explains why this methodology is appropriate and does not cite a single case to support it, SMRS's latest methodology also fails to support its position because *OTPP and PGGM actually have a larger financial interest under this test*. As explained below, SMRS failed to apply its own methodology correctly and, when properly calculated, OTPP's and PGGM's interest under this test is, in fact, more than $1 million greater than SMRS's. *See* Point II, at 5, *infra*.

SMRS's search for new methodologies does not end there. SMRS next proposes a new calculation of financial interest that SMRS claims is supported by the Supreme Court's decision in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). Without citing to a single case within this District applying SMRS's proposed "*Dura* analysis" to determine a movant's financial interest under the PSLRA, SMRS suggests that the Court deduct all losses on sales prior to the first alleged corrective disclosure on February 11, 2008. This argument ignores that the highly detailed and contentious analysis under *Dura* is required to be performed on the basis of expert evidence, after full discovery, and at a far more advanced procedural posture than a lead plaintiff motion. *See, e.g., Fuwei*, 247 F.R.D. at 438 (determination of damages is inappropriate at lead plaintiff stage). In any event, SMRS again fails to apply its own proposed methodology correctly and, when properly calculated under the LIFO methodology that SMRS claims to employ under its proposed "*Dura* analysis," *OTPP and PGGM actually have a larger financial interest under this test as well*. *See* Point II, at 6-7, *infra*.

2

Not content with these mathematical digressions, SMRS also resorts to baseless attacks on OTPP's and PGGM's ability to represent the Class in this action adequately. SMRS first argues that OTPP and PGGM cannot work in tandem to represent their fellow Class members and that OTPP and PGGM are somehow an inappropriate "group" under the PSLRA. The argument contravenes the overwhelming precedent in this District routinely appointing groups of investors with far less significant relationships than displayed in OTPP's and PGGM's Joint Declaration.[2] SMRS next imagines a baseless "conflict of interest" arising from alleged business relations between OTPP and certain private equity funds that are sponsored by an AIG subsidiary. These assertions are factually inaccurate because, as discussed below, these AIG-sponsored private equity funds have already divested their interests in these ventures. Even if founded on an accurate premise, such well-worn "conflict" arguments have been consistently rejected on motions for appointment as lead plaintiff by courts around the country. SMRS's motion should be rejected as well.[3]

## ARGUMENT

### I.  OTPP and PGGM Have the Largest Financial Interest in this Litigation

The thrust of SMRS's argument is that it claims to have the largest financial loss in this litigation, but only under its own distinctive LIFO calculations (SMRS Opp. at 5). As demonstrated in OTPP's and PGGM's opposition brief, SMRS's LIFO loss calculation is

---

[2] *See* Joint Declaration of Ontario Teachers' Pension Plan Board and PGGM in Support of Their Motion for Appointment as Lead Plaintiff, at ¶ 11, attached as Ex. E to the Declaration of Gerald H. Silk, dated July 21, 2008 (Dkt. # 23) ("Joint Decl.").

[3] This reply memorandum of law principally addresses the arguments submitted by SMRS, as the remaining movants all assert *de minimis* financial interests. One remaining movant, Oakland County, acknowledges that it does not have the largest financial interest in this action but still argues that purchasers of AIG bonds—like Oakland County—require separate representation. *See* Oakland County Opp. at 3-6 (Dkt. # 28). This argument is unavailing. "[T]he Second Circuit has held that there is no requirement that a court select as lead plaintiff only a movant with standing to assert every possible claim against every defendant, nor does the presumptive lead plaintiff fail to satisfy the typicality prong if he or she cannot assert every possible claim." *Fuwei*, 247 F.R.D. at 438 (*citing Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82-83 (2d Cir. 2004)).

3

fundamentally flawed and inflates its economic loss by approximately 40%, or $32 million. OTPP/PGGM Opp. at 2. When SMRS's transactions are calculated on an aggregate basis—*i.e.,* consistent with the manner in which every other movant calculated losses in this action and the manner in which SMRS calculated losses in every other lead plaintiff motion it has ever filed— OTPP's and PGGM's loss is significantly greater under ***both*** FIFO and LIFO. Specifically, OTPP's and PGGM's LIFO loss of approximately $90.5 million is significantly greater than SMRS's LIFO loss of $77.4 million. *Id*. OTPP's and PGGM's FIFO loss of approximately $156 million is likewise greater than SMRS's FIFO loss of $144.3 million. Accordingly, OTPP and PGGM have the largest financial loss and are entitled to the PSLRA's presumption as the most adequate lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B).

