**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| JACKSONVILLE POLICE AND FIRE PENSION FUND, on behalf of himself and all others similarly situated, | ) ) ) ) | **CIVIL ACTION NO. 08-CV-4772-RJS** <br> **ECF Filed** |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO, and ROBERT LEWIS, | ) ) ) ) ) | |
| Defendants. | ) ) | |
| JAMES CONNOLLY, Individually and On Behalf of All Others Similarly Situated, | ) ) | **CIVIL ACTION NO. 08-CV-5072-RJS** |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| AMERICAN INTERNATIONAL GROUP, MARTIN J. SULLIVAN, STEVEN J. BENSINGER, JOSEPH J. CASSANO, ROBERT E. LEWIS, and DAVID L. HERZOG, | ) ) ) ) ) | |
| Defendants. | ) | |

(Caption continued on subsequent page)

**REPLY DECLARATION OF GERALD H. SILK IN FURTHER SUPPORT OF THE MOTION OF ONTARIO TEACHERS' PENSION PLAN BOARD AND PGGM FOR APPOINTMENT AS LEAD PLAINTIFF**

| | | |
|---|---|---|
| MAINE PUBLIC EMPLOYEES RETIREMENT SYSTEM, on behalf of itself and all others similarly situated, | ) ) ) ) | **CIVIL ACTION NO. 08-CV-5464-RJS** |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO, and ROBERT LEWIS, | ) ) ) ) ) | |
| Defendants. | ) ) | |
| ONTARIO TEACHERS' PENSION PLAN BOARD, on behalf of itself and all others similarly situated, | ) ) ) ) | **CIVIL ACTION NO. 08-CV-5560-RJS** |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO, and ROBERT LEWIS, | ) ) ) ) ) | |
| Defendants. | ) | |

I, Gerald H. Silk, declare as follows:

1.      I am a member in good standing of the bars of the State of New York and of this Court.  I am a partner in the law firm of Bernstein Litowitz Berger & Grossmann LLP.  I submit this reply declaration in further support of the motion filed by Ontario Teachers' Pension Plan Board ("OTPP") and Stichting Pensioenfonds Zorg en Welzijn, duly represented by PGGM Vermogensbeheer B.V. ("PGGM"), for appointment as Lead Plaintiff.

2.      Attached as Exhibits A through H are true and correct copies of the following documents:

| | |
|---|---|
| Exhibit A: | Chart of aggregate LIFO holdings and losses on dates of alleged corrective disclosures and supporting documents; |
| Exhibit B: | "*Dura* analysis" charts on an aggregate LIFO basis for OTPP/PGGM; |
| Exhibit C: | "*Dura* analysis" chart on an aggregate LIFO basis for SMRS; |
| Exhibit D: | GMR Infrastructure Limited Unaudited Consolidated Financial Results for the quarter ended June 30, 2008; |
| Exhibit E: | Supplemental Declaration of Jeffrey Davis in Further Support of Ontario Teachers' Pension Plan Board's and PGGM's Motion for Appointment as Lead Plaintiff; |
| Exhibit F: | *In re RAIT Financial Trust Sec. Litig.*, No. 2:07-CV-03148 (LDD), slip op. (E.D. Pa. Oct. 25, 2007); |
| Exhibit G: | Brief in Support of Frederic E. Russell Investment Management Co., Inc.'s Objections to the R&R Filed December 29, 2004, *In re Williams Sec. Litig.*, No. 02-CV-72-H (N.D. Okla. Jan. 6, 2005); and |

Exhibit H:    *In re Williams Sec. Litig.*, No. 02-CV-72-H, slip op. (N.D. Okla. Dec. 29, 2004).

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

Executed this eighteenth day of August, 2008.

_____/s/____Gerald H. Silk_____
                Gerald H. Silk

**Ex. A**

**Damages on Disclosure Dates**

| | 2/11/2008 | 2/28/2008 | 5/9/2008 | 5/20/2008 | 6/6/2008 | **Total** |
|---|---|---|---|---|---|---|
| Share price drop | ($5.94) | ($3.29) | ($3.87) | ($1.99) | ($2.48) | |
| | | | | | | |
| OTPP shares held | 0 | 230,600 | 1,115,500 | 1,537,200 | 2,306,300 | |
| PGGM shares held | 691,002 | 691,002 | 2,096,334 | 2,276,902 | 1,031,382 | |
| OTPP+PGGM shares held | 691,002 | 921,602 | 3,211,834 | 3,814,102 | 3,337,682 | |
| **OTPP+PGGM value** | **($4,104,552)** | **($3,032,071)** | **($12,429,798)** | **($7,590,063)** | **($8,277,451)** | **($35,433,934)** |
| | | | | | | |
| SMRS shares held | 2,222,789 | 2,424,864 | 1,325,364 | 1,494,764 | 1,983,164 | |
| **SMRS value** | **($13,203,367)** | **($7,977,803)** | **($5,129,159)** | **($2,974,580)** | **($4,918,247)** | **($34,203,155)** |

"Value" is calculated as shares held multiplied by price drop.
"Shares held" are class period purchases that are continued to be held on a LIFO basis on the dates of the alleged partial disclosures and the final disclosure.

The attached Sub-exhibits A-1, A-2 and A-3 provide backup details for the holdings figures in this table.  The Sub-exhibits show each fund's respective transactions in chronological order, noting the number of class period purchases still held on a LIFO basis after each transaction.  As required by LIFO, all sales are matched up against the immediately preceding class period purchases and any surplus sales are matched up against the pre-class holdings balance.

# Ex. A- 1

**OTPP: List of Transactions in Chronological Order, Demonstrating LIFO Holdings After Each Transaction**

| Date | Transaction | Shares | Price | LIFO matching | Aggregate LIFO holdings |
|---|---|---|---|---|---|
| 11/17/06 | Sell | (27,000) | 65.0000 | matches against pre-class holdings | 0 |
| 12/15/06 | Buy | 14,840 | 72.0990 | | 14,840 |
| 12/15/06 | Buy | 14,840 | 72.0990 | | 29,680 |
| 12/15/06 | Sell | (29,680) | 72.1300 | matches against class period purchases | 0 |
| 12/15/06 | Sell | (24,220) | 72.1300 | matches against pre-class holdings | 0 |
| 12/21/06 | Buy | 40,810 | 71.9581 | | 40,810 |
| 01/17/07 | Buy | 286,100 | 71.3625 | | 326,910 |
| 01/18/07 | Buy | 29,400 | 71.2683 | | 356,310 |
| 01/22/07 | Buy | 8,979 | 70.4600 | | 365,289 |
| 01/24/07 | Buy | 18,550 | 69.7520 | | 383,839 |
| 01/25/07 | Buy | 31,600 | 69.1571 | | 415,439 |
| 02/02/07 | Buy | 17,200 | 69.0662 | | 432,639 |
| 02/02/07 | Buy | 8,770 | 69.2150 | | 441,409 |
| 02/16/07 | Buy | 11,372 | 69.6283 | | 452,781 |
| 02/16/07 | Buy | 7,178 | 69.7058 | | 459,959 |
| 02/16/07 | Buy | 176,600 | 69.6031 | | 636,559 |
| 02/27/07 | Buy | 19,577 | 68.0233 | | 656,136 |
| 02/27/07 | Buy | 2,683 | 68.0451 | | 658,819 |
| 03/07/07 | Buy | 64,700 | 69.7574 | | 723,519 |
| 03/12/07 | Buy | 29,200 | 68.3817 | | 752,719 |
| 03/13/07 | Buy | 50,800 | 68.2987 | | 803,519 |
| 04/17/07 | Buy | 33,390 | 68.3622 | | 836,909 |
| 04/24/07 | Buy | 17,700 | 69.2206 | | 854,609 |
| 04/30/07 | Buy | 22,260 | 70.2305 | | 876,869 |
| 05/08/07 | Buy | 39,400 | 71.6473 | | 916,269 |
| 05/17/07 | Buy | 9,800 | 72.3103 | | 926,069 |
| 06/15/07 | Buy | 6,500 | 72.5000 | | 932,569 |
| 06/20/07 | Buy | 35,100 | 72.1679 | | 967,669 |
| 07/05/07 | Buy | 385,000 | 70.1194 | | 1,352,669 |
| 07/25/07 | Buy | 5,700 | 67.8444 | | 1,358,369 |
| 07/31/07 | Buy | 20,000 | 65.2429 | | 1,378,369 |
| 08/01/07 | Buy | 20,000 | 63.4731 | | 1,398,369 |
| 08/09/07 | Buy | 31,400 | 65.5585 | | 1,429,769 |
| 08/09/07 | Sell | (1,400) | 65.1807 | matches against class period purchases | 1,428,369 |
| 08/30/07 | Buy | 1,600 | 65.3588 | | 1,429,969 |
| 09/18/07 | Sell | (88,500) | 65.8222 | matches against class period purchases | 1,341,469 |
| 09/19/07 | Buy | 22,260 | 67.7489 | | 1,363,729 |
| 10/29/07 | Buy | 3,100 | 62.8369 | | 1,366,829 |
| 11/05/07 | Sell | (4,500) | 60.0434 | matches against class period purchases | 1,362,329 |
| 11/05/07 | Sell | (120,000) | 59.9131 | matches against class period purchases | 1,242,329 |
| 11/12/07 | Sell | (98,600) | 57.4317 | matches against class period purchases | 1,143,729 |
| 11/13/07 | Buy | 24,115 | 59.1009 | | 1,167,844 |
| 11/19/07 | Sell | (144,000) | 55.3324 | matches against class period purchases | 1,023,844 |
| 11/20/07 | Sell | (230,100) | 54.8269 | matches against class period purchases | 793,744 |
| 11/21/07 | Sell | (16,300) | 51.9134 | matches against class period purchases | 777,444 |

**OTPP: List of Transactions in Chronological Order, Demonstrating LIFO Holdings After Each Transaction**

| Date | Transaction | Shares | Price | LIFO matching | Aggregate LIFO holdings |
|---|---|---|---|---|---|
| 11/28/07 | Buy | 7,091 | 57.5039 | | 784,535 |
| 11/28/07 | Buy | 9,838 | 57.4048 | | 794,373 |
| 11/28/07 | Buy | 2,459 | 57.4048 | | 796,832 |
| 11/28/07 | Buy | 4,727 | 57.5039 | | 801,559 |
| 11/28/07 | Sell | (234,400) | 56.5038 | matches against class period purchases | 567,159 |
| 12/03/07 | Sell | (222,300) | 56.6279 | matches against class period purchases | 344,859 |
| 12/05/07 | Sell | (111,000) | 58.1500 | matches against class period purchases | 233,859 |
| 12/07/07 | Sell | (107,700) | 61.4500 | matches against class period purchases | 126,159 |
| 12/11/07 | Sell | (126,159) | 59.2500 | matches against class period purchases | 0 |
| 12/11/07 | Sell | (1,641) | 59.2500 | matches against pre-class holdings | 0 |
| 12/12/07 | Sell | (21,100) | 58.3123 | matches against pre-class holdings | 0 |
| 12/13/07 | Sell | (130,800) | 56.6878 | matches against pre-class holdings | 0 |
| 12/14/07 | Sell | (176,100) | 56.0223 | matches against pre-class holdings | 0 |
| 12/17/07 | Buy | 17,600 | 55.5451 | | 17,600 |
| 12/18/07 | Sell | (17,600) | 55.6371 | matches against class period purchases | 0 |
| 12/18/07 | Sell | (111,600) | 55.6371 | matches against pre-class holdings | 0 [1] |
| 02/11/08 | Sell | (17,886) | 44.8942 | matches against pre-class holdings | 0 |
| 02/11/08 | Sell | (28,603) | 45.2647 | matches against pre-class holdings | 0 |
| 02/11/08 | Sell | (18,435) | 45.2550 | matches against pre-class holdings | 0 |
| 02/12/08 | Buy | 66,400 | 45.1507 | | 66,400 |
| 02/13/08 | Sell | (14,549) | 46.0759 | matches against class period purchases | 51,851 |
| 02/13/08 | Sell | (51,851) | 45.5520 | matches against class period purchases | 0 |
| 02/13/08 | Sell | (5,849) | 45.5520 | matches against pre-class holdings | 0 |
| 02/13/08 | Sell | (1,950) | 46.0000 | matches against pre-class holdings | 0 |
| 02/14/08 | Buy | 111,300 | 45.4210 | | 111,300 |
| 02/20/08 | Sell | (111,300) | 47.1515 | matches against class period purchases | 0 |
| 02/20/08 | Sell | (213,326) | 47.1515 | matches against pre-class holdings | 0 |
| 02/22/08 | Buy | 45,600 | 47.3143 | | 45,600 |
| 02/22/08 | Buy | 9,900 | 47.2563 | | 55,500 |
| 02/22/08 | Buy | 92,700 | 47.3642 | | 148,200 |
| 02/25/08 | Buy | 82,400 | 49.5971 | | 230,600 [2] |
| 03/11/08 | Buy | 70,000 | 43.9473 | | 300,600 |
| 03/18/08 | Buy | 95,500 | 41.9693 | | 396,100 |
| 03/25/08 | Buy | 53,000 | 46.2048 | | 449,100 |
| 03/28/08 | Buy | 98,700 | 43.5050 | | 547,800 |
| 04/02/08 | Buy | 156,300 | 47.3342 | | 704,100 |
| 04/04/08 | Buy | 70,400 | 47.2941 | | 774,500 |
| 04/08/08 | Sell | (4,500) | 47.2370 | matches against class period purchases | 770,000 |
| 04/11/08 | Buy | 247,800 | 44.7726 | | 1,017,800 |
| 05/06/08 | Buy | 97,700 | 48.1472 | | 1,115,500 [3] |
| 05/12/08 | Buy | 268,600 | 38.0000 | | 1,384,100 |
| 05/16/08 | Buy | 111,300 | 39.2626 | | 1,495,400 |
| 05/20/08 | Buy | 41,800 | 37.9800 | | 1,537,200 [4] |
| 05/21/08 | Buy | 60,200 | 37.8328 | | 1,597,400 |
| 05/21/08 | Buy | 154,700 | 37.3629 | | 1,752,100 |

**OTPP: List of Transactions in Chronological Order, Demonstrating LIFO Holdings After Each Transaction**

| Date | Transaction | Shares | Price | LIFO matching | Aggregate LIFO holdings |
|---|---|---|---|---|---|
| 05/23/08 | Buy | 369,000 | 36.9608 | | 2,121,100 |
| 05/30/08 | Buy | 59,200 | 36.2130 | | 2,180,300 |
| 06/05/08 | Buy | 126,000 | 36.2940 | | **2,306,300** [5] |
| 06/17/08 | Sell | (126,000) | 33.6388 | matches against class period purchases | 2,180,300 |

[1] holdings before 2/11/08 disclosure
[2] holdings before 2/28/08 disclosure
[3] holdings before 5/09/08 disclosure
[4] holdings before 5/20/08 disclosure (stock continued to drop on 5/21/08)
[5] holdings before 6/06/08 disclosure

**Ex. A- 2**

**PGGM: List of Transactions in Chronological Order, Demonstrating LIFO Holdings After Each Transaction**

| Date | Transaction | Shares | Price | LIFO matching | Aggregate LIFO holdings |
|------|-------------|--------|-------|---------------|-------------------------|
| 11/14/06 | Buy | 6,517 | 71.0525 | | 6,517 |
| 11/16/06 | Sell | (294) | 72.3528 | matches against class period purchases | 6,223 |
| 11/16/06 | Sell | (401) | 72.3553 | matches against class period purchases | 5,822 |
| 12/01/06 | Buy | 2,645 | 69.5593 | | 8,467 |
| 12/01/06 | Buy | 124 | 69.5025 | | 8,591 |
| 12/14/06 | Buy | 2,157 | 71.4493 | | 10,748 |
| 12/14/06 | Buy | 100 | 71.9725 | | 10,848 |
| 12/15/06 | Buy | 1,938 | 72.1225 | | 12,786 |
| 12/15/06 | Buy | 6,378 | 72.1315 | | 19,164 |
| 12/18/06 | Buy | 2,130 | 72.9448 | | 21,294 |
| 12/29/06 | Buy | 208 | 71.6650 | | 21,502 |
| 01/09/07 | Buy | 3,274 | 71.2460 | | 24,776 |
| 01/09/07 | Buy | 46 | 71.3526 | | 24,822 |
| 01/16/07 | Sell | (28) | 71.1354 | matches against class period purchases | 24,794 |
| 01/16/07 | Sell | (4,823) | 71.0468 | matches against class period purchases | 19,971 |
| 01/31/07 | Sell | (19,971) | 68.4454 | matches against class period purchases | 0 |
| 01/31/07 | Sell | (49,936) | 68.4454 | matches against pre-class holdings | 0 |
| 01/31/07 | Sell | (69,912) | 68.2273 | matches against pre-class holdings | 0 |
| 01/31/07 | Sell | (57,682) | 68.4429 | matches against pre-class holdings | 0 |
| 02/02/07 | Sell | (18,772) | 69.1486 | matches against pre-class holdings | 0 |
| 02/02/07 | Sell | (662) | 69.0654 | matches against pre-class holdings | 0 |
| 02/13/07 | Buy | 1,941 | 68.9732 | | 1,941 |
| 03/05/07 | Buy | 1 | 69.5300 | | 1,942 |
| 03/05/07 | Buy | 1,066 | 69.6547 | | 3,008 |
| 03/16/07 | Buy | 114 | 66.8750 | | 3,122 |
| 03/16/07 | Buy | 9,135 | 66.8630 | | 12,257 |
| 03/19/07 | Buy | 1,165 | 67.5401 | | 13,422 |
| 04/02/07 | Sell | (6,001) | 67.0292 | matches against class period purchases | 7,421 |
| 04/02/07 | Sell | (14) | 67.1457 | matches against class period purchases | 7,407 |
| 04/16/07 | Sell | (22) | 67.5559 | matches against class period purchases | 7,385 |
| 04/16/07 | Sell | (6,869) | 67.4833 | matches against class period purchases | 516 |
| 04/26/07 | Buy | 13,686 | 69.7389 | | 14,202 |
| 05/14/07 | Buy | 4,983 | 72.4249 | | 19,185 |
| 05/14/07 | Buy | 225 | 72.4025 | | 19,410 |
| 05/31/07 | Sell | (57,765) | 72.3110 | matches against pre-class holdings | 19,410 |
| 05/31/07 | Sell | (19,410) | 72.3110 | matches against class period purchases | 0 |
| 06/01/07 | Sell | (140) | 72.5964 | matches against pre-class holdings | 0 |
| 06/01/07 | Sell | (7,747) | 72.6965 | matches against pre-class holdings | 0 |
| 06/14/07 | Buy | 44 | 72.4125 | | 44 |
| 06/14/07 | Buy | 4,698 | 72.2981 | | 4,742 |
| 06/15/07 | Buy | 546 | 72.5450 | | 5,288 |
| 06/15/07 | Buy | 2,018 | 72.6203 | | 7,306 |
| 06/15/07 | Buy | 4,702 | 72.5330 | | 12,008 |
| 07/02/07 | Sell | (7,386) | 70.0519 | matches against class period purchases | 4,622 |
| 07/09/07 | Sell | (4,622) | 70.2687 | matches against class period purchases | 0 |
| 07/09/07 | Sell | (195,378) | 70.2687 | matches against pre-class holdings | 0 |

**PGGM: List of Transactions in Chronological Order, Demonstrating LIFO Holdings After Each Transaction**

| Date | Transaction | Shares | Price | LIFO matching | Aggregate LIFO holdings |
|---|---|---|---|---|---|
| 07/17/07 | Sell | (4,484) | 69.7035 | matches against pre-class holdings | 0 |
| 07/30/07 | Sell | (71,382) | 64.9189 | matches against pre-class holdings | 0 |
| 08/01/07 | Sell | (100) | 63.2065 | matches against pre-class holdings | 0 |
| 08/01/07 | Sell | (21,493) | 62.6173 | matches against pre-class holdings | 0 |
| 08/09/07 | Sell | (14,700) | 64.8644 | matches against pre-class holdings | 0 |
| 08/10/07 | Sell | (22,000) | 64.7209 | matches against pre-class holdings | 0 |
| 08/13/07 | Sell | (4,700) | 65.2435 | matches against pre-class holdings | 0 |
| 08/14/07 | Sell | (5,708) | 63.5725 | matches against pre-class holdings | 0 |
| 08/14/07 | Sell | (289) | 63.4765 | matches against pre-class holdings | 0 |
| 08/14/07 | Sell | (2,300) | 64.1099 | matches against pre-class holdings | 0 |
| 08/21/07 | Sell | (4,700) | 65.7052 | matches against pre-class holdings | 0 |
| 08/22/07 | Sell | (13,900) | 66.3424 | matches against pre-class holdings | 0 |
| 08/23/07 | Sell | (9,300) | 66.5629 | matches against pre-class holdings | 0 |
| 08/24/07 | Buy | 4,669 | 66.9352 | | 4,669 |
| 08/24/07 | Buy | 209 | 67.1534 | | 4,878 |
| 08/24/07 | Sell | (4,878) | 66.8395 | matches against class period purchases | 0 |
| 08/24/07 | Sell | (822) | 66.8395 | matches against pre-class holdings | 0 |
| 08/31/07 | Buy | 12,200 | 66.0125 | | 12,200 |
| 08/31/07 | Buy | 122,562 | 65.9478 | | 134,762 |
| 08/31/07 | Buy | 3,500 | 66.1242 | | 138,262 |
| 09/04/07 | Buy | 53,800 | 66.1739 | | 192,062 |
| 09/05/07 | Buy | 408 | 65.4975 | | 192,470 |
| 09/05/07 | Buy | 52,690 | 65.6555 | | 245,160 |
| 09/05/07 | Buy | 2,300 | 65.5120 | | 247,460 |
| 09/05/07 | Sell | (43,291) | 65.6176 | matches against class period purchases | 204,169 |
| 09/06/07 | Sell | (60,000) | 65.1113 | matches against class period purchases | 144,169 |
| 09/11/07 | Buy | 621 | 64.6975 | | 144,790 |
| 09/17/07 | Buy | 457 | 64.2675 | | 145,247 |
| 09/18/07 | Sell | (2,722) | 65.6836 | matches against class period purchases | 142,525 |
| 09/19/07 | Buy | 41,916 | 67.6870 | | 184,441 |
| 09/20/07 | Buy | 41,916 | 67.3146 | | 226,357 |
| 09/21/07 | Buy | 42,667 | 67.2455 | | 269,024 |
| 09/21/07 | Sell | (10,420) | 67.2390 | matches against class period purchases | 258,604 |
| 09/21/07 | Sell | (95) | 67.2239 | matches against class period purchases | 258,509 |
| 09/24/07 | Buy | 2,802 | 66.7700 | | 261,311 |
| 09/25/07 | Sell | (1,068) | 67.0765 | matches against class period purchases | 260,243 |
| 09/27/07 | Buy | 42,666 | 67.3773 | | 302,909 |
| 09/28/07 | Buy | 8,831 | 67.6550 | | 311,740 |
| 09/28/07 | Buy | 112,349 | 67.6284 | | 424,089 |
| 09/28/07 | Buy | 59,461 | 67.6293 | | 483,550 |
| 10/01/07 | Buy | 17,292 | 68.2231 | | 500,842 |
| 10/01/07 | Buy | 32,208 | 68.2231 | | 533,050 |
| 10/02/07 | Buy | 44,420 | 68.8152 | | 577,470 |
| 10/03/07 | Buy | 40,550 | 68.8586 | | 618,020 |
| 10/04/07 | Buy | 40,550 | 68.8772 | | 658,570 |
| 10/05/07 | Buy | 39,540 | 69.4823 | | 698,110 |

**PGGM: List of Transactions in Chronological Order, Demonstrating LIFO Holdings After Each Transaction**

| Date | Transaction | Shares | Price | LIFO matching | Aggregate LIFO holdings |
|------|-------------|--------|-------|---------------|-------------------------|
| 10/09/07 | Buy | 429 | 70.1125 | | 698,539 |
| 10/09/07 | Buy | 2,250 | 70.1175 | | 700,789 |
| 12/04/07 | Buy | 2,506 | 55.5019 | | 703,295 |
| 12/20/07 | Sell | (5,050) | 56.5662 | matches against class period purchases | 698,245 |
| 12/21/07 | Sell | (1,567) | 58.3311 | matches against class period purchases | 696,678 |
| 12/21/07 | Sell | (10,726) | 58.3266 | matches against class period purchases | 685,952 |
| 01/04/08 | Buy | 4,806 | 55.5707 | | 690,758 |
| 01/07/08 | Buy | 244 | 55.6548 | | **691,002** [1,2] |
| 02/29/08 | Buy | 1,200,000 | 46.6145 | | 1,891,002 |
| 03/20/08 | Buy | 680 | 44.9950 | | 1,891,682 |
| 03/31/08 | Buy | 22,575 | 43.2525 | | 1,914,257 |
| 03/31/08 | Buy | 182,077 | 43.5439 | | **2,096,334** [3] |
| 05/13/08 | Buy | 29,212 | 39.0846 | | 2,125,546 |
| 05/13/08 | Buy | 146,392 | 39.1550 | | 2,271,938 |
| 05/13/08 | Buy | 7,350 | 38.4877 | | 2,279,288 |
| 05/13/08 | Sell | (2,386) | 39.1573 | matches against class period purchases | **2,276,902** [4] |
| 05/30/08 | Sell | (45,520) | 35.9973 | matches against class period purchases | 2,231,382 |
| 05/30/08 | Sell | (1,200,000) | 35.9926 | matches against class period purchases | **1,031,382** [5] |
| 06/18/08 | Sell | (111,231) | 33.4033 | matches against class period purchases | 920,151 |

[1] holdings before 2/11/08 disclosure
[2] holdings before 2/28/08 disclosure
[3] holdings before 5/09/08 disclosure
[4] holdings before 5/20/08 disclosure (stock continued to drop on 5/21/08)
[5] holdings before 6/06/08 disclosure

