**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JACKSONVILLE POLICE AND FIRE PENSION FUND, on behalf of himself and all others similarly situated, | ) ) ) ) **CIVIL ACTION NO. 08-CV-4772-LTS** ) **ECF Case** |
| Plaintiff, | ) |
| v. | ) |
| AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO, and ROBERT LEWIS, | ) |
| Defendants. | ) |
| JAMES CONNOLLY, Individually and On Behalf of All Others Similarly Situated, | ) **CIVIL ACTION NO. 08-CV-5072-LTS** |
| Plaintiff, | ) |
| v. | ) |
| AMERICAN INTERNATIONAL GROUP, MARTIN J. SULLIVAN, STEVEN J. BENSINGER, JOSEPH J. CASSANO, ROBERT E. LEWIS, and DAVID L. HERZOG, | ) |
| Defendants. | ) |

(Captions continued on subsequent page)

**ONTARIO TEACHERS' PENSION PLAN BOARD'S AND PGGM'S OPPOSITION MEMORANDUM OF LAW IN RESPONSE TO THE FOGEL GROUP'S MOTION TO STRIKE OR IN THE ALTERNATIVE FOR LEAVE TO FILE A SUR-REPLY**

| | | |
|---|---|---|
| MAINE PUBLIC EMPLOYEES RETIREMENT SYSTEM, on behalf of itself and all others similarly situated, | ) ) ) ) | **CIVIL ACTION NO. 08-CV-5464-LTS** |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO, and ROBERT LEWIS, | ) ) ) ) ) | |
| Defendants. | ) ) | |
| ONTARIO TEACHERS' PENSION PLAN BOARD, on behalf of itself and all others similarly situated, | ) ) ) ) | **CIVIL ACTION NO. 08-CV-5560-LTS** |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, JOSEPH CASSANO, and ROBERT LEWIS, | ) ) ) ) ) | |
| Defendants. | ) | |

| | |
|---|---|
| MARGARET CARROLL, On Behalf Of Herself And All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN INTERNATIONAL GROUP, INC., CITIGROUP GLOBAL MARKETS INC., MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED (no known as MERRILL LYNCH & CO., INC.), MORGAN STANLEY & CO. INCORPORATED, UBS SECURITIES LLC, WACHOVIA CAPITAL MARKETS, LLC, BANC OF AMERICA SECURITIES LLC, BEAR, STEARNS & CO., INC., THE BEAR STEARNS COMPANIES LLC, RBC CAPITAL MARKETS, WELLS FARGO SECURITIES, MARTIN J. SULLIVAN, STEVEN BENSINGER, MARSHALL A COHEN, MARTIN S. FELDSTEIN, ELLEN V. FUTTER, STEPHEN L. HAMMERMAN, RICHARD C. HOLBROOKE, FRED H. LANGHAMMER, GEORGE L. MILES, JR., MORRIS W. OFFIT, JAMES F. ORR III, VIRGINIA M. ROMETTY, MICHAEL H. SUTTON, EDMUND S.W. TSE, ROBERT W. WILLUMSTAD, FRANK G. ZARB, and DAVID L. HERZOG,<br><br>Defendants, | **CIVIL ACTION NO. 08-CV-8659-LTS** |

| | |
|---|---|
| HARRIET BERNSTEIN and JANET LEVINE COTTER, On Behalf Of Themselves And All Others Similarly Situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>AMERICAN INTERNATIONAL GROUP, INC., CITIGROUP GLOBAL MARKETS INC., MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED (no known as MERRILL LYNCH & CO., INC.), MORGAN STANLEY & CO. INCORPORATED, UBS SECURITIES LLC, WACHOVIA CAPITAL MARKETS, LLC, BANC OF AMERICA SECURITIES LLC, BEAR, STEARNS & CO., INC., THE BEAR STEARNS COMPANIES LLC, RBC CAPITAL MARKETS, WELLS FARGO SECURITIES, MARTIN J. SULLIVAN, STEVEN BENSINGER, MARSHALL A COHEN, MARTIN S. FELDSTEIN, ELLEN V. FUTTER, STEPHEN L. HAMMERMAN, RICHARD C. HOLBROOKE, FRED H. LANGHAMMER, GEORGE L. MILES, JR., MORRIS W. OFFIT, JAMES F. ORR III, VIRGINIA M. ROMETTY, MICHAEL H. SUTTON, EDMUND S.W. TSE, ROBERT W. WILLUMSTAD, FRANK G. ZARB, and DAVID L. HERZOG,<br><br>          Defendants. | **CIVIL ACTION NO. 08-CV-9162-LTS** |

