# EXHIBIT 6

1

63VGFEDC                    ARGUMENT

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  THE OHIO PUBLIC EMPLOYEES
   RETIREMENT SYSTEM, et al.,
4
                    Plaintiffs,
5
            v.                              03 CV 4261 (JES)
6
   FEDERAL HOME LOAN MORTGAGE
7  CORPORATION, et al.,

8                   Defendants.

9  ------------------------------x
                                        New York, N.Y.
10                                      March 31, 2006
                                        3:45 p.m.
11
   Before:
12
                    HON. JOHN E. SPRIZZO,
13
                                        District Judge
14
                        APPEARANCES
15
   BERSTEIN, LITOWITZ, BERGER & GROSSMANN, LLP
16      Attorneys for Plaintiffs The Ohio Public Employees
        Retirement System and State Teachers Retirement System
17      of Ohio
   BY:  DANIEL LAWRENCE BERGER
18      -and-
   WAIDE, SCHNEIDER, BAYLESS & CHESLEY CO., L.P.A.
19 BY:  STANLEY M. CHESLEY
        JAMES R. CUMMINS
20      MELANIE S. CORWIN

21 COVINGTON & BURLING
        Attorneys for Defendant Federal Home Loan Mortgage
22 Corporation
   BY:  C. WILLIAM PHILLIPS
23      NANCY KESTENBAUM

24 PROSKAUER ROSE, LLP
        Attorneys for Defendant Leland C. Brendsel
25 BY:  KENNETH EARL ALDOUS, JR.

2

63VGFEDC                          ARGUMENT

1                          APPEARANCES (CONT.'D)

2    GIBSON, DUNN & CRUTCHER, LLP
          Attorneys for Defendant Gregory Parseghian
3    BY:   JOSHUA D. HESS

4    FRIED, FRANK, HARRIS, SHRIVER & JACOBSON
          Attorneys for Defendant David Glenn
5    BY:   ALEXANDER R. SUSSMAN

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

63VGFEDC                    ARGUMENT

1              (Case called)

2              (In open court)

3              MR. BERGER:  Good afternoon, your Honor.  We are

4    colead counsel for lead plaintiffs, Public Employees Retirement

5    System of Ohio and the State Teachers Retirement System of

6    Ohio.

7              The parties in this case have been -- it's been

8    sometime since we've seen your Honor, but we have engaged in

9    massive discovery.  Over 74 depositions have been taken, and 7

10   million pages of documents have been produced and reviewed.

11   And depositions are going on on a continuous basis, and

12   Mr. Chesley will fill you in on the status of the case, if your

13   Honor wants, after the argument

14             THE COURT:  Both merits and class action discovery?

15             MR. BERGER:  Yeah, everything, your Honor, yes.

16             So we're here seeking certification of the class and

17   the appointment of class plaintiffs and colead counsel for the

18   class.  We urge in our papers, and certainly in our amended

19   complaint, your Honor, a class period of July 15, 1999.  That's

20   when Freddie Mac issued its second quarter '99 results through

21   June 6, 2003.

22             June 6th, to put it in context, your Honor, is the

23   last trading day before Freddie Mac announced on June 9th

24   before the opening that it had fired its entire senior

25   management, including --

4

63VGFEDC                    ARGUMENT

1        THE COURT:  Maybe I should hear from them first since

2   they're objecting.

3        MR. BERGER:  That would be fine.  That would be fine,

4   your Honor.  I think --

5        THE COURT:  You can respond to what they say.  Class

6   action motions are kind of odd, because basically it's the --

7   it's their objection --

8        MR. BERGER:  Yeah.  It's just to put -- if I can have

9   30 seconds just to put it in context, your Honor.  Clearly,

10  your Honor has sustained the amended complaint.  We're just

11  urging a class period that is in the amended complaint.

12       The defendants are in two counts.  There's the

13  individual defendants.  There's Freddie Mac.  And it's the odd

14  case -- I've actually never encountered it before -- where the

15  defendants are arguing for two different class periods, one

16  shorter, one longer.  So I suppose, you know, the story of

17  Goldie Locks --

18       THE COURT:  But I don't have the power to make that

19  judgment without getting into the merits.

20       MR. BERGER:  I'm sorry, your Honor?

21       THE COURT:  What I'm really saying is that the Court

22  can't make that decision as a matter of law because some of

23  these issues are intertwined with the merits.

24       MR. BERGER:  Yeah.  I think that will certainly -- we

25  would say the same thing, your Honor.  We would say basically

5

63VGFEDC                    ARGUMENT

1    that the class period that we have chosen, after doing a very

2    detailed investigation, is the appropriate class period in this

3    case.   We don't represent anyone other than those people,

4    investors, who we are seeking to represent, and that class

5    period ends on June 6th.   And so --

6               THE COURT:   Yeah, but the big argument is that earlier

7    you said at the end of July was the class date.

8               MR. BERGER:   Well, that's not entirely true, your

9    Honor.   For the lead plaintiff -- well, first of all -- I think

10   what you're referring to, Judge, is the lead plaintiff hearing.

11              THE COURT:   In effect, the status of lead plaintiff in

12   opposition to another group that was contending for the same

13   spot, you rely upon a different date than the one you're urging

14   upon me now, and I guess since you've got a benefit by taking

15   that position -- because I think you sell or purchased after

16   the -- did you buy some stock after the June 6th date?

17              MR. BERGER:   On June 9th, one of our plaintiffs bought

18   stock, your Honor.

19              THE COURT:   All right.   So they were arguing that you

20   were not a representative of the plaintiff because of the

21   unique status having bought the stock after the June 6th date.

22   I'm saying you say no; you said it was July.   Now, having

23   gotten the benefit of being the lead plaintiff, by taking that

24   position, I guess their position is that -- although they don't

25   argue it in these terms, but it's a kind of litigation estoppel

6

63VGFEDC                    ARGUMENT

1    here.  Having gotten the benefit of taking one position, now

2    you're seeking to take another, which you shouldn't be allowed

3    to do.

