UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE AMERICAN INTERNATIONAL GROUP, INC. 2008 SECURITIES LITIGATION | Master File No.: 08-CV-4772-LTS |
| | **ELECTRONICALLY FILED** |
| This Document Relates To: All Actions | ORAL ARGUMENT REQUESTED |

**LEAD PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO STRIKE EXHIBITS SUBMITTED BY DEFENDANTS IN CONNECTION WITH MOTIONS TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**

**BARRACK, RODOS & BACINE**
Leonard Barrack
Jeffrey W. Golan (*pro hac vice*)
M. Richard Komins
Robert A. Hoffman
Lisa M. Lamb
Julie B. Palley
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Tel.: (215) 963-0600
Fax: (215) 963-0838

and

A. Arnold Gershon (AG – 3809)
Regina M. Calcaterra (RC- 3858)
1350 Broadway
Suite 1001
New York, New York 10018
Tel.: (212) 688-0782
Fax: (212) 688-0783

**THE MILLER LAW FIRM, P.C.**
E. Powell Miller (*pro hac vice*)
Marc L. Newman (*pro hac vice*)
David H. Fink
Jayson E. Blake
Brian E. Etzel
Miller Building
950 West University Drive, Suite 300
Rochester, MI 48307
Tel: (248) 841-2200
Fax: (248) 652-2852

*Attorneys for Lead Plaintiff, State of Michigan Retirement Systems,
and Lead Counsel for the Putative Class*

## **Table of Contents**

**Page**

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 3

    THE CHALLENGED DOCUMENTS ARE NOT INDISPUTABLE AND ARE
    NOT RELEVANT .................................................................................................3

CONCLUSION................................................................................................... 100

<u>**Table of Authorities**</u>

**<u>Page(s)</u>**

<u>**Cases**</u>

*BHC Interim Funding, L.P. v. Finantra Capital, Inc.,*
    283 F. Supp. 2d 968 (S.D.N.Y. 2003)................................................................ 5

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147 (2d Cir. 2002)........................................................................ 3

*Chosun Int'l, Inc. v. Chrisha Creations, Ltd.,*
    413 F.3d 324 (2d Cir.2005)........................................................................ 10

*Fink v. Time Warner Cable,*
    2009 WL 2207920 (S.D.N.Y. July 23, 2009) ................................................ 3

*Goldberg v. UBS AG,*
    2009 WL 3077118  (E.D.N.Y. Sept. 24, 2009) ............................................ 7

*In re Bausch & Lomb, Inc. Sec. Litig.,*
    2003 WL 23101782 (W.D.N.Y. Mar. 28, 2003)........................................... 4

*In re Citigroup Auction Rate Sec. Litig.,*
    2009 WL 2914370 (S.D.N.Y. Sept. 11, 2009)................................................ 7

*In re Converium Holding AG Sec. Litig.,*
    2007 U.S. Dist. LEXIS 67660 (S.D.N.Y. Sept. 14, 2007)............................. 10

*In re Initial Pub. Offering Secs. Litig.,*
    544 F. Supp. 2d 277 (S.D.N.Y. 2008)........................................................... 3

*In re MoneyGram Int'l Inc., Sec. Litig,*
    626 F. Supp. 2d 947 (D. Minn. 2009) .......................................................... 6

*In re Scottish Re Group Secs. Litig.,*
    524 F. Supp. 2d 370 (S.D.N.Y. 2007)........................................................... 6

*Kramer v. Time Warner Inc.,*
    937 F.2d 767 (2d Cir. 1991)......................................................................... 5

*Nix v. Hedden,*
    149 U.S. 304 (1893)................................................................................ 6, 7

*Oneida Indian Nation of New York v. State,*
    691 F.2d 1070 (2d Cir. 1982)........................................................................ 8

*Roth v. Jennings*,
  489 F.3d 499 (2d Cir. 2007)................................................................................. 3

*Roussin v. AARP*,
  2009 WL 3397402 (S.D.N.Y. Oct. 15, 2009) ..................................................... 5

*Schaghticoke Tribal Nation v. Kepthorne*,
  587 F. Supp. 2d 389 (D. Conn. 2008), *aff'd*, 587 F.3d 132 (2d Cir. 2009) ...................... 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
  127 S.Ct. 2499 (2007) ......................................................................................... 3

