UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE AMERICAN INTERNATIONAL GROUP, INC. 2008 SECURITIES LITIGATION | Master File No.: 08-CV-4772-LTS |
| This Document Relates To:  All Actions | **ELECTRONICALLY FILED** |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS BY DEFENDANTS NOTWITHSTANDING FOREIGN SECRECY LAWS**

**BARRACK, RODOS & BACINE**

Leonard Barrack
Jeffrey W. Golan (*pro hac vice*)
M. Richard Komins
Robert A. Hoffman
Lisa M. Lamb
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
Tel.:  (215) 963-0600

    and

A. Arnold Gershon (AG – 3809)
Regina M. Calcaterra (RC- 3858)
425 Park Avenue
Suite 3100
New York, New York 10022
Tel.:  (212) 688-0782

**THE MILLER LAW FIRM, P.C.**

E. Powell Miller (*pro hac vice*)
Marc L. Newman (*pro hac vice*)
David H. Fink
Jayson E. Blake
Christopher D. Kaye
Miller Building
950 West University Drive, Suite 300
Rochester, MI 48307
Tel.: (248) 841-2200

*Attorneys for Lead Plaintiff, State of Michigan Retirement Systems,*
*and Lead Counsel for the Putative Class*

<u>**TABLE OF CONTENTS**</u>

<u>**Page**</u>

PRELIMINARY STATEMENT ................................................................................................ 1

PRINCIPLES GOVERNING THE MOTION.......................................................................... 4

    I.    The Party Resisting Discovery Has The Burden Of Proving Production
        Violates Foreign Law ................................................................................... 4

    II.   If Foreign Law Bars Discovery, The Court Should Complete A Comity
        Analysis........................................................................................................ 6

ARGUMENT ............................................................................................................................ 7

    I.    The Documents And Information Are Critical And Vital To The Litigation......... 7

    II.   The Request For Document Production Is Narrowly Tailored .............................. 8

    III.  The Volume of Documents Originating Outside Of The U.S. Is Unknown To
        Lead Plaintiff ............................................................................................... 9

    IV.  There Is No Reasonable Alternative Means Of Securing The Information.......... 10

    V.   The United States' Interests Outweigh France's Interests .................................. 12

        A.    U.S. Interests ................................................................................... 12

        B.    Foreign Interests.............................................................................. 12

    VI.  There Would Be No Hardship On Defendants In Complying With The
        Request........................................................................................................ 14

    VII. Even Where Acting In Good Faith, A Defendant's Good Faith Will Not
        Insulate It From Discovery Obligations ............................................................ 15

CONCLUSION......................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Alfadda v. Fenn*,
149 F.R.D. 28 (S.D.N.Y. 1993) ....................................................................... 4

*Cf. Linde v. Arab Bank, PLC*,
262 F.R.D. 136 (E.D.N.Y. 2009) ..................................................................... 8

*Gucci America, Inc. v. Curveal Fashion*,
No. 09 Civ. 8458 (RJS) (THK), 2010 WL 808639 (S.D.N.Y. Mar. 8, 2010) ............. 8, 12

*In re Air Cargo Shipping Services Antitrust Litigation*,
No. 06-MD-1775, 2010 WL 1189341 (E.D.N.Y. March 29, 2010) ........................... 5, 11

*In re Vivendi Universal, S.A. Sec. Litig.*,
2006 WL 3378115 (S.D.N.Y. Nov. 16, 2006) ............................................ 5, 13

*In re Vivendi Universal, S.A. Securities Litig.*,
618 F.Supp.2d 335 (S.D.N.Y. 2009) ...................................................... 4, 7, 12

*Madanes v. Madanes*,
186 F.R.D. 279 (S.D.N.Y. 1999) ................................................................. 12

*Milliken & Co. v. Bank of China*,
No. 09 Civ. 6123(LMM) (JCF), 2010 WL 3291000
(S.D.N.Y. Aug. 11, 2010) ................................................................. 8, 9, 10, 15

*Minpeco, S.A. v. Conticommodity Services, Inc.*,
116 F.R.D. 517 (S.D.N.Y. 1987) .......................................................... 6, 14, 15

