UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

IN RE AMERICAN INTERNATIONAL GROUP,   :   No.  08 CV 4772 (LTS)
INC. 2008 SECURITIES LITIGATION
                                       :

------------------------------------------------------------------x

# DEFENDANT AMERICAN INTERNATIONAL GROUP, INC.'S
# OPPOSITION TO LEAD PLAINTIFF'S MOTION TO COMPEL THE PRODUCTION OF
# DOCUMENTS BY DEFENDANTS NOTWITHSTANDING FOREIGN SECRECY LAWS

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
(212) 310-8007 (fax)

*Attorneys for Defendant*
*American International Group, Inc.*

November 18, 2010

US_ACTIVE:\43560506\03\14430.0044

## TABLE OF CONTENTS

**Page**

BACKGROUND ............................................................................................................................ 1

ARGUMENT .................................................................................................................................. 3

I.      Production of the Requested Information Will Violate French Law ................................. 3

CONCLUSION ............................................................................................................................... 7

Lead Plaintiff has moved to compel the production of documents and other data containing information that is protected from disclosure under Article L. 511-13 of the French Monetary and Financial Code ("French banking secrecy law").  Defendant American International Group, Inc. ("AIG") respectfully submits this Memorandum in opposition to the motion to compel ("Motion" or "Mot.").

## BACKGROUND

On November 5, 2010, the Court held a status conference and entered Case Management Order No. 1 ("CMO"), which provides for, *inter alia*, the schedule governing fact discovery in this action.  Pursuant to Paragraph I.C., defendants AIG and PricewaterhouseCoopers ("PwC") are required to produce by December 8, 2010 documents relating to the matters at issue in the action that were previously produced to the U.S. Securities Exchange Commission ("SEC"), U.S. Department of Justice ("DOJ") and the U.S. Financial Crisis Inquiry Commission ("FCIC").  The CMO further provides that Lead Plaintiff may request additional documents from all defendants and that substantial production of responsive documents shall be completed by April 15, 2011.  *See* CMO ¶ I.D.

AIG informed Lead Plaintiff's counsel prior to the conference and raised with the Court during the conference that many of the documents previously produced to the SEC, DOJ and FCIC contain information subject to the restrictions of the French banking secrecy law.  Specifically, the documents contain information, including counterparty names and certain deal-specific information, relating to credit default swaps ("CDS") and other transactions entered into or arranged by the Paris office and London branch of Banque AIG, a licensed French credit institution and wholly owned subsidiary of AIG Financial Products Corp ("AIGFP"), which is a

wholly owned subsidiary of AIG. Additional documents that may be requested from defendants in this action will likely include similar information.

As described more fully below, the French banking secrecy law requires that the names of counterparties to transactions entered into or arranged by a French credit institution, like Banque AIG or its branches, and other transaction-specific information be kept confidential and not be disclosed to third parties outside of narrowly defined exceptions not applicable here. In order to comply with French banking secrecy law, defendants in this action will have to redact protected information in millions of pages of documents or obtain the consent of each affected counterparty. Indeed, AIG alone produced over 12 million pages of documents to the SEC, DOJ and FCIC. To comply with French law, AIG will have to review the entire production and either identify and redact the confidential information or identify each of the affected counterparties and seek its individual consent. AIG estimates that approximately 13 counterparties with respect to the multi-sector CDSs and all counterparties with respect to the regulatory capital CDSs referred to in the documents are affected. Of course, even identifying the affected counterparties would require a full review of the requested materials.

Additionally, the French statute N. 68-678 ("French Blocking Statute") requires that foreign litigants request documents containing information subject to French banking secrecy law through the Hague Convention, which Lead Plaintiff has not done. Production of documents or information in violation of both laws carries with it potential civil and criminal penalties.

In short, French banking secrecy law applies and prohibits disclosure of the requested information. Given the clear provisions of the French statutes at issue and the need for a substantial period of time (at least three months) to review the production to comply with the

French statute, the Court should deny the motion to compel and adjust the time periods set forth in the CMO for the production of documents to allow for such a review.

