Andrew E. Tomback (AT-6944)
Dorothy Heyl (DH-1601)
Thomas Santoro (TS-9702)
MILBANK, TWEED, HADLEY & McCLOY LLP
1 Chase Manhattan Plaza
New York, NY  10005-1413
(212) 530-5000

*Attorneys for Defendant Alan Frost*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: AMERICAN INTERNATIONAL GROUP, INC. 2008 SECURITIES LITIGATION, | Master File No.: 08-CV-4772 (LTS)(KNF) **ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT ALAN FROST** |

**ANSWER OF DEFENDANT ALAN FROST**

Defendant Alan Frost (hereinafter referred to as "Frost"), by his undersigned counsel, hereby answers the Amended Consolidated Class Action Complaint dated May 19, 2009, ("Complaint"),[1] as follows:

Answering the preamble to the Complaint, Frost admits that Lead Plaintiff, as defined therein (hereinafter referred to as "Plaintiffs"), brings this action alleging violations of federal securities laws for its own benefit and that of a purported class.  Frost denies that discovery will yield evidentiary support for Plaintiffs' allegations, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the preamble, except refers to the documents listed therein for the best evidence of their contents.

**NATURE OF THE ACTION**

1.      Frost admits that the predecessor of American International Group. Inc. ("AIG") was founded in Shanghai by C.V. Starr in or around 1919, was formerly headed by Maurice Greenberg and went public in 1969.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 1.

2.      Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2 and refers to AIG's SEC filings for the best evidence of their contents.

3.      Frost admits that AIG's stock is listed on the New York Stock Exchange and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 3.

---

[1] The Complaint contains numerous headings that are not part of a numbered paragraph.  To the extent any of these headings are allegations directed Frost, they are denied.

4.      Frost admits that American International Group Financial Products Corp. ("AIGFP") was a subsidiary of AIG, with offices in London, England; Wilton, Connecticut; Paris, France; and Tokyo, Japan.  Frost admits that the U.S. offices were initially in New York City, and that AIGFP moved to Wilton, Connecticut, in or around 2002.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 4.

5.      Frost admits that AIGFP became a subsidiary of AIG at some point and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 5.

6.      Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6.

7.      Frost admits that Martin Sullivan replaced Greenberg as the President and CEO of AIG at some point.  Frost admits that Joseph Cassano became the CEO of AIGFP in or around 2002.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 7.

8.      Frost admits that AIGFP entered into CDSs on multi-sector CDOs ("multi-sector CDSs") and that in early 2006, AIGFP decided to stop writing new swaps on multi-sector CDOs that included subprime mortgage collateral because of concerns over deteriorating underwriting standards for subprime mortgages.  Frost denies  knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 8.

9.      Frost denies the allegations in paragraph 9 to the extent they pertain to him, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 9.

10.     Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10.

11.     Frost admits that the CDS agreements had collateral provisions, refers to the CDS agreements as the best evidence of their terms and denies the remaining allegations in paragraph 11.

12.     Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12.

13.     Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13, and refers to the 2005, 2006 and 2007 financial statements referred to in paragraph 13 as the best evidence of their contents.

14.     Frost denies that he ever made statements or representations to AIG's existing or prospective shareholders concerning AIG or AIGFP ("public statements"), including with respect to AIG's investments or risk profile, and denies that he ever made any public statements in which he "downplayed" risks.  Frost admits that AIGFP's portfolio of multi-sector CDSs included CDOs containing RMBSs.  Frost further admits that AIG received a loan from the Federal Reserve Bank of New York on September 16, 2008.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 14.

15.     Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 and refers to AIG's 2005 and 2006 Forms 10-K as the best evidence of their contents.

16.     Frost denies that he ever made public statements, including with respect to AIG's or AIGFP's investments or risk profiles and denies the allegations in paragraph 16 to the

extent they pertain to him.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 16.

17.     Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17.

18.     Frost denies the allegations in paragraph 18 to the extent they pertain to him, and refers to the various public statements referred to in paragraph 18 for the best evidence of their contents.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 18.

19.     Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19, and refers to the minutes of AIG's Audit Committee meeting and statements by Joseph St. Denis to Congress as the best evidence of their contents.

20.     Frost denies the allegations in paragraph 20 to the extent they pertain to him, denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 20, and refers to the February 11, 2008 Form 8-K referred to therein as the best evidence of its contents.

21.     Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21, and refers to AIG's May 2008 announcement as the best evidence of its contents.

22-25.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 22-25.

26.     Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26, and refers to any recording or transcript of the March 16, 2009 statements by Barack Obama and any recording or transcript of the March 15, 2009 episode

of "60 Minutes", and the March 15, 2009 episode of "This Week" as the best evidence of these statements.

27.     Paragraph 27 purports to state legal conclusions, to which no response is required.  To the extent a response is required, Frost denies the allegations in paragraph 27 to the extent they pertain to him, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 27.

28.     Paragraph 28 purports to state a legal conclusion, to which no response is required.

**The Claims Asserted in the Complaint**

29.     Paragraph 29 purports to state legal conclusions, to which no response is required.  To the extent a response is required, Frost denies the allegations in the first sentence of paragraph 29 to the extent they pertain to him, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 29.

30.     The first sentence of paragraph 30 purports to state a legal conclusion, to which no response is required.  To the extent a response is required, Frost denies the allegations in the first sentence of paragraph 30 to the extent they pertain to him.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 30, and refers to the offering documents referred to in paragraph 30 as the best evidence of their contents.

JURISDICTION AND VENUE

31-33.  Paragraphs 31-33 purport to state legal conclusions, to which no response is required.  To the extent a response is required, Frost denies the allegations in paragraphs 31-33

to the extent they pertain to him.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraphs 31-33.

**PARTIES**

I.    **Plaintiffs**

    A.    **Lead Plaintiff**

        34.    Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34.

    B.    **Other Plaintiffs**

        35-39.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 35-39.

II.    **Defendants**

    A.    **AIG**

        40.    Frost admits that AIG is located at 70 Pine Street in New York; that AIG's stock is listed on the New York Stock Exchange under the ticker symbol "AIG"; and that AIG was one of the stocks within the Dow Jones Industrial Average.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 40.

    B.    **The Executive Defendants**

        41.    Frost admits that Sullivan was president and CEO of AIG from March 2006 to June 2008.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 41.

        42.    Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 42.

43. Frost admits that Joseph Cassano served as CEO of AIGFP and refers to the Wall Street Journal article of April 28, 2009, for the best evidence of its contents. Frost denies that the SEC and Department of Justice are currently conducting any investigation involving AIGFP or any AIGFP employees and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 43.

44. Frost admits that Andrew Forster was an Executive Vice President of AIGFP, refers to the Wall Street Journal article of April 28, 2009, for the best evidence of its contents, denies that the SEC and Department of Justice are currently conducting any investigation involving AIGFP or its employees, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 44.

