UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE AMERICAN INTERNATIONAL GROUP, INC. 2008 SECURITIES LITIGATION | MASTER FILE 08 Civ. 4772 (LTS)(KNF) <br><br> ECF Case <br><br> **EVIDENTIARY HEARING REQUESTED** |
| This Document Relates to: <br><br> 08 Civ. 4772 (LTS)(KNF), JACKSONVILLE POLICE AND FIRE PENSION FUND <br><br> 08 Civ. 10586 (LTS), FIRE AND POLICE PENSION ASSOCIATION OF COLORADO <br><br> 08 Civ. 8659 (LTS), CARROLL <br><br> 08 Civ. 9162 (LTS), BERNSTEIN <br><br> 09 Civ. 428 (LTS), EPSTEIN REAL ESTATE ADVISORY | |

## UNDERWRITER DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Fax: (212) 757-3990

PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Fax: (202) 223-7420

*Attorneys for Underwriter Defendants*

**TABLE OF CONTENTS**

ARGUMENT ................................................................................................................ 2

I.    The Alleged Material Misstatements or Omissions Are Not Common as to the
      Underwriter Defendants ................................................................................... 2

II.   The Underwriter Defendants' Affirmative Defenses Are Not Common ............... 4

CONCLUSION ............................................................................................................ 7

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Amchem Products, Inc.* v. *Windsor*,
  521 U.S. 591 (1997)...................................................................................2

*In re American Int'l Group, Inc. 2008 Sec. Litig.*,
  741 F. Supp. 2d 511 (S.D.N.Y. 2010) ....................................................1

*In re BearingPoint, Inc. Sec. Litig.*,
  232 F.R.D. 534 (E.D. Va. 2006)................................................................3

*Broussard* v. *Meineke Discount Muffler Shops, Inc.*,
  155 F.3d 331 (4th Cir. 1998)....................................................................4

*In re DVI Inc. Sec. Litig.*,
  249 F.R.D. 196 (E.D. Pa. 2008) ...............................................................3

*Gunnells* v. *Healthplan Services, Inc.*,
  348 F.3d 417 (4th Cir. 2003)....................................................................4

*Maneely* v. *City of Newburgh*,
  208 F.R.D. 69 (S.D.N.Y. 2002).................................................................2

*In re Nortel Networks Corp. Sec. Litig.*,
  No. 01 Civ. 1855, 2003 WL 22077464 (S.D.N.Y. Sept. 8, 2003)..........3

*Polin* v. *Conductron Corp.*,
  552 F.2d 797 (8th Cir. 1977)....................................................................4

*Trattner* v. *American Fletcher Mortg. Investors*,
  74 F.R.D. 352 (S.D. Ind. 1976) ................................................................4

*Wagner* v. *Barrick Gold Corp.*,
  251 F.R.D. 112 (S.D.N.Y. 2008)..............................................................3

*Wal-Mart* v. *Dukes*,
  131 S. Ct. 2541 (2011)..........................................................................2, 4

*In re Worldcom, Inc. Sec. Litig.*,
  346 F. Supp. 2d 628 (S.D.N.Y. 2004)......................................................5

## STATUTES

15 U.S.C. § 77k(b)(3)(A)..................................................................................5

15 U.S.C. § 77k(b)(3)(C) ........................................................................................... 5

## OTHER AUTHORITIES

17 C.F.R. § 230.176 (2011) ....................................................................................... 5

Fed. R. Civ. P. 23(a)(2) and 23(b)(3) .................................................................... 2, 4

MANUAL FOR COMPLEX LITIGATION (4th ed. 2004) ........................................................ 4

WILLIAM RUBENSTEIN ET AL., NEWBERG ON CLASS ACTIONS (4th ed.) ............................. 4

The Underwriter Defendants[1] respectfully submit this memorandum of law and accompanying declaration in opposition to Lead Plaintiff's motion for class certification.  The memoranda of American International Group, Inc. ("AIG") and PricewaterhouseCoopers ("PwC") show that it is not possible to certify a plaintiff class covering disparate claims involving 101 separate offerings of 70 unique securities encompassing different types of financial products, including both debt and equity securities, made with differing disclosures over a period in which market conditions changed dramatically.[2]  The Underwriter Defendants join AIG's memorandum and PwC's memorandum as applicable, and write briefly to describe specific impediments to any class claim against them.

