UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re AMERICAN INTERNATIONAL GROUP, INC. 2008 SECURITIES LITIGATION

Master File No. 08-CV-4772 (LTS)

**Oral Argument Requested**

# THE SECURITIES ACT DEFENDANTS'
# REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR
# MOTION FOR JUDGMENT ON THE PLEADINGS

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954
(212) 455-2000

*Attorney for the Outside Director Defendants*

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Defendant
PricewaterhouseCoopers LLP*

WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

*Attorneys for Defendant Edmund S.W. Tse*

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000

*Attorneys for the Underwriter Defendants*

December 16, 2011

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................2

I.    THIS MOTION IS APPROPRIATELY MADE AT THIS TIME, AS PLAINTIFFS DO NOT ALLEGE SUBJECTIVE FALSITY AGAINST THE SECURITIES ACT DEFENDANTS...............................................................................2

II.   PLAINTIFFS MISSTATE THE LEGAL STANDARD IN *FAIT*. .....................................4

III.  PLAINTIFFS CANNOT DISTINGUISH THE DISCLOSURES AT ISSUE IN THIS CASE FROM THOSE IN *FAIT*...................................................................6

      A.    Significant Concentrations of Credit Risk (FAS 107). .............................7

      B.    Guarantees (FIN 45). ...................................................................................9

      C.    PwC's Financial Statement Audit Opinions and SOX 404 Opinions.....................10

CONCLUSION................................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*DelleFave v. Access Temporaries, Inc.*, No. 99 Civ. 6098 (RWS), 2001 WL 286771 (S.D.N.Y. Mar. 22, 2001), *aff'd*, 37 F. App'x 23 (2d Cir. 2002) .................................................. 3

*Fait v. Regions Fin. Corp.*, 655 F.3d 105 (2d Cir. 2011) ........................................................ passim

*Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310 (2d Cir. 2011) ..................................................... 3, 4

*In re Citigroup Bond Litig.*, No. 1:08-cv-09522-SHS (S.D.N.Y.) ..................................................... 4

*In re Int'l Bus. Machs. Corp. Sec. Litig.*, 163 F.3d 102 (2d Cir. 1998) ........................................... 5

*In re Lehman Bros. Sec. & ERISA Litig.*, No. 08 Civ. 5523 (LAK), 2011 WL 3211364 (S.D.N.Y. July 27, 2011) ................................................................................................. 8, 9

*In re Salomon Analyst Level 3 Litig.*, 350 F. Supp. 2d 477 (S.D.N.Y. 2004) ................................. 6

*In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d 549 (S.D.N.Y. 2011) ........................................... 5

*In re Time Warner, Inc. Sec. Litig.*, 9 F.3d 259 (2d Cir. 1993) ........................................................ 5

*Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991) ............................................................... 5

**Statutes & Rules**

Fed. R. Civ. P. Rule 12(c) .................................................................................................................. 3

# TABLE OF REFERENCES[*]

**Statements of Financial Accounting Standards**

FAS No. 105 ................................................................................................ 2d Ryan Decl., Ex. B

FAS No. 107 ................................................................................................... Ryan Decl., Ex. H

**FASB Interpretations and Staff Positions**

FIN No. 45 ........................................................................................................Ryan Decl., Ex. L

FASB Staff Position No. 133-1 and 45-4 ............................................................Ryan Decl., Ex. M

---

[*] "Ryan Decl." refers to the Declaration of Antony L. Ryan, filed August 5, 2009 (ECF 170), and "2d Ryan Decl." refers to the Declaration of Antony L. Ryan, filed October 12, 2011 (ECF 311).

**PRELIMINARY STATEMENT**

Faced with the decision in *Fait v. Regions Financial Corp.*, 655 F.3d 105 (2d Cir. 2011), Plaintiffs effectively abandon their 1933 Act claims concerning the valuation of AIG's credit default swaps ("CDSs") and AIG's internal controls over the valuation process. Plaintiffs seek to preserve their claims against the Securities Act Defendants involving AIG's financial statements on just two theories: (1) disclosure of a "significant concentration of credit risk" in subprime mortgage debt pursuant to FAS 107, and (2) disclosure of the "maximum potential amount of future payments" as "guarantees" under FIN 45.

