767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**Weil, Gotshal & Manges LLP**





**Robert F. Carangelo**
+1 212 310 8499
robert.carangelo@weil.com

June 9, 2011                                                                                           BY HAND

Hon. Debra Freeman
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street, Courtroom 17A
New York, NY 10007-1312

> **Re:   In re American Int'l Group, Inc. 2008 Sec. Litig.**
> **Master File No. 08, CV-4772 (LTS) (DCF)**
> **Defendants' Document Request No. 27**

Dear Judge Freeman:

Pursuant to Rule 2(A) of Your Honor's Individual Practices, and Local Rule 37.2, we write on behalf of Defendant American International Group, Inc. ("AIG") in the above-referenced matter to request an informal conference regarding Plaintiffs' refusal to identify alleged "confidential witnesses" ("CWs") relied on in Plaintiffs' Consolidated Class Action Complaint ("CCAC"). We have been advised that all Defendants join AIG in this request.

Factual Background

On May 19, 2009, Plaintiffs filed the CCAC – a 701-paragraph, 284-page complaint for securities fraud against AIG and certain of its current and former directors and officers. The CCAC relies on, among other things, various statements of four CWs. After Judge Swain denied Defendants' motions to dismiss, Defendants served document requests, including Request No. 27, seeking "[a]ll documents concerning the sources referred to in the CCAC including, but not limited to, documents sufficient to identify each and every Confidential Witness" (the "Request"). Plaintiffs objected to the Request on grounds that "the documents sought are protected by the attorney-client privilege, the attorney work-product doctrine, or [are] otherwise privileged and/or immune from discovery." AIG and Plaintiffs have corresponded and discussed the issue at length but are unable to resolve this issue without Your Honor's intervention.[1]

---

[1] For Your Honor's convenience, we have attached copies of our written correspondence.

US_ACTIVE\43731048\01\14430.0044

**Weil, Gotshal & Manges LLP**

Hon. Debra Freeman
June 9, 2011
Page 2

Plaintiffs' continued refusal to disclose the identities of the CWs runs contrary to the great weight of authority and it would be unfair to allow Plaintiffs to rely on the allegations of the CWs in the CCAC, yet deny Defendants access to their identities throughout discovery. AIG is entitled to the names of the CWs so that it may depose them and prepare its defense. Simply put, disclosure is clearly warranted under the circumstances presented here.

Legal Discussion

Southern District case law (as well as that of other jurisdictions) makes clear that, "[b]ecause Lead Plaintiff relied upon the CWs in drafting the [complaint], the CWs possess discoverable information." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2008 WL 2941215, at *3 (S.D.N.Y. July 30, 2008). The court in *Marsh* further concluded that "the identities of all CWs, even those whom Lead Plaintiffs do not intend to call at trial,[2] are discoverable, and Lead Plaintiffs' only valid justification for nondisclosure is a claim of privilege." *Id.*

However, Plaintiffs' assertion of attorney-client privilege and work product protection in this circumstance is attenuated at best, especially when balanced against the harm to Defendants of concealing the CWs' identities.[3] In *Marsh*, defendants sought "[a]ll documents concerning the confidential sources referred to in the [complaint], including but not limited to, documents sufficient to identify each and every [CW]." 2008 WL 2941215, at *1. The district court affirmed an order of the special master requiring plaintiffs to identify the names of their confidential sources, holding that any privilege that might attach to the identities of the CWs is "much more attenuated" than interview notes. *Id.* at *3. The court ordered disclosure on public policy grounds as well, finding that (1) it would unduly burden defendants to use their share of depositions to discover the identities of CWs, and (2) potential retaliation against the CWs was insufficient to prevent disclosure. *Id.* at *4-5.[4]

Plaintiffs attempt to avoid *Marsh* based on the faulty premise that *Marsh* "expressly distinguished cases involving substantially fewer confidential witnesses." In reality, *Marsh* distinguished cases where defendants (1) sought "to narrow an all-inclusive list of sources" or (2) "could ascertain confidential

---

[2] Of course, to the extent Plaintiffs intend to call any of the CWs as trial witnesses, "the issue of disclosure is really a matter of when, not whether." *Marsh*, 2008 WL 2941215, at *3.

[3] Plaintiffs' claim that disclosure of CW identities violates attorney-client privilege is without merit. *See, e.g., U.S. v. Amerada Hess Corp.*, 619 F.2d 980, 986 (3d Cir. 1980) (finding list of employees interviewed by counsel pursuant to internal investigation of defendant company not protected by attorney-client privilege; "[i]ndeed, the client could be asked in an appropriate proceeding to disclose the names of all persons who might have relevant information. Such an inquiry could not be foreclosed by the stratagem of making up such a list beforehand and furnishing it to the attorney.").

[4] The *Marsh* court also required the plaintiffs to produce any documents that the CWs provided to the plaintiffs. 2008 WL 2941215, at *5. AIG similarly requested (and has yet to receive from Plaintiffs) any documents that they received from the CWs, or confirmation that none were received.

