```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/6/12
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
IN RE AMERICAN
INTERNATIONAL GROUP, INC.            :      MASTER FILE
2008 SECURITIES LITIGATION                  08 Civ. 4772 (LTS) (DF)
:
                                            **ORDER**
:

This Document Relates To:            :
All Actions
------------------------------------------------------------X

**DEBRA FREEMAN, United States Magistrate Judge:**

In this securities fraud consolidated class action, a discovery dispute has arisen over Plaintiffs' refusal to reveal the identities of confidential witnesses, whose statements were incorporated into the Complaint. Having reviewed the parties' submissions, and for the reasons discussed below, Plaintiffs are hereby ordered to reveal the identities of the confidential witnesses identified as "CW" 1-3, no later than March 13, 2012.

## BACKGROUND

### A. Plaintiffs' Complaint

On May 19, 2009, lead plaintiff State of Michigan Retirement Systems ("SMRS") filed a Consolidated Class Action Complaint on behalf of a putative class of investors ("Plaintiffs"). (*See* Consolidated Class Action Complaint, dated May 19, 2009 ("Compl.") (Dkt. 95).) Plaintiffs assert claims under the federal securities laws against American International Group, Inc. ("AIG" or the "Company") and various current or former AIG executives, directors, accountants, and underwriters (collectively, "Defendants"). The Complaint references testimony made by four confidential witnesses. ("CWs" 1-4.) (*See, e.g.* Compl. ¶¶ 125-7; 134-8; 145; 178; 266(a); 277(a); 302; 351(h); 481-3.)

**B.     Reliance by the Court on the Alleged CW Witness Statements in Denying Defendants' Motion to Dismiss the Complaint**

On September 27, 2010, the Honorable Laura T. Swain, U.S.D.J., denied Defendants' motion to dismiss the Complaint. *See In re American International Group, Inc. 2008 Securities Litigation*, 741 F. Supp. 2d 511 (S.D.N.Y. 2010). From the Court's decision denying that motion, it is apparent that, in finding that Plaintiffs had adequately pleaded their claims, the Court relied on a number of allegations contained in the Complaint that were purportedly derived from statements of the four CWs. *See id.* at 530-35. In particular, the Court cited to CW testimony in finding that Plaintiffs had adequately pleaded material misstatements and omissions, scienter, and a control-person liability claim (under Section 20(a) of the Exchange Act) against executive defendant Alan Frost ("Frost"). (*See id.*)

For example, the Court found that Plaintiffs had adequately pleaded that Defendants had "materially misled the market" by, *inter alia,*

> (1) "falsely stating that the Company engaged in extensive due diligence before entering into swap contracts," *id.,* at 530, when, according to the "confidential allegation of an executive who headed the CDO business of a major Wall Street investment bank," Defendants instead "merely requested the underlying and offering documents and did not request access to the counterparties' own valuation or analytical materials relating to the investment," *id.,* at 527 (citing CW statements contained in the Compl. at ¶¶ 351(h), 481);
>
> (2) "repeatedly emphasizing the strength of the Company's risk controls when addressing investor concerns related to exposure in the the subprime mortgage market," *id.,* at 530, when, according to statements of the CWs, the relevant portfolio at AIG Financial Products ("AIGFP") "was in fact not subject to either the risk control processes that governed other divisions of the Company or the risk control processes that previously had been in place at AIGFP," *id.*; *see also id.,* at 521 (citing CW statements contained in the Compl. at ¶¶ 136-38); and

2

> (3) "stating [in a Form 10-K] that the Company had the ability to hedge its CDS portfolio," *id.*, at 530, when, according to the representations of two of the CWs, "it was not economically feasible to do so," *id.*; *see also id.* at 525 (citing CW statements alleged in Compl. at ¶¶ 125-26).

Similarly, the Court relied on allegations based on CW statements in finding that Plaintiffs had adequately pleaded scienter. *See id.* at 533-34. In this regard, the Court noted that

> Plaintiffs can plead conscious misbehavior or recklessness by alleging defendants' knowledge of facts or access to information contradicting their public statements. In cases in which scienter is pled in part by alleging that the defendant knew facts or had access to information suggesting that their public statements were not accurate, the scienter analysis is closely aligned with the analysis as to misleading statements.

