UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

| | | |
|---|---|---|
| IN RE AMERICAN INTERNATIONAL GROUP, INC. 2008 SECURITIES LITIGATION | : | No. 08 CV 4772 (LTS) (DCF) |
| | : | CONFIDENTIAL<br>FILED UNDER SEAL |
| | : | |
| | : | ORAL ARGUMENT REQUESTED |
| | : | EVIDENTIARY HEARING REQUESTED |

-------------------------------------------------------------x


# AIG'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO EXCLUDE THE DECLARATIONS, TESTIMONY AND OPINIONS OF LEAD PLAINTIFF'S EXPERT, DR. STEVEN P. FEINSTEIN


WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
(212) 310-8007 (fax)

*Attorneys for Defendant
American International Group, Inc.*

July 20, 2012

US_ACTIVE:\44053276\4\14430.0044

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

I. DR. FEINSTEIN'S OPINION WITH RESPECT TO 60 OF THE BONDS AT ISSUE REMAINS UNSUPPORTED ................................................................................. 2

II. DR. FEINSTEIN'S METHODOLOGIES REMAIN UNEXPLAINED AND RENDER HIS OPINIONS UNRELIABLE ...................................................................... 6

III. DR. FEINSTEIN IGNORED PROOF OF INEFFICIENCY IN THE MARKET FOR AIG'S COMMON STOCK AT THE END OF THE PROPOSED CLASS PERIOD .................................................................................................................................. 8

CONCLUSION ............................................................................................................................... 9

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Cammer v. Bloom*,
   711 F. Supp. 1264 (D. N.J. 1989) .................................................................................... 2, 3

*In re Enron Corp Sec. Derivative & "ERISA" Litig.*,
   529 F. Supp. 2d 644 (S.D. Tex. 2006) .................................................................................. 5

*In re Fed. Home Loan Mortgage Corp. (Freddie Mac) Sec. Litig.*,
   2012 WL 1028642 (S.D.N.Y. Mar. 27, 2012) .................................................................. 3, 8

*In re Polymedica Corp. Sec. Litig.*,
   432 F.3d 1 (1st Cir. 2005) ..................................................................................................... 8

*In re Polymedica Corp. Sec. Litig.*,
   453 F. Supp. 2d 260 (D. Mass. 2006) .................................................................................. 9

*Wilkof v. Caraco Pharm. Labs. Ltd.*,
   2012 WL 638517 (E.D. Mich. Feb. 28, 2012) .................................................................... 6

Defendant American International Group, Inc. ("AIG" or the "Company") respectfully submits this reply memorandum of law in further support of its motion to exclude the Declarations, testimony and opinions of Lead Plaintiff's expert, Dr. Steven P. Feinstein.

## PRELIMINARY STATEMENT

Dr. Steven Feinstein's opinions cannot be squared with the requirements of *Daubert* and its progeny. ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████ Further, Dr. Feinstein's attempt to extrapolate findings to the 60 Bonds from the few event studies he was able to conduct with respect to other Bonds is unsupported by case law or the academic community. *See* Point I, *infra*.

*Second*, as we briefly note again, Dr. Feinstein's methodology with respect to the event studies he did conduct for certain AIG Bonds and AIG's Common Stock remains unreliable. Most of our arguments remain unanswered. *See* Point II, *infra*.

*Third,* Dr. Feinstein has performed no independent analysis to refute Dr. Bajaj's findings that the market for AIG's Common Stock was not even "weak form" efficient during the period from June 16, 2008 to September 16, 2008. *See* Point III, *infra*.

---

█ ████████████████████████████████

I.  **DR. FEINSTEIN'S OPINION WITH RESPECT TO 60 OF THE BONDS AT ISSUE REMAINS UNSUPPORTED**

In its opposition to AIG's motion, Lead Plaintiff contends that Dr. Feinstein's analysis sufficiently satisfied each of the five *Cammer* factors and thus, demonstrated that the markets were efficient for all the 60 Bonds.[2] However, as set out in the chart below, Dr. Feinstein's analysis demonstrated only <u>one</u> *Cammer* factor (S-3 Registration Statement Eligibility), which is wholly insufficient under Second Circuit case law to demonstrate market efficiency.[3]

| *Cammer* Factor[4] | Case Law Standard | Analysis Presented by Dr. Feinstein for the 60 AIG Bonds |
|---|---|---|
| Average Weekly Turnover of the Security | Turnover of 2% or more would justify a strong presumption of market efficiency. | Dr. Feinstein does not include <u>any</u> average weekly turnover data for any of the 60 Bonds. |
| Analyst Coverage | Significant number of analysts covering the <u>specific</u> security at issue. | Dr. Feinstein does not identify a single analyst who specifically covered or produced a report for <u>any</u> of the 60 Bonds. |
| S-3 Registration Statement | Company is eligible to file an S-3 Registration Statement. | Dr. Feinstein does show that AIG was eligible to file an S-3 Registration Statement. |
| Existence of Market Makers | Numerous "market makers" for the security at issue. | Dr. Feinstein admits that he cannot identify <u>any</u> market makers for any of the 60 Bonds. |
| Cause and Effect Factor | Empirical facts showing a cause and effect relationship between unexpected corporate events and an immediate response in the stock price. | Dr. Feinstein does <u>not</u> conduct an event study for <u>any</u> of the 60 Bonds. |

