**Weil, Gotshal & Manges LLP**

BY HAND



767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

September 10, 2012

**Joseph S. Allerhand**
+1 (212) 310-8725
joseph.allerhand@weil.com

Hon. Laura Taylor Swain
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street, Courtroom 11C
New York, NY 10007-1312

Re:   **In re American Int'l Group, Inc. 2008 Sec. Litig.,
      Master File No. 08-CV-4772 (LTS) (DCF)**

Dear Judge Swain:

We write on behalf of defendant American International Group, Inc. ("AIG") to address significant recent developments in the governing law that directly impact two pending motions before this Court: (1) the Securities Act Defendants' Motion for Judgment on the Pleadings dated October 12, 2011 (Docket No. 309), and (2) Lead Plaintiff's Motion for Class Certification dated March 30, 2012 (Docket No. 339).

As we explain below, in light of these recent developments, AIG has now formally joined the Motion for Judgment on the Pleadings. In addition, the recent cases further confirm that the class as proposed cannot be certified. Given these developments, it may be appropriate to have a conference at the Court's convenience to discuss the current status of the motions and to address the recent case law discussed below.

### I. The Motion for Judgment on the Pleadings

Enclosed is a courtesy copy of the joinder in the Securities Act Defendants' Motion for Judgment on the Pleadings filed today by AIG and the Executive Defendants. The motion is based on the Second Circuit's decision in *Fait v. Regions Fin. Corp.*, 655 F.3d 105 (2d Cir. 2011), which held that statements of opinion, such as estimates of goodwill, are not actionable under the Securities Act of 1933 ("Securities Act") unless plaintiff alleges that the statements were both objectively false and not believed by defendants at the time they were made. As set forth in the motion papers and AIG's joinder, the Consolidated Class Action Complaint ("CCAC") here explicitly disclaims for purposes of Lead Plaintiff's Securities Act claims any effort to allege scienter, *i.e.*, that defendants disbelieved the statements of opinion at issue about AIG's subprime exposure, valuation loss estimates and subprime-related risks.

Initially, AIG and the Executive Defendants did not join in the motion because those defendants (unlike the Securities Act Defendants), were also named as defendants under the Securities

Hon. Laura Taylor Swain  **Weil, Gotshal & Manges LLP**
September 10, 2012
Page 2

Exchange Act of 1934 ("Exchange Act") and Lead Plaintiff had alleged scienter with respect to those claims which this Court found sufficient as a matter of pleading to state a claim in denying AIG's and the Executive Defendant's motions to dismiss. However, since the Court's decision denying defendants' motions to dismiss there has been an intervening change in the law beginning with the Second Circuit's decision in *Fait* which this Court did not have the opportunity to consider in rendering its decision. Indeed, there have been several recent decisions in this Circuit that reinforce *Fait*'s central holding and make clear that Lead Plaintiff's Securities Act claims against AIG and the Executive Defendants are equally deficient, warranting dismissal and judgment in their favor.[1]

On March 16, 2012, Judge Lewis Kaplan dismissed plaintiffs' Securities Act claims in *NECA-IBEW Pension Trust Fund v. Bank of Am. Corp.*, No. 10-CV-0440 (S.D.N.Y. Mar. 16, 2012) (Docket No. 65) ("*BofA*") (adopting recommendation of Mag. J. Pitman, 2012 WL 3191860 (S.D.N.Y. Feb. 9, 2012)) based on *Fait* because, as here, plaintiffs had "expressly exclude[d] and disclaim[ed] any allegation that could be construed as alleging fraud or intentional or reckless misconduct" by the defendants concerning alleged misstatements of opinion as to Bank of America's residential mortgage exposure and valuation losses.[2]

Then, on August 10, 2012, Judge Batts dismissed the plaintiffs' Securities Act claims in *In re Deutsche Bank AG Sec. Litig.*, 2012 WL 3297730 (S.D.N.Y. Aug. 10, 2012), finding that *Fait* constituted "a change in intervening law" warranting reconsideration of her prior decision denying in part the defendants' motions to dismiss.[3] As discussed in PwC's August 17, 2012 letter to Your Honor concerning the decision, Judge Batts held that Deutsche Bank's statements concerning its subprime exposure and its estimates of subprime-related losses were all a "matter of opinion rather than fact" and thus subject to the *Fait* standard.[4] Judge Batts found plaintiffs' allegations insufficient to satisfy *Fait* because plaintiffs admittedly had not pled any knowing misconduct on behalf of the defendants with respect to their Securities Act claims, instead expressly relying on a theory of strict liability.

