UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

IN RE AMERICAN
INTERNATIONAL GROUP, INC.,
2008 SECURITIES LITIGATION                    No.  08 Civ. 4772 (LTS)(DCF)


This Document Relates To:
All Actions
-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

Lead Plaintiff State of Michigan Retirement Systems ("Lead Plaintiff"), brings

this action on behalf of a putative class of investors ("Plaintiffs") who purchased or otherwise

acquired publicly traded securities issued by American International Group, Inc. ("AIG" or the

"Company"), between March 16, 2006, and September 16, 2008 (the "Class Period").[1] Plaintiffs

principally allege that the Defendants AIG officers, directors, accountants and securities

underwriters[2] ("Defendants") violated federal securities laws by materially misstating the extent

to which AIG had accumulated exposure to the subprime mortgage market through its securities

lending program and its credit default swap ("CDS") portfolio.  As relevant to the current

motion, Plaintiffs assert claims against AIG, PricewaterhouseCoopers LLP ("PwC"), the

Director Defendants, and the Signing Executive Defendants for alleged violations of Section 11

of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77k ("Section 11"), and against the

"Underwriter Defendants" for alleged violations of Section 11 and Section 12(a)(2) of the

---

[1]   The capitalized terms used in this order are either defined herein or used as they
      are defined in the Complaint.

[2]   A full listing of the Defendants in this action is set forth in In re Am. Int'l
      Group, Inc. 2008 Sec. Litig., 741 F. Supp. 2d 511, 517 (S.D.N.Y. 2010).

Securities Act, 15 U.S.C. § 77l(a)(2) ("Section 12(a)(2)").  PwC has moved pursuant to Rule 12(c)

of the Federal Rules of Civil Procedure to dismiss all of the Securities Act claims against it, and

AIG, the Director Defendants, the Signing Executive Defendants, and the Underwriter

Defendants have moved for partial dismissal of the Securities Act claims against them.[3]  The

Moving Defendants argue that the Complaint fails to allege that they disbelieved the allegedly

actionable misrepresentations and omissions at the time they were made, as required by the

recent holding of the United States Court of Appeals for the Second Circuit in Fait v. Regions

Financial Corporation, 655 F.3d 105 (2d Cir. 2011).  The Court held oral arguments on the

motion on April 2, 2013.  For the following reasons, the Moving Defendants' motion is granted.

BACKGROUND

Plaintiffs' 284-page Complaint details Plaintiffs' allegations as to the causes of

AIG's liquidity crisis and the attendant material misstatements and omissions on Defendants'

part.  The Court assumes the parties' familiarity with the record and limits the following

summary of Plaintiffs' factual allegations to matters that are material to the Court's legal

conclusions.

A preliminary word about the structure of the Complaint is helpful in

understanding the Court's disposition of this motion.  Plaintiffs' Complaint is divided into two

parts.  The first part contains the claims, and supporting factual allegations, brought pursuant to

the Securities Exchange Act of 1934 ("Exchange Act").  (Compl. ¶¶ 1-576.)  The second part of

the Complaint contains the claims, and supporting factual allegations, brought pursuant to the

_____

[3]      AIG, the Director Defendants, the Signing Executive Defendants, the
        Underwriter Defendants, and PwC are collectively referred to as the "Moving
        Defendants."

Securities Act.  (Id. ¶¶ 577 - 701.)  The Securities Act section of the Complaint "expressly

exclude[s] and disclaim[s] any allegation that could be construed as alleging or sounding in

fraud or intentional or reckless misconduct" and, with a few exceptions (explained further

below), the Securities Act section "do[es] not incorporate . . .any allegations of fraud in

connection with [the Securities Act claims]."  (Id. ¶¶ 607, 621, 639, 684).

