UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

IN RE AMERICAN INTERNATIONAL GROUP,      :     No. 08 CV 4772 (LTS) (DCF)
INC. 2008 SECURITIES LITIGATION
                                          :

                                          :

                                          :

                                          :

-----------------------------------------------------------------x

# AIG'S REPLY TO LEAD PLAINTIFF'S
<u>RESPONSE TO ORDER TO SHOW CAUSE</u>

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
(212) 310-8007 (fax)

*Attorneys for Defendant*
*American International Group, Inc.*

January 10, 2014

**TABLE OF CONTENTS**

**Page**

**Contents**

INTRODUCTION ...........................................................................................................................1

ARGUMENT ................................................................................................................................3

    A.    Legal Standard ...........................................................................................................3

    B.    Lead Plaintiff Ignores the Circumstances of This Case....................................4

    C.    *Halliburton II*  is a Potential "Game-Changer" ...............................................5

    D.    Lead Plaintiff Should Not be Allowed to Proceed Now With an "Amended" Motion...................................................................................................9

CONCLUSION..............................................................................................................................11

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Affiliated Ute Citizens of Utah v. United States*,
  406 U.S. 128 (1972) ............................................................................6

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*,
  133 S. Ct. 1184 (2013) ........................................................................8

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) .........................................................................5, 7

*Feinman v. Dean Witter Reynolds, Inc.*,
  1995 WL 562177 (S.D.N.Y. Sept. 21, 1995), *aff'd,* 84 F.3d 539 (2d Cir. 1996) ...................6

*Jugmohan v. Zola*,
  2000 WL 222186 (S.D.N.Y. Feb. 25, 2000) ...........................................3

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  2013 WL 4855972 (filed Sept. 9, 2013) .................................................5

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  2013 WL 6907610 (filed Dec. 30, 2013) ................................................8

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  2014 WL 60716 (filed Jan. 6, 2014) ......................................................8

*Landis v. North American Co.*
  299 U.S. 248 (1936) .............................................................................3

*In re Literary Works in Elec. Databases Copyright Litig.*,
  2001 WL 204212 (S.D.N.Y. Mar. 1, 2001) ............................................3

*Starr ex rel. Estate of Sampson v. Georgeson S'holder, Inc.*,
  412 F.3d 103 (2d Cir. 2005)..................................................................6

*Wilson v. Comtech Telecomms. Corp.*,
  648 F.2d 88 (2d Cir. 1981)....................................................................6

*In re Yohannes*,
  2007 WL 2034301 (S.D.N.Y. July 17, 2007) .........................................3

US_ACTIVE:\44402147\4\14430.0044

**Statutes**

15 U.S.C. § 77k ...............................................................................................................7

15 U.S.C. § 78j(b) ...........................................................................................................7

**Other Authorities**

Paul M. Barret, *A Supreme Reckoning for Securities Class Actions*,
    Businessweek, Nov. 18, 2013 ..................................................................................7

*Halliburton Co. v. Erica P. John Fund, Inc.*, SCOTUSblog, Jan. 10, 2014 ...................7

Lawrence Hurley and Jonathan Stempel, *U.S. justices to hear Halliburton
    securities class action*, Reuters, Nov. 15, 2013 ......................................................7

US_ACTIVE:\44402147\4\14430.0044

## INTRODUCTION

In its response to Your Honor's December 19, 2013 Order to Show Cause, Lead Plaintiff unsuccessfully attempts to articulate why this case should not be stayed until after a decision in *Halliburton Co. v. Erica P. John Fund*, Inc., No. 13-317 (U.S. Sept. 9, 2013) ("*Halliburton II*"), in which the Supreme Court will take up the continued validity of the "fraud-on-the-market" presumption of reliance necessary for class certification in Section 10(b) actions like this one. A decision is expected no later than six months from now—by the end of the Supreme Court's current term, which concludes on June 30, 2014. Oral argument in *Halliburton II* is scheduled for March 5, 2014. As we explain below, Lead Plaintiff's arguments ignore completely the unique circumstance mandating a limited stay in this case.[1]

First, fact discovery in this action has already been completed. The parties have agreed (and the Court has so-ordered in Case Management Order No. 4 (Dkt. No. 397)) that the case will <u>not</u> proceed to expert discovery on the merits or summary judgment until <u>after</u> class certification has been decided. Thus, all of the parties, including Lead Plaintiff, have recognized that it is senseless to expend further resources and to prepare expensive and complex expert reports on the merits until after the class issues have been resolved. This circumstance is markedly different from the cases that Lead Plaintiff relies upon where fact discovery was ongoing (or just beginning) and where classes were already certified.

