# BRB

## BARRACK | RODOS | BACINE

*A Professional Corporation*
ATTORNEYS AT LAW

Jeffrey W. Golan
jgolan@barrack.com

July 14, 2014

***Via Hand Delivery***

The Honorable Laura Taylor Swain
**U.S. District Court for the**
**Southern District of New York**
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *In re American International Group, Inc. Securities 2008 Litigation*,
                **Master File No. 08-cv-4772 (LTS) (DCF)**

Dear Judge Swain:

      I am writing on behalf of the Lead Plaintiff, the State of Michigan Retirement Systems. On June 23, 2104, the United States Supreme Court issued its decision in *Halliburton Co. v. Erica P. John Fund, Inc.*, No. 13-317, 2014 WL 2807181 (S. Ct. June 23, 2104) ("*Halliburton II*"). In accordance with the this Court's January 30, 2014 Order staying the proceedings in this litigation, this letter is being submitted to set forth Lead Plaintiff's position concerning the impact of the *Halliburton II* decision.

### Lead Plaintiff's Motion for Class Certification

      Lead Plaintiff's motion for class certification (Dkt. No. 339) seeks certification of a class consisting of all persons or entities who purchased AIG common stock, preferred stock and other securities that traded on a U.S. public exchange from March 16, 2006 through September 16, 2008 (the "Class Period"), including all persons or entities who, during the Class Period, purchased AIG common stock, preferred stock and other securities in or traceable to a public offering by AIG, and suffered damages as a result. Lead Plaintiff asserts claims under the Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Sections 11, 12(a)(2) and 15 of the Securities Act of 1933.

      The evidentiary record submitted by the parties on the class motion is voluminous. It includes expert reports, rebuttal expert reports and deposition testimony of two experts retained by Lead Plaintiff and four experts retained by Defendants. On April 29-May 1, 2013, the Court held an evidentiary hearing on the class motion and heard oral argument. The focus of the evidentiary hearing concerned the efficiency of the markets in which AIG stock and other



The Honorable Laura Taylor Swain
Page 2
July 14, 2014

securities traded during the Class Period. The hearing presented the direct and cross examination of one of Lead Plaintiff's experts and two of AIG's experts.

On January 30, 2014, this Court stayed this matter pending the Supreme Court's ruling in *Halliburton II* and directed the parties to submit letters to the Court "setting forth their positions on the implications for this case of the Supreme Court's decision ... within 21 days of the issuance of that decision." (Dkt. No. 440).

## The *Halliburton II Rulings*

*Halliburton II* reflects three core holdings. First, the Supreme Court reaffirmed the fraud-on-the-market presumption of reliance created in *Basic v. Levinson,* 485 U.S. 224 (1988). 2014 WL 2807181 at *8-13. Second, the Court declined to modify the prerequisites for invoking the fraud-on-the-market presumption of reliance by injecting a new element that would have required a plaintiff to show the "price impact" of the alleged misrepresentations at the class certification stage. *Id.* at *14. And finally, the Court held that on a motion for class certification a defendant should be afforded an opportunity to rebut the presumption of reliance if the defendant can show that an alleged misrepresentation did not actually affect the stock's price. *Id.* at *14-17.

Far from the "game-changer" predicted by AIG when it sought a stay of this litigation pending the Supreme Court's decision, *Halliburton II* represents no change at all in the legal framework for consideration of a class motion in securities fraud lawsuits in the Second Circuit. The one new pronouncement issued by the Supreme Court – that a defendant may be permitted to submit price impact evidence on a class motion – was already the law in the Second Circuit. *See In re Salomon Analyst Metromedia Litig.* 544 F. 3d 474, 484 (2d Cir. 2008) (a defendant is "allowed to rebut the presumption, prior to class certification, by showing ... the absence of price impact"). As a result, Lead Plaintiff submits it should be permitted to reinstate its motion for class certification (which was terminated by the Court without prejudice by Order dated September 23, 2013 (Dkt. No. 431)) and that the Court should consider the reinstated class motion without further development of the evidentiary record, briefing or argument by the parties.

