# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE AMERICAN INTERNATIONAL GROUP, INC. 2008 SECURITIES LITIGATION | Master File No.:<br>08-CV-4772-LTS-DCF |
| This Document Relates To:  All Actions | |

## LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND APPROVAL OF NOTICE TO THE CLASS

**BARRACK, RODOS & BACINE**
Leonard Barrack
Jeffrey W. Golan (*pro hac vice*)
Robert A. Hoffman (*pro hac vice*)
Lisa M. Port
Julie B. Palley
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
Tel.:  (215) 963-0600

     and

A. Arnold Gershon (AG – 3809)
Michael A. Toomey (MT – 6688)
425 Park Avenue, Suite 3100
New York, New York 10022
Tel.:  (212) 688-0782

**THE MILLER LAW FIRM, P.C.**
E. Powell Miller (*pro hac vice*)
Marc L. Newman (*pro hac vice*)
Jaysen E. Blake
Miller Building
950 West University Drive, Suite 300
Rochester, MI 48307
Tel.: (248) 841-2200

*Attorneys for Lead Plaintiff, State of Michigan Retirement Systems,*
*and Lead Counsel for the Putative Class*

# TABLE OF CONTENTS

Page

BACKGROUND OF THE LITIGATION ................................................................................. 2

ARGUMENT ............................................................................................................................ 8

I.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY
APPROVAL ................................................................................................................ 8

    A.    The Proposed Settlement Is the Result of Good Faith, Arm's
Length Negotiations .......................................................................................... 9

    B.    The Proposed Settlement Falls Within the Range of Reasonableness
and Merits Issuance of Notice and a Hearing on Final Approval .................. 11

II.    CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES
IS APPROPRIATE ................................................................................................... 12

    A.    The Class Satisfies the Requirements of Rule 23(a) ...................................... 14

        1.    The Class Members Are Too Numerous to Be Joined .......................... 14

        2.    There Are Common Questions Of Law And Fact ................................. 16

        3.    Plaintiffs' Claims Are Typical of the Class .......................................... 18

        4.    Lead Plaintiff Will Fairly And Adequately Protect
The Interest Of The Class ..................................................................... 19

    B.    Rule 23(b)(3) Is Satisfied ............................................................................... 21

        1.    Issues Common to the Class Predominate Over Issues
That Are Not Common to the Class ...................................................... 22

        2.    A Class Action Is Superior To Other Methods Of
Adjudication .......................................................................................... 23

    C.    Lead Counsel Should be Appointed Class Counsel ........................................ 25

III.    THE COURT SHOULD APPROVE THE FORM OF THE NOTICE AND
PLAN FOR PROVIDING NOTICE TO THE CLASS ........................................... 26

CONCLUSION ...................................................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................................. 14, 21

*Blackie v. Barrack*,
  524 F.2d 891, 902 (9th Cir. 1975) .......................................................... 16, 17, 23

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995) ............................................................................... 14

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ................................................................................ 10

*Darquea v. Jaden Corp.*,
  No. 06 Civ. 722 (DLB), 2008 U.S. Dist. LEXIS 177479 (S.D.N.Y. Mar. 6, 2008) .......... 20, 24

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006) .............................................................................. 13

*Fait v. Regions Financial Corp.*,
  655 F.3d 105 (2d Cir. 2011) ................................................................................ 5

*Fogarazzo v. Lehman Bros.*,
  263 F.R.D. 90 (S.D.N.Y. 2009) ...................................................................... 14, 19

*In re Am. Int'l Group, Inc. Sec. Litig.*,
  265 F.R.D. 157 (S.D.N.Y. 2010) ........................................................................ 15

*In re BearingPoint, Inc. Sec. Litig.*,
  232 F.R.D. 534 (E.D. Va. 2006) ........................................................................ 16

*In re Beef Indus. Antitrust Litig.*,
  607 F.2d 167 (5th Cir. 1979) ............................................................................. 13

*In re Currency Conversion Fee Antitrust Litig.*,
  MDL Nos. 1409, M 21-95, 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) ................................... 9

*In re Delphi Corp. Sec., Derivative & ERISA Litig.*,
  248 F.R.D. 483 (E.D. Mich. 2008) ..................................................................... 10

*In re Deutsche Telekom AG Sec. Litig.*,
  229 F. Supp. 2d 277 (S.D.N.Y. 2002) .......................................................... *passim*

*In re Drexel Burnham Lambert Group*,
   960 F.2d 285 (2d Cir. 1992) .................................................................. 18

*In re DVI Inc. Sec. Litig.*,
   249 F.R.D. 196, 201 (E.D. Pa. 2008), *aff'd,* Nos. 08-8033 & 08-8045,
   __ F.3d __, 2011 U.S. App. LEXIS 6302 (3d Cir. March 29, 2011) ........................................ 16

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .................................................... 12, 27

*In re Globalstar Sec. Litig.*,
   No. 01 Civ. 1748 (PKC), 2004 U.S. Dist. LEXIS 24164 (S.D.N.Y. Dec. 1, 2004) ..... 18, 19, 25

*In re HealthSouth Corp. Sec. Litig.*,
   261 F.R.D. 616 (N.D. Ala. 2009) .................................................. 16, 18

*In re Initial Pub. Offering Sec. Litig.*,
   243 F.R.D. 79 (S.D.N.Y. 2007) ...................................................... 9, 11

*In re Interpublic Sec. Litig.*,
   Nos. 02-6257, 03-1194, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) .................................... 8

*In re Marsh & McLennan Cos. Sec. Litig.*,
   No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ................................ 13

*In re NASDAQ Market-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ................................................... 9, 12, 19

*In re PaineWebber Ltd. P'ships Litig.*,
   147 F.3d 132 (2d Cir. 1998) .......................................................... 8

*In re Priceline.com Inc. Sec. Litig.*,
   236 F.R.D. 89 (D. Conn. 2006) ...................................................... 21

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ................................................ 9, 12, 13

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................................ 10

*In re Vivendi Universal, S.A. Sec. Litig.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) ................................................. *passim*

*In re Warner Chilcott Ltd. Sec. Litig.*,
   No. 06 Civ. 11515 (WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ............................ 27

*In re WorldCom, Inc. Sec. Litig.*,
   219 F.R.D 267 (S.D.N.Y. 2003) ............................................. 18, 20, 24

*Lapin v. Goldman Sachs & Co.*,
254 F.R.D. 168 (S.D.N.Y. 2008) ........................................................................ 14

*Leung v. Home Boy Rest. Inc.*,
No. 07 Civ. 8779 (RJS) (DFE), 2009 WL 398861 (S.D.N.Y. Feb. 18, 2009) ........................ 10