SMRS attempts to discredit OTPP's and PGGM's larger financial interest by suggesting that their partnership in prosecuting the claims against AIG is somehow improper under the PSLRA and that OTPP's and PGGM's financial interest should be viewed separately. This suggestion, however, is belied by the facts and plain language of the PSLRA, which explicitly requires the Court to appoint as lead plaintiff the "person or ***group of persons***" with the largest financial interest. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii) (emphasis added). As the Joint Declaration submitted by OTPP and PGGM makes clear, their relationship predates the commencement of this action, and both have worked together closely to advance the interests of their fellow Class members by, among other things, coordinating and executing a strategy to protect the interests of the Class in opposing the motion of the lead plaintiff in *AIG I* to subsume this action, negotiating a highly competitive fee arrangement with counsel, and by diligently monitoring the progress of the litigation, keeping in almost daily contact with each other and their counsel. *See* Joint Decl. at ¶¶ 4-5, 8-10, 13. Such a cohesive and effective working

relationship among two of the largest and most sophisticated institutional investors in the world more than satisfies even the narrowest reading of the term "group" adopted by any court in this District or elsewhere.[4]

## II. SMRS's Newly Created Loss Theories Misrepresent Its Financial Interest

Recognizing that its manipulated LIFO analysis is insufficient to overcome the significantly larger financial interest asserted by OTPP and PGGM—and in an all but open admission that its own financial interest is clearly inferior—SMRS now resorts to two new and highly unconventional methods of calculating LIFO losses under which SMRS claims to have a greater financial loss. Neither of these methods is supported by logic or law. Fortunately, the Court need not delve into the minutiae of either of these new-found methodologies because, on their own terms, ***OTPP and PGGM have a larger financial interest under either test***.

First, SMRS argues that financial loss should now be analyzed by multiplying the number of shares "purchased during the Class Period and continued to [be held] on a LIFO basis on the dates of" five alleged partial disclosures "by the dollar amounts by which AIG's stock decline[d] following each of the[se] disclosures." *See* SMRS Opp. at 8-9. According to SMRS, which cites no case and offers no other rationale to support this imaginative methodology, OTPP and PGGM have a lesser financial interest under this calculation. This assertion is simply not true.[5] When

---

[4] *See, e.g., Reimer v. Ambac Fin. Group, Inc.*, No. 08 Civ. 411(NRB), 2008 WL 2073931, at *2 (S.D.N.Y. May 9, 2008) (appointing group of unrelated institutions over objection of single institutional investor, describing cases disfavoring groups as "minority view"); *In re Centerline Holding Co. Sec. Litig.*, No. 08 Civ. 505(SAS), 2008 WL 1959799, at *2 (S.D.N.Y. May 5, 2008).

[5] SMRS's failure to tabulate correctly the movants' losses under its own proposed method of calculation results from its misapplication of the LIFO methodology. As SMRS and its counsel are surely aware, LIFO is the "last in first out" methodology under which sales are required to offset the most recent purchases. *See, e.g., In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005) ("[LIFO] matches the last purchases made during the class period with the first sales made during the class period."). Although SMRS states that it determined which shares were held on the relevant dates "on a LIFO basis," in fact, it is clear that SMRS actually determined these holdings on a "net" basis, without matching up purchases and sales as required in any legitimate LIFO calculation. Given SMRS's significant reliance on the LIFO methodology in this case, its failure to grasp the misapplication of its own preferred methodology is inexplicable.

5

calculated according to SMRS's own specifications, OTPP's and PGGM's LIFO losses are approximately $35.43 million, compared to SMRS's lesser approximate loss of $34.2 million, as set forth in the chart of aggregate LIFO holdings and losses on dates of alleged corrective disclosures, attached as Ex. A to the Reply Declaration of Gerald H. Silk ("Silk Reply Decl.").