**Ex. A- 3**

**SMRS: List of Transactions in Chronological Order, Demonstrating LIFO Holdings After Each Transaction**

| Date | Transaction | Shares | Price | LIFO matching | Aggregate LIFO holdings |
|------|-------------|--------|-------|---------------|-------------------------|
| 12/15/06 | Buy | 14,900 | 72.1651 | | 14,900 |
| 03/16/07 | Buy | 13,600 | 66.9358 | | 28,500 |
| 07/18/07 | Buy | 86,744 | 69.1873 | | 115,244 |
| 07/18/07 | Buy | 105,626 | 69.2057 | | 220,870 |
| 07/18/07 | Buy | 7,200 | 69.5000 | | 228,070 |
| 07/18/07 | Buy | 11,500 | 69.6200 | | 239,570 |
| 07/18/07 | Buy | 34,500 | 69.6200 | | 274,070 |
| 07/18/07 | Buy | 219,279 | 69.2238 | | 493,349 |
| 07/18/07 | Buy | 344,274 | 69.1938 | | 837,623 |
| 07/18/07 | Buy | 13,900 | 69.5000 | | 851,523 |
| 07/18/07 | Buy | 8,100 | 69.5000 | | 859,623 |
| 07/19/07 | Buy | 1,700 | 69.6600 | | 861,323 |
| 07/19/07 | Buy | 2,800 | 69.7000 | | 864,123 |
| 07/19/07 | Buy | 12,605 | 69.6719 | | 876,728 |
| 07/19/07 | Buy | 3,600 | 69.6600 | | 880,328 |
| 07/19/07 | Buy | 1,900 | 69.6600 | | 882,228 |
| 07/19/07 | Buy | 9,300 | 69.7000 | | 891,528 |
| 07/19/07 | Buy | 35,923 | 69.6719 | | 927,451 |
| 07/20/07 | Buy | 53,925 | 69.4166 | | 981,376 |
| 07/20/07 | Buy | 180,338 | 69.4166 | | 1,161,714 |
| 07/20/07 | Sell | (56,300) | 69.0691 | matches against class period purchases | 1,105,414 |
| 07/30/07 | Buy | 28,300 | 65.1354 | | 1,133,714 |
| 07/31/07 | Buy | 49,000 | 64.9203 | | 1,182,714 |
| 07/31/07 | Buy | 210,000 | 64.7957 | | 1,392,714 |
| 08/09/07 | Buy | 120,000 | 64.1537 | | 1,512,714 |
| 08/10/07 | Buy | 90,000 | 64.2856 | | 1,602,714 |
| 08/14/07 | Buy | 50,000 | 63.5961 | | 1,652,714 |
| 08/14/07 | Buy | 30,000 | 63.4306 | | 1,682,714 |
| 08/15/07 | Buy | 225,000 | 63.4126 | | 1,907,714 |
| 08/15/07 | Buy | 75,000 | 63.6343 | | 1,982,714 |
| 08/16/07 | Buy | 200,000 | 62.8126 | | 2,182,714 |
| 08/16/07 | Buy | 135,000 | 63.0713 | | 2,317,714 |
| 09/21/07 | Sell | (44,300) | 67.8300 | matches against class period purchases | 2,273,414 |
| 10/12/07 | Buy | 6,035 | 68.0487 | | 2,279,449 |
| 10/12/07 | Buy | 3,500 | 68.0803 | | 2,282,949 |
| 10/16/07 | Buy | 3,000 | 66.7900 | | 2,285,949 |
| 10/16/07 | Buy | 4,100 | 66.7900 | | 2,290,049 |
| 10/16/07 | Buy | 6,800 | 66.7900 | | 2,296,849 |
| 10/16/07 | Sell | (1,250) | 66.1200 | matches against class period purchases | 2,295,599 |
| 10/18/07 | Sell | (3,750) | 65.4018 | matches against class period purchases | 2,291,849 |
| 10/23/07 | Buy | 206,700 | 63.9440 | | 2,498,549 |
| 10/24/07 | Buy | 40,000 | 63.5251 | | 2,538,549 |
| 10/25/07 | Buy | 245,000 | 60.5220 | | 2,783,549 |
| 10/25/07 | Sell | (1,592) | 59.6682 | matches against class period purchases | 2,781,957 |
| 10/31/07 | Sell | (925) | 63.2343 | matches against class period purchases | 2,781,032 |

**SMRS: List of Transactions in Chronological Order, Demonstrating LIFO Holdings After Each Transaction**

| Date | Transaction | Shares | Price | LIFO matching | Aggregate LIFO holdings |
|------|-------------|--------|-------|---------------|-------------------------|
| 11/01/07 | Buy | 100 | 60.9200 | | 2,781,132 |
| 11/12/07 | Sell | (500) | 56.7800 | matches against class period purchases | 2,780,632 |
| 11/19/07 | Sell | (4,443) | 55.2945 | matches against class period purchases | 2,776,189 |
| 11/28/07 | Buy | 90,000 | 57.3864 | | 2,866,189 |
| 11/29/07 | Buy | 120,000 | 56.7496 | | 2,986,189 |
| 11/30/07 | Buy | 290,000 | 58.2400 | | 3,276,189 |
| 12/03/07 | Buy | 80,000 | 56.3849 | | 3,356,189 |
| 12/04/07 | Buy | 100,000 | 55.4449 | | 3,456,189 |
| 12/06/07 | Buy | 140,000 | 60.4087 | | 3,535,389 |
| 12/21/07 | Sell | (60,800) | 57.3415 | matches against class period purchases | 3,535,389 |
| 01/02/08 | Sell | (360,000) | 56.8300 | matches against class period purchases | 3,175,389 |
| 01/03/08 | Sell | (275,000) | 56.7566 | matches against class period purchases | 2,900,389 |
| 01/04/08 | Sell | (475,000) | 55.8552 | matches against class period purchases | 2,425,389 |
| 01/07/08 | Sell | (200,000) | 56.1400 | matches against class period purchases | 2,225,389 |
| 01/07/08 | Sell | (1,200) | 56.3000 | matches against class period purchases | 2,223,489 |
| 01/29/08 | Sell | (700) | 56.7300 | matches against class period purchases | 2,223,489 |
| 01/31/08 | Sell | (600) | 55.1600 | matches against class period purchases | 2,222,889 |
| 02/01/08 | Sell | (100) | 55.2433 | matches against class period purchases | **2,222,789** [1] |
| 02/11/08 | Buy | 150,000 | 44.9327 | | 2,372,789 |
| 02/11/08 | Buy | 1,875 | 45.0600 | | 2,374,664 |
| 02/22/08 | Buy | 50,000 | 47.3308 | | **2,424,664** [2] |
| 02/25/08 | Buy | 200 | 48.6700 | | 2,584,864 |
| 02/29/08 | Buy | 100,000 | 46.5276 | | 2,524,864 |
| 03/07/08 | Buy | 60,000 | 43.4296 | | 2,584,864 |
| 03/19/08 | Buy | 125,000 | 43.1004 | | 2,709,864 |
| 03/20/08 | Buy | 1,200 | 42.6000 | | 2,411,064 |
| 03/24/08 | Sell | (300,000) | 46.5140 | matches against class period purchases | 2,411,064 |
| 03/25/08 | Sell | (400,000) | 45.8500 | matches against class period purchases | 2,011,064 |
| 03/25/08 | Sell | (100) | 46.2113 | matches against class period purchases | 2,010,964 |
| 03/26/08 | Sell | (200,000) | 44.6463 | matches against class period purchases | 1,810,964 |
| 04/24/08 | Sell | (385,054) | 47.1125 | matches against class period purchases | 1,425,910 |
| 04/25/08 | Sell | (29,946) | 47.2862 | matches against class period purchases | 1,395,964 |
| 04/29/08 | Sell | (20,900) | 47.2865 | matches against class period purchases | 1,375,064 |
| 05/01/08 | Sell | (49,100) | 47.8325 | matches against class period purchases | 1,325,964 |
| 05/01/08 | Sell | (600) | 46.8062 | matches against class period purchases | **1,325,364** [3] |
| 05/09/08 | Buy | 45,000 | 40.2770 | | 1,370,364 |
| 05/13/08 | Buy | 64,400 | 39.1600 | | 1,434,764 |
| 05/20/08 | Buy | 60,000 | 38.0864 | | **1,494,764** [4] |
| 05/22/08 | Buy | 600 | 37.4665 | | 1,495,364 |
| 05/27/08 | Buy | 130,000 | 36.6608 | | 1,625,364 |
| 05/27/08 | Sell | (3,600) | 36.7300 | matches against class period purchases | 1,621,764 |
| 05/28/08 | Buy | 130,000 | 35.3673 | | 1,751,764 |
| 05/29/08 | Buy | 25,000 | 35.3498 | | 1,776,764 |
| 05/30/08 | Buy | 75,000 | 36.2099 | | 1,851,764 |
| 06/02/08 | Buy | 50,000 | 35.9438 | | 1,901,764 |

**SMRS: List of Transactions in Chronological Order, Demonstrating LIFO Holdings After Each Transaction**

| Date | Transaction | Shares | Price | LIFO matching | Aggregate LIFO holdings |
|------|-------------|--------|-------|---------------|-------------------------|
| 06/03/08 | Buy | 1,400 | 36.2367 | | 1,903,164 |
| 06/04/08 | Buy | 65,000 | 35.9372 | | 1,968,164 |
| 06/05/08 | Buy | 15,000 | 35.7772 | | **1,983,164** [5] |
| 06/06/08 | Buy | 25,000 | 34.1043 | | 2,008,164 |

[1] holdings before 2/11/08 disclosure
[2] holdings before 2/28/08 disclosure
[3] holdings before 5/09/08 disclosure
[4] holdings before 5/20/08 disclosure (stock continued to drop on 5/21/08)
[5] holdings before 6/06/08 disclosure

**Ex. B**

**American International Group, Inc. (AIG)**
Cusip # 026874107
Class Period: 11/10/06 - 06/06/08
Retained share price: $27.4649 (06/06/08 - 08/18/08)

**OTPP - Aggregate LIFO "*Dura* Analysis"**

| Transaction | Date | Shares | Price | Cost | Transaction | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|---|---|---|
| | Pre-class holdings | **2,469,089** | | | Sell | 11/17/06 | (27,000) | 65.0000 | ($1,755,000.00) |
| | | | | | Sell | 12/15/06 | (24,220) | 72.1300 | ($1,746,988.60) |
| | | | | | Sell | 12/11/07 | (1,641) | 59.2500 | ($97,229.25) |
| | | | | | Sell | 12/12/07 | (21,100) | 58.3123 | ($1,230,389.53) |
| | | | | | Sell | 12/13/07 | (130,800) | 56.6878 | ($7,414,764.24) |
| | | | | | Sell | 12/14/07 | (176,100) | 56.0223 | ($9,865,527.03) |
| | | | | | Sell | 12/18/07 | (111,600) | 55.6371 | ($6,209,100.36) |
| | | | | | Sell | 02/11/08 | (17,886) | 44.8942 | ($802,977.66) |
| | | | | | Sell | 02/11/08 | (28,603) | 45.2647 | ($1,294,706.21) |
| | | | | | Sell | 02/11/08 | (18,435) | 45.2550 | ($834,275.93) |
| | | | | | Sell | 02/13/08 | (5,849) | 45.5520 | ($266,433.65) |
| | | | | | Sell | 02/13/08 | (1,950) | 46.0000 | ($89,700.00) |
| | | | | | Sell | 02/20/08 | (213,326) | 47.1515 | ($10,058,640.89) |
| | | | | | *Shares sold during the class period offsetting opening balance:* | | **(778,510)** | | **($41,665,733.35)** |
| Buy | 12/15/06 | 14,840 | 72.0990 | $1,069,949.16 | Sell | 12/15/06 | (14,840) | 72.1300 | ($1,070,409.20) |
| Buy | 12/15/06 | 14,840 | 72.0990 | $1,069,949.16 | Sell | 12/15/06 | (14,840) | 72.1300 | ($1,070,409.20) |
| Buy | 08/09/07 | 1,400 | 65.5585 | $91,781.90 | Sell | 08/09/07 | (1,400) | 65.1807 | ($91,252.98) |
| Buy | 08/30/07 | 1,600 | 65.3588 | $104,574.08 | Sell | 09/18/07 | (1,600) | 65.8222 | ($105,315.52) |
| Buy | 08/09/07 | 30,000 | 65.5585 | $1,966,755.00 | Sell | 09/18/07 | (30,000) | 65.8222 | ($1,974,666.00) |
| Buy | 08/01/07 | 20,000 | 63.4731 | $1,269,462.00 | Sell | 09/18/07 | (20,000) | 65.8222 | ($1,316,444.00) |
| Buy | 07/31/07 | 20,000 | 65.2429 | $1,304,858.00 | Sell | 09/18/07 | (20,000) | 65.8222 | ($1,316,444.00) |
| Buy | 07/25/07 | 5,700 | 67.8444 | $386,713.08 | Sell | 09/18/07 | (5,700) | 65.8222 | ($375,186.54) |
| Buy | 07/05/07 | 11,200 | 70.1194 | $785,337.28 | Sell | 09/18/07 | (11,200) | 65.8222 | ($737,208.64) |
| Buy | 10/29/07 | 3,100 | 62.8369 | $194,794.39 | Sell | 11/05/07 | (3,100) | 60.0434 | ($186,134.54) |
| Buy | 09/19/07 | 1,400 | 67.7489 | $94,848.46 | Sell | 11/05/07 | (1,400) | 60.0434 | ($84,060.76) |
| Buy | 09/19/07 | 20,860 | 67.7489 | $1,413,242.05 | Sell | 11/05/07 | (20,860) | 59.9131 | ($1,249,787.27) |
| Buy | 07/05/07 | 99,140 | 70.1194 | $6,951,637.32 | Sell | 11/05/07 | (99,140) | 59.9131 | ($5,939,784.73) |
| Buy | 07/05/07 | 98,600 | 70.1194 | $6,913,772.84 | Sell | 11/12/07 | (98,600) | 57.4317 | ($5,662,765.62) |
| Buy | 11/13/07 | 24,115 | 59.1009 | $1,425,218.20 | Sell | 11/19/07 | (24,115) | 55.3324 | ($1,334,340.83) |
| Buy | 07/05/07 | 119,885 | 70.1194 | $8,406,264.27 | Sell | 11/19/07 | (119,885) | 55.3324 | ($6,633,524.77) |
| Buy | 07/05/07 | 56,175 | 70.1194 | $3,938,957.30 | Sell | 11/20/07 | (56,175) | 54.8269 | ($3,079,901.11) |
| Buy | 06/20/07 | 35,100 | 72.1679 | $2,533,093.29 | Sell | 11/20/07 | (35,100) | 54.8269 | ($1,924,424.19) |
| Buy | 06/15/07 | 6,500 | 72.5000 | $471,250.00 | Sell | 11/20/07 | (6,500) | 54.8269 | ($356,374.85) |
| Buy | 05/17/07 | 9,800 | 72.3103 | $708,640.94 | Sell | 11/20/07 | (9,800) | 54.8269 | ($537,303.62) |

**American International Group, Inc. (AIG)**
Cusip # 026874107
Class Period: 11/10/06 - 06/06/08
Retained share price: $27.4649 (06/06/08 - 08/18/08)

**OTPP - Aggregate LIFO "*Dura* Analysis"**

| Transaction | Date | Shares | Price | Cost | Transaction | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|---|---|---|
| Buy | 05/08/07 | 39,400 | 71.6473 | $2,822,903.62 | Sell | 11/20/07 | (39,400) | 54.8269 | ($2,160,179.86) |
| Buy | 04/30/07 | 22,260 | 70.2305 | $1,563,330.93 | Sell | 11/20/07 | (22,260) | 54.8269 | ($1,220,446.79) |
| Buy | 04/24/07 | 17,700 | 69.2206 | $1,225,204.62 | Sell | 11/20/07 | (17,700) | 54.8269 | ($970,436.13) |
| Buy | 04/17/07 | 33,390 | 68.3622 | $2,282,613.86 | Sell | 11/20/07 | (33,390) | 54.8269 | ($1,830,670.19) |
| Buy | 03/13/07 | 9,775 | 68.2987 | $667,619.79 | Sell | 11/20/07 | (9,775) | 54.8269 | ($535,932.95) |
| Buy | 03/13/07 | 16,300 | 68.2987 | $1,113,268.81 | Sell | 11/21/07 | (16,300) | 51.9134 | ($846,188.42) |
| Buy | 11/28/07 | 7,091 | 57.5039 | $407,760.15 | Sell | 11/28/07 | (7,091) | 56.5038 | ($400,668.45) |
| Buy | 11/28/07 | 9,838 | 57.4048 | $564,748.42 | Sell | 11/28/07 | (9,838) | 56.5038 | ($555,884.38) |
| Buy | 11/28/07 | 2,459 | 57.4048 | $141,158.40 | Sell | 11/28/07 | (2,459) | 56.5038 | ($138,942.84) |
| Buy | 11/28/07 | 4,727 | 57.5039 | $271,820.94 | Sell | 11/28/07 | (4,727) | 56.5038 | ($267,093.46) |
| Buy | 03/13/07 | 24,725 | 68.2987 | $1,688,685.36 | Sell | 11/28/07 | (24,725) | 56.5038 | ($1,397,056.46) |
| Buy | 03/12/07 | 29,200 | 68.3817 | $1,996,745.64 | Sell | 11/28/07 | (29,200) | 56.5038 | ($1,649,910.96) |
| Buy | 03/07/07 | 64,700 | 69.7574 | $4,513,303.78 | Sell | 11/28/07 | (64,700) | 56.5038 | ($3,655,795.86) |
| Buy | 02/27/07 | 19,577 | 68.0233 | $1,331,692.14 | Sell | 11/28/07 | (19,577) | 56.5038 | ($1,106,174.89) |
| Buy | 02/27/07 | 2,683 | 68.0451 | $182,565.00 | Sell | 11/28/07 | (2,683) | 56.5038 | ($151,599.70) |
| Buy | 02/16/07 | 11,372 | 69.6283 | $791,813.03 | Sell | 11/28/07 | (11,372) | 56.5038 | ($642,561.21) |
| Buy | 02/16/07 | 7,178 | 69.7058 | $500,348.23 | Sell | 11/28/07 | (7,178) | 56.5038 | ($405,584.28) |
| Buy | 02/16/07 | 50,850 | 69.6031 | $3,539,317.64 | Sell | 11/28/07 | (50,850) | 56.5038 | ($2,873,218.23) |
| Buy | 02/16/07 | 125,750 | 69.6031 | $8,752,589.83 | Sell | 12/03/07 | (125,750) | 56.6279 | ($7,120,958.43) |
| Buy | 02/02/07 | 17,200 | 69.0662 | $1,187,938.64 | Sell | 12/03/07 | (17,200) | 56.6279 | ($973,999.88) |
| Buy | 02/02/07 | 8,770 | 69.2150 | $607,015.55 | Sell | 12/03/07 | (8,770) | 56.6279 | ($496,626.68) |
| Buy | 01/25/07 | 31,600 | 69.1571 | $2,185,364.36 | Sell | 12/03/07 | (31,600) | 56.6279 | ($1,789,441.64) |
| Buy | 01/24/07 | 18,550 | 69.7520 | $1,293,899.60 | Sell | 12/03/07 | (18,550) | 56.6279 | ($1,050,447.55) |
| Buy | 01/22/07 | 8,979 | 70.4600 | $632,660.34 | Sell | 12/03/07 | (8,979) | 56.6279 | ($508,461.91) |
| Buy | 01/18/07 | 11,451 | 71.2683 | $816,093.30 | Sell | 12/03/07 | (11,451) | 56.6279 | ($648,446.08) |
| Buy | 01/18/07 | 17,949 | 71.2683 | $1,279,194.72 | Sell | 12/05/07 | (17,949) | 58.1500 | ($1,043,734.35) |
| Buy | 01/17/07 | 93,051 | 71.3625 | $6,640,351.99 | Sell | 12/05/07 | (93,051) | 58.1500 | ($5,410,915.65) |
| Buy | 01/17/07 | 107,700 | 71.3625 | $7,685,741.25 | Sell | 12/07/07 | (107,700) | 61.4500 | ($6,618,165.00) |
| Buy | 01/17/07 | 85,349 | 71.3625 | $6,090,718.01 | Sell | 12/11/07 | (85,349) | 59.2500 | ($5,056,928.25) |
| Buy | 12/21/06 | 40,810 | 71.9581 | $2,936,610.06 | Sell | 12/11/07 | (40,810) | 59.2500 | ($2,417,992.50) |
| Buy | 12/17/07 | 17,600 | 55.5451 | $977,593.76 | Sell | 12/18/07 | (17,600) | 55.6371 | ($979,212.96) |
| | | **1,552,239** | | **$107,791,770.49** | | | **(1,552,239)** | | **($89,969,414.31)** |
| | | | | | | | | | |
| | | | | | ***Loss on shares sold before 2/11/08:*** | | | | **($17,822,356.18)** |
| | | | | | | | | | |
| Buy | 02/12/08 | 14,549 | 45.1507 | $656,897.53 | Sell | 02/13/08 | (14,549) | 46.0759 | ($670,358.27) |
| Buy | 02/12/08 | 51,851 | 45.1507 | $2,341,108.95 | Sell | 02/13/08 | (51,851) | 45.5520 | ($2,361,916.75) |

**American International Group, Inc. (AIG)**
Cusip # 026874107
Class Period: 11/10/06 - 06/06/08
Retained share price: $27.4649 (06/06/08 - 08/18/08)

**OTPP - Aggregate LIFO "*Dura* Analysis"**

| Transaction | Date | Shares | Price | Cost | Transaction | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|---|---|---|
| Buy | 02/14/08 | 111,300 | 45.4210 | $5,055,357.30 | Sell | 02/20/08 | (111,300) | 47.1515 | ($5,247,961.95) |
| Buy | 04/04/08 | 4,500 | 47.2941 | $212,823.45 | Sell | 04/08/08 | (4,500) | 47.2370 | ($212,566.50) |
| Buy | 06/05/08 | 126,000 | 36.2940 | $4,573,044.00 | *Sell | 06/17/08 | (126,000) | 33.6388 | ($4,238,482.50) |
| | | **308,200** | | **$12,839,231.23** | | | **(308,200)** | | **($12,731,285.97)** |
| | | | | | | | | | |
| | | | | | | Loss on shares sold after 2/11/08: | | | **($107,945.26)** |
| | | | | | | | | | |
| Buy | 05/30/08 | 59,200 | 36.2130 | $2,143,809.60 | **Retained | | (45,600) | 27.4649 | ($1,252,399.44) |
| Buy | 05/23/08 | 369,000 | 36.9608 | $13,638,535.20 | **Retained | | (9,900) | 27.4649 | ($271,902.51) |
| Buy | 05/21/08 | 60,200 | 37.8328 | $2,277,534.56 | **Retained | | (92,700) | 27.4649 | ($2,545,996.23) |
| Buy | 05/21/08 | 154,700 | 37.3629 | $5,780,040.63 | **Retained | | (82,400) | 27.4649 | ($2,263,107.76) |
| Buy | 05/20/08 | 41,800 | 37.9800 | $1,587,564.00 | **Retained | | (70,000) | 27.4649 | ($1,922,543.00) |
| Buy | 05/16/08 | 111,300 | 39.2626 | $4,369,927.38 | **Retained | | (95,500) | 27.4649 | ($2,622,897.95) |
| Buy | 05/12/08 | 268,600 | 38.0000 | $10,206,800.00 | **Retained | | (53,000) | 27.4649 | ($1,455,639.70) |
| Buy | 05/06/08 | 97,700 | 48.1472 | $4,703,981.44 | **Retained | | (98,700) | 27.4649 | ($2,710,785.63) |
| Buy | 04/11/08 | 247,800 | 44.7726 | $11,094,650.28 | **Retained | | (156,300) | 27.4649 | ($4,292,763.87) |
| Buy | 04/04/08 | 65,900 | 47.2941 | $3,116,681.19 | **Retained | | (65,900) | 27.4649 | ($1,809,936.91) |
| Buy | 04/02/08 | 156,300 | 47.3342 | $7,398,335.46 | **Retained | | (247,800) | 27.4649 | ($6,805,802.22) |
| Buy | 03/28/08 | 98,700 | 43.5050 | $4,293,943.50 | **Retained | | (97,700) | 27.4649 | ($2,683,320.73) |
| Buy | 03/25/08 | 53,000 | 46.2048 | $2,448,854.40 | **Retained | | (268,600) | 27.4649 | ($7,377,072.14) |
| Buy | 03/18/08 | 95,500 | 41.9693 | $4,008,068.15 | **Retained | | (111,300) | 27.4649 | ($3,056,843.37) |
| Buy | 03/11/08 | 70,000 | 43.9473 | $3,076,311.00 | **Retained | | (41,800) | 27.4649 | ($1,148,032.82) |
| Buy | 02/25/08 | 82,400 | 49.5971 | $4,086,801.04 | **Retained | | (60,200) | 27.4649 | ($1,653,386.98) |
| Buy | 02/22/08 | 45,600 | 47.3143 | $2,157,532.08 | **Retained | | (154,700) | 27.4649 | ($4,248,820.03) |
| Buy | 02/22/08 | 9,900 | 47.2563 | $467,837.37 | **Retained | | (369,000) | 27.4649 | ($10,134,548.10) |
| Buy | 02/22/08 | 92,700 | 47.3642 | $4,390,661.34 | **Retained | | (59,200) | 27.4649 | ($1,625,922.08) |
| | | **2,180,300** | | **$91,247,868.62** | | | **(2,180,300)** | | **($59,881,721.47)** |
| | | | | | | | | | |
| | | | | | | Loss on retained shares | | | **($31,366,147.15)** |
| | | | | | | | | | |
| | | | | | | Total Dura LIFO Loss (Loss on shares sold after 2/11/08 and retained shares) | | | **($31,474,092.41)** |

*Shares sold within 90 days after the end of the class period have been valued using the higher price between the actual sales price
and the average closing price from the end of the class period to the date of the sale.*

**Shares retained at the end of the class period have been valued at $27.4649, AIG's average closing price from 06/06/08 to 08/18/08.*

**American International Group, Inc. (AIG)**
Cusip # 026874107
Class Period: 11/10/06 - 06/06/08
Retained share price: $27.4649 (06/06/08 - 08/18/08)