| | |
|---|---|
| FIRE AND POLICE PENSION ASSOCIATION OF COLORADO, and M. CLAY RAGSDALE, IV on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN INTERNATIONAL GROUP, INC., MARTIN SULLIVAN, STEVEN BENSINGER, DAVID L. HERZOG, STEPHEN F. BOLLENBACH, PEI-YUAN CHIA, MARSHALL A. COHEN, MARTIN S. FELDSTEIN, ELLEN V. FUTTER, STEPHEN L. HAMMERMAN, RICHARD C. HOLBROOKE, FRED H. LANGHAMMER, GEORGE L. MILES, JR., MORRIS W. OFFIT, JAMES F. ORR III, VIRGINIA M. ROMETTY, MICHAEL H. SUTTON, S.W. TSE, ROBERT B. WILLUMSTAD, FRANK G. ZARB, A.G. EDWARDS & SONS, INC. ANZ SECURITIES, B.C. ZIEGLER & CO., BANC OF AMERICA SECURITIES LLC, BARCLAYS CAPITAL, BB&T CAPITAL MARKETS, JPMORGAN CHASE & CO., BLAYLOCK & CO., INC., BMO CAPITAL MARKETS, BOSC, INC., C.L. KING & ASSOCIATES, INC., CHARLES SCHWAB & CO., CITIGROUP GLOBAL MARKETS INC., CITY SECURITIES CORPORATION, CREDIT SUISSE SECURITIES (USA) LLC, CROWELL WEEDON & CO., D.A. DAVIDSON & CO., DAIWA SECURITIES AMERICA INC., DAIWA SECURITIES SMBC EUROPE LTD., DAVENPORT & COMPANY LLC, DEUTSCHE BANK SECURITIES INC., DOLEY SECURITIES, DOWLING & PARTNERS SECURITIES, LLC, FERRIS, BAKER WATTS, INCORPORATED, FIDELITY CAPITAL MARKETS, FIXED INCOME SECURITIES, LP, FOX-PITT KELTON COCHRAN CARONIA WALLER (USA) LLC, GOLDMAN SACHS & CO., GREENWICH CAPITAL MARKETS, INC., GUZMAN & COMPANY, H&R BLOCK FINANCIAL ADVISORS, INC., HSBC SECURITIES (USA) INC., J.J.B. HILLIARD, W.L. LYONS, INC., J.P. MORGAN SECURITIES INC., JANNEY | **CIVIL ACTION NO. 08-CV-10586-LTS** |

| | |
|---|---|
| GUZMAN & COMPANY, H&R BLOCK FINANCIAL ADVISORS, INC., HSBC SECURITIES (USA) INC., J.J.B. HILLIARD, W.L. LYONS, INC., J.P. MORGAN SECURITIES INC., JANNEY MONTGOMERY SCOTT LLC, JEFFERIES & COMPANY, INC., KEEFE, BRUYETTE & WOODS, INC., KEYBANC CAPITAL MARKETS INC., LOOP CAPITAL MARKETS, LLC, MAXIM GROUP, LLC, MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, MESIROW FINANCIAL, INC., MITSUBISHI UFJ SECURITIES INTERNATIONAL PLC, MIZUHO SECURITIES USA INC., MORGAN KEEGAN & COMPANY, INC., MORGAN STANLEY & CO. INCORPORATED, MURIEL SIEBERT & CO., INC., NATIONAL AUSTRALIA CAPITAL MARKETS, LLC, OPPENHEIMER & CO., PERSHING LLC, PIPER JAFFRAY & CO., RAYMOND JAMES & ASSOCIATES, INC., RBC DAIN RAUSCHER, ROBERT W. BAIRD & CO., RYAN BECK & CO., SAMUEL A. RAMIREZ & CO., INC., SCOTIA CAPITAL (USA) INC., SG AMERICAS SECURITIES LLC, STIFEL, NICOLAUS & COMPANY, INCORPORATED, STONE & YOUNGBERG LLC, SUNTRUST CAPITAL MARKETS, INC., TD AMERITRADE, INC., THE WILLIAMS CAPITAL GROUP, L.P., TOUSSAINT CAPITAL PARTNERS, LLC, UBS SECURITIES LLC, UTENDAHL CAPITAL GROUP, LLC, UTENDAHL CAPITAL PARTNERS, L.P., VINING-SPARKS IBG, L.P., WACHOVIA CAPITAL MARKETS LLC, WEDBUSH MORGAN SECURITIES INC., WELLS FARGO SECURITIES, LLC, WILLIAM BLAIR & COMPANY, L.L.C., and PRICEWATERHOUSECOOPERS LLP, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) ) ) |