4             MR. BERGER:  There's three responses to that, if I

5    can, your Honor --

6             THE COURT:  -- estoppel, but technically that's what

7    they seem to be raising.

8             MR. BERGER:  Your Honor, at the lead plaintiff stage,

9    there were -- well, there's three responses to that.  First, I

10   think the same -- the defendant that's arguing for a class

11   period of November 21, 2003 is the same defendant and saying

12   that, you know, that that's the appropriate class period has

13   also taken contrary positions in this case.  For example --

14            THE COURT:  Yeah, but they have a benefit from it.

15            MR. BERGER:  Excuse me?

16            THE COURT:  Well, they're not obtaining a benefit by

17   taking this position.  You are lead plaintiff.  Right?

18            MR. BERGER:  Yeah.  But by asking to extend the class

19   period to embrace people who purchased stock after June 6th,

20   what they are saying is that all investors who purchased up to

21   November 21 should be included in the class.  Our client

22   purchased 117,000 shares on June 9th, and those shares are not

23   included in the class.  And when we argued for the lead

24   plaintiff motion, clearly, okay, it was our belief at that

25   time -- we did not do an investigation into what the

7

63VGFEDC                    ARGUMENT

1    appropriate class period was.  We did not do it because we

2    weren't appointed lead plaintiff.

3                THE COURT:  But now you're saying June 6th, which

4    subjects you to that unique defense.

5                MR. BERGER:  But, your Honor, it's not a unique --

6                THE COURT:  If June 6th is the date where the class

7    period ends, then you bought after the class period was over.

8    You bought or you sold?

9                MR. BERGER:  We bought, your Honor.  Well, the stock

10   had already fallen so --

11               THE COURT:  So June 6th is the date that you are in a

12   situation where maybe you're not typical of a representative of

13   other members of the class.

14               MR. BERGER:  But, your Honor, there are any number of

15   cases, any number of class certification cases where class

16   plaintiffs buy after the close of the class period because the

17   stock has already fallen.  Nobody is claiming that Freddie Mac

18   is an inherently fraudulent enterprise.  Nobody is arguing

19   that.  My God, they support millions and millions of mortgages

20   throughout the country.  So nobody is arguing that.  The stock

21   had lost over 20 percent of its value at that time.  The

22   artificial inflation was out of the price of the stock at that

23   time --

24               THE COURT:  Well, that may not be true because they

25   say -- these depositions in this case even from your own

63VGFEDC                ARGUMENT

1    witnesses say, well, there was a continuing stream of

2    information coming out, you know, and we didn't know it all in

3    June.  I mean, they quote depositions of your own people saying

4    that, so how can I find as a matter of law that the period is

5    June 6th?

6            MR. BERGER:  I don't think you need to find as a

7    matter of law that it's June 6th, your Honor.  Let me just

8    explain that.

9            But let me first respond to the representatives and

10   the plaintiffs who will testify.  There's never an end to the

11   information that comes out about a company, particularly in

12   this case.  Freddie Mac, there's information that comes out

13   every week which --

14           THE COURT:  But November everything was out.

15           MR. BERGER:  That's not true.  Every week there's

16   additional information that comes out.  All we're saying is

17   that the curative disclosure based upon our thorough

18   investigation and detailed research -- we didn't just pick this

19   date out of the air.  We picked it as fiduciaries for the

20   entire class.  The curative disclosure in our view that not

21   only corrected the misinformation before but eliminated the

22   artificial inflation from the price of the stock, okay, it

23   eliminated the artificial inflation, and it no longer allowed

24   any investor to rely upon the misinformation that preceded that

25   into the marketplace, came out in --

63VGFEDC                    ARGUMENT

1          THE COURT:  Well, let's assume the jury doesn't accept

2   your argument.  Suppose the jury accepts your argument that the

3   curative date is sometime in November, which is the jury's

4   question.  It's not my question.  I can't make that decision.

5   And I'm saying to you that suppose the jury finds in November.

6   What happens to all those people that bought after June 6th but

7   before November?

8          MR. BERGER:  Your Honor, every one of them -- our case

9   is very widely known.  Any investor -- this is a very widely

10  held stock throughout the world.  Any investor who chose to

11  could have filed a case for those people who purchased between

12  the period June 9th and November 21, anyone.  Nobody has done

13  that in all of the years that this case has been pending.

14  Nobody has done that.  Why?  Because we don't think anybody

15  could because we don't think there's a claim.

16          Now, we're subject to rule 11.  As your Honor has

17  reminded me on a number of occasions in the past, we're subject

18  to rule 11.  Your Honor has sustained our complaint.  We don't

19  represent those people.  We have asserted no claim for them

20  post September 6th.  We don't represent those investors, and we

21  feel that if we did bring a case for those investors, we would

22  be diluting whatever recovery we would have, and we believe

23  that it would not be a cognizable claim.  So we don't believe

24  in that claim as lead plaintiffs for the class.

25          So as I'm saying it --

63VGFEDC                    ARGUMENT

1      THE COURT:  What's changed between the time when you

2  took the position that the date was the end of July as opposed

3  to now when you say it's June 6th or June 9th?  What's changed

4  in the meantime?

5      MR. BERGER:  We've done and we were --

6      THE COURT:  What have you discovered that leads you to

7  conclude that the June 6th date is nothing more than the fact

8  that that's when the stock suffered its biggest drop?  You knew

9  that back then.  You've known that all along.

10     MR. BERGER:  We knew what the announcement was on June

11 6th, your Honor, but we didn't know what else was going to be

12 coming out.

13     THE COURT:  But you knew the market impact as of June

14 6th.

15     MR. BERGER:  I know, but we didn't know what else was

16 going to be coming out after that time.  In other words, there

17 could have been disclosures months, six months --

18     THE COURT:  When was the date it was filed?  January

19 of 2004?  Well, that was after November.  It had already come

20 out.  So you knew that then.