## <u>Other Authorities</u>

Fed. R. Evid. 201 .......................................................................................... 3, 4

Fed. R. Evid. 201(b).......................................................................................... 3

Lead Plaintiff, The State Treasurer of Michigan, as custodian of the Michigan Public School Employees Retirement System, the State Employees' Retirement System, the Michigan State Police Retirement System, and the Michigan Judges Retirement System (collectively, "Lead Plaintiff"), submits this reply memorandum in further support of its motion to strike certain exhibits submitted by defendants in support of their various motions to dismiss (the "Motion to Strike").[1]

## INTRODUCTION

AIG's opposition to the Motion to Strike makes apparent that the defendants have grounded their motions to dismiss not just on documents extrinsic to the Consolidated Class Action Complaint ("Complaint") but on factual allegations not contained therein. Like they did in their dismissal motions, defendants continue to mischaracterize the Complaint as being about defendants' failure to predict an economic tsunami that engulfed AIG. But as Lead Plaintiff has stated repeatedly, this lawsuit does not seek to hold defendants responsible for failing to predict the economic meltdown. Rather, it seeks to hold defendants liable for their concealment of known risks and active deception of AIG's true financial situation. Against this backdrop, defendants seek to introduce extrinsic materials – which were not referenced in the Complaint, were not relied upon by Lead Plaintiff in drafting the Complaint, and far exceed the allowable scope of judicial notice – on the basis that such evidence is necessary to provide "context" for Lead Plaintiff's claims. *See, e.g.,* Def. Opp. at 2.

---

[1] The Motion to Strike identified 34 exhibits submitted with declarations by counsel for American International Group, Inc. ("AIG"), PricewaterhouseCoopers LLC ("PwC") and Robert E. Lewis. AIG submitted the only memorandum of law in opposition to the Motion to Strike (hereafter "Def. Opp."), addressing each of the challenged exhibits. Def. Opp. at 1 n.2. PwC and Lewis joined in the Def. Opp. to the extent it addressed their challenged exhibits.

The challenged evidence, however, should not be considered by the Court, at least at this stage of the case, because it is irrelevant to the dismissal motions.  Defendants' use of the challenged materials to support the assertion that no one predicted the "global economic crisis" is less an attempt to provide "context" than it is an effort to contradict or dispute the Complaint's well-pled allegations of scienter.  For example, defendants seek to rebut the highly particularized factual allegations in the Complaint concerning the knowledge of specific individuals at AIG about the risks that AIG's subprime mortgage-related investments and derivatives posed to the Company by citing statements by regulators and other third parties about what *they* – the regulators and third parties, not defendants – knew or believed during the relevant time period.

By introducing these statements and the other challenged materials, defendants seek to have the Court weigh the evidence and make factual findings about complex financial and economic matters; the ultimate goal of which is to advance their argument that the alleged misstatements and omissions were neither false, nor material nor made with scienter.  Among other things, AIG asks the Court to:

- accept the defense view of the "nature and purpose" of the ABX index (Def. Opp. at 4);

- find that AIG "had to use significant judgment and newly developed models in attempting to estimate unrealized market valuation losses on complex derivatives in a frozen marketplace" (*id*. at 4); and

- find that based on certain statements made during and after the Class Period, market regulators and other public figures had not appreciated the risks in the market during the Class Period (*id*. at 12).

Such an exercise is wholly improper at this stage of the proceedings.  Because the supposed "facts" defendants seek to introduce are not judicially noticeable, as more fully set forth below and in the Motion to Strike, the challenged exhibits should be stricken.

## <u>ARGUMENT</u>

### THE CHALLENGED DOCUMENTS ARE
### NOT INDISPUTABLE AND ARE NOT RELEVANT

As this Court is well aware, a ruling on a motion to dismiss "is not an occasion for the court to make findings of fact," *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007), especially here, where these very issues will likely, and more properly, be the subject of extensive discovery and summary judgment motions. *See In re Initial Pub. Offering Secs. Litig.*, 544 F. Supp. 2d 277, 287 n.58 (S.D.N.Y. 2008) ("[P]lausible opposing inferences … may be based only on the complaint and other public documents on which courts ordinarily rely in deciding on a motion to dismiss, 'while constantly assuming the plaintiff's allegations to be true.'") (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 127 S.Ct. 2499 (2007)).