*Rationis Enters. Inc. of Panama v. Hyundai Mipo Dockyard Co.*,
426 F.3d 580 (2d Cir. 2005) .................................................................... 5

*Reino De Espana v. American Bureau of Shipping*,
No. 03 CIV 3573 LTSRLE, 2005 WL 1813017 (S.D.N.Y. Aug. 1, 2005) ............. 7, 9, 14

*S.E.C. v. Euro Sec. Fund*,
No. 98 CIV. 7347 (DLC), 1999 WL 182598 (S.D.N.Y. Apr. 2, 1999) ........................... 12

*Securities and Exchange Commission v. Banca Della Svizzera Italiana*,
92 F.R.D. 111 (D.C.N.Y. 1981) ................................................................. 12

*Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for the Southern Dist.*
*of Iowa ("Aérospatiale"),*
    482 U.S. 522, 107 S.Ct. 2542 (1987) ................................................................. 4, 6, 11, 15

*Strauss v. Credit Lyonnais, S.A.,*
    242 F.R.D. 199 (E.D.N.Y. 2007) ............................................................... 12, 13, 15

*Strauss v. Credit Lyonnais, S.A.,*
    249 F.R.D. 429 (E.D.N.Y. 2008) ...................................................................... passim

*Weiss v. National Westminster Bank, PLC,*
    242 F.R.D. 33 (E.D.N.Y. 2007) ...................................................................... 5, 7, 11

Lead Plaintiff, The State Treasurer of Michigan, as custodian of the Michigan Public School Employees' Retirement System, the State Employees' Retirement System, the Michigan State Police Retirement System, and the Michigan Judges Retirement System (collectively, "Lead Plaintiff"), respectfully submits this memorandum of law in support of its motion to compel the production of documents by defendants notwithstanding the possible application of foreign bank secrecy laws.

## PRELIMINARY STATEMENT

On November 5, 2010, this Court held a Status Conference at which, as requested by stipulation of the parties, the Court entered Case Management Order No. 1 ("CMO").  The CMO provides that "Defendants American International Group, Inc. ('AIG') and PricewaterhouseCoopers LLP ('PwC') shall produce by December 8, 2010, any non-work product documents relating to the matters alleged herein that they have already produced pursuant to investigations by any of the following entities:  the U.S. Department of Justice (the 'DOJ'); the U.S. Securities and Exchange Commission (the 'SEC'); and Financial Crisis Inquiry Commission ('FCIC')."  *See* CMO at ¶ 1.C.

At the Conference, however, AIG expressed the concern that the anticipated productions by AIG and PwC will include many documents that would be subject to certain foreign secrecy laws, and that AIG was unwilling to produce such documents in this litigation without first presenting this specific issue to the Court for adjudication.  Specifically, AIG contends that producing such documents would violate Article L. 511-33 of the French Monetary and Financial Code ("French banking secrecy law") and the French blocking statute N 68-678 ("French Blocking Statute"), which requires that the names of counterparties to certain transactions and other transaction-specific information be kept confidential. AIG further

represents that complying with the French banking secrecy law and French Blocking Statute requires redacting counterparty names and other deal-specific information or obtaining individual consent of each of the counterparties.  As a result, Lead Plaintiff brings this motion to compel the production of all previously produced documents, and others to be produced over the course of the litigation, notwithstanding any potential application of foreign secrecy laws.

AIG's previous document productions to the SEC, DOJ and FCIC comprise nearly 12 million pages of documents.  AIG has conditionally agreed to produce these same documents to Lead Plaintiff by December 8, 2010, subject to a further order of the Court.  However, AIG believes that as much as 80 to 90 percent of the production includes documents that would be subject to the French secrecy laws, and that the production of these documents to Lead Plaintiff could possibly subject it, or other the producing parties, to the imposition of penalties by French authorities.  Lead Plaintiff submits that the documents should be produced under prevailing law in this District and due to their clear importance to the prosecution of this case.