## ARGUMENT

### I.  Production of the Requested Information Will Violate French Law

The French banking secrecy law prohibits credit institutions licensed in France and those persons working for or on behalf of such institutions from disclosing to third parties any confidential information about counterparties to transactions written or arranged by the credit institution.  *See* Declaration of Francis Teitgen, dated November 18, 2010, ¶¶ 8-9 ("Teitgen Decl.").

Article L. 511-33 states in relevant part that "[a]ny member of a Board of Directors and, if applicable, of a Supervisory Board, and any person who, in whatever capacity, participates in the management or administration of a credit institution . . . or is employed by one is bound by professional secrecy."  Translation of Article L. 511-33, Mot. at Ex. 5, p.1; Teitgen Decl. ¶ 8.  Article L. 511-33 has been interpreted to apply to the credit institution itself and any branches or subsidiaries, even if located outside of France.  *See* Teitgen Decl. ¶ 9.  Thus, because Banque AIG is a French credit institution, its London branch is subject to French banking secrecy law.  Likewise, information obtained from Banque AIG and its London branch by its parent company AIGFP and AIG is subject to French banking secrecy law.  *See id.* at ¶ 9. The French banking secrecy law applies to documents created or located outside of France if the documents contain protected information.  *See id.*

Information protected by the French banking secrecy law includes the name of the counterparty, the counterparty's financial information and details of the agreement or trade from which the counterparty can be identified, such as CUSIP number or the notional/aggregate amount of the trade.  *See id.* at ¶ 7.  Thus, the names of counterparties and deal-specific

information relating to the credit default swaps at issue in this action, and written or arranged by Banque AIG's London branch or Paris office, are protected from disclosure under the French banking secrecy law.  *Id.*

French banking secrecy law generally prohibits the disclosure of such information unless the affected counterparty expressly consents to disclosure.  *See id.* at ¶ 11.  Although Article L. 511-33 contains certain narrow exceptions to the banking secrecy requirement, these exceptions are not applicable to the production of the information at issue here in a U.S. litigation.  *See id.* at ¶ 10.  In the absence of express consent, protected information must be redacted or withheld from production.  Lead Plaintiff contends that the information cannot be redacted because it is relevant to its claims.  *See* Mot. at 3, 7-8.

Lead Plaintiff also argues that the prior production of requested documents to the SEC, DOJ and FCIC weighs in favor of their production in this action.  *See id.* at 14.  However, the documents were previously provided to the SEC, DOJ and FCIC in the context of quick-moving governmental investigations, under threat of legal compulsion and pursuant to a confidentiality arrangement.

Lead Plaintiff similarly argues that much of the potentially protected information has been made public and thus, should be compelled to be produced in this action.  *See id.* at 14.  However, any potentially protected information that has been made public has generally been leaked to the media by sources other than AIG.[1]  In any event, disclosure by AIG and potentially other defendants of documents that contain information subject to the French banking secrecy

---

[1] Lead Plaintiff contends further that "AIG has also publicly identified its CDS counterparties in press releases and in testimony before Congress."  *Id.* at 14.  It is true that certain disclosures have been made in SEC filings and Congressional testimony of the counterparties at issue largely in response to such leaks, but all of the names with respect to all of the swaps have not been disclosed and, in any event, additional disclosures create new potential violations of French law.  *See* Teitgen Decl. ¶ 12.

law, regardless of whether previously disclosed to other parties or agencies or otherwise made public, constitutes a violation of the French banking secrecy law and could result in criminal and/or civil penalties.  See Teitgen Decl. ¶ 12.