45. Frost admits that he was an Executive Vice President of AIGFP from approximately January 2006 to October 2008 and that he reported directly to Cassano beginning in January 2006. Frost denies the remaining allegations in paragraph 45.

46. Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 46.

47. Frost admits that Robert Lewis was a Senior Vice President of AIG and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 47.

48. Frost admits that Thomas Athan worked at AIGFP in the Wilton, Connecticut office, and before that Athan worked for Société Générale. Frost refers to the Wall Street Journal article of April 28, 2009, for the best evidence of its contents, denies that the SEC and Department of Justice are currently conducting any investigation involving AIGFP or its

employees, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 48.

      49.    Frost denies the Complaint's characterization of him as an "Executive Defendant" in paragraph 49 as it purports to group him with executives at AIG, an entity for which he never worked.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 49.

      50.    Frost admits that the complaint refers collectively to Defendants Sullivan, Bensinger, Cassano, Forster, Herzog, and Lewis as the "Section 10(b) Defendants" and denies that he, Frost, is a Section 10(b) defendant.

**C.    The Underwriter Defendants**

      51-52.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 51-52.

**D.    The Director Defendants**

      53-70.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 53-70.

**E.    PricewaterhouseCoopers LLP**

      70-71.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 70-71.

## CLASS ACTION ALLEGATIONS

      72.    Paragraph 72 purports to state legal conclusions to which no response is required.  To the extent a response is required, Frost denies the allegations in paragraph 72 to the extent they pertain to him.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 72.

73.     Frost admits that the Complaint purports to exclude various parties from the alleged class.

74-80.  Paragraphs 74-80 purport to state legal conclusions to which no response is required.  To the extent a response is required, Frost denies the allegations in paragraphs 74-80 to the extent they pertain to him.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraphs 74-80.

## BACKGROUND FACTS

### I.      AIG and the Establishment of AIGFP

81.     Frost admits that AIG was founded in Shanghai in or around 1919, was formerly headed by Maurice Greenberg, and is a publicly traded company.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 81.

82.     Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 82.

83.     Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 83.

84.     Frost admits he was aware that Howard Sosin left in 1993 and that AIGFP's business grew over time.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 84.

85.     Frost denies the allegations in paragraph 85, except admits that Tom Savage managed AIGFP for a period of time.

### II.     AIGFP Starts Writing Credit Default Swap Contracts

86.     Frost denies knowledge or information sufficient to form a belief as to the

-10-

truth of the allegations in paragraph 86.

87.     Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 87 and refers to the Washington Post article referred to in paragraph 87 for the best evidence of its contents.

88.     Frost denies the allegations of paragraph 88, except admits that Cassano took over as CEO of AIGFP following Savage's departure.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 88 and refers to the New Republic referred to in paragraph 88 for the best evidence of its contents.

89.     Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 89, and refers to the DOJ and SEC pleadings and AIG's public filings from 2000-2004 referred to in paragraph 89 as the best evidence of their contents.

90.     Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 90, and refers to AIG's 2005 10-K for the best evidence of its contents.

91.     Frost admits that AIG's credit rating was downgraded around March 2005, and refers to the announcements from the ratings agencies referred to in paragraph 91 for the best evidence of their contents.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 91.

92.     Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 92.

93.     Frost denies the allegations in paragraph 93 to the extent they pertain to him and refers to the Time Magazine article referred to in paragraph 93 for the best evidence of

its contents.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 93.

94.     Frost denies the allegations of paragraph 94 to the extent they pertain to him except admits that AIGFP entered into credit default swap transactions and refers to the CDS agreements as the best evidence of their terms.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 94.

95.     Frost denies that AIGFP wrote CDS protection in multiples of the notional for any individual multi-sector CDO, refers to the March 19, 2009 Time Magazine article as the best evidence of its contents, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 95.

96.     Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 96, and refers to any recording or transcript of the October 7, 2008 Congressional testimony of Eric Dinallo as the best evidence of Dinallo's testimony.

97.     Frost denies that AIGFP acted as a "hedge fund."  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 97, and refers to the Commodity Futures Modernization Act of 2000 and the Time Magazine article dated March 19, 2009, as the best evidence of their contents.

98.     Frost denies the first sentence of paragraph 98.  Frost admits that AIGFP wrote CDS contracts that reference the super-senior layers of multi-sector CDOs and that CDOs are tranched.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 98.

99.     Frost denies the allegations of paragraph 99, including that the terms "CDO squared" and "synthetic CDO" are interchangeable, except admits that a CDO may

include RMBSs containing mortgages from diverse geographic areas, or may be backed by other kinds of securities including, at times, securities issued by other CDOs.

100.   Frost denies that paragraph 100 accurately describes the matters it purports to describe.

101.   Frost denies the allegations in paragraph 101.

102-106.  Frost denies the allegations in paragraphs 102-106 to the extent they pertain to him, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraphs 102-106.

### III.   AIGFP's Decision to Stop Writing Credit Default Swaps

107.  Frost denies the allegations in paragraph 107 to the extent they pertain to him, refers to the article in the Washington Post for the best evidence of its contents, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 107.

108.   Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 108, and refers to the article in the New Republic for the best evidence of its contents.

109.   Frost admits that in January 2006 he ceased having significant involvement in marketing credit default swaps, that Eugene Park took his place in January 2006 in marketing credit derivatives, and that in or around January 2006 Frost began reporting directly to Cassano.  Frost denies that he was ever "in charge of marketing credit default swaps," denies that Park ever "ran AIGFP's North American corporate credit derivative portfolio," and denies the remaining allegations in paragraph 109 to the extent they pertain to him.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in paragraph 109, and refers to Washington Post article referred to in paragraph 109 for the best evidence of its contents.

110.     Frost admits that in or around late 2005 and early 2006 he and others at AIGFP analyzed the subprime market and the risk of entering into new transactions involving subprime RMBS.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 110.

111.     Frost denies the allegations in paragraph 111 to the extent they pertain to him, except admits that AIGFP used a model developed by Professor Gary Gorton in its multi-sector CDS business, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 111.

112.     Frost denies the allegations in paragraph 112 to the extent they pertain to him, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 112.

113-114.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 113-114.

115.     Frost denies the allegations in paragraphs 115 to the extent they pertain to him, denies that he had any role in AIG's disclosures, denies that AIGFP's decision to stop writing new CDSs was not disclosed, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 115.

## IV.    AIG's Exposure to the Unhedged Risks of AIGFP's Credit Default Swaps

116.    Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 116, except admits that multi-sector CDSs remained on AIGFP's books.

117-119. Frost denies the allegations in paragraphs 117-119 to the extent they pertain to him, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraphs 117-119.

120.  Frost denies the allegations in paragraph 120 to the extent they pertain to him, denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 120, and refers to GAAP for the best evidence of what it provides.

121.    Frost denies the allegations in paragraph 121 to the extent they pertain to him, except admits that many of the multi-sector CDSs contained collateral provisions, denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 121, and refers to the CDS agreements as the best evidence of their terms.