Plaintiffs seek in this single action to proceed against more than 40 underwriters that worked in 26 different combinations with varying levels of participation in the offering of different types of securities over 20 months under fast-changing circumstances.  No underwriters participated in all, or even half, of the offerings.  Most participated in just one or two.  Some participated only in 2006, before a credit crisis or recession was anticipated; others in late 2007, after AIG and other market participants disclosed growing losses and risks from subprime investments; still others only in May 2008, after AIG's subprime exposures and losses had been fully disclosed.  Because the types of securities, market circumstances, and disclosures differed widely over the class period, the issues of loss causation, reliance, and existence of damages are

---

[1]   The "Underwriter Defendants" are the financial institutions named in paragraph 51 of plaintiffs' Consolidated Class Action Complaint who served as underwriters and agents in certain AIG debt and equity offerings during plaintiffs' proposed Class Period, with the exception of Banca IMI S.p.A. and Daiwa Securities SMBC Europe Ltd., upon which plaintiffs have not effected service and against which plaintiffs' claims were dismissed by the Court's Opinion and Order dated September 27, 2010.  *See In re American Int'l Group, Inc. 2008 Sec. Litig.*, 741 F. Supp. 2d 511, 518 n.2 (S.D.N.Y. 2010).

[2]   The variety of offerings and constantly shifting combinations of underwriters at issue in this litigation is demonstrated by Exhibits 1, 2 and 3 to the accompanying Declaration of Charles E. Davidow ("Davidow Decl.").

not susceptible to common resolution across time periods, offerings, and among the various underwriters. Additionally, the facts and circumstances that informed the scope of the underwriters' due diligence across the various offerings differed widely. These issues and defenses must be addressed offering by offering, underwriter by underwriter.

## ARGUMENT

Under *Wal-Mart* v. *Dukes*, 131 S. Ct. 2541, 2551 (2011), plaintiffs must "affirmatively demonstrate" compliance with the commonality requirement of Rule 23(a)(2). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a class wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (emphasis in original) (internal quotations and citations omitted). Thus, it is not enough to simply provide a list of common issues or questions, as plaintiffs do here. (*See, e.g.*, Pls. Br. at 17-18.) Rule 23(b)(3) also requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). This requirement "is more stringent and far more demanding than the commonality requirement of Rule 23(a)." *Maneely* v. *City of Newburgh*, 208 F.R.D. 69, 76 (S.D.N.Y. 2002) (quoting *Amchem Products, Inc.* v. *Windsor*, 521 U.S. 591, 609, 623-24 (1997)) (internal quotations omitted). Whether analyzed under Rule 23(a)(2)'s commonality requirement or Rule 23(b)(3)'s predominance requirement, the shifting fact patterns present in this case prevent certification of a class against the Underwriter Defendants.

I.   **The Alleged Material Misstatements or Omissions Are Not Common as to the Underwriter Defendants**

As AIG and PwC demonstrate, plaintiffs must adduce individualized proof as to each of the offerings at issue. The absence of commonality and predominance is particularly striking as to the underwriters, because key legal and factual issues and the very identity of the underwriters

themselves differed from offering to offering.  For example, even if plaintiffs could establish a claim against the underwriters of the December 11, 2007 7.70% Series A-5 Junior Subordinated Debentures, which were issued *after* the onset of the global credit crisis and significant disclosures by AIG concerning its subprime exposure and valuation losses, they would have proven nothing against the underwriters of the October 18, 2006 5.375% Medium-Term Notes Series MP, which were issued *before* the subprime crisis and economic downturn were even anticipated.  (*See* Juneja Report ¶¶ 22-49.)  Likewise, even if losses allegedly suffered by investors in the June 7, 2007 6.45% Series A-4 Junior Subordinated Debentures that one group of firms underwrote were shown to have been caused by alleged misstatements or omissions in the relevant offering materials, entirely different proof would be required to determine the cause of the losses allegedly suffered by investors in the May 12, 2008 Equity Units and Common Stock Offerings, which were underwritten by a different group of firms, because the May 2008 offerings were issued after AIG's February 2008 corrective disclosures that encompassed all of plaintiffs' alleged material misstatements and omissions.  (*See id.* ¶¶ 51-64.)