These claims, even as narrowed, cannot survive under *Fait*. The challenged disclosures each involve the application of accounting judgment to complex facts for purposes of presenting AIG's financial statements. *Fait* holds that such statements of opinion are not actionable unless Plaintiffs allege that Defendants did not honestly believe the opinions at the time they were expressed. Because the Complaint here makes no allegation that the Securities Act Defendants disbelieved the disclosures at issue incorporated into AIG's registration statements, judgment should be entered in favor of the Securities Act Defendants.[1]

Plaintiffs begin with a procedural attack on the Rule 12(c) motion that serves only to highlight the deficiencies in Plaintiffs' case. Although they assert that the motion raises factual issues and should be decided on a full record, Plaintiffs fail to identify a single factual dispute on the application of *Fait* to the Complaint. Plaintiffs do not allege subjective falsity against the Securities Act Defendants. Nor do Plaintiffs offer any evidence at all relating to

---

[1] This motion is limited to the application to Plaintiffs' claims of the newly controlling *Fait* standard, which is a question of law. If necessary, the Securities Act Defendants intend to raise on summary judgment other grounds for judgment in their favor, including the meaning of FAS 107 and FIN 45 (*see infra* note 5), the element of material misrepresentation or omission, and the affirmative defenses in Sections 11 and 12 of the 1933 Act.

whether the Securities Act Defendants honestly believed the challenged disclosures. The internal AIG documents that Plaintiffs attach (Golan Decl. Exs. 4-10) say nothing about the beliefs of PwC, the Director Defendants or the Underwriter Defendants. Plaintiffs could have resolved the issues raised in this motion simply by seeking leave to amend the Complaint to allege subjective falsity. They have not done so because in the "millions of pages of discovery" touted by Plaintiffs they have found no evidence to support such an allegation. (*See infra* Part I.)

Plaintiffs then propose a three-prong test that would limit *Fait* to statements that are quantitative, involve professional judgment, and are forward-looking. (Plf. Br. at 9.) This test was invented by Plaintiffs, and has no basis in law. *Virginia Bankshares*, *Fait* and other cases make clear that all statements of "belief or opinion" are covered, including qualitative opinions and opinions regarding historical or present facts. (*See infra* Part II.)

On a proper reading of *Fait*, Plaintiffs' FAS 107 and FIN 45 claims concern statements of opinion that are not actionable unless Defendants did not honestly believe the statements when made. The disclosures at issue here are just as judgmental as those in *Fait*. Indeed, *Fait* affirmed the dismissal of a FAS 107 claim very similar to Plaintiffs' here, and a FAS 107 claim was dismissed on the same grounds in *Lehman Bros.* The FIN 45 claim relates to future events (the potential that AIG would be required to post collateral) and would therefore be dismissed even on Plaintiffs' reading of *Fait*. (*See infra* Part III.)

### ARGUMENT

**I.   THIS MOTION IS APPROPRIATELY MADE AT THIS TIME, AS PLAINTIFFS DO NOT ALLEGE SUBJECTIVE FALSITY AGAINST THE SECURITIES ACT DEFENDANTS.**

As Plaintiffs concede by not responding to Part III.C of the opening brief, the Complaint does not allege that any of the Securities Act Defendants disbelieved the disclosures at issue. Indeed, Plaintiffs cannot dispute PwC's honest belief in its opinions, as they plead that

2

PwC did *not* know what Plaintiffs allege are the facts regarding the claims under FAS 107 and FIN 45.  Plaintiffs allege that "PwC failed to understand . . . [AIG's] exposure to subprime-based assets and CDSs and [AIG's] potential need to post collateral", and that "had PwC conducted its 2005 and 2006 audits in compliance with GAAS", PwC "would have been aware" of the facts and would have "required disclosure of that risk concentration".  (Compl. ¶¶ 670-672.)