Hon. Debra Freeman
June 9, 2011
Page 3

witnesses' identities through a relatively small number of depositions." 2008 WL 2941215, at *4.
Neither of those circumstances exist here. In this case, pursuant to Plaintiffs' request to dispense with
Rule 26 disclosures, there is no "all-inclusive list" from which AIG might initiate an investigation.
Based on the extensive allegations in the CCAC spanning a two-and-a-half-year purported class period,
AIG would be forced to attempt to identify three of the four CWs from among many hundreds of current
and former employees of AIG Financial Products Corp. ("AIGFP") with knowledge of the events at
issue in this action. The fourth CW, "an executive who headed the CDO business of a major Wall Street
investment bank" (CCAC at ¶ 125), further expands the universe of potential witnesses AIG must
canvas beyond AIGFP's bank of knowledgeable present and former employees to discover the identities
of the CWs. In such circumstances, where the investigation into confidential sources resembles "a time-
consuming and expensive effort to ferret out the veritable needle in the haystack," *In re Aetna Inc. Sec.
Litig.*, 1999 WL 354527, at *4 (E.D. Pa. May 26, 1999), the weak protection afforded CW identities
must yield to the liberal discovery policy underlying the Federal Rules. *See, e.g., In re Harmonic, Inc.
Sec. Litig.*, 245 F.R.D. 424, 428 (N.D. Cal. 2007) ("[R]equiring such a dilatory exercise runs counter to
the 'just, speedy, and inexpensive determination' directed by the Federal Rules of Civil Procedure. Fed.
R. Civ. P. 1.").

To avoid disclosure of the names, Plaintiffs rely on a handful of cases outside the Second Circuit
evaluating a much smaller, contained universe of potential witnesses. In *Ashworth*, for example, the
court expressly considered plaintiffs' production of a list of approximately 100 current or former
employees of defendant who were "likely to have discoverable information that plaintiffs may use to
support their claims," along with the subject about which each potential witness might have knowledge.
*In re Ashworth, Inc. Sec. Litig.*, 213 F.R.D. 385, 386 (S.D. Cal. 2002). Similarly, *In re MTI Technology
Corp. Sec. Litig. II* addressed an all-inclusive set of potential witnesses. 2002 U.S. Dist. LEXIS 13015,
at *13 (C.D. Cal. June 13, 2002) ("Here, Plaintiffs have provided a list of 71 names that . . . provides a
limited universe for Defendants to conduct discovery."). The reasoning of these cases does not apply
here because there is no list of potential witnesses from Plaintiffs and certainly no manageable subset of
individuals from which to determine the three current or former AIGFP confidential witnesses and the
"executive who headed the CDO business of a major Wall Street bank."

In arguing that Defendants here do not face undue hardship sufficient to pierce work-product protection,
Plaintiffs also rely on inapposite cases not involving CWs and considering much more strongly-
protected opinion work product. *See Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573 (9th
Cir. 1992); *Colonial Gas Co. v. Aetna Cas. & Surety Co.*, 139 F.R.D. 269 (D. Mass. 1991). *Holmgren*
and *Colonial Gas* were both suits against insurance companies for bad faith claims settlements
concerning the substance of protected notes and communications. They do not govern the factual
identities at issue here. *See Marsh*, 2008 WL 2941215, at *3 (citing *In re Harmonic* for the proposition
that "confidential witness identities constitute factual, as opposed to opinion, work product, and contain
'minimal substantive content.'").[5]

---

[5] Despite arguing that CW identities are strongly protected, Plaintiffs also emphasize that "[t]he
Complaint's 13-page scienter section . . . relies on a host of sources while mentioning confidential
witnesses in only three paragraphs." They assert that confidential allegations are inconsequential in
light of their other supporting evidence. But if the CW allegations are not central to Plaintiffs'

Hon. Debra Freeman
June 9, 2011
Page 4

Plaintiffs' public policy arguments also miss the mark.  They contend that disclosure would "chill informants from providing critical information which may end up being in the public eye," and that "former employees acting as informers could face serious consequences if their identities were revealed by plaintiff's counsel."  Even assuming the validity of those assertions here,[6] they are "less an argument against discovery and more an argument pertinent to . . . limiting access to the requested information." *Marsh*, 2008 WL 2941215, at \*5.  The Court has ample authority to ensure such disclosures do not become public, whether by enforcing a confidentiality agreement between the parties or entering a protective order itself.  *See, e.g., id.* (contemplating protective order to allay witness concerns regarding public disclosure); *In re Initial Public Offering Sec. Litig.*, 220 F.R.D. 30, 38 (S.D.N.Y. 2003) (denying motion for protective order where confidentiality agreement between the parties was sufficient to safeguard witness identities).  Indeed, Judge Swain entered a Confidentiality Stipulation and Protective Order in this case on November 5, 2010 (the "Protective Order").  Continuing to shield CW identities from disclosure serves no public policy as the Protective Order will safeguard the CWs identifies from the public.