*Id.*, at 533 (internal quotation marks and citations omitted). In determining that Plaintiffs' pleading was adequate in this regard, the Court relied on Plaintiffs' allegation, based on CW statements, that "AIG and the Section 10(b) Defendants knew that risk controls had been weakened at AIGFP[, but that] AIG and the Section 10(b) Defendants deliberately declined, nonetheless, to disclose these risks to the marketplace." *Id.* at 533. In addition, the Court relied on allegations derived from CW statements in finding that Plaintiffs had satisfied the pleading standard of Rule 8(a), as to their control-person liability claim against Executive Defendant Frost. *See id.* at 535 (citing to Compl. ¶ 266(a)).

In sum, Plaintiffs incorporated significant CW testimony into their Complaint, and the Court relied on this testimony in finding that Plaintiffs had adequately stated their claims.

### C. Defendants' Motion To Compel Disclosure of the CWs' Identities

After the denial of Defendants' motion to dismiss, the Defendants issued discovery requests concerning, *inter alia*, the identities of the CWs. (*See* Letter to the Court from AIG, dated June 9, 2011 ("6/9/11 Def. Ltr.") (Dkt. 334), at 1.) Plaintiffs objected to revealing the

3

identifies of the CWs, and, after attempting unsuccessfully to resolve the issue through good faith conference, the parties sought direction from this Court. (*Id.*) Writing on behalf of all Defendants, AIG notified the Court of Plaintiffs' objections to disclosing the identities of the four CWs referenced in the Complaint. (*See id.*)

At a case management conference before this Court on November 10, 2011, Defendants reported that they had learned the identity of CW 4 from Plaintiffs' counsel, after Plaintiffs' counsel noticed the witness for a deposition. (*See* Letter to the Court from AIG, dated Dec. 9, 2011 ("12/9/11 Def. Ltr.") (Dkt. 333), at 3; *see also* Letter to the Court from Plaintiff, dated Dec. 20, 2011 ("12/20/11 Pl. Ltr.") (Dkt. 336 (placed under seal by the Court)), at 1.) Accordingly, Defendants now ask the Court to order Plaintiffs to reveal only the identities of the remaining three CWs.

Plaintiffs principally argue that disclosure of the identities of the CWs will reveal confidential attorney work product and that Defendants cannot overcome the work product protection by demonstrating a substantial need for the withheld information, or that they would suffer an undue hardship without disclosure of the information. In stressing the importance of the work product protection, they argue that protection of the confidentiality of the CWs is "necessary to maintain the deterrent effect of the federal securities laws." Plaintiffs ask that they only be required to disclose the identities of CWs noticed by Plaintiffs for deposition or placed on a Plaintiffs' witness list for trial. (*See* Letter to the Court from Lead Plaintiff, dated June 16, 2011 ("6/16/11 Pl. Ltr.") (Dkt. 335), at 1; 12/20/11 Pl. Ltr. at 1-2.)

## DISCUSSION

In light of the particular circumstances of this case, and in consideration of recent case law in this District, this Court is persuaded that (a) Plaintiffs' claims of work product protection

4

are outweighed by Defendants' interest in discovering the CWs' identities, and (b) the protective order in place in this case will address Plaintiffs' asserted confidentiality concerns.

### A.     The Work Product Doctrine

The attorney work product doctrine protects the "mental impressions, conclusions, opinions, or legal theories of a party's attorney" from disclosure. *See* Federal Rule of Civil Procedure 26(b)(3)(B). To be entitled to work-product immunity, the party asserting the protection "must show a real, rather than speculative, concern that the work product will reveal counsel's thought processes in relation to pending or anticipated litigation." *In re Grand Jury Subpoena Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 386 (2d Cir. 2003) (internal quotation marks and citations omitted). The attorney work product doctrine is a qualified protection, rather than an absolute one, and can be overcome by a showing that the party seeking discovery (1) "has substantial need of the materials," and (2) "is unable, without undue hardship, to obtain the substantial equivalent of the materials by other means." *Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Arbitron, Inc.*, No. 08 Civ. 4063 (PAE), 2011 WL 5519840, *4 (S.D.N.Y. Nov. 14, 2011) (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 26(b)(3)(A)(ii).