---

[2] Lead Pl's. Opp. to Mot. to Excl. at 17-18.

[3] *See* AIG Opp. to Class Cert. at 14 n.41; AIG Mot. to Excl. at 3 n.7.

[4] *Cammer v. Bloom,* 711 F. Supp. 1264, 1286-87 (D. N.J. 1989).

2

Significantly, due to the lack of trading data, Dr. Feinstein did not conduct an event study for any of the 60 Bonds to satisfy the most important *Cammer* factor—a showing of "cause" and "effect" of company disclosures on the trading price.[5] ███████████

███████████

███████████

███████████

██ ██ ███████████

███████████

███████████

███████████

███████████

███████████

███████████

███████████ As the court held in *Freddie Mac*: "Without evidence of the prompt effect of

---

[5] *In re Fed. Home Loan Mortg. Corp (Freddie Mac) Sec. Litig.,* 2012 WL 1028642, *4 (S.D.N.Y. Mar. 27, 2012); *see also,* Feinstein Decl. ¶¶ 94-96, Mot. Ex. 1.

███████████

███████████

3

unexpected news on market price, the market cannot be called efficient."[8] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓[9]

Finally, Lead Plaintiff claims Dr. Feinstein properly concluded market efficiency for the 60 Bonds based on the event studies he conducted for eight other Bonds. Lead Plaintiff contends that all of the Bonds would have reacted the same to AIG news because "no matter the design of each of the AIG [B]onds or structured notes at issue, their values all depended on AIG's credit-worthiness and would have been impacted by changes in AIG's risk of default."[10] Putting aside that Dr. Feinstein's event studies for the eight Bonds are flawed and do not demonstrate market efficiency for even those Bonds,[11] PwC's expert, Dr. Cornell, explained the materially different characteristics of each of the Bonds at issue, which makes extrapolation of

---

[8] *Freddie Mac*, 2012 WL 1028642, at *9.

[9] *See* AIG Opp. to Class Cert. at 27 n.96. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

[10] Lead Pl's. Opp. to Mot. to Excl. at 18.

[11] Lead Plaintiff again argues that these Bond prices did not move in a statistically significant way until the very end of the Class Period because of an equity cushion that "insulated [AIG Bonds] from all but the most extreme news concerning the Company." Lead Pl's. Opp. to Mot. to Excl. at 4. However, Dr. Feinstein's ad-hoc use of the equity cushion to explain away the lack of price impact without providing any empirical evidence in support of his conclusion renders his opinion unreliable. Lead Pl's. Opp. to Mot. to Excl. at 16. No expert can test or replicate his results. *See* Juneja Decl. ¶ 136, Mot. Ex. 2.

4

results improper.[12] █████████████████████████████████████████

███████████████████████████████████████████

Moreover, if Lead Plaintiff's contention that there was a "market[] consensus" for all AIG Bonds is correct, then it is only logical that all AIG Bonds should have reacted in the same way to news.[14] But, as established in AIG's opening brief, AIG's expert, Dr. Vinita Juneja, found that prices for two of the eight Bonds (and a third bond not at issue) studied by Dr. Feinstein, moved in the same direction only 50 to 55 percent of the time.[15] Further, Dr. Juneja also compared the movement of the AIG Bonds with that of AIG Common Stock. She found that on days with large movements in the AIG Bonds' prices, AIG's Common Stock prices did not move in the same direction, and actually moved in the opposite direction on numerous days.[16] The fact that AIG Bonds did not consistently move in the same direction when compared to other AIG Bonds, or even AIG Common Stock, further demonstrates that there was no "market consensus" and therefore Dr. Feinstein's extrapolation is improper.[17] Lead Plaintiff does not address these fatal flaws.[18]

---

[12] Cornell Decl. ¶ 14, ¶¶ 53-62, Mot. Ex. 4.

████████████████████████████████████

[14] Lead Pl's. Opp. to Mot. to Excl. at 5, 19.

[15] *See* AIG Mot. to Excl. at 15; Juneja Decl. ¶ 172, Mot. Ex. 2.

[16] Juneja Decl. ¶ 176, Mot. Ex. 2.