---

[1] The Second Circuit has also held that the standard articulated in *Fait* is equally applicable to claims under the Exchange Act. *City of Omaha, Neb. Civilian Emps.' Ret. Sys. v. CBS Corp.*, 679 F.3d 64 (2d Cir. 2012). Although the CCAC is devoid of allegations to meet the *CBS* standard, Lead Plaintiff will no doubt argue it has discovered sufficient facts to support the CCAC's scienter allegations in satisfaction of *CBS*. Thus, we believe these claims are best addressed at the summary judgment stage.

[2] *BofA*, 2012 WL 3191860, at *5. For the Court's convenience, we have attached a copy of Judge Kaplan's order which is unreported.

[3] *Deutsche Bank*, 2012 WL 3297730, at *2.

[4] *Id.*

Hon. Laura Taylor Swain  
September 10, 2012  
Page 3

**Weil, Gotshal & Manges LLP**

The allegations in *BofA* and *Deutsche Bank* are strikingly similar to the allegations here, compelling the same result with respect to Lead Plaintiff's Securities Act claims against all defendants. Just as in *BofA* and *Deutsche Bank*, the statements at issue in this case about AIG's subprime exposure, estimates of valuation losses, and subprime-related risks, are statements of opinion. And just as in *BofA* and *Deutsche Bank*, Lead Plaintiff here expressly disclaimed any effort to plead any knowing misconduct on behalf of any of the defendants with respect to its Securities Act claims. The CCAC specifically alleges that: "The Securities Act claims are not based on any knowing or reckless misconduct on behalf of the Defendants – *i.e.*, they do not allege, and do not sound in, fraud – and Plaintiffs specifically disclaim any allegations of fraud in these non-fraud claims under the Securities Act."[5] Just as in *Deutsche Bank*, "[t]his alone is fatal to [Lead] Plaintiffs' claims."[6]

For these reasons and the reasons set forth in the joinder filed today, the Court should grant AIG and the Executive Defendants the same relief requested in the Securities Act Defendants' Motion.

## II. Lead Plaintiff's Motion for Class Certification

The issues raised in the pending Motion for Judgment on the Pleadings and above underscore why the proposed class cannot be certified pursuant to Lead Plaintiff's pending Motion for Class Certification.

---

[5] CCAC at ¶ 580.

[6] *Deutsche Bank*, 2012 WL 3297730, at *2. Lead Plaintiff's attempt to distinguish *Deutsche Bank* in its August 23, 2012 letter to the Court is unavailing. Lead Plaintiff ignores its own pleading and argues instead that the CCAC pleads "subjective falsity" in satisfaction of *Fait* with respect to the valuation loss estimate disclosed at AIG's December 5, 2007 investor conference for purposes of Lead Plaintiff's Exchange Act claims. *See* Aug. 23, 2012 Ltr. at 2. Nowhere does Lead Plaintiff's letter address the fact that the CCAC expressly disclaims any alleged knowing misconduct with respect to its Securities Act claims—precisely the basis for the courts' decisions in both *BofA* and *Deutsche Bank*. Indeed, the case relied on by Lead Plaintiff, *Fed. Hous. Fin. Agency v. UBS Americas, Inc.*, 2012 WL 1570856 (S.D.N.Y. May 4, 2012), actually undermines Lead Plaintiff's position. There, Judge Cote upheld plaintiff's Securities Act claims because plaintiff had pled that the valuations at issue were disbelieved at the time they were disclosed. *See id.* at *16. Moreover, in its letter, Lead Plaintiff claims to have adequately pled "subjective falsity" with respect to only six offerings in December 2007 out of the 101 different offerings at issue in the case over the proposed two-and-a-half year class period. In fact, the CCAC is devoid of sufficient allegations to satisfy *Fait* and *CBS* with respect to any of the offerings at issue.