Plaintiffs allege that the Moving Defendants are liable under the Securities Act

because certain SEC filings contained "untrue statements of material fact and material

omissions," including that: "(a) [the filings] failed to disclose . . . the decision to stop writing

CDS [Credit Default Swap] contracts on multi-sector CDOs [collateralized debt obligations],

and . . . the reasons for that decision . . . ; (b) they failed to disclose the decision made by AIG

Investments in late 2005 to change the mix of investments for the securities lending program to

contain 75 percent RMBS and other ABS [Asset-Backed Securities] . . . and failed to disclose

(and materially misrepresented) . . . the concentration of investments in RMBS and other ABS

that was made through the securities lending program; (c) they failed to disclose that the CDS

contracts frequently provided that AIGFP's [American International Group Financial Products

Corporation] CDS counterparties were the presumptive prevailing party in settling the value of

the multi-sector CDOs underlying AIGFP's CDS contracts . . . ; (d) they misrepresented . . . the

actual cash collateral payment requirement for the securities lending program . . . ; and (e) they

failed . . . to adequately set forth AIG's concentration of credit risk in the U.S. residential and

mortgage market, including the subprime market . . . ."  (Compl. ¶ 594.)

The Complaint alleges that AIG's securities offering materials "failed to disclose

the material fact that many of the underwriters of securities and notes issued by AIG during the

Class Period were also counterparties of AIG with respect to its CDS portfolio and securities

lending program, and therefore, that significant portions of the sums raised through the Offerings

by the Underwriters would or could be used to post collateral for the benefit of the Underwriters,

or to make payments to the Underwriters." (Id. ¶ 597.)  The Complaint additionally alleges that

the "financial statements, including the footnotes thereto, included and/or incorporated by

reference within the Offering Materials were materially false and misleading . . . because they

were in violation of GAAP [(generally accepted accounting principles)]." (Id. ¶ 606.)

Plaintiffs' GAAP-related contentions are addressed more fully in the Exchange

Act section of the Complaint, wherein the Plaintiffs allege that the Section 10(b) Defendants

violated the following Financial Account Standards ("FAS"): (1) FAS 107, 133 and 157, which

required that AIG's CDS portfolio be reported at fair value (id. ¶¶ 426-29, 432-33); (2) FAS 5,

which required AIG to disclose losses incurred and loss contingencies in connection with its

credit default swaps (id. ¶¶ 430-33); and (3) FAS 107, which allegedly required AIG to disclose,

among other things, the fact that AIG had taken "significant concentrations, or group

concentrations, of credit risk" by investing 75 percent of its securities lending portfolio in

residential mortgage-backed securities, (Id. ¶ 434).  The Complaint also alleges that AIG

violated its obligation under Financial Accounting Standards Board Interpretations ("FIN") 45 to

disclose certain guarantees – specifically, the full amount of AIG's obligations to post collateral

under its credit default swaps.  (Id. ¶¶ 441-42.)  Plaintiffs have since clarified, in connection with

this motion practice, that the only GAAP-related allegations they are pursuing against the

Moving Defendants under the Securities Act are those pertaining to FAS 107 and FIN 45.

Plaintiffs allege that PwC violated Section 11 by falsely certifying that (1) AIG's

financial statements were prepared in conformity with GAAP, and (2) that PwC's audit was

performed in accordance with Generally Accepted Auditing Standards ("GAAS").  (Id. ¶¶ 645-

46.)  Plaintiffs allege that PwC was "in a unique position to identify, and to cause the Company to remedy, the omission of both (a) the recognition of incurred losses from required fair value adjustments and (b) required disclosures in the Company's financial statements and SEC filings discussed herein."  (Id. ¶ 644.)  According to Plaintiffs, had PwC conducted a proper audit, it would have learned of – and required AIG to disclose – the flaws in AIG's internal controls and the risks posed by the CDS portfolio, the securities lending program, and the concentration of exposure to the subprime mortgage market.  (Id. ¶¶ 646, 649, 667-72.)  Plaintiffs assert that PwC's failure to conduct a proper audit resulted in its signing unqualified opinions (included in the Company's 2005 and 2006 Forms 10-K) that did not disclose adequately any of these flaws.