Second, *Halliburton II* is indisputably a potential "game-changer" for class certification in securities fraud cases like this one. Lead Plaintiff's invocation of the fraud-on-the-market presumption was the core basis of its now withdrawn class motion and the subject of a three-day evidentiary hearing before this Court. Lead Plaintiff's contention that "major

---

[1] All defendants, through their undersigned counsel, join in this submission and support a limited stay.

portions of the class motion here would be unaffected by *any* decision that might be handed down in *Halliburton II*" (Response at 5 (emphasis in original)), is not only wrong, but even if it were true, does not justify proceeding with class certification in a piecemeal fashion.

        Third, Lead Plaintiff's concluding footnote is both unseemly and telling as to the current state of affairs. Lead Plaintiff says that "if" it is permitted to refile its class motion now, it will "amend[] and modify[]" its withdrawn motion to <u>exclude</u> certification of its 10(b) claims for 61 AIG securities that were included in its prior class motion and were the subject in part of the evidentiary hearing because they did not actively trade in any market. As an initial matter, it is inappropriate for Lead Plaintiff to be bargaining with the Court about claims it clearly believes are meritless. Lead Plaintiff should agree to drop these claims no matter what and without any conditions. Regardless, even were the claims dropped, it is not at all clear how the filing of an "amended" motion now would serve judicial efficiency. An "amended" motion would only result in more class briefing and wasted work for this Court, which would be followed inevitably by yet another round of briefing (and decisions by Your Honor) after the Supreme Court's decision in *Halliburton II.* In fact, Lead Plaintiff's assertion that it will drop its motion with respect to these 61 securities only serves to further undermine the already questionable reliability of its sole purported expert (Dr. Steven Feinstein) who opined that the efficiency of the markets for these 61 securities (which did not trade on any regular basis) could be "extrapolated" from the markets for AIG's other securities and common stock. (AIG moved to exclude Dr. Feinstein under *Daubert*).

## ARGUMENT

### A.  <u>Legal Standard</u>

As an initial matter, Lead Plaintiff has improperly attempted to export an "irreparable injury" standard from an inapplicable and limited context—motions to stay proceedings pending an interlocutory or other direct appeal.  *See* Response at 2 (citing *In re Yohannes*, 2007 WL 2034301 (S.D.N.Y. July 17, 2007) (motion to stay pending interlocutory appeal of bankruptcy court decision)).  AIG is <u>not</u> seeking a stay for a direct appeal of a decision in this case.  And this Court has ample power without regard to any irreparable injury standard to manage its own docket by delaying the filing of a renewed class motion for at most six months until after the Supreme Court's decision in *Halliburton II*.  *See, e.g.*, *In re Merck & Co., Inc. Sec., Deriv., & ERISA Litig.*, MDL 1658, No. 05-cv-01151, Ex. B to Lead Plaintiff's Response (cited by Lead Plaintiff and holding that "'the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants'") (quoting *Landis v. North American Co.,* 299 U.S. 248, 254 (1936)).  Courts have frequently stayed actions pending the outcome of clearly relevant Supreme Court appeals.  *See In re BearingPoint, Inc. Sec. Litig.*, No. 05-cv-454 (E.D. Va. Mar. 23, 2007) (Dkt. No. 139) (staying motions to dismiss pending outcome in *Tellabs*); *In re Cyberonics Inc. Sec. Litig.*, No. 05-cv-2121 (S.D. Tex. Apr. 19, 2007) (Dkt. No. 91) (same); *In re Literary Works in Elec. Databases Copyright Litig.*, 2001 WL 204212, at *3 (S.D.N.Y. Mar. 1, 2001) (staying class proceedings where it would be "an inefficient use of time and resources of the court and the parties to proceed in light of a pending U.S. Supreme Court decision that all agree will significantly impact this multidistrict litigation"); *Jugmohan v. Zola*, 2000 WL 222186, at *5 (S.D.N.Y. Feb. 25, 2000) (Batts, J.) ("Until the Supreme Court rules on