### A. The Supreme Court Reaffirmed the Vitality of *Basic's* Fraud-on-the-Market Presumption

*Halliburton II* addressed a direct challenge to the fraud-on-market rebuttable presumption of reliance created in *Basic*. In its appeal, Halliburton asserted that the presumption rests on an economic theory, the efficient capital markets hypothesis, that is no longer tenable. Specifically,



The Honorable Laura Taylor Swain
Page 3
July 14, 2014

Halliburton claimed that empirical evidence suggests that capital markets are not fundamentally efficient. The Supreme Court noted that Halliburton's argument focused on the debate among economists "about the degree to which the market price of a company's stock reflects public information about the company – and thus the degree to which an investor can earn abnormal above-market return by trading on such information." 2014 WL 2807181 at *9. The Court observed, however, that even critics of the efficient capital markets hypothesis acknowledge that "public information generally affects stock prices." *Id.* As a result, the Court noted that the "academic debates" about the degree to which stock prices accurately reflect information are "largely beside the point" because the fact that a stock price may be inaccurate "'does not detract from the fact that false statements affect it, and cause loss,' which is 'all that *Basic* requires.'" *Id., quoting Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010).

Halliburton also attacked another premise of *Basic* – that investors typically rely on the integrity of the market price in making investment decisions. Halliburton referred, for example, to so-called "value" investors, who believe that certain stocks are undervalued or overvalued and who attempt to "beat the market" by buying undervalued stocks or selling overvalued ones. Here, too, the Court rejected Halliburton's argument, noting that even value investors trade stocks "based on the belief that the market price will incorporate public information within a reasonable period." 2014 WL 2807181 at *10. Moreover, the Court noted that value investors seek to estimate how undervalued or overvalued a stock may be and that "such estimates can be skewed by a market price tainted by fraud." *Id.*

The Supreme Court also rejected other arguments advanced by Halliburton based on statutory construction, prior Supreme Court precedent and policy concerns. In sum, it found that Halliburton had failed to provide any "special justification" for overturning *Basic* and, accordingly, the decision affirmed the continued vitality of the fraud-on-the-market theory in securities fraud class actions. *See id.* at *6.

### B. The Supreme Court's "Price Impact" Rulings Do Not Mark a Departure From Established Second Circuit Law

Halliburton also argued that the plaintiff should have the burden at the class certification stage of showing that the alleged misrepresentation impacted the market price of the stock. The Supreme Court declined to impose such a requirement, stating that it "would radically alter the required showing for the reliance element of a Rule 10b-5 action." *Id.* at *14.

Finally, Halliburton argued that a defendant should be allowed to rebut the presumption of reliance at the class certification stage through evidence that the alleged misrepresentation did not affect the price of the stock. The Supreme Court agreed. The Court reasoned that "price



The Honorable Laura Taylor Swain
Page 4
July 14, 2014

impact is ... an essential precondition for any Rule 10b- 5 class action and that '[w]hile *Basic* allows plaintiffs to establish that precondition indirectly, it does not require courts to ignore a defendant's direct, more salient evidence showing that the alleged misrepresentation did not actually affect the stock's market price and consequently, that the *Basic* presumption does not apply." *Id.* at *16. In a concurring opinion, Justice Ginsburg, joined by Justices Breyer and Sotomayor, emphasized that the "Court recognizes that it is incumbent upon the defendant to show the absence of price impact" and that the Court's decision in this regard "should impose no heavy toll on securities fraud plaintiffs with tenable claims." *Id.* at *18.

The Supreme Court's ruling in this regard does not represent a change in the law within the Second Circuit. In *In re Salomon Analyst Metromedia Litig.*, 544 F.3d at 484, the Second Circuit held that a defendant is "allowed to rebut the presumption prior to class certification, by showing ... the absence of a price impact." Because the district court had refused to allow price impact evidence, the Second Circuit vacated the class certification order and remanded to afford defendants an opportunity to show, among other things, that "the market price was not affected by the alleged misstatements." *Id.* at 485-86. Thus, at the time the parties submitted their briefs and expert reports on the motion for class certification, and presented expert testimony and argument at the April 29-May 1, 2013 hearing, the law in this Circuit was already well-established in favor of affording a defendant the right to rebut the fraud-on-the-market presumption at the class certification stage by presenting evidence of a lack of price impact. Indeed, Halliburton's petition for certiorari argued that the Supreme Court should grant the petition based upon, among other reasons, a split among the circuit courts on the price impact issue, citing the *Salomon Analyst* case, among others. *See* Halliburton Petition for Writ of Certiorari, 2013 WL 4855972 at p. 31. *Halliburton II* effectively adopted what had already been the law in this Circuit since 2008.