*Moore v. PaineWebber, Inc.*,
306 F.3d 1247 (2d Cir. 2002) ............................................................................ 22

*Morris v. Affinity Health Plan, Inc.*,
No. 09-cv-1932 (DAB), 2011 WL 6288035 (S.D.N.Y. Dec. 15, 2011) ................................ 9

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993) ................................................................... 14, 18, 19

*Saddle Rock Partners Ltd. v. Hiatt*,
No. 96 Civ. 9474 (SHS), 2000 U.S. Dist. LEXIS 11931 (S.D.N.Y. Aug. 21, 2000) .............. 21

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005) ...................................................................... 8, 9, 10

*Weinberger v. Kendrich*,
698 F.2d 61 (2d Cir. 1982) ............................................................................. 13

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................. *passim*
Fed. R. Civ. P. 23(a)(1) ........................................................................... 14, 15
Fed. R. Civ. P. 23(a)(2) ............................................................................... 16
Fed. R. Civ. P. 23(a)(3) ............................................................................... 18
Fed. R. Civ. P. 23(a)(4) ........................................................................... 19, 21
Fed. R. Civ. P. 23(b)(3) .......................................................................... *passim*
Fed. R. Civ. P. 23(c)(2)(B) ........................................................................... 27
Fed. R. Civ. P. 23(c)(3) .............................................................................. 27
Fed. R. Civ. P. 23(e) .................................................................................. 8
Fed. R. Civ. P. 23(g) ................................................................................ 25

Lead Plaintiff, the State of Michigan Retirement Systems, as custodian of the Michigan Public School Employees' Retirement System, the State Employees' Retirement System, the Michigan State Police Retirement System, and the Michigan Judges Retirement System ("SMRS" or "Lead Plaintiff"[1]), and the Named Plaintiffs, on behalf of themselves and the Class, respectfully submit this memorandum of law in support of the motion seeking preliminary approval of the settlement reached with Defendant American International Group, Inc. ("AIG" or the "Company"), the Individual Defendants, the Underwriter Defendants, and PricewaterhouseCoopers LLP ("PwC").

After extensive investigation and discovery, including the review of over 35 million pages of documents and the depositions of forty-five (45) fact witnesses, as well as arm's-length in-person mediation sessions facilitated by former United States District Judge Layn R. Phillips (Ret.) spanning over more than two years, Lead Plaintiff and Defendants have agreed to settle all claims against the Defendants that are based upon, arise out of, or relate to those asserted in this Action in exchange for a payment of $970,500,000.  The terms of the Settlement are set forth in the Stipulation and its accompanying exhibits.  The Settlement, if approved, will resolve all claims asserted against the Defendants in the Action.

Lead Plaintiff's Motion seeks an order: (i) preliminarily approving settlement of the claims against Defendants in the Action, as set forth in the Stipulation; (ii) certifying the Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure; (iii) appointing the law firms of Barrack, Rodos & Bacine and The Miller Law Firm, P.C. as class counsel; (iv) approving the form, substance and requirements of the proposed

---

[1] All capitalized terms not otherwise defined herein have the same meanings as set forth in Paragraph 1 of the Stipulation and Agreement of Settlement (the "Stipulation"), dated September 12, 2014.

Notice and Summary Notice, appended as Exhibits 1 and 2 to the proposed Preliminary Approval Order submitted herewith, and the means and methods for disseminating notice, which comport with due process and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §§78u-4 *et seq.*; and (v) scheduling a hearing at which final approval of the Settlement, the proposed plan of allocation, and a request for an award of attorneys' fees and expenses to Lead Counsel, and reimbursement of expenses to Lead Plaintiff, may be considered.

The proposed cash settlement of $970.5 million represents a substantial monetary benefit for the Class and one of the largest class settlements stemming from the 2008 financial crisis. The Settlement was reached at a time when the Parties understood the strengths and weaknesses of their respective positions.  Lead Plaintiff believes that the proposed Settlement is an excellent result that is in the best interests of the Class, providing an immediate monetary benefit to the Class.  The Settlement must also be considered in the context of the risk that protracted and contested litigation, including dispositive motion practice, trial and likely appeals, could result in a lesser recovery from Defendants or no recovery at all.

## BACKGROUND OF THE LITIGATION

Beginning on May 21, 2008, a series of proposed class actions alleging violations of the federal securities laws by some or all of the Defendants were filed in this Court.[2]  On March 20, 2009, the Court consolidated the actions and referred to them collectively as *In re American International Group 2008 Securities Litigation*, Master File No. 08 Civ. 4772.  The Order also

---

[2] The actions are captioned:  *Jacksonville Police and Fire Pension Fund v. AIG, et al.*, Case No. 08 Civ. 4772; *James Connolly v. AIG, et al.*, No. 08 Civ. 5072; *Maine Public Employees Retirement System v. AIG, et al.*, No. 08 Civ. 5464; *Ontario Teachers' Pension Plan Board v. AIG, et al.*, No. 08 Civ. 5560; *Margaret Carroll v. AIG, et al.*, No. 08 Civ. 8659; *Harriet Bernstein and Janet Levine Cotter v. AIG, et al.*, No. 08 Civ. 9162; *Fire and Police Pension Association of Colorado, et al. v. AIG et al.*, No. 08 Civ. 10586; and *Epstein Real Estate Advisory v. Bank of America Corporation, et al.*, No. 09 Civ. 428.

appointed SMRS as Lead Plaintiff and Barrack, Rodos & Bacine and The Miller Law Firm, P.C., as Co-Lead Counsel.

Lead Plaintiff and Lead Counsel conducted an in-depth investigation of the claims and underlying events relating to the Action.  This investigation included, among other things, review and analysis of: (i) publicly available information concerning the Defendants, including newspaper articles, online publications, analyst reports, and commentary; (ii) regulatory filings made by Defendants with the United States Securities and Exchange Commission ("SEC"), including Registration Statements and Prospectuses; and (iii) securities analysts' reports, public statements, media reports, and court records.  Lead Plaintiff's Counsel also identified and interviewed several confidential witnesses and worked with forensic accounting and damages experts to analyze relevant information.

Lead Plaintiff filed the Consolidated Class Action Complaint (the "Complaint") on May 19, 2009.  It alleges that some or all of the Defendants violated Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 and/or Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and asserts claims on behalf of all persons or entities, other than Defendants and their affiliates, who (a) purchased AIG Securities traded on a U.S. public exchange from March 16, 2006 through September 16, 2008 (the "Settlement Class Period") or (b) purchased or acquired AIG Securities in or traceable to a public offering by AIG during that period, and suffered damages as a result.  The Complaint alleged that Defendants violated the federal securities laws by misrepresenting and concealing the full extent of the AIG's exposure to the U.S. subprime residential real estate market, including in the Company's credit default swap portfolio and securities lending program.