Similarly noteworthy, to perform this calculation, SMRS momentarily abandons the unorthodox "account-by-account" methodology used in support of its initial loss calculation and resorts to describing its losses as it had always done prior to its motion in this case, that is, analyzing them on an ***aggregate*** basis. Needless to say, this selective mixing and matching of random elements of various loss calculation methodologies to arrive at any method that might convince this Court that SMRS has the largest financial interest does not engender confidence in the credibility of this and the other methods for calculating losses proffered by SMRS.[6]

Second, SMRS proposes another novel test for calculating financial interest, supposedly drawn from the Supreme Court's decision in *Dura*. Under this latest innovation, SMRS argues that the Court must "deduct losses attributable to sales of AIG stock purchased and sold during the Class Period but before February 11, 2008" from the movants' reported LIFO losses. *See* SMRS Opp. at 9 n.7. Once again, the legal foundations for this proposed method of calculation are shaky at best. Nevertheless, the legal arguments may be of little consequence, because when calculated properly under a LIFO basis (as SMRS states its proposed *Dura* analysis requires), in the aggregate (consistent with every other movants' loss calculations), and in light of the most up-to-date information available, OTPP and PGGM have a larger financial loss under this test as

---

[6] SMRS's argument that OTPP is a net seller at the time of the first and second disclosures is wrong. It is well established that the net seller inquiry looks at a movant's purchases and sales ***during the class period***, not on particular days in the class period. *See Borochoff v. Glaxosmithkline PLC*, 246 F.R.D. 201, 205 (S.D.N.Y. 2007) ("North Yorkshire purchased 854,938 shares of GSK . . . and sold 1,190,984 shares ***during the class period***. . . . Thus, North Yorkshire is a net seller.") (emphasis added). Here, OTPP purchased 4,040,739 shares and sold 2,512,949 shares and is, thus, clearly not a net seller.

6

well, having suffered approximately $76.22 million in losses compared to the lesser $75.6 million of SMRS.[7] See "*Dura* analysis" charts on an aggregate LIFO basis for OTPP/PGGM and SMRS, attached as Exs. B and C, respectively, to the Silk Reply Decl.

Regardless, SMRS's reliance on *Dura* in support of its novel loss calculation formula is misplaced. *Dura* does not address, in any way, the meaning of the "largest financial interest" under the PSLRA. Rather, this phrase has been specifically interpreted through a well-established body of case law and SMRS does not cite a single case from this District supporting the "*Dura* analysis" offered by SMRS for determining a movants' financial interest. *See* SMRS Opp. at 8-9 & n.7.[8] SMRS's argument also ignores that an analysis under *Dura* can only take place on the basis of expert evidence, after significant discovery, and upon a well-developed

---

[7] These figures are based on an up-to-date "mean trading price" of $27.4649 calculated as of the date of this filing. *See* 15 U.S.C. § 78u-4(e)(1). Under the PSLRA, the "mean trading price" is used to determine losses for those shares held by an investor after the end of the class period, calculated as the "average of the daily trading price, determined at the close of the market each day during the 90-day period" after the end of the class period. *See id.*; *see also Vladimir v. Bioenvision, Inc.*, No. 07-CV-6416 (SHS) (AJP), 2007 WL 4526532, at *2 nn.3, 4 (S.D.N.Y. Dec. 21, 2007) (appointing lead plaintiff on basis of loss calculations using mean trading price). SMRS performed its *Dura* analysis using a mean trading price based on the date loss calculations were first submitted with the initial lead plaintiff motions. OTPP and PGGM simply recalculated the figures using a current mean trading price, which is the most accurate and up-to-date mean trading price available and, therefore, provides the most precise measure of financial interest. Were the older mean trading price of $28.69 to be used and the *Dura* analysis calculated properly under LIFO, OTPP's and PGGM's losses would be $72.43 million and SMRS's aggregate loss would be $73.14 million.

[8] SMRS cites three cases in support of its use of its "*Dura* analysis," none of which are from this District and only one of which is even from within this Circuit—*In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007), *Kops v. NVE Corp.*, No. Civ.06-574(MJD/JJG), 2006 WL 2035508 (D. Minn. Jul. 19, 2006) and *Boyd v. Novastar Fin. Inc.*, No. 07-0139-CV-W-ODS, 2007 WL 2026130 (W.D. Mo. Jul. 9, 2007). *In re Comverse*, the case within this Circuit, is an outlier decision, and since the decision, not a single court within this Circuit considering lead plaintiff applications has adopted its reasoning. Rather, since *Comverse*, courts in the Second Circuit have repeatedly appointed lead plaintiffs without even mentioning *Dura* or venturing into the fact-intensive damages analysis called for by SMRS. *See, e.g., Fuwei*, 247 F.R.D. at 438 (noting that competing movants "cited no authority for the proposition that, on a motion to appoint a lead plaintiff under the PSLRA, damages must be calculated"). It is clear from the tardy introduction of SMRS's "*Dura* analysis" into the briefing of these lead plaintiff motions that this loss theory is merely intended to distract this Court from the conventional FIFO and LIFO tests widely used by courts in this District under which PGGM and OTPP prevail. Courts that have considered *Dura* have done so to determine whether a movant meets the requirements of Rule 23. *See e.g., In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 333 (S.D.N.Y. 2005) (stating that movants who sold all their shares before the end of the class period "[may be] subject to a unique defense"). This is clearly inapplicable here as neither PGGM nor OTPP are in-and-out traders.