**PGGM - Aggregate LIFO "*Dura* Analysis"**

| Transaction | Date | Shares | Price | Cost | | Transaction | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|---|---|---|---|
| | Pre-class holdings | **2,447,104** | | | | Sell | 01/31/07 | (49,936) | 68.4454 | ($3,417,889.42) |
| | | | | | | Sell | 01/31/07 | (69,912) | 68.2273 | ($4,769,907.34) |
| | | | | | | Sell | 01/31/07 | (57,682) | 68.4429 | ($3,947,923.27) |
| | | | | | | Sell | 02/02/07 | (18,772) | 69.1486 | ($1,298,057.08) |
| | | | | | | Sell | 02/02/07 | (662) | 69.0654 | ($45,721.27) |
| | | | | | | Sell | 05/31/07 | (57,765) | 72.3110 | ($4,177,044.54) |
| | | | | | | Sell | 06/01/07 | (140) | 72.5964 | ($10,163.49) |
| | | | | | | Sell | 06/01/07 | (7,747) | 72.6965 | ($563,179.68) |
| | | | | | | Sell | 07/09/07 | (195,378) | 70.2687 | ($13,728,952.57) |
| | | | | | | Sell | 07/17/07 | (4,484) | 69.7035 | ($312,550.64) |
| | | | | | | Sell | 07/30/07 | (71,382) | 64.9189 | ($4,634,038.57) |
| | | | | | | Sell | 08/01/07 | (100) | 63.2065 | ($6,320.65) |
| | | | | | | Sell | 08/01/07 | (21,493) | 62.6173 | ($1,345,834.52) |
| | | | | | | Sell | 08/09/07 | (14,700) | 64.8644 | ($953,506.78) |
| | | | | | | Sell | 08/10/07 | (22,000) | 64.7209 | ($1,423,860.00) |
| | | | | | | Sell | 08/13/07 | (4,700) | 65.2435 | ($306,644.45) |
| | | | | | | Sell | 08/14/07 | (5,708) | 63.5725 | ($362,871.98) |
| | | | | | | Sell | 08/14/07 | (289) | 63.4765 | ($18,344.71) |
| | | | | | | Sell | 08/14/07 | (2,300) | 64.1099 | ($147,452.81) |
| | | | | | | Sell | 08/21/07 | (4,700) | 65.7052 | ($308,814.41) |
| | | | | | | Sell | 08/22/07 | (13,900) | 66.3424 | ($922,159.14) |
| | | | | | | Sell | 08/23/07 | (9,300) | 66.5629 | ($619,034.79) |
| | | | | | | Sell | 08/24/07 | (822) | 66.8395 | ($54,942.05) |
| | | | | | | *Shares sold during the class* | | **(633,872)** | | **($43,375,214.15)** |
| | | | | | | *period offsetting opening balance:* | | | | |
| Buy | 11/14/06 | 294 | 71.0525 | $20,889.43 | | Sell | 11/16/06 | (294) | 72.3528 | ($21,271.71) |
| Buy | 11/14/06 | 401 | 71.0525 | $28,492.05 | | Sell | 11/16/06 | (401) | 72.3553 | ($29,014.46) |
| Buy | 01/09/07 | 28 | 71.2460 | $1,994.89 | | Sell | 01/16/07 | (28) | 71.1354 | ($1,991.79) |
| Buy | 01/09/07 | 3,246 | 71.2460 | $231,264.52 | | Sell | 01/16/07 | (3,246) | 71.0468 | ($230,617.97) |
| Buy | 01/09/07 | 46 | 71.3526 | $3,282.22 | | Sell | 01/16/07 | (46) | 71.0468 | ($3,268.15) |
| Buy | 12/29/06 | 208 | 71.6650 | $14,906.32 | | Sell | 01/16/07 | (208) | 71.0468 | ($14,777.74) |
| Buy | 12/18/06 | 1,323 | 72.9448 | $96,505.97 | | Sell | 01/16/07 | (1,323) | 71.0468 | ($93,994.94) |
| Buy | 12/18/06 | 807 | 72.9448 | $58,866.46 | | Sell | 01/31/07 | (807) | 68.4454 | ($55,235.44) |
| Buy | 12/15/06 | 1,938 | 72.1225 | $139,773.41 | | Sell | 01/31/07 | (1,938) | 68.4454 | ($132,647.18) |
| Buy | 12/15/06 | 6,378 | 72.1315 | $460,054.70 | | Sell | 01/31/07 | (6,378) | 68.4454 | ($436,544.75) |

**American International Group, Inc. (AIG)**
Cusip # 026874107
Class Period: 11/10/06 - 06/06/08
Retained share price: $27.4649 (06/06/08 - 08/18/08)

**PGGM - Aggregate LIFO "*Dura* Analysis"**

| Transaction | Date | Shares | Price | Cost | Transaction | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|---|---|---|
| Buy | 12/14/06 | 2,157 | 71.4493 | $154,116.14 | Sell | 01/31/07 | (2,157) | 68.4454 | ($147,636.72) |
| Buy | 12/14/06 | 100 | 71.9725 | $7,197.25 | Sell | 01/31/07 | (100) | 68.4454 | ($6,844.54) |
| Buy | 12/01/06 | 2,645 | 69.5593 | $183,984.35 | Sell | 01/31/07 | (2,645) | 68.4454 | ($181,038.08) |
| Buy | 12/01/06 | 124 | 69.5025 | $8,618.31 | Sell | 01/31/07 | (124) | 68.4454 | ($8,487.23) |
| Buy | 11/14/06 | 5,822 | 71.0525 | $413,667.65 | Sell | 01/31/07 | (5,822) | 68.4454 | ($398,489.11) |
| Buy | 03/19/07 | 1,165 | 67.5401 | $78,684.21 | Sell | 04/02/07 | (1,165) | 67.0292 | ($78,088.99) |
| Buy | 03/16/07 | 114 | 66.8750 | $7,623.75 | Sell | 04/02/07 | (114) | 67.0292 | ($7,641.33) |
| Buy | 03/16/07 | 4,722 | 66.8630 | $315,727.09 | Sell | 04/02/07 | (4,722) | 67.0292 | ($316,511.76) |
| Buy | 03/16/07 | 14 | 66.8630 | $936.08 | Sell | 04/02/07 | (14) | 67.1457 | ($940.04) |
| Buy | 03/16/07 | 22 | 66.8630 | $1,470.99 | Sell | 04/16/07 | (22) | 67.5559 | ($1,486.23) |
| Buy | 03/16/07 | 4,377 | 66.8630 | $292,659.35 | Sell | 04/16/07 | (4,377) | 67.4833 | ($295,374.26) |
| Buy | 03/05/07 | 1 | 69.5300 | $69.53 | Sell | 04/16/07 | (1) | 67.4833 | ($67.48) |
| Buy | 03/05/07 | 1,066 | 69.6547 | $74,251.92 | Sell | 04/16/07 | (1,066) | 67.4833 | ($71,937.16) |
| Buy | 02/13/07 | 1,425 | 68.9732 | $98,286.81 | Sell | 04/16/07 | (1,425) | 67.4833 | ($96,163.66) |
| Buy | 05/14/07 | 4,983 | 72.4249 | $360,893.28 | Sell | 05/31/07 | (4,983) | 72.3110 | ($360,325.68) |
| Buy | 05/14/07 | 225 | 72.4025 | $16,290.56 | Sell | 05/31/07 | (225) | 72.3110 | ($16,269.97) |
| Buy | 04/26/07 | 13,686 | 69.7389 | $954,446.59 | Sell | 05/31/07 | (13,686) | 72.3110 | ($989,648.26) |
| Buy | 02/13/07 | 516 | 68.9732 | $35,590.17 | Sell | 05/31/07 | (516) | 72.3110 | ($37,312.47) |
| Buy | 06/15/07 | 546 | 72.5450 | $39,609.57 | Sell | 07/02/07 | (546) | 70.0519 | ($38,248.35) |
| Buy | 06/15/07 | 2,018 | 72.6203 | $146,547.77 | Sell | 07/02/07 | (2,018) | 70.0519 | ($141,364.79) |
| Buy | 06/15/07 | 4,702 | 72.5330 | $341,050.17 | Sell | 07/02/07 | (4,702) | 70.0519 | ($329,384.16) |
| Buy | 06/14/07 | 44 | 72.4125 | $3,186.15 | Sell | 07/02/07 | (44) | 70.0519 | ($3,082.28) |
| Buy | 06/14/07 | 76 | 72.2981 | $5,494.66 | Sell | 07/02/07 | (76) | 70.0519 | ($5,323.95) |
| Buy | 06/14/07 | 4,622 | 72.2981 | $334,161.82 | Sell | 07/09/07 | (4,622) | 70.2687 | ($324,781.80) |
| Buy | 08/24/07 | 4,669 | 66.9352 | $312,520.45 | Sell | 08/24/07 | (4,669) | 66.8395 | ($312,073.51) |
| Buy | 08/24/07 | 209 | 67.1534 | $14,035.06 | Sell | 08/24/07 | (209) | 66.8395 | ($13,969.45) |
| Buy | 09/05/07 | 408 | 65.4975 | $26,722.98 | Sell | 09/05/07 | (408) | 65.6176 | ($26,771.96) |
| Buy | 09/05/07 | 42,883 | 65.6555 | $2,815,504.81 | Sell | 09/05/07 | (42,883) | 65.6176 | ($2,813,877.46) |
| Buy | 09/05/07 | 9,807 | 65.6555 | $643,883.49 | Sell | 09/06/07 | (9,807) | 65.1113 | ($638,546.44) |
| Buy | 09/05/07 | 2,300 | 65.5120 | $150,677.60 | Sell | 09/06/07 | (2,300) | 65.1113 | ($149,755.97) |
| Buy | 09/04/07 | 47,893 | 66.1739 | $3,169,266.59 | Sell | 09/06/07 | (47,893) | 65.1113 | ($3,118,375.10) |
| Buy | 09/17/07 | 457 | 64.2675 | $29,370.25 | Sell | 09/18/07 | (457) | 65.6836 | ($30,017.40) |
| Buy | 09/11/07 | 621 | 64.6975 | $40,177.15 | Sell | 09/18/07 | (621) | 65.6836 | ($40,789.51) |
| Buy | 09/04/07 | 1,644 | 66.1739 | $108,789.89 | Sell | 09/18/07 | (1,644) | 65.6836 | ($107,983.83) |
| Buy | 09/21/07 | 10,420 | 67.2455 | $700,697.95 | Sell | 09/21/07 | (10,420) | 67.2390 | ($700,630.08) |
| Buy | 09/21/07 | 95 | 67.2455 | $6,388.32 | Sell | 09/21/07 | (95) | 67.2239 | ($6,386.27) |

**American International Group, Inc. (AIG)**
Cusip # 026874107
Class Period: 11/10/06 - 06/06/08
Retained share price: $27.4649 (06/06/08 - 08/18/08)

**PGGM - Aggregate LIFO "*Dura* Analysis"**

| Transaction | Date | Shares | Price | Cost | Transaction | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|---|---|---|
| Buy | 09/24/07 | 1,068 | 66.7700 | $71,310.36 | Sell | 09/25/07 | (1,068) | 67.0765 | ($71,637.67) |
| Buy | 12/04/07 | 2,506 | 55.5019 | $139,087.77 | Sell | 12/20/07 | (2,506) | 56.5662 | ($141,754.98) |
| Buy | 10/09/07 | 429 | 70.1125 | $30,078.26 | Sell | 12/20/07 | (429) | 56.5662 | ($24,266.91) |
| Buy | 10/09/07 | 2,115 | 70.1175 | $148,298.52 | Sell | 12/20/07 | (2,115) | 56.5662 | ($119,637.58) |
| Buy | 10/09/07 | 135 | 70.1175 | $9,465.86 | Sell | 12/21/07 | (135) | 58.3311 | ($7,874.70) |
| Buy | 10/05/07 | 1,432 | 69.4823 | $99,498.64 | Sell | 12/21/07 | (1,432) | 58.3311 | ($83,530.14) |
| Buy | 10/05/07 | 10,726 | 69.4823 | $745,267.08 | Sell | 12/21/07 | (10,726) | 58.3266 | ($625,611.18) |
| | | **209,658** | | **$14,191,635.20** | | | **(209,658)** | | **($13,909,302.57)** |
| | | | | | | | | | |
| | | | | | | Loss on shares sold before 2/11/08: | | | **($282,332.63)** |
| | | | | | | | | | |
| Buy | 05/13/08 | 2,386 | 39.0846 | $93,255.86 | Sell | 05/13/08 | (2,386) | 39.1573 | ($93,429.26) |
| Buy | 05/13/08 | 26,826 | 39.0846 | $1,048,483.48 | Sell | 05/30/08 | (26,826) | 35.9973 | ($965,663.53) |
| Buy | 05/13/08 | 18,694 | 39.1550 | $731,963.57 | Sell | 05/30/08 | (18,694) | 35.9973 | ($672,933.49) |
| Buy | 05/13/08 | 127,698 | 39.1550 | $5,000,015.19 | Sell | 05/30/08 | (127,698) | 35.9926 | ($4,596,182.83) |
| Buy | 05/13/08 | 7,350 | 38.4877 | $282,884.57 | Sell | 05/30/08 | (7,350) | 35.9926 | ($264,545.60) |
| Buy | 03/31/08 | 22,575 | 43.2525 | $976,425.19 | Sell | 05/30/08 | (22,575) | 35.9926 | ($812,532.91) |
| Buy | 03/31/08 | 182,077 | 43.5439 | $7,928,342.68 | Sell | 05/30/08 | (182,077) | 35.9926 | ($6,553,424.34) |
| Buy | 03/20/08 | 680 | 44.9950 | $30,596.60 | Sell | 05/30/08 | (680) | 35.9926 | ($24,474.97) |
| Buy | 02/29/08 | 859,620 | 46.6145 | $40,070,774.58 | Sell | 05/30/08 | (859,620) | 35.9926 | ($30,939,957.44) |
| Buy | 02/29/08 | 111,231 | 46.6145 | $5,184,979.79 | *Sell | 06/18/08 | (111,231) | 33.4033 | ($3,715,486.17) |
| | | **1,359,137** | | **$61,347,721.51** | | | **(1,359,137)** | | **($48,638,630.53)** |
| | | | | | | | | | |
| | | | | | | Loss on shares sold after 2/11/08: | | | **($12,709,090.98)** |
| | | | | | | | | | |
| Buy | 02/29/08 | 229,149 | 46.6145 | $10,681,670.88 | **Retained | | (229,149) | 27.4649 | ($6,293,554.37) |
| Buy | 01/07/08 | 244 | 55.6548 | $13,579.77 | **Retained | | (244) | 27.4649 | ($6,701.44) |
| Buy | 01/04/08 | 4,806 | 55.5707 | $267,072.79 | **Retained | | (4,806) | 27.4649 | ($131,996.31) |
| Buy | 10/05/07 | 27,382 | 69.4823 | $1,902,564.17 | **Retained | | (27,382) | 27.4649 | ($752,043.89) |
| Buy | 10/04/07 | 40,550 | 68.8772 | $2,792,969.35 | **Retained | | (40,550) | 27.4649 | ($1,113,701.70) |
| Buy | 10/03/07 | 40,550 | 68.8586 | $2,792,214.97 | **Retained | | (40,550) | 27.4649 | ($1,113,701.70) |
| Buy | 10/02/07 | 44,420 | 68.8152 | $3,056,769.42 | **Retained | | (44,420) | 27.4649 | ($1,219,990.86) |
| Buy | 10/01/07 | 17,292 | 68.2231 | $1,179,713.84 | **Retained | | (17,292) | 27.4649 | ($474,923.05) |
| Buy | 10/01/07 | 32,208 | 68.2231 | $2,197,329.61 | **Retained | | (32,208) | 27.4649 | ($884,589.50) |
| Buy | 09/28/07 | 8,831 | 67.6550 | $597,461.31 | **Retained | | (8,831) | 27.4649 | ($242,542.53) |
| Buy | 09/28/07 | 112,349 | 67.6284 | $7,597,983.11 | **Retained | | (112,349) | 27.4649 | ($3,085,654.05) |

**American International Group, Inc. (AIG)**
Cusip # 026874107
Class Period: 11/10/06 - 06/06/08
Retained share price: $27.4649 (06/06/08 - 08/18/08)

**PGGM - Aggregate LIFO "*Dura* Analysis"**

| Transaction | Date | Shares | Price | Cost | Transaction | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|---|---|---|
| Buy | 09/28/07 | 59,461 | 67.6293 | $4,021,305.81 | **Retained | | (59,461) | 27.4649 | ($1,633,090.42) |
| Buy | 09/27/07 | 42,666 | 67.3773 | $2,874,721.46 | **Retained | | (42,666) | 27.4649 | ($1,171,817.42) |
| Buy | 09/24/07 | 1,734 | 66.7700 | $115,779.18 | **Retained | | (1,734) | 27.4649 | ($47,624.14) |
| Buy | 09/21/07 | 32,152 | 67.2455 | $2,162,076.83 | **Retained | | (32,152) | 27.4649 | ($883,051.46) |
| Buy | 09/20/07 | 41,916 | 67.3146 | $2,821,560.07 | **Retained | | (41,916) | 27.4649 | ($1,151,218.75) |
| Buy | 09/19/07 | 41,916 | 67.6870 | $2,837,166.95 | **Retained | | (41,916) | 27.4649 | ($1,151,218.75) |
| Buy | 09/04/07 | 4,263 | 66.1739 | $282,099.34 | **Retained | | (4,263) | 27.4649 | ($117,082.87) |
| Buy | 08/31/07 | 12,200 | 66.0125 | $805,352.50 | **Retained | | (12,200) | 27.4649 | ($335,071.78) |
| Buy | 08/31/07 | 122,562 | 65.9478 | $8,082,694.26 | **Retained | | (122,562) | 27.4649 | ($3,366,153.07) |
| Buy | 08/31/07 | 3,500 | 66.1242 | $231,434.70 | **Retained | | (3,500) | 27.4649 | ($96,127.15) |
| | | **920,151** | | **$57,313,520.32** | | | **(920,151)** | | **($25,271,855.20)** |

*Loss on retained shares* **($32,041,665.12)**

*Total Dura LIFO Loss (Loss on shares sold after 2/11/08 and retained shares)* **($44,750,756.10)**

*\*Shares sold within 90 days after the end of the class period have been valued using the higher price between the actual sales price and the average closing price from the end of the class period to the date of the sale.*

*\*\*Shares retained at the end of the class period have been valued at $27.4649, AIG's average closing price from 06/06/08 to 08/18/08.*

Ex. C

**American International Group, Inc. (AIG)**
Cusip # 026874107
Class Period: 11/10/06 - 06/06/08
Retained share price: $27.4649 (06/06/08 - 08/18/08)

**SMRS - Aggregate LIFO "*Dura* Analysis"**

| Transaction | Date | Shares | Price | Cost | Transaction | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|---|---|---|
| | Pre-class holdings | **6,274,055** | | | | | | | $0.00 |
| | | | | | *Shares sold during the class period offsetting opening balance:* | | **0** | | **$0.00** |
| Buy | 07/20/07 | 53,925 | 69.4166 | $3,743,290.16 | Sell | 07/20/07 | (53,925) | 69.0691 | ($3,724,551.22) |
| Buy | 07/20/07 | 2,375 | 69.4166 | $164,864.43 | Sell | 07/20/07 | (2,375) | 69.0691 | ($164,039.11) |
| Buy | 08/16/07 | 44,300 | 62.8126 | $2,782,598.18 | Sell | 09/21/07 | (44,300) | 67.8300 | ($3,004,869.00) |
| Buy | 10/16/07 | 1,250 | 66.7900 | $83,487.50 | Sell | 10/16/07 | (1,250) | 66.1200 | ($82,650.00) |
| Buy | 10/16/07 | 1,750 | 66.7900 | $116,882.50 | Sell | 10/18/07 | (1,750) | 65.4018 | ($114,453.15) |
| Buy | 10/16/07 | 2,000 | 66.7900 | $133,580.00 | Sell | 10/18/07 | (2,000) | 65.4018 | ($130,803.60) |
| Buy | 10/25/07 | 1,592 | 60.5220 | $96,351.02 | Sell | 10/25/07 | (1,592) | 59.6682 | ($94,991.77) |
| Buy | 10/25/07 | 925 | 60.5220 | $55,982.85 | Sell | 10/31/07 | (925) | 63.2343 | ($58,491.73) |
| Buy | 11/01/07 | 100 | 60.9200 | $6,092.00 | Sell | 11/12/07 | (100) | 56.7800 | ($5,678.00) |
| Buy | 10/25/07 | 400 | 60.5220 | $24,208.80 | Sell | 11/12/07 | (400) | 56.7800 | ($22,712.00) |
| Buy | 10/25/07 | 4,443 | 60.5220 | $268,899.25 | Sell | 11/19/07 | (4,443) | 55.2945 | ($245,673.46) |
| Buy | 12/06/07 | 60,800 | 60.4087 | $3,672,848.96 | Sell | 12/21/07 | (60,800) | 57.3415 | ($3,486,363.20) |
| Buy | 12/06/07 | 79,200 | 60.4087 | $4,784,369.04 | Sell | 01/02/08 | (79,200) | 56.8300 | ($4,500,936.00) |
| Buy | 12/04/07 | 100,000 | 55.4449 | $5,544,490.00 | Sell | 01/02/08 | (100,000) | 56.8300 | ($5,683,000.00) |
| Buy | 12/03/07 | 80,000 | 56.3849 | $4,510,792.00 | Sell | 01/02/08 | (80,000) | 56.8300 | ($4,546,400.00) |
| Buy | 11/30/07 | 100,800 | 58.2400 | $5,870,592.00 | Sell | 01/02/08 | (100,800) | 56.8300 | ($5,728,464.00) |
| Buy | 11/30/07 | 189,200 | 58.2400 | $11,019,008.00 | Sell | 01/03/08 | (189,200) | 56.7566 | ($10,738,348.72) |
| Buy | 11/29/07 | 85,800 | 56.7496 | $4,869,115.68 | Sell | 01/03/08 | (85,800) | 56.7566 | ($4,869,716.28) |
| Buy | 11/29/07 | 34,200 | 56.7496 | $1,940,836.32 | Sell | 01/04/08 | (34,200) | 55.8552 | ($1,910,247.84) |
| Buy | 11/28/07 | 90,000 | 57.3864 | $5,164,776.00 | Sell | 01/04/08 | (90,000) | 55.8552 | ($5,026,968.00) |
| Buy | 10/25/07 | 237,640 | 60.5220 | $14,382,448.08 | Sell | 01/04/08 | (237,640) | 55.8552 | ($13,273,429.73) |
| Buy | 10/24/07 | 40,000 | 63.5251 | $2,541,004.00 | Sell | 01/04/08 | (40,000) | 55.8552 | ($2,234,208.00) |
| Buy | 10/23/07 | 73,160 | 63.9440 | $4,678,143.04 | Sell | 01/04/08 | (73,160) | 55.8552 | ($4,086,366.43) |
| Buy | 10/23/07 | 133,540 | 63.9440 | $8,539,081.76 | Sell | 01/07/08 | (133,540) | 56.1400 | ($7,496,935.60) |
| Buy | 10/16/07 | 2,100 | 66.7900 | $140,259.00 | Sell | 01/07/08 | (2,100) | 56.1400 | ($117,894.00) |
| Buy | 10/16/07 | 6,800 | 66.7900 | $454,172.00 | Sell | 01/07/08 | (6,800) | 56.1400 | ($381,752.00) |
| Buy | 10/12/07 | 6,035 | 68.0487 | $410,673.90 | Sell | 01/07/08 | (6,035) | 56.1400 | ($338,804.90) |
| Buy | 10/12/07 | 3,500 | 68.0803 | $238,281.05 | Sell | 01/07/08 | (3,500) | 56.1400 | ($196,490.00) |
| Buy | 08/16/07 | 48,025 | 62.8126 | $3,016,575.12 | Sell | 01/07/08 | (48,025) | 56.1400 | ($2,696,123.50) |

**American International Group, Inc. (AIG)**
Cusip # 026874107
Class Period: 11/10/06 - 06/06/08
Retained share price: $27.4649 (06/06/08 - 08/18/08)

**SMRS - Aggregate LIFO "*Dura* Analysis"**

| Transaction | Date | Shares | Price | Cost | Transaction | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|---|---|---|
| Buy | 08/16/07 | 1,200 | 62.8126 | $75,375.12 | Sell | 01/07/08 | (1,200) | 56.3000 | ($67,560.00) |
| Buy | 08/16/07 | 700 | 62.8126 | $43,968.82 | Sell | 01/29/08 | (700) | 56.7300 | ($39,711.00) |
| Buy | 08/16/07 | 600 | 62.8126 | $37,687.56 | Sell | 01/31/08 | (600) | 55.1600 | ($33,096.00) |
| Buy | 08/16/07 | 100 | 62.8126 | $6,281.26 | Sell | 02/01/08 | (100) | 55.2433 | ($5,524.33) |
| | | **1,486,460** | | **$89,417,015.39** | | | **(1,486,460)** | | **($85,107,252.58)** |
| | | | | | | Loss on sales before 2/11/08: | | | **($4,309,762.81)** |
| Buy | 03/20/08 | 1,200 | 42.6000 | $51,120.00 | Sell | 03/24/08 | (1,200) | 46.5140 | ($55,816.80) |
| Buy | 03/19/08 | 125,000 | 43.1004 | $5,387,550.00 | Sell | 03/24/08 | (125,000) | 46.5140 | ($5,814,250.00) |
| Buy | 03/07/08 | 60,000 | 43.4296 | $2,605,776.00 | Sell | 03/24/08 | (60,000) | 46.5140 | ($2,790,840.00) |
| Buy | 02/29/08 | 100,000 | 46.5276 | $4,652,760.00 | Sell | 03/24/08 | (100,000) | 46.5140 | ($4,651,400.00) |
| Buy | 02/25/08 | 200 | 48.6700 | $9,734.00 | Sell | 03/24/08 | (200) | 46.5140 | ($9,302.80) |
| Buy | 02/22/08 | 13,600 | 47.3308 | $643,698.88 | Sell | 03/24/08 | (13,600) | 46.5140 | ($632,590.40) |
| Buy | 02/22/08 | 36,400 | 47.3308 | $1,722,841.12 | Sell | 03/25/08 | (36,400) | 45.8500 | ($1,668,940.00) |
| Buy | 02/11/08 | 150,000 | 44.9327 | $6,739,905.00 | Sell | 03/25/08 | (150,000) | 45.8500 | ($6,877,500.00) |
| Buy | 02/11/08 | 1,875 | 45.0600 | $84,487.50 | Sell | 03/25/08 | (1,875) | 45.8500 | ($85,968.75) |
| Buy | 08/16/07 | 105,075 | 62.8126 | $6,600,033.95 | Sell | 03/25/08 | (105,075) | 45.8500 | ($4,817,688.75) |
| Buy | 08/16/07 | 106,650 | 63.0713 | $6,726,554.15 | Sell | 03/25/08 | (106,650) | 45.8500 | ($4,889,902.50) |
| Buy | 08/16/07 | 100 | 63.0713 | $6,307.13 | Sell | 03/25/08 | (100) | 46.2113 | ($4,621.13) |
| Buy | 08/16/07 | 28,250 | 63.0713 | $1,781,764.23 | Sell | 03/26/08 | (28,250) | 44.6463 | ($1,261,257.98) |
| Buy | 08/15/07 | 171,750 | 63.4126 | $10,891,114.05 | Sell | 03/26/08 | (171,750) | 44.6463 | ($7,668,002.03) |
| Buy | 08/15/07 | 53,250 | 63.4126 | $3,376,720.95 | Sell | 04/24/08 | (53,250) | 47.1125 | ($2,508,740.63) |
| Buy | 08/15/07 | 75,000 | 63.6343 | $4,772,572.50 | Sell | 04/24/08 | (75,000) | 47.1125 | ($3,533,437.50) |
| Buy | 08/14/07 | 50,000 | 63.5961 | $3,179,805.00 | Sell | 04/24/08 | (50,000) | 47.1125 | ($2,355,625.00) |
| Buy | 08/14/07 | 30,000 | 63.4306 | $1,902,918.00 | Sell | 04/24/08 | (30,000) | 47.1125 | ($1,413,375.00) |
| Buy | 08/10/07 | 90,000 | 64.2856 | $5,785,704.00 | Sell | 04/24/08 | (90,000) | 47.1125 | ($4,240,125.00) |
| Buy | 08/09/07 | 86,804 | 64.1537 | $5,568,797.77 | Sell | 04/24/08 | (86,804) | 47.1125 | ($4,089,553.45) |
| Buy | 08/09/07 | 29,946 | 64.1537 | $1,921,146.70 | Sell | 04/25/08 | (29,946) | 47.2862 | ($1,416,032.55) |
| Buy | 08/09/07 | 3,250 | 64.1537 | $208,499.53 | Sell | 04/29/08 | (3,250) | 47.2865 | ($153,681.13) |
| Buy | 07/31/07 | 17,650 | 64.9203 | $1,145,843.30 | Sell | 04/29/08 | (17,650) | 47.2865 | ($834,606.73) |
| Buy | 07/31/07 | 31,350 | 64.9203 | $2,035,251.41 | Sell | 05/01/08 | (31,350) | 47.8325 | ($1,499,548.88) |
| Buy | 07/31/07 | 17,750 | 64.7957 | $1,150,123.68 | Sell | 05/01/08 | (17,750) | 47.8325 | ($849,026.88) |