Ontario Teachers' Pension Plan Board ("OTPP") and Stichting Pensioenfonds Zorg en Welzijn, duly represented by PGGM Vermogensbeheer B.V. ("PGGM," and together with OTPP, "OTPP/PGGM"), respectfully submit this opposition memorandum of law in response to the motion filed by the Fogel Group—a niche lead plaintiff movant that seeks to represent a discrete subset of investors in American International Group, Inc. ("AIG")—to strike the reply brief submitted by OTPP/PGGM on January 23, 2009.

## PRELIMINARY STATEMENT

Five timely motions seeking lead plaintiff appointment in the AIG securities class actions were filed on July 21, 2008 pursuant to a notice alerting investors in ***all*** AIG "securities" of the statutory deadline mandated by the Private Securities Litigation Reform Act ("PSLRA"). Over four months later, the Fogel Group filed a motion seeking lead plaintiff appointment on behalf of a subset of investors who purchased one unique AIG security. Thereafter, the Fogel Group filed a memorandum of law in opposition to OTPP/PGGM's lead plaintiff motion. In accordance with the rules of this Court, OTPP/PGGM filed a reply memorandum of law addressing the arguments set forth in that opposition brief.

Now, over six weeks later and just days before the preliminary conference addressing the competing lead plaintiff motions—which was scheduled by Order dated Feb. 3, 2009—the Fogel Group seeks to strike OTPP/PGGM's properly-filed reply brief. OTPP/PGGM's submission of their reply brief was entirely consistent with the Local Rules of this District and the Fogel Group fails to articulate any prejudice it could possibly suffer from the purported procedural irregularities it claims to identify here. Further, the Fogel Group's proposed "sur-reply" is based on unfounded legal arguments, inaccurate citation to judicial opinions, and a proferred expert

report that is founded on inexplicable factual inaccuracies.  OTPP/PGGM respectfully submit that the Fogel Group's gratuitous eleventh-hour request be rejected out of hand.

## ARGUMENT

### I.     OTPP/PGGM'S REPLY BRIEF WAS PROPER

On December 9, 2008, the Fogel Group filed a motion seeking lead plaintiff status on behalf of a subset of AIG investors who purchased the 7.70% Series A-5 Junior Subordinated Debentures due 12/18/2062 (the "Series A-5 Debentures")—one specific AIG security among the hundreds issued during the period of wrongdoing alleged in the complaints on file in this action and one specifically named and purchased by the plaintiffs in *Colorado Police and Fire Pension Fund v. American International Group, Inc.*, 08-cv-10586-LTS (S.D.N.Y. filed Dec. 4, 2008), who support the lead plaintiff application of OTPP/PGGM here.

On December 29, 2008, OTPP/PGGM filed an opposition memorandum of law on both dockets that the Fogel Group had filed its purported lead plaintiff motion—*Carroll v. American International Group, Inc.*, 08-cv-8659-LTS ("*Carroll*") (Dkt. #20) and *Bernstein v. American International Group, Inc.*, 08-cv-9162-LTS ("*Bernstein*") (Dkt. #12)—arguing, among other things, that its motion was untimely and otherwise improper.  Subsequently, on January 12, 2009, the Fogel Group filed a 20-page brief styled as a "Memorandum of Law in Opposition to the Motion to Appoint Ontario Teachers' Pension Plan Board and PGGM to serve as lead plaintiff(s)" on the docket in *Jacksonville Police and Fire Pension Fund v. American International Group, Inc.*, 08-cv-4772-LTS ("*Jacksonville*")—its first submission of any kind on the *Jacksonville* docket.  *See Jacksonville*, Dkt. #58.  Because the Fogel Group's January 12, 2009 submission was an answering brief that opposed OTPP/PGGM's July 21, 2008 lead