21     MR. BERGER:  August 2003, your Honor.

22     THE COURT:  By the time we heard the motion,

23 everything was out.

24     MR. BERGER:  Well, your Honor, nobody knew what it was

25 that was going -- whether there was going to be another big

63VGFEDC                    ARGUMENT

1  shoe that was going to drop even bigger than the shoe that

2  dropped on June 6th.  Nobody knew that at the time.  Okay.

3  There could have easily --

4          THE COURT:  But you knew that as of the time the

5  motion was made the last time for lead plaintiff status.  That

6  was sometime in 2004, wasn't it?

7          MR. BERGER:  Yeah, but we don't believe, your Honor --

8  the way we look at what happened here -- because the defendants

9  want to include that later period in the class.  When we look

10  at what happened here, we, because we are fiduciaries to the

11  class, eliminated from our class, consciously chose to

12  eliminate from the class --

13          THE COURT:  But the problem is if you had taken the

14  position on the lead plaintiff application that the cutoff date

15  was June 9th or 6th, you would have been subject to a unique

16  defense, right, that you bought after the class action date?

17  Correct?

18          MR. BERGER:  No.  I don't think so, your Honor.  I

19  think it happens all the time that --

20          THE COURT:  Yeah, but it still puts you in a different

21  category than the people who did not buy a large amount of

22  stock after the class action date.

23          MR. BERGER:  Well, that's true, but what we would say

24  is we say very often because --

25          THE COURT:  I know that, and you're right.  I could

63VGFEDC                    ARGUMENT

1    have said that doesn't subject you to a unique defense.  But

2    why did you choose to go that way, except to make sure of the

3    fact that you would not be subject to a unique defense

4    argument?  So you took a legal position that was designed to

5    give you a maximum benefit, which was to eliminate any

6    possibility that your unique defense argument might persuade

7    me, and now you're coming in, after having gotten that benefit,

8    and saying, no, it's June 6th, because we've learned a lot

9    since.

10          You really didn't learn a lot since.  June 6th or 9th

11   is based totally upon the fact that that's when the stock

12   showed the biggest drop in the market and when you claim all

13   the inflation went out.  But you knew that back then, and you

14   could have met the defense head on by saying, you know, it's

15   not June 6th.  It's July 25th.  But it doesn't matter anyway,

16   because that's when it occurred, that's when the inflation went

17   the market, but June 6th -- hold it open till the end of July.

18   But you chose to eliminate -- I mean, it's a good legal

19   strategy.  You destroyed their argument by taking that

20   position, and now you're taking the opposite position.

21          MR. BERGER:  But, your Honor, they didn't make an

22   argument -- they don't have anything to say at the lead

23   plaintiff hearing.  It wasn't the defendants here, and it

24   wasn't being done to gain an advantage at the lead plaintiff

25   stage to argue for a class period.  It was believed at that

63VGFEDC                    ARGUMENT

1    time --

2            THE COURT:  But the problem with the position you're

3    taking is -- this position has not really been briefed.  You

4    maybe want to send me a short letter on the litigation estoppel

5    issue.

6            But you're now subject to another unique defense,

7    which is litigation estoppel that would not be available

8    against another member of the class, because your clients are

9    the ones who bought, and your clients are the ones who took

10   that position.  And now your clients are going to be subject to

11   cross-examination at trial as to why the inconsistency between

12   one and the other, which creates another unique defense for

13   you, which may make you maybe not adequate of a typical class

14   representative.  You're in the box one way or the other.  But

15   if you take the other position back at the lead plaintiff stage

16   and met the argument head on -- and it doesn't make any

17   difference if we bought the --

18           MR. BERGER:  Your Honor, the lead plaintiffs take very

19   different positions with regard to what the length of the class

20   period should be, and they do that based pretty much on their

21   best judgment, presumably, of what that class period should be.

22   But it's before any work is done in the case.  It's before any

23   discovery.

24           THE COURT:  I know.  But these depositions would

25   certainly suggest that your people were not convinced that all

14

63VGFEDC                    ARGUMENT

1   the inflation was out of the stock yet.

2          MR. BERGER:  That's not what those depositions say,

3   your Honor.  What the depositions say is --

4          THE COURT:  I read them.

5          MR. BERGER:  Well, what it has to do with is the fact

6   that there are -- see, what happened on June -- just let me

7   tell you.  What happened on June 6th is there was all this

8   disclosure where senior management was fired.  OFHEO announced

9   that they were conducting a formal investigation.  Two days

10  later the SEC announces that they're conducting a formal

11  investigation into these financial improprieties.  Okay.  The

12  stock loses 20 percent of its value, unprecedented.

13         From that moment on, there continued to be stories

14  every week that contain what could be disclosed as not such big

15  news and revelations about Freddie Mac.  At no point in time

16  from June 6th on has there been any disclosure which created

17  a -- which had a dramatic or material effect on the price of

18  the stock.

19         THE COURT:  I know, but those are issues for the jury.

20         MR. BERGER:  Your Honor, they argue for June 21.  On

21  June 21, the announcement that -- I'm sorry.  November 21.

22         THE COURT:  I'm not saying that either.  I'm just

23  saying to you that the bottom line is that as I sit here now,

24  being asked to certify a class action period, there are issues

25  of fact that go to the question as to when the curative

```
        63VGFEDC                    ARGUMENT
```

 1   announcement was made that have to be resolved by a fact

 2   finder; and according to what the Second Circuit has told me, I

 3   don't have the authority to resolve it because it gets into the

 4   merits.