Accordingly, courts should not consider documents or other information not contained in a complaint except in limited circumstances, such as when the materials were referenced in or otherwise "integral" to a complaint or where the plaintiff clearly relied on the "terms and effect of a document in drafting the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (documents not referenced in complaint and whose relevancy the parties disputed were matters outside the pleadings subject to exclusion by the court); *see also Fink v. Time Warner Cable*, 2009 WL 2207920, at *3 (S.D.N.Y. July 23, 2009) (court excluded documents that comprised defendant's testimonial proffers as to disputed facts). Furthermore, in order for a court to take judicial notice of information not set forth in a complaint, as defendants are requesting the Court to do here, such information must *not be "subject to reasonable dispute* in that it is either (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b) (emphasis added). Because the challenged

3

exhibits do not satisfy these prerequisites for consideration by the Court, they should be stricken and not considered in connection with defendants' dismissal motions. [2]

**SEC Filings (Allerhand Decl. Exs. 50-58)**.    While a court may, under certain circumstances, take judicial notice of publicly available documents filed with the Securities and Exchange Commission ("SEC"), the SEC filings that Lead Plaintiff challenges in the Motion to Strike were filed with the SEC by public corporations *other than AIG*, were not cited in the Complaint, and involve facts that are not relevant to the motions to dismiss and that are beyond the reach of this litigation.[3]

Defendants cite these documents in a further attempt to recast the Complaint as being principally about the economic downturn and to support their "economic tsunami" theory – namely, that defendants were simply swept up in an unforeseeable series of cataclysmic events that similarly affected other large financial institutions, and therefore, that defendants could not have made any false or misleading statements, or made them with scienter. Def. Opp. at 7-8.

---

[2]    Defendants' request that the Court consider the Allen Ferrell opinion piece cited by PwC (Ryan Decl. Ex. V) (Def. Opp. at 8, n.8) exemplifies their effort to persuade the Court to prematurely adjudicate disputed facts. Defendants proffer the Ferrell opinion in support of their contention that the Court should adopt as true the proposition that "high-grade RMBSs tracked by the ABX index did not experience a sustained decline in value until October 2007." (Def. Opp. at 4, 8 n.8.). While personal and expert opinions are not generally proper subjects for judicial notice, the fact that the complex economic and financial processes involved here are largely in dispute further precludes such information from judicial notice. *See In re Bausch & Lomb, Inc. Sec. Litig.*, 2003 WL 23101782, at *16 (W.D.N.Y. Mar. 28, 2003) ("[a] judicially noticed fact must be one not subject to reasonable dispute") (quoting Fed. R. Evid. 201)).

[3]    These challenged documents consist of: Morgan Stanley 2007 Form 10-K for the year ended 11/30/07; Citigroup 2007 Form 10-K for the year ended 12/31/07; J.P. Morgan Forms 8-K dated 3/17/08, 3/24/08 and 9/25/08; UBS 2007 Form 20-F for the year ended 12/31/07; Bank of America Form 8-K dated 9/15/08; Lehman Brothers Form 8-K dated 9/19/08; and Wells Fargo Form 8-K dated 10/3/08. While certain historical events may arguably be subject to judicial notice under Fed. R. Evid. 201, *e.g.*, J.P. Morgan's acquisition of Bear Stearns in March 2008, Bank of America's acquisition of Merrill Lynch in September 2008, and the Lehman bankruptcy filing in September 2008 (*see* Def. Opp. at 7-8), such events have no probative value with respect to whether the Complaint adequately alleges that (a) AIG made material misstatements and omissions, and (b) the Section 10(b) Defendants acted with scienter.

Defendants seek to have the Court infer from the calamities that befell other market participants between November 2007 and October 2008 that they could not have anticipated the global economic crisis. But, as explained more fully in Lead Plaintiff's opposition to the motions to dismiss, whether the defendants foresaw the global economic crisis *is not at issue in this case*. What is at issue is whether defendants were being truthful when they repeatedly told investors that AIG's derivative portfolio was designed to withstand a severe economic crisis *should such a crisis occur*. While the Complaint lays out in highly particularized detail why these statements are false, none of the extrinsic information that defendants submit in any way undermines these well-pled allegations.[4]