Moreover, much of the information that is theoretically implicated by the French secrecy laws – information about the terms of AIG's credit default swap ("CDS") contracts that AIG entered into with counterparties and the identities of the counterparties – is already available in the public domain.  For example, the identities of AIG's counterparties, and the terms of their CDS contracts with AIG, have been publicly disclosed in public press releases, in testimony given to the U.S. Congress, and in documents previously provided to Congress and the FCIC that are now on public websites.[1]   *See, e.g.,* accompanying Declaration of Jeffrey W. Golan in Support of Motion to Compel ("Golan Decl."), Exhibit 1, AIG Press Release, "AIG Discloses Counterparties to CDS, GIA and Securities Lending Transactions," dated March 15, 2009;

---

[1]  Despite the existence of some of the information in the public domain, Lead Plaintiff is entitled to a complete set of the relevant documents in defendants' possession.

Exhibit 2, Testimony of Edward M. Liddy before the House Financial Services Subcommittee on Capital Markets, Insurance and Government Sponsored Enterprises, dated March 18, 2009; Exhibit 3, Information regarding Maiden Lane III CDO Portfolio; Exhibit 4, Maiden Lane III Counterparty Briefers, dated November 5, 2008.  Many documents that similarly identify AIG's counterparties and terms of its CDS contracts – the information that French banking secrecy laws purportedly seek to protect – are already available to Lead Plaintiff and the public at large.

A balancing of the equities clearly shows that Lead Plaintiff is entitled to the documents already produced by defendants to U.S. authorities as well as all other documents bearing on the claims made in this case.  As described more thoroughly herein, the documents are highly relevant and vital to the litigation.  Most immediately, Lead Plaintiff seeks the sets of documents already produced by AIG and PwC to the SEC, DOJ and the FCIC.  These are clearly key documents for this litigation.  Later in the document discovery process, Lead Plaintiff will also be seeking the production of other documents by AIG and PwC, and by other defendants in the case, that may also contain information giving rise to concerns about foreign secrecy laws.  Lead Plaintiff has no realistic alternative for obtaining production of these documents, other than through the ordinary discovery processes of this Court.

Non-compliance with Lead Plaintiff's requests would also undermine important interests of the United States, including the interest in enforcing United States securities laws, fully and fairly adjudicating matters before its courts, and ensuring its citizens' compliance with the Federal Rules of Civil Procedure.  Such U.S. interests outweigh any competing interests that foreign nations may have in their privacy and banking secrecy laws, especially where, as here, the identities of the banking counterparties and terms of the CDS contracts with AIG are already matters of public record.  Furthermore, it is highly unlikely that AIG or any other entity or

person will experience any hardship in producing documents pursuant to Lead Plaintiff's document requests because (a) many of the documents have already been produced to U.S. Government authorities, (b) much of the pertinent information is already in the public domain, and (c) the actual threat of France or any other country that may have such secrecy laws imposing a penalty is minimal.  Finally, while AIG's concerns are clearly raised in good faith, the good faith of the producing party does not and should not insulate it from discovery obligations.

## PRINCIPLES GOVERNING THE MOTION

"It is well settled that [foreign] statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute."  *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for the Southern Dist. of Iowa ("Aérospatiale"),* 482 U.S. 522, 544 n.29, 107 S.Ct. 2542 (1987).  The "argument that American courts must defer and be subject to internal [foreign] law contravenes American law."  *Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 443 (E.D.N.Y. 2008).

**I.      The Party Resisting Discovery Has The Burden**
**Of Proving Production Violates Foreign Law**

When claiming that discovery is prohibited by foreign law, "the party relying on foreign law bears the burden of demonstrating that such law actually bars the production or testimony at issue."  *Alfadda v. Fenn*, 149 F.R.D. 28, 34 (S.D.N.Y. 1993); *see also In re Vivendi Universal, S.A. Securities Litig.*, 618 F.Supp.2d 335, 340 (S.D.N.Y. 2009) ("[w]here the forum's law requires production, the party resisting production bears the burden of demonstrating that a conflict of law exists").  "In order to meet that burden, the party resisting discovery must provide the Court with information of sufficient particularity and specificity to allow the Court to determine whether the discovery sought is indeed prohibited by foreign law."  *Id*.  The resisting

party must provide "*inter alia,* the provisions of the foreign law, the basis for its relevance, and the application of the foreign law to the facts of the case." *Weiss v. National Westminster Bank, PLC*, 242 F.R.D. 33, 41 (E.D.N.Y. 2007) (*quoting Rationis Enters. Inc. of Panama v. Hyundai Mipo Dockyard Co.,* 426 F.3d 580, 586 (2d Cir. 2005)).