Specifically, French law provides for criminal penalties for a violation of the French banking secrecy law.  Article 571-4 of the FMFC states that "[t]he fact of the persons referred to in Articles L. 511-33 and L. 511-34 violating professional secrecy shall incur the penalties provided for in Articles 226-13 and 226-14 of the Criminal Code."  Id. at ¶ 13; see also Mot. at Ex. 5, p.2.  Article 226-13 of the French Criminal Code ("FCC") states that "[t]he disclosure of secret information by a person entrusted with such a secret, either because of his position or profession, or because of a temporary function or mission, is punished by one year's imprisonment and a fine of EUR 15,000."  Teitgen Decl. ¶ 13; see also Mot. at Ex. 5, p.2.  Additionally, under Article 121-2 of the FCC, a company may be held criminally liable and punished by a fine of up to EUR 75,000 for an offense committed on behalf of a company by its board members, executives, employees or agents.  Teitgen Decl. ¶ 13.

French law also provides for civil penalties for a breach of the banking secrecy law.  Both the individual who violated the banking secrecy law and the legal entity of which he is a board member, executive, employee or agent may be held civilly liable for damages actually incurred by the counterparty as a consequence of the disclosure.  Id. at ¶ 14.  Although Lead Plaintiff contends that it is unlikely that AIG or defendants will face prosecution or other action in France for violating the banking secrecy law if it produced the requested documents, in part because AIG has not as yet been sued (see Mot. at 14), Lead Plaintiff cannot deny that AIG faces risk of such action if it violates the law.  See Teitgen Decl. ¶ 18.

Finally, any requests for information derived from a French credit institution or branches thereof, must comply with the French Blocking Statute N 68-678, as enacted in 1968 and amended in 1980. *See id.* at ¶ 15. Under Article 1 bis of the French Blocking Statute, "subject to applicable international treaties, laws and regulations, it is prohibited for any person to request, seek or transmit, in writing, orally or in any other form, economic, commercial, industrial, financial or technical documents or information intended to serve as evidence in preparation for foreign legal or administrative proceedings or within the framework of such proceedings." Translation of Law N. 68-678, Mot. at Ex. 6, p.2; *see also* Teitgen Decl. at ¶ 15. The purpose of the French Blocking Statute is to require foreign parties to comply with the mechanisms provided for by the Hague Convention of March 18, 1970 on the Taking of Evidence Abroad in Civil and Commercial Matters ("Hague Convention"). Teitgen Decl. at ¶ 15.

Under the Hague Convention, a party in the United States may obtain evidence derived from French credit institutions only by means of letters rogatory or consular commissions through requests submitted to the French Ministry. *Id.* at ¶ 16. By virtue of these mechanisms, French banking secrecy law applies to information requested from French credit institutions and a producing party is required to redact protected information or seek consent from counterparties prior to production. *Id.* at ¶ 15-16. Lead Plaintiff has admittedly not sought information through the Hague Convention. Article 3 of the French Blocking Statute provides that the production of information in violation of the French Blocking Statute is punishable by up to six months of imprisonment and a fine of up to EUR 18,000. *Id.* at ¶ 18.

In sum, production of documents containing information protected by the French banking secrecy law will constitute a violation of the French banking secrecy laws and the

French Blocking Statute and subject AIG and potentially other defendants to potential criminal and civil penalties.[2]

## CONCLUSION

For all the foregoing reasons, AIG respectfully requests that the Court deny Lead Plaintiff's Motion to Compel and adjust the time frames for the production of documents set forth in the CMO to be delayed by three months, with opportunity to further adjust in the future.

Dated: New York, New York
November 18, 2010

Respectfully submitted,

/s/ Joseph S. Allerhand
Joseph S. Allerhand
Robert F. Carangelo
Stacy Nettleton
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

*Attorneys for Defendant*
*American International Group, Inc.*

---

[2] The requested counterparty and other transaction-related information may be similarly protected from disclosure by the confidentiality laws of England and Wales. However, the English duty of confidentiality with respect to such information contains an exception allowing for production if the producing party is compelled by law to disclose the information. *See Tournier v National Provincial and Union Bank of England* [1924] 1 KB 461. Thus, to the extent AIG is compelled to produce information in this litigation pursuant to the CMO or a future order of this Court, the English duty of confidentiality does not apply.