122.    Frost denies the allegations in paragraph 122 to the extent they pertain to him, denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 122, and refers to the CDS agreements as the best evidence of their terms.

123.    Frost denies that reinvestments by a CDO manager, as permitted by CDS agreements, generated cash flow for servicing CDSs, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 123.

124.     Frost denies the allegations in paragraph 124 to the extent they pertain to him, and denies knowledge or information sufficient to a belief as to the truth of the remaining allegations in paragraph 124.

125.     Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 125.

126.     Frost avers that he performed his duties in his capacity as a marketer consistent with company practices and his fiduciary duties to his employer in order to benefit his employer.  Frost denies the remaining allegations in paragraph 126 to the extent they pertain to him, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 126.

127.     Frost denies that AIGFP preferred CDOs known as "mezzanine deals" or that such deals generated more revenue per dollar of risk than other types of deals, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 127.

## V.     AIG Loosens Controls on AIGFP After Greenberg's Departure

128.     Frost admits that AIGFP had offices in London, England and Wilton, Connecticut, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 128.

129.     Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 129, and refers to articles in the September 28, 2008 Portfolio magazine, The New Republic, and the New York Times (referred to in paragraph 129) for the best evidence of their contents.

130.     Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 130, and refers to the article in The New Republic for the best evidence of its contents.

131.     Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 131, and refers to the Audit Committee minutes of March 11, 2008 for the best evidence of their contents.

132.     Plaintiffs have conceded they erred in paragraph 132 of their complaint because Frost was never reported to be the subject of a criminal investigation by the DOJ.[2]  Frost denies that any group known as the "asset group," "credit group" or the "Assets/Credit Group" was based in the U.S.  Frost denies that he headed, or was ever part of, any such group.  Frost denies that the "credit default swap business" was "run out of" AIGFP's office in Wilton, Connecticut, except admits that Adam Budnick and Tom Athan reported to Andrew Forster.  Frost admits that AIGFP operated a number of business groups, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 132.

133.     Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 133, except to admit that the "asset group" or the "credit group" was based in London.

134.     Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 134.

---

[2] Exhibit to Declaration of D. Heyl, dated August 5, 2009.  The DoJ investigation, as well as the investigation conducted by the SEC, has been concluded after a two-year inquiry with no civil or criminal changes brought.

135.    Frost denies the allegations in paragraph 135 to the extent they pertain to him, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 135.

136.    Frost denies the allegations in paragraph 136 to the extent they pertain to him, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 136.  Frost avers he provided all information to AIG that AIG requested concerning approvals of multi-sector CDSs.

137.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 137.

138.    Frost denies the allegations in paragraph 138 to the extent they pertain to him and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 138.

139.    Frost admits that Jason DeSantis was an Executive Vice President of AIGFP and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 139, and refers to the March 24, 2009 New York Times publication of the DeSantis letter for the best evidence of its contents.

## VI.    AIGFP Ignores Valuation Impact as the Subprime Mortgage Crisis Begins to Manifest

140-148.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 140-148, and refers to the documents referred to therein for the best evidence of their contents.

**VII.   AIG Is Faced Directly with Valuation Deficiencies Concerning the CDS Portfolio Through Goldman Sachs' Collateral Demands**

149-155.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 149-155, and refers to the documents referred to therein for the best evidence of their contents.

**VIII.  AIG Is Placed on Further Notice of Valuation Issues Stemming from the Exclusion of Joseph St. Denis from the Valuation Process and His Subsequent Resignation**

156-168.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 156-168, and refers to the documents referred to therein for the best evidence of their contents.

**IX.   PwC Informs AIG of a Potential Material Weakness in Controls at AIGFP**

169-173.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 169-173, and refers to the documents referred to therein for the best evidence of their contents.

**X.    AIG Falsely Reassures Investors at the December 5, 2007 Investor Meeting**

174-177.  Frost denies that he attended the investor meeting on December 5, 2007, admits that he listened to the webcast in his Wilton, Connecticut office, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraphs 174-177.

178-179.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 178-179.

180.    Paragraph 180 purports to state a legal conclusion, to which no response is required.  To the extent a response is required, Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 180.

181.    Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 181 and refers to the Wall Street Journal's "Market Watch" blog for the best evidence of its contents.

## XI.    AIG Admits Certain Misstatements Concerning Its Valuation of the CDS Portfolio

182-189.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 182-189 and refers to the February 11, 2008 8-K for the best evidence of its contents.

190-194.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 190-194 and refers to the 2007 Form 10-K for the best evidence of its contents.

## XII.    OTS Letter of March 10, 2008 Advising of Material Weaknesses Due to Lack of Access to AIGFP

195-197.  Frost denies knowledge or information sufficient to form a belief as to the truth of the  allegations in paragraphs 195-197 and refers to the March 10, 2008 OTS letter for the best evidence of its contents.

## XIII.    AIG Reports its First Quarter 2008 Results, Raises Additional Capital and Becomes the Subject of an SEC and DOJ Investigation

198-205. Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 198-205 and refers to the documents referred to therein for the best evidence of their contents.

206.    Frost denies that he was ever under investigation by the SEC, DOJ or U.S. Attorney's Office in Brooklyn, refers to the June 6 and June 13, 2008 Wall Street Journal articles for the best evidence of their contents, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 206.

207.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 207.

**XIV.  The Full Extent and Risks of AIG's Exposure to the Subprime Market in the CDS Portfolio and Through its Securities Lending Program Are Revealed When The Government is Forced to Provide an $85 Billion Bailout to AIG**

208-219.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 208-219 and refers to the various articles, rating agency announcements and SEC filings referred to in paragraphs 208-219 for the best evidence of their contents.

**XV.  Further Disclosures Made After the Government Bailout Confirm the Falsity of Defendants' Class Period Statements**

220-233.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 220-233 and refers to the various articles, rating agency announcements, hearing transcripts, and SEC filings referred to in paragraphs 220-233 for the best evidence of their contents.

234-237.  Frost denies the allegations in paragraphs 234-237 to the extent they pertain to him, admits that AIGFP used a model developed by Gary Gorton in its CDS business, denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraphs 234-237, and refers to the October 31, 2008 Wall Street Journal article and the CDS agreements as the best evidence of their contents.

238-239.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 238-239 and refers to the December 10, 2008 Wall Street Journal article as the best evidence of its contents.

240.     Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 240.  Frost refers to the December 2008 series of articles in the Washington Post as the best evidence of their contents.

241-242.  Frost denies the allegations in paragraphs 241-243 to the extent they pertain to him, denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraphs 241-242 and refers to the Washington Post series for the best evidence of their contents.

243.     Frost denies the allegations in paragraph 243 (including the footnote) to the extent they pertain to him, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 243, except admits that in late 2005 and early 2006 AIGFP analyzed the subprime market and the risk of entering into new transactions involving subprime RMBS and refers to the Washington Post article and any related transcripts or notes of interviews for the best evidence of statements by Greenberg and the contents of the article.