None of the pre-*Wal-Mart* cases cited by plaintiffs in support of certification involve the complex and changing web of offerings, market conditions, and disclosures comparable to those here.[3]  Only one of the cited cases even nominally involves a claim against an underwriter, but it is an Exchange Act case and not a Securities Act case, and there were no allegations in connection with an offering.  *See In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 198-99 (E.D. Pa. 2008).  Moreover, even if there were a single underwriter for all of the offerings at issue, the enormous variation among offerings, disclosures, and developments in the marketplace would

---

[3]   *See Wagner* v. *Barrick Gold Corp.*, 251 F.R.D. 112 (S.D.N.Y. 2008); *In re Nortel Networks Corp. Sec. Litig.*, No. 01 Civ. 1855, 2003 WL 22077464 (S.D.N.Y. Sept. 8, 2003); *In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534 (E.D. Va. 2006).

preclude class certification under Rule 23(b)(3).[4]  Certifying a class asserting claims against more than 40 different underwriters under these circumstances would be unprecedented.

## II.   The Underwriter Defendants' Affirmative Defenses Are Not Common

The existence of individualized *defenses* is just as preclusive of class certification as the existence of individualized elements of a plaintiff's case.[5]  The Underwriter Defendants' defenses—including loss causation and due diligence—involve facts that differ among offerings and therefore among underwriters, with individualized proof further defeating commonality and predominance.

The Underwriter Defendants' due diligence defenses will differ, both among offerings and among firms for the following reasons, among others:

- What diligence was due with respect to a particular offering depends on the type of security,[6] the disclosures at issue, AIG's circumstances at the time, and the particular market conditions.  These varied from offering to offering throughout the class period.

---

[4]  *See* WILLIAM RUBENSTEIN ET AL., NEWBERG ON CLASS ACTIONS § 22:55 (4th ed.) ("The longer the time period during which the violations allegedly occurred, however, the potential exists that intervening events may be found to play a sufficient enough role to preclude certification [under Rule 23(b)(3)], because claims may be based on a changing, fluctuating series of material events."); *see also Polin* v. *Conductron Corp.*, 552 F.2d 797, 802-03 (8th Cir. 1977) (affirming denial of class certification were district court held that common factual issues did not predominate when documents containing alleged misstatements and omissions spanned several years and the dates of class members' stock purchases were crucial in determining rights); *Trattner* v. *American Fletcher Mortg. Investors*, 74 F.R.D. 352, 356 (S.D. Ind. 1976) (changing economic environment including "marked differences in the national economy" precluded a finding of commonality or predominance of common questions for a 27-month class).

[5]  *See Wal-Mart*, 131 S. Ct. at 2554, 2555-56 (noting that there are no common answers where proof of improper use of discretion will differ from manager to manager and that managers will have individual defenses and gender-neutral explanations for their conduct); *Gunnells* v. *Healthplan Services, Inc.*, 348 F.3d 417, 438 (4th Cir. 2003) (overturning conditional class certification under Rule 23(b)(3) where district court ignored the issues posed by affirmative defenses); *Broussard* v. *Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 342 (4th Cir. 1998) (reversing the district court and finding that the requirements for typicality and commonality were not satisfied and that "when the defendants' affirmative defenses . . . may depend on facts peculiar to each plaintiff's case, class certification is erroneous"); MANUAL FOR COMPLEX LITIGATION (4th ed. 2004) § 21.141 ("Identifying common questions typically requires examining the parties' claims and defenses, identifying the type of proof the parties expect to present, and deciding the extent to which there is a need for individual, as opposed to common, proof.").

[6]  *See* SEC Rule 176, 17 C.F.R. § 230.176 (2011) ("[I]n determining whether or not the conduct of a person constitutes a reasonable investigation or a reasonable ground for belief meeting the standard set forth in section 11(c) [of the Securities Act], relevant circumstances include . . . (a) the type of issuer; (b) *the type of security*; . .

4

- Plaintiffs contend that business dealings between particular underwriters and AIG inform their due diligence obligations. For example, they allege that those underwriters who were swap counterparties with AIG were exposed to information relevant to their potential liability here. (Compl. ¶¶ 597, 631-633.) Accepting this assertion for the purpose of this brief only, this means the due diligence defense will require examination of each underwriter's business dealings with AIG and the relevance, if any, of those dealings to the disclosures in the offering at issue. *See, e.g., In re Worldcom, Inc. Sec. Litig.*, 346 F. Supp. 2d. 628, 672-74 (S.D.N.Y. 2004) (discussing the relevance of red flags known to underwriter to due diligence obligations).