Nor do Plaintiffs allege subjective falsity against the Director or Underwriter Defendants, arguing instead that these Defendants "are not alleged to have made any statements whatsoever, much less any statements of opinion".  (Plf. Br. at 24.)  But *Fait* itself applies the rule regarding opinions to all 1933 Act defendants, including those who do not themselves make statements.  The Second Circuit affirmed the dismissal not just against Regions and its auditor, but also against "individual members of the board of directors of Regions who signed the Registration Statement" and "the underwriters of the 2008 Offering".  655 F.3d at 108.  No defendant can be liable for statements of opinion unless "the statement was both objectively false and disbelieved *by the defendant* at the time it was expressed".  *Id.* at 110 (emphasis added).

Plaintiffs' efforts to delay decision on the purely legal issues raised by this motion should be rejected.  A party may move under Rule 12(c) any time after the pleadings are closed, so long as it is "early enough not to delay trial".  Fed R. Civ. P. 12(c).[2]  The case on which Plaintiffs rely, *Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310 (2d Cir. 2011) (*see* Plf. Br. at 1, 4), presented a fundamentally different procedural situation.  In *Ideal*, there was no intervening change in law, discovery was complete, and plaintiffs presented evidence obtained in discovery that "would fill the perceived gaps in the Complaint".  *Id*. at 325.  *Ideal* turned on issues of fact,

---

[2] That discovery is not yet complete does not (as Plaintiffs suggest, Plf. Br. at 5) preclude granting the motion.  *See, e.g.*, *DelleFave v. Access Temporaries, Inc.*, No. 99 Civ. 6098 (RWS), 2001 WL 286771, at *4 (S.D.N.Y. Mar. 22, 2001), *aff'd*, 37 F. App'x 23 (2d Cir. 2002).

3

which were not just fatal to the 12(c) motion, but required trial.  *Id.* at 326-28.

Here, by contrast, no trial date is set, and the issues are purely legal.  Plaintiffs identify no evidence to "fill the gaps" in their Complaint.[3]  Plaintiffs admit that the documents they attach to their brief are all "internal AIG documents" that suggest, at best, what "AIG itself considered".  (Plf. Br. at 14-15.)  The documents do not refer to the Securities Act Defendants, and do nothing to suggest that they did not honestly believe the challenged disclosures.

As Plaintiffs acknowledge, they have long had millions of pages of documents, and have taken numerous depositions.  (Plf. Br. at 1.)  It is no accident that Plaintiffs do not seek leave to amend their Complaint to add allegations of subjective falsity against the Securities Act Defendants.  Nor do Plaintiffs identify any prospect of finding such evidence in discovery.  Plaintiffs know full well from the discovery to date that there is no basis for allegations that the Securities Act Defendants did not honestly believe the disclosures at issue.

## II.   PLAINTIFFS MISSTATE THE LEGAL STANDARD IN *FAIT*.

Plaintiffs contend that a "close reading of *Fait*" reveals a three-prong test, by which the *Fait* opinion rule applies only to statements that "(a) involve recording of quantitative determinations, (b) involving the exercise of professional or skilled judgment, (c) with regard to future events".  (Plf. Br. at 9.)  This three-prong test is made up out of whole cloth.  It has no basis in *Fait* itself, or any other case.  Plaintiffs have invented their test in an effort to rescue a

---

[3] Plaintiffs' reliance on the November 23, 2011 Order in *In re Citigroup Bond Litigation*, No. 1:08-cv-09522-SHS (S.D.N.Y.) (Golan Decl. Ex. 2), is misplaced for the same reason.  There, the court denied a Rule 12(c) motion because the plaintiffs told the court that they would oppose the motion with "relevant portions of the extensive discovery", which plaintiffs asserted showed the moving defendants' subjective knowledge of falsity.  (*Id.* at 1.)  In sharp contrast, here plaintiffs have not submitted, nor sought leave to submit, evidence related to the Securities Act Defendants' subjective knowledge.  The efficiency concerns contributing to Judge Stein's decision are also absent here.  In *Citigroup*, resolution of the motion would not have disposed of the claims in their entirety against any party.  (*Id.* at 2.)  Here, granting the motion would dispose of all claims against PwC and would vastly simplify the case as to the other Moving Defendants.

limited set of Plaintiffs' allegations, and place them outside the scope of the *Fait* rule.