In contrast, the recent case of *City of Livonia Employees' Retirement Sys. v. Boeing*, 2011 WL 824604 (N.D. Ill. Mar. 7, 2011), highlights important public policy considerations favoring disclosure.  The *Livonia* court specifically relied on confidential allegations in denying defendants' motion to dismiss the second amended complaint.  Nevertheless, defendants later learned the complaint contained "fundamental misrepresentations" about the CW's knowledge and position at the defendant company.  In granting defendants' motion for reconsideration, the Northern District of Illinois stated:

> If these facts were disclosed while the dismissal motions were pending, the court would not have concluded that the confidential source allegations were reliable, much less cogent and compelling. . . . The reality is that the informational basis for [these paragraphs] is at best unreliable and at worst fraudulent, whether it is the [the CW] or plaintiffs' investigators who are lying.[7]

*Id.* at \*4.  While Defendants have no reason to believe that such fraud is at play here, Defendants are nonetheless entitled to test the validity of every assertion underlying the CCAC.  Indeed, the Court's decision denying defendants' motions to dismiss here relies on allegations in the CCAC citing all four CWs.  Having shared its work product in the CCAC and thereby overcome the hurdle of the dismissal

---

allegations, any work product revealed in disclosing CW identities should also be inconsequential, as it would shed little if any light into Plaintiffs' mental impressions of the case.

[6] In AIG's situation, with numerous books and articles written using accounts of confidential sources, it appears that these CWs have not only spoken to Plaintiffs but to the press and others, as well.

[7] Other jurisdictions have likewise compelled parties to reveal the names of their confidential sources. *See, e.g., Hubbard* v. *Bankatlantic Bancorp, Inc.*, 2009 WL 3856458 (S.D. Fla. Nov. 17, 2009) (citing *Marsh* and holding that names of CWs are discoverable, are not attorney-work product, and that there is no public interest privilege to keep such names confidential); *In re Harmonic, Inc. Sec. Litig.*, 245 F.R.D. 424 (N.D. Cal. 2007); *In re Aetna Inc. Sec. Litig.*, 1999 WL 354527 (E.D. Pa. May 26, 1999).

Hon. Debra Freeman
June 9, 2011
Page 5

motion, Plaintiffs cannot now hide behind privilege to prevent Defendants from defending against these allegations and preparing for trial.  As one magistrate judge observed, when confronted with precisely the Catch-22 attempted by Plaintiffs:

> [I]t would be unfair to permit Plaintiffs to rely so heavily in their Complaint on the confidential witnesses, yet allow Plaintiffs to keep their identities from Defendants during discovery, unless and until Plaintiffs decide to use the confidential witnesses at trial . . . .

*Hubbard*, 2009 WL 3856458, at *4; *see also Miller v. Ventro Corp.*, 2004 WL 868202, at *2 (N.D. Cal. Apr. 21, 2004) ("[I]t would be unfair to permit Plaintiffs to rely so heavily on the CWs in the complaint, yet to keep those identities from Defendants, especially given the [compressed discovery] schedule in this case.").

In fact, Plaintiffs' allegations that one defendant, Alan Frost, was a "control person" of AIG − the *only* allegations against Mr. Frost − rely wholly on CW statements in the CCAC.  *See In re American Intl. Group, Inc. 2008 Sec. Litig.*, 741 F. Supp. 2d 511, 535-36 (S.D.N.Y. 2010).  And, the Court's opinion denying Mr. Frost's motion to dismiss was based on these CW allegations.[8]  Mr. Frost's ability to defend himself would be completely undermined if Plaintiffs are not required to disclose the identity of the CWs.

In light of the foregoing, AIG respectfully requests that Your Honor order Plaintiffs to comply with the Request and to disclose to Defendants the identities of the four CWs relied on in the CCAC.  We are available to answer any questions that Your Honor may have at the Court's convenience.

Respectfully submitted,

Robert F. Carangelo

---

[8] For example, Paragraph 266(a), relied on by the Court, asserts that CWs 2 and 3 "relayed" to the Plaintiffs that "financial reporting decisions concerning the CDS portfolio were made . . . by . . . Frost . . . and the valuation process relating to the CDS portfolio was deliberately conducted outside the purview of AIG's and AIGFP's risk management and financial and accounting functions."  Similarly, paragraph 480, which incorporates paragraph 138 by reference, cited by the Court, indicates that CW 3 claimed that Mr. Frost was one of the "senior business people" who handled significant discrepancies on issues related to collateral calls and contacted counterparties directly (CCAC ¶ 138).  *See also In re American Intl. Group*, 741 F. Supp. 2d at 536 (listing Frost's (a) alleged rejection of suggestions to hedge the CDS portfolio; (b) alleged failure to provide material information to Gorton for inclusion in the risk evaluation model; and (c) alleged unilateral decisions on risk management and valuation, based on allegations of CWs 1 and 4, as sufficient allegations to plead the "culpable participation" element of a § 20(a) claim).