In *In re Bear Sterns Companies, Inc. Securities, Derivative, and ERISA Litigation*, 1:08 MDL No. 1963 (RWS), 2012 WL 259326 (S.D.N.Y. Jan. 27, 2012), the Honorable Robert W. Sweet, U.S.D.J., faced circumstances similar to those presented here. In fact, the very same Lead Plaintiff, SMRS, argued that it should not be required to reveal the identities of confidential witnesses, whose testimony SMRS relied on to state its claims, because of work product privilege, a lack of undue burden on defendants, and the fact that SMRS did not intend to rely on the confidential witnesses at trial. *Id.* at *2. Judge Sweet squarely rejected these

arguments, holding that "the work product doctrine cannot be employed to protect the identities of SMRS' confidential witnesses." *Id.* at *3.

In his opinion, Judge Sweet cited primarily to another similar and recent opinion, *Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Arbitron, Inc.*, No. 08 Civ. 4063 (PAE), 2011 WL 5519840 (S.D.N.Y. Nov. 14, 2011). In *Arbitron*, the defendant also sought an order directing the lead plaintiff to disclose the names of "Confidential Informants" referred to in the underlying complaint. *Id.* at *1. The Honorable Paul A. Engelmayer, U.S.D.J., held that the names of the confidential informants were not entitled to work product protection. *Id.* at *4. The Court stated:

> It is . . . entirely proper and common for a plaintiff to rely on confidential witnesses in a complaint, and attributions to such witnesses may and often are credited on motions directed to the pleadings. But, once the discovery phase begins, the balance of interests shifts. The priority becomes reciprocal and robust fact-gathering as the parties seek to discover relevant evidence.

*Id.* at *5 (internal citation omitted). The Court further stated that "where a party has attempted to satisfy the pleading requirements of the PSLRA 'by "showcasing" statements from a limited number of confidential witnesses, it may not thereafter refuse to disclose who they are' on grounds of work product." *Id.* at *5 (citing *Ross v. Abercrombie & Fitch Co.*, No. 2:05CV0819, 2008 WL 821059, at *3 (S.D. Ohio Mar. 24, 2008)).

Although, as the Court noted in *Bear Stearns*, case law in this area "is not uniform," substantial case law and the circumstances of this particular case support Defendants' position here – that Plaintiffs should not be permitted to rely on the testimony of confidential witnesses to state their claims, and then withhold the identities of the confidential witnesses during discovery. *See generally Bear Stearns; see also In re Marsh & McLennan Comp., Inc. Sec. Litig.*, No. 04 Civ. 8144 (SWK), 2008 WL 2941215 (S.D.N.Y. July 30, 2008) (ordering disclosure of

6

confidential witness identities because plaintiffs relied on the witness statements in drafting the complaint, the witnesses possessed discoverable information, and the identities "enjoy[ed] limited, if any, work-product protection"); *In re Dynex Capital, Inc. Sec. Litig.*, No. 05 Civ. 01897 (HB) (DF) (S.D.N.Y. Oct. 14, 2010) (Dkt. 92) (noting that the Court was not persuaded that the mere identities of confidential witnesses would qualify as work product and determining, nonetheless, that defendants' need for discoverable information would overcome plaintiff's claim of work product protection); *Baughman v. Pall Corp.*, No. CV 07-3359, U.S. Dist. LEXIS 122064, at *7 (JS) (ARL) (E.D.N.Y. Oct. 21, 2011) (ordering disclosure of the identities of confidential witnesses cited in the complaint over plaintiffs' "tenuous work product claim").[1]

Even if the identity of these witnesses qualifies as work product, the difficulty Defendants would face in trying to ascertain the identity of these witnesses from otherwise available information is a burden that overcomes Plaintiffs' need for protection. CW 1 is described as "an executive who formerly headed the CDO business at a major Wall Street investment bank and two of the largest commercial banks in the United States." (Compl. ¶ 125.) According to Defendants, CW 1 could have worked for "at least 15" institutions, all of them "giant financial institutions, like Goldman Sachs and Merrill Lynch, with thousands of employees during the relevant period." (12/9/11 Def. Ltr. at 3.) CW 2 is described as "a former AIGFP vice president who was involved in AIGFP's management information system during the Class Period" (Compl. at ¶ 134), and CW 3 is described as a "former AIGFP executive vice