[17] Lead Plaintiff primarily relies on one out-of-district case, *In re Enron Corp Sec. Derivative & "ERISA" Litig.* 529 F. Supp. 2d 644, 745-68 (S.D. Tex. 2006), to support extrapolation. However, the *Enron* court permitted plaintiff's expert to extrapolate event study results from a few bonds to other bonds because the class period in *Enron* was prior to, and during, the introduction of TRACE, which obliges broker/dealers to report bond transactions. Thus, the *Enron* court could not ascertain if the "quality [price and trading] data" for the bonds at issue was lacking due to the fact that it did not exist or because it was simply not reported. *Enron*, 529 F. Supp. 2d at 748, 751 n.125. Here, there is no such uncertainty—as TRACE data confirms

5

## II. DR. FEINSTEIN'S METHODOLOGIES REMAIN UNEXPLAINED AND RENDER HIS OPINIONS UNRELIABLE

As AIG established in its moving papers, Dr. Feinstein's analysis of only 1.4% of trading dates for AIG Common Stock and AIG Bonds was improper because to demonstrate market efficiency, Dr. Feinstein must show that the securities' prices reacted consistently and quickly to new information <u>throughout</u> the proposed Class Period.[19] Lead Plaintiff argues that Dr. Feinstein properly selected event dates "that appeared to be related to the alleged fraud and which appeared to be at least partially corrective of the alleged misrepresentations."[20] But, Lead Plaintiff's response serves only to highlight the problem with Dr. Feinstein's event date selection: Dr. Feinstein improperly relies on *ex-post* criteria (based on events pled in the Complaint) with full knowledge of how AIG's common stock price reacted. Courts have rejected such *ex-post* event date selection.[21]

It bears emphasis that Dr. Feinstein did not study many other news days, nor did he study whether the price reaction on days with no news differed from news days.[22] Nevertheless, Lead Plaintiff asserts, without any evidentiary support, that for the first 400 days

---

limited trading of AIG Bonds and thus there is no justification for extrapolation. *See also* Cornell Decl. at ¶ 54, 58-62, Mot. Ex. 5.; Juneja Decl. ¶¶ 122-124, 127-133, Mot. Ex. 2.

[18] Lead Plaintiff spends much time arguing that there is a relationship between the prices of the eight AIG Bonds that Dr. Feinstein studied and movements in the market interest rate. Lead Pl's. Reply to Class Cert. at 41-42. This relationship has nothing to do with the *Cammer* factors.

[19] *See* AIG Opp. to Class Cert., App. C; AIG Mot. to Excl. at 10.

[20] Lead Pl's. Opp. to Mot. to Excl. at 10.

[21] Lead Plaintiff's attempt to distinguish AIG's cases is unpersuasive. Lead Pl's. Opp. to Mot. to Excl. at 10 n.16. Each case makes clear that arbitrary selection of event dates is improper. AIG Mot. to Excl. at 9 n.32.

[22] AIG also demonstrated that Dr. Feinstein should have confirmed that the "news" he tested was not stale information, which Lead Plaintiff ignores. *See* AIG Mot. to. Excl. at 11.

of the proposed Class Period there were no unexpected material news days pertaining to AIG securities.[23]  But, Lead Plaintiff has previously <u>admitted</u> that there were multiple unexpected events in the first 400 days of the Class Period.[24]  It is Lead Plaintiff's burden to demonstrate that the market was efficient throughout the entire proposed Class Period, but it makes no such showing for the first 400 days.[25]

Dr. Feinstein's AIG Common Stock analysis is also flawed because he fails to use a methodology that adjusts for the extreme volatility in the last few months of the proposed Class Period, distorting his results.  Despite ample opportunity to empirically correct this error, Dr. Feinstein and Lead Plaintiff chose to merely dismiss the market's volatility as irrelevant and with little effect on Dr. Feinstein's analysis.[26]  But, taking into account the market volatility irrefutably changed the results of Dr. Feinstein's analysis, as demonstrated by AIG's expert Dr. Juneja.  Among other things, a properly conducted analysis would likely have shown many more

---

[23] Lead Pl's. Opp. to Mot. to Excl. at 10.  Lead Plaintiff's reliance on *Wilkof v. Caraco Pharm. Labs., Ltd.*, 2012 WL 638517 (E.D. Mich. Feb. 28, 2012) is misplaced.  Unlike in *Wilkof*, Lead Plaintiff has alleged in its Complaint that there were multiple unexpected events during the first 400 days of the Class Period and Dr. Feinstein failed to study even a single one of these events.