Hon. Laura Taylor Swain  
September 10, 2012  
Page 4

**Weil, Gotshal & Manges LLP**

First, Lead Plaintiff has failed to plead—let alone establish by a preponderance of the evidence as it must on a motion for class certification—that it has viable Securities Act claims. Nor has Lead Plaintiff pled—let alone established by a preponderance of the evidence—that it has viable Exchange Act claims with respect to each of the alleged misstatements of opinion about AIG's valuation loss estimates and subprime-related risks. Indeed, as AIG argued in its Memorandum of Law in Opposition to Lead Plaintiff's Motion for Class Certification, Lead Plaintiff has put forth no evidence that defendants knowingly failed to disclose AIG's subprime exposure and material related risks before the subprime credit crisis began in August 2007. And Lead Plaintiff put forth no evidence that defendants disbelieved statements about AIG's ability to weather the growing financial crisis after AIG's extensive disclosures of subprime losses and warnings of related risks in February 2008. The Court cannot certify meritless claims[7] and, as explained above, the law in this Circuit as to the sufficiency of allegations with respect to complex accounting estimates and other valuation opinions has changed dramatically since the denial of the motions to dismiss.[8]

Second, AIG argued in its opposition to class certification that Lead Plaintiff failed to meet its burden to invoke the fraud-on-the-market presumption of reliance necessary to overcome the individualized issues of fact that would be required to establish the element of reliance for the claims under the Exchange Act.[9] In yet another recent and important decision, *In re Am. Int'l Grp., Inc. Sec. Litig.*, 2012 WL 3264048 (2d Cir. Aug. 13, 2012) ("*Gen Re*"), the Second Circuit reaffirmed the significance of the fraud-on-the-market presumption to class certification of Exchange Act claims in the litigation context.

In reversing the district court's failure to certify a class for settlement purposes only, the Second Circuit held that the fraud-on-the-market presumption did not have to be established in the settlement context because there would be no "manageability" issues at any trial with respect to reliance issues given the settlement. The Court, however, drew a sharp contrast between certifying a class for settlement purposes and the situation in our case, where the failure to establish the fraud-on-the-market presumption "typically renders trial unmanageable, precluding

---

[7] *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 39 (2d Cir. 2009) ("[W]hen a claim cannot succeed as a matter of law, the Court should not certify a class on that issue.") (quoting *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 228 (2d Cir. 2008)) (internal quotation marks omitted).

[8] *See, e.g., CBS*, 679 F.3d at 67-68 (affirming dismissal, among other reasons, by applying *Fait* to claims arising under Sections 10(b) and 20(a) of the Exchange Act) ("Moreover, even if the second amended complaint did plausibly plead that defendants were aware of facts that *should* have led them to begin interim impairment testing [of goodwill] earlier, such pleading alone would not suffice to state a securities fraud claim after *Fait*.") (emphasis in original).

[9] Docket No. 354, filed May 24, 2012, at 13-27.

Hon. Laura Taylor Swain
September 10, 2012
Page 5

**Weil, Gotshal & Manges LLP**

a finding that common issues predominate."[10]  Citing its decision in *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 485 (2d Cir. 2008), the Second Circuit reiterated that where, as here, certification is sought for Section 10(b) claims under the Exchange Act, a plaintiff must establish through admissible evidence that the fraud-on-the-market presumption applies, and defendants must be afforded an opportunity to present evidence rebutting that presumption at the class certification stage.[11]

In its opposition brief, AIG demonstrated that numerous manageability issues arise from Lead Plaintiff's proposed sweeping class because individual issues of reliance predominate over common ones. AIG established that Lead Plaintiff had failed to meet its burden to invoke the fraud-on-the-market presumption and also rebutted invocation of the presumption in three ways:

1. With respect to Lead Plaintiff's Exchange Act claims during the period March 2006 to July 2007: AIG demonstrated that Lead Plaintiff had not proffered any evidence of material misstatements or omissions that inflated the price of AIG's common stock during this period. To the contrary, AIG's expert determined that there was no impact on the price of AIG's common stock when the alleged "truth" about AIG's subprime exposure was disclosed in August 2007. In the absence of "price impact," there can be no fraud-on-the-market presumption.