DISCUSSION

In considering a motion pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings, the Court applies the same standards used for the determination of a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss a complaint for failure to state a claim.  Cortes v. City of New York, 700 F. Supp. 2d 474, 480-81 (S.D.N.Y. 2010); see also LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 475-76 (2d Cir. 2009).  Thus, the Court accepts as true the non-conclusory factual allegations in the complaint and draws all inferences in the Plaintiffs' favor.  Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007); see also Ashcroft v. Iqbal, 556 U.S. 662 (2009).

To survive a Rule 12(b)(6) motion, a complaint must "plead enough facts to state a claim that is plausible on its face."  Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (internal quotation marks omitted) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  "Where a complaint pleads facts that are

merely consistent with a defendant's liability, it stops short of the line between possibility and

plausibility of entitlement to relief."  Id. (internal quotations and citations omitted).

Allegations Against AIG, and the Signing Executive, Director, and Underwriter Defendants

The non-PwC Moving Defendants seek dismissal of only those Securities Act

claims that are premised on (1) the failure to disclose AIG's concentration of credit risk as

allegedly required by FAS 107 (Compl. ¶ 594(e)), and (2) the financial statements' alleged

failure to comply with GAAP.  (Id. ¶ 606.)  The only GAAP-related allegation that Plaintiffs

continue to press against these Defendants is the allegation related to FIN 45's requirement that

AIG disclose guarantees.  Defendants contend that the misstatements and omissions on which

Plaintiffs' claims are premised were statements of opinion; that, under Fait v. Regions Financial

Corporation, 655 F.3d 105 (2d Cir. 2011), such opinions are only actionable if Plaintiffs plead

subjective falsity; and that the Complaint fails to plead facts sufficient to support an inference of

subjective falsity.

The Fait plaintiffs brought a putative class action alleging that the defendant in

that case, Regions, was liable under Sections 11 and 12(a)(2) for misstating the corporation's

goodwill and loan loss reserves in violation of GAAP.  The Second Circuit noted that there was

no objective, universally agreed-upon standard for measuring goodwill and loan loss reserves,

and that any estimate would necessarily depend on "management's opinion or judgment."  655

F.3d at 112-13.  The Second Circuit concluded that, because the goodwill estimates and loan loss

reserve calculations were matters of opinion, they were subject to the rule articulated in Virginia

Bankshares v. Sandberg, 501 U.S. 1083 (1991) – namely, that liability will only attach if a

plaintiff can plausibly allege both that the statements were objectively false and that the

"defendants did not believe the statements . . . at the time they made them."  655 F.3d at 112.

The Second Circuit reiterated the rule in City of Omaha, NE Civilian Emps. Ret. Sys. v. CBS

Corp., 679 F.3d 64 (2d Cir. 2012), holding that even statements that Defendants should have

known that their valuation decisions were false or misleading will not suffice to state a claim for

relief under the Securities Act.  679 F.3d at 68.

By repeatedly disclaiming fraud and intentional or reckless misconduct in the

Securities Act section of the Complaint, Plaintiffs have disavowed any allegation that the

Defendants knowingly misstated any opinions they may have implicitly or explicitly

communicated in the offering documents and SEC filings.[4]  Therefore, the key inquiry is

whether the FAS 107 and the FIN 45 allegations are opinions subject to Fait's subjective falsity

pleading requirement.  The Court finds that they are.

FAS 107 requires companies to disclose "significant concentrations" of credit

risk.  Plaintiffs argue that Fait does not apply to the FAS 107 allegations because Fait only

applies to misrepresentations, not omissions, and because – unlike goodwill, which is quantified

based on judgments about the value of the company's business, and loan loss reserves, which are

set based on judgments about possible future events – there is an objective way to measure risk

concentration.  However, FAS 107's disclosure obligation is only triggered where the

concentration of credit risk is "significant" – a determination that hinges on management's

judgment.  The decision not to disclose credit risk pursuant to FAS 107 is therefore tantamount

to an implicit representation that management was not of the opinion that the concentration of

---

[4]      The Court notes in this connection that Plaintiffs have, at no time, requested leave
to amend the challenged portions of the Complaint.

credit risk was significant.  See In re Lehman Bros. Sec. & Erisa Litig., 799 F. Supp. 2d 258, 291

(S.D.N.Y. 2011) ("The question whether a particular concentration of credit risk is 'significant'

within the meaning of SFAS 107 is a matter of judgment. Consequently, in order to state a claim

that an entity's failure to disclose a concentration of credit risk violated SFAS 107, a plaintiff

must plead facts that would permit findings that the entity in fact had 'significant concentrations

of credit risk' and that the entity believed that to be so." (emphasis in original)).  Accordingly,

the FAS 107 allegations must be dismissed as to the Moving Defendants.