US_ACTIVE:\44402147\4\14430.0044

the constitutionality of the [statutory provision in question], this Court declines to rule on the same issue.").

**B.**     <u>Lead Plaintiff Ignores the Circumstances of This Case</u>

Lead Plaintiff ignores the facts on the ground here and the unnecessary burden that would be imposed on the parties and Court in briefing and deciding an amended class motion just months or maybe weeks before the Supreme Court rules in *Halliburton II*.

To start, Lead Plaintiff previously agreed to postpone briefing on its class motion in light of the pending appeal in *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 09-1403 (U.S. May 13, 2010) ("*Halliburton I*"), in which the Supreme Court was asked to decide whether a plaintiff needed to prove loss causation to invoke the fraud-on-the-market presumption of reliance.  In submitting a proposed case management order to that effect, the parties stipulated that *Halliburton I* "may impact the law in this Circuit regarding what a plaintiff has to prove on a motion to certify a class under Rule 23 of the Federal Rules of Civil Procedure in a federal securities class action." Dkt. No. 280 at 4.  The same rationale for a limited stay applies even more forcefully now given that *Halliburton II* will directly address the soundness of the fraud-on-the-market presumption itself, which is the core of Lead Plaintiff's class certification motion. *See* discussion *infra*, at 5-7.

Unlike the cases relied upon by Lead Plaintiff, no class has been certified here— highlighting the significance of *Halliburton II* in this case and the judicial economies gained by a stay.  In addition, unlike the cases relied upon by Lead Plaintiff where a stay would have prevented fact discovery from proceeding, here the parties have already completed fact discovery <u>and</u> have already stipulated that merits expert discovery and summary judgment will not take place until <u>after</u> class certification had been decided.  *See* Case Management Order No. 4 (Dkt. No. 397); *Smilovits v. First Solar Inc.*, No. 12-cv-555 (D. Ariz. Nov. 25, 2013) (Dkt. No. 177)

(setting discovery schedule); Halliburton's Response to Plaintiff's Motion to Compel, *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-cv-1152-M (N.D. Tex. Nov. 18, 2013) (Dkt. No. 503) (addressing timing of discovery).  In fact, Halliburton <u>did not</u> seek a further stay of the proceeding pending the *Halliburton II* appeal (the case has been pending for 10 1/2 years with limited discovery and was already the subject of a prior Supreme Court appeal on a class certification issue).[2]

## C.   *Halliburton II* is a Potential "Game-Changer"

Lead Plaintiff cannot plausibly deny the potential import of *Halliburton II* in this case.  In *Halliburton II*, the validity of the "fraud-on-the-market" presumption of reliance established in *Basic v. Levinson*, 485 U.S. 224 (1988), is squarely before the Supreme Court and goes to the heart of whether a court may conclude that common issues of reliance predominate over individual ones—a prerequisite to class certification.  That presumption is irrefutably the linchpin of modern securities class actions.

The two issues presented in *Halliburton II* are:

1.   Whether this Court should overrule or substantially modify the holding of *Basic Inc. v. Levinson,* 485 U.S. 224 (1988), to the extent that it recognizes a presumption of classwide reliance derived from the fraud-on-the-market theory.

2.   Whether, in a case where the plaintiff invokes the presumption of reliance to seek class certification, the defendant may rebut the presumption and prevent class certification by introducing evidence that the alleged misrepresentations did not distort the market price of its stock.

Petition for a Writ of Certiorari, *Halliburton II*, 2013 WL 4855972, at *i (filed Sept. 9, 2013).