### Impact of *Halliburton II* Rulings on
### Lead Plaintiff's Motion for Class Certification

As noted above, the claims asserted in this litigation include Exchange Act claims under Section 10(b) and Securities Act claims under Section 11. Since reliance is not an element of a claim under Section 11, *Halliburton II* has no impact whatsoever as to certification of those claims. Insofar as certification of the Section 10(b) claims are concerned, *Halliburton II* makes the following clear:

First, Lead Plaintiff, for the purposes of satisfying Fed. R. Civ. P. 23(b)(3), may continue to invoke the fraud-on-the-market presumption as a means of showing that individual issues of reliance will not predominate over legal and factual issues that are common to the class.



The Honorable Laura Taylor Swain
Page 5
July 14, 2014

Second, *Halliburton II* leaves unchanged the prerequisites required for Lead Plaintiff's invocation of the fraud-on-the-market presumption. *See* 2014 WL 2807181 at *13-14. As the briefing and argument on the class motion make clear, the parties dispute whether Lead Plaintiff has satisfied the prerequisites. For example, the parties disagree as to whether the markets for AIG stock and other securities were efficient throughout the entire Class Period. Nevertheless, since the plaintiff's burden for invoking the fraud-on-the-market presumption was not changed by *Halliburton II*, there is no need for further briefing, discovery or argument as to whether Lead Plaintiff has met its burden on these issues.

Third, *Halliburton II* effectively rejects AIG's argument, advanced principally through the opinions of its expert, Dr. Mukesh Bajaj, that AIG stock did not trade in an efficient market during the last three months of the Class Period. As the Court may recall, Dr. Bajaj performed various statistical tests that he asserted showed that AIG stock did not trade efficiently during the last three months of the Class Period. Lead Plaintiff's experts, Prof. Steven Feinstein and Prof. Richard Roll, vigorously disputed the propriety of Dr. Bajaj's tests and the conclusions he drew from them. *Halliburton II* makes clear, however, that the tests performed by Dr. Bajaj are largely irrelevant because they are premised on a conception of market efficiency that is not required by *Basic's* fraud-on-the-market presumption.

Underlying Dr. Bajaj's statistical tests is a view of market efficiency that requires the reaction of a stock price to new material information to be both "quick" and "correct." *See* Tab 6, ¶ 7 in Binder of Expert Reports Submitted at April 29-May 1, 2013 Hearing on Class Motion. Dr. Bajaj also testified at the hearing on the class motion that his view of the fraud-on-the-market theory is that "market prices *properly* reflect the effect of [alleged] misstatements, namely throughout the class period, [the] stock price is set to *properly* reflect the effect of all actionable misstatements the court may find." *See* April 30, 2013 Hearing Transcript at 352:24-353:2 (emphasis added). Similarly, another of AIG's experts, Dr. Owen Lamont, who was retained to support the opinions of Dr. Bajaj, declared that in a efficient market, there is "only one, proper, 'efficient price' for any set of cash flows." *See* Binder of Expert Reports at Tab 7, p. 3. These opinions were already at odds with *Basic*, which declined to "conclusively adopt any particular theory of how quickly and completely publicly available information is reflected in market price." *Basic*, 485 U.S. at 248 n. 28. *Halliburton II* amplifies this point, noting that even financial economists of widely divergent viewpoints about market efficiency agree that "public information generally affects stock prices" and that, accordingly, the "modest premise" underlying *Basic's* presumption of reliance remains valid. 2014 WL 2807181 at *9. Indeed, the Supreme Court declared that "[d]ebates about the precise *degree* to which stock prices accurately reflect public information are … largely beside the point" because the fact that the "'price [of a stock] may be inaccurate does not detract from the fact that false statements affect it, and cause loss.'" *Id.* (emphasis in original).