On August 5, 2009, Defendants moved to dismiss the Complaint.  After full briefing, the Court, on September 27, 2010, issued an Opinion and Order denying Defendants' motions to dismiss.  Fact discovery in the Action commenced in November 2010 and was substantially completed in June 2012.  Lead Plaintiff reviewed and analyzed over 35 million pages of documents produced by AIG, PwC, the Underwriter Defendants, the Individual Defendants, and non-parties.  Lead Plaintiff also conducted 45 fact depositions, six of which lasted two days, including depositions of thirty-six (36) AIG witnesses, two (2) PwC witnesses, five (5) Underwriter Defendant witnesses, one (1) Goldman Sachs witness, and one (1) and JP Morgan witness.

On April 1, 2011, Lead Plaintiff moved for certification of a class of all persons or entities, other than Defendants and their affiliates, who purchased AIG Securities traded on a U.S. public exchange during the Settlement Class Period, including all persons or entities who purchased AIG Securities in or traceable to a public offering by AIG during that period, and suffered damages as a result.  On May 6, 2011, in light of the Supreme Court's grant of certiorari in *Erica P. John Fund, Inc. v. Halliburton*, No. 09-1403 (U.S. Jan. 7, 2011) (*Halliburton I*), the Court terminated the motion without prejudice to renewal following the Supreme Court's decision in that case.  Lead Plaintiff filed a renewed motion for class certification on July 6, 2011.   On November 2, 2011, the Court terminated the motion without prejudice pending the completion of class certification-related discovery.   Lead Plaintiff again filed its motion for class certification on March 30, 2012, supported by a brief and exhibits.  Defendants filed their opposition to the motion on May 24, 2012, and Lead Plaintiff filed its reply on June 22, 2012.  In connection with the motion for class certification, Lead Plaintiff and Defendants retained a total of six experts, each of whom submitted a declaration and was deposed.  Certain of the experts

also submitted reply declarations.  Eleven non-expert witnesses were also deposed in connection with class certification-related discovery, including representatives of Lead Plaintiff and its investment managers.

On June 21, 2012, AIG filed a motion to preclude the declarations, testimony and opinions of Lead Plaintiff's class certification expert, Dr. Steven P. Feinstein.  From April 29, 2013 through May 1, 2013, the Court held an evidentiary hearing in connection with Lead Plaintiff's motion for class certification and AIG's motion to preclude the declarations, testimony and opinions of Lead Plaintiff's expert.  At the hearing, Lead Plaintiff presented the testimony of Dr. Feinstein and AIG presented the testimony of Dr. Vinita Juneja and Dr. Mukesh Bajaj.  The Court held oral argument on the motions on May 1, 2013.

On October 12, 2011, PwC, the Underwriter Defendants, and the Director Defendants moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, seeking dismissal of certain claims relating to the alleged false and misleading statements made in AIG's financial statements under the Second Circuit's decision in *Fait v. Regions Financial Corp.*, 655 F.3d 105 (2d Cir. 2011).  The motion was subsequently joined by AIG and the Executive Defendants.  On April 2, 2013, the Court held oral argument on the motion.  On April 26, 2013, the Court issued a Memorandum Opinion and Order ("April 26, 2013 Order") granting the motion. In its April 26, 2013 Order, the Court dismissed all claims against PwC.  The Court also dismissed Lead Plaintiff's Securities Act claims against AIG, its outside directors, the Underwriter Defendants and certain of the Individual Defendants to the extent those claims were based on statements of opinion.  On May 14, 2013, the Court entered a Stipulation and Conforming Order that, among other things: specified the particular allegations subject to dismissal as a result of the Court's April 26, 2013 Order; provided that the Stipulation

did not dismiss any claims under the Securities Exchange Act of 1934; reserved all arguments, claims or defenses as to the applicability of the April 26, 2013 Order to Lead Plaintiff's claims under the Securities Exchange Act of 1934; and preserved Lead Plaintiff's appeal rights with respect to the April 26, 2013 Order and the May 14, 2013 Stipulation and Conforming Order. All claims against PwC were dismissed from this action in the April 26, 2013 Order.  As of the date of this Motion, the time to appeal from that dismissal has not yet run, and Lead Plaintiff has the right to appeal the dismissal of those claims.

In April 2012, Lead Plaintiff and AIG agreed to a mediation of the Action before the Honorable Layn R. Phillips (Ret.).  In advance of the mediation, Lead Plaintiff and AIG made several detailed submissions to Judge Phillips. In addition, on July 13, 2012, each side made an extensive ex parte presentation to Judge Phillips, outlining their respective views of the relative merits of the claims and defenses and setting forth their respective positions as to settlement. Then, on July 25 and 26, 2012, Judge Phillips conducted a mediation session in New York City attended by representatives of Lead Plaintiff, AIG and their respective counsel.  This mediation did not result in an agreement to resolve the Action.  Another mediation before Judge Phillips was held on September 3-4, 2013.  In advance of this mediation, Lead Plaintiff and AIG made further written submissions to Judge Phillips.  This mediation also did not result in an agreement to resolve the Action.

On November 15, 2013, the Supreme Court granted certiorari in *Halliburton Co. v. Erica P. John Fund, Inc.* ("*Halliburton II*"), in which the Supreme Court agreed to consider the viability of the fraud-on-the-market presumption of reliance necessary to certify a class of putative securities fraud plaintiffs under Section 10(b) of the Securities Exchange Act of 1934 and alternatively what is needed to invoke and rebut the presumption.  On December 19, 2013,

after letter submissions from the Parties, the Court ordered Lead Plaintiff to show cause why the Action should not be stayed pending the issuance of a decision in *Halliburton II*.  Following the Parties' submission in response to the show cause order, the Court, on January 30, 2014,  stayed the Action pending a decision in *Halliburton II*.

On June 23, 2014, the Supreme Court decided *Halliburton II*, sustaining the fraud-on-the-market presumption, affirming what a plaintiff must demonstrate to invoke the presumption, and providing that defendants may rebut the presumption at the class certification stage with evidence that the alleged misstatements had no impact on the price of the security at issue.  On July 14, 2014, the parties submitted letters to the Court regarding the impact of *Halliburton II* on the Action.

Following the Supreme Court's decision, the Parties reached out to Judge Phillips to explore the potential of renewed settlement discussions.  On July 15, 2014, counsel for AIG and Lead Counsel, on behalf of their respective clients, accepted a mediator's proposal from Judge Phillips to settle and release all claims asserted in the Action against the Settling Defendants other than PwC in return for a cash payment of $960,000,000 for the benefit of the Class.