factual record. For example, in *CIGNA*, relied on heavily by SMRS to support its other arguments, the court considered the defendants' *Dura* argument in the context of a summary judgment motion that followed significant discovery and included detailed evidence from four competing experts on the issue of economic loss. *See In re Cigna Corp. Sec. Litig.*, 459 F. Supp. 2d 338 (E.D. Pa. 2006). In contrast, SMRS's "back of the envelope" calculation of the appropriate economic loss attributable to alleged corrective disclosures is not the analysis contemplated by *Dura* and should be rejected as yet another transparent attempt to overcome the lead plaintiff presumption afforded to OTPP and PGGM under the PSLRA.[9]

### III.    OTPP's and PGGM's Status as the Presumptive Lead Plaintiff Has Not Been Rebutted

Recognizing OTPP's and PGGM's superior financial interest, SMRS attempts to unseat OTPP by offering a purely speculative contention that OTPP suffers from a conflict of interest based on its investment in two unrelated joint business ventures in which two AIG-sponsored private equity funds acted as co-investors. Specifically, SMRS contends, without offering any facts or a single case under the PSLRA to support its position, that these two business dealings—one involving AIG-sponsored private equity fund AIG Highstar Generation LLC's ***former*** investment in Northern Star Generation LLC ("NSG") and the other relating to AIG Highstar Capital II LP's (another AIG-sponsored private equity fund) residual interest in InterGen N.V. ("InterGen")—render OTPP somehow inadequate to represent the Class.

OTPP's investment in these ventures—two power generation businesses that have no connection to the facts of this case—does not present a conflict of interest, let alone constitute

---

[9] Moreover, SMRS's willingness to concede (without any argument from defendants) that losses prior to February 11, 2008, cannot be recovered raises serious questions about SMRS's ability to act as an advocate for the entire Class. *See Borenstein v. Finova Group, Inc.*, No. Civ. 00-619PHXSMM, 2000 WL 34524743, at *8 (D. Ariz. Aug. 30, 2000) (movants who took positions against the best interests of the entire class "cannot qualify as the presumptively most adequate plaintiff" because such an appointment "pose[s] a significant risk that the complete interests of all class members would not be fairly and adequately protected").

8

the "proof" required by the PSLRA to rebut the PSLRA's statutory presumption in favor of OTPP and PGGM. *See* 15 U.S.C. § 78u-4(a)(3)(B); *Fuwei*, 247 F.R.D. at 436. As recognized by SMRS's Response, the private equity fund, AIG Highstar Generation LLC, "sold its interest" in NSG to UBS. SMRS Opp. at 15 n.12. Moreover, AIG Highstar Capital II LP has already sold its interest in InterGen to a third-party purchaser in a transaction that will close later this year.[10] While under the PSLRA and well-established law these investments with these two private equity funds do not constitute a conflict, the AIG-sponsored funds' disposal of these investments renders SMRS's conflict argument that much more superfluous.[11]

Courts overwhelmingly reject arguments that an institutional lead plaintiff movant will be deterred from prosecuting fraud claims due to a financial relationship with a defendant as contrary to the PSLRA's stated purpose of having institutional investors serve as lead plaintiffs. *See, e.g., In re Cendant Corp. Litig.*, 264 F.3d 201, 243-44 (3d Cir. 2001) (rejecting argument that alleged conflict of interest, a "huge" investment in a public company that was a defendant in the action, as contrary to the PSLRA's goal of empowering institutional investors); *In re Ambac Fin. Group, Inc.*, 2008 WL 2073931, at *4 (rejecting as "theoretical" purported conflict based on lead plaintiff's alleged interest in hundreds of millions in bonds insured by defendant).[12]

---

[10] Notably, the third-party purchaser, GMR Infrastructure Limited ("GMR"), has already consolidated its acquisition of AIG's interest in InterGen onto its reported financial statements and has guaranteed the funding to ensure the transaction's closing. *See* GMR's Unaudited Consolidated Financial Results for the quarter ended June 30, 2008, attached as Ex. D to the Silk Reply Decl.