**American International Group, Inc. (AIG)**
Cusip # 026874107
Class Period: 11/10/06 - 06/06/08
Retained share price: $27.4649 (06/06/08 - 08/18/08)

**SMRS - Aggregate LIFO "*Dura* Analysis"**

| Transaction | Date | Shares | Price | Cost | Transaction | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|---|---|---|
| Buy | 07/31/07 | 600 | 64.7957 | $38,877.42 | Sell | 05/01/08 | (600) | 46.8062 | ($28,083.72) |
| Buy | 05/27/08 | 3,600 | 36.6608 | $131,978.88 | Sell | 05/27/08 | (3,600) | 36.7300 | ($132,228.00) |
| | | **1,389,300** | | **$79,121,885.12** | | | **(1,389,300)** | | **($64,282,145.57)** |
| | | | | | | | | | |
| | | | | | | **Loss on sales after 2/11/08:** | | | **($14,839,739.55)** |
| | | | | | | | | | |
| Buy | 06/06/08 | 25,000 | 34.1043 | $852,607.50 | *Retained | | (25,000) | 27.4649 | ($686,622.50) |
| Buy | 06/05/08 | 15,000 | 35.7772 | $536,658.00 | *Retained | | (15,000) | 27.4649 | ($411,973.50) |
| Buy | 06/04/08 | 65,000 | 35.9372 | $2,335,918.00 | *Retained | | (65,000) | 27.4649 | ($1,785,218.50) |
| Buy | 06/03/08 | 1,400 | 36.2367 | $50,731.38 | *Retained | | (1,400) | 27.4649 | ($38,450.86) |
| Buy | 06/02/08 | 50,000 | 35.9438 | $1,797,190.00 | *Retained | | (50,000) | 27.4649 | ($1,373,245.00) |
| Buy | 05/30/08 | 75,000 | 36.2099 | $2,715,742.50 | *Retained | | (75,000) | 27.4649 | ($2,059,867.50) |
| Buy | 05/29/08 | 25,000 | 35.3498 | $883,745.00 | *Retained | | (25,000) | 27.4649 | ($686,622.50) |
| Buy | 05/28/08 | 130,000 | 35.3673 | $4,597,749.00 | *Retained | | (130,000) | 27.4649 | ($3,570,437.00) |
| Buy | 05/27/08 | 126,400 | 36.6608 | $4,633,925.12 | *Retained | | (126,400) | 27.4649 | ($3,471,563.36) |
| Buy | 05/22/08 | 600 | 37.4665 | $22,479.90 | *Retained | | (600) | 27.4649 | ($16,478.94) |
| Buy | 05/20/08 | 60,000 | 38.0864 | $2,285,184.00 | *Retained | | (60,000) | 27.4649 | ($1,647,894.00) |
| Buy | 05/13/08 | 64,400 | 39.1600 | $2,521,904.00 | *Retained | | (64,400) | 27.4649 | ($1,768,739.56) |
| Buy | 05/09/08 | 45,000 | 40.2770 | $1,812,465.00 | *Retained | | (45,000) | 27.4649 | ($1,235,920.50) |
| Buy | 07/31/07 | 191,650 | 64.7957 | $12,418,095.91 | *Retained | | (191,650) | 27.4649 | ($5,263,648.09) |
| Buy | 07/30/07 | 28,300 | 65.1354 | $1,843,331.82 | *Retained | | (28,300) | 27.4649 | ($777,256.67) |
| Buy | 07/20/07 | 177,963 | 69.4166 | $12,353,586.39 | *Retained | | (177,963) | 27.4649 | ($4,887,736.00) |
| Buy | 07/19/07 | 1,700 | 69.6600 | $118,422.00 | *Retained | | (1,700) | 27.4649 | ($46,690.33) |
| Buy | 07/19/07 | 2,800 | 69.7000 | $195,160.00 | *Retained | | (2,800) | 27.4649 | ($76,901.72) |
| Buy | 07/19/07 | 12,605 | 69.6719 | $878,214.30 | *Retained | | (12,605) | 27.4649 | ($346,195.06) |
| Buy | 07/19/07 | 3,600 | 69.6600 | $250,776.00 | *Retained | | (3,600) | 27.4649 | ($98,873.64) |
| Buy | 07/19/07 | 1,900 | 69.6600 | $132,354.00 | *Retained | | (1,900) | 27.4649 | ($52,183.31) |
| Buy | 07/19/07 | 9,300 | 69.7000 | $648,210.00 | *Retained | | (9,300) | 27.4649 | ($255,423.57) |
| Buy | 07/19/07 | 35,923 | 69.6719 | $2,502,823.66 | *Retained | | (35,923) | 27.4649 | ($986,621.60) |
| Buy | 07/18/07 | 86,744 | 69.1873 | $6,001,583.15 | *Retained | | (86,744) | 27.4649 | ($2,382,415.29) |
| Buy | 07/18/07 | 105,626 | 69.2057 | $7,309,921.27 | *Retained | | (105,626) | 27.4649 | ($2,901,007.53) |
| Buy | 07/18/07 | 7,200 | 69.5000 | $500,400.00 | *Retained | | (7,200) | 27.4649 | ($197,747.28) |
| Buy | 07/18/07 | 11,500 | 69.6200 | $800,630.00 | *Retained | | (11,500) | 27.4649 | ($315,846.35) |

**American International Group, Inc. (AIG)**
Cusip # 026874107
Class Period: 11/10/06 - 06/06/08
Retained share price: $27.4649 (06/06/08 - 08/18/08)

**SMRS - Aggregate LIFO "*Dura* Analysis"**

| Transaction | Date | Shares | Price | Cost | Transaction | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|---|---|---|
| Buy | 07/18/07 | 34,500 | 69.6200 | $2,401,890.00 | *Retained | | (34,500) | 27.4649 | ($947,539.05) |
| Buy | 07/18/07 | 219,279 | 69.2238 | $15,179,325.64 | *Retained | | (219,279) | 27.4649 | ($6,022,475.81) |
| Buy | 07/18/07 | 344,274 | 69.1938 | $23,821,626.30 | *Retained | | (344,274) | 27.4649 | ($9,455,450.98) |
| Buy | 07/18/07 | 13,900 | 69.5000 | $966,050.00 | *Retained | | (13,900) | 27.4649 | ($381,762.11) |
| Buy | 07/18/07 | 8,100 | 69.5000 | $562,950.00 | *Retained | | (8,100) | 27.4649 | ($222,465.69) |
| Buy | 03/16/07 | 13,600 | 66.9358 | $910,326.88 | *Retained | | (13,600) | 27.4649 | ($373,522.64) |
| Buy | 12/15/06 | 14,900 | 72.1651 | $1,075,259.99 | *Retained | | (14,900) | 27.4649 | ($409,227.01) |
| | | **2,008,164** | | **$115,917,236.70** | | | **(2,008,164)** | | **($55,154,023.44)** |

**Loss on retained shares:** **($60,763,213.26)**

**Total Dura LIFO Loss (Loss on shares sold after 2/11/08 and retained shares)** **($75,602,952.81)**

*Shares retained at the end of the class period have been valued at $27.4649, AIG's average closing price from 06/06/08 to 08/18/08.*

**Ex. D**

# GMR Infrastructure Limited

Registered Office: 25/1, Skip House, Museum Road, Bangalore - 560 025

Unaudited Consolidated Financial Results for the quarter ended June 30, 2008

| Particulars | Consolidated Results [ in Rs. Lakhs, except for share data ] | | |
|---|---|---|---|
| | Quarter ended June 30, | | Year ended March 31, |
| | 2008 Unaudited | 2007 Unaudited | 2008 Audited |
| 1. Revenue from operations | | | |
| Gross Sales / Income from Operations | 99,477 | 56,239 | 269,791 |
| Less: Revenue share paid / payable to Concessionaire grantors | 10,930 | 8,580 | 40,313 |
| Net Sales / Income from Operations | 88,547 | 47,659 | 229,478 |
| 2. Other Income | 686 | 655 | 5,395 |
| **Total Income** | **89,233** | **48,314** | **234,873** |
| 3. Expenditure | | | |
| a) Consumption of Fuel | 38,474 | 21,493 | 103,126 |
| b) Generation and Operating Expenses | 10,908 | 4,633 | 19,841 |
| c) Employees Cost | 8,125 | 4,336 | 20,924 |
| d) General and Administrative Expenditure | 7,162 | 3,339 | 25,737 |
| **Total Expenditure** | **64,669** | **33,801** | **169,628** |
| **4. E B I T D A  (1) + (2)  - (3)** | **24,564** | **14,513** | **65,245** |
| 5. Interest and other finance charges (net) | 6,891 | 3,753 | 16,871 |
| 6. (Gain) / loss on Foreign Exchange Fluctuations | 4,568 | (1,262) | (1,580) |
| 7. Depreciation / Amortization | 8,016 | 4,064 | 17,851 |
| **8. Profit / (Loss) from Ordinary Activities before tax  (4)-(5)-(6)-(7)** | **5,089** | **7,958** | **32,103** |
| 9. Provision for taxation | | | |
| - Current Tax | 1,020 | 857 | 2,605 |
| - Deferred Tax | (119) | 82 | 2,804 |
| - Fringe Benefit Tax | 119 | 70 | 429 |
| **10. Net Profit/(Loss) from Orindary Activities after tax and before minority interest** | **4,069** | **6,949** | **26,265** |
| 11. Less: Minority Interest (net) | (121) | 2,308 | 5,257 |
| **12. Net Profit/(Loss) from Orindary Activities after tax and minority interest** | **4,190** | **4,641** | **21,008** |
| **13. Paid-up equity share capital** | **36,413** | **33,108** | **36,413** |
| (Face value - Rs. 2 per share) | | | |
| **14. Reserves excluding Revaluation Reserves as per balance sheet** | **-** | - | 575,290 |
| **15. Earnings Per Share - Basic and Diluted - (Rs.)** | **0.23** | **0.28** | **1.23** |
| **(not annualised )** | | | |
| Weighted average number of shares used in computing Earning Per Share | 1,820,646,463 | 1,655,399,725 | 1,705,071,192 |
| 16. Public Shareholding | | | |
| - Number of shares | 486,421,493 | 321,176,405 | 486,421,493 |
| - Percentage of shareholding | 26.72% | 19.40% | 26.72% |

**Notes to consolidated results:**

1. **Consolidation and Segment Reporting**

   a. Pursuant to the provisions of Clause 41 of the Listing Agreement, the company has opted to publish only the consolidated results. The Company carries its four business verticals viz., Airports, Energy, Roads and Urban Infrastructure through various subsidiaries and an associate, being Special Purpose Vehicles exclusively formed to build and operate various infrastructure projects. Whereas the full revenues, expenses and results of the subsidiaries are consolidated, those of associates are consolidated to the extent of the Company's shareholding in such associates. Investors can view the standalone results of the company on the Company's website www.gmrgroup.co.in or on the websites of BSE (www.bseindia.com) or NSE (www.nseindia.com).

   b. The above published consolidated results have been extracted from consolidated financial statements prepared in accordance with principles and procedures as set out in the Accounting Standard - 21 on 'Consolidated Financial Statements', Accounting Standard - 23 on 'Accounting for Investments in Associates in Consolidated Financial Statements' and Accounting Standard - 27 Financial Reporting of Interests in Joint Ventures, as referred to in section 211 (3C) of the Companies Act, 1956.

   c. For the purpose of consolidation, depreciation in respect of power sector subsidiaries for the current year has been uniformly charged based on rates as prescribed under Schedule XIV of the Companies Act, 1956 amounting to Rs.2,957 lakhs (Previous quarter: Rs.2,817 lakhs). Depreciation on assets of such subsidiaries is charged in financial statements of individual entities on different basis aggregating to Rs.6,069 lakhs (Previous quarter: Rs.5,935 lakhs) following accounting policies/rates which are considered appropriate in each case.

   d. The segment report of the Company and its consolidated subsidiaries and associate has been prepared in accordance with Accounting Standard 17, "Segment Reporting", issued by the Institute of Chartered Accountants of India.

   e. The Consolidated financial statements include the accounts of GMR Infrastructure Limited, its subsidiaries, joint ventures and associates. Subsidiaries are consolidated as per Accounting Standard 21 on 'Consolidated Financial Statements' and investments in associates are accounted as per Accounting Standard 23 on 'Accounting for Investments in Associates in Consolidated Financial Statements'. The overseas joint venture entity, being 'Istanbul Sabiha Gocken Uluslarasi Havalimani Yatirim Yapum Ve Isletme Sirketi (SGIA)' has been accounted as per Accounting Standard 27 on Financial Reporting of Interests in Joint Venture based on 40% shareholding.

   f. The business segments of the Company comprise of the following:

   | Segment | Description of Activity |
   | --- | --- |
   | Airports | Development and operation of airports |
   | Power | Generation of power |
   | Roads | Development and operation of roadways |
   | Others | Urban Infrastructure and other residual activities |

1

**Report on Consolidated Segment Revenue, Results and Capital Employed
for the Quarter ended June 30, 2008**

(Rs. in Lakhs)

| Particulars | Quarter ended June 30, | | Year ended March 31, 2008 Audited |
|---|---|---|---|
| | 2008 Unaudited | 2007 Unaudited | |
| **1. Segment Revenue** | | | |
| a) Airports | 38,623 | 18,584 | 87,655 |
| Less: Revenue share paid / payable to Concessionaire grantors | 10,930 | 8,580 | 40,313 |
| Net Airports Revenue | 27,693 | 10,004 | 47,342 |
| b) Power | 50,706 | 33,137 | 154,120 |
| c) Roads | 3,469 | 3,473 | 13,970 |
| d) Others | 6,802 | 1,045 | 14,752 |
| **Total** | 88,670 | 47,659 | 230,184 |
| Less: Inter Segment | 123 | - | 706 |
| **Net Segment Revenue** | **88,547** | **47,659** | **229,478** |
| **2. Segment Result [Profit before tax and interest (net of interest income) from each segment]** | | | |
| a) Airports | (2,129) | 1,947 | 3,077 |
| b) Power | 6,988 | 7,041 | 27,119 |
| c) Roads | 1,792 | 1,807 | 6,938 |
| d) Others | 5,329 | 916 | 11,840 |
| **Total** | **11,980** | **11,711** | **48,974** |
| Less: Interest expenses (net) | 6,891 | 3,753 | 16,871 |
| **Profit before tax** | **5,089** | **7,958** | **32,103** |
| **3. Capital employed** | | | |
| **(Segment Assets - Segment Liabilities)** | | | |
| a) Airports | 239,619 | 61,171 | 179,124 |
| b) Power | 125,722 | 90,386 | 111,743 |
| c) Roads | 53,689 | 53,233 | 46,639 |
| d) Others | 331,055 | 55,688 | 389,725 |
| **Total** | **750,085** | **260,478** | **727,231** |

2. **The above published consolidated results of the company include the following:**

   a. Pursuant to the application of the Accounting Standard 11, two of the Company's subsidiaries viz., Vemagiri Power Generation Limited (VPGL) and GMR Hyderabad International Airport Limited (GHIAL) together have accounted for a notional foreign exchange translation loss of Rs.4,559 lakhs (Previous quarter: foreign exchange translation gain of Rs.933 lakhs) with reference to their project loans. However, both these subsidiaries have adequate foreign currency revenues to provide hedge against any currency fluctuation risks that may arise as and when the interest payments and principal repayments of these loans are made and hence forex risks associated with these loans will not have any bearing on the profitability of these two subsidiaries.

   b. GHIAL has not been able to levy the User Development Fee (UDF) on overseas passengers for three weeks in April 2008 and on domestic passengers for the entire current quarter, pending approval from the Government of India.

   c. An operating loss of Rs. 2,752 lakhs for the current quarter (Previous Quarter: Rs. 2,647 lakhs) from VPGL mainly comprising of interest, depreciation and foreign exchange translation loss. Due to non-availability of natural gas, VPGL has currently suspended its generation activities.

   d. An operating loss of Rs. 1,104 lakhs (Previous Quarter: Rs. Nil) from SGIA, a foreign joint venture of the Company. This loss represents 40% of the total operating results of SGIA being the Company's shareholding in this joint venture.

3. Following the expiry of the seven year Power Purchase Agreement, GMR Energy Limited's 220 MW plant at Tanir Bavi near Mangalore in Karnataka ceased to operate. Work has been undertaken to relocate the plant to KG Basin, near Kakinada in Andhra Pradesh to operate it as merchant plant after changes to run the plant with natural gas as fuel.

4. The Company, through its step-down subsidiary, GMR Energy Global Limited, has entered into necessary arrangements to acquire 50% equity stake in InterGen NV by means of Compulsory Convertible Debentures. The Company has also given a corporate guarantee up to a maximum of USD 1.3 billion to the mandated lead arrangers on behalf of a fellow subsidiary to enable it to raise debt for financing the aforesaid acquisition. InterGen NV is a global Energy Company which operates 8086 MW capacity across five countries in four continents and is further developing 4686 MW.

5. Interest and other finance charges are net of interest income, amounting to Rs.942 Lakhs for current quarter (Previous Quarter: Rs.1,408 Lakhs)

6. **Minority Interest:**

   Minority Interest represents that share of the profits and losses of various subsidiaries which relates to the minority shareholders (shareholders other than the Company) in various subsidiaries of the Company.

As on June 30, 2008, the minority shareholding in subsidiaries is as under:

| Sl. No. | Name of Subsidiary Company | Minority shareholding | Minority shareholders |
|---|---|---|---|
| 1. | GMR Power Corporation Private Limited (GPCPL) | 49.00% | Odeon Limited |
| 2. | GMR Tuni Anakapalli Expressways Private Limited (GTAEPL) | 39.23% | UE Development India Private Limited and Odeon Limited (indirectly through its holding in GPCPL) |
| 3. | GMR Tambaram Tindivanam Expressways Private Limited (GTTEPL) | 39.23% | UE Development India Private Limited and Odeon Limited (indirectly through its holding in GPCPL) |
| 4. | Delhi International Airport Private Limited (DIAL) | 49.90% | India Development Fund, Fraport AG Frankfurt Airport Services Worldwide, Malaysia Airports (Mauritius) Private Ltd., Airports Authority of India |
| 5. | GMR Hyderabad International Airport Limited (GHIAL) | 37.00% | Govt. of Andhra Pradesh, Airports Authority of India, Malaysia Airport H B |
| 6. | Hyderabad Menzies Air Cargo Private Limited (HMACPL) | 67.87% | Menzies Aviation Cargo (Hyderabad) Limited. |

The share of Minority Interest for the Quarter resulted in a loss of Rs.121 lacs (Previous Quarter: Profit of Rs.2,308 lacs) as its share of loss in GHIAL is higher than its aggregate share of profit in other subsidiaries.

7. Investor complaints: During the current quarter, 13 investor complaints were received and resolved. There were no complaints pending, both at the beginning and end of the quarter.

8. Pursuant to the approval of subdivision of the shares of the Company in the Annual General Meeting of the Company held on August 30, 2007, the equity shares carrying a face value of Rs.10 has been subdivided into 5 equity shares of Rs.2 each on October 8, 2007, being the record date.  The number of shares for the Previous Quarter have also been restated accordingly.

9. The un-audited consolidated and the standalone results of the Company for the quarter ended June, 2008 have been reviewed by the Audit Committee at their meeting on July 29, 2008 and approved by the Board of Directors at their meeting concluded on July 29, 2008.

10. The Statutory Auditors of the Company have carried out a Limited Review of the above published consolidated financial results of the Company for the quarter ended June 30, 2008. The auditors have also carried out a limited review of the standalone results of the Company published on Company's website and furnished to the Stock Exchanges.

11. Figures pertaining to previous periods have been regrouped, reclassified and restated, wherever necessary, to conform to the classification adopted in the current quarter.

For GMR Infrastructure Limited


G.M.Rao
Chairman

Place: Bangalore
Date: July 29, 2008

3

**Ex. E**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JACKSONVILLE POLICE & FIRE PENSION FUND, On Behalf Of Itself and All Others Similarly Situated, | Electronically Filed |
| Plaintiff, | Civil Action No. 1:08-cv-04772-RJS |
| vs. | (ECF Case) |
| AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO, and ROBERT LEWIS, | |
| Defendants. | |
| JAMES CONNOLLY, Individually and On Behalf Of All Others Similarly Situated, | Civil Action No. 1:08-cv-05072-RJS |
| Plaintiff, | (ECF Case) |
| vs. | |
| AMERICAN INTERNATIONAL GROUP, INC., MARTIN J. SULLIVAN, STEVEN J. BENSINGER, JOSEPH J. CASSANO, ROBERT E. LEWIS, and DAVID L. HERZOG, | |
| Defendants. | |

**SUPPLEMENTAL DECLARATION OF JEFFREY DAVIS IN FURTHER SUPPORT OF ONTARIO TEACHERS' PENSION PLAN BOARD'S AND PGGM'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF**

| | |
|---|---|
| MAINE PUBLIC EMPLOYEES RETIREMENT SYSTEM, On Behalf Of Itself and All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>            vs.<br><br>AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO, and ROBERT LEWIS,<br><br>Defendants. | Civil Action No. 1:08-cv-05464-RJS<br><br>(ECF Case) |
| ONTARIO TEACHERS' PENSION PLAN BOARD, On Behalf Of Itself and All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>            vs.<br><br>AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO, and ROBERT LEWIS,<br><br>Defendants. | Civil Action No. 1:08-cv-05560-RJS<br><br>(ECF Case) |

1.      I, Jeffrey Davis, am the Senior Legal Counsel, Investments, of Ontario Teachers' Pension Plan Board ("OTPP"), a pension plan organized for the benefit of the active and retired teachers of the Province of Ontario, Canada.  I respectfully submit this Supplemental Declaration in support of the application of OTPP and Stichting Pensioenfonds Zorg en Welzijn, duly represented by PGGM Vermogensbeheer B.V. ("PGGM"), to be appointed as Lead Plaintiff in the above-captioned actions against American International Group, Inc. ("AIG") pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") and in response to the opposition brief filed by the State of Michigan Retirement Systems ("SMRS") on August 7, 2008.  As set forth below, I have reviewed SMRS's August 7, 2008 filing and submit this declaration to clarify certain factual matters and respond to two points raised in that submission.

2.      SMRS's August 7, 2008 filing raises a challenge to OTPP's adequacy to represent the Class based on OTPP's investment in two power generation ventures—Northern Star Generation LLC ("NSG") and InterGen N.V. ("InterGen").  I understand SMRS's challenge is based on the fact that two AIG-sponsored private equity funds—AIG Highstar Generation LLC and AIG Highstar Capital II LP—were at one point co-investors with OTPP in the NSG and InterGen ventures, respectively, which SMRS has suggested raises questions regarding OTPP's commitment and ability to adequately represent the Class.  OTPP believes this contention is baseless and wishes to clarify certain factual matters raised by SMRS regarding our dealings with these two AIG-related entities.

3.      OTPP is one of the largest pension funds in the world and has over USD$100 billion in assets under management.  At any given moment, OTPP holds billions of dollars in a wide range of investments—including holdings in equities, fixed income securities, real estate,

infrastructure, timber and other assets. As of year-end 2007, OTPP's infrastructure portfolio, which includes investments in water utilities, gas networks and pipelines, airports and power generation ventures, comprised approximately 8.8%, or USD$8.8 billion, of OTPP's total portfolio. Of this $8.8 billion infrastructure portfolio, approximately 8%, or $704 million, was invested in power generation investments, which include OTPP's investments in NSG and InterGen. At year-end 2007, OTPP's investments in InterGen and NSG represented just two out of more than 70 investments in private companies and partnerships by OTPP in which the fund's interest exceeds $100 million.

4.      OTPP does not have any business relationship with any AIG-sponsored private equity fund with respect to its investment in NSG. AIG Highstar Generation LLC, a private equity fund sponsored by AIG Investments, an AIG subsidiary, sold its interest in NSG in August 2007. Since that sale closed, OTPP has had no business dealings with any AIG-related entities regarding this business venture.

5.      As to the InterGen venture, on June 25, 2008, AIG Highstar Capital II LP—another AIG Investments-sponsored private equity fund that manages capital commitments from other institutional investors—announced the sale of its 50% interest in InterGen to GMR Infrastructure Limited. The sale by AIG Highstar Capital II LP is expected to close in the third quarter of 2008, at which time AIG Highstar Capital II LP's remaining nominal interest in InterGen will be formally and fully divested. As of InterGen's September 17, 2008 board meeting, it is OTPP's expectation that any outstanding matters and all dealings with AIG Highstar Capital II LP will have concluded.

6.      OTPP's investments in NSG or InterGen or its prior business dealings with any other AIG-sponsored investment vehicles have had, and will continue to have, no impact on

OTPP's commitment to vigorously pursue the claims against AIG on behalf of the Class and to maximize any recovery from any culpable parties in these actions. We believe that OTPP's involvement in this litigation thus far—including our efforts in monitoring the progress of the litigation since the inception of the lawsuit, filing a complaint that included additional allegations based on the investigation of its counsel, and coordinating with our counsel and representatives from PGGM to take affirmative steps to protect the interests of the Class *prior* to the filing of this lead plaintiff motion—speaks to our commitment to aggressively prosecute the claims against AIG on behalf of the Class.

7.      OTPP understands that SMRS has raised a question as to OTPP's adequacy based on what SMRS claims is a discrepancy between what has been reported as OTPP's holdings in its filings with the Securities and Exchange Commission ("SEC") on Form 13F and the trading data OTPP provided in its certification and transactional data that were submitted in its application for lead plaintiff appointment. This concern is misplaced.