2

plaintiff motion,[1] OTPP/PGGM was entitled to file a reply brief in response. *See* Local Rule 6.1(b)(3) ("any reply affidavits and memoranda of law shall be served within five business days after service of the answering papers.").[2]

Because the Fogel Group filed its opposition to OTPP/PGGM's motion on the *Jacksonville* docket, Dkt. #60, OTPP/PGGM likewise filed its reply to this opposition memorandum on that same *Jacksonville* docket. *See Jacksonville* Dkts. # 67, 68. The Fogel Group's suggestion that doing so was somehow an attempt at "obfuscation" is nothing short of remarkable. Whatever the reason, the failure of the Fogel Group to receive notice of OTPP/PGGM's January 23, 2009 filing cannot be blamed on the fact that OTPP/PGGM submitted its reply brief on the very same low-numbered docket on which the papers to which it responded had been filed. And of course, after having electronically submitted documents on the

---

[1] The Fogel Group opposed OTPP/PGGM's July 21, 2008 motion for lead plaintiff appointment "to the extent [OTPP and PGGM] seek to be lead in the *Carroll* and *Bernstein* actions." Memorandum of Law in Opposition to the Motion to Appoint Ontario Teachers' Pension Plan Board and PGGM to serve as lead plaintiff(s), at 1 (*Jacksonville* Dkt. #60).

[2] The fact that the Fogel Group's 20-page January 12, 2009 submission was an "answering memorandum" as defined under Local Rule 6.1(b)(2), (3) such that OTPP/PGGM were entitled to submit a reply brief in response is further confirmed by reference to the Individual Practice Rules of the Honorable Loretta A. Preska, who was then presiding over the related AIG actions. Under Judge Preska's Individual Practice Rules, "[u]nless prior permission has been granted, memoranda of law in support of and in opposition to motions are limited to 20 pages, and reply memoranda are limited to 10 pages." *See* Rule 2(C), Individual Practice Rule of Judge Loretta A. Preska, attached hereto as Ex. A to the Declaration of Gerald H. Silk ("Silk Decl."). As the Fogel Group neither sought nor received permission to extend the 10-page limit for reply submissions, its 20-page January 12, 2009 brief was clearly intended as a memorandum in opposition.

*Jacksonville* docket opposing OTPP/PGGM's motion, the Fogel Group's counsel were under a duty to "review regularly the docket sheet of that case."[3]

More significantly, while the Fogel Group admits that it actually reviewed OTPP/PGGM's January 23, 2008 submission by no later than February 3, 2009, it does not hint at how it possibly could have been prejudiced by any delay in receiving notice of the filing and offers no reason for waiting until now—well over a month later and only days before the lead plaintiff hearing addressing these motions—to raise any objection.[4] Similar to the Fogel Group's belated filing of a lead plaintiff motion that seeks to divide the claims of the class and carve out a separate litigation for itself and its counsel, OTPP/PGGM respectfully submit that the Court should reject such gamesmanship and deny this tardy request as well.

## II.   THE COURT SHOULD REJECT THE FOGEL GROUP'S PROPOSED SUR-REPLY

Although the Court need not even consider the Fogel Grop's late-filed papers, OTPP/PGGM feel constrained to briefly respond to two new arguments raised in the proposed sur-reply and supplemental authority.

*First*, the Fogel Group invokes the recent decision in the Fannie Mae securities class action to support its claim that a separate action and leadership structure is necessary to represent the interests of investors in each specific AIG security. *See Genovese v. Ashley*, 08-cv-7831(GEL) (S.D.N.Y.) ("*Fannie Mae*"). The Fogel Group claims that this decision justifies a

---

[3] *See, e.g.*, Electronic Case Filing Rules & Instructions, Part I, §§ 9, 10 ("*It remains the duty of the attorney for a party to review regularly the docket sheet of the case.*") (emphasis in original), attached as Ex. B to the Silk Decl.