 5          MR. BERGER:  I agree with that, and so the default

 6   position, when that happens, your Honor, according to the

 7   authorities, I respectfully submit is to accept it --

 8          THE COURT:  The larger class --

 9          MR. BERGER:  But is to accept -- but in each and every

10   one of those cases, your Honor, every single case that the

11   defendants cite asking for a larger class period was where the

12   plaintiffs urged a larger class period and defendants urged

13   a --

14          THE COURT:  I know, but I have an independent

15   responsibility here.  This is not one of those cases where the

16   parties make the decision as to whether or not or what the

17   class period should be.  This is not a case where I can rely

18   upon the fact that you're not raising it, he's not raising it.

19   I've got an independent responsibility to certify a class

20   action period that's supported by the evidence.

21          MR. BERGER:  Okay.  Could I --

22          THE COURT:  And in this record, I think I'm required

23   to choose the maximum class period and let the jury determine

24   if it was something less.

25          MR. BERGER:  Let me just -- if I could just have two

63VGFEDC                    ARGUMENT

1    minutes, your Honor, to respond.  I just want to say the

2    maximum -- let's talk about this maximum class period.  Freddie

3    Mac is urging --

4            THE COURT:  But the evidence will support that.

5            MR. BERGER:  Freddie Mac is urging September 21 as the

6    class period.  The --

7            THE COURT:  September 21 of?

8            MR. BERGER:  November 21.  Excuse me.

9            THE COURT:  November 21, 2003?

10           MR. BERGER:  Right.  The stock after November 21 was a

11   date -- November 21 was a date that was timed by Freddie Mac.

12   Think about the public policy implications of selecting a date

13   as the longest class period.  That is the date that they

14   actually announced the details of the restatement.  Now, they

15   could have done it on that date; they could have done it on any

16   date.  I'm not suggesting that they did that in any kind of --

17           THE COURT:  But that's a good argument for a fact

18   finder.

19           MR. BERGER:  No.  But they timed that announcement.

20   So now the stock went up on November 21.  The stock actually

21   went up when they made that announcement.  Why?  Because all of

22   the inflation was out of the stock already.  So when you talk

23   about --

24           THE COURT:  I know, but --

25           MR. BERGER:  Your Honor --

17

63VGFEDC                    ARGUMENT

1        THE COURT:  Your argument is for a jury.

2        MR. BERGER:  But the next thing they're going to say,

3    your Honor, is there's no loss causation as a result of it; and

4    so, therefore, there are no damages.

5        THE COURT:  And I'm going to give them the same

6    answer, which that is a jury question.

7        MR. BERGER:  But don't we as lead plaintiffs and lead

8    counsel for the class, don't we have a right to say --

9        THE COURT:  You have the right to make a contention,

10   but I have an independent responsibility to see to it that the

11   class period is known now or that the evidence would support

12   it, and I have no basis to say a jury would find that it was

13   sometime after June 9th would not be rational.

14       MR. BERGER:  But we can't do that in a vacuum, your

15   Honor.

16       THE COURT:  Neither can I.  That's the problem.

17       MR. BERGER:  We can't do that in a vacuum, because we

18   have to make allegations between June 6th, 2003 and November

19   21.  We have to make allegations --

20       THE COURT:  But I haven't heard the evidence yet.

21   This case -- one thing the Court of Appeals makes very clear to

22   me is that I don't have the power on a class action application

23   to get into the merits, and when the curative this date was or

24   was not really is a question that goes to the merits and bears

25   upon the question of what the damages are.  That is

18

63VGFEDC                    ARGUMENT

1    traditionally a fact-finding jury function.

2         Now, I cannot certify a class action date on the

3    assumption that it's highly probable that you're right that it

4    was sometime in June rather than in November.  I have to

5    certify a class to establish anything that would be reasonable

6    for a jury to find under the evidence, and in this record I

7    can't say during those depositions that it would be irrational

8    for a jury to find it was sometime later than June 9th.

9         MR. BERGER:  Okay.  Your Honor, what will happen then

10   is we will then have to move to amend our complaint again,

11   which we had allegations for this period of time between June

12   6th and November 21.  Okay.  That we don't believe in.

13        Two, the individual defendants were urging a shorter

14   class period and have basically said that the curative

15   disclosure occurred, okay, earlier on January 9th -- on January

16   25th.  They're going to say you should dismiss that part of the

17   complaint because the curative disclosure came out on January

18   25th.  And we're in this morass of motions to dismiss again for

19   that later period --

20        THE COURT:  But you're going to have to resolve all

21   the pleas.

22        MR. BERGER:  But we don't believe that those people

23   have a claim because the stock was not -- there's two things to

24   look at in deciding what the end date for a class period is.

25   Most importantly is, okay, if we're not going to -- is that

63VGFEDC            ARGUMENT

1   plaintiff's choice of the end of the class period should be

2   given the benefit of the doubt, unless as a matter of law the

3   defendants can establish that a different date is appropriate.

4   And so now --

5        THE COURT:  But the Court of Appeals is not delivering

6   to me that message.  The Court of Appeals doesn't say to give

7   the plaintiff the benefit of the doubt.  The Court of Appeals

8   says the Court cannot get into the merits.  What is the

9   curative date is going to be the subject, I'm sure, of a lot of

10  expert testimony at trial, market analysis and whatnot, all of

11  which is not for me.  I can't determine that.

12       MR. BERGER:  But your Honor has indicated, I think in

13  your own decisions, your Honor, and other judges in this court

14  have said that there are two things really to look at.  What

15  constitutes a curative disclosure and what happens -- and the

16  price stock movement -- and your Honor said that yourself with

17  the AMA tobacco case.  The price stock movement is a very

18  material factor there.

19       THE COURT:  It's a very big factor.  It's not -- but I

20  can't say that a jury finding that it was not that date is

21  irrational.  That's what I have to be able to say to sustain

22  your argument.

23       MR. BERGER:  But if the date proposed by the

24  defendants, your Honor, which I respectfully submit is --

25       THE COURT:  The date they suggest may not be the date

```
63VGFEDC              ARGUMENT
```

1   either.