**Documents Relating to Financial Indexes**. While the Court may take judicial notice of stock prices or indexes "that cannot be reasonably disputed," as Lead Plaintiff demonstrated in its opening memorandum, much of what defendants seek to introduce in connection with the ABX/TABX indexes has nothing to do with the fact of their existence or their composition. Rather, defendants go further than Rule 201 permits, seeking judicial notice of information contrasting the collateral of residential mortgage backed securities ("RMBSs") tracked on the indexes with that in AIG's credit default swaps, an analysis that goes well beyond the existence

---

[4]    Moreover, unlike *BHC Interim Funding, L.P. v. Finantra Capital, Inc.,* on which defendants rely, the filings here were not made by the issuer-defendant in the case and authentication is not undisputed. *See* 283 F. Supp. 2d 968, 974 n.2 (S.D.N.Y. 2003) (noting that the parties did not dispute authenticity of the issuer-defendant's SEC filings). Also inapposite are *Kramer v. Time Warner Inc.*, 937 F.2d 767 (2d Cir. 1991), and *Roussin v. AARP*, 2009 WL 3397402 (S.D.N.Y. Oct. 15, 2009). Unlike the case at bar, in *Kramer,* the SEC filings at issue were "the very documents that [we]re alleged to contain the various misrepresentations or omissions and [we]re relevant not to prove the truth of their contents but only to determine what the documents stated." 937 F.2d at 774. Similarly, in sustaining a "filed rate doctrine" defense asserted by the defendant in *Roussin*, the court noted that New York regulates and had approved the insurance rates about which the plaintiff had complained. *See* 2009 WL 3397402, *2. Here, defendants seek to use what is stated in the SEC filings of the other companies to show the "reasonableness" of AIG's statements in this case, and the Section 10(b) Defendants' nonculpable states of mind.

and composition of these indexes. Defendants are in effect asking the Court to make a factual finding as to whether the ABX and TABX indexes are probative of the value of the CDSs written by AIG. *See* Def. Opp. at 3-4. This is clearly an area of dispute between the parties, and will likely be a subject of expert testimony on a developed evidentiary record. Thus, defendants' request to submit such information for purposes of deciding the dismissal motions should be denied.

AIG further seeks admission of an SEC report (Allerhand Ex. 76) to support its argument that AIG "had to use significant judgment and newly developed models in attempting to estimate unrealized market valuation losses on complex derivatives in a frozen marketplace." *See* Def. Opp. at 4. Again, defendants are not directly attacking the sufficiency of the allegations in the Complaint or the inferences derived from the facts pleaded – namely, that defendants knew or should have known that the use of negative basis adjustments in computing the fair value of the Company's credit default swap portfolio as disclosed at the December 5, 2007 investor meeting had no basis in GAAP. Instead, they are "telling their side of the story" – in effect, asserting a defense, which has no relevance on a motion to dismiss.[5]

---

[5]    In support of defendants' argument that the Court may consider the SEC report "to educate itself," even though it is not integral to the Complaint, AIG cites *In re Scottish Re Group Secs. Litig.*, 524 F. Supp. 2d 370, 376 n.22 (S.D.N.Y. 2007) (Def. Opp. at 5). Defendants' characterization of that case is wrong, however. The court in *Scottish Re* expressly stated that the facts it summarized, which included the reference to the International Monetary Fund guide, were "drawn from the Complaint and are presumed to be true for the purpose of these motions." 524 F. Supp. 2d at 375 n.2. Similarly, the court in *In re MoneyGram Int'l Inc., Sec. Litig*, 626 F. Supp. 2d 947, 958 n.5-6 (D. Minn. 2009), did not take judicial notice of academic articles for background facts as defendants contend in their brief; rather, the court simply recited concise definitions of financial instruments, citing to recent law review articles that neither party presented to the Court. The 19th century case *Nix v. Hedden*, 149 U.S. 304, 307 (1893), does not help defendants either, as the issue there arose after a trial and a verdict, and it involved the definitions of "fruit" and "vegetables." The court simply noted with regard to the ordinary meaning of words that it may "take judicial notice, as it does in regard to all words in our own tongue; and upon such a question dictionaries are admitted, not as evidence, but only as aids to

Moreover, there is no foundation for the use of this report by the Court. Without explanation and amplification by a competent witness with technical or specialized accounting knowledge, it would be improper for this Court to evaluate the statements made in this complex accounting report in deciding a dismissal motion.[6] Defendants' attempts to transform these disputed complexities into judicially noticeable "facts" should not be permitted.