Here, there are two arguably relevant foreign secrecy laws.  First, the French Blocking Statute purports to bar persons from seeking documents originating in France other than pursuant to Chapter II of the Hague Convention.   Second, French banking secrecy laws purportedly bar French banking entities from disclosing the identity of banking clients and the details of their banking relationships.[2]  However, courts have ruled that both types of laws can be overcome by a plaintiff who seeks relevant documents that may be subject to such foreign laws.  *See, e.g., In re Vivendi Universal, S.A. Sec. Litig.*, 2006 WL 3378115 (S.D.N.Y. Nov. 16, 2006) (ordering production of documents in securities case notwithstanding French "blocking" statute); *In re Air Cargo Shipping Services Antitrust Litigation*, No. 06-MD-1775, 2010 WL 1189341 (E.D.N.Y. March 29, 2010) (ordering production of documents in antitrust case notwithstanding French Blocking Statute); *Credit Lyonnais*, 249 F.R.D. 429 (ordering production notwithstanding French banking secrecy law).  Thus, when considering this issue, this Court has clear precedent that supports Lead Plaintiff's motion to compel defendants to produce the documents sought, notwithstanding the French banking and blocking statutes.

---

[2]  Translations of the French Blocking Statute and the French banking secrecy law are attached as Exhibits 5 and 6 to the Golan Declaration.

## II.     If Foreign Law Bars Discovery, The Court Should Complete A Comity Analysis

If the Court determines that the discovery sought is actually barred by foreign law, the Court must then undertake a comity[3] analysis to determine whether compliance by the producing party should be compelled.  Courts in the Second Circuit "consider the [] five factors elucidated by the Supreme Court in *Aérospatiale* and set forth in the Restatement (Third) of Foreign Relations Law of the United States § 442(1)(c)" and two additional factors established in *Minpeco, S.A. v. Conticommodity Services, Inc.*, 116 F.R.D. 517, 523 (S.D.N.Y. 1987).  *Credit Lyonnais,* 249 F.R.D. at 438 (*citing Aérospatiale,* 482 U.S. at 544 n.28).  The seven-factor test requires the Court to balance the following considerations:

(1)     The importance to the ... litigation of the documents or other information requested;

(2)     The degree of specificity of the request;

(3)     Whether the information originated in the United States;

(4)     The availability of alternative means of securing the information;

(5)     The extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine the important interests of the state where the information is located;

(6)     The hardship of compliance on the party or witness from whom discovery is sought; and

(7)     The good faith of the party resisting discovery.

*Credit Lyonnais*, 249 F.R.D. at 438-39.

---

[3] "Comity refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states."  *Aérospatiale,* 482 U.S. at 544 n.27.

## ARGUMENT

Each of the foregoing factors weighs in favor of compelling defendants to produce relevant documents in this case notwithstanding the possible application of foreign secrecy laws.

## I.     The Documents And Information Are Critical And Vital To The Litigation

U.S. courts have recognized that "the scope of civil discovery in the United States is broader than that of many foreign jurisdictions" and, therefore, "some courts have applied a more stringent test of relevancy when applying the Federal Rules to foreign discovery." *Weiss*, 242 F.R.D. at 43.   Nonetheless, where "information and testimony sought by plaintiffs are highly relevant and important to the claims and defenses in th[e] action … this first factor weighs heavily in [the compelling party's] favor." *Credit Lyonnais*, 249 F.R.D. at 440.   Courts have found that "production is favored when the evidence sought from the producing party is directly probative to the issues of the case." *Reino De Espana v. American Bureau of Shipping*, No. 03 CIV. 3573 LTSRLE, 2005 WL 1813017, at *7 (S.D.N.Y. Aug. 1, 2005).