244-246.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 244-246 and refers to the February 5, 2009 Wall Street Journal article for the best evidence of its contents.

247.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 247 and refers to the unnamed articles and press releases referred to therein for the best evidence of their contents.

248.  Frost denies that he was ever under investigation by the SEC or DOJ, denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in paragraph 248, and refers to the April 28, 2009 Wall Street Journal article for the best evidence of its contents.

249-253.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 249-253, and refers to any recording or transcript of the October 7, 2008, March 5, 2009 and March 25, 2009 hearings for the best evidence of statements made during the hearings.

**AIG'S FALSE PORTRAYAL OF ITS
FINANCIAL CONDITION AND RISK EXPOSURES**

**I.     2005 Financial Results**

254-265.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 254-265 and refers to AIG's 2005 10-K for the best evidence of its contents.

266.     Paragraph 266 purports to state a legal conclusion, to which no response is required.

266(a).  Paragraph 266(a) purports to state legal conclusions, to which no response is required.  To the extent a response is required, Frost denies the allegations in paragraph 266(a) to the extent they pertain to him.  Frost denies that he made any representations in AIG's 2005 10-K.  Frost denies that he made, or had any role in making, decisions involving AIG's financial reporting or valuation process.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 266(a).

266(b)-(d).  Paragraphs 266(b)-(d) purport to state legal conclusions, to which no response is required.  To the extent a response is required, Frost denies the allegations in paragraph 266(b)-(d) to the extent they pertain to him.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 266(b)-(d).

266(e).  Paragraph 266(e) purports to state legal conclusions, to which no response is required.  To the extent as a response is required, Frost denies the allegations to the extent that they pertain to him, denies and that he was involved in determining whether to hedge the CDS portfolio and denies that he had any role in determining his compensation at AIGFP, including his own.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 266(e).

266(f).  Paragraph 266(f) purports to state legal conclusions, to which no response is required.  To the extent a response is required, Frost denies that he had any knowledge concerning the likelihood of downgrades or valuation declines.  Frost denies that he should have known that downgrades and valuation declines were likely.  Frost denies that he had awareness of any conclusion by AIG that U.S. residential housing and mortgage markets were deteriorating. Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 266(f).

266(g).  Paragraph 266(g) purports to state legal conclusions, to which no response is required.  To the extent a response is required, Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 266(g).

## II.    2006 Interim Financial Results

267-276.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 267-276 and refers to AIG's 2006 Forms 10-Q for the best evidence of their contents.

277.    Paragraph 277 purports to state a legal conclusion, to which no response is required.

277(a).  Frost denies that he ever made any financial reporting decisions concerning the CDS portfolio, either separately or as part of a group.  Frost denies that he had any awareness of any weakening in the control environment at AIGFP following Greenberg's departure from AIG.  Frost denies the remaining allegations in paragraph 277(a) to the extent they pertain to him, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 277(a).

277(b)-(d).  Paragraphs 277(b)-(d) purport to state legal conclusions, to which no response is required.  To the extent a response is required, Frost denies the allegations in paragraphs 277(b)-(d) to the extent they pertain to him, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 277(b)-(d).

## III.    2006 Financial Results

278-291.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 278-291 and refers to AIG's 2006 10-K and related press release for the best evidence of their contents.

292-293.  Paragraphs 292-293 purport to state a legal conclusion, to which no response is required.  To the extent a response is required, Frost denies the allegations in paragraphs 292-293 to the extent they pertain to him, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 292-293.

## IV.    First Quarter 2007 Financial Results and May 31, 2007 Investor Meeting

294-299.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 294-299 and refers to AIG's 2007 First Quarter 10-Q for the best evidence of its contents.

300.   Paragraph 300 purports to state a legal conclusion, to which no response is required.  To the extent a response is required, Frost denies the allegations in paragraph 300 to the extent they pertain to him, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 300.

301.   Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 301.

302.   Paragraph 302 purports to state a legal conclusion, to which no response is required.  To the extent a response is required, Frost denies the allegations in paragraph 302 to the extent they pertain to him, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 302.

## V.   Second Quarter 2007 Financial Results

303-310.   Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 303-310 and refers to AIG's 2007 Second Quarter 10-Q for the best evidence of its contents.

311-319.   Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 311-319.

320, 320(a)-(b).   Paragraphs 320, 320(a)-(b) purport to state legal conclusions, to which no response is required.  To the extent a response is required, Frost denies the allegations in paragraphs 320, 320(a)-(b) to the extent they pertain to him, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraphs 320, 320(a)-(b).

320(c). Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 320(c).

320(d).  Paragraph 320(d) purports to state legal conclusions, to which no response is required.  To the extent a response is required, Frost admits that he was aware of the collateral posting requirements in CDS agreements, to which he refers for the best evidence of their terms.  Frost denies that he failed to disclose information relating to the collateral posting requirements.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 320(d).

320(e).  Paragraph 320(e) purports to state legal conclusions, to which no response is required.  To the extent a response is required, Frost denies that he knew or should have known that downgrades and valuation declines were likely.   Frost denies the remaining allegations in paragraph 320(e) to the extent they pertain to him, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraphs 320(e).

320(f)-(j).  Paragraphs 320(f)-(j) purport to state legal conclusions, to which no response is required.  To the extent a response is required, Frost denies the allegations in paragraphs 320(f)-(j) to the extent they pertain to him and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraphs 320(f)-(j).

VI.    **Third Quarter 2007 Financial Results and December 5, 2007 Investor Meeting**

321-328.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 321-328 and refers to AIG's 2007 Third Quarter 10-Q for the best evidence of its contents.

329-332.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 329-332.

333-350.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 333-350 and refers to the December 7, 2007 Form 8-K for the best evidence of its contents.

351, 351(a).  Paragraphs  351, 351(a) purport to state legal conclusions, to which no response is required.  To the extent a response is required, Frost denies that he was part of Cassano's "inner circle" in November and December 2007, denies that he controlled risk management and valuation functions for the Asset/Credit business, denies the remaining allegations in paragraphs 351, 351(a) to the extent they pertain to him and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraphs 351, 351(a).

351(b). Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 351(b).

351(c).  Frost denies the allegations in paragraph 351(c) to the extent that pertain to him and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 351(c).

351(d). Paragraph 351(d) purports to state legal conclusions, to which no response is required.  To the extent a response is required, Frost denies the allegations in paragraph 351(d) to the extent they pertain to him, denies that he rejected any hedging strategy, and denies knowledge or information sufficient to form a belief to the truth of the remaining allegations in paragraph 351(d).

351(e).  Frost denies knowledge or information sufficient to form a belief to the truth of the allegations in paragraph 351(e).

351(f).  Frost denies the allegations in paragraph 351(f) to the extent they pertain to him, and denies knowledge or information sufficient to form a belief to the truth of the remaining allegations in paragraph 351(f).