- The underwriters' due diligence defense will differ depending on whether the particular offering at issue included audited, and thus expertised, financial statements. *Compare* 15 U.S.C. § 77k(b)(3)(A) *with* 15 U.S.C. § 77k(b)(3)(C); *see In re Worldcom, Inc. Sec. Litig.*, 346 F. Supp. 2d. at 664-66.

For example, the diligence relevant to the March 23, 2007 CMS Curve Accrual Notes due March 23, 2022 (Pricing Supp. No. AIG-FP-5), a product whose returns are not closely tied to AIG's performance (Cornell Decl. ¶¶ 60-62), which predated market uncertainty surrounding subprime exposure and included audited financial statements, would be different in key respects from the May 12, 2008 Common Stock Offering, which is closely tied to AIG's profitability and took place after full disclosures had been made as to AIG's exposure to subprime losses in its CDS and Securities Lending portfolio and liquidity risk, and was based on unaudited financials.

Even more fundamentally, as shown in AIG and PwC's briefs, the Underwriter Defendants' defenses as to loss causation and reliance and plaintiffs' inability to show damages serve as substantive bars to certification of a class for certain offerings. (*See* AIG Br. at 34-50; PwC Br. at 18-24, 31-35.) Certainly arguments as to those infirmities and defenses will differ among the various offerings, by time period, and by type of security. (*See* AIG Br. at 34-50; PwC Br. at 18-24, 31-35.) For example, there can be no loss causation as to bond purchases prior to February 28, 2008, because as plaintiffs' expert concedes, corrective disclosures made in

---

. (g) when the person is an underwriter, the type of underwriting agreement, the role of the particular person as an underwriter and the availability of information with respect to the registrant. . . .") (emphasis added).

AIG's 2007 Form 10-K issued that day did not impact AIG bond prices, showing that prior prices were not inflated.  (*See* PwC Br. at 18-24; Cornell Decl. ¶¶ 13, 36-52.)  Underwriters involved in offerings prior to that date will advance such arguments.  In contrast, the arguments of underwriters who participated in the May 2008 offering will focus on the impact of disclosures made in AIG's subsequent Form 10-Qs.[7]  Likewise, giving effect to the provision of Section 11(a) regarding purchases after the dissemination of post-offering earnings statements, certain plaintiffs will have to prove individual reliance for purchases of securities originally offered before July 2007.[8]  (*See* PwC Br. at 31-35; Davidow Decl. Ex. 3.)  Nor can plaintiffs show Section 11 damages for certain of the bonds at issue, since they traded above their offering prices after the February 28, 2008 corrective disclosures, thus creating not only additional substantive bars to class certification and still further distinctions among the offerings.  (*See* PwC Br. at 23-24.)

---

[7]   Similarly, the underwriters who only participated in bond offerings will have different damages arguments than underwriters who participated in the common stock offering.  (*See* PwC Br. at 23–24.)

[8]   For example, as detailed in PwC's brief at 31–35, plaintiffs who, after the February 28, 2008 10-K purchased securities initially offered between October 1, 2006 and December 31, 2006, will have to prove individual reliance on the disclosures at issue; plaintiffs who, after the May 8, 2008 10-Q purchased securities initially offered between January 1, 2007 and March 31, 2007, will have to prove individual reliance on the disclosures at issue; plaintiffs who, after the August 6, 2008 10-Q purchased securities initially offered between April 1, 2007 and June 30, 2007, will have to prove individual reliance on the disclosures at issue.  (*See* Davidow Decl. Ex. 3 for the specific offerings falling into each of these three categories.)

## <u>CONCLUSION</u>

For the foregoing reasons, and those set forth in AIG's and PwC's memoranda in opposition to Lead Plaintiff's motion for class certification, the Underwriter Defendants respectfully request that the Court deny Lead Plaintiff's motion for class certification.

Dated:  Washington, DC
August 17, 2011

Respectfully submitted,

/s/ Charles E. Davidow_____
Richard A. Rosen
Brad S. Karp
PAUL, WEISS, RIFKIND, WHARTON
 & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Fax: (212) 757-3990
rrosen@paulweiss.com
bkarp@paulweiss.com

Charles E.  Davidow
PAUL, WEISS, RIFKIND, WHARTON
 & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Fax: (202) 223-7420
cdavidow@paulweiss.com

*Attorneys for Underwriter Defendants*