In *Fait*, the Second Circuit stated its holding in terms applicable to all 1933 Act claims based on statements of belief or opinion:

> "[W]hen a plaintiff asserts a claim under section 11 or 12 [of the Securities Act] based upon a belief or opinion alleged to have been communicated by a defendant, liability lies only to the extent that the statement was both objectively false and disbelieved by the defendant at the time it was expressed."

*Fait*, 655 F.3d at 110.  *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1095-96 (1991), on which *Fait* relied, was similarly unqualified.  The Second Circuit has repeatedly applied the *Virginia Bankshares* rule to qualitative statements of opinion that have nothing to do with "recording of quantitative determinations".  *See In re Int'l Bus. Machs. Corp. Sec. Litig.*, 163 F.3d 102, 110-11 (2d Cir. 1998) ("no need to cut the dividend"); *In re Time Warner, Inc. Sec. Litig.*, 9 F.3d 259, 261 (2d Cir. 1993) ("optimistic predictions about achieving a business plan").  The *Virginia Bankshares* rule also applies to opinions regarding historical or present facts, not just (as Plaintiffs maintain) predictions of future events.  *See Va. Bankshares*, 501 U.S. at 1088, 1092 (offer was "a high value" and "fair" to shareholders); *In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d 549, 567 (S.D.N.Y. 2011) ("interpretations of the results of various clinical studies").

Plaintiffs' argument that requiring subjective disbelief would be "contrary to the express provisions of Section 11" (Plf. Br. at 9-10) fares no better.  The Second Circuit rejected this argument in *Fait*, and held that subjective disbelief is necessary for an opinion to contain a "false statement of a material fact", an element of a plaintiff's *prima facie* case.  *Fait*, 655 F.3d at 110.  Plaintiffs do not, and cannot, make that allegation against the Securities Act Defendants.

Finally, Plaintiffs argue that *Fait* left open "what sort of allegations satisfy the subjective belief prong", and contend that allegations that PwC did not conduct GAAS audits "are sufficient to support a claim".  (Plf. Br. at 21-22.)  That argument is foreclosed by *Fait*.  The

5

Second Circuit held that allegations that "defendants should have reached different conclusions" do not establish subjective falsity. 655 F.3d at 112. Rather, the plaintiff must allege that "defendants did not believe the statements". *Id.* Plaintiffs do not do that here.[4]

### III. PLAINTIFFS CANNOT DISTINGUISH THE DISCLOSURES AT ISSUE IN THIS CASE FROM THOSE IN *FAIT*.

In an effort to avoid dismissal under *Fait*, Plaintiffs abandon their 1933 Act claims to the extent those claims are based on valuation of AIG's CDSs and AIG's internal controls over the valuation process. Plaintiffs now expressly concede that they have no claim against PwC relating to fair value under FAS 133, FAS 107 and FAS 157, or loss contingencies under FAS 5. (Plf. Br. at 19.) And Plaintiffs provide no reason why *Fait* does not apply equally to the valuation claims against the other Securities Act Defendants, whether based on AIG's annual audited financial statements or on unaudited quarterly financial statements. As demonstrated in the opening brief (Dfts. Br. at 13-16), fair value and loss contingencies are accounting judgments that fall squarely within the *Fait* rule. The same is true of Plaintiffs' claim based on AIG's internal control over financial reporting, which "directly pertain[s] to [AIG's] valuation of the CDS portfolio", and alleges that AIG's controls "were not adequate to prevent or detect misstatements in the accuracy of management's fair value estimates on a timely basis". (Compl. ¶ 18; *see also id.* ¶¶ 639-683.) By conceding that disclosures regarding valuation are opinions subject to *Fait*, Plaintiffs effectively concede that disclosures about internal control over financial reporting *relating to valuation* are also opinions covered by *Fait*.