---

[1] *But see In re SLM Corporation Securities Litigation*, No. 08 Civ. 1029 (WHP), 2011 WL 611854, *1 (S.D.N.Y. Feb. 15, 2011) (finding identities of the 16 confidential witnesses cited in plaintiffs' complaint, from among the 73 former employees already identified in plaintiffs' 26(a) disclosures, to be protected work product); *In re Veeco Instruments, Inc. Security Litigation*, No. 05 MD 1695 (CM) (GAY), 2007 WL 274800, (S.D.N.Y. Jan. 29, 2007) (declining to require plaintiff to identify confidential witnesses from list of 55 names, which included names of the three confidential witnesses).

president during the Class Period" (Compl. at ¶ 136). Defendants contend that AIGFP employed "over *140* vice presidents and *14* executive presidents during the Class Period." (12/9/11 Def. Ltr. at 4 (emphasis in original).) In this instance, there is no manageable universe of potential confidential witnesses, and Defendants would face a significant hardship, if they were forced to rely on their own efforts to identify the three CWs whose testimony Plaintiffs used in the Complaint.

The Court also rejects Plaintiffs' argument, made in their December 20, 2011 letter, that, in agreeing to waive Rule 26(a) initial disclosures, Defendants waived their right to learn the identities of the CWs. (*See* 12/20/11 Pl. Ltr. at 2). Plaintiffs cite no case law to support this argument, and the fact that the parties did not exchange lists of individuals "likely to have discoverable information," only increases the burden placed on Defendants in identifying Plaintiffs' potential witnesses, including the CWs 1-3.

### B.  **Concerns Regarding Confidentiality and Retaliation**

Plaintiffs contend that maintaining witness confidentiality is necessary to protect the CWs from retaliation from their past, current or future employers. (6/16/11 Pl. Ltr. at 7.) Defendants respond that the "existing confidentiality order in this action negates any confidentiality or public policy rationale for protecting disclosure." (12/9/11 Def. Ltr. at 4; *see also* Confidentiality Stipulation and Order, entered Nov. 5, 2010 (Dkt. 243).) In *Arbitron*, the Court rejected the plaintiff's "generic[]" assertions of retaliation, but acknowledged a confidential witness's legitimate interest in non-disclosure, and suggested that an appropriate protective order could address such a concern. *Arbitron*, 2011 WL 5519840 at *8 (noting that "there is no indication that any of these witnesses expressed concerns specific to themselves that led to the confidentiality designation"). Although Plaintiffs, in this case, have not submitted any

specific retaliation concerns, and thus the record before the Court does not reflect that any of the CWs face an actual risk of retaliation sufficient to justify non-disclosure of their names, the Court directs the parties to confer in good faith and to utilize the existing confidentiality order in this action to address any *specific* confidentiality concerns of any individual CW. *See In re Marsh & McLennan*, 2008 WL 2941215, at *5 (rejecting "conclusory" statements regarding retaliation, and stating that risk of retaliation if confidential witness identities were revealed "is less an argument against discovery and more an argument pertinent to the imposition of a protective order limiting access to the requested information").

## CONCLUSION

For the reasons stated above, Plaintiffs are directed to reveal the identities of the confidential witnesses identified in the Complaint as "CW 1," "CW 2," and "CW 3," no later than March 13, 2012.

Dated: New York, New York
       March 6, 2012

SO ORDERED

_____
DEBRA FREEMAN
United States Magistrate Judge

Copies to:
All Counsel (via ECF)