[24] Dr. Feinstein ignores eight of at least nine dates in Lead Plaintiff's Complaint upon which AIG allegedly made misrepresentations; he ignores 14 out of 21 days when his own regression analysis showed that AIG's stock price changed in a statistically significant manner; he ignores over 80% of days when AIG's stock price changed by more than 5% possibly in response to material news.  Other examples of unexpected events during the first 400 days of the proposed Class Period that Dr. Feinstein ignores include, but are not limited to:  earnings surprises (both positive and negative); analyst reports (both positive and negative); and Form 8-Ks.  *See* Feinstein Decl. ¶ 124, Mot. Ex. 1.  The failure to address any one of these dates remains unexplained by Dr. Feinstein.

[25] Lead Plaintiff argues that AIG only proposed one additional event date during the first 400 days of the Class Period—August 9, 2007.  However, the August 9, 2007 date tested by Dr. Juneja was used as a mere illustration.  It is not AIG's burden to suggest and test all possible event dates.

[26] Lead Pl's. Opp. to Mot. to Excl. at 12-13.

days with statistically significant returns during the earlier part of the Class Period and presented a more accurate picture of AIG's stock price behavior (after adjusting for market and peer company movements). Many of the flaws in Dr. Feinstein's event date selection were addressed by the court in *Freddie Mac*, where the court found that plaintiff's expert failed to demonstrate market efficiency because the expert did not consider intervening causes for a price decline and only considered a small number of catastrophic events with dramatic price responses.[27]

### III. DR. FEINSTEIN IGNORED PROOF OF INEFFICIENCY IN THE MARKET FOR AIG'S COMMON STOCK AT THE END OF THE PROPOSED CLASS PERIOD

Lead Plaintiff argues that the tests used by Dr. Bajaj to demonstrate that the market for AIG Common Stock was weak form <u>inefficient</u> from June 16, 2008 to September 16, 2008, were inappropriate tools to assess market efficiency.[28] Lead Plaintiff mistakenly contends that the tests used by Dr. Bajaj test for "fundamental value" efficiency.[29] However, to invoke the fraud-on-the-market presumption of reliance in a Section 10(b) case, Lead Plaintiff claims Dr. Feinstein need only demonstrate "informational efficiency."[30] But, after the First Circuit remanded *Polymedica*,[31] the district court not only recognized, but approved of, the use of put-call parity and serial correlation (tests performed by Dr. Bajaj) as relevant to determine market

---

[27] *Freddie Mac*, 2012 WL 1028642, at *6-7.

[28] Lead Pl's. Opp. to Mot. to Excl. at 3; Lead Pl's Reply to Class Cert. at 34.

[29] Lead Plaintiff describes fundamental value efficiency as "the best possible estimates, in light of all available information, of the actual economic values of securities in terms of their expected risks and returns." Lead Pl's. Reply to Class Cert. at 34.

[30] Lead Plaintiff describes informational efficiency as "whether the price quickly absorbs and reflects news about the company." Lead Pl's. Reply to Class Cert. at 34.

[31] *In re Polymedica Corp. Sec. Litig.*, 432 F.3d 1 (1st Cir. 2005).

efficiency in the class certification context.[32]  Dr. Feinstein cannot properly <u>ignore</u> evidence that contradicts his conclusions in this case.

Notwithstanding Lead Plaintiff's assertions, both Dr. Roll and Dr. Feinstein have confirmed that (1) put-call parity violations did in fact occur; and, (2) there was evidence of price predictability during the last three months of the proposed Class Period.[33]  It is Dr. Feinstein's burden, when presented with evidence of weak form inefficiency, to independently establish the market was efficient.[34]  Dr. Feinstein has failed to do so. [35]

## CONCLUSION

For the foregoing reasons, and those put forth in AIG's opening brief, the Court should exclude Dr. Feinstein's Declarations, testimony and opinions.

---

[32] *In re Polymedica Corp. Sec. Litig.*, 453 F. Supp. 2d 260 (D. Mass. 2006).

[33] Lead Pl's. Mot. for Class Cert. at 34, 38.

[34] Without weak form efficiency a market cannot be semi-strong form efficient, which is the required standard that Lead Plaintiff must demonstrate to avail itself of the fraud-on-the-market presumption.  ▮▮▮▮▮▮▮▮▮▮▮▮  *See also* AIG Opp. to Class Cert. at 13-15.

[35] Lead Plaintiffs' assertion that AIG did not offer a substantive response to Dr. Roll and Dr. Feinstein's criticisms of Dr. Bajaj's tests is not true.  Lead Pl's. Opp. to Mot. to Excl. at 14-15.



9

Dated: New York, New York
      July 20, 2012

Respectfully submitted,

_____
Joseph S. Allerhand
Robert F. Carangelo
Stacy Nettleton
Kathleen E. Murphy
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

*Attorneys for Defendant*
*American International Group, Inc.*