2. With respect to Lead Plaintiff's Exchange Act claims after February 2008 through the end of the proposed class period on September 16, 2008: AIG demonstrated that there were no actionable misstatements after AIG's February 2008 disclosures of billions of dollars of subprime losses and extensive warnings. And the unrefuted expert evidence developed by AIG demonstrated that the market for AIG's common stock became inefficient as the financial crisis accelerated and AIG's common stock became ensnared in a downward trading spiral with massive volatility—rebutting any fraud-on-the-market presumption during this period.

3. With respect to Lead Plaintiff's Exchange Act claims for AIG bonds during the entire proposed class period: AIG demonstrated that Lead Plaintiff's expert had failed to proffer evidence to support his conclusion that 68 different bonds at issue traded in efficient markets because of the lack of pricing and trading data as well as any evidence of price impact.

Finally, cases to be decided in the upcoming term at the United States Supreme Court may change the litigation landscape for class certification motions under the securities laws. For example, the Supreme Court granted certiorari in *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,

---

[10] *Gen Re*, 2012 WL 3264048, at *9.

[11] *Gen Re*, 2012 WL 3264048, at *9.

Hon. Laura Taylor Swain
September 10, 2012
Page 6

**Weil, Gotshal & Manges LLP**

No. 11-1085, 2012 WL 692881 (U.S. June 11, 2012). The *Amgen* certiorari petition seeks resolution of a circuit split on the following two questions: (1) whether plaintiffs must prove materiality at class certification in order to obtain the fraud-on-the-market presumption in Exchange Act cases; and (2) whether, in such cases, district courts must permit defendants to present evidence rebutting the applicability of the fraud-on-the-market theory before certifying a plaintiff class, including lack of "price impact."[12] *Amgen* marks the third time in two years that the Supreme Court will address the fraud-on-the-market presumption.[13] Although the issues raised in *Amgen* implicate the contested issues on Lead Plaintiff's Motion for Class Certification, AIG's position on Lead Plaintiff's Motion is entirely consistent with Second Circuit law as recently reaffirmed by the Second Circuit in *Gen Re*.

The Supreme Court also granted certiorari in *Comcast Corp. v. Behrend*, No. 11-864, 2012 WL 113090 (U.S. June 25, 2012) on the question of "[w]hether a district court may certify a class action without resolving whether the plaintiff class has introduced admissible evidence, including expert testimony, to show that the case is susceptible to awarding damages on a class-wide basis." This question implicates the extent to which courts consider merits issues at class certification, including the admissibility of expert testimony—also issues relevant to Lead Plaintiff's pending Motion for Class Certification as well as Defendants' pending Motion to Exclude the Declarations, Testimony and Opinions of Lead Plaintiff's Expert Dr. Steven P. Feinstein (Docket No. 363, filed May 25, 2012).

We greatly appreciate Your Honor's consideration of these matters. In light of the recent developments discussed above, AIG respectfully requests a conference at the Court's convenience to discuss the status of the pending motions and to address any questions, which will hopefully also reduce the amount of correspondence by the parties with respect to all of these issues.

Respectfully submitted,

/s/ Joseph S. Allerhand

Joseph S. Allerhand

Enclosures

cc: All Counsel

> The Court will inform the parties if it believes that a conference would be helpful.
>
> SO ORDERED
> NEW YORK, NY
> Sept 12, 2012
> /s/ SWAIN
> USDJ

---

[12] *See* Petition for a Writ of Certiorari, *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, No. 11-1085, 2012 WL 707042, at *i (U.S. Mar. 1, 2012).

[13] *See also Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179 (2011); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2552 n.6 (2011).