        The Court reaches the same conclusion with respect to FIN 45.  FIN 45 requires

disclosure of the "maximum potential amount of future payments" for arrangements that qualify

as "guarantees."  However, the Moving Defendants contend that whether a contract qualifies as a

guarantee subject to the FIN 45 requirement necessarily requires a complex series of judgments

as to whether it fits the criteria set forth in FIN 45 ¶ 3.  (Tr. 18-21.)  In response, Plaintiffs argue

that their allegation that the contracts fell within FIN 45's ambit should be taken as true on a

motion for judgment on the pleadings, thus rendering the disclosure failure one of computational

fact rather than one of failure to reach or disclose an opinion.  (Tr. at 47-48.)  However, they

have not presented the Court with any authority supporting their assertion that courts should

accept as true a complaint's interpretation of financial regulations or auditing standards as

opposed to purely factual contentions, and the Court's own research has disclosed none.  It is

beyond question that legal conclusions need not be accepted as true in evaluating the sufficiency

of a complaint; interpretations of accounting principles – which, like laws, define and govern the

conduct of aspects of human endeavor – are properly treated in the same way.  The Court

therefore concludes that the FIN 45 allegations are subject to the Fait requirement and will

dismiss them for failure to plead subjective falsity.

Allegations Regarding PwC's Opinion Statements

        PwC's Audit Opinions are clearly expressed as statements of opinion and are therefore subject to <u>Fait</u>'s subjective falsity requirement.  (See, e.g., AIG 2007 10-K ("<u>In our opinion</u>, the consolidated financial statements listed in the accompanying index present fairly, in all material respects, the financial position of [AIG] . . . in conformity with accounting principles generally accepted in the United States of America. . . . We <u>believe</u> that our audits provide a reasonable basis for our opinions." (emphasis added).)  Plaintiffs do not dispute that their claims against PwC are premised on opinions.  As in <u>Fait</u>, Plaintiffs allege that PwC had extensive access to AIG's financial records and that, had PwC conducted its audit according to its duties, it would have discovered (and required AIG to disclose) the defects in AIG's internal controls and its ballooning risk exposure.  In their opposition, Plaintiffs argue that, because PwC did not conduct a proper audit, it could not have believed that its audit opinions were accurate.  In essence, Plaintiffs are arguing that PwC was wilfully blind to the defects in the financial statements.  However, the theory that PwC deliberately flouted its auditing duties or knowingly issued audit opinions based on incomplete audits is foreclosed by the Complaint itself, which "expressly exclude[s] and disclaim[s] any allegation that could be construed as alleging . . . intentional or reckless misconduct."  (<u>Id</u>. ¶ 639.)  Plaintiffs' factual allegations, which the Court takes as true, may demonstrate that PwC was derelict in its duties and that it conducted a sub-par audit; however, in light of the disclaimer, they cannot support the inference that PwC knowingly issued an opinion it believed to be false.

CONCLUSION

AIG MJP.WPD        VERSION 4/26/13        9

For the foregoing reasons, the Moving Defendants' motion for judgment on the pleadings is granted.  Plaintiffs' Securities Act claims against AIG, the Signing Executive, Director, and Underwriter Defendants predicated on the alleged failure to disclose risk concentrations (Compl. ¶ 594(e)) and the failure to comply with GAAP (id. ¶ 606) are dismissed. Plaintiffs' claims (Count Five) against PwC are dismissed in their entirety.  This Memorandum Order resolves docket entry no. 309.

     SO ORDERED.

Dated: New York, New York
     April 26, 2013

                    /S
                    LAURA TAYLOR SWAIN
                    United States District Judge