---

[2] *In re Merck & Co., Inc. Sec., Deriv., & ERISA Litig.*, MDL 1658, No. 05-cv-01151 (D.N.J. Dec. 19, 2013) relied on by Lead Plaintiff is at the other extreme:  the case is proceeding to dispositive motions on the merits which will not be significantly impacted by a decision on class certification issues in *Halliburton II*.

As Your Honor will recall, Lead Plaintiff invoked the fraud-on-the-market presumption of reliance in its class motion and we spent three days at an evidentiary hearing last April/May 2013 addressing the efficiency of the markets for 70 different AIG securities during the entire class period.  This is not a case, as Lead Plaintiff now argues, involving "primarily omissions claims" in which the presumption of reliance for omissions applies under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), and Lead Plaintiff has never before argued that it is.  *Wilson v. Comtech Telecomms. Corp.*, 648 F.2d 88, 93 (2d Cir. 1981); *see also, e.g., Starr ex rel. Estate of Sampson v. Georgeson S'holder, Inc.*, 412 F.3d 103, 109 n.5 (2d Cir. 2005) (*Affiliated Ute* does not apply where omissions are alleged merely to buttress allegations of misleading affirmative statements); *Feinman v. Dean Witter Reynolds, Inc.*, 1995 WL 562177, at *4 (S.D.N.Y. Sept. 21, 1995), *aff'd*, 84 F.3d 539 (2d Cir. 1996) (holding that the presumption was not available because "[t]his is not a case of total non-disclosure").  Rather, the admitted and clear crux of the alleged fraud in this case is affirmative misstatements that depend on the fraud-on-the-market presumption for class certification.

Tellingly, Lead Plaintiff's briefing on class certification focused almost exclusively on invoking the *Basic* presumption for affirmative misrepresentations—the precise issue before the Supreme Court in *Halliburton II*.  Lead Plaintiff only mentioned the *Affiliated Ute* presumption for omissions in passing in one footnote among the hundreds of pages of briefing on its class certification motion.  *See* Lead Plaintiff's opening brief in support of class certification, at 24 n.13 (Dkt. No. 340).  And Lead Plaintiff never once suggested during the extensive three-day evidentiary hearing that this was primarily an omissions case subject only to *Affiliated Ute* during the extensive three-day evidentiary hearing—mentioning alleged omissions only once briefly during closing arguments.  But even if some portion of Lead Plaintiff's Section

10(b) claims were subject to *Affiliated Ute*, it still serves no discernable purpose to push ahead in certifying the class when it is conceded that the affirmative misrepresentation claims will be impacted by *Halliburton II*.

Likewise, while it is true that Lead Plaintiff's claims under the Securities Act of 1933 do not require proof of class-wide reliance to be certified, those claims pale in comparison to Lead Plaintiff's Section 10(b) claims. Indeed, after the Court's decision on Defendants' Motion for Judgment on the Pleadings dismissing Lead Plaintiff's Securities Act claims based on alleged misstatements of opinion (Dkt. No. 416), there are few alleged misrepresentations remaining at issue under Lead Plaintiff's Securities Act claims.

Lead Plaintiff's contention that the significance of *Halliburton II* is "speculative" and mere "conjecture" (Response at 2, 4) is hard to take at face value given the centrality of the fraud-on-the-market presumption and the fact that its continued existence (or how it is to be applied at class certification if it survives) is directly before the Supreme Court, generating great interest from the media, commentators and amici.[3] As the Court is likely aware, *Basic* was decided by a bare quorum of the Court and none of the four justices who constituted the quorum are still on the Court. It also used economic and policy-based reasoning that was questioned by Justices O'Connor and White in their dissent in part at the time and that has since been significantly undermined. *See, e.g., Basic Inc. v. Levinson*, 485 U.S. 224, 252-57 (1988) (White,