The Honorable Laura Taylor Swain
Page 6
July 14, 2014

*Halliburton II* completely undermines AIG's argument that Lead Plaintiff cannot invoke the fraud-on-the-market presumption for purchasers of AIG stock during the last three months of the Class Period because even AIG does not seriously dispute that new information disseminated about the Company during this period affected its stock price. For example, there is no real dispute that AIG's August 6, 2008 earnings release (issued after the close of the market) affected the stock price on the following day. Instead, AIG's expert, Dr. Bajaj, asserts that "you don't know if the reaction was complete, you don't know how much of that reaction was due to some previous news, you don't know how much of the reaction would go into future days. So you can't associate the observed reaction to that particular news alone." *See* Deposition Transcript of Mukesh Bajaj dated March 14, 2012 at 22:23-23:10 (Tab 7 of Vol. 2 of Expert Deposition Transcripts and Exhibits provided to the Court at April 29-May 1, 2013 hearing on class motion). *Halliburton II* makes clear, however, that in considering the applicability of the fraud-on-the-market presumption, whether the stock price reaction was "complete" or "correct" is "beside the point." As long as the stock price was impacted by the information, that is sufficient for invoking the presumption. On each of the four event dates occurring within the last three months of the Class Period, AIG's stock price moved in a statistically significant manner, whether using the methodology of Lead Plaintiff's expert, Prof. Feinstein, or AIG's expert, Dr. Juneja. *See* Tab 4, ¶ 24 in Expert Report Exhibit Binder Submitted at April 29-May 1, 2013 Hearing on Class Motion. Accordingly, Lead Plaintiff respectfully submits that there is no impediment to certification of a class that includes purchasers of AIG stock during that period.

Finally, as noted above, although the Supreme Court ruled that a defendant may be given the opportunity on a motion for class certification to show that the alleged misrepresentation did not affect the stock price, that ruling did not mark a departure from the law as it existed within the Second Circuit since the 2008 decision in the *Salomon Analyst* case. Accordingly, AIG has already developed and presented price impact evidence to the Court. For example, AIG argued that no class can be certified for stock purchasers from the beginning of the Class Period through early August 2007, based on the fact there was no significant movement in AIG's stock price after the Company, for the first time, made disclosures about the extent of its subprime exposure in connection with its second quarter 2007 earnings release. *See* Dkt. No. 354 at pp. 17-18 and 15 n.42 (quoting *Salomon*). In response, Lead Plaintiff asserted that the Company's August 2007 statements about its subprime exposure falsely reassured the market that subprime impacts would be minimal. As a result, Lead Plaintiff contends that the absence of significant price decline in response to the August 2007 disclosures was not surprising and that no conclusions about materiality or reliance can be drawn from it. *See* Dkt. No. 384 at pp. 17-20. Thus, the issue has been fully developed and briefed and nothing in *Halliburton II* warrants a further development of the record in this regard. (Of course, the materiality of the alleged misrepresentations during the Class Period, including those alleged in connection with the August 2007 disclosures, and whether those misrepresentations caused losses to the Class are



The Honorable Laura Taylor Swain
Page 7
July 14, 2014

matters for summary judgment and trial, not class certification. *See Amgen Inc. v. Connecticut Retirement Plans and Trust Funds,* 133 S. Ct. 1184, 1191 (2013); *Erica P. John Fund, Inc. v. Halliburton Co.,* 131 S. Ct. 2179, 2185-86 (2011)("*Halliburton I*")).

Similarly, in regard to Lead Plaintiff's request to certify the securities fraud claims of bond purchasers, AIG developed evidence about lack of price movement in AIG bonds during the Class Period and argued to the Court that this evidence shows that the bonds did not trade efficiently. *See* Dkt. No. 354 at pp. 27-31. In response, Lead Plaintiff noted that bond prices typically do not react to new information, unless that information has implications for the prospects of default and that the bonds did, in fact, react in a significant manner when information entered the market near the end of the Class Period that raised the specter of default. *See* Dkt. No. 384 at pp. 38-42. Thus, here too, the record on price impact concerning the bonds is already well-developed and *Halliburton II* does not present any opportunity for further discovery.

Based on the foregoing, Lead Plaintiff submits that *Halliburton II* represents nothing more than a continuation of the status quo as it existed in the Second Circuit before AIG requested that this case be stayed pending the outcome of the Supreme Court's decision. Accordingly, Lead Plaintiff respectfully requests that it should be permitted to reinstate its motion for class certification and that the Court consider the motion without further discovery, briefing or argument by the parties.

Respectfully,

Jeffrey W. Golan

JWG:rpb
cc: All Counsel (*via email*)