Following this settlement, Lead Plaintiff and PwC agreed to a mediation of the claims that Lead Plaintiff had asserted against PwC on behalf of the Class.  Judge Phillips conducted a mediation session in New York City on July 30, 2014, at which no agreement was reached. However, on August 1, 2014, counsel for PwC and Lead Counsel, on behalf of their respective clients, accepted a mediator's proposal from Judge Phillips to settle and release all claims asserted in the Action against PwC in return for a cash payment of $10,500,000 for the benefit of the Class.

Following the Parties' agreements in principle, the Parties proceeded to formalize the agreements to resolve the Action in the Stipulation and exhibits thereto.  Accordingly, at the time the Stipulation was executed, Lead Plaintiff and Lead Counsel had a thorough understanding of the strengths and weaknesses of the Plaintiffs' claims and Defendants' potential defenses.  In light of (i) the Settlement's substantial benefits (including the payment of $970.5 million for the benefit of the Class); (ii) the cost and risks of continuing the litigation against the Defendants through trial and appeals; (iii) that the proposed Settlement resulted from arm's-length negotiations assisted by an experienced and respected mediator; and (iv) the approval of the Settlement by the Court-appointed Lead Plaintiff, it is respectfully submitted that the Settlement warrants the Court's preliminary approval in order that notice can be provided to the Class.

## ARGUMENT

## I.      THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Rule 23(e) requires judicial approval for any settlement or compromise of claims certified to proceed on a class-wide basis.  The settlement of complex class action litigation is favored by public policy and strongly encouraged.  *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context.  The compromise of complex litigation is encouraged by the courts and favored by public policy") (internal quotation marks and citation omitted). Approval of a proposed settlement is within the Court's discretion, to be exercised in accordance with public policy that strongly favors pretrial settlement of class action lawsuits.  *See In re Interpublic Sec. Litig.*, Nos. 02-6257, 03-1194, 2004 WL 2397190, at *7 (S.D.N.Y. Oct. 26, 2004); *see also In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998).

The Court "must determine whether the terms of the proposed settlement warrant preliminary approval [by] mak[ing] a 'preliminary evaluation' as to whether the settlement is

fair, reasonable and adequate." *In re Currency Conversion Fee Antitrust Litig.*, MDL Nos. 1409, M 21-95, 2006 WL 3247396, at \*5 (S.D.N.Y. Nov. 8, 2006) (citation omitted); *see also Wal-Mart Stores*, 396 F.3d at 116; *In re NASDAQ Market-Makers Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

> As explained by Judge Sweet:
>
> In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice. Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted. Once preliminary approval is bestowed, the second step of the process ensues. . . .

*Id.* at 102 (citations omitted); *see also Morris v. Affinity Health Plan, Inc.,* No. 09-cv-1932 (DAB), 2011 WL 6288035, at \*2 (S.D.N.Y. Dec. 15, 2011) ("If, after a preliminary evaluation of the proposed settlement, a court finds that it appears to fall within the range of possible approval, the court shall order that the class members receive notice of the settlement") (citation omitted); *In re Initial Pub. Offering Sec. Litig*., 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

In essence, the Court should determine whether the settlement is "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard." *NASDAQ*, 176 F.R.D. at 102 (citation omitted); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("The Court's function now is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.") (internal quotation marks omitted).

### A.   The Proposed Settlement Is the Result of Good Faith, Arm's Length Negotiations

A presumption of fairness applies to a proposed class settlement that is the result of arm's length negotiations between counsel knowledgeable in complex class litigation. *Wal-Mart*

*Stores*, 396 F.3d at 116; *see also Leung v. Home Boy Rest. Inc.*, No. 07 Civ. 8779 (RJS) (DFE), 2009 WL 398861, at *1 (S.D.N.Y. Feb. 18, 2009) (preliminary approval is appropriate where "the proposed settlement appears to be the product of extensive, arms-length negotiations conducted by experienced counsel with input from the parties …").  Here, the Settlement is the product of rigorous arm's length negotiations over a span of more than two years, with an experienced mediator, by parties and their counsel who prosecuted this Action for over six years. As such, the parties and their counsel were well-informed of the issues in the Action, and were further experienced in complex securities litigation.

The Settlement was achieved with the significant assistance of Judge Phillips, an experienced mediator and a respected former United States District Court Judge.  These factors further support approval of the Settlement.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008) (the use of an experienced mediator "in the settlement negotiations strongly supports a finding that they were conducted at arm's-length and without collusion."); *In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008) (approving settlement negotiated with the assistance of Judge Layn Phillips (retired) and referring to him as "one of the most prominent and highly skilled mediators of complex actions").

The Settlement was reached only after completion of: (1) Lead Plaintiff's initial pre-filing factual investigation; (2) Lead Plaintiff's analysis of AIG's public filings and public statements; (3) Lead Plaintiff's review of news articles and analyst reports concerning AIG; (4) interviewing several confidential witnesses in connection with drafting the Complaint; (5) exhaustive briefing

of Defendants' motions to dismiss; (6) the review and analysis of over 36 million pages of documents produced by Defendants; (7) consultations with experts on loss causation, damages, and accounting; (8) multiple briefing for class certification; (9) class-related discovery, including the depositions of experts and non-expert witnesses; (10) the hearing on the class certification motion;  (11) the depositions of 45 fact witnesses; and (12) intensive settlement negotiations during and in between mediation sessions facilitated by Judge Phillips.  Thus, the Settlement was not achieved until the Parties had sufficient familiarity with the issues in the case to evaluate its merits and agree on a settlement figure that was acceptable to Defendants and reasonable, fair and adequate to the Class.

### B.      The Proposed Settlement Falls Within the Range of Reasonableness and Merits Issuance of Notice and a Hearing on Final Approval

The terms of the proposed Settlement here are clearly "within the range of possible approval." *Initial Pub. Offering*, 243 F.R.D. at 87.  Although Lead Plaintiff and Lead Counsel believe that the claims asserted in the Action against the Defendants are meritorious, continued litigation posed the real risk that following a trial, a lesser recovery (or no recovery at all) would result.  Defendants would likely continue to argue, *inter alia*, that the statements made in AIG's public filings were not materially false and misleading, and that in any event, the losses suffered by Plaintiffs and the members of the Class were not caused by the alleged misrepresentations and omissions.  Each of these issues involves complex legal and factual questions, and there remains a significant risk that a jury might agree with the Defendants on one or more of these issues.

In the absence of a Settlement, the Parties would present factual and expert testimony on each of the issues, and there is risk that the Court or jury would resolve the inevitable "battle of the experts" against Lead Plaintiff and the Class.  Thus, the substantial payment of $970.5 million, when viewed in the context of these risks and the uncertainties involved with any

litigation, and the likelihood that taking the case to trial would require years of additional litigation and expenses for the Class, makes the Settlement a strong result for the Class.