[11] Indeed, OTPP's actions in this lawsuit to date speak volumes about its commitment to the Class. To avoid any concern that OTPP's transitory business dealings with AIG-sponsored funds will in any way affect its ability to prosecute this case, OTPP has submitted herewith the Supplemental Declaration of Jeffrey Davis, Senior Legal Counsel, Investments, of OTPP. *See* Supplemental Declaration of Jeffrey Davis, attached as Ex. E to the Silk Reply Decl. ("Davis Decl."). This declaration states unequivocally that OTPP "reaffirms its obligations to the Class to diligently and vigorously pursue all potential claims against all culpable parties in this action." *See* Davis Decl. at 9.

[12] *See also In re Rait Fin. Trust Sec. Litig.*, No. 2:07-CV-03148 (LDD), slip op. at 7 (E.D. Pa. Oct. 25, 2007) (lead plaintiff movant's substantial interest in non-defendant corporation that had ties to defendant was "clearly not sufficient to rebut the presumption"), attached hereto as Ex. F to the Silk Reply Decl.; *In re Fannie Mae Sec. Litig.*,

Following the reasoning of these cases, the court in *In re Williams Securities Litigation* appointed OTPP as lead plaintiff and rejected an opposing movant's arguments challenging the fund's financial ties to the named defendants in that case. Similar to SMRS here, the competing movant in *Williams* argued that OTPP's partnership with defendant Citigroup in "two massive business ventures" valued at over $1 billion, a separate investment in a $300 million joint venture with a separate defendant, as well as hundreds of millions in retained equity holdings in Citigroup and other underwriter defendants, disqualified OTPP from serving as lead plaintiff. *See* Ex. G to the Silk Reply Decl., at 2. Citing to *Cendant* and similar cases, the *Williams* court reasoned that speculative conflicts based on OTPP's interests in the underwriter defendants were insufficient to rebut the presumption under the PSLRA's high standard requiring "proof" of inadequacy. *See In re Williams Sec. Litig.*, No. 02-CV-72-H, slip op. at 9 (N.D. Okla. Dec. 29, 2004) (attached as Ex. H to the Silk Reply Decl.).[13]

## CONCLUSION

For the foregoing reasons, and those set forth in their previously filed papers, OTPP and PGGM respectfully request that the Court appoint OTPP and PGGM as Lead Plaintiff.

Dated: August 18, 2008                                    Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

---

355 F. Supp. 2d 261, 263 (D.D.C. 2005) (rejecting argument that lead plaintiff movant with substantial holdings in bonds guaranteed by defendant was inadequate as "too speculative and hypothetical to rebut the presumption").

[13] SMRS's argument regarding an alleged "discrepancy" between OTPP's filings with the Securities and Exchange Commission under Section 13(f) and the transactions OTPP submitted in connection with its lead plaintiff application is incorrect and lacks merit. The difference between the Form 13F filings and the transactional data presented in OTPP's lead plaintiff application is due to the reporting requirements of the Securities Exchange Act, which do not require OTPP to report holdings managed by outside investment managers. Therefore, such holdings are not included in the Form 13F filings. Of course, the AIG shares purchased and sold by these external managers represent OTPP's actual holdings in AIG securities, and, as required by the PSLRA, have been included in the certification submitted in support of its motion for appointment as Lead Plaintiff. *See* Davis Decl. at 8.

      /s/ Gerald H. Silk
John P. Coffey (JC-3832)
Gerald H. Silk (GS-4565)
Noam Mandel (NM-0203)
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
(212) 554-1400
(212) 554-1444 (fax)
sean@blbglaw.com
jerry@blbglaw.com
noam@blbglaw.com

*Counsel for Ontario Teachers' Pension Plan Board and Proposed Lead Counsel for the Class*

**SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP**

Sean M. Handler
Darren J. Check
Naumon A. Amjed
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706
(610) 667-7056 (fax)

*Counsel for Stichting Pensioenfonds Zorg en Welzijn, duly represented by PGGM Vermogensbeheer B.V., and Proposed Lead Counsel for the Class*