8.      As a large institutional investor, OTPP employs counsel that is specifically charged with ensuring compliance with all applicable SEC rules and regulations, including the SEC's reporting requirements under Section 13(f). Accordingly, it is OTPP's understanding that under Section 13(f), certain holdings, including holdings managed by outside investment mangers, are not required to be reported on Form 13F. Even though these holdings are not reported in OTPP's 13F filings, they are, of course, part of the fund's overall portfolio, and, as required by the PSLRA, have accordingly been included in the certification and transactional data submitted in support of the fund's motion for appointment as Lead Plaintiff. I can therefore assure the Court that there is, therefore, no "discrepancy" between OTPP's holdings in AIG

securities as reported to the SEC on Form 13F and our true financial interest in this action as submitted in OTPP's certification and transactional data.

9.      OTPP's paramount goal in litigating these claims and seeking lead plaintiff status in this action with PGGM has been and will be to obtain a maximum possible recovery for all Class members.  OTPP has significant experience serving as a lead plaintiff and fully appreciates the duties involved in fulfilling that role.  Indeed, OTPP has helped investors recover over a billion dollars through its service as lead plaintiff in cases such as *In re Nortel Networks Corp. Securities Litigation*, No. 05-MD-1659 (LAP) (S.D.N.Y.) and *In re Biovail Securities Litigation*, No. 03-CV-8917 (RO) (S.D.N.Y.) in this District, and SMRS offers no plausible basis to infer that OTPP's commitment to the Class and its prosecution of the claims against AIG will be any different here.  Accordingly, OTPP hereby reaffirms its obligations to the Class to diligently and vigorously pursue all potential claims against all culpable parties in this action.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury, pursuant to the laws of the United States, that the foregoing is true and correct to the best of my knowledge.

Executed on August  /8  , 2008

_____
Jeffrey Davis
Senior Legal Counsel, Investments
*Ontario Teachers' Pension Plan Board*

4

**Ex. F**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


A1 CREDIT COMPANY,                          :
f/b/o EILEEN HERSKOWITZ,                     :
On Behalf of Itself and All Others          :
Similarly Situated,                         :
      Plaintiff,                            :          CIVIL ACTION
                                            :
      v.                                    :
                                            :
RAIT FINANCIAL TRUST, et al.,               :          NO. 2:07 cv-03148-LDD
      Defendants.                           :


ORDER

Before the court are four motions[1] for the consolidation of related cases, the appointment

of lead plaintiff and the approval of lead counsel in the putative class action securities litigation

against RAIT Financial Trust and various other defendants (collectively, "RAIT").  Motions have

been filed by: (1) Lewis Vernekoff, New Jersey Carpenters Pension Fund and Pengsen Liu (the

"LVC Group"); (2) Brahman Capital Corp. and various related investment entities ("Brahman

Capital"); (3) Iron Workers Local No. 25 Pension Fund, Sonny Bhakta, and the Pistilli Family

(the "Iron Workers Group") and (4) Richard Stevens and Lance Stevens (the "Stevens Group").

Applying the detailed procedures set forth in the Private Securities Litigation Reform Act of

1995 (the "PSLRA"), the Court orders (i) the consolidation of the various related matters; (ii) the

appointment of Brahman Capital as lead plaintiff and (iii) the appointment of Bernstein Litowitz

---

[1]The Employees' Retirement System of the State of Rhode Island, which had also filed a
motion, withdrew its motion on October 15, 2007.

1

Berger & Grossman LLP ("Bernstein Litowitz") as lead counsel.

## I.     Facts

This case and eight other related matters were filed on behalf of investors who purchased securities of RAIT Financial Trust between June 8, 2006 through and including July 31, 2007.[2] These cases arise out of alleged violations of the federal securities laws, including Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").  The plaintiffs claim that during the previously mentioned dates the defendants caused RAIT's stock price to be artificially inflated by making false and misleading statements to the investing public and by failing to disclose material facts related its exposure to American Home Mortgage ("AHM").

### II.     Discussion

#### A. Motions to Consolidate

All movants in this case have filed motions requesting that the various matters related to alleged securities law violations by RAIT be consolidated.  These motions are unopposed.

Rule 42(a) of the Federal Rules of Civil Procedure provides "[w]hen actions involving a common question of law or fact are pending before the court, . . . it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."  Fed. R. Civ. P. 42(a).  "A court has broad discretion to consolidate actions involving common questions of law or fact for trial or pretrial purposes if it will facilitate the administration of justice."  Smithkline Beecham Corp. v. Geneva Pharm, Inc., No. 99-CV-2926 et al., 2001 WL 1249694, at *5 (E.D. Pa. Sept. 26, 2001).  Moreover, the PSLRA

---

[2] For the purpose of adjudicating these  motions, we assume, without finding, that June 8, 2006 through and including July 31, 2007 is the relevant class period.

2

directs that cases should be consolidated when there is "more than one action on behalf of a class asserting substantially the same claim or claims."  15 U.S.C. § 78u-4(a)(3)(B)(ii).

Based on the allegations in the complaints, the related matters share significant common issues of law and fact.  All the matters allege violations of Section 10(b) and 20(a) of the Exchange Act and Securities and Exchange Commission ("SEC") Rule 10b-5.[3]  Furthermore, all the claims in these matters arise from the same set of operative facts related to RAIT's disclosure with respect to its exposure to AHM.  Consequently, because the consolidation of the various related actions will facilitate the administration of justice and promote judicial economy without any foreseeable prejudice, the motion to consolidate filed by Brahman Capital is granted.

B. Motions to Appoint Lead Plaintiff

Having determined that consolidation is appropriate, the PSLRA directs that the court "appoint the most adequate plaintiff as lead plaintiff for the consolidated actions."  15 U.S.C. § 78u-4(a)(3)(B)(ii).  Section 78u-4(b) provides that:

> the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that—
> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Based upon the motions submitted by the movants and their presentations at oral argument, this Court finds that Brahman Capital is entitled to the

---

[3] Though the complaints filed by the A1 Credit Company and Theona B. Salkowitz, Case Nos. 2:07-cv-03148-LDD and 2:07-cv-03406-LD, respectively, allege additional violations under the Securities Act of 1933, the common issues of law among the cases predominate.

presumption that it is most adequate plaintiff.

### 1. Motion in Response to Notice

Brahman Capital timely filed it motion to act as lead plaintiff on October 1, 2007.  This motion contained the sworn certifications required by 15 U.S.C. § 78u-4(a)(2).  Additionally, the notice to members of the purported class, upon which Brahman Capital relies, was timely and adequate.

### 2. Largest Financial Interest

To determine the largest financial interest, the court looks to "(1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs." In re Cendant Corp. Litig., 264 F.3d 201, 262 (3d Cir. 2001).  Brahman Capital's submissions indicate that from June 8, 2006 through July 31, 2007, Brahman Capital purchased 1,457,600 net shares of RAIT stocks, this represented a net expenditure of $50,341,314.58 and an approximate loss of $36,578,824.13.  Based on the submission of the other movants, it is clear that Brahman Capital has the largest financial interest in the lawsuit.

### 3. Requirements of Rule 23

The final inquiry requires the Court to determine that Brahman Capital has made a *prima facie* showing that "the claims or defenses of [Brahman Capital] are typical of the claims or defenses of the class, and [Brahman Capital] will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); Cendant, 264 F.3d at 263 (discussing need of movant to only make a *prima facie* showing).

### a. Typical Claims

With respect to typicality, the inquiry is "whether the circumstances of the movant with the largest losses are markedly different or the legal theory upon which the claims [of that movant] are based differ[ ] from that upon which the claims of other class members will perforce be based." Cendant, 264 F.3d at 265. (internal citations and quotations omitted). Brahman Capital's circumstances and legal claims are similar to the claims of the other plaintiffs. The claims and injuries of Brahman Capital, like those of the other plaintiffs, arise from the same alleged misconduct by RAIT (i.e. its failure to properly disclose its exposure to AHM). Furthermore, its legal claims, like those of the other plaintiffs, set forth violations of the federal securities laws, namely the Exchange Act.

### b. Adequately Protect

In determining adequacy, the question is whether the movant "has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class." Id. (citing Hassine v. Jeffes, 846 F.2d 169, 179 (3d Cir.1988)). Brahman Capital, an institutional investor that has alleged significant losses, is the type of plaintiff that has both the ability and incentive to vigorously pursue the claims of the class. This analysis is consistent with the legislative history of the PSLRA that notes "[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake. The claims of both types of class members generally will be typical." H.R. Conf. Rep. 104-327, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 737. In addition, Brahman Capital's choice of an experience class-action securities law firm as lead counsel supports the finding of Brahman Capital's adequacy.

5

Furthermore, based on Brahman Capital's submissions,[4] there is no indication that there is a conflict between the claims to be asserted by Brahman Capital and the rest of the class. Accordingly, for the reasons set forth above, the Court finds that Brahman Capital satisfies the requirements of 15 U.S.C. § 78u-4(a)(3)(B)(iii) and, consequently, is entitled to the presumption that it is the most adequate plaintiff.

### 4. Rebutting the Presumption

This presumption, however, may be rebutted "upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff will not fairly and adequately protect the interest of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). In considering objections by putative lead plaintiffs "the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair[ ] and adequate [ ]' job." Cendant, 264 F.3d at 268.

Here, the Iron Workers Group contends that Brahman Capital would not fairly and adequately protect the interest of the class because it has an interest that conflicts with those of other class members. Specifically, the Iron Workers Group notes that in a registration statement filed on Form S-3 by Atlas Pipeline Partners, L.P. ("Atlas"), Brahman Capital is listed as a selling unitholder. Furthermore, the Iron Workers Group contends that Atlas is a partnership whose founder, chief executive officer and chairman, Edward Cohen, is (a) the husband Betsy

---

[4]In determining, whether a movant is entitled to the rebuttable presumption set forth in 15 U.S.C. § 78u-4, a court only focuses on the materials provided by the movant. Objections to the adequacy of any movant by another putative lead plaintiff are only evaluated by a court in determining whether the presumption has been rebutted. See Cendant, 264 F.3d at 264.

Cohen, the chairman, trustee, and until January 2006 chief executive officer of RAIT, and (b) the father to Daniel Cohen, the chief executive offer of RAIT from January 2006.  Both Betsy Cohen and Daniel Cohen are defendants in this matter.  Additionally, the Iron Workers Group alleges that Jonathan. Cohen, son of Edward and Betsy Cohen is a vice-chairman of Atlas as well as an officer and director of RAIT.  Accordingly, the Iron Workers Group contend that because of the close affiliation of Brahman Capital with the interests of the Cohen family and its interest in Atlas, which exceed $40 million, Brahman Capital has a conflict that disqualifies it  from acting as lead plaintiff.

Although the Iron Workers Groups' allegations do indicate a potential conflict of interest, the alleged conflict is insufficient to rebut the presumption that the Brahman Capital is the most adequate plaintiff.  In In re Cendant Corp. Litigation, the Third Circuit held that the lead plaintiff, who held a substantial investment in the defendant corporation during the litigation, was not disqualified from as acting as lead plaintiff.  Id. at 244.  The Third Circuit reasoned that by establishing a preference for institutional investors, who often hold a large stake in defendant corporations prior and during litigation, Congress "must have thought that the situation present here does not inherently create an unacceptable conflict of interest."  Id.  Applying this principle to the present conflict, the existence of a financial interest by Brahman Capital in a non-defendant corporation is clearly not sufficient to rebut the presumption that Brahman Capital is the most adequate plaintiff.  Furthermore, neither the alleged familial relationship between the principals of RAIT and Atlas nor the potential negative economic consequence to Brahman Capital's financial interest in Atlas are sufficiently substantial enough to support the disqualification of Brahman Capital.

7

C. Motions to Appoint Lead Counsel

The PSLRA states that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). The PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." Cendant, 264 F.3d at 276. Accordingly, it is not a court's responsibility to make the choice itself, but rather to employ a deferential standard and determine whether judicial intervention is "necessary to protect the interest of the plaintiff class." Id. Applying this standard, Brahman Capital's choice of Bernstein Litowitz as lead counsel is reasonable. Based upon Bernstein Litowitz resume and its history of prosecuting various large securities class actions, including In re Cendant Corp. Litigation, Brahman Capital's choice of Bernstein Litowitz, is reasonable.

Accordingly, this 25th of October 2007, upon consideration of the motions, briefs and oral arguments presented by the various movants in this matter and for the reasons set forth above, the following is hereby ORDERED:

1.  Iron Workers Local No. 25 Pension Fund, Sonny Bhakta and the Pistilli Family's Motion for Consolidation, Appointment as Lead Plaintiff and to Approve Lead Plaintiff's Selection of Counsel (Doc. No. 8) is DENIED; Stevens Group's Motion to Consolidate Related Cases, For Appointment of Lead Plaintiff and for Approval of Its Choice of Counsel as Lead and Liaison Counsel for the Class (Doc. No. 9) is DENIED; Motion of Employees' Retirement System of the State of Rhode Island for Consolidation of the Related Actions, Appointment as Lead Plaintiff, and for Approval of Its Selection of Lead Counsel (Doc. No. 10) is DENIED; Motion of the LVC Group for Consolidation, for Their Appointment as Lead Plaintiff and for Approval of Lead Plaintiffs' Selection of Co-Lead Counsel (Doc. No. 12) is DENIED and Motion of Brahman Capital Corporation for Appointment as Lead Plaintiff, Approval of Its Selection of Counsel as Lead Counsel for the Class, and Consolidation of all Related Cases (Doc. No. 13) is GRANTED.

2.  The Court hereby consolidates the following matters Civil Action Nos. 07-3236, 07-3405, 07-3406, 07-3478, 07-3497, 07-3551, 07-3574 and 07-3831 for all purposes including,

but not limited to, discovery, pre-trial proceedings and trial proceedings, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure under the following caption:

| | | |
|---|---|---|
| IN RE RAIT FINANCIAL TRUST | : | Master File |
| SECURITIES LITIGATION | : | No 2:07-cv-03148-LDD |
| | : | |

3.    The Clerk of the Court is directed to close Civil Action Nos. 07-3236, 07-3405, 07-3406, 07-3478, 07-3497, 07-3551, 07-3574 and 07-3831 for statistical purposes.

4.    Each new case that arises out of the subject matter of the consolidated action which is filed in this Court or transferred to this Court, shall be consolidated with the consolidated action and this Order shall apply thereto, unless a party object to the consolidation, as provided for herein, or any provision of this Order, within (10) days after the date upon which a copy of this Order is served on counsel for such party, by filing an application for relief and this Court deems it appropriate to grant such application.  Nothing in the foregoing shall be construed as a waiver of defendant's right to object to consolidation of any subsequently-filed or transferred related action.

5.    Brahman Capital is APPOINTED to serve as lead plaintiff.

6.    Brahman Capital's selection of lead counsel is APPROVED, and Bernstein Litowitz Berger & Grossman LLP is APPOINTED as lead counsel for the class.

7.    Lead counsel shall file consolidated amended complaint by no later than November 26, 2007 and shall serve this consolidated amended complaint on defendants no later than December 17, 2007.

8.    Lead counsel shall have the following responsibilities and duties, to be carried out either personally or through counsel whom lead counsel shall designate:
    a.    to coordinate the briefing and argument of motions;
    b.    to coordinate the conduct of discovery proceedings;
    c.    to coordinate the examination of witnesses in depositions;
    d.    to coordinate the selection of counsel to act as spokesperson at pretrial conferences;
    e.    to call meetings of plaintiffs' counsel as they deem necessary and appropriate from time to time;
    f.    to coordinate all settlement negotiations with counsel for defendants;
    g.    to coordinate and direct the pretrial discovery proceedings and the preparations for trial and the trial of this matter and to delegate work responsibilities to selected counsel as may be required; and
    h.    to supervise any other matters concerning the prosecution, resolution or

settlement of the consolidated action.

9.    No motion, request for discovery, or other pretrial proceeding shall be initiated or filed by any plaintiff without the approval of lead counsel, so as to prevent duplicative pleadings or discovery by plaintiffs.  No settlement negotiations shall be conducted without the approval of lead counsel.

10.   Lead counsel shall have the responsibility of receiving and disseminating the Court's orders and notices.

11.   Lead counsel shall be the contact between plaintiffs' counsel and defendants' counsel, as well as the spokesperson for plaintiffs' counsel, and shall direct and coordinate the activities of plaintiffs' counsel.

BY THE COURT:

/S/LEGROME D. DAVIS

_____Legrome D. Davis, J.

10

**Ex. G**



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

IN RE WILLIAMS SECURITIES LITIGATION )      Case No. 02-CV-72-H(M)
                                      )            Lead Case
This Document Relates to: WMB Subclass )
                                      )      Judge Sven Erik Holmes

F I L E D

JAN 0 6 2005

Phil Lombardi, Clerk
U.S. DISTRICT COURT

## BRIEF IN SUPPORT OF FREDRIC E. RUSSELL INVESTMENT MANAGEMENT CO., INC.'S OBJECTIONS TO THE R&R FILED DECEMBER 29, 2004

R. Thomas Seymour, OBA #8099
C. Robert Burton, OBA #14195
Scott A. Graham, OBA #19817
**SEYMOUR LAW FIRM**
100 West 5th Street, Suite 550
Tulsa, Oklahoma 74103
(918) 583-5791 (phone)
(918) 583-9251 (facsimile)

**COUNSEL FOR THE WMB SUBCLASS AND FREDRIC E. RUSSELL INVESTMENT MANAGEMENT CO., INC.**

January 6, 2005

**TABLE OF CONTENTS**

I. The Overriding Question for the Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. TF's Known Conflict of Interest Disqualifies It From Serving as Lead Plaintiff . . . . . . . . . . 1
    A. The Known Conflict of Interest of Ontario Teachers . . . . . . . . . . . . . . . . . . . . . . . 1
    B. Legal Analysis of the Conflict of Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        1. The Uncontradicted *Cendant* Disqualification Opinion . . . . . . . . . . . . 6
        2. The *Cendant* Disqualification Opinion Is Not Only Uncontradicted
           in Subsequent Cases, But Strongly Supported Therein . . . . . . . . . . . . 9
    C. The Unknown Conflicts of Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        1. Ontario Teachers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        2. Arkansas Teacher Retirement System . . . . . . . . . . . . . . . . . . . . . . . . . 16
    D. *Res Judicata,* Due Process and Class Certification Issues . . . . . . . . . . . . . . . . . 16

III. Additional Dispositive Reasons Why TF Cannot Fairly or Adequately Represent the
    Best Interests of the WMB Subclass . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    A. Deficient Choices, Not in the Best Interests of the WMB Subclass, Are
        Disqualifying . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    B. Deficient Choices Which Disqualify TF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    C. *Res Judicata,* Due Process and Class Certification Implications of Deficient
        Choices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    D. The Interests of the Three Pending Litigations . . . . . . . . . . . . . . . . . . . . . . . . . 21

IV. Risk-Free vs. Risk-Fraught Lead Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

V. TF's Disqualifying Conflict of Interest Is Not Waived . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

VI. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## TABLE OF AUTHORITIES

*CASES*                                                                                                     Pages

*Albert Fadem Trust v. Citigroup, Inc.*, 239 F.Supp. 2d 344, 348 (S.D.N.Y. 2002) .....................15

*Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 550 (1949)...............................................1

*In re Cendant Corp. Litig.*, 182 F.R.D. 144, 149 (D.N.J. 1998).......................................6, 7, 11. 22

*In re Cendant Corp. Litig.*, 264 F.3d 201, 265 (3ʳᵈ Cir. 2001)........................................5, *in passim*

*In re Energy Resources, Inc.*, 290 F.3d 1197 (10ᵗʰ Cir. 2000)........................................................25

*In re Elan Corp. Sec. Litig.*, 2002 WL 31720410 (S.D.N.Y. Dec. 3, 2002)...................................11

*In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 454 (S.D. Tex. 2002)................................1, *in passim*

*In re Microstrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 433 n. 11 (E.D.Va. 2000) .................24

*In re Royal Ahold N.V. and ERISA Litig.*, 219 F.R.D. 343 (D.Md. 2003).....................................13

*In re Vesta Insurance Group, Inc. Sec. Litig.*, 1999 U.S. Dist. LEXIS 22233...................12, *in passim*

*Palmer v. Apfel*, 995 F. Supp. 549, 552 n.4 (E.D. Pa. 1998).........................................................24

*Pirelli Armstrong Tire Corp. v. Labranche & Co., Inc.*, 2004 WL 1179311
(S.D.N.Y. May 27, 2004)...........................................................................................10, *in passim*

*Robin v. Doctors Officenters Corp.*, 123 F.R.D. 579, 580 (N.D. Ill. 1988)....................................24

*Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001)....................................................................14

## LEGISLATIVE HISTORY

Senate Report No. 104 - 98....................................................................................................10, 11

## RULES

Oklahoma Rules of Professional Conduct 3.3..............................................................................18

Rule 23, Fed.R.Civ.P. ........................................................................................1, 9, 14, 17

**MISCELLANEOUS**

1104 PLI/Corp 291, Westlaw, at *484-85...............................................................1, 12, 13

2000 WL 34002986.......................................................................................................21

## I. The Overriding Question for the Court

In considering Teachers Funds' (hereafter "TF") conflict of interest, we respectfully submit the overriding question is this: has TF, with the burden of proof of showing its adequacy under Rule 23[1], proved that the reasonable member of the WMB Subclass would waive the conflict? As the ultimate protector of the absent WMB Subclass members, the Court is called upon to provide the answer.[2]

## II. TF's Known Conflict of Interest Disqualifies It From Serving as Lead Plaintiff

### A. The Known Conflict of Interest of Ontario Teachers

At the time of the filing of the two-page supplemental reply which kicked over the conflict of interest issue, Russell knew only of Ontario Teachers' ownership of stock of underwriter defendants, in the amount of $300 million at prices then, and $313 as of the NYSE close on December 31, 2004. Even after a request to the Magistrate Judge on recommitment to order disclosure or allow discovery on Ontario Teachers' conflict of interest, Ontario Teachers has never told the Court the extent of its involvement with underwriters As of this filing, Russell, and now the Court, knows at least some

---

[1] "The plaintiff seeking appointment as ... class representative bears the burden of affirmatively proving it satisfies the requirements of Rule 23." *In re Enron Corp. Sec. Litig.,* 206 F.R.D. 427, 441 (S.D. Tex. 2002) (citing *Berger v. Compaq Computer Corp.,* 257 F.3d 475, 481 (5th Cir. 2001)).

[2] The SEC is emphatic that determination of the adequacy of a lead plaintiff movant is "fact-intensive, committed to the sound discretion of the court." 1104 PLI/Corp 291, Westlaw, at *483. The Supreme Court has been quite clear that federal Due Process requirements apply even to state class actions. As Justice Jackson cogently put it, this occurs because the class representative is "a self-chosen representative and a volunteer champion," and even the States must impose "standards of responsibility, liability and accountability which it considers will protect the interests he elects himself to represent." *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 550 (1949).

1

of the reason why, which makes the lack of candor of TF and its counsel simply appalling.[3]

As the exhibit to Russell's two-page supplemental reply shows, as of September 30, 2004, at December 31 NYSE prices, Ontario Teachers owns $230 million of CIBC stock, $ 38 million of Citigroup stock. $ 38 million of Bank of America stock, and far smaller amounts of stock in Merrill Lynch and Goldman Sachs. **In addition to these holdings, Ontario Teachers is a limited partner of Citigroup in two massive business ventures: (a) in 2003 Citigroup (60% interest, general partner) and Ontario Teachers (40% interest, limited partner) paid $901 million for Worldspan, a travel agency servicer. 40% of $950 million is $360 million. In the middle of 2004, the venture/partnership withdrew a planned IPO where the company was valued at $1.35 billion. 40% of $1.35 billion is $540 million; (b) an article dated November 16, 2004 says the venture/partnership of Citigroup and Ontario Teachers is still vying for purchasing from Hollinger International the** *Chicago Sun Times* **and a large number of community newspapers. Given that the** *Boston Globe* **was purchased in 1993 for $1.1 billion, comparing the daily circulations and taking into account the large number of community newspapers that go along with the** *Sun* Times **purchase, it seems safe to assume that the purchase of the Chicago newspapers will likely be in the $1 billion range. If the new venture also is 60-40, $540 million plus $400 million plus $38 million worth of stock is $978 million. If we add $978 million of Citigroup conflict of interest to $230 million of CIBC conflict of interest, we have $1.2 billion**

---

[3] Nor has it told the Court of its similar conflict of interest for the other "half" of TF, the Arkansas Teacher Retirement System ("ATRS"). It is not possible to discern the extent of the problem for ATRS, because it uses a number of money managers and does not file its own Schedule 13F-HRs, and those of the money managers do not break out the ATRS holdings. However, those money managers do show stock ownership in underwriter defendants in the billions. *See* Part II C of this brief, below, for discussion.

**of conflict of interest. The $300 million stock ownership suffices, even if no Citigroup partnership interests are considered, as shown below. Ontario Teachers is also a partner with Goldman Sachs and four others in a venture capital endeavor with $300 million under management.**

There are five types of purchasers of WMB securities from which losses were suffered: (a) Open market common stock throughout the Class Period; (b) January 2001 Stock Offering (common); (c) Barrett Resources Offering (common, through a merger); (d) Notes Offering (notes); and (e) FELINE PACS Offering (FELINE PACS, derivative securities).

Underwriters underwrote the January 2001, the Notes and the FELINE PACS offerings. TF says Ontario Teachers has no conflict of interest in owning stock in underwriters, regardless of the amount involved: on p. 8 of its Response to the Court order of December 15, 2004, TF says, "it is clear that an institutional investor's stake in a defendant company (including an underwriter) serves as no basis for disqualifying that investor from serving as a lead plaintiff." This is not supported by the PSLRA, its legislative history, or the uncontradicted case law.

*First.* Claims alleged against underwriters are identical to the majority of claims against WMB, as well as to many of the claims against all other defendants.[4] Because of the *identity of claims*, the lead plaintiff cannot prove claims against WMB and others without at the same time proving claims against the underwriters[5].

---

[4] *See, e.g.,* ¶¶ 459, 484-487 and 547-550 of the CAC for the principal components of the material omissions and misrepresentations in the three underwritten offerings. Those claims are alleged against WMB and the identified underwriters.

[5] As the Court knows, under the Securities Act of 1933, liability of WMB for any materially false statement or omission in a registration statement is absolute. For underwriters, liability for the same materially false statement or omission also is absolute, unless the

*Second.* The Consolidated Amended Complaint ("CAC") presages the filing of additional claims against underwriters[6]. In its filing of December 6, 2004 (before discovery of the conflict of interest issue), Russell stated, in n. 15, p. 19, that additional claims are about to be filed against underwriters. Those claims will be filed as soon as we have a new lead plaintiff. *These claims cannot be prosecuted by a conflicted lead plaintiff.*[7]

Among the many new allegations are those for fraudulent research reports touting WCG at the same time the underwriters had a very different view expressed internally. Some of these allegations involve matters for which underwriters have agreed with the Attorney General of New York and/or the SEC not to ever publicly deny the published allegations. Some of the Merrill Lynch personnel who either were indicted in or figured prominently in the testimony and/or documents in the *Enron* criminal trial concluded on November 3, 2004, are principals in WMB-related matters. That trial

---

underwriter can establish its affirmative defense of due diligence. Thus, proof of a claim that is identical for WMB and for underwriters is proof against the underwriter, unless the due diligence defense applies.