[4] *See, e.g., Minitti v. Speiser, Krause, Nolan & Granito, P.C.,* No. 04 Civ. 7976(DC), 2006 WL 3740847, at *11 n.6 (S.D.N.Y. Dec. 19, 2006) (denying motion to strike belatedly-filed reply, noting that party seeking to strike did "not claim any prejudice as a result of the delay, and it is unclear why any would result from the late filing of reply papers to which [he] had no right of rejoinder.").

4

radical departure from the well-established precedent in this Circuit in *Hevesi v. Citigroup Inc.*, 366 F.3d 70 (2d Cir. 2004), consistently followed by this Court and those around the country that have held that one lead plaintiff should be appointed to represent the claims of the entire class.[5] Not so.  *Fannie Mae* is distinguishable on numerous grounds.

While the decision in *Fannie Mae* may—in the Fogel Group's rendition—appear contrary to the weight of authority holding that one lead plaintiff should be appointed to represent all investors, a closer examination reveals that the facts of that case are *sui generis* and in no way dictate the result required here.  In *Fannie Mae*, the lead plaintiff movant with the largest financial interest was an institution that had suffered most of its losses on investment in a certain class of preferred shares.  Holders of those preferred shares were contractually entitled to a $25 per share "liquidation preference"—meaning that, in the event of a liquidation of Fannie Mae, those preferred shareholders were entitled to receive at least $25 per share before common shareholders received any payment.  Another institutional lead plaintiff movant with sizeable losses on Fannie Mae common shares argued that the liquidation preference available to preferred investors rendered them incapable of fairly representing the interests of all Fannie Mae investors.  The Declaration of Professor Bruce A. Green was submitted in support of this argument.  *See* Declaration of Professor Bruce A. Green, attached as Ex. B to the Notice of Supplemental Authority, *Carroll* Dkt. #34 (the "Green Declaration").

---

[5] *See, e.g., LHB Ins. Brokerage Inc. v. Citigroup Inc.*, No. 08 Civ. 3095(LTS)(FM), 2008 U.S. Dist. LEXIS 105554, at *8 (S.D.N.Y. June 25, 2008) (Swain, J.) (denying motion by niche movant seeking lead plaintiff status on behalf of investors with claims arising under the Investment Adviser Act of 1940 in favor of the movant with the largest financial interest under the PSLRA); *Albert Fadum Trust v. Citigroup Inc.*, 239 F. Supp. 2d 344, 348 (S.D.N.Y. 2002) (Swain, J.) (denying motion of niche movant seeking appointment as co-lead plaintiff in favor of plaintiff with largest financial interest).

The decision in *Fannie Mae* (which was read into the record by the Honorable Gerard E. Lynch), as well as the Green Declaration upon which that decision relied, make clear that *Fannie Mae* presented a unique situation because of 1) the liquidation preference available to preferred shareholders, 2) the fact that Fannie Mae was subject to potential receivership in which all assets were required to be liquidated, and because 3) at that time, there were insufficient funds to satisfy the liquidiation preference.  *See* Green Declaration.  No such facts are present in this case.

Unlike in Fannie Mae, purchasers of the Series A-5 Debentures such as the Fogel Group ***have no similar right to a liquidation preference*** and are ***not guaranteed any similar payment upon liquidation***.  According to the relevant offering documents:

> Our obligations under the Series A-5 Junior Subordinated Debentures are unsecured and rank junior in right of payment to all of our existing and future senior debt…. This means that, unless all senior debt is repaid in full, we cannot make any payments on the Series A-5 Junior Subordinated Debentures if our unsecured indebtedness for borrowed money with a principal amount in excess of $100 million is accelerated, in the event of our bankruptcy, insolvency or liquidation or in the event of the acceleration of the Series A-5 Junior Subordinated Debentures.

*See* American International Group, Inc. (Form 424b2), at S-7 (Dec. 10, 2007) attached hereto as Ex. C to the Silk Decl.  Indeed, "***[i]n the event of our bankruptcy, insolvency or reorganization, junior subordinated debentures holders' claims would fall under the broad equity power of a federal bankruptcy court,*** and to that court's determination of the nature of those holders' rights."  *Id.* at 56.