2          MR. BERGER:  I understand, but it's like the fox

3   guarding the chicken coop.  When your Honor -- let's think

4   about this logically.  When have you ever heard in your

5   judicial experience of a defendant arguing to expand the class

6   period to include more investors and more damages?  It's

7   unheard of.

8          THE COURT:  It's equally unheard of for a plaintiff to

9   be arguing for a shorter class period, and it's only here where

10  you picked that date because that's when your damages are

11  maximized.

12         MR. BERGER:  No.  We picked -- well --

13         THE COURT:  That's what they say.

14         MR. BERGER:  I understand --

15         THE COURT:  -- but maximize the damages as of that

16  particular date; whereas, they might be less at some later

17  date.

18         MR. BERGER:  So let's assume that we both have

19  subjective reasons for this doing this for the moment, but

20  let's take a look at the objective facts.  Objectively, on

21  November 21, okay, when they made the announcement they made,

22  the stock went up.  Objectively, on June 9th when they made the

23  announcement, okay, from June 9th through the next couple of

24  days, the stock was 20 percent of its value.  Unheard of in the

25  history of Freddie Mac, never before, because it's "steady

63VGFEDC                    ARGUMENT

1  Freddie."

2            THE COURT:  I know.  These are all wonderful

3  arguments, but I can't accept them as a matter of law.  I have

4  to --

5            MR. BERGER:  I'm not --

6            THE COURT:  As a matter of -- certify a class that

7  encompasses a larger period.  If the jury finds this period is

8  correct, that it was sometime earlier, they'll make that

9  finding, and, fine, we're all be able to assess the damages

10 accordingly, but I can't do it myself.  I don't have the power

11 to be a fact finder here, unless you all want to waive a jury.

12            MR. BERGER:  It's not a question of finding as a

13 matter of law.  I believe, your Honor, that nobody is being

14 prejudiced.  Anyone --

15            THE COURT:  You don't know that.  See, what if class

16 notice goes out?  Suppose I certify a longer class period.

17 When the class notice goes out, there may be no one who comes

18 in and opts to become part of the class action who bought after

19 July 21st or whatever date you're saying it should be, in which

20 event it's easy, because I won't have to worry about those

21 people.  They're not in the class.  But if they do come in,

22 they have to be given the opportunity to come in.

23            MR. BERGER:  But let me address that.  The class

24 notice goes out for a longer class period, your Honor.  Class

25 members do not have to opt in.  It's an opt out -- we do --

63VGFEDC                    ARGUMENT

1    these are opt-out classes.  So the class members get a notice.

2    They're told that we represent a class going through November

3    21.  Okay.  And they can -- if they don't want to join it, they

4    can opt out.  If they do nothing, they're in the class.

5          Now comes the end of the day.  We settle the case,

6    okay, or we try the case, but we don't believe that there are

7    cognizable damages for that portion of the class.  And so

8    what's happening is we will then be representing a portion of

9    this class that we don't believe has a cognizable claim.  And

10   so what we're doing is we're disallowing someone from that

11   period to come forward and say, well, I think I have a claim.

12   You're not being represented.  Okay.  And I want to bring it.

13   So I'm going to bring my own case.  I'm going to bring a case

14   for that period of time which --

15          THE COURT:  -- any class shareholders.

16          MR. BERGER:  Which anybody can do.  Anybody can do

17   that.  They can bring a class, and this way they will be

18   represented.  Nobody -- so what I'm saying is, as a matter of

19   law, you are not prejudicing that portion of the class at all

20   because they are free -- everyone knows the class that we've

21   sued for.  It's been a matter of public knowledge for quite

22   some time, and they could have come in now.  They could have

23   come in before.  When the notice goes out, anybody can say,

24   well, what about me?  I bought my stock in, you know, July, in

25   August, in September, in October; I bought my stock later, and

63VGFEDC                    ARGUMENT

1    I think I should have a claim too.  Any one of them can bring a

2    claim.  And so what I'm saying is that no one is prejudiced,

3    and we believe that for the class that we are seeking to

4    represent, that the best claim for them --

5             THE COURT:  Let's forget about the class.  Let's talk

6    about your client first.

7             MR. BERGER:  Okay.

8             THE COURT:  If the class action is longer than you

9    claim it is and you bought the stock at a lower price after the

10   June period, your damages would have to be reduced by what you

11   recovered when you sold -- when you bought the stock at a lower

12   price.  Right?  You would have less damages.

13            MR. BERGER:  We would still have damages on that

14   purchase --

15            THE COURT:  You may not.

16            MR. BERGER:  No.  But, your Honor, we have damages

17   during the class period, significant damages during the class

18   period, very significant, and we would still have damages

19   beginning throughout our purchases --

20            THE COURT:  But if the class period is longer, any

21   gains you might have made after the class period would have to

22   be part of the class period.

23            MR. BERGER:  They would be anyway, because there's a

24   lookback, your Honor -- there's a lookback of 90 days -- after

25   the close of the class period, there's a --

63VGFEDC                    ARGUMENT

1          THE COURT:  What's funny about these class action

2    cases is that the arguments that people make in them are always

3    dependent on where they happen to be economically at the

4    moment.  If we had a statute of limitations problem with this

5    case, you'd be arguing for the later date and saying we didn't

6    have knowledge of the entire fraud until later.  You'd be

7    saying --

8          MR. BERGER:  Your Honor --

9          THE COURT:  That's what the problem is with these

10   cases.  So the plaintiffs say this or the defendants say that.

11   It all depends what they're interested in at the moment.  I

12   used to be a lawyer too.

13         MR. BERGER:  But, your Honor, all this means is that

14   we would have more shares in the class.  Those purchases that

15   we made --

16         THE COURT:  But you bought at a much lower price.

17         MR. BERGER:  It was at a much lower price, but that

18   purchase -- if the class ended when they say it ended -- I have

19   never done the calculations --

20         THE COURT:  The stock had not suffered a significant

21   loss thereafter -- I really don't know.  I'm just talking

22   theoretically.  If all the inflation that you say is out of the

23   stock, you bought it at a rock-bottom price and you're still

24   holding the stock for what it is worth now, more than you paid

25   for it, then you're better off having a shorter class period.