**Statements in the public realm**. Statements or other materials that exist in the "public realm" are not judicially noticeable simply because of their public nature; the facts must still be relevant to an issue or fact properly in dispute on the motion to dismiss. *Goldberg v. UBS AG*, 2009 WL 3077118 at *1, n.8 (E.D.N.Y. Sept. 24, 2009) (declining to take judicial notice of the contents of company's website although such information was published and in the public realm). Defendants ask the court to take judicial notice of various materials that were in the "public realm" during and after the Class Period, and through them to evaluate, weigh, and assess disputed facts and complex economic variables in order to determine whether defendants "knowingly or recklessly made actionable misstatements." *See* Def. Opp. at 9. Defendants' attempt to have the Court take judicial notice of certain publicly expressed contentions or opinions among many on hotly debated economic issues is impermissible. *Oneida Indian Nation*

---

the memory and understanding of the court." 149 U.S. at 306. Dictionary definitions concerning the ordinary meaning of English words are categorically different from the "information cited by AIG and PwC discussing the nature of the ABX/TABX indexes and the SEC accounting report discussing the relevant accounting rules 'as aids to the memory and understanding of the court'" (Def. Opp. at 5), which are more akin to expert opinions. *Accord In re Citigroup Auction Rate Sec. Litig.*, 2009 WL 2914370, at *3 n.2 (S.D.N.Y. Sept. 11, 2009) (noticing "public and transaction documents integral to Plaintiff's ... claims," the authenticity of which plaintiff did not challenge).

[6]    Defendants' reliance on *Schaghticoke Tribal Nation v. Kepthorne*, 587 F. Supp. 2d 389, 397 (D. Conn. 2008), *aff'd*, 587 F.3d 132 (2d Cir. 2009), is misplaced because that case was before the court on summary judgment, with a developed factual record to consider in light of proffered evidence, unlike the blank slate at bar, which provides no foundation for consideration of the SEC report. *See id.* at 396 n.2 (the court considered new evidence "only to the extent it is supported by evidence in the record").

*of New York v. State*, 691 F.2d 1070, 1086 (2d Cir. 1982) ("[W]hen facts or opinions found in historical materials or secondary sources are disputed, it is error to accept the data (however authentic) as evidence.").

In support of their argument, defendants state that "market regulators…, ***like AIG***, did not know or suspect the ultimate extent of the crisis." Def. Opp. at 10 (emphasis added). Once again, the knowledge or opinions of third parties, even regulators, is irrelevant to the facts known to AIG, particularly since the Complaint alleges numerous facts known to AIG that were not known to or were otherwise concealed from the regulators and the investing public. For example, with respect to the rationale underlying AIG's decision at the end of 2005 to cease writing multi-sector CDS contracts, such facts include the realization that the Gorton model could not be used to adequately predict the behavior of the so-called "multi-sector" CDOs, especially given defendants' knowledge that (1) it was not possible to create super senior tranches "off a collateral pool which is almost perfectly correlated so if things went bad, they're going to go bad in a big way"; (2) the correlation within the CDOs insured by multi-sector CDS contracts was one-to-one; (3) whereas in earlier multi-sector CDO deals there were many different types of uncorrelated assets, such as AAA credit cards, AAA student loans, AAA commercial MBS and prime mortgage collateral, the CDOs became "almost entirely all subprime" as time went by in 2005; (4) the models did not even attempt to develop risk characteristics based on market forces and contract terms; and (5) AIG didn't assign Mr. Gorton to assess those threats, and knew that his models didn't consider them. *See* Complaint ¶¶ 111-112, 235. These are just some of the facts that underlie Lead Plaintiff's allegations that the statements made by AIG and its senior executives were materially false and misleading when made, and that the Section 10(b) Defendants made such false and misleading statements

knowingly and/or recklessly – claims that are entirely separate from what others in the public either knew or were saying about the state of the economy and even the subprime market.