Courts have diverged on how to precisely define the importance of the documents requested.   *Compare Reino De Espana*, 2005 WL 1813017 at *7 ("[i]n determining whether to issue a production order, the Court need only consider the relevancy of the requested documents. The Court does not need to find, nor can it find at this point, that the requested documents are 'vital' to a proper defense of this action") (internal quotations and citations omitted) *with Vivendi*, 618 F.Supp.2d at 342 ("[i]t is true that some courts have required that the requested documents be 'crucial' to plaintiffs' case for this factor to tip in favor of production").   However, one court in the Southern District of New York recently found such distinctions to be "unnecessary," recognizing that "the requested evidence need not be rigidly categorized as 'vital' or 'not vital.'   Rather, it is necessary only to judge the degree of importance of the information -

where it falls on the spectrum between merely relevant at one end and crucial at the other - and then weigh this along with all the other factors." *Milliken & Co. v. Bank of China*, No. 09 Civ. 6123 (LMM) (JCF), 2010 WL 3291000, at *6 (S.D.N.Y. Aug. 11, 2010).

The importance of the requested documents in this case is not in question. *Cf. Linde v. Arab Bank, PLC*, 262 F.R.D. 136, 150 (E.D.N.Y. 2009) (the fact that the importance of the documents to the litigation was in question was one factor weighing in favor of recognizing foreign state's confidentiality laws as a bar to discovery). Here, the discovery sought is central to Lead Plaintiff's claims. U.S. Government entities, including the SEC, DOJ and FCIC, subpoenaed the same documents at issue from defendants during their investigations, and the documents undoubtedly contain information that is both vital and crucial to Lead Plaintiff's claims. What the CDS portfolio included, how it was valued, AIG's dealings with its CDS counterparties, and whether the CDS portfolio was accurately described in AIG's public statements lie at the heart of this case. *See, e.g.,* Opinion and Order, filed September 27, 2010 (Docket No. 223), at 26-30. Accordingly, the first factor weighs in favor of compelling production of the documents by defendants.

## II.    The Request For Document Production Is Narrowly Tailored

The second factor requires that a party's discovery requests be "specifically tailored to [its] claims and the defenses in th[e] action." *Credit Lyonnais*, 249 F.R.D. at 441. This second factor clearly favors the requesting party where the discovery request seeks the production of "a specific, discrete source of information." *Gucci America, Inc. v. Curveal Fashion*, No. 09 Civ. 8458(RJS)(THK), 2010 WL 808639, at *3 (S.D.N.Y. Mar. 8, 2010). Discovery requests that are "sufficiently focused on the vital issues in th[e] case" and request "information [necessary] to establish liability" are considered to be narrowly tailored. *Credit Lyonnais*, 249 F.R.D. at 441.

The documents at issue here have been requested because they are highly relevant to Lead Plaintiff's claims and probative of defendants' defenses in this action. The documents that AIG has produced to U.S. Government authorities relate largely to issues concerning AIG's CDS portfolio that are also raised by this litigation. The initial production of documents, set for production by December 8, 2010 subject to a further order of the Court, have already been compiled, bates stamped and produced to U.S. Government authorities. The documents are electronically stored in one central database. Moreover, given the nature of the investigations conducted by the SEC, DOJ and FCIC, one can reasonably expect that the documents defendants produced to the U.S. authorities include the documents that, at the least, the SEC, DOJ and FCIC considered particularly relevant to their investigations. As such, Lead Plaintiff's request is clearly not overbroad or unduly burdensome and, accordingly, the second factor weighs in favor of granting Lead Plaintiff's request for production.

## III. The Volume of Documents Originating Outside Of The U.S. Is Unknown To Lead Plaintiff

The "third factor only addresses the physical location of the documents." *Milliken*, 2010 WL 3291000 at *7. When "all the information to be disclosed (and the people who will be deposed or who will produce the documents) are located in a foreign country, a court would be less inclined to order production since those people and documents are subject to the law of that country in the ordinary course of business." *Reino De Espana*, 2005 WL 1813017 at *9 (internal quotations and citations omitted).