351(g)-(l).  Paragraphs 351(g)-(l) purport to state legal conclusions, to which no response is required.  To the extent a response is required, Frost denies the allegations in paragraphs 351(g)-(l) to the extent they pertain to him, and denies knowledge or information sufficient to form a belief to the truth of the remaining allegations in paragraphs 351(g)-(l).

**VII.    February 11, 2008 Form 8-K and 2007 Year-End Results**

352-361.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 352-361 and refers to the February 28, 2008 Form 8-K for the best evidence of its contents.

362.    Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 362, except admits that Cassano's resignation occurred on or around February 29, 2008.

363-382.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 363-382 and refers to AIG's 2007 10-K, the February 29, 2008 fourth quarter investor conference call, and the press release referenced therein for the best evidence of their contents.

**XXI.   First Quarter 2008 Financial Results and the May 12, 2008 Offering**

383-407.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 383-407 and refers to the various SEC filings for the best evidence of their contents.

**XXII.  May 20, 2008 Investor Conference**

408-409.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 408-409 and refers to the various SEC filings for the best evidence of their contents.

**XIII.   Disclosure of Government Investigations and Ouster of Defendant Sullivan**

410-411.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 410-411 and refers to the Wall Street Journal articles referred to therein for the best evidence of their contents.

**XIV.   AIG's Second Quarter 2008 Financial Results**

412-422.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 412-422 and refers to the various SEC filings for the best evidence of their contents.

**DEFENDANTS' VIOLATIONS OF GAAP AND SEC RULES**

423. Paragraph 423 purports to state legal conclusions, to which no response is required.  To the extent a response is required, Frost denies that he had any role in the preparation of AIG's financial statements, denies the allegations in paragraph 423 to the extent they pertain to him, denies knowledge or information sufficient to form a belief to the truth of the remaining allegations in paragraph 423, and refers to the various SEC filings referred to therein for the best evidence of their contents.

424.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 424 and refers to GAAP for the best evidence of what GAAP principles are.

425.    Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 425 and refers to Regulation S-X for the best evidence of what it provides.

426-431.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 426-431.

432-433.  Frost is not a "Section 10(b) Defendant," and the allegations in paragraphs 432-433 do not pertain to him.  To the extent a response is required, Frost denies the allegations in paragraphs 432-433 to the extent they pertain to him and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraphs 432-433.

434-439.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 434-439 and refers to the accounting literature referred to paragraphs 434-439 for the best evidence of their contents.

440.    Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 440 and refers to the CDS agreements as the best evidence of their terms.

441-442.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 441-442 and refers to the accounting literature referred to in paragraphs 441-442 for the best evidence of what they provide.

443.    The last two sentences of paragraph 443 purport to state legal conclusions, to which no response is required.  To the extent a response is required, Frost refers to the CDS agreements for the best evidence of their terms and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 443.

444-445.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 444-445 and refers to Regulation S-K and SEC guidance for the best evidence of what they provide.

446.    The last sentence of paragraph 446 purports to state legal conclusions, to which no response is required.  To the extent a response is required,  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 446 and refers to the CDS agreements as the best evidence of what they provide.

447.    Paragraph 447 purports to state a legal conclusion, to which no response is required.  To the extent a response is required, Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 447.

448.    The last sentence of paragraph 448 purports to state a legal conclusion, to which no response is required.  Frost admits that in or about July or August 2007 he became aware that Goldman demanded collateral from AIGFP in connection with multi-sector CDSs entered into by AIGFP with Goldman.  Frost denies knowledge or information sufficient to form a belief as to the truth of remaining the remaining allegations in paragraph 448.

449.    Paragraph 449 purports to state a legal conclusion, to which no response is required.  Frost denies the allegations in paragraph 449 to the extent they pertain to him, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 449.

450.    Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 450 and refers to any transcript or recording of the October 7, 2008 testimony of Turner for the best evidence of what he testified.

451.    Paragraph 451 purports to state a legal conclusion, to which no response is required.  Frost denies the allegations in paragraph 451 to the extent they pertain to him, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 451.

452-455.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 452-455 and refers to the statutes and regulations referred to in paragraphs 452-455 for the best evidence of what they provide.

456.    Paragraph 456 purports to state a legal conclusion, to which no response is required.  To the extent a response is required, Frost denies that he caused or had any role in causing AIG to issue financial statements and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 456.

457.     Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 457, and refers to AIG's SEC filings as the best evidence of their contents.

458.    Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 458 and refers to the OTS report for the best evidence of its contents and to any transcript or recording of the March 18, 2009 testimony of Polokoff for the best evidence of what he testified.

459.    Frost denies that he played any role in making valuation decisions.  Frost denies that he was part of the "AIGFP Asset/Credit Group," which was based in London.  Frost denies that he ever excluded St. Denis from anything, ever witnessed St. Denis being excluded from anything, or had any awareness that St. Denis was excluded from anything.  Frost denies

knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 459.

460.    Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 460 and refers to the annual financial statements prior to 2007 for the best evidence of their contents.

461.    Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 461 and refers to AIG's 2007 10-K for the best evidence of its contents.

462.    Paragraph 462 purports to state a legal conclusion, to which no response is required.  To the extent a response is required, Frost is not a Section 10(b) defendant, denies that he made any public statements concerning the adequacy of AIG's internal controls, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 462.

463.    Paragraph 463 purports to state a legal conclusion, to which no response is required.  To the extent a response is required, Frost denies he caused AIG to make any public statements and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 463.

## AIG USES FALSE AND MISLEADING STATEMENTS TO RAISE CAPITAL BY ISSUING SECURITIES DURING THE CLASS PERIOD

464-468.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 464-468, and refers to the various SEC filings referred to in paragraphs 464-468 for the best evidence of their contents.

469.    Frost denies that he ever made any public statements concerning the strength of AIG's balance sheet or its planned use of capital.  Frost denies knowledge or

-34-

information sufficient to form a belief as to the truth of the remaining allegations in paragraph 469.

470.    Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 470.

## FACTS RELEVANT TO THE SCIENTER OF THE SECTION 10(B) DEFENDANTS

471.    Paragraph 471 purports to state a legal conclusion, to which no response is required.  To the extent one is required, Frost is not a "Section 10(b) Defendant," and the allegations in this and the following paragraphs (through paragraph 513) do not pertain to him.

472.    Frost denies the allegations in paragraph 472 to the extent they pertain to him, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 472.

473.    The definition of Section 10(b) Defendants in paragraph 50 of the complaint does not include Frost and the reference to Frost in this paragraph is therefore an error, as Plaintiffs have conceded, though they have declined to correct the error.[3]  Paragraph 473 purports to state legal conclusions and makes allegations against defendants other than Frost, and therefore no response is required.  To the extent any response is required, Frost denies that AIGFP concealed from the public AIGFP's decision to stop writing new CDSs, denies knowing why St. Denis resigned from AIGFP, denies all other allegations in paragraph 473 to the extent they pertain to him, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 473.