---

[4] Objective unreasonableness of an opinion does not establish subjective falsity. *See In re Salomon Analyst Level 3 Litig.*, 350 F. Supp. 2d 477, 489 (S.D.N.Y. 2004). Plaintiffs rely on cases holding that allegations of "red flags" in an audit can suffice to plead scienter in a 10b-5 action. (Plf. Br. at 21-22.) However, these cases provide no support with respect to subjective falsity, since *Fait* makes clear that disbelief of an opinion is different from a requirement of scienter, 655 F.3d at 112 n.5, and Plaintiffs affirmatively deny that they plead scienter as to PwC or the Director or Underwriter Defendants (*see* Compl. ¶¶ 607, 621, 639, 684).

Plaintiffs try to preserve their 1933 Act claims based on two narrow theories, relating to the nondisclosure of significant concentration of credit risk under FAS 107 and of guarantees under FIN 45. In each case, Plaintiffs' claim depends on a misreading of the accounting standards, as set forth in PwC's brief in support of its Rule 12(b)(6) motion (ECF 162, at 19-22).[5] In denying that motion, the Court ruled that this was a question of fact that would be postponed until summary judgment. (Sept. 27, 2010 Op. (ECF 223), at 46-47.) Accordingly, the Moving Defendants do not raise that issue on this Rule 12(c) motion.

Rather, the Moving Defendants ask the Court on this motion to decide that disclosures under FAS 107 and FIN 45—like the disclosures at issue in *Fait*—are expressions of opinion, which as a matter of law are not actionable in the absence of allegations that the Securities Act Defendants disbelieved the disclosures when expressed. Even if Plaintiffs were right on what FAS 107 and FIN 45 mean, this motion should still be granted because disclosures under those accounting standards are judgmental, and are opinions under *Fait*.

### A. Significant Concentrations of Credit Risk (FAS 107).

The requirement to disclose a "significant concentration of credit risk" from

---

[5] First, Plaintiffs misread FAS 107 when they contend that AIG had a "significant concentration of credit risk" in subprime mortgage debt in connection with its CDS portfolio. "Credit risk" is the loss that an entity would incur if a counterparty "failed completely to perform according to the terms of the contract . . .". (FAS 105 ¶ 18(a).) Plaintiffs do not allege risk of default by AIG's counterparties (the banks that bought CDSs). The risk of decline in value of subprime mortgage-backed securities underlying the CDSs, which is what is at issue here, is not "credit risk". Indeed, the FASB Staff stated in 2008 that existing accounting standards did not require sellers of credit derivatives (such as CDSs) to make disclosures "about the potential exposure to, and cash flow effects associated with, credit derivatives". (FSP 133-1 ¶ B6.)

Second, Plaintiffs misread FIN 45 when they contend that the collateral posting provisions in AIG's CDSs were "guarantees". A "guarantee" is an obligation to make payments based on changes related to a security owned by the guaranteed party. (FIN 45 ¶ 3.) As the FASB Staff stated in 2008, a CDS that does not require the buyer to own the underlying obligation is not a "guarantee". (FSP 133-1 ¶¶ B11-B12.) Because Plaintiffs affirmatively allege that AIG's CDSs did not require the counterparties to own the referenced securities (Compl. ¶¶ 94-95), AIG's CDSs were not "guarantees" within the meaning of FIN 45.