---

[3] *See, e.g.*, Paul M. Barret, *A Supreme Reckoning for Securities Class Actions*, Businessweek, Nov. 18, 2013 (avail available online at http://www.businessweek.com/articles/2013-11-18/supreme-court-could-transform-shareholder-lawsuits-with-halliburton-case) (stating that "[t]his could be the big one"); Lawrence Hurley and Jonathan Stempel, *U.S. justices to hear Halliburton securities class action*, Reuters, Nov. 15, 2013 (available online at http://reuters.com/article/idUSBRE9AE10V20131115?irpc=932) (*Halliburton II* "could herald a dramatic decline in securities class action litigation"); *Halliburton Co. v. Erica P. John Fund, Inc.*, SCOTUSblog (available online at http://blogs.reuters.com/alison-frankel/2014/01/07/halliburton-alert-new-briefs-argue-congress-never-endorsed-basic/) (listing the nine amicus briefs filed thus far in *Halliburton II*).

US_ACTIVE:\44402147\4\14430.0044

J., dissenting); Brief for Petitioners, *Halliburton II*, 2013 WL 6907610, at *14-22 (filed Dec. 30, 2013) ("[s]cholarship has fatally discredited *Basic*'s key premises").  No fewer than four of the current Justices questioned the continued vitality of the theory in *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184 (2013), and at least four Justices granted certiorari in *Halliburton II*.  *See id.* at 1204 (Alito, J., concurring) ("more recent evidence suggests that the presumption may rest on a faulty economic premise" and "reconsideration of the *Basic* presumption may be appropriate"); *id.* at 1208 n.4 (Thomas, J., joined by Scalia and Kennedy, JJ., dissenting) ("The *Basic* decision itself is questionable.").  Even the majority opinion in *Amgen* recognized "modern economic research tending to show that market efficiency is not 'a binary, yes or no question,'" only to conclude that the case provided "a poor vehicle for exploring whatever implications the research Amgen cites may have for the fraud-on-the-market presumption."  *Id.* at 1197 n.6.[4]

        In fact, while the *Basic* presumption rests on the assumption that investors rely on the integrity of market price when buying or selling a security, that assumption has been demonstrated to be untrue as many sophisticated investors employ models or use complex trading strategies to determine whether to buy or sell securities and do not blindly rely on market price.  *See* Brief for Petitioners, *Halliburton II*, 2013 WL 6907610, at *19-20 (filed Dec. 30, 2013); Brief for Vivendi S.A. as Amicus Curiae in Support of Petitioners, *Halliburton II*, 2014 WL 60716, at *3 (filed Jan. 6, 2014).  The truth of this observation is borne out by the class discovery in this case.  Lead Plaintiff's portfolio analyst responsible for investing in AIG stock

---

[4] In the prior recent Supreme Court cases to address the fraud-on-the-market presumption, *Amgen* and *Halliburton I*, the issues presented—materiality and loss causation—did not go to the underpinnings of the presumption but were both merits issues that are arguably "common" to the class and need not be resolved at the class certification stage.  *Halliburton II*, in contrast, puts the presumption squarely before the Court.

US_ACTIVE\44402147\4\14430.0044

testified that he performed his own fundamental value-based analysis before investing in AIG stock and various investment managers for Lead Plaintiff testified that they used complex modelling and investment strategies to determine whether to buy or sell AIG securities.

Even a decision on the narrower second issue presented in *Halliburton II*—whether price impact (or lack thereof) is needed to invoke (or rebut) the presumption of reliance—will likely impact certification in this case. As the Court will recall, AIG's expert demonstrated that there was no impact on AIG's stock price in August 2007 when the alleged "truth" about AIG's subprime exposure was first disclosed. *See* Juneja Report ¶¶ 89-93 (Dkt. No. 383-5). AIG also demonstrated that there was no price impact on many of the alleged disclosure dates for many of AIG securities at issue. *See*, *e.g.*, Juneja Report ¶¶ 82, 91, 96 & n.110 (Dkt. No. 383-5). And finally, AIG's expert demonstrated that while AIG's stock price dropped after June 2008, the market for AIG's stock had become increasingly inefficient in the months leading up to September 16, 2008, because of the downward momentum in AIG's stock price. *See* Bajaj Report ¶¶ 12, 82-98 (Dkt. No. 383-6).