As further indicia of its reasonableness, the Settlement exhibits none of the "obvious deficiencies" that could justify denying preliminary approval. *NASDAQ*, 176 F.R.D. at 102. In all respects, the terms embodied in the Stipulation are customary in nature. Specifically, Lead Plaintiff's recovery from the Settlement Fund will be determined according to precisely the same formula as the recoveries of other Class Members, with the exception of any reimbursement to the Lead Plaintiff of the costs incurred in representing the Class and so approved by the Court, as contemplated by 15 U.S.C. §78u-4(a)(4). *See NASDAQ*, 176 F.R.D. at 102 (settlement may be approved preliminarily where it "does not improperly grant preferential treatment to class representatives or segments of the class"); *Prudential*, 163 F.R.D. at 209 (preliminary approval is appropriate where "preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives …").

Finally, the Settlement was negotiated under the direction and with the direct and substantial involvement of Lead Plaintiff, whose representatives attended the mediations. This further strengthens the presumption of fairness. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) (participation of sophisticated institutional investor lead plaintiffs in settlement process supports approval of settlement).

## II.   CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE

In granting preliminary settlement approval, the Court should also certify the Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The proposed Settlement Class consists of:   all Persons (a) who purchased AIG Securities  on a

U.S. public exchange from March 16, 2006 through September 16, 2008 (the "Settlement Class Period") or (b) who purchased or acquired AIG Securities in or traceable to a public offering during the Settlement Class Period, and suffered damages as a result.  Excluded from the Class are: (i) Defendants; the Officers and Directors of AIG during the Settlement Class Period; the members of the Immediate Family of the  Individual Defendants;  any firm, trust, partnership, corporation or entity in which any Defendant has a majority interest (except that the Settlement Class shall not exclude any Investment Vehicle as defined in the Stipulation; the legal representatives,  heirs, successors-in-interest or assigns of any such excluded Person; and (ii) any Person that would otherwise be a Settlement Class Member, but properly excludes himself, herself, or itself by submitting a valid and timely request for exclusion from the Settlement Class in accordance with the requirements set forth in the Notice.

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement.  *See Weinberger v. Kendrich*, 698 F.2d 61, 73 (2d Cir. 1982); *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *8 (S.D.N.Y. Dec. 23, 2009).  Indeed, certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *Prudential*, 163 F.R.D. at 205.  "[S]ettlement classes are favored when there is little or no likelihood of abuse, and the settlement is fair and reasonable and under the scrutiny of the trial judge." *Id.* (quoting *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 174 (5th Cir. 1979)).

A settlement class, like other certified classes, must satisfy all the requirements of Rule 23(a) and (b).  *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). Nevertheless, the manageability concerns of Rule 23 (b)(3) are not at issue.  *See Amchem Prods.,*

*Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems… is not a consideration when settlement-only certification is requested").  Here, the proposed Class meets all the requirements of Rule 23, there is no likelihood of abuse of the class action device, and the settlement is fair, reasonable, and subject to the Court's approval.

As explained *supra*, certification is appropriate because the proposed Class meets all the requirements of Rule 23(a) and Rule 23(b)(3).

### A.       The Class Satisfies the Requirements of Rule 23(a)

Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

### 1.       The Class Members Are Too Numerous to Be Joined

The first subdivision of Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1); *Fogarazzo v. Lehman Bros.,* 263 F.R.D. 90, 96 (S.D.N.Y. 2009).   "Impracticable," however, does not mean "impossible," as "joinder may merely be difficult or inconvenient, rendering use of a class action the most efficient method to resolve plaintiffs' claims."  *Fogarazzo*, 263 F.R.D. at 96; *see also Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)).  The Second Circuit and courts within it have repeatedly held that numerosity is generally presumed when the proposed class would have at least 40 members.  *See In re Dynex*, 2011 U.S. Dist. LEXIS 22484, at *4 (noting holding of *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)); *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 175 (S.D.N.Y. 2008); *see also In re Vivendi*, 242 F.R.D. at 83 ("Precise quantification of the

class members is not necessary because a court may make common sense assumptions regarding numerosity").

Moreover, in securities fraud cases relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period.   *See, e.g., In re Vivendi*, 242 F.R.D. at 84; *see also In re Deutsche Telekom AG Sec. Litig.*, 229 F. Supp. 2d 277, 280 (S.D.N.Y. 2002) ("Class certification is frequently appropriate in securities fraud cases involving a large number of shares traded publicly in an established market.").   Because securities cases usually involve a large number of publicly-traded shares and/or other securities, and hundreds if not thousands of potential class members dispersed throughout the country, the numerosity requirement is often undisputed in such cases.   *See In re Am. Int'l Group, Inc. Sec. Litig.*, 265 F.R.D. 157, 167 (S.D.N.Y. 2010) ("*AIG I*").

Here, the Class is so numerous that joinder of all members is impracticable.  As of April 30, 2008, AIG reported that it had 2.49 billion shares of common stock issued and outstanding, and thereafter issued an additional 196 million shares of common stock in an offering of May 12, 2008.  As of January 30, 2009, AIG reported that it had 2.69 billion shares of common stock issued and outstanding.  Moreover, as identified in ¶¶591-592 of the Complaint, AIG issued over $20 billion of notes and other debt securities in registered public offerings during the Class Period and, as of September 16, 2008, had approximately $50 billion of notes and debt securities outstanding.

Because joining the thousands of Class members who reside in a geographically disbursed area would be burdensome and expensive, and thus impracticable, the numerosity requirement of Rule 23(a)(1) is satisfied here.

15

### 2.      There Are Common Questions Of Law And Fact

Rule 23(a)(2) requires that there be a question of law or fact common to the class.  *See Marisol v. Guiliani*, 126 F.3d 372, 376 (2d. Cir. 1997) (commonality requirement is met "if plaintiffs' grievances share a common question of law or of fact").   Commonality is "not defeated by slight differences in class members' positions," *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976), or because "all of the allegations of the class do not fit together like pieces in a jigsaw puzzle." *Green v. Wolf Corp.*, 406 F.2d 291, 300 (2d Cir. 1968); *see also In re Dynex*, 2011 U.S. Dist. LEXIS 22484, at *5 ("Class certification will not necessarily be precluded by differing individual circumstances of class members"); *In re Deutsche Telekom*, 229 F. Supp. 2d at 281 ("Commonality does not mandate that all class members make identical claims and arguments, only that common issues of fact or law affect all class members").