[6] ¶ 10 alleges: "The favorable nature of the 'analyst's reports' issued variously by the underwriters furthered the scheme and plan by artificially maintaining the price of WMB securities." ¶¶ 95, 98 and 103 allege actions of the SEC and/or the New York Attorney General, in 2002, against various of the underwriters. Additional work has fleshed out all of the matters in this footnote.

[7] The claims will, generally, cover three areas: (a) a number of the same allegations already made against underwriters under the 1933 Act will now be alleged under Rule 10b-5 as well, as discovery has revealed the requisite scienter; (b) fraudulent underwriter "research" reports on WMB which artificially inflated the price of WMB securities; and (c) fraudulent underwriter statements in the three underwritten offerings which fraudulently inflated not just the prices paid by purchasers in those offerings, but also by other class members. *As the result of the upcoming amendment, claims against underwriters will be alleged on behalf of all members of the WMB Subclass, which necessarily includes TF.*

4

resulted in convictions of all four of the former Merrill Lynch employees[8]. SLF has reviewed the transcript of the trial.

*Third.* Uncontradicted case law, as well as the law of this case, emphatically states that the lead plaintiff must conduct the entire class action orchestra, for all of the concert. *No conductor, no music.* Thus, the Court struck the hearing on the motions for partial summary judgment pending the appointment of a new lead plaintiff. The Court did so knowing the only relief available from the motions accrues solely to the purchasers in the Notes and FELINE PACS Offerings (HGK, the former lead plaintiff, was an open market purchaser)[9]. With no case law, statute or legislative history support whatsoever, TF managed to slide by R&R II by saying named plaintiffs can handle underwriter claims. Tain't so. *No neutered movant can serve as lead plaintiff.*

*Fourth.* TF's Schedule 13F-HR (attached as Exhibit A to Russell's two-page supplemental reply filed December 14, 2004) shows ownership of 3,822,053 shares of Canadian Imperial Bank of Canada ("CIBC"). At December 31, 2004, the NYSE closing price of $60.26 yields a value of more

---

[8] In the Enron matter, each of CIBC and Merrill Lynch settled with the SEC for $80 million, and Citigroup paid $100 million. Merrill Lynch employees assisted Enron in artificially inflating its earnings by 1 cent per share, so as to improve the "relationship" and further the prospect of continuing to earn large fees on future investment banking matters with Enron. **In the case of WMB, CIBC, Merrill and the other underwriters assisted WMB in artificially inflating its earnings by scores of multiples of 1 cent per share,** so as to improve the "relationship" and further the prospect of continuing to earn large fees on future investment banking matters with WMB.

[9] This recognition by the Court that only the lead plaintiff may speak for the class is perhaps best summed up in a case TF's Response loves (for all the wrong reasons), *In Re Cendant Corp. Litig.,* 264 F. 3d 201, 223 n.3 (3d Cir. 2001), where the court emphatically agreed with the SEC "that only one 'entity' is entitled to speak for the class: *the* lead plaintiff." (emphasis in original). Later in the same opinion, 264 F.3d at 282, the Third Circuit noted the "whole point" of the PSLRA lead plaintiff selection process is "to locate a lead plaintiff that will be an effective agent for the class."

than $230 million for Ontario Teachers. CIBC's website shows 2004 net earnings of $1.8 billion.

If a settlement or judgment should be sought or obtained against CIBC for $900 million, that is half

of its earnings for 2004, which would have a devastating adverse impact on the value of CIBC stock.

If the price of CIBC stock dropped by half, this would be a $115 million loss for Ontario Teachers.

Rocket science is not required to figure out that Ontario Teachers is not going to cost its beneficiaries

$115 million in order to gain <u>some portion</u>[10] of $23 million of losses it claims[11].  What happens if

the settlement or judgment to be sought or obtained against CIBC should be $2 billion?  Or $3

billion?  And just how happy would Citigroup be to have its partner, Ontario Teachers, try to extract

$2 or $3 billion or more out of its hide?  In Citigroup's case, given its pervasive involvement with

WMB, this is more than a possibility.

*Fifth.*  <u>There either will be a settlement or a trial of this case.  Because of its conflict of interest</u>

<u>(considered either in the present status of the case or after additional claims are made against</u>

<u>underwriters), TF cannot conduct the orchestra in a settlement, in trial preparations, or trial.</u>

**B. Legal Analysis of the Conflict of Interest**

**The uncontradicted case law holds that a lead plaintiff movant's ownership of stock in a**

**collateral defendant (i.e., not the issuer), the value of which is "several times" greater than**

**alleged losses, disqualifies that movant from serving as lead plaintiff.**

**1. The Uncontradicted *Cendant* Disqualification Opinion**

---

[10] Emphasis is on the "some portion."  Since open market purchasers have multiple sources of their damages, what ultimately is recoverable by them from CIBC (or other underwriters) could well be a fraction of the $23 million.  Thus, while weighing $313 million against the $23 million is sufficient, as shown below, the damages recoverable from all of the underwriters, in the aggregate, may be far below $23 million for Ontario Teachers.

[11] The stiff prudent man requirements of a fiduciary absolutely forbid it.

In *In re Cendant Corp. Litig.,* 182 F.R.D. 144, 149 (D.N.J. 1998), the district court held that logic

and simple mathematics overcame the strong protest of the lead plaintiff movant that it could handle

the conflict even though it owned $300 million worth of underwriter defendant stock and *would*

*potentially have to name the underwriter as a defendant*:

> Plaintiff, Welch & Forbes, present in this case because of substantial Prides-related losses, claimed that Merrill Lynch, as underwriter of the Prides offering, would be a necessary defendant in any action on behalf of Prides holders. It further charged that the Public Pension Fund Investors hold combined investments in Merrill Lynch in excess of $300,000,000, a figure several times greater than the $6,400,000 they allege to have lost in their Prides—and could not be expected to pursue vigorously recovery from that defendant.
>
> Offered the opportunity at oral argument, the attorneys for the CalPERS group [the Public Pension Fund Investors referred to in the paragraph above in this quotation] did not deny this overwhelming financial interest in a potential defendant. Though they publicly (and theatrically) pledged to the Court and gallery to pursue any and all viable claims against Merrill Lynch, logic and simple mathematics speak louder. The Court simply does not believe nor find that the CalPERS group can overcome this substantial conflict of interest and fully protect the interests of the Prides-holders[12].

The opinion went further, noting that the court **disqualified two lead plaintiff movants,** not just

one, and did so for the same reasons:

> At the initial hearing, the Court selected the group led by the State of Connecticut Retirement Plans and Trust Funds to lead the Prides claims because after the CalPERS group, it had suffered the next largest losses based on Prides. At the August 24[th] reargument, that plaintiff was removed as lead plaintiff when the Court was made aware that Connecticut, too, had holdings in Merrill Lynch far in excess of its Prides losses.
> 182 F.R.D. at 150.

---

[12] In the case before the Court, the December 15 and 16 declarations supporting TF's Response publicly and theatrically pledge to the Court and all concerned that TF will pursue claims against underwriters (with no explanation of why it is their brief then takes a 180 degree turn and says the named plaintiffs can handle it). Here, as well, "logic and simple mathematics speak louder," as further discussed.

7

It must be carefully noted that the *Cendant* formulation is when you have stock ownership in an underwriter against whom you have claims "several times greater" than your losses, you are disqualified from serving as lead plaintiff. In the present posture of this case, TF has no claims against the underwriters, and thus any prosecution of any claim against underwriters is against the interest of TF. After the CAC is amended, *some portion* of its $23 million in claimed losses, will be attributable to underwriters, against whom TF will have *direct claims*. The $313 million of stock ownership in underwriters which Ontario Teachers has more than qualifies for the "several times greater" than alleged losses formula of *Cendant*.

The *Cendant* opinion[13] bears further analysis because of a highly significant misstep in R&R II. R&R II, at p. 8, compares the $300 million stock ownership of Ontario Teachers to its approximately $65.6 billion in assets, and notes how small a portion of the total portfolio it is. In *Cendant*, the members of the CalPERS group were the three largest public pension funds in the United States, with combined assets today of $340 billion. While the assets of the CalPERS group at the time of the *Cendant* opinion were smaller in 1998, they still dwarfed the assets of Ontario Teachers, and the $300 million was readily found to be disqualifying. The "logic" of the *Cendant* opinion of necessity includes: (a) the fiduciary duty not to take action harming the interest of one's beneficiaries, as well as the problems presented at settlement, trial, or judgment, if a conflicted party serves as lead plaintiff; and (b) the concept of whether a reasonable member of the WMB Subclass would consent to the conflict of interest, if asked. Providing an answer to this question is the Court's quintessential role in protecting absent class members, as we noted at the outset of this brief. No reasonable WMB

---

[13] TF has twice, quite approvingly, cited the *Cendant* disqualification opinion to the Court: n.3, p. 7 of its initial brief seeking lead plaintiff status, and n.3, p. 8 of its December 9, 2004 brief.

Subclass member would consent to TF's huge conflict of interest,[14] whether it is $313 million or $1.2 billion.

### 2. The *Cendant* Disqualification Opinion Is Not Only Uncontradicted in Subsequent Cases, But Strongly Supported Therein

The *Cendant* disqualification opinion is not only uncontradicted in subsequent cases, it is strongly supported, by words and by inference in later cases:

*First.* Despite at least five appeals involving various aspects of the Cendant litigation, no claim was ever made that the *Cendant* disqualification opinion was flawed in any respect. TF's claim the Third Circuit "effectively overturned" the *Cendant* disqualification is patently, egregiously, untrue. Instead, the Third Circuit did the opposite, holding Rule 23, Fed.R.Civ.P., requires examination of whether there are conflicts of interest:

> In assessing whether the movant satisfies Rule 23's adequacy requirement, courts should consider whether it "has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class." (citation omitted).
> 264 F.3d at 265.

Moreover, the Third Circuit noted approvingly the disqualification:

> The District Court concluded that the CalPERS Group could not fairly and

---

[14] The Court will note that TF has "assured" the Court it will vigorously purse all claims in the case. This is meaningless, because TF may not violate its fiduciary duty to its own beneficiaries, meaning it may take no action which presents any substantial risk of causing more harm to TF's beneficiaries than can be gained—an insurmountable hurdle in this case, as discussed below. The conflict issue here is no different from that in any other case. Unless those affected by the conflict consent (the absent class members), the conflict remains. Perhaps the argument could be made that this alone is dispositive—without 100% consent of the WMB Subclass members, the conflict is disqualifying. However, it is not necessary to go there, because TF cannot survive the "reasonable WMB Subclass member" test. **The Court will note that TF beat its breast in "assuring" the Court about what it says it would do, but did not bother to give the Court any assurance whatsoever about its business dealings with underwriters.**

9

adequately represent the interests of the holders of convertible Cendant derivative securities known as PRIDES... and severed the PRIDES claims from the main action. FN 2.    The court eventually appointed the CalPERS Group as lead plaintiff of the main *Cendant* action.

FN 2.  The court based this conclusion on the fact that all members of the CalPERS Group had sizeable holdings in Merrill Lynch, a defendant with respect to the claims involving PRIDES.... The Court eventually appointed a different lead plaintiff and lead counsel in the PRIDES action.
264 F.3d at 223.

In n.6, p. 9 of TF's Response, TF tries to fog one by when it says: "For instance, when faced with an argument strikingly similar to Russell's argument here in *In re Cendant Corp. Litig.,* the Third Circuit soundly rejected the argument on the ground that it conflicted with Congress' intent, as embodied in the PSLRA." This is quite untrue.  The matter which TF referred to was stock ownership in Cendant, not stock ownership in underwriters. Moreover, the Third Circuit specifically held, 264 F.3d at 244: "the simple fact that the institutional investors who comprise Lead Plaintiff retained Cendant stock while the Settlement was negotiated is not nearly enough, standing alone, to support Throenle's claim that Lead Plaintiff was so conflicted that the Settlement should be overturned." **This result obtains because of the specific reference in the legislative history of the PSLRA that a lead plaintiff "can, consistent with its fiduciary obligations, balance the interests of the class with the long-term interests of the company and its public investors."** *Sen. Rpt. No. 104-98,* p. 11.  This is ***all*** the legislative history speaks to; it does not speak of stock ownership of underwriters, ***nor does it sanction all conflicts of interest, no matter what***. *All the PSLRA and the case law do is say de minimis conflicts of interest are not inherently or automatically disqualifying.*

10

*Second.* The latest case on the subject,[15] *Pirelli Armstrong Tire Corp. v. Labranche & Co., Inc.,* 2004 WL 1179311 (S.D.N.Y. May 27, 2004), at *17, quotes from the PSLRA's legislative history, specifically noting the Senate Report's statement that the lead plaintiff "can, consistent with its fiduciary obligations, balance the interests of the class with the long-term interests of the company and its public investors," does not mean there can be no disqualifying conflicts of interest, and quite approvingly cites the *Cendant* disqualification opinion:

> This pronouncement [the quotation from the Senate Report, just above] does not suggest that an institutional investor's holdings in a defendant entity are irrelevant or that they may never be found to give rise to a conflict of interest. **Where, for instance, a proposed lead plaintiff group has been shown to have a financial interest in a defendant several times greater than the group's alleged losses with respect to the underlying claim against that defendant, the group has been found to have a sufficient conflict of interest precluding its appointment as lead plaintiff with respect to that claim.** *See In re Cendant Corp. Litig.,* **182 F.R.D. 144, 149 (D.N.J. 1998)(emphasis added).**

On the same page, the *Pirelli* court went out of its way to note the Third Circuit opinion in *Cendant* does not overturn the *Cendant* district court disqualification opinion.  Stunningly, R&R II, on pp. 7-8 cites *Pirelli* as supporting R&R II's implied assertion that no conflict, no matter the size, is relevant under the PSLRA, completely ignoring this quoted language from *Pirelli* that strongly supports Russell's position[16].

*Third.* In *In re Elan Corp. Sec. Litig.,* 2002 WL 31720410 (S.D.N.Y. Dec. 3, 2002), at *4, the court

---

[15]  This case was cited by TF on p. 6 of its original brief, for a different proposition.

[16]  It is only by ignoring the specific language of (a) the Third Circuit in *Cendant,* (b) *Vesta,* (c) *Pirelli,* and (d) the legislative history of the PSLRA that R&R II can state on p. 4 that the "weight of authority" supports the position of TF. **The uncontradicted authority fully supports the disqualification decision in *Cendant,* as does logic, mathematics, principles of fiduciary duty, principles of human nature, and common sense.  No lead plaintiff in these circumstances will shoot itself in the foot or its beneficiaries in their pocketbooks.**

11

said this of the *Cendant* disqualification opinion:

> There, a group of "Public Pension Fund Investors" had claims that "dwarfed" the claims of other investors or investor groups seeking appointment as lead plaintiff...Nevertheless, a clear conflict of interest loomed on the horizon because the Public Pension Fund Investors had substantial investments in Merrill Lynch, which had served as underwriter for one of four types of securities held by putative class members.

*Fourth.* In *In re Vesta Insurance Group, Inc. Sec. Litig.,* 1999 U.S. Dist. LEXIS 22233, the court gave an extended discussion of general principles on conflicts of interest, and how the interests of current stockholders of a WMB-equivalent can be taken into account by a lead plaintiff. TF, in its Response, was quite proud of *Vesta,* quoting extensively from it on p. 7 in its Response to the Court's order. But, TF forgot to tell the Court that on the very next page following its quotation, at *31, **the Vesta court pointedly noted that while disqualification is not the rule, it certainly is the exception in the appropriate case, and approvingly cited the *Cendant* disqualification opinion**:

> While there may be the occasional extreme case where a conflict of this type is too great and simply dominates the landscape too completely to ignore, n.9      in light of the policy behind [the] PSLRA, disqualification on that basis should be the exception rather than the rule.

Breathtakingly, R&R II quoted this language in *Vesta,* but ***R&R II omitted citing the very footnote 9 and its contents, which are not just a citation to the Cendant disqualification opinion, but an extended quotation, including how logic and mathematics spoke far louder than the theatrical protestation that the claims would be vigorously pursued.*** Accordingly, *Vesta* fully supports the *Cendant* disqualification opinion.

R&R II, on pp. 6-7, quotes a portion of an "SEC Speaks" in 1999 presentation at the Practicing Law Institute, quoted in *Vesta.* Any quotation comes in a context. The context of the quote is a brief

12

filed by the SEC in an earlier version of the *Vesta* case. There, the SEC noted[17] the arguments advanced were indeed a "generic" attack on all institutional investors. For example, the SEC noted, the lead–and quite absurd--argument was that the Florida Board could not be lead plaintiff because its assets dwarfed its losses. *See* 1104 PLI/Corp 291, Westlaw, at *484-85.[18]

*Fifth.* None of the five cases cited in Mr. Schulman's declaration of December 15, 2004 involved the presentation to any of those courts the question of stock ownership in underwriter defendants. Thus, those cases are irrelevant. In addition, for active cases, if the conflicts are called to the Court's attention, there could yet be substantial problems if the facts warrant. **The Schulman declaration is additionally highly misleading in four cases because of his failure to tell the Court:** In *Worldcom,* NYSCRF had claimed losses of $306 million, vs. stock ownership of $60 million, the precise opposite of the *Cendant* rule. In *McKesson,* NYSCRF had claimed losses of $39.1 million vs. stock ownership of $16.6 million, also the precise opposite of the *Cendant* rule. In *In re Royal Ahold N.V. and ERISA Litig.,* 219 F.R.D. 343 (D.Md. 2003), no issue of ownership in an underwriter defendant by the lead plaintiff movant was presented to the court; instead, in the case of a rejected lead plaintiff applicant, the underwriter owned 5% of the lead plaintiff and was underwriter for the defendant. The allegation was not conflict of interest, but unique defenses, based on the suggestion the underwriter might have passed on inside information to the lead plaintiff

---

[17] **The SEC, in this same brief, strongly endorsed the *Cendant* observation that approval of lead plaintiff's selection of counsel "is subject to its discretionary judgment that lead plaintiff's choice of representative *best suits* the needs of the class." 1104 PLI/Corp 291, Westlaw, at * 493 (emphasis added).**

[18] In *Vesta,* the stock ownership at issue was only $15 million. R&R II, on p. 7, calls the stock ownership "significant," without pointing out the $15 million amount. If $15 million is "significant," $313 million surely must be "staggering."

movant.  219 F.R.D. at 353.  The last two sentences in n. 3 of p. 8 of TF's Response are **sanctionably false concerning the appointment of lead plaintiff in *Enron*.**  They say: "Indeed, [the lead plaintiff] was appointed despite its ownership of shares in certain of the defendant investment banks. *Id.* at 459."  The truth is, the opinion, in n.14, merely refers, without ruling or comment, to alleged stock ownership in underwriters of movants <u>who were not selected as lead plaintiff.</u> This falsehood is magnified by Mr. Schulman's declaration which says the lead plaintiff in *Enron*[19] owned Citigroup stock at 12-31-03 (long after the appointment), when the issue was neither presented to nor ruled on by Judge Harmon.  In addition, the Schedule 13F-HR filed by the Regents of the University of California for the period ending 12-31-03 shows ZERO ownership of Citigroup stock.

*Sixth.  It will not be lost on the Court that TF's present argument, without any case law, statutory, or legislative history support whatsoever, is the PSLRA sanctions all conflicts of interest, period; but, before TF's conflict of interest problem was exposed, TF argued the opposite, not once, but twice.  On p. 5 of its initial brief, TF said, "...there are no conflicts between [TF's] claims and those asserted on behalf of all members of the Subclass," thus recognizing the importance of the lack of conflicts of interest.  And on p. 7 of its December 9, 2004 brief, TF said the "adequacy" requirement of Rule 23, Fed.R.Civ.P., requires the movant to show "that there are no conflicts between the*

---

[19] Interestingly, Judge Harmon cited as a reason for her selection of the lead plaintiff, "[the lead plaintiff movant's] and its attorneys' zealous prosecution of this action is already evident." *In re Enron Corp. Sec. Litig.,* 206 F.R.D. 427, 454 (S.D. Tex. 2002).  She did so, as TF's counsel well knows, because the lawyer for the ultimate lead plaintiff did a great deal of work while the lead plaintiff application was pending.  This reinforces the fact TF's counsel has done  nothing to get prepared for depositions starting next week is for a very important reason— they knew the great risk they were running that the conflict of interest would be exposed.

*movant and the class," citing two cases saying exactly that[20]. TF, of course, knows the conflict of interest is a hurdle it cannot surmount (as demonstrated in part by TF never having asked the Court—with depositions now one week away—to allow it to look at documents so as to at least begin to get acquainted with this case), and hoists itself on its own petard by suggesting named plaintiffs can take care of underwriter issues, when lead plaintiff must "lead" the litigation in all phases.*

### C. The Unknown Conflicts of Interest

#### 1. Ontario Teachers

In Russell's Reply Brief filed December 23, 2004, it asked the Court to order TF to disclose its present stock ownership in underwriter defendants, or to permit discovery on same, because there is no publicly available information on same. R&R II ignored this request, refusing to have all the facts before ruling. As a result, the Magistrate Judge did not know about the $1 billion plus Citibank matter or the $300 million Goldman, Sachs matter. During the first nine months of 2004, as shown by comparison of Ontario Teachers' website with its 9-30-04 report filed with the SEC, Ontario Teachers bought 836,800 shares of its 3 million plus shares of CIBC and 800,000 of its 855,000 shares of Bank of America. Did the buying pattern continue after September 30?

In 2002 CIBC and two others loaned $2.2 Bn (Cdn) to Ontario Teachers and two others, to finance a yellow pages buyout in Canada. It cannot readily be determined if any of that loan remains outstanding. In addition, CIBC and Ontario Teachers are both more than 10% owners of Samsonite Corporation. And one of the members of CIBC's board of directors sits on the board of Ontario

---

[20] **Both of those cases found the absence of a conflict of interest was part of the court's initial determination of whether Rule 23 was complied with and therefore a rebuttable presumption could be established.** *See Albert Fadem Trust v. Citigroup, Inc.*, 239 F.Supp. 2d 344, 348 (S.D.N.Y. 2002); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001).

Teachers' wholly owned real estate subsidiary.[21]

Russell asks the Court to order Ontario Teachers to make full disclosure of all of its relationships and dealings with underwriters, or to set a hearing, permit discovery, or whatever other means the Court may select—unless, of course, the Court finds the extant facts sufficient.

### 2. Arkansas Teacher Retirement System

In n.2, p. 4 of Russell's Reply Brief filed December 23, 2004, the Court was told:

> Arkansas Teachers ("ATRS") has conflict of interest problems, as well. The dollar magnitude cannot be ascertained without discovery, because it employs money managers, and those reports do not break out the holdings of ATRS. The reports do show, however, investments in many of the underwriters, in the billions of dollars.

The Court was further told that discovery or additional proceedings were requested if the Court did not determine the conflict problem of Ontario Teachers, alone, to disqualify TF. R&R II also ignored this request, refusing to have all the facts before ruling. Russell renews the request.

### D. *Res Judicata,* Due Process and Class Certification Issues

The *sine qua non* of a class action is one that is free of *res judicata* and Due Process issues. Ontario Teachers' conflict of interest problem permits an attack on TF as lead plaintiff at the time of class certification, settlement or judgment, raising obvious *res judicata* and Due Process issues for the WMB Subclass members[22] and Due Process problems for the Defendants. This case does not need the loss of another lead plaintiff, especially where a blemish-free Russell is more than capable

---

[21] Finding this information on the Internet has been similar to putting a 313 million piece puzzle together.

[22] "Due process mandates that the named plaintiff represent the interests of absent class members at all times." *Enron,* 206 F.R.D. at 441 (citing n. 8 of *Berger v. Compaq, supra,* which cited *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985)).

of fulfilling each and every desire of the PSLRA and its legislative history[23].

No decision affecting claims against non-underwriters which are virtually identical to claims against underwriters can be made by a lead plaintiff with the conflict TF would have. **It is a class that is being protected here, not the interests of one entity trying to hide in a vacuum. _The PSLRA does not permit the fox to vet his own occupancy of the hen-house._ Nothing in the PSLRA displaces the Court's authority as the ultimate protector of the class, or of its own judicial process. Neither any case nor the SEC has ever suggested otherwise.**

### III. Additional Dispositive Reasons Why TF Cannot Fairly or Adequately Represent the Best Interests of the WMB Subclass

#### A. Deficient Choices, Not in the Best Interests of the WMB Subclass, Are Disqualifying

In the *Cendant* case on appeal after the settlement, the Third Circuit said: **the district court is required to consider** "whether the choices made by the lead plaintiff movant with the largest losses are so deficient as to demonstrate that it will not fairly and adequately represent the interests of the class, thus disqualifying it from serving as lead plaintiff at all." 264 F.3d at 266.

#### B. Deficient Choices Which Disqualify TF

*First.* TF and its counsel knew of the $300 million disqualification in *Cendant*, as they have twice cited the disqualification opinion in earlier briefing. The size of TF's conflict causes the Rule 11 flag to tatter in a stiff gale, considering: <u>(a) TF told the Court on p. 5 of its initial brief supporting</u>

---

[23] We respectfully submit R&R II erroneously states Russell would not be lead plaintiff if TF is not appointed. Those movants not objecting to R&R I waived any objections thereto, and thereby gave up their lead plaintiff applications. This is true in any appeal: if five entities may appeal, but only one does, the other four do not get the benefit of the one's perspicacity. The Tenth Circuit has a well-known firm waiver rule on R&Rs. *See also United States v. Lewis*, 621 F.2d 1382, 1386 (5th Cir. 1980), where one of many defendants failed to object an R&R on a motion to suppress, and his claim was thereby waived.

its lead plaintiff motion, "... there are no conflicts between [TF's] claims and those asserted on behalf of all members of the Subclass"; and (b) TF told the Court on p. 7 of its December 9, 2004 brief that "adequacy" under Rule 23, requires the movant to show "that there are no conflicts between the movant and the class," citing two cases saying exactly that.[24]

It is a class that is to be represented here, not just one client. *Any putative lead plaintiff or its counsel with awareness of the Cendant district court disqualification opinion, the Pirelli opinion and the Vesta opinion, and potentially with $300 million, $600 million, or $1.2 billion of ownership in and investments with underwriter defendants, is duty bound to come clean with the Court, to be certain there are no res judicata or Due Process problems either at the class certification, settlement or judgment stage*[25]. *The putative lead plaintiff is not the client—instead, it is the class that is the client, and whose best interests must be advanced at all times, not the interest of the lead plaintiff, let alone its lawyers.*

*Second.* Leaving aside candor with the Court, what did TF and its counsel[26] plan to do about this

---

[24] This earlier TF representation to the Court that there must not be conflicts of interest between the movant and the class is completely contrary to TF's new, post-conflict of interest position, that the PSLRA sanctions all conflicts, no matter what. This new position has no support in the case law, in the statute, or in the legislative history.