***Thus, there are no comparable liquidation remedies provided to owners of these shares.***  Beyond the fact that AIG is not currently subject to liquidiation (as is Fannie Mae), the Series A-5 Debenture purchasers simply do not possess the unique liquidation preference that justified separate representation for the common shareholders in that case.

6

Further, assuming, for the sake of argument, that the Series A-5 Debenture purchasers possessed such a similar liquidation preference (which they do not), a careful reading of the hearing transcript confirms that the potential conflict that Judge Lynch believed required separate representation for the two sets of security purchasers *only existed because it was a preferred shareholder, and not a common stock purchaser, that claimed the largest financial interest*. As Professor Green makes clear in his declaration, the conflict presented in Fannie Mae arose out of and was unique to the special liquidation preference to which the preferred shareholders were entitled, and that common stock purchasers simply did not suffer from such a disability. In other words, Judge Lynch held that *while the preferred shareholders were unable to represent a class that consists of common shareholders under the unique facts of that case, the reverse was not also true*, as common shareholders' interest in pursuing the best possible recovery through the class action would not be hindered by the conflict created by the liquidation preference.

Unfortunately, Judge Lynch's clear holding in this regard was not evident from the selective quotation contained in the Fogel Group's motion. Quoted in full, Judge Lynch stated:

> I do not think it's possible for a lead plaintiff that has primarily suffered losses on preferred stock to fairly represent the interest of common shareholders largely for the reasons thoughtfully laid out in Professor Green's declaration. *Now, the reverse may not be true.* It may be possible to have a single lead plaintiff with primarily losses in common stock, but I'm inclined to think that it would be helpful *in the circumstances of this case* to have separate lead plaintiffs to represent the interests of common and preferred shareholders.

Fannie Mae Feb. 19, 2009 Hr'g Tr., at 9, attached as Ex. A to the Notice of Supplemental Authority, *Carroll* Dkt. #34 (emphasis added).

Here, OTPP/PGGM suffered over $156 million in losses on their investment in AIG common shares and thus suffer from no similar impediment from representing the interests of all AIG investors, including the Series A-5 Debenture purchasers, despite any potential conflict that

7

would preclude the Series A-5 Debenture purchasers from representing the interests of common stock purchasers.[6]  Last, and perhaps most significantly, there was no argument in *Fannie Mae* that the motions filed by the investors who sought co-lead plaintiff status were untimely, whereas the Fogel Group's lead plaintiff application here was filed over four months after the statutory PSLRA deadline had passed.

*Second*, the Fogel Group proffers the expert declaration of Professor Geoffrey C. Hazard, Jr., who also cites Judge Lynch's opinion in *Fannie Mae* and largely rehashes the same arguments made in other briefs submitted by the Fogel Group to claim that the characteristics of the Series A-5 Debentures require the Court to appoint a separate lead plaintiff and lead counsel. Professor Hazard's single contribution to the briefing of the niche motions appears to be his claim that the Second Circuit's decision in *Hevesi* is distinguishable from the present case because the "defendant there was not insolvent."  *See* Declaration of Professor Geoffrey C. Hazard, Jr., at ¶15, attached as Ex. A to the D'Agnenica Decl., *Carroll* Dkt. #38.  Of course, this is not correct.

---

[6]  For similar reasons, the Fogel Group's rendering of PGGM's counsel's position in *Harold Zirkin v. Quanta Capital Holdings, Ltd., et al.*, No. 1-07-cv-00851 (RPP) (S.D.N.Y.) is inapposite.  As in Fannie Mae, the Quanta preferred shareholders were entitled to a liquidation preference which guaranteed payment of $25 per share upon the company's liquidation.  As in *Fannie Mae*, and unlike the case with AIG, at the time of the lead plaintiff motions, Quanta had already announced it was winding down its business.  *See* Memorandum of Law in Further Support of the Motion of Washington State Plumbing and Pipefitting Pension Trust, at 5-6, attached as Ex. C to the Declaration of Jason D'Agnenica ("D'Agnenica Decl."), *Carroll* Dkt. #38.  Thus, whatever relevance counsel's position taken on behalf of a different client in unrelated litigation might have in this case (as opposed to the contrary position taken by the primary member of the Fogel Group itself in *Fannie Mae*), it is not inconsistent with the position taken by PGGM here.