63VGFEDC                    ARGUMENT

 1   That's all.

 2           MR. BERGER:  And I suppose just -- I mean, I hate to

 3   repeat myself when I'm before your Honor, but I suppose what

 4   I'm really saying is that I think there are subjective reasons

 5   why we do things, clearly.  A plaintiff is going to look at

 6   their own situation; a defendant is going to look at theirs.

 7   But I think --

 8           THE COURT:  Maybe you can reduce your damages.

 9           MR. BERGER:  But I think your Honor knows --

10           THE COURT:  And you're both not going to win on this

11   issue.  The jury is going to make a fact finding one way or the

12   other, and if the jury finds your date, he's gone.

13           MR. BERGER:  Well, I suppose what is happening,

14   though, is that if we believe that the entire case would be

15   prejudiced by picking a later date, that it's not just an

16   incidental or immaterial choice.  If we believe --

17           THE COURT:  Then maybe you shouldn't be lead plaintiff

18   anymore.

19           MR. BERGER:  But why, your Honor?  In other words,

20   we're doing -- I think we're doing a pretty good job.

21           THE COURT:  But you represent the whole class.

22           MR. BERGER:  But what if somebody came in and said the

23   whole class should end a year later than that because there was

24   something else that was disclosed a year later, would they then

25   make that argument?  In other words what --

63VGFEDC                    ARGUMENT

1      THE COURT:  I haven't heard any argument that any

2  finding of a date after November would be rationally supported

3  by the evidence.

4      MR. BERGER:  Well, I think they picked November

5  because the stock went up.  I mean, there's been a lot

6  disclosed since that time --

7      THE COURT:  But that surely --

8      MR. BERGER:  I mean, and the individual defendants

9  picked a shorter class period because --

10      THE COURT:  You see, the trouble with the stock market

11  is that it's such a fluid thing, you know.  There's a

12  disclosure made, and maybe it's a complete disclosure, a part

13  disclosure.  And it causes people to panic, sell the stock.

14  Other people, more clever investors say, well, maybe all the

15  inflation is not out of the stock yet.  Let me go in and buy

16  some now so I can hedge against -- you know you buy cheap in

17  the hope that you can offset it and basically make a killing.

18      I mean, it's the stock market.  People who are

19  sophisticated investors sometimes will buy when they think the

20  stock is undervalued under the theory that there's been a panic

21  out there which has caused a lot of people to dump stock they

22  shouldn't be dumping.  And you're a smart guy and you know the

23  stock is worth more than the people that are currently selling

24  it for, so you go ahead and buy it.

25      Now, that doesn't necessarily mean the class action

1    period is over or that all the inflation is out of the stock.

2    It may very well mean that, for one reason or another, the

3    inflation value has gone out, too, because of some investment

4    panic.  It's not all that clear that that drop in the stock was

5    attributable to inflation in the stock.  It may very well have

6    been attributed to investor panic when it started to drop, you

7    know.

8        MR. BERGER:  That's absolutely true, your Honor.  I

9    have no problem with that.  And for that matter --

10       THE COURT:  That's a jury question.

11       MR. BERGER:  For that matter, just several weeks ago,

12   we resolved a case involving the largest -- one of the largest

13   companies in Canada, Nortel, and we had Nortel 2, were lead

14   counsel there; and someone else had Nortel 1, okay.  And they

15   were different class periods but related.  But when the Nortel

16   1 case was bought -- it was before Judge Berman.  When that

17   case was brought, everybody thought, that's it for Nortel; all

18   the bad information is out.

19       And then there were additional disclosures which

20   resulted in filing a case in which we call Nortel 2.  That case

21   is before Judge Preska, and both of those cases went forward

22   with different lead plaintiffs and different lead counsel,

23   which is certainly appropriate here.  It can happen here easily

24   if they want to.  And it's not -- it's just that that's not

25   the --

28

63VGFEDC                    ARGUMENT

1          THE COURT:  But you see what the problem is, though.

2    Right?

3          MR. BERGER:  I do.  That's why I'm urging the Court to

4    just take a look at just the following, not what each of us

5    says subjectively, not what would benefit --

6          THE COURT:  You see, if I certify the class to be when

7    you say it is, right, that means any evidence with respect to a

8    later period would have to be excluded at the trial, and what I

9    see out there maybe two years down the road, if the case ever

10   gets tried, the Court of Appeals would reverse Judge Sprizzo

11   and say, he was too narrow in his definition of the class.  He

12   should have let a jury resolve this question.  Go back and do

13   it again.  I don't want that.

14         MR. BERGER:  Your Honor, we would argue that the

15   details --

16         THE COURT:  You could argue it, but the Court of

17   Appeals may say Sprizzo was wrong.  He took too narrow a view

18   of the -- he didn't listen to us when we said he shouldn't

19   resolve the merits of the claim.  But the bottom line is I

20   don't want to try this case twice.

21         MR. BERGER:  Nor do we, your Honor.  We certainly

22   wouldn't do that to you.  I don't think -- I would respectfully

23   submit that a Court of Appeals cannot send back this case for

24   certifying a class period because nobody -- because every

25   putative class member who purchased from June 9 on has the

29

63VGFEDC                    ARGUMENT

1   right to come in and bring a claim.  Everyone has a right.  So

2   nobody's rights are being precluded, and nobody can say that --

3           THE COURT:  Well, once I certify the class action, the

4   statute begins to run on those people.

5           MR. BERGER:  But we're going to send out a notice, and

6   in that notice, it's going to say -- in that notice, it will

7   say or it can say plaintiffs urged the class period of June

8   9th --

9           THE COURT:  It's not going to go out to people who

10  didn't buy or sell during the period that ended on June 9th.