As Lead Plaintiff further noted in response to the dismissal motions, the entire series of third-party statements about whether the downturn in the subprime market would affect the broader economy is a red herring because, in this case, the losses suffered through AIG's credit default swaps and in its securities lending program resulted precisely from AIG's risk exposure to subprime mortgages. *See* Lead Plaintiff's Memorandum of Law in Opposition to Motions to Dismiss the Consolidated Class Action Complaint, filed October 2, 2009 ("Pl. Mem. re Dismissal Motions"), at 191-195. Thus, what AIG's regulators may or may not have known or thought at the time of AIG's allegedly false and misleading statements is irrelevant to the motions to dismiss, and AIG's suggestion that the regulators' knowledge about the subprime market and AIG's risk exposure is a proxy for what defendants knew about those matters is specious.

Similarly, AIG argues that the Court may judicially notice extrinsic statements of opinion as to whether the ABX and TABX indexes are useful for valuing credit default swaps. Apart from failing the indisputable and reliability tests, defendants' motions used these statements for an improper purpose. Rather than attacking the sufficiency of the pleadings, as appropriate on a motion to dismiss, defendants attempt to use certain of the challenged documents to support the proposition that "AIG did not believe these indexes served as an appropriate valuation tool for the multi-sector CDSs," *see* Def. Opp. 11 n.12. Again, this is an alternative set of "facts", not an attack on the sufficiency of the facts pleaded. Defendants are improperly asking this Court to resolve disputed factual issues in their favor, a disposition not authorized under Rule 12(b)(6). "[A]t this stage of the litigation, a court may not 'weigh the evidence that might be presented at

trial.'" *In re Converium Holding AG Sec. Litig.*, 2007 U.S. Dist. LEXIS 67660, at *8 (S.D.N.Y. Sept. 14, 2007) (citing *Chosun Int'l, Inc. v. Chrisha Creations, Ltd.*, 413 F.3d 324, 327 (2d Cir.2005)).

By proffering these public statements, defendants seek to enlist the Court into adopting their characterization of the case as an alleged failure by AIG to predict the economic collapse, rather than AIG's false statements and omissions. *See* Def. Opp. at 10. But the case is not about a predictive failure. But as stated herein and in the opposition brief to the motions to dismiss, this is not the case that Lead Plaintiff has pled. *See, e.g.,* Pl. Mem. re Dismissal Motions at 14, 158-163. Accordingly, the statements in the public realm by third parties are irrelevant, may not be supported by judicial notice determinations, and, if considered under Rule 12(b)(6), are more likely to result in a confusing, unfairly prejudicial determination without a proper foundation. In this circumstance, the proper remedy is for the Court to strike the improperly proffered documents.[7]

## CONCLUSION

For the reasons set forth herein and in its opening memorandum, the Motion to Strike should be granted in its entirety.

Respectfully submitted,

---

[7]    Defendants mistakenly contend that Lead Plaintiff seeks to strike certain Congressional testimony of Acting Director of the Office of Thrift Supervision Scott Polakoff. *See* Def. Opp. at 6 & 13 n.14. That is not the case. Because Lead Plaintiff cites Mr. Polakoff's testimony in the Complaint, Lead Plaintiff does not seek to strike it. Rather, Lead Plaintiff seeks to preclude defendants from putting before the Court the testimony of Pa. Ins. Commissioner Joel Ario and GAO Director Orice Williams, who both testified at the same Congressional hearing as Mr. Polakoff but whose statements (or even their names) are nowhere cited in the Complaint. The knowledge or opinions of Messrs. Ario and Williams are not at issue in this case.

**BARRACK, RODOS & BACINE**

_____/s/ Jeffrey W. Golan_____
Leonard Barrack
Jeffrey W. Golan (*pro hac vice*)
M. Richard Komins
Robert A. Hoffman
Lisa M. Lamb
Julie B. Palley
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
Tel.:  (215) 963-0600

      and

A. Arnold Gershon (AG – 3809)
Regina M. Calcaterra (RC- 3858)
1350 Broadway
Suite 1001
New York, New York 10018
Tel.:  (212) 688-0782

**THE MILLER LAW FIRM, P.C.**

_____/s/ E. Powell Miller_____
E. Powell Miller (*pro hac vice*)
Marc L. Newman (*pro hac vice*)
David H. Fink
Jayson E. Blake
Brian E. Etzel
Miller Building
950 West University Drive, Suite 300
Rochester, MI 48307
Tel.: (248) 841-2200

*Attorneys for Lead Plaintiff, State of Michigan Retirement Systems,*
*and Lead Counsel for the Putative Class*