Some of the documents and information requested by Lead Plaintiff may have originated in France. Although AIG as a corporate entity is a US-based company, it has a foreign subsidiary, Banque AIG, that was headquartered in France, and Banque AIG had a subsidiary, AIGFP, that was headquartered jointly in London, England and Wilton, Connecticut. The CDS

9

portfolio was created by the AIGFP unit of AIG.  However, what is not in dispute is that all of the documents Lead Plaintiff is seeking in the initial production of documents from AIG and PwC (and likely most of the documents that are being requested in this case) are already physically present in the United States, having been previously produced to U.S. authorities by AIG and PwC.  Dynamics such as whether the documents can be accessed in the United States, have been produced previously or can be retrieved electronically at a U.S. location – all of which are present here – thus also favor an order compelling their production in this case.  *See generally Credit Lyonnais*, 249 F.R.D. at 441 n.12.

## IV.   There Is No Reasonable Alternative Means Of Securing The Information

One court in the Southern District of New York has recognized that "[i]f the information sought can easily be obtained elsewhere, there is little or no reason to require a party to violate foreign law."  *Milliken,* 2010 WL 3291000 at *7 (internal quotations and citations omitted).  On the other hand, "if the information cannot be *easily obtained* through alternative means, this factor is said to counterbalance the previous factor - the location of the documents and information - and weighs in favor of disclosure."  *Id.* (emphases in original).

Although a few of the documents and information Lead Plaintiff seeks may currently exist in the public domain, Lead Plaintiff has no alternative means of obtaining a complete set of relevant documents possessed by defendants.  For example, AIG is the only party that has a comprehensive compilation of the documents that it produced to the SEC, DOJ and FCIC, and is the only party with access to all of its records relevant to the CDS portfolio and securities lending programs that lie at the heart of this case.  *Accord Credit Lyonnais*, 249 F.R.D. at 442 (acknowledging that only the defendant could provide plaintiffs with complete responses to their requested discovery).

Nor would it be feasible to force Lead Plaintiff to obtain the documents, whether they were originally located in France or the United Kingdom, pursuant to the Hague Convention. Not only would this cause enormous delay in the prosecution of this important case, but as the court held in *Weiss*, 242 F.R.D. at 45: "The United States Supreme Court, …, has determined that parties seeking discovery need not resort to the Hague Convention as their first and only means for securing foreign discovery, and that United States district courts retain jurisdiction to compel foreign discovery."  Indeed, in *Aérospatiale*, the Supreme Court underline refused to establish a rule requiring that a plaintiff first seek documents pursuant to the Hague Convention:

> [W]e cannot accept petitioners' invitation to announce a new rule of law that would require first resort to Convention procedures whenever discovery is sought from a foreign litigant. Assuming, without deciding, that we have the lawmaking power to do so, we are convinced that such a general rule would be unwise.  In many situations the Letter of Request procedure authorized by the Convention would be unduly time consuming and expensive, as well as less certain to produce needed evidence than direct use of the Federal Rules.  A rule of first resort in all cases would therefore be inconsistent with the overriding interest in the "just, speedy, and inexpensive determination" of litigation in our courts.

*Aérospatiale,* 482 U.S. at 542-43.  Accordingly, as the court recently stated in the *Air Cargo* antitrust litigation, while "there is no dispute that the Hague Convention affords an alternative means for securing the information, the outcome of a request pursuant to the Convention is by no means certain, and making the request will undeniably result in delays of unknown, and perhaps considerable, duration. Thus, the mere fact that the Hague Convention provides an alternative method for obtaining the documents is not proof that it is necessarily an effective, or efficient, method for doing so in this case."  *Air Cargo*, 2010 WL 1189341, at *2.  Because Lead Plaintiff has no reasonable alternative means of obtaining the requested documents, the fourth factor also weighs in favor of compelling production.

11

## V.    The United States' Interests Outweigh France's Interests

The fifth factor weighs the United States' interest in production of the documents versus the interests of foreign nations.  This factor is considered "the most important of the [] factors in Rst. § 442(1)(c)."  *Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 214 (E.D.N.Y. 2007).  This is because the balancing of national interests "directly addresses the relations between sovereign nations."  *Madanes v. Madanes*, 186 F.R.D. 279, 286 (S.D.N.Y. 1999).