---

[3] Exhibit to Declaration of D. Heyl, dated August 5, 2009.

474.     Frost is not a Section 10(b) Defendant and the allegations in this paragraph therefore do not pertain to him.  To the extent a response is required, Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 474.

475-476.  Paragraphs 475 and 476 purport to state legal conclusions, to which no response is required.  To the extent a response is required, Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 475-476.

477-479.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 477-479 and refers to any transcript or recording of the testimony before the House Sub-Committee for the best evidence of statements by Polakoff.

480.     Paragraph 480 pertains to defendants other than Frost. To the extent a response is required, Frost denies he was part of the Assets/Credit Group, denies that he ever withheld information from AIG or AIGFP, denies that he controlled the flow of information pertaining to the CDS portfolio, denies that he ever made any risk or valuation decisions, and further denies that he had the authority to make such decisions.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 480.

481.     Paragraph 481 pertains to defendants other than Frost.  To the extent a response is required, Frost denies that he ever failed to request data from counterparties that was necessary for making underwriting decisions, denies the allegations in paragraph 481 to the extent they pertain to him, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 481.  Frost avers that he requested all information that was required by AIGFP's internal policies and procedures.

482.     Paragraph 482 pertains to defendants other than Frost.  To the extent a response is required, Frost denies that AIGFP had "notional limits" or that AIGFP was able to do more mezzanine deals than other types of deals.  Frost denies the remaining allegations in paragraph 482 to the extent they pertain to him, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 482.

483.     Paragraph 483 pertains to defendants other than Frost.  To the extent a response is required, Frost denies that he had any responsibility for "overseeing" the modeling process and denies that he ever instructed Professor Gary Gorton on what data was appropriate to use in the model he developed.  Frost denies that he ever failed to give Professor Gorton any data that was requested, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 483.

## I.    Additional Facts Establishing the Section 10(b) Defendants' Scienter

484.     Paragraph 484 purports to state a legal conclusion, to which no response is required.

**Defendants Sullivan, Bensinger, Herzog and Lewis:**

485-492.  Frost denies the allegations in paragraphs 485-492 to the extent they pertain to him, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraphs 485-492.

**Defendant Cassano:**

493.     Frost admits that Cassano was the CEO of AIGFP and that he resigned on or around February 29, 2008.  Frost denies knowledge or information sufficient to form a belief as to Cassano's compensation.  Frost denies that the DOJ and SEC are currently investigating charges against Cassano, Forster and Athan and refers to the April 28, 2009 Wall Street Journal

article for the best evidence of its contents.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 493.

494-495.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 494-495.

496.    Frost admits that he attended marketing meetings or calls led by Cassano, but denies he typically attended trading meetings.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 496.

497.    Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 497 and refers to the March 19, 2009 Time Magazine article for the best evidence of its contents.

498.    Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 498.

499.     Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 499.

**Defendant Forster:**

500.    Frost admits that Forster was an Executive Vice President of AIGFP and that Forster was one of the officers of AIGFP who was involved in AIGFP's sales of CDSs. Frost denies that the DOJ and SEC are currently investigating charges against Cassano, Forster and Athan and refers to the April 28, 2009 Wall Street Journal article for the best evidence of its contents.  Frost otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 500.

501.    Frost denies that he ever, either individually or as part of a group, controlled the flow of information pertaining to the CDS portfolio.  Frost denies knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in paragraph 501.

502.    Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 502 and refers to the investor presentations referred to in paragraph 502 for the best evidence of statements made during the presentations.

## II.    Defendants' Motive to Perpetrate Fraud

503.    Paragraph 503 purports to state a legal conclusion, to which no response is required.  Further, Frost is not a "Section 10(b) Defendant," and the allegations in this and the following paragraphs (through paragraph 513) do not pertain to him.  To the extent a response is required, Frost denies the allegations in paragraph 503 to the extent they pertain to him, denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations, and refers to the transcript or recording of the October 7, 2008 hearing as the best evidence of statements by Congressman Waxman.

504.    Frost denies knowledge or information sufficient to form a belief as to the compensation of any executive at AIG and the remaining allegations in paragraph 504.

505-507.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 505-507.

508.    Frost avers that a substantial portion of his compensation was deferred and dependent on the continued financial health of AIGFP.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 508.

509.    Frost denies that he participated in, or received any payments from, the special bonus pool created in early 2008.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 509.

510.     Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 510 and refers to the 2007 10-K for the best evidence of its contents.

511-512.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 511-512, and refers to the book by Ron Shelp as the best evidence of its contents.

513.     Frost denies the allegations in paragraph 513 to the extent they pertain to him, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 513.

## LOSS CAUSATION/ECONOMIC LOSS

514.  Paragraph 514 purports to state legal conclusions, to which no response is required.  To the extent one is required, Frost is not a "Section 10(b) Defendant," and the allegations in this and the following paragraphs (through paragraph 540) do not pertain to him. Frost denies the allegations in paragraph 514 to the extent they pertain to him, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 514.

515.  Paragraph 515 purports to state a legal conclusion, to which no response is required.

516.  Paragraph 516 purports to state a legal conclusion, to which no response is required.  To the extent one is required, Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 516.

517.     Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 517.

518.     Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 518.

519-520.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 519-520 and refers to the analysts' reports for the best evidence of their contents.

521.     Paragraph 521 purports to state a legal conclusion, to which no response is required.  To the extent one is required, Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 521.

522.     Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 522 and refers to the third quarter 2007 Form 10Q for the best evidence of its contents.

523.     Paragraph 523 purports to state a legal conclusion, to which no response is required.  To the extent one is required, Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 523.

524.     Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 524 and refers to the analysts' reports for the best evidence of their contents.

525.     Paragraph 525 purports to state legal conclusions, to which no response is required.  To the extent one is required, Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 525.

526-540.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 526-540 and refers to the SEC filings and analysts' reports for the best evidence of their contents.

### APPLICABILITY OF PRESUMPTION OF RELIANCE:
### FRAUD ON THE MARKET DOCTRINE

541-546.  Paragraphs 541-546 purport to state legal conclusions, to which no response is required.  To the extent a response is required, Frost denies the allegations contained in paragraphs 541-546 to the extent they pertain to him, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraphs 541-546.

### CLAIMS BROUGHT PURSUANT TO THE EXCHANGE ACT

### FIRST CLAIM FOR RELIEF

### For Violations of Section 10(b) of the Exchange Act
### and Rule 10b-5 against AIG and the Section 10(b) Defendants

547.  Frost is not required to answer this claim as the claim is not brought against Frost.  To the extent a response is required, Frost repeats and incorporates each and every response to the allegations in paragraphs 1-546 as if fully set forth herein.