7

exposure to subprime mortgage debt is a matter of judgment under *Fait*. Plaintiffs' contention to the contrary is refuted by *Fait* itself. FAS 107 was, in fact, one of the accounting standards upon which the plaintiffs in *Fait* based their claims. (Fait Compl. (2d Ryan Decl. Ex. D) ¶ 180.) They alleged a "significant concentration of credit risk" from loans that "imploded due to the housing downturns in the Florida and Georgia real estate markets". (*Id.* ¶¶ 177, 180.) The Second Circuit affirmed the dismissal of the complaint in its entirety for failure to plead subjective falsity. 655 F.3d at 107. The same result should apply to the FAS 107 claim here.

Further, Plaintiffs cannot distinguish Judge Kaplan's decision in *In re Lehman Brothers Securities & ERISA Litigation*, No. 08 Civ. 5523 (LAK), 2011 WL 3211364, at *19 (S.D.N.Y. July 27, 2011), which holds that "[t]he question whether a particular concentration of credit risk is 'significant' within the meaning of SFAS 107 is a matter of judgment". Plaintiffs observe that the claim against Lehman Bros. survived the motion to dismiss because the plaintiffs there pleaded, and provided evidence, that Lehman Bros. did not honestly believe its opinion. (*See* Plf. Br. at 16-17 n.9.) Unlike the plaintiffs in *Lehman Bros.*, however, Plaintiffs here do not allege, and do not point to a single piece of evidence to support, subjective falsity against the Securities Act Defendants. Consequently, dismissal is appropriate.

Plaintiffs cannot overcome *Fait* and *Lehman Bros.* with strained arguments that application of FAS 107 is mechanical. Determining whether AIG had to disclose a "significant concentration of credit risk" in subprime mortgage debt was highly judgmental. *First*, one would need to conclude that the risk of decline in value of the subprime mortgage securities underlying AIG's CDSs was "credit risk" under the accounting standards. *See supra* note 5. *Second*, one would need to decide that "subprime" was a relevant "concentration" to analyze. That decision would necessarily involve discretion, as neither the "subprime" designation, nor the amount of underlying collateral with a subprime component, is contained in the CDS contracts. "Judgment

8

is required to determine whether loan products have terms that give rise to a concentration of credit risk." *Lehman Bros.*, 2011 WL 3211364, at *19 n.223 (quoting FSP 94-6-1 ¶ 7). *Third*, one would need to evaluate whether the amount of subprime collateral was "significant" in relation to AIG's $1 trillion balance sheet. That is "a matter of judgment". *Id.* at *19.

Plaintiffs are wrong to assert that PwC "cannot claim to have exercised any judgment" because PwC supposedly had no "opinion on the subject". (Plf. Br. at 13.) While Plaintiffs state that their "review of PwC's audit work papers has uncovered no evidence whatsoever" that PwC made a determination under FAS 107 (*id.*), in fact those very audit workpapers contain PwC's documentation of its conclusion (citing to the provisions of FAS 107 on which Plaintiffs rely) that AIG had made appropriate disclosure for "significant concentration of credit risk". (*See* 3d Ryan Decl. ¶¶ 2-3.) PwC evaluated the issue, and formed an opinion.

It does not matter for *Fait* that the opinion was that no disclosure was required. The disclosure decisions are implicit in PwC's unqualified Financial Statement Audit Opinions. Where a disclosure is required by law, a company that makes no disclosure necessarily expresses its belief that circumstances that would require disclosure are not present. And a defendant who in good faith does not consider an issue receives the same protection from the *Fait* rule as one who considers the issue and in good faith reaches an objectively erroneous conclusion. *Fait*, 655 F.3d at 110, 112 (dismissing claim for failure to conduct impairment tests).