**D.     Lead Plaintiff Should Not be Allowed to Proceed Now With an "Amended" Motion**

Lead Plaintiff's attempt to "bargain" with the Court in footnote 4 of its Response by offering to "streamline" its class motion is unavailing. As best we understand it, the footnote suggests that if allowed to proceed now, Lead Plaintiff will file a different certification motion from its prior one by conceding (as it must) that there is no efficient market for 61 of the 70 securities at issue in the action because they did not trade on a regular basis and there was no market price to rely on. (Lead Plaintiff does not indicate whether it intends to pursue certification of its meritless claims with respect to these securities in the event the Court does stay the proceedings).

In actuality, this footnote all but concedes that Lead Plaintiff's withdrawn motion cannot pass muster, even under the current state of the "fraud-on-the-market" law because it has no reliable expert on market efficiency.  It was Lead Plaintiff's <u>only</u> expert on class certification, Dr. Steven Feinstein, who opined that an efficient market for each of these 61 securities could be somehow extrapolated from trading in other AIG securities and who purposefully distorted language from an academic journal to try to buttress his testimony.[5]  In short, given Lead Plaintiff's concession in footnote 4, Lead Plaintiff has no reliable expert and any class motion it files will be starting from square one, regardless of the result in *Halliburton II*.

The bottom line is that Lead Plaintiff's proposed "amended" motion would result in yet more briefing on class certification (and AIG's motion to exclude Lead Plaintiff's expert under *Daubert*) even before the Supreme Court's decision in *Halliburton II*, which Lead Plaintiff acknowledges would later result in even <u>more</u> class certification briefing (*see* Response at 3 ("the Court would be free to address the effect of the *Halliburton II* decision, if any, on any class certification ruling of this Court at the time *Halliburton II* is actually decided."))  There is no good reason why the Court and the parties should engage in multiple rounds of briefing and hearings when one would suffice after the Supreme Court rules in *Halliburton II*.

---

[5] *See* Evidentiary Hearing Tr. at 133:21-134:4 (Apr. 29, 2013) (Dkt. No. 419) ("Q: I'll point your attention.  What you were quoting from was literally right at the top of the article, which I think is called the abstract.  It appears right at the very top, under the author's name, Hotchkiss and Tavy Ronen.  If I'm reading this correctly, what you decided to leave out of the quote from your report was the following language: 'Using a unique dataset based on daily and hourly high-yield bond transaction prices, we find,' and then you picked up the quote.  Do you see that?  A: Yes. One minute."); *id* at 136:17-21 ("Q: When you put out your report, you omitted the reference to the unique dataset that they constructed of actively traded bonds, is that correct, sir?  A: I didn't think it was—I didn't know we would be having this discussion actually.").

US_ACTIVE:\44402147\4\14430.0044

**CONCLUSION**

In sum, each of the two issues to be addressed in *Halliburton II* has direct relevance to the withdrawn class motion in this action and this Court should not be forced to expend its resources to address the very complex issues raised in the class motion, only to revisit the issues again after *Halliburton II*.  It makes more sense, given the status of this case and the current case management order in effect, to stay all proceedings until the Supreme Court addresses the fraud-on-the-market presumption this term in *Halliburton II*.

Dated: New York, New York
          January 10, 2014

Respectfully submitted,

By: /s/ Joseph S. Allerhand
          Joseph S. Allerhand
          Robert F. Carangelo
          Stacy Nettleton
          WEIL, GOTSHAL & MANGES LLP
          767 Fifth Avenue
          New York, New York 10153
          Tel.: (212) 310-8000
          Fax: (212) 310-8007

          *Attorneys for Defendant American International Group, Inc., David Herzog and Edmund Tse*

US_ACTIVE:\44402147\4\14430.0044

Date: January 10, 2014                    By:    /s/ Richard A. Rosen
                                                 Richard A. Rosen
                                                 Brad S. Karp
                                                 PAUL, WEISS, RIFKIND, WHARTON &
                                                 GARRISON LLP
                                                 1285 Avenue of the Americas
                                                 New York, New York 10019-6064
                                                 Tel.: (212) 373-3000
                                                 Fax: (212) 757-3990