This commonality requirement has been applied permissively by the courts in securities fraud actions because, in such actions, it is the defendants' acts and omissions that are at the center of the case.  *See In re Nortel Networks*, 2003 U.S. Dist. LEXIS 15702, at *7; *Wagner v. Barrick Gold*, 251 F.R.D. 112, 116 (S.D.N.Y. 2008); *In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 539 (E.D. Va. 2006) (members of a proposed class in a securities case "are especially likely to share common claims and defenses").  Indeed, securities fraud actions are the paradigm sort of cases in which courts have found Rule 23(a)(2)'s commonality requirement easily satisfied.  *See In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 201 (E.D. Pa. 2008), *aff'd,* Nos. 08-8033 & 08-8045, 639 F.3d 623 (3d Cir. March 29, 2011).   As such, the commonality requirement, particularly in securities fraud litigation, is generally considered a low hurdle easily surmounted.  *See In re HealthSouth Corp. Sec. Litig.*, 261 F.R.D. 616, 627 (N.D. Ala. 2009).

The "commonality" requirement is amply satisfied here.  The Complaint alleges material misrepresentations in, and omissions from, SEC filings, press releases and other public statements by Defendants in violation of the federal securities laws.  Courts have consistently found that such allegations of a common and consistent course of conduct to be the hallmark of securities actions certified under Rule 23.  *See, e.g., Green*, 406 F.2d at 300; *Blackie*, 524 F.2d at 901-02.  Indeed, the claims against Defendants are based upon common operative facts and the following common legal issues:

(a)    Whether Defendants violated the federal securities laws;

(b)    Whether the Company's SEC filings, press releases and other public statements made by Defendants during the Class Period contained misstatements of material fact or omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(c)    Whether the market prices of AIG securities during the Class Period were artificially inflated due to the material misrepresentation and/or non-disclosures alleged in the Complaint;

(d)    With respect to Plaintiffs' claims under Section 10(b) of the Exchange Act, whether those Defendants acted with the requisite state of mind in omitting and/or misrepresenting material facts in the documents filed with the SEC, press releases and other public statements;

(e)    With respect to Plaintiffs' claims pursuant to Section 20(a) of the Exchange Act, whether the Executive Defendants are controlling persons of the Company;

(f)    With respect to Plaintiffs' claims pursuant to the Securities Act, whether the offering documents for the offerings made during the Class Period contained untrue statements of material fact or material omissions; and

(g)    The extent of damage sustained by Class members and the appropriate measure of damages.

17

¶78.   These questions of law or fact are common to the Class, and thus, the commonality requirement is satisfied.  *In re Vivendi*, 242 F.R.D. at 84; *In re Deutsche Telekom*, 229 F. Supp. 2d at 281.

### 3.   Plaintiffs' Claims Are Typical of the Class

Rule 23(a)(3) requires that the claims of the class representatives be typical of those of the class and "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol*, 126 F.3d at 376 (quoting *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992)).   "When the same unlawful conduct was directed at or affected both the named plaintiff and the prospective class, typicality is usually met."  *In re Globalstar Sec. Litig.*, Case No. 01 Civ. 1748 (PKC), 2004 U.S. Dist. LEXIS 24164, at *11 (S.D.N.Y. Dec. 1, 2004) (citing *Robidoux*, 987 F.2d at 936-37); *see also In re Vivendi*, 242 F.R.D. at 85 ("In prosecuting their case, plaintiffs will necessarily seek to develop facts relating to the … dissemination of allegedly false or misleading statements underlying their claims.  Such allegations are generally considered sufficient to satisfy the typicality requirement").   As with the commonality requirement, the typicality requirement is not demanding.  *In re Dynex*, 2011 U.S. Dist. LEXIS 22484, at *8; *see also In re HealthSouth*, 261 F.R.D. at 627 ("Typicality generally presents a low burden that is easily satisfied").

Further, when it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is met irrespective of minor variations in the fact patterns underlying individual claims. *See, e.g., In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D 267, 280 (S.D.N.Y. 2003) (citing *Robidoux*, 987 F.2d at

936-37).[3]  Indeed, typicality does not require that the situations of the named representatives and the class members be identical.  *See Globalstar*, 2004 U.S. Dist. LEXIS 24164, at *11 ("Typicality does not require factual identity between the named plaintiffs and the class members….").

Here, the typicality requirement is satisfied, as the claims asserted by Lead Plaintiff are based upon the same allegedly false and misleading statements contained in, or material facts omitted from, the SEC filings, press releases, and other public statements that form the basis of the claims of all Class members.  Lead Plaintiff, like other putative Class members, seek to recover damages for losses from the same false and misleading representations and omissions made by Defendants throughout the Class Period in violation of the securities laws.  Lead Plaintiff purchased substantial amounts of various AIG securities during the Class Period, and suffered losses like all other members of the Class, either as a result of sales made after dissemination of certain partial corrective disclosures and/or through retention of such securities until the end of the Class Period.   The impact of the Defendants' material misrepresentations and omissions affected all members of the Class in the same manner.  Since the losses of both Lead Plaintiff and the class members arise out of the same wrongful course of conduct, Plaintiffs' claims are typical of the claims of the Class.

### 4.    Lead Plaintiff Will Fairly And Adequately Protect The Interest Of The Class

Rule 23(a)(4) allows class certification if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4); *Fogarazzo*, 263 F.R.D. at 97.  This requirement is satisfied if (1) the named plaintiff has interests common with, and not

---

[3]      Thus, the court's analysis in this regard should consider whether the class representatives "have the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions."  *In re NASDAQ Market-Makers Antitrust Litig.,* 172 F.R.D. 119, 126 (S.D.N.Y. 1997).

antagonistic to, the Class' interests, and (2) the plaintiff's attorney is qualified, experienced and generally able to conduct the litigation. *Wagner*, 251 F.R.D. at 118; *In re WorldCom*, 219 F.R.D. at 282. The requirement of adequacy "is motivated by concerns similar to those driving the commonality and typicality requirements, namely, the efficiency and fairness of class certification." *Marisol*, 126 F.3d at 378.

Lead Plaintiff clearly satisfies both prongs of Rule 23(a)(4)'s adequacy test. The first requirement, which overlaps with the commonality and typicality prerequisites, asks whether the class representatives "possess the same interest and [have] suffer[ed] the same injury as the class members." *Amchem Prods.*, 521 U.S. at 625-26; *see also In re Vivendi*, 242 F.R.D. at 85 (recognizing that "the issues of typicality and adequacy tend to merge"). Here, Lead Plaintiff has no interests that are antagonistic to those of the Class. Indeed, as a purchaser of AIG securities who suffered losses as a result of such investments, Lead Plaintiff's interests are directly aligned with the interests of all Class members. Lead Plaintiff and the absent Class members have precisely the same interest in proving that Defendants violated the securities laws and in achieving the maximum recovery possible. *See Darquea v. Jaden Corp.*, Case No. 06 Civ. 722 (DLB), 2008 U.S. Dist. LEXIS 17747, at *9 (S.D.N.Y. Mar. 6, 2008) (finding adequacy requirement satisfied where "[a]ll claims alleged rise from the same wrongful conduct" and plaintiffs' interests in a recovery were "similar to the [interests of] the proposed class").