[25] Indeed, TF represented to the Court on p. 2 of its initial brief that it was "familiar with the responsibilities of a lead plaintiff under the PSLRA." The absence of a conflict of interest is at the heart of Rule 23, Fed.R.Civ.P., compliance with which is *twice* required in the PSLRA.

[26] The Oklahoma Rules of Professional Conduct apply to TF's counsel in this case by virtue of their *pro hac vice* appearances and the Local Rules of this Court. Those rules of conduct give short shrift to TF's diversionary allegations that SLF has made "wild" or "irresponsible" allegations of lack of candor with the Court. Rule 3.3 of the Oklahoma Rules of Professional Conduct mandates candor with the Court. The Comments to Rule 3.3 say, *inter alia*: "Misleading Legal Argument: Legal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal. A lawyer is not required to make a disinterested exposition of the law, but must recognize the existence of pertinent legal authorities.

18

issue?  Wait until someone brought it up by objecting to settlement or a judgment?  Or for

Defendants to defeat them at class certification?  Is it their knowledge of this conflict problem which

has caused them not to obtain a single paper or electronic document from the document depository,

even as of January 6, 2005?

*Third.*  From October 28, 2004, when TF filed its application to be lead plaintiff, through January

6, 2005, TF's counsel has not looked at a single document, even though we are long since past what

TF described on October 28, 2004, in its initial brief, as "the cusp of intensive discovery."  We now

are so close to the cutting edge of "intensive discovery" one can feel it slice through the soles of the

litigation boots.  **TF's counsel, by signing the protective order, was entitled to receive any of the**

**documents produced in this case.**[27]  Depositions start in this case in less than one week, as the

Court well knows.   This is a case where more than 6.3 million documents have been reviewed and

digested in preparation for depositions by SLF, but not a single one by counsel for TF.  "... [A] court

might conclude that the movant with the largest losses could not surmount the threshold adequacy

inquiry if it ... intended to select as lead counsel a firm that was plainly incapable of undertaking the

representation."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 265 (3rd Cir. 2001).

---

Furthermore, as stated in paragraph (a)(3), an advocate has a duty to disclose directly adverse
authority in the controlling jurisdiction which has not been disclosed by the opposing party.  The
underlying concept is that legal argument is a discussion seeking to determine the legal premises
properly applicable to the case."  Thus, when TF's counsel told the Court the PSLRA sanctions
conflicts of interest, regardless of size, this misrepresented the law.  Moreover, TF had
represented it had no conflict of interest, and TF's counsel had cited the *Cendant* disqualification
opinion, the *Pirelli* opinion, and the *Vesta* opinion, without pointing out the conflict of interest
discussions of those courts.  TF's counsel was co-lead counsel in *Cendant.*

   [27]  This stunning fact renders as hollow as the Holland Tunnel this representation to the
Court by Mr. Schulman in his November 8, 2004 declaration: "Bernstein Litowitz and the
Burrage Law firm will commit the necessary resources to prosecute the Action on the schedule
established by the Court."

*Fourth.* Persuasive evidence of a lawyer-driven application on the part of TF lies in the declared intent of TF's counsel to start over in discovery by coding documents and to charge the WMB Subclass needless millions of dollars in catch-up attorney fees and liaison counsel fees[28]. In an effort to pull the wool over the Court's eyes, TF blandly tells the Court the issue of duplication of services largely depends on how cooperative SLF is. This is rubbish, merely an effort to hide the fact TF cares nothing for the Court's Order of July 8, 2002 saying there shall be "no duplication of attorneys' services." *No case* permits duplication of services, and cases *forbidding duplication* are legion.

*Fifth.* The insertion of TF's lawyers as sole lead counsel would seriously adversely affect effective discovery and settlement possibilities. No meaningful settlement can be made in the best interests of the WMB Subclass, either in relation to evaluating that class's claims or evaluating the claims of the ERISA Plaintiffs or the WCG Subclass Plaintiffs if they seek some of the same money sought by the WMB Subclass Plaintiffs, until lead counsel for the WMB Subclass has complete mastery of all of the facts[29]. At the absolute best, TF's counsel could not achieve this distinction until a great many months from now. The sooner this case is settled, if there is to be a settlement, the better off the WMB Subclass is, not only in terms of having money now, not later, but also in terms of attorney fees payable to counsel for the WMB Subclass. Cases involving huge damages do settle early, as counsel for TF is well aware from its service as co-lead counsel in the *Cendant* case, where Cendant settled "at a very early stage, after little formal discovery." *In re Cendant Corp. Litig.,* 264 F.3d 201,

---

[28] Contrast: "... I think that the broadest intention of the act is to avoid specious litigation and to avoid efforts that are merely lawyer, not client driven." April 12, 2002 Tr., p. 40.

[29] If the case settles when class counsel does not know all the facts, the likelihood is quite high that the settlement will be too small. If the case does not settle until all the facts are known by new counsel, but could and should have been settled sooner, then the class is out unnecessary attorney fees. Either way, the class unnecessarily ends up economically disadvantaged.

285 (3rd Cir. 2001)[30].

*Sixth.*  Russell incorporates by reference his Brief filed December 6, 2004 and his Reply Brief filed December 13, 2004, as to TF's deficient choices.

### C. *Res Judicata,* Due Process and Class Certification Implications of Deficient Choices

The deficient choices TF has made in this case permit attack on TF as lead plaintiff at the time of class certification, settlement or judgment, raising obvious *res judicata* issues for the WMB Subclass Plaintiffs, and Due Process problems for the Defendants.

### D. The Interests of the Three Pending Litigations

The interests of the ERISA Plaintiffs and the WCG Subclass Plaintiffs are affected by who serves as lead plaintiff and lead counsel. The confusion, lack of familiarity with the case, and other matters raised herein of necessity would have an adverse impact on scheduling and other issues, including potential settlement discussions, for all three litigations, if TF were appointed lead plaintiff.

### IV. Risk-Free vs. Risk-Fraught Lead Plaintiff

---

[30] **The Third Circuit made these comments in the context of rejecting the $262 million in attorney fees sought by Bernstein, Litowitz, *et al.,* and its co-lead counsel. The papers filed thus far by TF clearly demonstrate Bernstein, Litowitz, *et al.,* is merely taking a "flyer" in this case, hoping lightning strikes in this *Cendant*-sized-case and it will have another chance to try for a $262 million fee. Were it more than a "flyer," Bernstein, Litowitz, *et al.,* would (a) be telling this Court, *inter alia,* under no circumstances would the firm seek to duplicate attorney services, (b) have sought to immerse itself in the documents in this case, starting on October 28, 2004, instead of completely failing to do so even as of the filing of this brief, and (c) have told the Court SLF should serve as sole lead counsel (or, at worst, as co-lead counsel).**

The *Cendant* disqualification opinion, heartily endorsed in this regard by the SEC[31], says the court's task[32] in each case is to make certain the assumptions of the PSLRA match the reality of the particular case (which in the case before this Court, they do not):

> [The PSLRA's] underlying assumption is that the plaintiff or plaintiff group with the strongest financial interest will pursue the claims with the greatest vigor and will have both the interest and the clout to engage qualified counsel.... The court is then charged with ensuring that the reality of the case accords with these assumptions. 182 F.R.D. at 145.

Just what does Russell bring to this case as lead plaintiff?

*First.* Russell is an institutional investor, with almost $2 million in losses.

*Second.* Russell not only possesses the vigor to pursue this case to an appropriate end, as the PSLRA desires, he possesses far more of it than TF. Russell's $2 million in losses are out of a portfolio of less than $50 million. In addition, Fredric Russell himself is the money manager, has personal relationships which have suffered as the result of his investment in WMB, and resides in Tulsa, where he is readily able to learn many things about WMB and the "balance" which the legislative history of the PSLRA highly commends.

*Third.* The legislative history of the PSLRA specifically speaks to having an institutional investor

---

[31] The *Cendant* disqualification opinion's requirement that the court must make certain the reality of the case accords with the assumptions of the PSLRA was prominent in the SEC's *amicus* brief for the Third Circuit in the appeal cited in this brief. *See* 2000 WL 34002986.

[32] The task is, of course, for the Court. R&R II and TF note that Local 710 Fund and Gary Kosseff endorsed the application of TF, and they have claims against underwriters. That decision was made before the conflict of interest was exposed, and was made for "strategic" reasons after a phone call from Mr. Schulman. Local 710 Fund and Gary Kosseff remain on record with strong praise of the work of SLF and the need for it to be sole lead counsel, and continue to supply lawyers working at SLF's direction. But, most importantly, these facts simply underscore the efficacy and wisdom of the Court being the ultimate protector and "trustee" for the absent members of the class.

around at the time of settlement so that the long-term interests of the defrauding company can be measured along with the interests of the defrauded company. *Sen. Rpt. No. 104-98*, p. 11. Russell has followed WMB, a Tulsa company, for many years, and is far better able to serve this PSLRA interest than TF. If there is to be a settlement in this case, the long-term interests of WMB are particularly important, as WMB was on the verge of bankruptcy, with its stock trading below $1 and has now recovered such that the stock has been in the $15-16 range. Russell's greater knowledge of WMB and his greater ability to weigh WMB's interest is not a new point made on Russell's behalf, and it appropriately has gone unchallenged by TF.

*Fourth.* There has been no suggestion Russell presents *res judicata*, Due Process or class certification issues.

*Fifth.* Russell contacted SLF at the inception of this case. TF, by contrast, are total come-latelys.

*Sixth.* Russell has demonstrated his dedication to the case by offering to serve as a named plaintiff, or as lead plaintiff. **TF, by contrast, have made it quite plain if their lawyers are not named sole lead counsel, both TF and their lawyers will take a complete hike.**[33]

*Russell is risk-free in this case, while TF is risk-fraught.* Given the facts, we respectfully submit that at the least, the Court should consider the formulation Judge Harmon used in *Enron* in rejecting a lead plaintiff movant with larger losses than the ultimate appointee:

> The information raises more than the mere specter of antagonistic interest and unique

---

[33]   This is demonstrated in part by (a) the lecture Mr. Schulman flew all the way to Tulsa to deliver to SLF while staring at a spot high on the wall (*see* ¶ 20, Ex. A to Russell's December 13, 2004 brief), and (b) TF's Response to the Recommitment Order, where the Court is told there can only be one lead counsel in this case, and Mr. Schulman is it. As Russell has previously pointed out, Mr. Schulman's firm now makes the fourth law firm in this case to approach SLF on the subject of lead counsel, and to declare that if that firm could not be sole lead counsel, the firm and the putative lead plaintiff would not participate in the case in any role.

> defenses to rebut the presumption that FSBA is the most adequate Lead Plaintiff. **In good conscience this Court cannot endanger this litigation by ignoring the issues created by FSBA's unique involvement with Enron.**
> *Enron,* 206 F.R.D. at 456 (emphasis added).

In the case before the Court, TF has not met its burden because of the danger it presents to the litigation, even before one has to decide the conflict of interest and deficient choices issues. **R&R I and R&R II both ignore the burden on TF to establish its adequacy under Rule 23, and instead focus on the theme of the largest financial interest[34]. TF recognizes its threshold burden under Rule 23, in n. 4 on p. 8 of its initial brief, where it says, "numerous courts have rejected lead plaintiff motions where the proposed lead plaintiff failed to make a basic showing of adequacy under Rule 23...." There are two references to Rule 23 in the PSLRA.[35]**

## V. TF's Disqualifying Conflict of Interest Is Not Waived

*First.* The Court, at all times, has the inherent authority to protect the class:

> *De novo* review may be conducted in the absence of any objections.
> *Palmer v. Apfel,* 995 F. Supp. 549, 552 n.4 (E.D. Pa. 1998).

> This Court may *sua sponte* evaluate the adequacy of any proposed person ....
> *Enron,* 206 F.R.D. at 437.

> The court has a continuing duty at all stages of the litigation to stringently examine the adequacy of class representatives and their counsel...The duty arises from the requirement that the court determine that the representative parties will fairly and adequately protect the interests of the class...As trustee for the absent parties, the court must evaluate the class representatives' conduct over the course of the entire

---

[34] R&R I inaccurately determined the overriding purpose of the PSLRA is the appointment of a lead plaintiff with the largest financial interest.

[35] It is perhaps for these reasons that the court in *In re Microstrategy Inc. Sec. Litig.,* 110 F. Supp. 2d 427, 433 n. 11 (E.D.Va. 2000) (cited by this Court in its order of July 8, 2002 for a different proposition), says the largest financial interest requirement is to be considered only after a determination of the applicant meeting the requirements of Rule 23 (and of having filed a complaint or application to be lead plaintiff).

> litigation...Although the measure of adequate representation depends upon the circumstances of each case, stringent requirements are imposed upon prospective class representatives...If the court has substantial doubt about the adequacy of representation, it should act pursuant to its protective responsibility and deny or revoke certification.
>
> *Robin v. Doctors Officenters Corp.,* 123 F.R.D. 579, 580 (N.D. Ill. 1988).

*Second.* Conflict of interest of the lead plaintiff is appropriately raised at any time by any member of the class, since members of the class are entitled to have their interests advanced free of *res judicata,* Due Process, and class certification problems presented by a disqualifying conflict of interest of the lead plaintiff.

*Third.* The Court has already allowed this issue to be raised by granting the unopposed motion.

*Fourth.* The Court has determined under Rule 72 to hear this matter.

*Fifth.* The Court has the authority to extend the time to object to the report and recommendation of a magistrate judge. *See In re Energy Resources, Inc.,* 290 F.3d 1197 (10th Cir. 2000).

*Sixth.* Lack of required candor with the Court is always timely.

## VI. Conclusion

The PSLRA, its legislative history, and the uncontradicted case law permit *de minimis* conflicts of interest, but not *de maximus* ones. The reasonable member of the WMB Subclass would not waive TF's conflict of interest. TF has not, therefore, met its burden of proof of showing its "adequacy" under Rule 23. TF should be rejected as lead plaintiff, and Russell should be appointed. Separately or supplementally, the deficient choices of TF cause it to fail to meet its adequacy burden.

Respectfully submitted,

R. Thomas Seymour, OBA #8099
C. Robert Burton, OBA #14195
Scott A. Graham, OBA #19817
**SEYMOUR LAW FIRM**
100 West 5th Street, Suite 550
Tulsa, Oklahoma 74103
(918) 583-5791 (phone)
(918) 583-9251 (facsimile)

**COUNSEL FOR THE WMB SUBCLASS AND FREDRIC E. RUSSELL INVESTMENT MANAGEMENT CO., INC.**

## CERTIFICATE OF MAILING

I hereby certify a true and correct copy of the foregoing was e-mailed the 6th day of January, 2005, to all counsel listed on the Master Service List.

Scott Graham

26

## DECLARATION OF R. THOMAS SEYMOUR

1. All of the factual matters set forth in the brief to which this declaration is attached are true and correct, to the best of my knowledge.

2. The factual information concerning Ontario Teachers' conflicts of interest arising out of relationships apart from stock ownership in underwriter defendants was derived from a search of a myriad of Internet sites, conducted under my supervision. There are no known inaccuracies in what is presented in the brief.

3. Under all of the circumstances of this case, I represent to the Court that the best interests of the WMB Subclass are decidedly best served if Russell serves as lead plaintiff.

4. We respectfully submit the record speaks for itself in terms of SLF serving the WMB Subclass and the Court as sole lead counsel.

Done this 6th day of January, 2005, under penalties of perjury.

R. Thomas Seymour

Service List as of December 3, 2004; 8:30 A.M. CST

MASTER SERVICE LIST FOR DEFENDANTS
WMB SUBCLASS, WCG SUBCLASS AND ERISA LITIGATION

| **COUNSEL FOR WCG DEFENDANTS THE WILLIAMS COMPANIES, INC. AND KEITH BAILEY; FOR WMB DEFENDANTS THE WILLIAMS COMPANIES, AND DIRECTOR DEFENDANTS BAILEY, MALCOLM, MCCARTHY, BELITZ, AND HOBBS** | |
|---|---|
| Graydon Dean Luthey, Jr., Esq. OBA #5568<br>Sarah Jane Gillett, Esq., OBA #17099<br>Jennifer E. Mustain, Esq., OBA #13943<br>HALL, ESTILL, HARDWICK, GABLE,<br>GOLDEN & NELSON, P.C.<br>320 South Boston Avenue, Suite 400<br>Tulsa, Oklahoma 74103-3708<br>Telephone: (918) 594-0400<br>Facsimile: (918) 594-0505<br>dluthey@hallestill.com<br>sgillett@hallestill.com<br>jmustain@hallestill.com | Timothy K. Roake, Esq.<br>Sally J. Berens, Esq.<br>Courtney Greene Power, Esq.<br>GIBSON, DUNN & CRUTCHER, L.L.P.<br>1881 Page Mill Road<br>Palo Alto, CA 94304<br>Telephone (650) 849-5300<br>Facsimile (650) 849-5333<br>troake@gibsondunn.com<br>sberens@gibsondunn.com<br>cpower@gibsondunn.com |
| Alex A. Goldberg, Esq., OBA #18523*<br>THE WILLIAMS COMPANIES, INC.<br>One Williams Center, 41st Floor<br>P. O. Box 2400, MD 41-3<br>Tulsa, OK 74102<br>Telephone (918) 573-2000<br>Facsimile (918) 573-4195<br>alex.goldberg@williams.com<br><br>* represents only The Williams Companies | Ethan D. Dettmer, Esq.<br>GIBSON, DUNN & CRUTCHER, LLP<br>One Montgomery Street, Suite 3100<br>San Francisco, CA 94104<br>Telephone (415) 393-8200<br>Facsimile (415) 986-5309<br>edettmer@gibsondunn.com |
| Darren L. McCarty, Esq.<br>GIBSON, DUNN & CRUTCHER, LLP<br>2100 McKinney Avenue, Suite 1100<br>Dallas, Texas 75201<br>Telephone (214) 698-3100<br>Facsimile (214) 698-3400<br>dmccarty@gibsondunn.com | Wayne W. Smith, Esq.<br>Meryl L. Young, Esq.<br>Jeffrey H. Reeves, Esq.<br>GIBSON, DUNN & CRUTCHER, LLP<br>4 Park Plaza, Suite 1400<br>Irvine, California 92614-8557<br>Telephone (949) 451-3800<br>Facsimile (949) 451-4220<br>wsmith@gibsondunn.com<br>myoung@gibsondunn.com<br>jreeves@gibsondunn.com |

Service List as of December 3, 2004; 8:30 A.M. CST

---

**COUNSEL FOR WMB WILLIAMS OUTSIDE DIRECTOR DEFENDANTS COX, HOWELL, LEWIS, MEINIG, LILLIS, PARKER, WILLIAMS, CRUIKSHANK, CHAPMAN, GREEN, MACINNIS, STONEY, AND LORCH**

Vance L. Beagles, Esq.
Ralph I. Miller, Esq.
Lori Browne, Esq.
WEIL, GOTSHAL AND MANGES
200 Crescent Court, Suite 300
Dallas, TX 75201
Telephone (214) 746-7700
Facsimile (214) 746-7777
vance.beagles@weil.com
ralph.miller@weil.com
lori.browne@weil.com

---

**COUNSEL FOR WMB AND WCG DEFENDANT ERNST & YOUNG**

| | |
|---|---|
| Patrick M. Ryan, Esq.<br>Phillip G. Whaley, Esq.<br>Timothy J. Bomhoff, Esq.<br>RYAN, WHALEY, COLDIRON &<br>SHANDY<br>119 N. Robinson, Suite 900<br>Oklahoma City, OK 73102-8865<br>Telephone: (405) 239-6040<br>Facsimile: (405) 239-6766<br>pryan@ryanwhaley.com<br>pwhaley@ryanwhaley.com<br>tbomhoff@ryanwhaley.com | Miles N. Ruthberg, Esq.<br>Jamie L. Wine, Esq.<br>Ethan Brown, Esq.<br>Charles W. Cox, Esq.<br>LATHAM & WATKINS LLP<br>633 West Fifth Street, Suite 4000<br>Los Angeles, CA 90071<br>Telephone: (213) 485-1234<br>Facsimile: (213) 891-8763<br>miles.ruthberg@lw.com<br>jamie.wine@lw.com<br>ethan.brown@lw.com<br>chuck.cox@lw.com |

---

**COUNSEL FOR WMB UNDERWRITER DEFENDANTS**

| | |
|---|---|
| Jonathan M. Hoff, Esq.<br>Riche McKnight, Esq.<br>CADWALADER, WICKERSHAM & TAFT<br>LLP<br>100 Maiden Lane<br>New York, NY 10038<br>Telephone (212) 504-6000<br>Facsimile (212) 504-6666<br>jonathan.hoff@cwt.com<br>riche.mcknight@cwt.com | Warren Bickford, Esq.<br>Burck Bailey, Esq.<br>Brooks Richardson, Esq.<br>John B. Heatly, Esq.<br>FELLERS SNIDER BLANKENSHIP BAILEY<br>& TIPPENS<br>100 N. Broadway, Suite 1700<br>Oklahoma City, OK 73102<br>Telephone: (405) 232-0621<br>Facsimile: (405) 232-9659<br>wbickford@fellerssnider.com<br>bbailey@fellerssnider.com<br>brichardson@fellerssnider.com<br>jheatly@fellerssnider.com |

Service List as of December 3, 2004; 8:30 A.M. CST

| COUNSEL FOR WCG DEFENDANTS JANZEN, SCHUBERT, KINNEAR, BROSS, MCCOY, KALIKA, BUMGARNER AND SEMPLE AND WMB DEFENDANT BUMGARNER | |
|---|---|
| James L. Kincaid, Esq.<br>Michael J. Gibbens, Esq.<br>Victor E. Morgan, Esq.<br>Susan E. Huntsman, Esq.<br>CROWE & DUNLEVY, P.C.<br>321 S. Boston Avenue, Suite 500<br>Tulsa, OK 74103-3313<br>Telephone (918) 592-9800<br>Facsimile (918) 592-9801<br>kincaidj@crowedunlevy.com<br>gibbensm@crowedunlevy.com<br>morganv@crowedunlevy.com<br>huntsmas@crowedunlevy.com | Jennifer Blankenship, Esq.<br>CROWE & DUNLEVY, P.C.<br>20 North Broadway, Suite 1800<br>Oklahoma City, OK 73102<br>Telephone (405) 235-7700<br>Facsimile (405) 272-5958<br>blankenj@crowedunlevy.com |

| ERISA - BENEFITS AND INVESTMENT COMMITTEE DEFENDANTS' COUNSEL | |
|---|---|
| Laurence L. Pinkerton, Esq.<br>PINKERTON & FINN, P.C.<br>15 East 5th<br>Penthouse Suite<br>Tulsa, OK 74103<br>Telephone: (918) 587-1800<br>Facsimile: (918) 582-2900<br>pf@att.net | Paul J. Ondrasik, Jr., Esq.<br>Michael Kail, Esq.<br>Kevin Powers, Esq.<br>STEPTOE AND JOHNSON<br>1330 Connecticut Ave, N.W.<br>Washington, D.C. 20036<br>Telephone: (202) 429-3000<br>Facsimile: (202) 429-3902<br>pondrasik@steptoe.com<br>mkail@steptoe.com<br>kpowers@steptoe.com |

| ERISA - COUNSEL FOR DIRECTOR DEFENDANTS AND FOR NONPARTY THE WILLIAMS COMPANIES | |
|---|---|
| Howard Shapiro, Esq.<br>Suzanne S. Dickey, Esq.<br>Charles F. Seemann, III, Esq.<br>PROSKAUER ROSE, LLP<br>LL&E Tower<br>909 Poydras Street, Suite 1100<br>New Orleans, Louisiana 70112<br>Telephone: (504) 310-4088<br>Facsimile: (504) 310-2022<br>howshapiro@proskauer.com<br>sdickey@proskauer.com<br>cseemann@proskauer.com | Graydon Dean Luthey, Jr., Esq.<br>Sarah Jane Gillett, Esq.<br>HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.<br>320 South Boston Avenue, Suite 400<br>Tulsa, Oklahoma 74103-3708<br>Telephone: (918) 594-0400<br>Facsimile: (918) 594-0505<br>dluthey@hallestill.com<br>sgillett@hallestill.com |

Service List as of December 3, 2004; 8:30 A.M. CST

MASTER SERVICE LIST FOR PLAINTIFFS
WMB SUBCLASS, WCG SUBCLASS AND ERISA LITIGATION

| WMB PLAINTIFF COUNSEL AND ON BEHALF OF FREDRIC E. RUSSELL INVESTMENT MANAGEMENT CO. | WCG PLAINTIFFS' COUNSEL |
|---|---|
| R. Thomas Seymour, Esq.<br>C. Robert Burton, Esq.<br>Scott A. Graham, Esq.<br>SEYMOUR LAW FIRM<br>100 West 5th Street, Suite 550<br>Tulsa, Oklahoma 74103<br>Telephone: (918) 583-5791<br>Facsimile: (918) 583-9251<br>rtseymour1@aol.com<br>robtburton@aol.com<br>sgraham@seymourlawfirm.com<br>jbyrne@seymourlawfirm.com | James R. Hicks, Esq.<br>Ronald J. Saffa, Esq.<br>MORREL WEST SAFFA CRAIGE &<br>  HICKS, INC.<br>5310 E. 31st Street, Suite 1100<br>Tulsa, Oklahoma 74135<br>Telephone: (918) 664-0800<br>Facsimile: (918) 663-1383<br>jim@law-office.com<br>ron@law-office.com |
| | Kevin Yourman, Esq.<br>Behram Parekh, Esq.<br>Janine Sperandeo<br>YOURMAN ALEXANDER & PAREKH<br>3601 Aviation Boulevard, Suite 3000<br>Manhattan Beach, CA 90266<br>Telephone: 310-725-6400<br>Facsimile: 310-725-6420<br>kyourman@yaplaw.com<br>bparekh@yaplaw.com<br>jsperandeo@yaplaw.com |
| | Steven G. Schulman, Esq.<br>Joshua H. Vinik, Esq.<br>Salvatore J. Graziano, Esq.<br>Caroline Marshall, Esq.<br>MILBERG WEISS BERSHAD &<br>SCHULMAN LLP<br>One Pennsylvania Plaza<br>New York, NY 10119<br>Telephone: (212) 594-5300<br>Facsimile: (212) 868-1229<br>SSchulman@MilbergWeiss.com<br>JVinik@MilbergWeiss.com<br>SGraziano@MilbergWeiss.com<br>CMarshall@MilbergWeiss.com |