The *Hevesi* decision arose out of the securities class action against WorldCom, which had already declared bankruptcy at the time lead plaintiff motions were decided.[7]  In the *Worldcom* litigation, the New York State Common Retirement Fund ("NYSCRF"), which had asserted a financial interest primarily based on losses in common stock, was appointed as lead plaintiff over the entire class, including debt and equity security purchasers.  Passing on the very arguments the Fogel Group persists in advancing here, the Second Circuit squarely held that "any requirement that a different lead plaintiff be appointed to bring every single available claim would contravene the main purpose of having a lead plaintiff—namely, to empower one or several investors with a major stake in the litigation to exercise control over the litigation *as a whole*."  *Id.* at 83 n.13 (emphasis added).  The wisdom of the Second Circuit's holding is plain when one considers that the $6 billion recovery in the Worldcom litigation—the majority of which was allocated to debt security purchasers—stands as one of the top three settlements in securities class action history.[8]

In accordance with the Second Circuit's decision in *Hevesi*, courts in this District have consistently rejected the same arguments put forth by the Fogel Group here and appointed institutional investors to lead consolidated securities class actions arising from the wrongdoing at

---

[7] "Worldcom sought Chapter 11 protection in the Southern District of New York on July 21, 2002," *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 74 n.1 (2d Cir. 2004), and the lead plaintiff was not appointed until a month later, on August 15, 2002.  *See Albert Fadem Trust v. Worldcom, Inc.*, 02-cv-3288(DLC), 2002 U.S. Dist. LEXIS 15005, *6 (Aug. 15, 2002) (appointing NYSCRF as lead plaintiff).

[8] Similar "niche" arguments were also readily rejected by the court in the Enron litigation, in which a lead plaintiff movant whose financial interest arose out of losses in common stock recovered over $7 billion on behalf of the class, the majority of which was allocated to Enron debt and preferred security purchasers.  *See In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 451 (S.D. Tex. 2002) ("[R]equests for splintering the action or appointing multiple Lead Plaintiffs to represent specialized interests, especially in light of the common facts and legal issues here, would undermine the purpose of the PSLRA. Therefore the Court denies the motions of the 'Niche Plaintiffs' and addresses the remaining applications.").

9

the center of the current economic crisis—including those against Lehman Brothers, Citigroup, Merrill Lynch, Wachovia and others.  OTPP/PGGM respectfully that the Court should do likewise here and entrust the important claims asserted in the AIG action to sophisticated insitutional lead plaintiffs who are committed to pursuing the interests of all class members.

## CONCLUSION

Accordingly, for the reasons set forth above, and those in prior submissions to the Court, OTPP/PGGM respectfully request that the Court (1) deny the motion of the Fogel Group to strike OTPP/PGGM's January 23, 2009 reply memorandum of law; (2) decline the Fogel Group permission to file a sur-reply; (3) appoint OTPP/PGGM as Lead Plaintiff pursuant to the PSLRA and (4) grant such other and further relief that the Court may deem just and proper.

Dated:  March 12, 2009                           Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER &  
   GROSSMANN LLP**

/s/ Gerald H. Silk  
Gerald H. Silk (GS-4565)  
Noam Mandel (NM-0203)  
1285 Avenue of the Americas, 38th Floor  
New York, NY 10019  
(212) 554-1400  
(212) 554-1444 (fax)  
jery@blbglaw.com  
noam@blbglaw.com

*Counsel for Ontario Teachers' Pension Plan Board and Proposed Lead Counsel for the Class*

**BARROWAY TOPAZ KESSLER MELTZER &  
   CHECK, LLP**

Sean M. Handler  
Darren J. Check  
Naumon A. Amjed  
280 King of Prussia Road  
Radnor, PA 19087

10

(610) 667-7706
(610) 667-7056 (fax)

*Counsel for Stichting Pensioenfonds Zorg en Welzijn, duly represented by PGGM Vermogensbeheer B.V., and Proposed Lead Counsel for the Class*