11  It's only going to go to the people who bought or sold up to

12  June 9th.  So the other people will never be notified about the

13  existence of the class action.

14          MR. BERGER:  But we also publish --

15          THE COURT:  They won't even be aware of the statute of

16  limitations.

17          MR. BERGER:  We can send out the notice to them, your

18  Honor.  It's not a problem to send out the notice.

19          THE COURT:  If you send the notice out, you might as

20  well certify the class at a later date.  I can't certify the

21  case as of June 9th and then send out notices to everybody who

22  bought up to November 25th.  It would be --

23          MR. BERGER:  I'm only responding to the fact that your

24  Honor --

25          THE COURT:  Let me hear what they have to say.

63VGFEDC                    ARGUMENT

1      MR. BERGER:  You're going to give me another little

2  shot at it?

3          THE COURT:  I think we've covered most of the

4  problems.

5          MR. PHILLIPS:  Will Phillips for Freddie Mac.  I think

6  your Honor is exactly right.  It's a jury question.  The only

7  date that is not in dispute by which all curative information

8  was out there is when the details -- the extensive details of

9  the statement of release of November 21st.  That is --

10          THE COURT:  -- argue for a later date.

11          MR. PHILLIPS:  No rational argument for a later date,

12  and there's a rational argument for dates all in between that

13  there are disclosures made.

14          THE COURT:  What are they?

15          MR. PHILLIPS:  There is starting in January, the

16  individual defendants pointed out that we disclosed the need

17  for a sizable restatement and the volatility of the stock in

18  January.  In June, we disclosed the fact --

19          THE COURT:  When you say sizable, was the word

20  "material" used?

21          MR. PHILLIPS:  Material, yes, sir, your Honor.  And

22  significant volatility in the stock was disclosed in January

23  2003.  In June 2003 --

24          THE COURT:  -- the theory --

25          MR. PHILLIPS:  Yes, your Honor.

63VGFEDC                    ARGUMENT

1         THE COURT:  A steady Freddie theory.

2         MR. PHILLIPS:  Exactly, your Honor.  In June 2003,

3    there were disclosures not only of the management terminations

4    but also later on in the SEC investigation.  And on June 25th,

5    a few weeks later, there was a disclosure of how big the

6    statement was going to be.  It was going to be an upwardly

7    statement of up to four and a half billion dollars.

8         On July 23rd, the Baker Botts -- which their witness

9    found very important.  It was the one that detailed all of the

10   allegations, supposedly, of fraud.  It's the one that they

11   pretty much took and made their complaint from.  In fact, if

12   you hold the Baker Botts report up and the complaint up, you'll

13   see that they're largely very similar.

14        When you go later on, then there are disclosures that

15   happened in September and October, and then finally, there's

16   the definitive disclosure of what restatement is, how the stock

17   went up and how the earnings went up and down for different

18   periods, what the reasons were for the restatement, the exact

19   effect upon the financials of the company.  And after that

20   time, there are no more disclosures related to this incident

21   that have any impact on it, and that's the reason, your Honor,

22   it's a jury question.  They may convince a jury that June

23   6th -- or June 9th is the important --

24        THE COURT:  Their biggest argument is that the stock

25   was not depreciated in value significantly as of June.

63VGFEDC                ARGUMENT

1      MR. PHILLIPS:  But, your Honor, the fact of the matter

2    is our biggest argument is that the stock drop had nothing to

3    do with these disclosures, and that's a jury question as well.

4    And in fact, the --

5          THE COURT:  Other market conditions.

6          MR. PHILLIPS:  As their own witness says, look, the

7    business fundamentals were great.  We bought 171,000 shares

8    when the stock dropped.  We thought it was a great buy.  The

9    company was healthy.  Those are all things that should go to

10   the jury.  And that's what the Second Circuit and the Supreme

11   Court said, as your Honor knows.

12         So, your Honor, we posit that the broadest class

13   should be the one that's certified.  It makes the most --

14         THE COURT:  What do you have to say about the fact

15   that they should be foreclosed and taken out of the lead?

16         MR. PHILLIPS:  Your Honor, you're a better lawyer than

17   I am.

18         THE COURT:  I'm not sure I am.

19         MR. PHILLIPS:  I would have put it in there if I

20   thought of it.  I think it's a very good argument.  I think

21   that they did benefit from the fact because they are subject

22   to --

23         THE COURT:  Let's assume I certify the class as of a

24   later date.  Do you still object to them being the class --

25         MR. PHILLIPS:  No, your Honor.  We will not object to

63VGFEDC                    ARGUMENT

1    that, although I do think that their purchase of stock is

2    relevant to the basic underlying fact of whether this was a

3    disclosure that -- because I think that their own purchase of

4    that stock shows, in fact, market professionals knew that this

5    company was a very healthy, profitable company --

6              THE COURT:  But you're perfectly happy to

7    cross-examine them.

8              MR. PHILLIPS:  I'm perfectly happy to cross-examine

9    them.

10             THE COURT:  It doesn't affect your class action.

11             MR. PHILLIPS:  No.  And indeed, your Honor, as I'll

12   say, I think --

13             THE COURT:  So unique defenses -- you'd rather live

14   with them than not have them.

15             MR. PHILLIPS:  That's exactly right, your Honor, and I

16   think it's a jury question in the end.  It's a jury question as

17   to which one is the proper curative disclosure, and no matter

18   how you argue about it, that's what the case law says, and what

19   the case law also says is that's not an issue you determine in

20   class certification.  If it is, then I think we should all have

21   a factual hearing, but in fact, that's not what it's about.

22   What it's about, from Eisenhorn on down, is that the Court

23   isn't supposed to look at the merits.