### A.    U.S. Interests

It is axiomatic that "the United States has 'a substantial interest in fully and fairly adjudicating matters before its courts.'"  *Gucci*, 2010 WL 808639 at *5.  Further, there is "little doubt that the United States has a strong interest in enforcing its securities laws and ensuring the compliance of its citizens with the Federal Rules of Civil Procedure."  *Vivendi*, 618 F.Supp.2d at 341.  Courts have explicitly recognized that "[w]ith respect to a weighing of national interests, the United States possesses a keen interest in its securities markets…."  *S.E.C. v. Euro Sec. Fund*, No. 98 CIV. 7347(DLC), 1999 WL 182598, at *4 (S.D.N.Y. Apr. 2, 1999).  In sum, "[t]he strength of the United States interest in enforcing its securities laws to ensure the integrity of its financial markets cannot seriously be doubted."  *Securities and Exchange Commission v. Banca Della Svizzera Italiana*, 92 F.R.D. 111, 117 (D.C.N.Y. 1981).

### B.    Foreign Interests

The only discernable interest that France or other foreign nations may have in barring Lead Plaintiff's requested discovery is that various French laws may preclude disclosure of confidential information.  Notwithstanding this interest, however, "courts in this Circuit have already examined the French bank secrecy law and blocking statute, and denied their applicability to preclude discovery."  *Credit Lyonnais*, 242 F.R.D. at 220.  In *Credit Lyonnais*,

the court analyzed France's interest in banking and financial secrecy.  Indeed, the defendants in

that case attempted to contact French authorities for guidance regarding the production of

documents that might violate French law.  *Id*. at 219.  The court explained:

> The court presumes that if either the French government or CBSP objected to the
> production by Credit Lyonnais of information regarding CBSP's accounts, they
> would have so stated.  Although CBSP's disinterest in protecting its rights to bank
> secrecy may not constitute a waiver of that right, CBSP's lack of response
> demonstrates a lack of vigilance and interest in preserving its right to financial
> secrecy.  Similarly, where the French government's interests in its bank secrecy
> and other laws potentially affecting discovery are not asserted, the court need not
> give weight to those interests.

*Id.*  Subsequently, in *Credit Lyonnais* the French Ministry of Justice responded to defendants'

requests for guidance and issued letters confirming that the Hague Convention was the

"exclusive and mandatory" means by which to conduct discovery in a foreign state and failure to

abide by the Hague Convention "would clearly constitute a violation of the sovereignty of the

French State."  *Credit Lyonnais*, 249 F.R.D. at 448.  However, even after the French authorities

proactively demonstrated their interests in bank and financial secrecy, the court found "the

French Ministry's letter has added little to the analysis that justifies altering in any significant

way the court's prior balancing of the national interests."  *Id.* at 448.

Similarly, as to the French Blocking Statute, France's interest in its enforcement is

minimal.  As several courts have recognized, the legislative history of the French Blocking

Statute suggests that the statute was not expected to be enforced against French subjects, but was

primarily intended to provide them with tactical weapons and bargaining chips in foreign courts.

*See Vivendi*, 2006 WL 3378115 at *3 (and cases cited therein).  Accordingly, "[t]he majority of

courts that have examined the issue have held that France has little interest in the enforcement of

its Blocking statute."  *Id.*

Clearly, the United States' interests in enforcement of its securities laws, the full and fair adjudication of matters in its courts and its citizen's compliance with the Federal Rules of Civil Procedure outweigh the vague interests France or other foreign nations may have in their privacy and banking secrecy statutes.  This is particularly true in this case which has such significant public importance, and where the parent company is a US-based company.  Therefore, the fifth factor weighs in favor of requiring defendants to produce documents that may arguably be subject to such foreign secrecy laws.

## VI.   There Would Be No Hardship On Defendants In Complying With The Request

The "second most important factor in the analysis [is] the potential hardship imposed on the producing party."  *Reino De Espana*, 2005 WL 1813017 at *8.  "In focusing on this factor, courts have considered the sanctions that may be imposed upon those who violate the foreign law, as well as the threat of prosecution."  *Id.*   In addition to examining the severity of the foreign penalties that could be imposed, "courts also look at the *likelihood* that enforcement of foreign law will be successful."  *Minpeco,* 116 F.R.D. at 526 (emphasis added).