548.  Frost is not required to answer this claim as the claim is not brought against Frost.  Also, paragraph 548 purports to state a legal conclusion, and thus no response is required.

549-561.  Frost is not required to answer this claim as the claim is not brought against Frost.  Also, paragraphs 549-561 purport to state legal conclusions, and thus no response is required.  To the extent a response is required, Frost denies the allegations to the extent they pertain to him and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraphs 549-561.

### SECOND CLAIM FOR RELIEF

### For Violations of Section 20(a) of the Exchange Act
### against the Executive Defendants

562.    Frost repeats and incorporates each and every response to the allegations in paragraphs 1-561.

563.     Paragraph 563 purports to state a legal conclusion, and thus no response is required.  To the extent a response is required Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 563.

564.     Frost denies the allegations contained in paragraph 564 to the extent they pertain to him.

565.  Paragraph 565 purports to state a legal conclusion, and thus no response is required.  To the extent a response is required, Frost denies that he was a controlling person of AIG, and denies that he participated in any way in the allegedly fraudulent conduct set forth in the complaint.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 565.

566.     Frost denies that he exercised any control whatsoever over AIG.  Frost denies that he exercised control over AIGFP.  Frost denies that he played a key role in management of AIG, referred to as "the Company" in this paragraph.  Frost denies that he had direct involvement in the day-to-day operations of AIG.  Frost denies that he had any involvement in AIG's financial reporting or accounting functions.  Frost denies that he caused AIG to engage in any illegal conduct or practices.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 566.

567.     Frost denies that he was ever an officer of AIG.  Frost denies that he ever had a duty to, or ever did, disseminate any information regarding AIG's financial statements, or that he had any duty to correct previously issued statements by AIG.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 567.

568.    Frost denies that he had responsibility for managing AIG.  Frost denies that he had any significant management responsibilities at AIGFP.  Frost denies that he was presented to potential or existing shareholders in AIG as an individual responsible for AIG's day-to-day business and operations or AIG's strategic direction.  Frost denies that he had any responsibility for presenting, or ever did present, AIG's quarterly or annual results.   Frost denies that he had any responsibility for setting, or ever did set, guidance for future periods for AIG.  Frost denies that he ever had any responsibility for assuring, or ever did assure, the market about the state of and prospects for AIG.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 568.

569.    Paragraph 569 purports to state legal conclusions and makes allegations against other defendants, to which no response is required.  To the extent a response is required, Frost denies the allegations contained in paragraph 569 to the extent they pertain to him, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 569.

570.    The first sentence of paragraph 570 purports to state a legal conclusion, to which no response is required.  To the extent a response is required, Frost denies the allegation in this sentence.  Frost denies that he controlled AIGFP or AIG.  Frost denies that he had any knowledge, or should have had any knowledge, of any fraudulent conduct engaged in by AIGFP.  Frost denies that the characterization of his role at AIGFP is accurate.  Frost denies that he ever failed to request or acquire any data or information necessary for AIGFP to underwrite transactions.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 570.

571.    Plaintiffs have conceded they erred in paragraph 571 of their complaint because Frost was never reported to be the subject of a criminal investigation by the DOJ.[4]  Frost denies that he was aware that the CDS portfolio was exposed to a substantial likelihood for significant losses.  Frost denies that he was involved in any decision on whether or how to hedge the CDS portfolio.  Frost denies that he rejected any strategy of hedging the CDS portfolio. Frost denies that he had any role in determining his compensation.  Frost denies that he failed to provide crucial or necessary information for use in Gorton's model.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in  paragraph 571.

572.    Frost admits that before Athan joined AIGFP, and while Athan was employed by Société Générale, Frost communicated with Athan concerning derivative deals offered to Société Générale by AIGFP.  Frost admits that AIGFP entered into multi-sector CDSs with Société Générale during the period that Athan was employed by Société Générale.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 572.

573.    Frost denies that he controlled the flow of information pertaining to the CDS portfolio.  Frost denies that he was part of any group at AIGFP that controlled the flow of information pertaining to the CDS portfolio.  Frost denies that he was involved in any decision whether or how to hedge the CDS portfolio.  Frost denies that he was in a position to or ever did reject hedging the CDS portfolio.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 573.

---

[4] Exhibit to Declaration of D. Heyl, dated August 5, 2009.

574.     Paragraph 574 purports to state legal conclusions to which no response is required.  To the extent that a response is required, Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 574.

575.     Paragraph 575 purports to state legal conclusions to which no response is required.  To the extent that a response is required, Frost denies that he is alleged to have made a single statement to any purchasers of AIG stock, either in the form of SEC filings, press releases, media statements or any other of such documents referred to in this complaint and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 575.

576.     Paragraph 576 purports to state legal conclusions to which no response is required.  To the extent that a response is required, Frost denies that he is liable to plaintiffs and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 576.

### ALLEGATIONS RELATING TO CLAIMS BROUGHT PURSUANT TO THE SECURITIES ACT

577.     Paragraph 577 purports to state legal conclusions to which no response is required.

578.     Paragraph 578 purports to state legal conclusions to which no response is required.  To the extent a response is required, Frost denies that he ever signed a registration statement of AIG and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 578.

579.     Paragraph 579 purports to state legal conclusions to which no response is required.  To the extent a response is required, Frost denies that he was a control person of AIG,

or any other defendant, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 579.

      580.  Paragraph 580 purports to state legal conclusions to which no response is required.

      581-586.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraphs 581-586.

      587-606.  Frost denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 587-606 and refers to the SEC filings referred to in paragraphs 587-606 for the best evidence of their contents.

**THIRD CLAIM FOR RELIEF**

**For Violations of Section 11 of the Securities Act against Defendants AIG, the Signing Executive Defendants and the Director Defendants**

      607-620.  Frost is not required to answer this claim as the claim is not brought against Frost.  Frost did not sign any registration statements and is not one of the "Signing Executive Defendants." To the extent a response is required, Frost repeats and incorporates each and every response to the allegations in paragraphs 577-606 as if fully set forth herein, denies the allegations contained therein to the extent they pertain to him, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraphs 607-620.

**FOURTH CLAIM FOR RELIEF**

**For Violations of Section 11 of the Securities Act against the Underwriter Defendants**

      621-638.  Frost is not required to answer this claim as the claim is not brought against Frost.   To the extent any response is required, Frost repeats and incorporates each and

-47-

every response to the allegations in paragraphs 621-638 as if fully set forth herein, denies the allegations contained therein to the extent they pertain to him, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraphs 621-638.

### FIFTH CLAIM FOR RELIEF

**For Violations of Section 11 of the Securities Act
against Defendant PwC**

639-683.  Frost is not required to answer this claim as the claim is not brought against Frost.  To the extent any response is required, Frost denies the allegations contained therein to the extent they pertain to him, denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraphs 639-683, and refers to the documents referred to therein for as the best evidence of their contents.