B.   **Guarantees (FIN 45).**

Plaintiffs' second claim fares no better. FIN 45 requires disclosure of the "maximum potential amount of future payments" for arrangements that qualify as "guarantees". (FIN 45 ¶ 13(b), *quoted in* Compl. ¶ 441.) On its face, FIN 45 disclosures are opinions under *Fait*, even on Plaintiffs' unduly restrictive requirement that the statements be forward-looking. (Plf. Br. at 9.) The need for a FIN 45 disclosure here is judgmental. First, one would need to

9

reach the conclusion that a "naked credit default swap" (Compl. ¶¶ 94-95) is a FIN 45 "guarantee". *See supra* note 5. Second, one would need to predict the potential "future payments" under the CDS collateral provisions. *Fait* held, regarding loan loss reserves, that estimates of probable future loss are "inherently subjective". *Fait*, 655 F.3d at 113. Predicting the maximum potential amount of future payments is similarly subjective. Such predictions "with regard to future events" (Plf. Br. at 9) are exactly the kind of opinions that even Plaintiffs acknowledge are covered by the *Fait* pleading standard.[6]

### C. PwC's Financial Statement Audit Opinions and SOX 404 Opinions.

Plaintiffs do not dispute that PwC's Financial Statement Audit Opinions and SOX 404 Opinions are each statements of opinion or belief subject to the pleading standard in *Fait*. (*See* Dfts. Br. at 18-22.) That alone should dispose of claims based on PwC's opinions. Nevertheless, Plaintiffs contend that PwC's opinions are "essentially derivative" of the underlying accounting allegations. *Fait*, 655 F.3d at 113 (quoted in Plf. Br. at 20). Even under that standard, however, the claims fail because the valuation issues underlying PwC's SOX 404 Opinions, and the FAS 107 and FIN 45 issues underlying PwC's Financial Statement Audit Opinions, are themselves judgmental and subject to *Fait*.

### CONCLUSION

For the foregoing reasons, the Securities Act Defendants respectfully request that this Court grant their Motion for a Judgment on the Pleadings; dismiss the claim against PwC in its entirety and enter judgment in favor of PwC; and dismiss the claims against the Director Defendants and Underwriter Defendants to the extent those claims are based on AIG's financial statements.

---

[6] As with the FAS 107 disclosures above, PwC's workpapers document its conclusion that AIG made appropriate disclosures for FIN 45 guarantees. (*See* 3d Ryan Decl. ¶¶ 2-4.)

Dated:  December 16, 2011

| SIMPSON THACHER & BARTLETT LLP | CRAVATH, SWAINE & MOORE LLP |
|---|---|
| by *Paul C. Curnin* /with consent ALR <br> Paul C. Curnin <br> Michael J. Garvey <br> Craig S. Waldman <br> 425 Lexington Avenue <br> New York, NY 10017-3954 <br> (212) 455-2000 <br> pcurnin@stblaw.com <br> mgarvey@stblaw.com <br> cwaldman@stblaw.com | by *Thomas G. Rafferty* <br> Thomas G. Rafferty <br> Antony L. Ryan <br> Worldwide Plaza <br> 825 Eighth Avenue <br> New York, NY 10019 <br> (212) 474-1000 <br> trafferty@cravath.com <br> aryan@cravath.com |

*Attorneys for the Outside Director Defendants*    *Attorneys for Defendant PricewaterhouseCoopers LLP*

| WEIL GOTSHAL & MANGES LLP | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP |
|---|---|
| by *Joseph S. Allerhand* /with consent ALR <br> Joseph S. Allerhand <br> Robert F. Carangelo <br> Paul Dutka <br> Stacy Nettleton <br> 767 Fifth Avenue <br> New York, NY 10153 <br> (212) 310-8000 <br> joseph.allerhand@weil.com <br> robert.carangelo@weil.com <br> stacy.nettleton@weil.com | by *Richard A. Rosen* /with consent ALR <br> Richard A. Rosen <br> Brad S. Karp <br> 1285 Avenue of the Americas <br> New York, NY 10019-6064 <br> (212) 373-3000 <br> rrosen@paulweiss.com <br> bkarp@paulweiss.com <br><br> Charles E. Davidow <br> 2001 K Street, NW <br> Washington, DC 20006-1047 <br> (202) 223-7300 <br> cdavidow@paulweiss.com |

*Attorneys for Defendant Edmund S.W. Tse*    *Attorneys for the Underwriter Defendants*