                                                 -and-

                                                 Charles E. Davidow
                                                 2001 K Street, NW
                                                 Washington, DC 20006-1047
                                                 Tel.: (202) 223-7300
                                                 Fax: (202) 223-7420

                                                 *Attorneys for Underwriter Defendants*

Date:  January 10, 2014

By:  /s/ Jamison A. Diehl
     Robert H. Pees
     Jamison A. Diehl
     AKIN GUMP STRAUSS HAUER & FELD
     LLP
     One Bryant Park
     New York, NY  10036
     Tel.:  (212) 872-8054
     Fax:  (212) 872-8204

     *Attorneys for Martin Sullivan*

13

Date:  January 10, 2014          By:     /s/ Joseph De Simone
                                          Richard A. Spehr
                                          Joseph De Simone
                                          Bradford Jealous, III
                                          MAYER BROWN LLP
                                          1675 Broadway
                                          New York, NY  10019
                                          Tel.:  (212) 506-2500
                                          Fax:  (212) 262-1910

                                          *Attorneys for Steven Bensinger*

US_ACTIVE:\44402147\4\14430.0044

Date:  January 10, 2014                    By:     /s/ Lee G. Dunst
                                                   Lee G. Dunst
                                                   GIBSON, DUNN & CRUTCHER LLP
                                                   200 Park Avenue
                                                   New York, NY  10166-0193
                                                   Tel.:  (212) 351-4000
                                                   Fax:  (212) 351-4035

                                                   *Attorneys for Joseph Cassano*

US_ACTIVE:\44402147\4\14430.0044

Date:  January 10, 2014            By:     /s/ Richard D. Owens
                                           Richard D. Owens
                                           Paul A. Serritella
                                           LATHAM & WATKINS LLP
                                           885 Third Avenue
                                           New York, NY  10022
                                           Tel.:  (212) 906-1200
                                           Fax: (212) 751-4864

                                           *Attorneys for Andrew Forster*

US_ACTIVE:\44402147\4\14430.0044

Date:  January 10, 2014                     By:     /s/ Dorothy Heyl
                                                    Dorothy Heyl
                                                    MILBANK, TWEED, HADLEY &
                                                    MCCLOY LLP
                                                    One Chase Manhattan Plaza
                                                    New York, NY  10005
                                                    Tel.:  (212) 530-5000
                                                    Fax:  (212) 530-5219
                                                    Email: dheyl@milbank.com

                                                    *Attorneys for Alan Frost*

17

Date:  January 10, 2014             By:     /s/ Antonio Yanez, Jr.
                                            Michael R. Young
                                            Antonio Yanez, Jr.
                                            Mei Lin Kwan-Gett
                                            WILLKIE FARR & GALLAGHER LLP
                                            787 Seventh Avenue
                                            New York, NY  10019
                                            Tel.:  (212) 728-8000
                                            Fax:  (212) 728-8111

                                            *Attorneys for Robert Lewis*

Date:  January 10, 2014                    By:    /s/ Craig S. Waldman
                                                   Paul C. Curnin
                                                   Michael J. Garvey
                                                   Craig S. Waldman
                                                   SIMPSON THACHER & BARTLETT LLP
                                                   425 Lexington Avenue
                                                   New York, NY  10017
                                                   Tel.:  (212) 455-2000
                                                   Fax:  (212) 455-2502

                                                   *Attorneys for Stephen F. Bollenbach, Pei-*
                                                   *yuan Chia, Marshall A. Cohen, Martin S.*
                                                   *Feldstein, Ellen V. Futter, Stephen L.*
                                                   *Hammerman, Richard C. Holbrooke, Fred*
                                                   *H. Langhammer, George L. Miles, Jr.,*
                                                   *Morris W. Offit, James F. Orr, III, Virginia*
                                                   *M. Rometty, Michael H. Sutton, Robert B.*
                                                   *Willumstad and Frank G. Zarb*

US_ACTIVE:\44402147\4\14430.0044