As to the second prong of the adequacy requirement, Lead Plaintiff has retained counsel highly experienced in securities class action litigation to prosecute their claims and the claims of the Class. Barrack, Rodos & Bacine and The Miller Law Firm, P.C. have extensive experience litigating securities law class actions on behalf of injured investors and have obtained some of

the most significant recoveries in this area of the law.[4]  There should be no legitimate dispute that Lead Counsel is qualified, experienced, and capable of prosecuting this litigation on behalf of the Class.  *See Saddle Rock Partners Ltd. v. Hiatt*, Case No. 96 Civ. 9474 (SHS), 2000 U.S. Dist. LEXIS 11931, at *17 (S.D.N.Y. Aug. 21, 2000) (adequacy satisfied where plaintiffs' counsel has significant experience in complex securities actions).  Thus, Rule 23(a)(4)'s adequacy requirement is satisfied.

## B.     Rule 23(b)(3) Is Satisfied

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) is "designed to secure judgments binding all class members save those who affirmatively elect[] to be excluded," where a class action will "achieve economies of time, effort, and expense, and promote…. uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  *Amchem*, 521 U.S. at 614-15 (citation omitted).

Rule 23(b)(3) is satisfied by "quintessential securities fraud class action[s]" such as this one because there exists "[a]n enormous group of potential plaintiffs" seeking to recover damages and "[t]he focus of the litigation is on defendants' conduct" and "defendants' potential liability."  *In re Priceline.com Inc. Sec. Litig.*, 236 F.R.D. 89, 101-02 (D. Conn. 2006); *see also*

---

[4]     The firm biographies of Barrack, Rodos & Bacine and The Miller Law Firm, P.C. were previously filed with the Court in connection with Lead Plaintiff's motion for class certification. The Court has also had the opportunity to view some of Lead Counsel's work product, including, among other instances, in the Consolidated Complaint filed after appointment of SMRS as Lead Plaintiff, in the submissions made in opposition to Defendants' motions to dismiss and in Lead Plaintiff's motion for class certification and through the evidentiary hearing on the class motion conducted on April 29 through May 1, 2013.

*In re Deutsche Telekom*, 229 F. Supp. 2d at 282 ("Courts have recognized that class actions are generally appropriate when plaintiffs seek redress for violations of the securities laws").

The requirements of Rule 23(b)(3) are more than satisfied here.

### 1. Issues Common to the Class Predominate Over Issues That Are Not Common to the Class

Predominance is met "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issue subject to only individualized proof." *In re Vivendi*, 242 F.R.D. at 90 (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)). As the Supreme Court noted in *Amchem Prods.*, "[p]redominance is a test readily met in certain cases alleging ... securities fraud." 521 U.S. at 625 (citing Fed. R. Civ. P. 23, Advisory Committee Notes (1966)); *see also In re Vivendi*, 242 F.R.D. at 90.

Here, it is clear that common questions of fact and law predominate over individual questions because the central questions relating to Defendants' liability are common to the Class, *e.g.*, whether certain of the Executive Defendants made material misrepresentations and/or omissions with the requisite scienter, thereby injuring Lead Plaintiff and the Class members who purchased AIG securities during the Class Period; whether the Executive Defendants are controlling persons with respect to the Section 10(b) claims asserted against AIG; and whether the Defendants named in the Securities Act claims issued materially untrue statements in connection with AIG's securities offerings during the Class Period. The alleged misrepresentations and misleading statements and omissions in this case were contained in SEC filings, press releases, and other public statements disseminated into the public market by Defendants, which statements and omissions were not fully corrected until the end of the Class

Period.  Thus, the common questions of law and fact relating to the Defendants' liability impact

all members of the Class and predominate over questions affecting solely individual members.

Any slight difference among the claims of putative class members do not predominate

over the common issues.  As the Ninth Circuit commented in *Blackie v. Barrack*:

> The overwhelming weight of authority holds that repeated misrepresentations of the sort alleged here satisfy the "common question" requirement.  Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit. …
>
> The availability of the class action to redress such frauds has been consistently upheld … in large part because the substantial role that the deterrent effect of class actions plays in accomplishing the objectives of the securities laws.

524 F.2d at 902-03 (citations omitted); *see also Green*, 406 F.2d at 294.  Similarly, as the

Advisory Committee on Rule 23 stated: "[A] fraud perpetrated on numerous persons by the use

of similar misrepresentations may be an appealing situation for a class action …."  Fed. R. Civ.

P. 23, Advisory Committee Notes (1966).

Here, the same alleged course of conduct by the Defendants forms the basis of all Class

Members' claims.  There are numerous common issues relating to the Defendants' liability

which predominate over any individualized issues.  The predominance requirement of Rule

23(b)(3) is, therefore, satisfied.

## 2.  A Class Action Is Superior To Other Methods Of Adjudication

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making

a determination of whether class certification is the superior method of litigation: "(A) the class

members' interests in individually controlling the prosecution…of separate actions; (B) the

extent and nature of any litigation concerning the controversy already begun by … class

members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  *See* Fed. R. Civ. P. 23(b)(3).  Here, class action treatment is clearly superior to any other method for the fair and efficient adjudication of the controversy.

Class actions are particularly well-suited for resolution of securities fraud cases.  *In re Vivendi*, 242 F.R.D. at 91 (citing cases); *Darquea*, 2008 U.S. Dist. LEXIS 17747, at *14 (securities suits "easily satisfy the superiority requirement"); *In re Deutsche Telekom*, 229 F. Supp. 2d at 282 (class actions "are generally well-suited to securities fraud cases such as this one because they avoid the time and expense of requiring all class members to litigate individually"). As Judge Cote noted in *In re WorldCom,* "should shareholders and bondholders file their own individual lawsuits, such suits would risk disparate results, threaten to increase the costs of litigation for all parties exponentially, pose an enormous burden for courts throughout the land, and encourage a race to judgment to obtain the limited funds that are available to fund any recovery that plaintiffs may win here." 219 F.R.D. at 304.  Further, "[f]ew individuals could even contemplate proceeding with this litigation in any context other than through their participation in a class action, given the expense and burden that such litigation would entail." *Id*. at 304.