Service List as of December 3, 2004; 8:30 A.M. CST

| | |
|---|---|
| | Leigh A. Parker, Esq.<br>Karnit Daniel, Esq.<br>WEISS & LURIE<br>10940 Wilshire Boulevard, 24th Floor<br>Los Angeles, CA 90024<br>Telephone: (310) 208-2800<br>Facsimile: (310) 209-2348<br>lparker@wyca.com<br>kdaniel@wyca.com |

**WMB PLAINTIFF ONTARIO TEACHERS' PENSION PLAN BOARD & ARKANSAS TEACHER RETIREMENT SYSTEM COUNSEL**

| | |
|---|---|
| Michael Burrage, Esq.<br>BURRAGE LAW FIRM<br>First United Center, Suite 100<br>115 N. Washington<br>P. O. Box 1727<br>Durant, OK 74702<br>Telephone: (580) 920-0700<br>Facsimile: (580) 920-0702<br>mburrage@burragelaw.com | Blair A. Nicholas, Esq.<br>Alan Schulman, Esq.<br>BERNSTEIN LITOWITZ BERGER &<br>GROSSMAN, LLP<br>12544 High Bluff Drive, Suite 150<br>San Diego, CA 92130<br>Telephone: (858) 793-00700<br>Facsimile: (858) 793-0323<br>blairn@blbglaw.com<br>alans@blbglaw.com |
| | Douglas M. McKeige, Esq.<br>Avi Josefson, Esq.<br>Gerald H. Silk, Esq.<br>Chad Johnson, Esq.<br>Javier Bleichmar, Esq.<br>Roy Esh, Esq.<br>Larry Silvestro, Esq.<br>Stephen Floytlin, Esq.<br>Mark Lebovitch, Esq.<br>BERNSTEIN LITOWITZ BERGER &<br>GROSSMAN, LLP<br>1285 Avenue of the Americas<br>New York, NY 10029<br>Telephone: (212) 554-14000<br>Facsimile: (212) 554-1444<br>doug@blbglaw.com<br>avi@blbglaw.com<br>jerry@blbglaw.com<br>chad@blbglaw.com<br>Javier@blbglaw.com<br>roy@blbglaw.com<br>larry@blbglaw.com<br>stephenf@blbglaw.com<br>markl@blbglaw.com |

**WMB PLAINTIFF PACE COUNSEL**

| | |
|---|---|
| William Federman, Esq. | William S. Lerach, Esq. |

Service List as of December 3, 2004; 8:30 A.M. CST

| | |
|---|---|
| FEDERMAN & SHERWOOD<br>120 N. Robinson, Suite 2720<br>Oklahoma City, OK 73102<br>Telephone: (405) 235-1560<br>Facsimile: (405) 239-2112<br>wfederman@aol.com | Darren J. Robbins, Esq.<br>Ramzi Abadou, Esq.<br>LERACH COUGHLIN STOIA GELLER<br>RUDMAN & ROBBINS LLP<br>401 B Street, Suite 1700<br>San Diego, CA 92101<br>Telephone: (619) 231-1058<br>Facsimile: (619) 231-7423<br>wsl@lerachlaw.com<br>darrenr@lerachlaw.com<br>ramzia@lerachlaw.com |

**WMB PLAINTIFF LOCAL 710 FUNDS COUNSEL**

| | |
|---|---|
| Michael Behn, Esq.<br>FUTTERMAN & HOWARD, CHTD.<br>122 South Michigan Avenue, Suite 1850<br>Chicago, Illinois 60603<br>Telephone: (312) 427-3600<br>Facsimile: (312) 427-1850<br>MBehn@FuttermanHoward.com | Ira M. Press, Esq.<br>KIRBY MCINERNEY & SQUIRE, LLP<br>830 Third Avenue, 10th Floor<br>New York, NY 10022<br>Telephone: (212) 371-6600<br>Facsimile: (212) 751-2540<br>ipress@kmslaw.com |

**WMB PLAINTIFF GARY KOSSEFF AND DAVID SCHULTZ (JOINDER RE LOCAL 710)**

| |
|---|
| Marvin L. Frank, Esq.<br>MURRAY, FRANK & SAILER, LLP<br>275 Madison Avenue, Suite 801<br>New York, NY 10016<br>Telephone: (212) 682-1818<br>Facsimile: (212) 682-1892<br>mfrank@murrayfrank.com |

**WMB PLAINTIFF STEELWORKERS PENSION TRUST COUNSEL**

| | |
|---|---|
| William R. Grimm, Esq.<br>BARROW & GRIMM, P.C.<br>610 S. Main, Suite 300<br>Tulsa, OK 74119<br>Telephone: (918) 584-1600<br>Facsimile: (918) 585-2444<br>grimm@bggg.com | Sherrie R. Savett, Esq.<br>Michael T. Fantini, Esq.<br>Phyllis M. Parker, Esq.<br>BERGER & MONTAGUE, P.C.<br>1622 Locust Street<br>Philadelphia, PA 19103<br>Telephone: (215) 875-3000<br>Facsimile: (215) 875-4636<br>ssavett@bm.net<br>mfantini@bm.net<br>pparker@bm.net |

**WMB PLAINTIFF WILLIAMS INSTITUTIONAL INVESTMENT GROUP COUNSEL**

Service List as of December 3, 2004; 8:30 A.M. CST

| | |
|---|---|
| Donald M. Bingham, Esq.<br>David Riggs, Esq.<br>James Polan, Esq.<br>RIGGS, ABNEY, NEAL, TURPEN,<br>ORBISON & LEWIS<br>502 West Sixth<br>Tulsa, OK 74119<br>Telephone: (918) 587-3161<br>Facsimile: (918) 584-1603<br>don_bingham@riggsabney.com<br>driggs@riggsabney.com<br>jpolan@riggsabney.com | Jay W. Eisenhofer, Esq.<br>Sidney Liebseman, Esq.<br>Gregg S. Levin, Esq.<br>GRANT & EISENHOFER P.A.<br>Chase Manhattan Center<br>1201 North Market Street<br>Wilmington, DE 19801<br>Telephone: (302) 622-7000<br>Facsimile: (302) 622-7100<br>jeisenhofer@gelaw.com<br>glevin@gelaw.com<br>sliebesman@gelaw.com |
| Stanley M. Grossman, Esq.<br>Robert J. Axelrod, Esq.<br>POMERANTZ HAUDEK BLOCK<br>GROSSMAN & GROSS LLP<br>100 Park Avenue<br>New York, NY 10017<br>Telephone: (212) 661-1100<br>Facsimile: (212) 661-8665<br>smgrossman@pomlaw.com<br>rjaxelrod@pomlaw.com | Vincent R. Cappucci, Esq.<br>Stephen D. Oestreich, Esq.<br>Robert N. Cappucci, Esq.<br>ENTWISTLE & CAPPUCCI, LLP<br>299 Park Avenue, 14th<br>New York, NY 10171<br>Telephone: (212) 894-7200<br>Facsimile: (212) 894-7272<br>vcappucci@entwistle-law.com<br>soestreich@entwistle-law.com<br>rcappucci@entwistle-law.com |

**ERISA PLAINTIFFS' COUNSEL**

| | |
|---|---|
| John E. Dowdell, Esq.<br>William W. O'Connor, Esq.<br>NORMAN WOHLGEMUTH CHANDLER &<br>DOWDELL<br>2900 Mid-Continent Tower<br>Tulsa, OK 74103<br>Telephone: (918) 583-7571<br>Facsimile: (918) 584-7847<br>jed@nwcdlaw.com<br>wwo@nwcdlaw.com | Laurie B. Ashton, Esq.<br>KELLER ROHRBACK<br>National Bank Plaza<br>3101 North Central Avenue, Suite 900<br>Phoenix, Arizona 85012<br>Telephone: (602) 230-6347<br>Facsimile: (602) 248-2822<br>LAshton@KellerRohrback.com |
| Lynn Lincoln Sarko, Esq.<br>Cari Campen Laufenberg, Esq.<br>KELLER ROHRBACK, L.L.P.<br>1201 Third Ave., Suite 3200<br>Seattle, WA 98101-3052<br>Telephone: (206) 623-1900<br>Facsimile: (206) 623-3384<br>LSarko@KellerRohrback.com<br>CLaufenberg@KellerRohrback.com | Marc I. Machiz, Esq.<br>COHEN, MILSTEIN, HAUSFELD & TOLL,<br>P.L.L.C.<br>1100 New York Ave., N.W.<br>Suite 500, West Tower<br>Washington, D.C. 20005<br>Telephone: (202) 408-4600<br>Facsimile: (202) 408-4699<br>MMachiz@CMHT.com<br>MPeterson@CMHT.com |

USE THIS LIST FOR DISTRIBUTION OF PLEADINGS.

**Ex. H**

**FILED**

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

DEC 2 9 2004

Phil Lombardi, Clerk
U.S. DISTRICT COURT

IN RE:

WILLIAMS SECURITIES LITIGATION
   WMB SUBCLASS
   WCG SUBCLASS

Case No.    02-CV-72-H (M)

ENTERED ON DOCKET

DATE _DEC 3 0 2004_

### REPORT AND RECOMMENDATION

The undersigned previously issued a Report and Recommendation which recommended the appointment of the Ontario Teachers' Pension Plan Board and the Arkansas Teachers Retirement System (Teachers Pension Group) as Lead Plaintiff for the WMB subclass and recommended approval of its choice of counsel as Lead Counsel. [Dkt. 616]. Thereafter, the Court received the objection of Plaintiff Fredric E. Russell Investment Management Co. (Russell) and granted Russell's application to supplement its reply brief. In addition, the Court ordered the Teachers Pension Group to file a response to Russell's Supplemental Reply and recommitted the matter of the appointment of Lead Plaintiff to the undersigned United States Magistrate Judge. [Dkt. 634].

Additional briefs have been filed and in making this Report and Recommendation, the undersigned has fully considered the "Supplement to Reply Brief of Fredric E. Russell Investment Management Co. Inc. to R&R Docketed November 18, 2004" [Dkt. 636]; the "Response of the Ontario Teachers' Pension Plan Board and the Arkansas Teacher Retirement System to Fredric E Russell Investment Management's Submission regarding Ontario Teachers' Stock Holdings" [Dkt. 635]; the "Response Brief of the Ontario Teachers' Pension Plan Board and the Arkansas Teacher Retirement System Pursuant to The

639

Court's December 16, 2004 Order: [Dkt. 638]; and "Reply Brief of Fredric E. Russell Investment Management Co. to the Court's Order of December 16, 2004" [Dkt. 637].[1]

The appointment of a lead plaintiff in a private securities action is governed by the detailed procedures set forth in the Private Securities Litigation Reform Act (PSLRA) which require the Court to determine which applicant is "most capable of adequately representing the interests of the class members." 15 U.S.C. § 78u-4(a)(3)(B). In determining which applicant should be named lead plaintiff, the Court must accept the presumption that the most adequate plaintiff in any private action is the person(s) who: (1) has either filed the complaint or made a motion in response to a notice; (2) in the determination of the Court, has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Under the PSLRA, the Court's determination of the "most adequate plaintiff" may be rebutted only upon proof that the presumptive lead plaintiff either: (1) will not fairly and adequately protect the interests of the class; or (2) is subject to unique defenses that render such plaintiff incapable of adequately representing the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

These procedures were applied by the Court in the initial appointment of a lead Plaintiff [Dkt. 128] and by the undersigned in the Report and Recommendation which recommended the appointment of Teachers Pension Group as lead plaintiff [Dkt. 616]. The foregoing provisions of the PSLRA will also provide the framework for reconsideration of the lead plaintiff recommendation.

---

[1]  It is peculiar to name a document a reply to a court order when nothing within the Order of December 16, 2004, required, requested, suggested or even permitted a reply by Russell.

2

The issue presented is whether the substantial stock ownership of Ontario Teachers in several of the underwriter defendants constitutes proof that the Teachers Pension Group will not fairly and adequately protect the interests of the class so as to rebut the statutory presumption imposed by the PSLRA that the Teachers Pension Group is the "most adequate plaintiff."[2]  15 U.S.C. § 78u-4(3)(B)(iii)(II).

Russell argues that because Ontario Teachers owns approximately $300 million of stock in the underwriter defendants, Teachers Pension Group has a conflict of interest as lead plaintiff between vigorously prosecuting the underwriter defendants and protecting its own financial interests in the underwriter defendants.

Certainly this argument has some force and might well be persuasive in a case not governed by the PSLRA.  However, based on the lead plaintiff provisions of the PSLRA, its legislative history, the observations of the Securities and Exchange Commission (SEC), and the cases addressing the issue, as hereafter discussed, the undersigned concludes that a plaintiff's substantial stock ownership in a defendant does not automatically disqualify the plaintiff from serving as lead plaintiff under the PSLRA.  The undersigned

---

[2]  A preliminary issue, which is properly reserved to the district judge, is whether Russell has waived any objection to the appointment of Teachers Pension Group as lead plaintiff based on Ontario Teachers stock ownership.  Russell failed to assert Ontario Teachers stock ownership as an issue in the lead plaintiff proceedings before the magistrate judge or in its objections to the Report and Recommendation which recommended appointment of Teachers Pension Group as lead plaintiff.  Thus the record clearly establishes that Russell failed to make a timely objection.  Further, it is apparent that information concerning the stock ownership was available throughout the proceedings before the magistrate judge and therefore before objections were due.  Based on these considerations, a strong argument can be made that in this lengthy, complicated case, late objections should not be permitted.  This argument is strengthened by the fact that the objection is posed by Russell, a class member who is not the next most adequate plaintiff under the PSLRA and therefore would likely not be appointed lead plaintiff even if Teachers Pension Group were disqualified.  Moreover, the late objection is posed by a class member who does not have any pending claims against the underwriter defendants.

further concludes that nothing peculiar to this case disqualifies Teachers Pension Group from serving as lead plaintiff under the PSLRA.

The parties have cited four reported cases dealing with similar issues in the PSLRA context and counsel for Teachers Pension Group has filed a declaration asserting that courts have appointed lead plaintiffs with substantial ownership interests in defendants in five ongoing cases under the PSLRA. In three of the four cases cited, courts have concluded that "huge," "major" or "significant" ownership interests in defendants do not preclude plaintiffs from serving as lead plaintiffs under the PSLRA. In the other case the court found, without providing any analysis of the PSLRA issue, that stock ownership in the defendant disqualified the presumptive lead plaintiff from serving in that capacity on claims against that defendant.[3]  Thus the weight of authority supports the appointment of Teachers Pension Group as Lead Plaintiff despite Ontario Teachers ownership of stock in the defendant underwriters.

In *In re Cendant Corporation Litigation*, 264 F.3d 201 (3rd Cir. 2001) (*Cendant II*) the Third Circuit considered whether a settlement should be set aside because the lead plaintiff continued to hold "huge amounts" of Cendant stock during settlement negotiations. *Id*. at 243. The Court upheld the settlement, reasoning that the conflict of interest argument was inconsistent with the lead plaintiff provisions in the PSLRA.

---

[3]  The one case seemingly supportive of Russell's position is *In re Cendant*, 182 F.R.D. 144 (D. N.J. 1998) (*Cendant I*). In that case the Court appointed a co-lead plaintiff to assert claims against Merrill Lynch because CalPERS, the presumptive lead plaintiff, held $300 million stock in that company. Curiously, CalPERS was permitted to serve as lead plaintiff to assert claims against Cendant, although CalPERS continued to hold "huge amounts" of Cendant stock. *In re Cendant*, 264 F.3d 201, 243 (3rd Cir. 2001)(*Cendant II*).

4

[The conflict of interest] thesis is attractive. The problem with it is that Congress seems to have rejected it when it enacted the lead plaintiff provisions of the PSLRA. The Reform Act establishes a presumption that the class member "most capable of adequately representing the interests of class members" is the shareholder with the largest financial stake in the recovery sought by the class. 15 U.S.C. § 78u-4(a)(3)(B)(I) & (iii)(I). The plaintiff with the largest stake in a given securities class action will almost invariably be a large institutional investor, and the PSLRA's legislative history expressly states that Congress anticipated and intended that such investors would serve as lead plaintiffs. *See* S. Rep. No. 104-98, at 11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 ("The Committee intends to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring the court to presume that the member of the purported class with the largest financial stake in the relief is the 'most adequate plaintiff.' "). We presume that Congress was aware that an institutional investor with enormous stakes in a company is highly unlikely to divest all of its holdings in that company, even after a securities class action is filed in which it is a class member.

By establishing a preference in favor of having such investors serve as lead plaintiffs, Congress must have thought that the situation present here does not inherently create an unacceptable conflict of interest. *See id.* ("The Committee believes that an institutional investor acting as lead plaintiff can, consistent with its fiduciary obligations, balance the interests of the class with the long-term interests of the company and its public investors."). For this reason, the simple fact that the institutional investors who comprise Lead Plaintiff retained Cendant stock while the Settlement was negotiated is not nearly enough, standing alone, to support [the] claim that Lead Plaintiff was so conflicted that the Settlement should be overturned.

*Cendant II*, 264 F.3d at 243-244. [footnotes omitted].[4]

---

[4]  The *Cendant II* Court noted that although the matter was not before it, an issue of potential intra-class conflict may present a problem between the interests of those who purchase and hold stock in the defendant firm and those who purchased and sold stock in the defendant. The Court emphasized that the conflict was not one of identification of a lead plaintiff under the PSLRA, but of class configuration under Fed.R.Civ.P. 23. *Cendant II*, 264 F.3d at 244 n.25.

(continued...)

The undersigned has also found the following language concerning certification of a large pension plan with an equity position in defendant as class representative to be insightful:

> More significant, from this court's perspective is the unequivocal policy position expressed by Congress when it passed the . . . [PSLRA] in 1995, demonstrat[ed] its intent that large institutional investors should be encouraged to serve as class representatives in securities fraud class actions. There can be no doubt that Congress understood that large institutional investors with multi-billion dollar portfolios would likely always hold equity investments in a broad spectrum of companies, some of which would likely be defendants in securities cases. As the legislative history of the PSLRA demonstrates, Congress found that "institutional investors are America's largest shareholders, with about $9.5 trillion in assets, accounting for fifty-one percent of the equity market." Even if these equity investments are not held in named defendants, in this economy with intertwined business relationships of every kind, it is easy to foresee that a large damage award against one entity might negatively impact an equity position with another. If this condition were enough to defeat certification as a class representative, large institutional investors would almost invariably be disqualified; precisely the opposite of what Congress intended in passing PSLRA.
>
> As the SEC has recently observed:
> > The standards for an adequacy challenge must be viewed in the context of the lead plaintiff provisions as a whole. . . . The largest financial interest requirement was itself designed to ensure more effective representation of investors in securities fraud class actions. Congress sought to encourage large investors, including institutions, to serve as lead plaintiffs, and

---

[4] (...continued)
Throughout Russell's submissions it is suggested that appointment of the Teachers Pension Group presents problems of class certification. The undersigned has not attempted to address those contentions. Like the *Cendant II* Court, the undersigned sees the appointment of a lead plaintiff under the PSLRA and class certification under Rule 23 as separate issues. Class certification under Rule 23 is not before the Court at this point. Appointment of lead plaintiff under the PSLRA is. It is appropriate to take up class certification issues according to the case schedule upon full briefing of those issues.

believed that institutions could and would qualify as lead plaintiffs. The Commission believes that the standards for an adequacy challenge must not be read and applied in such a manner that they would nullify the largest financial interest requirement and defeat the purposes of the lead plaintiff provisions. . . . Thus, courts have recognized that generic arguments that would systematically disqualify large investors and institutions from serving as lead plaintiff should not suffice as "proof" [of inadequacy] under the statute.

The SEC Speaks in 1999: Office of The General Counsel Recent Judicial Developments, 1104 PLI/Corp 291, 484-85 (1999) (internal citations omitted).

This court finds that defendants' argument here, that FSBA should be disqualified because of the conflict between the members of the class and its pension beneficiaries, could be an argument against certifying almost all institutional-investors. This argument amounts to a "generic argument that would systematically disqualify large investors and institutions from serving as lead plaintiff." While there may be the occasional extreme case where a conflict of this type is too great and simply dominates the landscape too completely to ignore, in light of the policy behind that [sic] PSLRA, disqualification on this basis should be the exception rather than the rule. Accordingly, the court finds that FSBA, having taken all steps toward vigorously pursuing the claims against Vesta and Torchmark, is adequately representing the interests of the absent class members. Any speculation regarding potential conflicts of interest will not defeat FSBA's certification as a class representative.

*In re Vesta Insurance Group, Inc., Securities Litigation*, 1999 US Dist Lexis 22233 *28-32 (N.D. Ala. Oct. 25, 1999)(internal citations and footnotes omitted)(rejecting argument that a conflict existed between pension fund and members of the class where proposed class representative held a significant interest in a defendant company). *See also Perelli Armstrong Tire Corporation v. Labranch & Co., Inc.*, 2004 WL 1179311 *17 (S.D.N.Y.))(citing *Cendant II* and concluding that in enacting the PSLRA lead plaintiff

7

provisions which anticipate and intend that large institutional investors will serve as lead plaintiff, Congress rejected the thesis that ownership of stock in a defendant creates an inherent and unacceptable conflict of interest).

In contrast to the reasoned analysis provided in the above-cited cases, in *In re Cendant*, 182 F.R.D. 144 (D. N.J. 1998) (*Cendant I*), which Russell asserts requires disqualification of the Teachers Pension Group [Dkt. 637, p. 4], the Court compared the presumptive lead plaintiff's $300 million investment holdings in the Defendant to its alleged loss of $6.4 million and, without providing any analysis of the PSLRA, stated that "[t]he Court simply does not believe nor find that the [presumptive lead plaintiff] can overcome this substantial conflict of interest and fully protect the [class] interests." *Id.* at 149. The undersigned is not persuaded that merely making a comparison between the stock holdings and losses is particularly instructive.

An investment of $300 million is undoubtedly substantial. However, to put the $300 million in context, that figure should be compared to Ontario Teachers' net assets of $80 billion (CND). According to the currency converter found at the Bank of Canada web site, http://www.bank-banque-canada.ca/en/exchform.htm, as of noon December 29, 2004, $1 Canadian equaled $.82 US. At that rate, $80 billion (CND) is approximately $65.6 billion US. So, in American dollars, $300 million constitutes roughly .457% of Ontario Teachers entire net assets.

There are myriad factors which may affect Ontario Teachers holdings in the underwriter defendants. Nothing has been presented to demonstrate or predict the potential outcome of this litigation on those holdings. Further, nothing has been presented

8

to suggest that this lawsuit places the entirety of Ontario Teachers holdings in the underwriter defendants at risk, so the potential effect this lawsuit will have on Ontario Teachers net assets is likely far smaller than the .457% of its net assets represented by its holdings in the underwriter defendants. Under these circumstances, it is conjecture that decisions made in this case will be driven by Ontario Teachers' consideration of the uncertain effect decisions made in this case may have on its holdings in the underwriter defendants. In sum, the undersigned finds that the connection between Ontario Teachers decision making as lead plaintiff in this case and the effect those decisions may have on its holdings in the underwriter defendants is just too far attenuated to constitute the necessary proof that Ontario Teachers will fail to fairly and adequately protect the interests of the class.

In addition to the foregoing, the undersigned is persuaded that the alleged conflict of interest does not disqualify Ontario Teachers from serving as lead plaintiff. Ontario Teachers purchased its WMB shares on the open market, as apparently did Russell. It is named plaintiffs Local 710 and Gary Kossoff who have standing to assert claims against the underwriters. Notably, neither Local 710 nor Gary Kossoff have asserted any objection to the appointment of the Teachers Pension Group as Lead Plaintiff, in fact both have endorsed the appointment. [Dkt. 623, 626]. Further none of the other parties who sought to be named as lead plaintiff, and who have losses far greater than that alleged by Russell,[5] and would therefore be next in line for appointment as lead plaintiff, have expressed any objection to the appointment of Ontario Teachers or Teachers Pension

---

[5] Williams' Institutional Investors Groups has a loss of $7.59 million and Pace Coalition has a loss of $5.0 million, compared to Russell's loss of $2.0 million.

Group as Lead Plaintiff. In addition, Ontario Teachers has filed a declaration pledging to "vigorously pursue" claims against the underwriter defendants to achieve the best possible result for all investors in the WMB Subclass. [Dkt. 638; Ex. A, ¶ 3]. And, finally, as Lead Plaintiff the Teachers Pension Group will be acting under the watchful eyes of the other Plaintiffs and the Court.

Having fully considered the matter, the undersigned finds that the objections raised in Russell's Supplemental Reply Brief [Dkt. 636] provide no basis for changing the Report and Recommendation filed November 17, 2004, [Dkt. 616]. A substantial investment in a defendant does not automatically rebut the lead plaintiff presumption of the PSLRA. As phrased in *Vesta*, the issue is whether the case before the Court is "the occasional extreme case where a conflict of this type is too great and simply dominates the landscape too completely to ignore." *Vesta*, 1999 U.S. Dist. Lexis 22233 * 31. The undersigned finds Russell has failed to prove that this is such a case. Russell has presented only conjecture, not proof, that the Ontario Teachers and the Teachers Pension Group will not fairly and adequately protect the interests of the class. Therefore the presumption that Teachers Pension Group is the most adequate plaintiff under the PSLRA has not been rebutted.

The undersigned also rejects Russell's contention that counsel have failed in their duty of candor to the Court. The Court did not request this information from applicants seeking to serve as lead plaintiff and there has been no citation to any rule or other authority suggesting that Ontario Teachers had any duty to disclose its stock holdings to the Court. Moreover, the information was publicly available.

The undersigned hereby RE-ADOPTS the Report and Recommendation filed November 17, 2004 [Dkt. 616] and RECOMMENDS that the Motion of the Ontario

10

Teachers' Pension Plan Board and the Arkansas Teacher Retirement System to Serve as Lead Plaintiffs for the WMB Subclass and For Approval of Their Selection of Counsel [Dkt. 592] be GRANTED.

In accordance with 28 U.S.C. §636(b) and Fed. R. Civ. P. 72(b), a party may file specific written objections to this report and recommendation. The Court's Order of December 16, 2004 [Dkt. 634], directed that objections to this report and recommendation are be filed on an expedited basis. **In accordance with the Court's Order, specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma on or before January 6, 2005. Teachers Pension Group may also file a final brief on the issue by January 6, 2005. No further briefing will be permitted.**

If specific written objections are timely filed, Fed.R.Civ.P. 72(b) directs the district judge to:

> make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Fed.R.Civ.P. 72(b); see also 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Moore v. United States, 950 F.2d

11

656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for de novo review by the district court or for appellate review.

DATED this _29th_ day of December, 2004.

*Frank H. McCarthy*
Frank H. McCarthy
United States Magistrate Judge

CERTIFICATE OF SERVICE
The undersigned certifies that a true copy
of the foregoing pleading was served on each
of the parties hereto by mailing the same to
them or to their attorneys of record on the
30 Day of December, 2004