24             THE COURT:  I think you're right.  I don't think I

25   have the power to certify the class action as of the longer

63VGFEDC                    ARGUMENT

1   date so long as there's a rational basis for a jury finding a

2   later date.  So therefore, I'm going to leave it for the jury

3   to determine that question.  I'll certify the class as of the

4   later date, and I will allow you to be the class action

5   representative if you continue to want to be.

6            MR. PHILLIPS:  Thank you, your Honor.

7            THE COURT:  Since he's not objecting to -- unique

8   defenses anymore.  All right?

9            MR. PHILLIPS:  Thank you, your Honor.

10           THE COURT:  Except you have to send out the notice to

11  the class now.  Right?

12           MR. BERGER:  Yes, your Honor.  We have to send a

13  notice to the class.

14           THE COURT:  I don't think I have any other choice but

15  to do that.

16           MR. BERGER:  Okay.  If I --

17           THE COURT:  Let's face it.  These cases usually wind

18  up settling in the long run anyway, and so at least you'll have

19  the parameters of settlement laid down anyway.  You'll both

20  have a little bit to bargain with.

21           MR. BERGER:  Your Honor, I'm just referring to the AMF

22  Bowling case, and that case said -- I'm paraphrasing here -- on

23  motions for class certification, the Court must accept all of

24  the plaintiff's allegations as true and may not resolve

25  substantial issues of fact going to the merits when deciding

63VGFEDC                    ARGUMENT

1   the scope of the time limit of the class.

2           And so I suppose what we would say -- and I think that

3   this is what the courts generally --

4           THE COURT:  Which allegation of yours should I accept

5   as true, the ones you have made on the lead plaintiff motion or

6   the ones you are making now?  There's been an inconsistency,

7   you know.

8           MR. BERGER:  I'm only talking about the complaint,

9   your Honor, the complaint that you sustained.  And I don't

10  think -- you do an investigation, you know, you move for a lead

11  plaintiff.  We did not have any particular responsibility at

12  that time to the class.  We only had responsibility to

13  ourselves.  Now, of course, we have a fiduciary duty to the

14  class.  We prepared an amended complaint which your Honor

15  sustained.  It contained a class period.  Okay.  Your Honor

16  yourself at the motion to dismiss recognized at that time that

17  that's when these people were --

18          THE COURT:  But does the plaintiff define a class

19  action period?

20          MR. BERGER:  The complaint does, yes.

21          THE COURT:  I don't think I'm required to accept those

22  allegations as true.

23          MR. BERGER:  I'm sorry, your Honor?

24          THE COURT:  I don't think I'm required to accept those

25  allegations as true.

63VGFEDC                    ARGUMENT

1          MR. BERGER:  No.  No.

2          THE COURT:  Because they don't go to the elements of

3    the cause of action.

4          MR. BERGER:  No.  But what I'm saying is, your Honor,

5    is that your Honor is going to be -- from a public policy

6    standpoint, your Honor is going to be faced with -- in every

7    class action case with defendants -- whole groups of diverse

8    defendants that are going to come in --

9          THE COURT:  I haven't had a case like this where the

10   disclosures were coming in such a continuous and neverending

11   stream and where your own witnesses said you still thought it

12   was a pretty good buy.

13         MR. BERGER:  Well, your Honor, but I just want to

14   address that.  In other words, isn't --

15         THE COURT:  Your own witnesses put in -- your claim

16   that all the inflation was out of the stock.  They thought it

17   was a good buy.

18         MR. BERGER:  But if the stock trades for --

19         THE COURT:  You're a good lawyer, but you can't make

20   a --

21         MR. BERGER:  Well, your Honor knows the fact that

22   whatever class you certify, that certainly at the very least --

23   that certainly at the very least, declines in the price of the

24   stock during the course of the class period when disclosures

25   come out, partial disclosures, when they come out during the

63VGFEDC                    ARGUMENT

1   course of the class period are relevant, because if the stock
2   loses, if the stock goes from, let's say, 20 to 15 --

3           THE COURT:  Well, what is the curative disclosure
4   date, so far as -- in effect, getting all the inflation out of
5   the stock is traditionally and consistently a question of fact.
6   That is true, unless it's not disputed, and here it is.  And
7   this is a very unique case.  This stuff is coming out over a
8   year, you know.

9           MR. BERGER:  It's still coming out, your Honor.

10          THE COURT:  You can make an argument that the class
11  shouldn't be over as of January when they said when there were
12  material changes being made.  If we had a statute of
13  limitations question as to whether this was brought within one
14  year of the time that you knew or shouldn't have known of the
15  fraud, believe me, an argument can be made that you should have
16  brought it within a year of January.  That was enough to put
17  you on inquiry that there was something wrong here.  So it all
18  depends on -- but I think you would be arguing then that it's
19  an initial fact as to where that statute -- when in fact
20  disclosure was made.  This case is a very unusual case.  I
21  don't think I've ever had one like it.

22          All right.  So that's my ruling anyway.  So I'll
23  certify the class and submit an appropriate order.

24          And when do we have to deal with the question of
25  notice?

63VGFEDC                    ARGUMENT

1        MR. PHILLIPS:  We'll work with counsel to get all

2   these issues resolved, your Honor.

3        THE COURT:  You want another conference in 30 days?

4        MR. BERGER:  Sure.

5        MR. PHILLIPS:  Yes, your Honor.  That's fine.  Yes.

6        THE COURT:  All right.  What day, Linda?

7        THE DEPUTY CLERK:  At the end of April, we have

8   Tuesday, April 25th at 3:00.

9        THE COURT:  All right.  We'll see you then,

10  Mr. Berger.

11       MR. BERGER:  Thank you, your Honor.

12       THE COURT:  Good argument.  You did the best you

13  could, but I don't think you could persuade me that the Court

14  of Appeals will not take another view of it.

15       MR. BERGER:  I'm done now.  I can't continue.  Is that

16  right?

17       MR. PHILLIPS:  Thank you, your Honor.

18                              o0o

19

20

21

22

23

24

25