AIG has provided no evidence in the form of letters, affidavits, declarations or the like to suggest there is any real danger of France enforcing its privacy and banking secrecy laws and actually imposing a penalty.  In addition to producing over 12 million pages of documents to the U.S. Government authorities, AIG has also publicly identified its CDS counterparties in press releases and in testimony before Congress.  *See, e.g.,* Golan Decl., Exhibits 1 and 2.  In the over eighteen months since those disclosures occurred, it does not appear that AIG has been subject to any penalties, not have the French authorities made any finding that AIG acted in contravention of any French law.

Indeed, courts in this country have noted that there is "no significant risk of prosecution for violations of the French blocking statute." *Credit Lyonais*, 242 F.R.D. at 221.  Not only is there a lack of any prosecutions for supposed violations of the blocking statute, but, as the court in *Credit Lyonnais* found, "'the language of the statute, if taken literally, would appear to represent an extraordinary exercise of legislative jurisdiction by the Republic of France over a United States district judge,' and thus the French blocking statute is not a basis for denying discovery." *Id*. at 220 (*quoting Aérospatiale*, 482 U.S. at 544 n.29).

Finally, neither AIG nor PwC can claim that producing the initial set of documents to Lead Plaintiff would be burdensome in any respect.  The documents have already been collected, sorted, bates stamped and produced to U.S. authorities.  They have been scanned into electronic format and are housed in a central database.  Thus, there would be no hardship in producing the documents to Lead Plaintiff.  Thus, the sixth factor also favors requiring the production of the documents to Lead Plaintiff.

**VII.    Even Where Acting In Good Faith, A Defendant's Good
Faith Will Not Insulate It From Discovery Obligations**

The seventh factor relates to the good faith or bad faith of a party seeking to avoid production of documents based on foreign secrecy laws.  Thus, for instance, bad faith on the part of parties resisting production has been found where they "relied on a sham law such as a blocking statute to refuse disclosure" or "not made reasonable efforts to apply to the appropriate governmental authority for an exemption to such a statute."  *Minpeco,* 116 F.R.D. at 528 (citations omitted).  But, as the *Milliken* court found, although "good faith will not insulate a party from the obligation to respond in discovery, '[b]ad faith delays and dilatory tactics will weigh against the objecting party.'"  *Milliken*, 2010 WL 3291000 at *9.  *See also*, *Credit Lyonais*, 242 F.R.D. at 456.

Here, Lead Plaintiff is not calling into question the good faith of AIG or PwC.  Both of these defendants have agreed to produce to Lead Plaintiff, by December 8, 2010, the same documents they earlier produced to the SEC, DOJ and FCIC, but have raised concerns that producing such documents could arguably violate foreign secrecy laws.  But, as courts have ruled, even the good faith of a producing party does not insulate that party from its discovery obligations.

Thus, while there is no claim that any party defendant is acting in bad faith, this factor nonetheless weighs in favor of compelling defendants to produce relevant documents, despite the existence of foreign secrecy laws.

## **CONCLUSION**

As the balance of equities clearly favors production of the documents, Lead Plaintiff respectfully requests that the Court grant its motion and enter an order compelling defendants AIG and PwC to produce by December 8, 2010, the documents they previously produced to the SEC, DOJ and FCIC, and further compelling defendants to respond to Lead Plaintiffs' discovery requests notwithstanding that foreign secrecy laws may arguably apply to such discovery requests.

Dated: November 12, 2010

Respectfully submitted,

**BARRACK, RODOS & BACINE**

**THE MILLER LAW FIRM, P.C.**

/s/ Jeffrey W. Golan
Leonard Barrack
Jeffrey W. Golan (*pro hac vice*)
M. Richard Komins
Robert A. Hoffman
Lisa M. Lamb
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
Tel.:  (215) 963-0600

/s/ E. Powell Miller
E. Powell Miller (*pro hac vice*)
Marc L. Newman (*pro hac vice*)
David H. Fink
Jayson E. Blake
Christopher D. Kaye
Miller Building
950 West University Drive, Suite 300
Rochester, MI 48307
Tel.: (248) 841-2200

A. Arnold Gershon (AG – 3809)
Regina M. Calcaterra (RC- 3858)
425 Park Avenue, Suite 3100
New York, New York 10022
Tel.:  (212) 688-0782

*Attorneys for Lead Plaintiff, State of Michigan Retirement Systems,*
*and Lead Counsel for the Putative Class*