### SIXTH CLAIM FOR RELIEF

**For Violations of Section 12(a)(2) of the Securities Act
against the Underwriter Defendants**

684-695.  Frost is not required to answer this claim as the claim is not brought against Frost.  To the extent any response is required, Frost repeats and incorporates each and every response to the allegations in paragraphs 684-695 as if fully set forth herein, denies the allegations contained therein to the extent they pertain to him, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraphs 684-695.

## SEVENTH CLAIM FOR RELIEF

### For Violations of Section 15 of the Securities Act
### against the Executive Defendants

696.     Frost repeats and incorporates each and every response to the allegations in paragraphs 577-620.

697-698.  Paragraphs 697-698 purport to state legal conclusions to which no response is required.

699.     Frost denies that he conducted or participated in, directly or indirectly, the operation and management of AIG.  Frost denies that he had significant management responsibilities at AIGFP.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 699.

700.     Frost denies the allegations in paragraph 700 to the extent they pertain to him.  He denies that he had a position of control and authority at AIG.  Frost denies that he was a senior executive of AIG.  Frost denies that he had ability to, or did, control the contents of any of AIG's registration statements and prospectuses.  Frost admits that he had the title of Executive Vice President at AIGFP, but denies that he controlled AIGFP or had a position of authority at AIGFP such that he could have controlled AIGFP.  Frost denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 700.

701.     Paragraph 701 purports to state legal conclusions to which no response is required.   To the extent a response is required, Frost denies the allegations in paragraph 701 to the extent they pertains to him, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 701.

**GENERAL DENIAL**

With respect to the complaint in its entirety, Frost denies he engaged in any improper or wrongful conduct or that he caused any harm to any of the AIG shareholders on whose behalf this complaint is purportedly brought.  Except for any of the admissions he has made in this Answer, Frost denies all the allegations in the complaint, including without limitation, the footnotes, headings and subheadings.  Frost expressly reserves the right to amend and/or supplement his Answer.

**<u>DEFENSES</u>**

Frost asserts the following affirmative defenses and reserves the right to amend this answer to assert other and further defenses when and if, in the course of its investigation, discovery, or preparation for trial it becomes appropriate.  By designating these matters "defenses," the Defendant Alan Frost does not intend to suggest either that plaintiff does not bear the burden of proof as to such matters or that such matters are not elements of plaintiff's *prima facie* case against Defendant Alan Frost.

**<u>FIRST AFFIRMATIVE DEFENSE</u>**

The Complaint fails to state any claim upon which relief can be granted.

**<u>SECOND AFFIRMATIVE DEFENSE</u>**

Frost is not liable because he did not know, and in the exercise of reasonable care could not  have known, of any of the alleged misrepresentations, omissions, fraud, or breaches of fiduciary duty alleged in the Complaint.  Frost thus lacked scienter and was not a culpable participant in the wrongful acts alleged in the Complaint.

### THIRD AFFIRMATIVE DEFENSE

Frost is not liable because the conduct of persons and/or entities other than Frost was a superseding or intervening cause of any damage, loss, or injury sustained by Plaintiffs. Plaintiffs' alleged damages were therefore not proximately caused by any conduct of Frost.  The injuries Plaintiffs allegedly sustained, to the extent there were any, were proximately and directly caused by the fraud, breaches of fiduciary duty, and conspiracy of others.

### FOURTH AFFIRMATIVE DEFENSE

Frost is not liable in whole or in part due to the fraud, contributory negligence, or comparative fault of others.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiffs failed to plead claims sounding in fraud with the particularity required by law, including Rule 9(b) of the Federal Rules of Civil Procedure.  Due to the nature of the claims against him, Frost denied the allegations put forth herein.  However, such claims have not, and cannot, be answered in detail due to their vague and conclusory nature.

### SIXTH AFFIRMATIVE DEFENSE

The Plaintiffs' damages were not the result of any reliance by the Plaintiffs on any statements or conduct of Frost.

### SEVENTH AFFIRMATIVE DEFENSE

To the extent that the Complaint purports to allege a claim resulting from any alleged breach of any standard of care allegedly owed by Frost, Frost specifically denies that he breached any such standard of care.

### EIGHTH AFFIRMATIVE DEFENSE

Frost denies that Plaintiffs are entitled to attorney's fees under any act or theory forming the basis of any of Plaintiffs' claims.

### NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against Frost are barred because they fail to allege, and have not suffered, any cognizable injury attributable to any conduct by Frost.

### TENTH AFFIRMATIVE DEFENSE

Frost did not owe a fiduciary duty or a duty of disclosure to the Plaintiffs.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims, as pled herein, do not satisfy the requirements of Rule 8 of the Federal Rules of Civil Procedure.

### TWELFTH AFFIRMATIVE DEFENSE

Frost hereby adopts and incorporates by reference any and all other defenses asserted or to be asserted by any of the other defendants to the extent that those defenses apply to Frost.

### THIRTEENTH AFFIRMATIVE DEFENSE

Frost reserves the right to raise any additional defenses, cross-claims, counterclaims, and/or third party claims not asserted herein of which he may become aware through discovery or other investigation.

### FOURTEENTH AFFIRMATIVE DEFENSE

To the extent that Plaintiffs have released other parties from liability, any such release reduces any potential judgment against Frost under applicable law.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' are barred from asserting the claims set forth in the Complaint due to lack of standing.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs claims against Frost are barred, in whole or in part, because Frost did not make false or misleading statements or omissions of material fact concerning AIG or AIGFP and Frost is not responsible in law or in fact for any false or allegedly false or misleading statement or omission of material fact by others on which Plaintiffs allegedly relied.

## SEVENTEENTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint are barred, in whole or in part, because Plaintiffs' alleged damages are not recoverable under applicable law.

## EIGHTEENTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint are barred, in whole or in part, because any conduct by Frost was not reckless or malicious, but rather was undertaken in good faith, with reasonable care and diligence and without knowledge or intent to commit fraud or aid and abet any other person or entity in the commission of fraud or in the breach of any fiduciary duty, and Frost's conduct did not, directly or indirectly, constitute unlawful acts.

By reason of the foregoing, Frost has no liability to Plaintiff and the purported Class it seeks to represent for the matters alleged in the Complaint.

WHEREFORE, Frost requests that the Court issue an Order dismissing the

Complaint in its entirety and with prejudice and awarding to Frost his costs and expenses of this

action, including reasonable attorneys fees as provided by law.

Dated:  New York, New York
           November 24, 2010

                            MILBANK, TWEED, HADLEY & MᶜCLOY LLP


                            By:  _____/s/ Dorothy  Heyl_____
                                 Andrew E. Tomback (AT-6944)
                                 Dorothy Heyl (DH-1601)
                                 Thomas Santoro (TS-9702)
                                 1 Chase Manhattan Plaza
                                 New York, NY  10005-1413
                                 (212) 530-5000
                                 dheyl@milbank.com

                                 *Attorneys for Defendant Alan Frost*