As a result, a class action is not simply the best method but also is the only practicable method to resolve most class disputes - including this one - where any individual recovery could be relatively small and the burden of bringing suit relatively large.  *See Darquea*, 2008 U.S. Dist. LEXIS 17747, at *14 (stating that most violations of the federal securities laws "inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible"); *In re Globalstar*, 2004 U.S. Dist.

LEXIS 24164, at *15 (recognizing that "[l]itigating each claim individually would likely result in wasteful and repetitive lawsuits" and that many class members' claims "will be too small to pursue individually").   For the reasons stated above, this action is appropriate for class certification.

### C.     Lead Counsel Should be Appointed Class Counsel

Lead Plaintiff also requests that this Court appoint Barrack, Rodos & Bacine and The Miller Law Firm, P.C. as class counsel in accordance with Fed. R. Civ. P. 23(g).  That provision states that the court certifying a class must also "appoint class counsel."  Class counsel must "fairly and adequately represent the interests of the Class."  Fed. R. Civ. P. 23(g)(1)(A), (B).  In appointing class counsel, the court must consider:

- the work counsel has done in identifying or investigating potential claims in the action;
- counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
- counsel's knowledge of the applicable law; and
- the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

The firms moving for appointment as class counsel have an abundance of complex litigation experience, including numerous successful securities class actions.  *See* note 4*, supra*. Further, the firms have already undertaken a vigorous prosecution of this action, including conducting an initial, extensive investigation of the claims, filing the Consolidated Complaint, defeating Defendants' motions to dismiss, defeating Defendants' motion for reconsideration of a portion of the Court's Order on the dismissal motions,   issuing comprehensive document requests to the Defendants, issuing discovery requests via subpoenas to numerous third parties, conducting numerous meets and confers with counsel for Defendants and non-parties, reviewing millions of pages of documents produced thus far by Defendants and non-parties, conducting 45

fact witness depositions, responding to the Defendants' joint set of document requests addressed to Plaintiffs, producing documents of the Plaintiffs, and pursuing class certification.

Through these efforts, Barrack Rodos & Bacine and The Miller Law Firm have demonstrated their commitment to this action and have invested the vast resources necessary to litigate the case to a successful conclusion. The firms' ample and notable records in litigating and achieving successful outcomes for investors, and their commitment to this Action to date, strongly indicate that these firms will adequately represent the interests of the Class.

Accordingly, under the considerations identified in Rule 23(g)(1), Lead Counsel has demonstrated they are qualified for appointment as class counsel.

## III.   THE COURT SHOULD APPROVE THE FORM OF THE NOTICE AND PLAN FOR PROVIDING NOTICE TO THE CLASS

Lead Plaintiff also requests that the Court approve the form and content of the proposed Notice and Summary Notice, as well as the proposed Proof of Claim and Release form. *See* Exhibits 1, 2 and 3 to the proposed Preliminary Approval Order.

As outlined in the Preliminary Approval Order, Lead Plaintiff will notify Class Members of the Settlement by (a) mailing the Notice and Proof of Claim to all Class Members who can be identified with reasonable effort, (b) posting the Notice, Proof of Claim and other Settlement documents on publicly identified websites, and (c) publishing a Summary Notice in the *Wall Street Journal* and over the PR Newswire. The Notice will advise Class Members of (i) the pendency of the class action; (ii) the essential terms of this Settlement; (iii) the Plan of Allocation for distributing the Net Settlement Fund to members of the Class; and (iv) information regarding Lead Counsel's motion for attorneys' fees and reimbursement of litigation expenses. The Notice advises that a Class Member may enter an appearance through counsel if desired, and notes that the Court will exclude from the Class any Class Member who requests

exclusion the through procedures set forth and within the deadline set forth in the Notice for doing so.[5]  The Notice further describes (1) the binding effect of a judgment on Class Members under Rule 23(c)(3), (2) how to object to the Proposed Settlement, the Plan of Allocation and/or Lead Counsel's fee and expense reimbursement request, and (3) how to make a claim.  The Notice further provides specifics on the date, time and place of the Settlement Hearing.

The proposed Preliminary Approval Order further requires Lead Plaintiff to cause the Summary Notice to be published in the *Wall Street Journal* and transmitted over *PR Newswire*. Lead Counsel will also post a copy of the Notice on their websites and on a dedicated settlement website.  The form and manner of providing notice to the Class satisfy the requirements of due process, Rule 23, and the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(a)(7). Rule 23(c)(2)(B) requires a certified class to receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  The manner of providing notice, which includes individual notice by mail to all Class Members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23.  *See In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008); *Global Crossing*, 225 F.R.D. at 448-49.

Lead Plaintiff also requests that the Court approve the appointment of Gilardi & Co. LLC as Claims Administrator.  Gilardi is a nationally recognized notice and claims administration firm, with extensive experience in administering hundreds of securities class actions.  Its staff

---

[5] The Notice also informs Class Members of the pendency of the *IndyMac* case before the Supreme Court and notes, among other things, that an affirmance of the Second Circuit's decision in that case could mean that the claims of Class Members who request exclusion will be time-barred.

consists of attorneys, CPAs, IT specialists and other professionals with substantial experience in notice and claims administration.

## CONCLUSION

For all of the foregoing, Lead Plaintiff respectfully requests that this Court: (i) preliminarily approve the Settlement, including approving the form and substance of the proposed forms of Notice and directing that notice be given to prospective members of the Class; (ii) certify the Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure;  (iii) appoint the law firms of Barrack, Rodos & Bacine and The Miller Law Firm, P.C. as class counsel; (iv) schedule a hearing at which approval of the Settlement, Plan of Allocation and an award of attorneys' fees and litigation expenses to Lead Counsel may be considered; and (v) grant such further relief as the Court deems just and proper.

Dated:  September 12, 2014

Respectfully submitted,

**BARRACK, RODOS & BACINE**

/s/ Jeffrey W. Golan
Leonard Barrack
Jeffrey W. Golan (*pro hac vice*)
Robert A. Hoffman (*pro hac vice*)
Lisa M. Port
Julie B. Palley
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
Tel.:  (215) 963-0600

　　　and

A. Arnold Gershon (AG – 3809)
Michael A. Toomey (MT – 6688)
425 Park Avenue, Suite 3100
New York, New York 10022
Tel.:  (212) 688-0782

**THE MILLER LAW FIRM, P.C.**

/s/ E. Powell Miller
E. Powell Miller (*pro hac vice*)
Marc L. Newman (*pro hac vice*)
Jaysen E. Blake
Miller Building
950 West University Drive, Suite 300
Rochester, MI 48307
Tel.: (248) 841-2200

*Attorneys for Lead Plaintiff, State of Michigan Retirement Systems,*
*and Lead Counsel for the Putative Class*