# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE AMERICAN INTERNATIONAL GROUP, INC. 2008 SECURITIES LITIGATION | Master File No.: 08-CV-4772-LTS-DCF |
| This Document Relates To:  All Actions | |

**NOTICE OF CLASS ACTION, PROPOSED SETTLEMENT, MOTION FOR ATTORNEYS' FEES AND EXPENSES, AND SETTLEMENT HEARING**

**TO: ALL PERSONS AND ENTITIES WHO ARE MEMBERS OF THE PROPOSED CLASS AS DEFINED IN SECTION 1 BELOW**

*This notice contains important deadlines that may affect your rights.*

*This is not a solicitation from a lawyer.  A Federal Court authorized this Notice.*

- Court-appointed Lead Plaintiff, the State of Michigan Retirement Systems, as custodian of the Michigan Public School Employees' Retirement System, the State Employees' Retirement System, the Michigan State Police Retirement System, and the Michigan Judges Retirement System ("Lead Plaintiff"[1]), has reached a proposed settlement in the amount of $970,500,000.00 in cash (the "Settlement") on behalf of the proposed Class. The Settlement will resolve all claims against American International Group, Inc. ("AIG" or the "Company") and the other Released Defendant Parties (as defined below) in this proposed class action (the "Action").

- The Settlement, if approved by the Court, will: resolve claims in the Action that AIG's investors were misled about AIG's exposure to the U.S. subprime residential real estate market; avoid the costs and risks of continuing the Action; provide a cash payment to Class members who timely submit valid claims; and release the Released Defendant Parties from liability.

- This Notice explains important rights you may have, including your possible receipt of cash from the Settlement.  **Your legal rights will be affected whether or not you act. Please read this Notice carefully.**

- The Court in charge of the Action still has to decide whether to approve the Settlement. Cash payments will be made if the Court approves the Settlement and after any appeals are resolved.  Please be patient.

---

[1]  All capitalized terms used in this Notice that are not otherwise defined herein shall have the meanings provided in the Stipulation and Agreement of Settlement dated September 12, 2014 (the "Stipulation"), which is available on the website for the Action at www.AIG2008Securitiessettlement.com.

## SUMMARY OF THIS NOTICE

### I.    Description of the Action and the Class

This Notice relates to a proposed Settlement of claims in a pending securities class action lawsuit brought by investors alleging, among other things, that Defendants (set forth at page __, note 2, below) violated the federal securities law by allegedly misrepresenting and concealing the full extent of the Company's exposure to the U.S. subprime residential mortgage market.  The proposed Settlement, if approved by the Court, will settle claims of all Persons (a) who purchased AIG Securities on a U.S. public exchange during the period from March 16, 2006 through September 16, 2008 (the "Class Period") or (b) who purchased or acquired AIG Securities in or traceable to a public offering during the Class Period (the "Class").  The major securities in the Action are: AIG common stock; corporate units issued in May 2008; two series of subordinated debentures issued in June 2007 (Series A-4) and in December 2007 (Series A-5); and six major bond offerings between October 2006 and December 2007.  In addition, there were approximately 60 other bond and structured note offerings made during the Class Period, many of which were much smaller in size and sold to a limited number of investors.  A full listing of the AIG securities in the case is at pages _-_ of the Proof of Claim and Release form ("Proof of Claim"), which is attached to this Notice.

### II.    Statement of the Plaintiffs' Recovery

Subject to Court approval, and as described more fully on page __ below, Lead Plaintiff, on behalf of the proposed Class, has agreed to settle all claims in the Action in exchange for a cash payment of $970,500,000.00 (the "Settlement Amount").  The claims that will be resolved by the Settlement include all claims that were or could have been asserted in the Action related to all Persons (a) who purchased AIG Securities on a U.S. public exchange during the Class

Period or (b) who purchased or acquired AIG Securities in or traceable to a public offering the Settlement Class Period.  The Settlement Amount will be deposited into an interest-bearing escrow account (the "Settlement Fund").  Based on the Plan of Allocation being proposed, the estimated average recovery for AIG common stock in the Class is $0.38 per share and for other AIG securities in the Class is $0,10  per $100 based on the aggregate of all other Eligible Securities issued during the Class Period.  Class Members should note, however, that the foregoing average recoveries are only estimates.  A Class Member's actual recovery will depend on several things, including: (1) the number of claims filed; (2) when, in what quantities and for how much Class Members purchased and/or acquired AIG securities during the Class Period; (3) which AIG securities Class Members purchased; and (4) whether Class Members sold AIG securities and, if so, when and for how much.  The Net Settlement Fund (the Settlement Fund less taxes, notice and administration costs, attorneys' fees and other litigation expenses awarded to Lead Counsel) will be distributed in accordance with a plan of allocation (the "Plan of Allocation") that will be approved by the Court and will determine how the Net Settlement Fund shall be allocated to the members of the Class.  The proposed Plan of Allocation is included in this Notice (see page ___ below).

## III.    Statement of Potential Outcome of the Case

The Parties do not agree on whether Lead Plaintiff would have prevailed on its claims against the Defendants.  Nor do they agree on the average amount of damages per share and other securities that might be recoverable if Lead Plaintiff were to prevail on the claims of the Class.  Defendants deny that they have any liability whatsoever for any of the claims that Lead Plaintiff alleged in the Complaint and that the prices of any AIG securities were damaged as a result of the misstatements and omissions alleged by Lead Plaintiff.  The issues on which the

QUESTIONS?  PLEASE CALL XXX-XXX-XXXX OR OUTSIDE U.S. AND CANADA CALL XXX-XXX-XXXX OR VISIT www.AIG2008Securitiessettlement.com

Page 3 of 48

Parties disagree include: (i) whether any of the Defendants made any materially false or misleading statements or omissions during the Class Period; (ii) whether the Defendants made any materially false or misleading statements with knowledge or reckless disregard of the truth; (iii) whether the claims against the Defendants are subject to various defenses that would preclude any liability that might otherwise exist; (iv) the amounts, if any, by which the prices of AIG securities were artificially inflated as a result of the alleged misstatements and omissions by the Defendants; (v) the amount, if any, by which the prices of AIG Securities declined as a result of any alleged corrective disclosure or the materialization of any alleged concealed risk; and (vi) the amount, if any, of any alleged damages suffered by purchasers of AIG securities during the Class Period.

IV.     **Statement of Attorneys' Fees and Litigation Expenses Sought**

Lead Counsel (as defined on page __ below) will apply to the Court for an award of attorneys' fees from the Settlement Fund in an amount not to exceed 12% of the Settlement Fund, plus interest from the date of funding at the same rate as earned by the Settlement Fund. In addition, Lead Counsel also will apply for the reimbursement of litigation expenses paid or incurred in connection with the prosecution and resolution of the Action, in an amount not to exceed $6 million, plus interest from the date of funding at the same rate as earned by the Settlement Fund, which includes reimbursement to the Lead Plaintiff for its reasonable costs and expenses (including lost wages) directly relating to their representation of the proposed Class, pursuant to the Private Securities Litigation Reform Act.  If the Court approves the attorneys' fees and expense application in full, the average amount of fees and expenses will be approximately $0.04 per share and for other AIG securities in the Class is $0,01 per $100 based on the aggregate of all other Eligible Securities issued during the Class Period.

**V.**      **Identification of Attorneys' Representatives**

Lead Plaintiff and the Class are being represented by the Court-appointed Lead Counsel: Jeffrey W. Golan, Esq. and Robert A. Hoffman, Esq., of Barrack Rodos & Bacine, 3300 Two Commerce Square, 2001 Market Street, Philadelphia, PA 19103, Tel: (215) 963-0600, www.barrack.com; and E. Powell Miller, Esq. and Marc L. Newman, Esq., of The Miller Law Firm, P.C., 950 West University Drive, Suite 300, Rochester, MI 48307, Tel: (248) 841-2200, www.millerlawpc.com.

**VI.**      **Reasons for the Settlement**

For Lead Plaintiff, the principal reason for the Settlement is the immediate benefit of a substantial cash recovery for the Class.  This benefit must be compared to the risk that no recovery or a smaller recovery might be achieved after the Court decides the pending motion for class certification, any summary judgment motions and after a contested trial and likely appeals are resolved, possibly years into the future.  For the Defendants, who deny all allegations of liability and deny that any Class Members were damaged, the principal reason for the Settlement is to eliminate the burden, expense, uncertainty and risk of further litigation.

**[END OF COVER PAGE]**

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT: | |
|---|---|
| **ACTIONS YOU MAY PURSUE** | **EFFECT OF TAKING THIS ACTION** |
| **SUBMIT A PROOF OF CLAIM FORM POSTMARKED NO LATER THAN _____, 2015.** | This is the only way to get a payment from the Settlement. |
| **EXCLUDE YOURSELF FROM THE CLASS BY SUBMITTING A WRITTEN REQUEST FOR EXCLUSION POSTMARKED NO LATER THAN _____, 201_.** | Get no payment.  This is the only option that allows you to ever be part of any other lawsuit against the Settling Defendants concerning the claims that were, or could have been, asserted in this case.  It is also the *only* way for Class Members to remove themselves from the Class.  **If you are considering excluding yourself from the Class, please note that there is a risk that any new claims asserted against the Settling Defendants may no longer be timely and would be time-barred.  See page __ below.** |
| **OBJECT TO THE SETTLEMENT BY SUBMITTING A WRITTEN OBJECTION POSTMARKED NO LATER THAN _____, 201_.** | Write to the Court and explain why you do not like the Settlement, the proposed Plan of Allocation, and/or the request for attorneys' fees and reimbursement of expenses.  In order to object, you must remain a member of the Class, may not exclude yourself, and you will be bound by the Court's determinations. |
| **GO TO THE HEARING ON _____, 201_ AT _:__ _.M., AND FILE A NOTICE OF INTENTION TO APPEAR SO THAT IT IS POSTMARKED NO LATER THAN _____, 201_.** | Ask to speak in Court about the fairness of the Settlement, the proposed Plan of Allocation, or the request for attorneys' fees and reimbursement of expenses. |
| **DO NOTHING** | Get no payment.  Remain a Class Member.  Give up your rights. |

## WHAT THIS NOTICE CONTAINS

Why did I get this notice package? …………………………………………… Page __

What is this lawsuit about and what has happened so far? ……………………… Page __

Why is this a class action? …………………………………………………….. Page __

Why is there a settlement? ……………………………………………….…. Page __

How do I know if I am part of the Settlement? ……………………….……. Page __

Are there exceptions to being included in the Class? …………………………. Page __

QUESTIONS?  PLEASE CALL XXX-XXX-XXXX OR OUTSIDE U.S. AND CANADA CALL XXX-XXX-XXXX OR VISIT www.AIG2008Securitiessettlement.com

What if I am not sure if I am included? …………………………………………….... Page __

What does the Settlement provide? …………………………………………………….. Page __

How much will be payment be? ……………………………………………….…… Page __

How can I get a payment? ………………………………………………………… Page __

When would I get my payment? …………………………………………………..…… Page __

What am I giving up by staying in the Class? ………………………………….…… Page __

How do I "opt out" (exclude myself) from the proposed Settlement? ………………… Page __

If I do not exclude myself, can I sue the Defendants and other Released Defendant Parties for the same thing later? …………………………………………….………….…………… Page __

If I exclude myself, can I get money from the proposed Settlement? …………….…… Page __

Do I have a lawyer in this case? …………………………………………….……….. Page __

How will the lawyers be paid? …………………………………………….…… Page __

How do I tell the Court that I do not like something about the proposed Settlement? …. Page __

What is the difference between objecting and requesting exclusion? …………………... Page __

When and where will the Court decide whether to approve the proposed Settlement?…. Page __

Do I have to come to the hearing? ………………………………………………… Page __

May I speak at the hearing and submit additional evidence? …………………………. Page __

What happens if I do nothing at all? …………………………………………….…… Page __

Are there more details about the proposed Settlement and the lawsuit? ………………… Page __

Plan of Allocation of Net Settlement Fund ……………………………………………… Page __

What if I bought securities on someone else's behalf? ……………………………….. Page __

## BASIC INFORMATION

| 1.   **Why did I get this notice package?** |
| --- |

You or someone in your family may have purchased or otherwise acquired AIG common stock or other AIG securities that traded on a U.S. public exchange during the Class Period.

The Court directed that this Notice be sent to Class Members because they have a right to know about the proposed Settlement of this class action lawsuit, and about all of their options, before the Court decides whether to approve the Settlement.  If approved, the Settlement will end all of the Class's claims against the Defendants.  The Court will consider whether to approve the Settlement at a Settlement Hearing on _____, 201_ at __:__ _.m.  If the Court approves the Settlement, and after any appeals are resolved and the Settlement administration is completed, the claims administrator appointed by the Court will make the payments that the Settlement allows.

The Court in charge of the case is the United States District Court for the Southern District of New York, and the case is known as *In re American International Group, Inc. 2008 Securities Litigation*, Master File No. 08-CV-4772-LTS-DCF.  This case was assigned to United States District Judge Laura Taylor Swain.  The person who is suing is called "Plaintiff" and the company and the persons being sued are called "Defendants."

| 2.   **What is this lawsuit about and what has happened so far?** |
| --- |

Lead Plaintiff's claims in the Action are stated in the Consolidated Class Action Complaint dated May 19, 2009 (the "Complaint").  Lead Plaintiff alleged that some or all of the Defendants[2] violated Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities

---

[2]  The Defendants are: AIG; Steven J. Bensinger, Joseph Cassano, Andrew Forster, Alan Frost, David L. Herzog, Robert Lewis, Thomas Athan, and Martin J. Sullivan (collectively, the

Act") and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

Act").   The Complaint alleged that Defendants violated the federal securities law by allegedly

misrepresenting and concealing the full extent of the Company's exposure to the U.S. subprime

---

"Executive Defendants"); Stephen F. Bollenbach, Pei-yuan Chia, Marshall A. Cohen, Martin S. Feldstein, Ellen V. Futter, Stephen L. Hammerman, Richard C. Holbrooke, Fred H. Langhammer, George L. Miles, Morris W. Offit, James F. Orr III, Virginia M. Rometty, Michael H. Sutton, Edmund S.W. Tse, Robert B. Willumstad and Frank G. Zarb (collectively, the "Director Defendants"); PricewaterhouseCoopers LLP ("PwC"); and Advisors Asset Management (f/k/a Fixed Income Securities, LP); AG Edwards & Sons, Inc.; ABN AMRO Bank N.V.; Ameriprise Advisor Services, Inc. (f/k/a H&R Block Financial Advisors, Inc.); ANZ Securities, Inc.; Banc of America Securities LLC; Banca IMI S.p.A.; Barclays Bank PLC and its investment banking division, Barclays Capital; BB&T Capital Markets; B.C. Ziegler & Co.; Bear Stearns & Co. Inc.; Blaylock Robert Van, LLC (f/k/a Blaylock & Co., Inc.); BMO Capital Markets Corp.; BNP Paribas Bank; Crédit Agricole Corporate and Investment Bank, formerly known as Calyon; Charles Schwab & Co.; Citigroup Global Markets Inc. and Citigroup Global Markets Ltd.; City Securities Corporation; C.L. King & Associates, Inc.; Credit Suisse Securities (USA) LLC and Credit Suisse Securities (Europe) Ltd.; Crowell Weedon & Co.; D.A. Davidson & Co.; Daiwa Capital Markets America Inc.; Davenport & Company LLC; Deutsche Bank Securities Inc. and Deutsche Bank AG; Doley Securities; Dowling & Partners Securities, LLC; Ferris, Baker, Watts Incorporated; Fidelity Capital Markets; Fox-Pitt Kelton Cochran Caronia Waller (USA) LLC; Goldman, Sachs & Co.; Greenwich Capital Markets, Inc. (n/k/a RBS Securities Inc.); Guzman & Company; HSBC Securities (USA) LLC and HSBC Bank plc, companies within the HSBC Group; Incapital LLC; J.J.B. Hilliard/W.L. Lyons; Janney Montgomery Scott LLC; Jefferies & Company, Inc.; JP Morgan Securities Inc. and JP Morgan Securities Ltd.; Keefe, Bruyette & Woods, Inc.; KeyBanc Capital Markets Inc.; Loop Capital Markets, LLC; Maxim Group, LLC; Merrill Lynch, Pierce, Fenner & Smith Inc.; Mesirow Financial, Inc.; Mitsubishi UFJ Securities International plc; Mizuho Securities USA Inc.; Morgan Keegan & Company, Inc.; Morgan Stanley & Co. Incorporated and Morgan Stanley Inc.; Muriel Siebert & Co., Inc.; National Australia Capital Markets, LLC (n/k/a nabSecurities, LLC); Nomura Securities International, Inc.; Oppenheimer & Co.; Pershing LLC; Piper Jaffray & Co.; Raymond James & Associates, Inc.; Robert W. Baird & Co.; Royal Bank of Canada Europe Ltd. and RBC Capital Markets, LLC (f/k/a RBC Dain Rauscher Inc.); The Royal Bank of Scotland plc; Ryan Beck & Co.; Samuel A. Ramirez & Co., Inc.; Scotia Capital (USA) Inc.; SG Americas Securities LLC and Société Générale; Stifel, Nicolaus & Company, Incorporated; Stone & Youngberg LLC; Suntrust Capital Markets, Inc.; TD Ameritrade, Inc.; Toussaint Capital Partners, LLC; UBS Securities LLC; Utendahl Capital Group, LLC; Utendahl Capital Partners, LP; Vining-Sparks IBG, LP; Wachovia Capital Markets LLC; Wells Fargo Securities, LLC; Wedbush Morgan Securities, Inc.; William Blair & Company, LLC; and The Williams Capital Group, L.P. (collectively, the "Underwriter Defendants").  Collectively, AIG, the Executive Defendants, the Director Defendants, PwC and the Underwriter Defendants are referred to as the "Defendants."

residential real estate market, including in the Company's credit default swap portfolio and its securities lending program.

On August 5, 2009, Defendants moved to dismiss the Complaint. On October 2, 2009, Lead Plaintiff filed opposition papers and, on December 3, 2009, Defendants filed reply papers. On September 27, 2010, the Court issued an Opinion and Order denying Defendants' motions to dismiss.  On November 24, 2010 and December 10, 2010, Defendants filed their respective answers to the Complaint. Defendants denied the claims and asserted a number of affirmative defenses.

Fact discovery in the Action commenced in November 2010 and was substantially completed in June 2012. During this period, the Parties conducted approximately 45 fact witness depositions and produced and reviewed over 36 million pages of documents.

On April 1, 2011, Lead Plaintiff moved for certification of the Class, and filed a renewed motion on July 6, 2011.  Defendants filed their opposition to the motion on August 17, 2011. On November 2, 2011, the Court terminated the motion without prejudice pending the completion of class certification-related discovery. On March 30, 2012, Lead Plaintiff again filed its motion for class certification. Defendants filed their opposition to the motion on May 24, 2012, and Lead Plaintiff filed its reply on June 22, 2012.

In connection with the motion for class certification, Lead Plaintiff and Defendants retained a total of six experts, each of whom submitted a declaration. Certain of the experts also submitted reply declarations. Each of the experts were deposed, as were 11 other non-expert witnesses.  Further, in connection with the motion for class certification, on June 21, 2012, AIG filed a motion to preclude the declarations, testimony and opinions of Lead Plaintiff's expert.

Lead Plaintiff filed its opposition to the motion on June 29, 2012, and AIG filed its reply on July 20, 2012.

From April 29, 2013 through May 1, 2013, the Court held an evidentiary hearing in connection with Lead Plaintiff's motion for class certification and AIG's motion to preclude the declarations, testimony and opinions of Lead Plaintiff's expert. At the hearing, Lead Plaintiff presented the testimony of Dr. Steven Feinstein and AIG presented the testimony of Dr. Vinita Juneja and Dr. Mukesh Bajaj. On May 1, 2013, the Court also held oral argument on the motions.

On October 12, 2011, PwC, the Underwriter Defendants, and the Director Defendants moved for judgment on the pleadings, seeking the dismissal of certain claims under the Securities Act relating to alleged false and misleading statements of opinion in AIG's financial statements under the Second Circuit's decision in *Fait v. Regions Financial Corp.*, 655 F.3d 105 (2d Cir. 2011). Lead Plaintiff filed its opposition to the motion on December 2, 2011, the moving Defendants filed their reply on December 16, 2011, and Lead Plaintiff filed a sur-reply on December 30, 2011. On September 10, 2012, AIG and the Executive Defendants filed a joinder to the motion. On April 2, 2013, the Court held oral argument on the motion. On April 26, 2013, Court issued a Memorandum Opinion and Order ("April 26, 2013 Order") granting the motion. In its April 26, 2013 Order, the Court dismissed all claims against PwC. The Court also dismissed Lead Plaintiff's Securities Act claims against AIG, its outside directors, the Underwriter Defendants and certain of the Individual Defendants to the extent those claims were based on statements of opinion. On May 14, 2013, the Court entered a Stipulation and Conforming Order that, among other things: specified the particular allegations subject to dismissal as a result of the Court's April 26, 2013 Order; provided that the Stipulation did not

dismiss any claims under the Securities Exchange Act of 1934; reserved all arguments, claims or defenses as to the applicability of the April 26, 2013 Order to Lead Plaintiff's claims under the Securities Exchange Act of 1934; and preserved Lead Plaintiff's appeal rights with respect to the April 26, 2013 Order and the May 14, 2013 Stipulation and Conforming Order.

All claims against PwC were dismissed from this action in the April 26, 2013 Order. As of the date of this Stipulation, the time to appeal from that dismissal has not yet run, and Lead Plaintiff has the right to appeal the dismissal of those claims.

In April 2012, Lead Plaintiff and AIG agreed to a mediation of the Action before the Honorable Layn R. Phillips, a former federal district court judge in the United States District Court for the Western District of Oklahoma. In advance of the mediation, Lead Plaintiff and AIG made several detailed submissions to Judge Phillips. In addition, on July 13, 2012, each side made an extensive ex parte presentation to Judge Phillips, outlining their respective views of the relative merits of the claims and defenses and setting forth their respective positions as to settlement. Then, on July 25 and 26, 2012, Judge Phillips conducted a mediation session in New York City attended by representatives of Lead Plaintiff, AIG and their respective counsel. This mediation did not result in an agreement to resolve the Action. Another mediation before Judge Phillips was held on September 3-4, 2013. In advance of this mediation, Lead Plaintiff and AIG made further written submissions to Judge Phillips. This mediation also did not result in an agreement to resolve the Action.

On November 15, 2013, the U.S. Supreme Court granted certiorari in *Halliburton Co. v. Erica P. John Fund, Inc.* ("*Halliburton II*"), in which the Supreme Court agreed to consider the viability of the fraud-on-the-market presumption of reliance necessary to certify a class of putative securities fraud plaintiffs under Section 10(b) of the Exchange Act and alternatively

what is needed to invoke and rebut the presumption. On December 19, 2013, after letter submissions from the Parties, the Court ordered Lead Plaintiff to show cause why the Action should not be stayed pending the issuance of a decision in *Halliburton II*. On January 6, 2014, Lead Plaintiff submitted its response to the December 19, 2013 order. AIG filed its reply to Lead Plaintiff's response on January 10, 2014, and Lead Plaintiff filed a further response on January 14, 2014. On January 30, 2014, the Court stayed the Action pending a decision in *Halliburton II*.

On June 23, 2014, the Supreme Court decided *Halliburton II*, sustaining the fraud-on-the-market presumption, affirming what a plaintiff must demonstrate to invoke the presumption, and providing that defendants may rebut the presumption at the class certification stage with evidence that the alleged misstatements had no impact on the price of the security at issue. On July 14, 2014, the parties submitted letters to the Court regarding the impact of *Halliburton II* on the Action.

Following the Supreme Court's decision, the Parties reached out to Judge Phillips to explore the potential of renewed settlement discussions. On July 15, 2014, counsel for AIG and Lead Counsel, on behalf of their respective clients, accepted a mediator's proposal from Judge Phillips to settle and release all claims asserted in the Action against the Settling Defendants other than PwC in return for a cash payment of $960,000,000 for the benefit of the Class, subject to the execution of the Stipulation and related papers.

Following this settlement, Lead Plaintiff and PwC agreed to a mediation of the claims that Lead Plaintiff had asserted against PwC on behalf of the Class.  Judge Phillips conducted a mediation session in New York City on July 30, 2014, at which no agreement was reached. However, on August 1, 2014, counsel for PwC and Lead Counsel, on behalf of their respective clients, accepted a mediator's proposal from Judge Phillips to settle and release all claims

asserted in the Action against PwC in return for a cash payment of $10,500,000 for the benefit of the Class, subject to the execution of this Stipulation and related papers.

In Judge Phillips' opinion, "the proposed Settlement is the result of vigorous arm's-length negotiation by all involved Parties.  I believe, based on my extensive discussions with the Parties and the information made available to me both before and during the mediation, that the Settlement was negotiated in good faith and that the Settlement is fair and reasonable."

The Settling Parties entered into the Stipulation and Agreement of Settlement (the "Stipulation") on September 12, 2014.  On _____, 2014, the Court preliminarily approved the Settlement, authorized this Notice to be sent to potential Class Members, and scheduled the Settlement Hearing to consider whether to grant final approval to the Settlement.

 The Defendants deny the claims and contentions alleged by Lead Plaintiff in this Action, deny any liability whatsoever, and maintain that they have meritorious defenses to all claims that were raised or could have been raised in the Action.

| 3. | **Why is this a class action?** |
|----|-------------------------------|

In a class action, one or more people called class representatives (in this case Lead Plaintiff and the additional Plaintiffs identified in the Complaint, on behalf of the Class) sue on behalf of people or entities, known as "Class Members," who have similar claims.  A class action allows one court to resolve in a single case many similar claims that, if brought separately by individuals, might be so small that they would not be economical to litigate and thus would never be brought.  One court resolves the issues for all class members, except for those who exclude themselves, or "opt out," from the Class (see page ___ below).

QUESTIONS?  PLEASE CALL XXX-XXX-XXXX OR OUTSIDE U.S. AND CANADA CALL XXX-XXX-XXXX OR VISIT www.AIG2008Securitiessettlement.com

Page 14 of 48

| 4. | **Why is there a settlement?** |
|---|---|

The Court has not decided the Action in favor of Lead Plaintiff or the Defendants, although it did dismiss certain claims in a ruling issued in April 2013.  The Settlement will end all the claims against the Defendants in the Action and avoid the uncertainties and costs of further litigation and any future trial.  Assuming the Settlement is approved, affected investors will be eligible to receive compensation once the claims made against the Net Settlement Fund are validated, calculated and presented to the Court for payment, rather than after the time it would take to resolve future motions for class certification and summary judgment, conduct additional expert discovery, have a trial and exhaust all appeals.

The Settlement was reached after more than six years of intense litigation.  As described above, Lead Plaintiff, through Lead Counsel, conducted an extensive investigation of the claims and underlying events and transactions relating to the Action, including a review of more than 36 million pages of documents produced by the Parties, and conducting depositions of 45 fact witnesses, including 36 persons affiliated with AIG, the Executive Defendants and Director Defendants, 2 persons affiliated with PwC, 5 persons affiliated with Underwriter Defendants, and 2 persons affiliated with a consultant to AIG and a CDS counterparty.  Finally, Lead Plaintiff and Lead Counsel participated in protracted and hard-fought arm's-length negotiations and mediations before an experienced mediator prior to entering into the Settlement.

The Defendants deny all allegations of liability contained in the Complaint and deny that they are liable to the Class.  The Settlement should not be seen as an admission or concession on the part of the Defendants regarding the truth or validity of the allegations, claims, and/or defenses in the Action, or their fault or liability for alleged damages by any member of the Class.

## WHO IS IN THE SETTLEMENT

| | |
|---|---|
| 5. | **How do I know if I am part of the Settlement?** |

The Court has issued an Order, for the purposes of the Settlement only, that everyone who fits the following description, and is not excluded by definition from the Class (see Question [6] below), is a member of the Class, or a "Class Member," unless they take steps to exclude themselves:

> All Persons (a) who purchased AIG Securities on a U.S. public exchange during the period from March 16, 2006 through September 16, 2008 (the "Class Period") or (b) who purchased or acquired AIG Securities in or traceable to a public offering during the Class Period (the "Class").

Receipt of this Notice does not mean that you are a Class Member.  Please check your records or contact your broker to see if you purchased or otherwise acquired AIG common stock or other AIG securities during the Class Period as described above.  A more detailed listing of the AIG Securities within the Class is included in the Proof of Claim and Release form.

| | |
|---|---|
| 6. | **Are there exceptions to being included in the Class?** |

There are some people who are excluded from the Class by definition. Excluded from the Class are: (i) any Person, to the extent such Person's claims are based on transactions made outside the United States involving securities not listed on a U.S. public exchange; (ii) the Defendants; the Officers and Directors of AIG during the Settlement Class Period; the members of the Immediate Families of the Individual Defendants; any firm, trust, partnership, corporation, or entity in which any Defendant has a majority interest (except that the Settlement Class shall not exclude any Investment Vehicle as defined herein), the legal representatives, heirs, successors-in-interest, or assigns of any such excluded Person; (iii) Maurice R. Greenberg; Howard I. Smith; C.V. Starr & Co., Inc. and Starr International Co., Inc. and their current and

former officers, directors, partners, members, affiliates, subsidiaries, employees, agents, attorneys, insurers, representatives, heirs, successors in interest and assigns, pursuant to the Memorandum of Understanding dated November 25, 2009 relating to *Starr Int'l Co.* v. AIG, No. 4021-09 (Juzgado 16 del Primer Circuito Judicial de Panamá) and *Greenberg v. AIG, Inc., et al.*, No. 09 civ. 1885 (LTS) (S.D.N.Y.); and (iv) any Person that would otherwise be a Settlement Class Member, but properly excludes himself, herself, or itself by submitting a valid and timely request for exclusion from the Settlement Class in accordance with the requirements set forth herein and in the Notice **(see pages __-__ below).**

You are a Class Member only if you (or your broker on your behalf) directly purchased or otherwise acquired AIG common stock or other AIG securities during the Class Period as described above, or if you are a legal representative, heir, successor or assign of someone who did so.

| 7. | **What if I am not sure if I am included?** |
|---|---|

If you are not sure whether you are included, you can ask for free help by writing to or calling the Claims Administrator: *AIG 2008 Securities Litigation*, Claims Administrator, c/o **[insert name and address]**, within the U.S. and Canada: XXX-XXX-XXXX, or outside the U.S. and Canada: XXX-XXX-XXXX, www.AIG2008Securitiessettlement.com.  Or you can fill out and return the Proof of Claim and Release form ("Proof of Claim") described on page __, in Question 10, to see if you qualify.

## THE SETTLEMENT BENEFITS—WHAT YOU MAY RECEIVE

| 8. | **What does the Settlement provide?** |
|---|---|

In the Settlement, AIG has agreed to pay or cause to be paid $960,000,000.00 in cash, and PwC has agreed to pay or cause to be paid $10,500,000.00 in cash, which will be deposited

in an interest-bearing escrow account for the benefit of the Class (the "Settlement Fund").  The Settlement Fund will be divided, after deduction of Court-awarded attorneys' fees and expenses, settlement administration costs and any applicable taxes, among all Class Members who timely submit valid Proofs of Claim that are accepted for payment by the Court ("Authorized Claimants").

| 9. | **How much will my payment be?** |
|---|---|

The Plan of Allocation, discussed on pages [_____] below, explains how the Net Settlement Fund will be allocated between purchasers of AIG common stock and purchasers of other AIG securities, and how claimants' "Recognized Losses" will be calculated.  Your share of the Net Settlement Fund will depend on several things, including: (i) the quantity of AIG common stock or other AIG securities you bought; (ii) how much you paid for such securities; (iii) when you bought such securities; (iv) whether or when you sold such securities (and, if so, for how much you sold them); and (v) the amount of Recognized Losses of other Authorized Claimants.

It is unlikely that you will get a payment for your entire Recognized Loss, given the number of potential Class Members.  After all Class Members have sent in their Proofs of Claim, the payment any Authorized Claimant will get will be their *pro rata* share of the Net Settlement Fund based on the Plan of Allocation approved by the Court.  In general, an Authorized Claimant's share will be his, her or its Recognized Loss divided by the total of all Authorized Claimants' Recognized Losses and then multiplied by the total amount in the Net Settlement Fund.  *See* the Plan of Allocation beginning on page __ for more information.

Once all the Proofs of Claim are processed and claims are calculated, Lead Counsel, without further notice to the Class, will apply to the Court for an order authorizing distribution of

the Net Settlement Fund to the Authorized Claimants.  Lead Counsel will also ask the Court to

approve payment of the Claims Administrator's fees and expenses incurred in connection with

administering the Settlement that have not already been reimbursed.

## HOW YOU GET A PAYMENT—SUBMITTING A PROOF OF CLAIM

| 10.   **How can I get a payment?** |
|---|

To qualify for a payment, you must timely send in a valid Proof of Claim with supporting

documents (DO NOT SEND ORIGINALS of your supporting documents).  A Proof of Claim is

enclosed with this Notice.  You may also get copies of the Proof of Claim on the Internet at the

websites for the Claims Administrator: www.AIG2008Securitiessettlement.com, or Lead

Counsel: www.barrack.com, or www.millerlawpc.com.  Please read the instructions carefully,

fill out the Proof of Claim, include all the documents the form asks for, sign it, and mail it to the

Claims Administrator by First-Class Mail, **postmarked on or before _____, 201_.** *The*

*Claims Administrator needs all of the information requested in the Proof of Claim in order to*

*determine if you are eligible to receive a distribution from the Net Settlement Fund.*

Any Settlement Class Member who fails to submit a Proof of Claim by the date identified

above shall be barred from receiving any distribution from the Net Settlement Fund or payment

pursuant to this Stipulation unless, by order of the Court or the discretion of Lead Counsel, late-

filed Proofs of Claim are accepted, but shall in all other respects be bound by all the terms of this

Stipulation and the Settlement, including the terms of the Judgment and all releases provided for

herein and therein, and will be permanently barred and enjoined from bringing any action, claim

or other proceeding of any kind against any Released Defendants concerning the Released

Plaintiff Claims. All Proofs of Claim received before the motion for the Distribution Order shall

be deemed to be submitted when mailed, if received with a postmark on the envelope and if

mailed by first-class or overnight U.S. Mail and addressed in accordance with the instructions

thereon. In all other cases, the Proof of Claim shall be deemed to have been submitted when

actually received by the Claims Administrator.

| 11. | **When would I get my payment?** |
|---|---|

The Court will hold a hearing on _____, 201_ at __:__ _.m., to decide whether to,

among other things, approve the Settlement and the proposed Plan of Allocation.  All Proofs of

Claim must be submitted to the Claims Administrator, **postmarked on or before**

_____, **201_**.  If the Court approves the Settlement, there may still be appeals which

would delay payment, perhaps for more than a year.  It also takes time for all the Proofs of Claim

to be processed.  Please be patient.

| 12. | **What am I giving up by staying in the Class?** |
|---|---|

Unless you exclude yourself, you will stay in the Class, which means that as of the date

that the Settlement becomes effective under the terms of the Stipulation (the "Effective Date"),

you will forever give up and release all "Released Claims" (as defined below) against the

"Released Defendant Parties" (as defined below).  You will not in the future be able to bring a

case asserting any Released Claim against the Released Defendant Parties.

(a)       "Released Plaintiffs' Claims" means any and all claims, rights, actions,

issues, controversies, causes of action, duties, obligations, demands, actions, debts, sums of

money, suits, contracts, agreements, promises, damages, and liabilities of every kind, nature, and

description, including both known claims and Unknown Claims (defined in sub-paragraph e,

below), whether arising under federal, state, or foreign law, or statutory, common, or

administrative law, or any other law, rule, or regulation, whether asserted as claims, cross-

claims, counterclaims, or third-party claims, whether fixed or contingent, choate or inchoate,

accrued or not accrued, matured or unmatured, liquidated or un-liquidated, perfected or

unperfected, whether class or individual in nature, that previously existed, currently exist, or that

exist as of the date of the Court approval of the Settlement or that may arise in the future, that

Lead Plaintiff or any other Settlement Class Member asserted or could have asserted in the

Action or any other action or in any forum (including, without limitation, any federal or state

court, or in any other court, arbitration proceeding, administrative agency, or other forum in the

United States or elsewhere), that in any way arise out of, are based upon, relate to, or concern the

claims, allegations, transactions, facts, events, acts, disclosures, statements, representations, or

omissions or failures to act alleged, set forth, referred to, involved in, or which could have been

raised in the Action or any of the complaints filed or proposed to be filed therein, and that in any

way arise out of, are based upon, relate to, or concern the holding, ownership, purchase,

acquisition, disposition, or sale of, or other transaction in AIG Securities during the Settlement

Class Period, or the purchase or acquisition of AIG Securities in or traceable to an offering

during the Settlement Class Period, including, without limitation, claims that arise out of or

relate to any disclosures, SEC filings, press releases, investor calls, registration statements,

offering memoranda, web postings, presentations or any other statements by AIG or any other of

the Defendants during the Settlement Class Period. Released Plaintiff Claims do not include

claims to enforce the Settlement. For the avoidance of doubt, Released Claims do not include

claims asserted in *In re American International Group, Inc. ERISA Litigation II*, No. 08 civ.

5722 (LTS)(DCF) or *Starr Int'l Co., et al. v The United States*, No. 11 civ. 779 (TCW)(Fed. Cl.)

      (b)     "AIG Securities" means any and all securities issued by AIG, whether

debt or equity securities, including, without limitation, common stock, preferred stock, bonds,

notes and debentures; and including, without limitation, each of the securities referenced in paragraphs 591 and 592 of the Complaint.

(c) "Released Defendants' Claims" means all claims, including both known claims and Unknown Claims (as defined below), whether arising under federal, state, common, or administrative law, or any other law, that the Released Defendants could have asserted against any of the Released Plaintiffs that arise out of or relate to the commencement, prosecution, or settlement of the Action (other than claims to enforce the Settlement or the Judgment).

(d) "Released Defendant Parties" means any of the following: (a) Defendants; (b) the Defendants' respective present and former parents, affiliates, subsidiaries, divisions, general partners, limited partners, limited liability partners, and any Person in which any Defendant has or had a controlling interest; and (c) the present and former Immediate Family, heirs, principals, owners, trustees, trusts, executors, administrators, predecessors, successors, assigns, members, agents, subsidiaries, employees, associates, Officers, managers, Directors, general partners, limited partners, bankers, attorneys, accountants, auditors, representatives, estates, divisions, advisors, estate managers, indemnifiers, insurers, and reinsurers of each of the Persons listed in subpart (a) or (b) of this definition. "Released Defendants" shall also include any entity or partnership (whether or not incorporated) which carries on business under a name which includes all or part of the PricewaterhouseCoopers name or is otherwise (directly or indirectly) within the worldwide network of PricewaterhouseCoopers firms, including PricewaterhouseCoopers International Limited and any member firm, network firm, specified subsidiary or connected firm of PricewaterhouseCoopers International Limited.

(e) The Released Plaintiffs' Claims and Released Defendants' Claims include any and all claims that the Releasing Parties do not know or suspect to exist in his, her, or its

favor at the time of the release of the Released Claims, which if known by him, her, or it might

have affected his, her, or its decision(s) with respect to the Settlement, including, with respect to

Lead Plaintiff or any other Settlement Class Member, the decision to exclude himself, herself, or

itself from the Settlement Class, or to object or not to object to the Settlement (collectively,

"Unknown Claims"). With respect to any and all Released Claims, the Settling Parties stipulated

and agreed that, upon the Effective Date, each Releasing Party shall expressly, and shall be

deemed to have, and by operation of the Judgment shall have, to the fullest extent permitted by

law, expressly waived and relinquished any and all provisions, rights, and benefits conferred by

any law of any state or territory of the United States, or principle of common law, which is

similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or
> suspect to exist in his or her favor at the time of executing the release, which if
> known by him or her must have materially affected his or her settlement with the
> debtor.

The Settling Parties further acknowledged that a Releasing Party may hereafter discover facts,

legal theories, or authorities in addition to or different from those which he, she, or it now knows

or believes to be true with respect to the subject matter of the Released Claims, but that the

Settling Parties nevertheless intend to and shall expressly, fully, finally, and forever settle and

release, and upon the Effective Date and by operation of the Judgment each other Releasing

Party shall be deemed to have, and shall have, settled and released, fully, finally, and forever,

any and all Released Claims as applicable, known or unknown, suspected or unsuspected,

contingent or non-contingent, whether or not concealed or hidden, which have existed or now or

will exist, upon any theory of law or equity, including, but not limited to, conduct which is

negligent, reckless, intentional, with or without malice, or a breach of any duty, law, or rule,

without regard to the subsequent discovery or existence of such different or additional facts,

legal theories, or authorities. The Settling Parties acknowledged, and agreed that each other

Releasing Party by operation of law shall be deemed to have acknowledged, that the inclusion of

"Unknown Claims" in the definition of Released Plaintiff Claims and Released Defendant

Claims was separately bargained for and was a material and essential element of the Settlement.

## <u>EXCLUDING YOURSELF FROM THE SETTLEMENT</u>

If you want to keep any right you may have to sue or continue to sue the Released

Defendant Parties on your own about the Released Plaintiffs' Claims, then you must take steps to

exclude yourself from the Class.  Excluding yourself is known as "opting out" of the Class.  The

Defendants may withdraw from and terminate the Settlement if potential Class Members who

purchased in excess of a certain amount of AIG common stock and other AIG Securities opt out

from the Class.

If you timely and properly request exclusion from the Class, you will retain any rights

you have to sue the Defendants yourself with respect to the Released Plaintiffs' Claims to the

extent those claims are viable under the statute of limitations applicable to claims under the

Securities Act and/or the Exchange Act.  You should note that pursuant to a recent decision of

the United States Court of Appeals for the Second Circuit, entitled *Police & Fire Ret. Sys. v.*

*IndyMac MBS, Inc.*, Docket Nos. 11-2998-cv(L), 11-3036-cv(CON) (2d Cir. 2013) "(*IndyMac*")

(a copy of this decision may be viewed at www.AIG2008Securitiessettlement.com), if you

exclude yourself from the Class, you may forfeit any claims you may have against the

Defendants relating to your purchases of AIG securities during the Class Period because the 3-

year statute of repose under the Securities Act (which is 3 years from the date the securities were

*bona fide* offered to the public) and the 5-year statute of repose under the Exchange Act (which

is 5 years from the date securities were purchased) has otherwise expired.  It is therefore possible

that only members of the Class whose claims are tolled by virtue of their continuing membership in the Class are able to pursue those claims against the Defendants under the law currently applicable to this Action.  On March 10, 2014, the United States Supreme Court granted the plaintiff's petition for certiorari in *IndyMac*.  The Supreme Court is scheduled to hear oral argument in the case on October 6, 2014.  There is no way to predict whether the Supreme Court will affirm the *IndyMac* decision.  However, if the *IndyMac* decision is affirmed, it may affect your rights in the event you exclude yourself from the Class.  Before you decide to request exclusion from the Class, you are urged to consult your counsel, at your own expense, to fully evaluate your rights and the consequences of excluding yourself from the Class.

| 13. | **How do I "opt out" (exclude myself) from the proposed Settlement?** |
|---|---|

To "opt out" (exclude yourself) from the Class, you must deliver or mail a signed letter by First-Class Mail stating that you "request exclusion from the Class in *AIG 2008 Securities Litigation*, 08-CV-4772-LTS-DCF (S.D.N.Y.)."  Your letter ***must*** state the date(s), price(s) and number of shares or units of all your purchases, acquisitions and sales of AIG securities during the Class Period, and your holdings of such securities as of the close of business on September 16, 2008.  This information is needed to determine whether you are a Class Member.  In addition, you must include your name, address, telephone number, and your signature.  You must submit your request for exclusion addressed to *AIG 2008 Securities Litigation,* Claims Administrator, EXCLUSIONS, c/o **[insert name and address]**.  The request for exclusion must be **received on or before _____, 2014**.  **You cannot exclude yourself or opt out by telephone or by email.**  Your request for exclusion must comply with these requirements in order to be valid.  If you are excluded, you will not be eligible to get any payment from the

QUESTIONS?  PLEASE CALL XXX-XXX-XXXX OR OUTSIDE U.S. AND CANADA CALL XXX-XXX-XXXX OR VISIT www.AIG2008Securitiessettlement.com

Page 25 of 48

Settlement proceeds and you cannot object to the Settlement, the proposed Plan of Allocation or the application for attorneys' fees and reimbursement of expenses.

| 14. | **If I do not exclude myself, can I sue the Defendants and the other Released Defendant Parties for the same thing later?** |
|---|---|

No.  Unless you exclude yourself, you give up any rights you may have to sue the Defendants and the other Released Defendant Parties for all Released Claims.  If you have a pending lawsuit against any of the Defendants, speak to your lawyer in that case **immediately**. You must exclude yourself from *this* Class to continue your own lawsuit.  Remember, the exclusion deadline is _____, 2014.

| 15. | **If I exclude myself, can I get money from the proposed Settlement?** |
|---|---|

No.  If you exclude yourself, do not send in a Proof of Claim to ask for any money, as any such Proof of Claim will be rejected.

## THE LAWYERS REPRESENTING YOU

| 16. | **Do I have a lawyer in this case?** |
|---|---|

The law firms of Barrack Rodos & Bacine and The Miller Law Firm, P.C. were appointed to represent all Class Members.  These lawyers are called Lead Counsel.  You will not be separately charged for the services of these lawyers.  The Court will determine the amount of Lead Counsel's fees and expenses.  Any fees and expenses awarded by the Court will be paid from the Settlement Fund.  If you want to be represented by your own lawyer, you may hire one at your own expense.

| 17. **How will the lawyers be paid?** |
|---|

Lead Counsel have not received any payment for their services in pursuing the claims against the Defendants on behalf of the Class since the Action was commenced in 2008, nor have they been reimbursed to this point for any of their litigation expenses. At the Settlement Hearing described below, or at such other time as the Court may order, Lead Counsel will ask the Court to award them, from the Settlement Fund, attorneys' fees of no more than 12% of the Settlement Fund, plus interest from the date of funding at the same rate as earned by the Settlement Fund, and to reimburse them for their litigation expenses, such as the cost of experts, that they have incurred in pursuing the Action. The request for reimbursement of expenses will not exceed $6 million, plus interest on the expenses from the date of funding at the same rate earned by the Settlement Fund. Lead Counsel's overall request for reimbursement of litigation expenses will include a request for an award to Lead Plaintiff for reimbursement of its reasonable costs and expenses (including lost wages) directly related to its representation of the Class, pursuant to the Private Securities Litigation Reform Act of 1995.

## OBJECTING TO THE SETTLEMENT

| 18. **How do I tell the Court that I do not like something about the proposed Settlement?** |
|---|

If you are a Class Member and do not exclude yourself ("opt out") in accordance with Section 13 above, you can object to any part of the Settlement, the proposed Plan of Allocation, and/or the application by Lead Counsel for attorneys' fees and reimbursement of expenses. You must write to the Court setting out your objection, giving reasons why you think the Court should not approve any part or all of the Settlement, the proposed Plan of Allocation, or the attorneys' fee and expense request.

To object, you must send a signed letter stating that you object to the proposed Settlement in the case known as: *AIG 2008 Securities Litigation,* Master File No. 08-CV-4772-LTS-DCF (S.D.N.Y.).  You must include your name, address, telephone number and your signature; identify the date(s), price(s) and number of shares and units of all purchases, acquisitions and sales of AIG securities during the Class Period.  This information is needed to demonstrate your membership in the Class.  Your letter must also state the reasons why you object to the Settlement, the proposed Plan of Allocation, or the attorneys' fee and expense request, including any legal support for your objection and copies of any papers, briefs, or other documents upon which any objection is based.

Unless otherwise ordered by the Court, any Class Member who does not object in the manner described in this Notice will be deemed to have waived any objection and will not be able to appear separately at the Settlement Hearing or to make any objection to the Settlement, the proposed Plan of Allocation, and/or the application for attorneys' fees and reimbursement of expenses.  If you elect to "opt out," you will not be entitled to share in the Settlement proceeds and will not have a right to make an objection to the Settlement, proposed Plan of Allocation and/or the application for attorneys' fees and reimbursement of expenses.

Your objection must be filed with the United States District Court for the Southern District of New York by hand or by mail such that it is **received on or before _____, 201_,** at the address set forth below.  You must also serve the papers on Lead Counsel and Defendants' Counsel at the addresses set forth below so that the papers are **received on or before _____, 201_.**

**COURT:**

CLERK OF THE COURT
United States District Court for the
   Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

**DESIGNATED COUNSEL FOR
DEFENDANTS:**

WEIL, GOTSHAL & MANGES LLP
Joseph S. Allerhand
Robert F. Carangelo
Stacy Nettleton
767 Fifth Avenue
New York, NY 10153

**LEAD COUNSEL:**

BARRACK, RODOS & BACINE
Jeffrey W. Golan
Robert A. Hoffman
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103

THE MILLER LAW FIRM, P.C.
E. Powell Miller
Marc L. Newman
950 West University Drive, Suite 300
Rochester, MI 48307

| 19. | **What is the difference between objecting and requesting exclusion?** |
|---|---|

Objecting is simply telling the Court that you do not like something about the proposed

Settlement.  You can still recover from the Settlement.  You can object only if you stay in the

Class.  Excluding yourself is telling the Court that you do not want to be part of the Class.  If you

exclude yourself, you have no right to object because the Action no longer affects you and you

are no longer a member of the Class.

## THE COURT'S SETTLEMENT HEARING

| 20. | **When and where will the Court decide whether to approve the proposed Settlement?** |
|---|---|

The Court will hold a Settlement Hearing at ___ _.m. on _____, 201_, in the

United States District Court for the Southern District of New York, Daniel Patrick Moynihan

United States Courthouse, 500 Pearl Street, Courtroom 12D, New York, NY 10007-1312.  At

this hearing, the Court will consider whether the Settlement is fair, reasonable and adequate.  The

Court also will consider the proposed Plan of Allocation for the proceeds of the Settlement and the applications for attorneys' fees and reimbursement of expenses. The Court will take into consideration any written objections filed in accordance with the instructions set out above in the answer to Question 18. We do not know how long it will take the Court to make these decisions.

You should also be aware that the Court may change the date and time of the Settlement Hearing without another notice being sent to Class Members. If you want to come to the hearing, you should check with Lead Counsel before coming to be sure that the date and/or time has not changed.

| 21. | **Do I have to come to the hearing?** |
|-----|----------------------------------------|

No. Lead Counsel will answer any questions the Court may have. But, you are welcome to come at your own expense. If you validly submit an objection, it will be considered by the Court. You do not have to come to Court to talk about it.

| 22. | **May I speak at the hearing and submit additional evidence?** |
|-----|----------------------------------------------------------------|

If you file an objection, you may ask the Court for permission to speak at the Settlement Hearing. To do so, you must include with your objection (*see* Question 18 above) a statement that it is your "notice of intention to appear in *AIG 2008 Securities Litigation*, 08-CV-4772-LTS-DCF (S.D.N.Y.)." Persons who object and want to present evidence at the Settlement Hearing must also include in their written objection the identity of any witness they may call to testify and exhibits they intend to introduce at the Settlement Hearing. You cannot speak at the hearing if you excluded yourself from the Class or if you have not provided written notice of your intention to speak at the Settlement Hearing according to the procedures described above and in the answer to Question 18.

## IF YOU DO NOTHING

| | |
|---|---|
| 23. | **What happens if I do nothing at all?** |

If you do nothing, you will get no money from this Settlement and you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the Defendants and the Released Defendant Parties about the Released Claims in this case.  To be eligible to share in the Net Settlement Fund you must submit a Proof of Claim (*see* Question 10).  To start, continue or be a part of any *other* lawsuit against the Defendants and the other Released Defendant Parties about the Released Claims in this case you must exclude yourself from this Class (*see* Question 13).

## GETTING MORE INFORMATION

| | |
|---|---|
| 24. | **Are there more details about the proposed Settlement and the lawsuit?** |

This Notice summarizes the proposed Settlement.  More details are in the Stipulation and Agreement of Settlement, dated as of September 12, 2014 (the "Stipulation").  You may review the Stipulation filed with the Court and all documents filed in the Action during business hours at the Office of the Clerk of the United States District Court for the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007-1312.

You also can call the Claims Administrator within the U.S. and Canada: XXX-XXX-XXXX, or outside the U.S. and Canada call: XXX-XXX-XXXX; call Lead Counsel Barrack Rodos & Bacine at (215) 963-0600 or The Miller Law Firm, P.C. at (248) 841-2200; write to *AIG 2008 Securities Litigation*, 08-CV-4772-LTS-DCF (S.D.N.Y.), Claims Administrator, c/o **[insert name and address]**; or visit the websites www.AIG2008Securitiessettlement.com, www.barrack.com or www.millerlawpc.com, where you can download copies of this Notice and

the Proof of Claim.  **Please do not call the Court, the Defendants or their counsel with**

**questions about the Settlement.**

**PLAN OF ALLOCATION OF NET SETTLEMENT FUND**

**I.      GENERAL PROVISIONS**

The Net Settlement Fund shall be distributed to each Class Member who timely submits a

valid Proof of Claim to the Claims Administrator that is accepted for payment by the Court

("Authorized Claimant").  The Net Settlement Fund will not be distributed to Authorized

Claimants until the Court has approved the Settlement and a plan of allocation, and the time for

any petition for rehearing, appeal or review, whether by *certiorari* or otherwise, of the order(s)

approving the Settlement and the plan of allocation has expired.  The Defendants are not entitled

to get back any portion of the Settlement Fund once the Effective Date of the Settlement has

occurred.  The Defendants shall not have any obligation or responsibility for, interest in, or

liability whatsoever with respect to the administration of the Settlement or disbursement of the

Net Settlement Fund or the plan of allocation.

The Plan provides that Authorized Claimants will be eligible to participate in the

distribution of the Net Settlement Fund only if Authorized Claimants purchased one of the

seventy AIG securities listed at pages _-_ of the Proof of Claim form ("Eligible Securities")

during the Class Period.

Approval of the Settlement is independent from approval of the plan of allocation.  Any

determination with respect to the plan of allocation will not affect the Settlement, if approved.

The Plan of Allocation set forth herein is the Plan that is being proposed by Lead Plaintiff

and Lead Counsel to the Court for approval.  The Court may approve this Plan as proposed or it

may modify the Plan of Allocation without further notice to the Class.  Any orders regarding a

QUESTIONS?  PLEASE CALL XXX-XXX-XXXX OR OUTSIDE U.S. AND CANADA CALL XXX-XXX-XXXX OR VISIT www.AIG2008Securitiessettlement.com

Page 32 of 48

modification of the Plan of Allocation will be posted on the Settlement website,

www.AIG2008Securitiessettlement.com, and Lead Counsel's websites, identified above.

Payment pursuant to the Plan approved by the Court shall be final and conclusive against all Class members.  No person shall have any claim or any kind against the Released Defendant Parties or their counsel with respect to the administration of the Settlement, including the Plan of Allocation.  No person shall have any claim against Lead Plaintiff, Lead Counsel, or the Claims Administrator or other agent designated by Lead Counsel arising from the Settlement and distributions made substantially in accordance with the Stipulation, the Plan of Allocation, or further orders of the court.  Lead plaintiff, the Defendants, their respective counsel, Lead Plaintiff's damages expert, and all other released parties shall have no responsibility or liability whatsoever for the investment or distribution of the Settlement Fund consistent with the terms of the Stipulation, the Plan of Allocation, or the determination, administration, calculation, or payment of any proof of claim form or nonperformance of the claims administrator, the payment or withholding of taxes, expenses, or costs incurred in connection with the taxation of the settlement fund, or any losses suffered by, or fluctuations in the value of, the Settlement Fund.

In developing the Plan of Allocation with respect to AIG common stock purchasers, Lead Plaintiffs' damages expert calculated the maximum potential amount of estimated alleged artificial inflation in the per share closing prices of AIG common stock that purportedly was proximately caused by Defendants' alleged misrepresentations and material omissions.  In performing this calculation, Lead Plaintiff's damages expert considered price changes in AIG common stock in reaction to certain public announcements regarding AIG in which such misrepresentations and material omissions were alleged to have been revealed to the market (which are termed "corrective disclosures"), adjusting for price changes that were attributable to

market or industry forces.  Because corrective disclosures reduced the artificial inflation in stages over the course of the class period, the damages suffered by any particular claimant depends on when that claimant purchased and sold shares, or retained shares beyond the end of the Class Period.

With respect to the AIG securities at issue in the case other than AIG common stock, Lead Plaintiffs' damages expert calculated the maximum potential *prima facie* damages under applicable provisions of the Securities Act.  For these securities, a Recognized Loss will be calculated as set forth below for each purchase or other acquisition of an Eligible Security during the Class Period. The calculation of Recognized Loss will depend upon several factors, including (i) which security was purchased or otherwise acquired, and in what amounts; (ii) when the security was purchased or otherwise acquired; (iii) whether the security was sold, and if so, when they were sold, and for what amounts; and (iv) whether the security was redeemed, called or held to maturity.  The "value" of a security on the date on which a complaint was first filed alleging claims under Section 11 of the Securities Act is relevant for purposes of calculating damages for securities still held as of that date under Section 11(e).  Thus, under certain conditions, "value" may be measured by the closing price on October 9, 2008, which is the date the first such complaint was filed.  Consequently, in order to fairly allocate the Net Settlement Fund, for the securities that are the subject of claims under Section 11, the October 9, 2008 Closing Price shall be utilized for certain purposes in measuring the "value" of the securities.

The Recognized Loss formulas within the Plan of Allocation with respect to AIG common stock and other AIG securities are not indicative of damages that Lead Plaintiff may have sought to present to a jury, had the case gone to trial, and do not take into account certain defenses that were and might have been raised by Defendants had the case progressed to

summary judgment motions and/or trial.  To the contrary, the Recognized Loss formulas are intended solely for purposes of the Plan of Allocation, and cannot and should not be binding upon Lead Plaintiff or any Settlement Class Member for any other purpose.

A "Recognized Loss" will be calculated as described in Section II below for each purchase or other acquisition of AIG securities that are listed in the Proof of Claim form, and for which adequate documentation is provided.

The objective of the Plan of Allocation is to equitably distribute the Net Settlement Fund to those class members who suffered economic losses as a result of the alleged misrepresentations and omissions of the defendants, as opposed to losses caused by market or industry factors or other company-specific factors.

**(a)  Eligible Securities**

The AIG securities ("Eligible Securities") for which an Authorized Claimant may be entitled to receive a distribution from the Net Settlement Fund consist of the seventy securities listed at pages _-_ in the Proof of Claim form.

(b)     **Overall Allocation of the Net Settlement Fund**

For purposes of this section of the Plan of Allocation, the term "Net AIG Settlement Amount" shall be the portion of the Net Settlement Fund attributable to the AIG Settlement Amount, and the term "Net PwC Settlement Amount" shall be the portion of the Net Settlement Fund attributable to the PwC Settlement Amount.  As previously described in the Notice, the Net Settlement Fund is the remainder of the Settlement Fund after deduction of Court-awarded attorneys' fees and expenses, settlement administration costs and any applicable taxes.

The Net Settlement Fund will be allocated to Authorized Claimants as follows: (a) purchasers of AIG common stock shall be allocated eighty percent (80%) of the Net AIG Settlement Amount; and (b) purchasers of Eligible Securities other than common stock shall be allocated twenty percent (20%) of the Net AIG Settlement Amount and 100% of the Net PwC Settlement Amount.  Among other factors, in formulating the overall allocation, Lead Plaintiff considered the maximum potential damages of each group of purchasers within the Class, and the fact that the only claims asserted against PwC in the Action were on behalf of purchasers during the Class Period of certain of the Eligible Securities other than AIG common stock.

(c)     **Weighting of Recognized Loss Calculations for AIG Common Stock Purchasers**

During the course of proceedings in the Action, including through the discovery phase of the case, the briefing and evidentiary hearing on Lead Plaintiff's motion for class certification, and the Mediation process, Lead Plaintiff continually assessed the relative strengths and weaknesses of the claims made on behalf of purchasers of the Eligible Securities over the course of the Class Period.  Based on this analysis, the Plan provides that purchases of AIG common stock during the time period from August 7, 2007 through February 28, 2008, shall be fully valued based on the Recognized Loss formula set forth below in Table-1, and that purchases of

AIG Common Stock during the time period from March 16, 2006 through August 6, 2007 and from February 29, 2008 through September 16, 2008 shall be valued at eighty percent (80%) of the Recognized Loss formula set forth below in Table-1.  No similar adjustments are made for purchasers of Eligible Securities other than AIG common stock because, among other reasons, the prices of such securities remained relatively constant (at or near par) until the end of the Class Period.

## II.    RECOGNIZED LOSS FORMULAS

(i)    The proceeds of the settlement will be distributed to Authorized Claimants in accordance with this Plan of Allocation (the "Plan") or as otherwise ordered by the Court.  The amount to be distributed to Authorized Claimants will be determined as follows:  first, the expenses of the litigation (including taxes, approved costs and fees) will be deducted from the Settlement Amount to arrive at the Net Settlement Fund.  The Net Settlement Fund plus the interest earned thereon shall be distributed to Authorized Claimants.

(ii)    An Authorized Claimant's pro rata share of the Net Settlement Fund will be determined based upon the Authorized Claimant's "Recognized Loss" (as described below in paragraphs __-__), and the overall allocation of the Net Settlement Fund between purchasers of AIG common stock and purchasers of other AIG securities that were issued in public offerings during the Class Period.

(iii)    General Provision:  Subject to Court approval or modification without further notice, an Authorized Claimant's Recognized Loss will be calculated in accordance with the following general provision:

a)    To the extent there are sufficient funds in the applicable portion of the Net Settlement Fund, based on the overall allocation stated above, each

QUESTIONS?  PLEASE CALL XXX-XXX-XXXX OR OUTSIDE U.S. AND CANADA CALL XXX-XXX-XXXX OR VISIT www.AIG2008Securitiessettlement.com

Page 37 of 48

Authorized Claimant will receive an amount equal to the Authorized Claimant's Recognized Loss, as defined below.

    *(i)*    If, however, the amount in the Net Settlement Fund is not sufficient to permit payment of the total Recognized Loss of each Authorized Claimant, then each Authorized Claimant shall be paid the percentage of the Net Settlement Fund that each Authorized Claimant's Recognized Loss bears to the total of the Recognized Losses of all Authorized Claimants ("pro rata share") within the overall allocation pool for that Authorized Claimant's purchases. Payment in this manner shall be deemed conclusive against all Authorized Claimants.

    *(ii)*    In light of the costs of administering and paying very small claims, no payment will be made to any Authorized Claimant if the payment to that Claimant would be less than $10.  The calculation of the pro rata share distribution amounts will not include such claims.

b)    The Claims Administrator shall determine each Authorized Claimant's pro rata share of the applicable portion of the Net Settlement Fund within the overall allocation pool for that Authorized Claimant's purchases based on the calculations described below (the "Recognized Loss Formula") and the overall allocation of the Net Settlement Fund.

c)    The Recognized Loss Formula is not intended to be an estimate of the amount that an Authorized Claimant might have been able to recover after

a trial, nor is it an estimate of the amount that will be paid to Authorized Claimants pursuant to the Settlement.  The Recognized Loss Formula is the basis upon which the Net Settlement Fund will be proportionately allocated to the Authorized Claimants.

d) To calculate a Claimant's Recognized Loss, sales of AIG Securities during the Class Period will be matched to earlier purchases that were made during the Class Period, in chronological order, on a Last In, First Out ("LIFO") basis.  If a Class Member has more than one purchase/acquisition or sale of AIG common stock and/or other AIG securities, all purchases/acquisitions and sales of the same type of security (i.e., common stock, corporate units, a particular bond, subordinated debenture, or note) shall be matched on a LIFO basis.

e) Any person or entity that sold AIG common stock "short" shall have no Recognized Loss with respect to purchases during the Relevant Period to cover short sales.  Claimants must identify all short sales and purchases to cover short sales on the Claimant's Proof of Claim form.  The date of covering a "short sale" is deemed to be the date of purchase or other acquisition of AIG common stock.  The date of a "short sale" is deemed to be the date of sale of AIG common stock.  The Recognized Loss for "short sales" is zero.  In the event that there is an opening short position in AIG common stock, the earliest Class Period purchases shall be matched against such opening short position, and not be matched against sales, until that short position is fully covered.

QUESTIONS?  PLEASE CALL XXX-XXX-XXXX OR OUTSIDE U.S. AND CANADA CALL XXX-XXX-XXXX OR VISIT www.AIG2008Securitiessettlement.com

Page 39 of 48

f)      The price per share, purchased or sold, shall be exclusive of all commissions, taxes and fees.  The purchase or sale date of any AIG common stock or other securities is the trade date, not the settlement date.

g)      The Recognized Loss for common stock is based on the per share amounts of alleged maximum artificial inflation present in AIG's stock price from March 16, 2006 through September 16, 2008.

h)      The Recognized Loss for other securities is based on the per unit amounts stated in Exhibit-2 below for the respective securities from March 16, 2006 through September 16, 2008.

An Authorized Claimant's Recognized Loss will be calculated as follows:

**AIG Common Stock**

Based on the foregoing, and for purposes of this Settlement and Plan of Allocation only, Recognized Loss will be calculated as follows:

For each share of AIG common stock purchased or otherwise acquired during any of the periods shown below in Table-1, and:

a.  sold within the same period, the Recognized Loss per share is zero.
b.  sold in a subsequent period, the Recognized Loss per share is the lesser of:
    i.   the  inflation per share shown below in Table 1; or
    ii.  the purchase price per share less the sales price per share.
c.  retained beyond September 17, 2008, the Recognized Loss per share is the lesser of:
    i.   the  inflation per share shown in Table 1; or
    ii.  the purchase price per share less $2.38.[3]

---

[3] Pursuant to Section 21(D)(e)(1) of the Private Securities Litigation Reform Act of 1995, "in any private action arising under this chapter in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." $2.38 was the mean (average) daily closing trading price of AIG common stock during the 90-day period

TABLE-1:   INFLATION PER SHARE

| Purchase Date | Sale Date | | | | | | | | Retained Beyond 9/17/2008 |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 3/17/2006-11/7/2007 | 11/8/2007-2/10/2008 | 2/11/2008-2/28/2008 | 2/29/2008-5/8/2008 | 5/9/2008-8/6/2008 | 8/7/2008-9/12/2008 | 9/15/2008 | 9/16/2008 | |
| 3/17/2006-11/7/2007 | $0.00 | $2.16 | $7.16 | $12.00 | $15.68 | $20.09 | $27.06 | $28.44 | $30.25 |
| 11/8/2007-2/10/2008 | | $0.00 | $5.00 | $9.84 | $13.52 | $17.93 | $24.90 | $26.28 | $28.09 |
| 2/11/2008-2/28/2008 | | | $0.00 | $4.84 | $8.52 | $12.93 | $19.90 | $21.28 | $23.09 |
| 2/29/2008-5/8/2008 | | | | $0.00 | $3.68 | $8.09 | $15.06 | $16.44 | $18.25 |
| 5/9/2008-8/6/2008 | | | | | $0.00 | $4.41 | $11.38 | $12.76 | $14.57 |
| 8/7/2008-9/12/2008 | | | | | | $0.00 | $6.97 | $8.35 | $10.16 |
| 9/15/2008 | | | | | | | $0.00 | $1.38 | $3.19 |
| 9/16/2008 | | | | | | | | $0.00 | $1.81 |

**TABLE-2:  AVERAGE CLOSING PRICES FOR THE 90 DAYS AFTER THE CLASS PERIOD**

| Sale Date | Closing Price per Share | Avg. Closing Price per Share |
| --- | --- | --- |
| 09/17/2008 | $2.05 | $2.05 |
| 09/18/2008 | $2.69 | $2.37 |
| 09/19/2008 | $3.85 | $2.86 |
| 09/22/2008 | $4.72 | $3.33 |
| 09/23/2008 | $5.00 | $3.66 |
| 09/24/2008 | $3.31 | $3.60 |
| 09/25/2008 | $3.02 | $3.52 |
| 09/26/2008 | $3.15 | $3.47 |

beginning on September 17, 2008 and ending on December 12, 2008.  For common stock retained after September 16, 2008, but sold before December 12, 2008, the Recognized Loss per share is the lesser of: (i) the inflation per share shown in Table 1; or (ii) the purchase price less the Average Closing Price per Share on the Sale Date, as shown in Table 2.

QUESTIONS?  PLEASE CALL XXX-XXX-XXXX OR OUTSIDE U.S. AND CANADA CALL XXX-XXX-XXXX OR VISIT www.AIG2008Securitiessettlement.com

| Sale Date | Closing Price per Share | Avg. Closing Price per Share |
|---|---|---|
| 09/29/2008 | $2.50 | $3.37 |
| 09/30/2008 | $3.33 | $3.36 |
| 10/01/2008 | $3.95 | $3.42 |
| 10/02/2008 | $4.00 | $3.46 |
| 10/03/2008 | $3.86 | $3.49 |
| 10/06/2008 | $3.87 | $3.52 |
| 10/07/2008 | $3.51 | $3.52 |
| 10/08/2008 | $3.19 | $3.50 |
| 10/09/2008 | $2.39 | $3.43 |
| 10/10/2008 | $2.33 | $3.37 |
| 10/13/2008 | $2.57 | $3.33 |
| 10/14/2008 | $2.80 | $3.30 |
| 10/15/2008 | $2.43 | $3.26 |
| 10/16/2008 | $2.43 | $3.23 |
| 10/17/2008 | $2.10 | $3.18 |
| 10/20/2008 | $2.31 | $3.14 |
| 10/21/2008 | $2.21 | $3.10 |
| 10/22/2008 | $2.11 | $3.06 |
| 10/23/2008 | $2.10 | $3.03 |
| 10/24/2008 | $1.70 | $2.98 |
| 10/27/2008 | $1.35 | $2.93 |
| 10/28/2008 | $1.83 | $2.89 |
| 10/29/2008 | $1.55 | $2.85 |
| 10/30/2008 | $1.63 | $2.81 |

| Sale Date | Closing Price per Share | Avg. Closing Price per Share |
|---|---|---|
| 10/31/2008 | $1.91 | $2.78 |
| 11/03/2008 | $2.14 | $2.76 |
| 11/04/2008 | $2.41 | $2.75 |
| 11/05/2008 | $2.06 | $2.73 |
| 11/06/2008 | $1.87 | $2.71 |
| 11/07/2008 | $2.11 | $2.69 |
| 11/10/2008 | $2.28 | $2.68 |
| 11/11/2008 | $2.26 | $2.67 |
| 11/12/2008 | $2.03 | $2.66 |
| 11/13/2008 | $2.06 | $2.64 |
| 11/14/2008 | $2.08 | $2.63 |
| 11/17/2008 | $1.91 | $2.61 |
| 11/18/2008 | $1.95 | $2.60 |
| 11/19/2008 | $1.56 | $2.58 |
| 11/20/2008 | $1.44 | $2.55 |
| 11/21/2008 | $1.60 | $2.53 |
| 11/24/2008 | $1.77 | $2.52 |
| 11/25/2008 | $1.77 | $2.50 |
| 11/26/2008 | $1.95 | $2.49 |
| 11/28/2008 | $2.01 | $2.48 |
| 12/01/2008 | $1.65 | $2.47 |
| 12/02/2008 | $1.87 | $2.45 |
| 12/03/2008 | $2.01 | $2.45 |
| 12/04/2008 | $1.84 | $2.44 |

QUESTIONS?  PLEASE CALL XXX-XXX-XXXX OR OUTSIDE U.S. AND CANADA CALL XXX-XXX-XXXX OR VISIT www.AIG2008Securitiessettlement.com

Page 43 of 48

| Sale Date | Closing Price per Share | Avg. Closing Price per Share |
|---|---|---|
| 12/05/2008 | $1.94 | $2.43 |
| 12/08/2008 | $1.93 | $2.42 |
| 12/09/2008 | $1.93 | $2.41 |
| 12/10/2008 | $1.75 | $2.40 |
| 12/11/2008 | $1.73 | $2.39 |
| 12/12/2008 | $1.80 | $2.38 |
| 12/15/2008 | $1.74 | $2.37 |

**Other Eligible Securities**

Based on the foregoing, and for purposes of this Settlement and Plan of Allocation only, Recognized Loss will be calculated as follows:

For each Eligible Security other than AIG common stock purchased during the Class Period, the Recognized Loss shall be ***the lesser of***: (a) the purchase price (capped by the offering prices as shown on Exhibit A) minus the sale price; (b) the purchase price (capped by the offering prices as shown on Exhibit A) minus the value of the security on October 9, 2008 (as shown on Exhibit A); or (c) the purchase price (capped by the offering prices as shown on Exhibit A) minus the value of the security as of September 5, 2014, as indicated in Exhibit A, in the event a Claimant has continued to hold the Eligible Security through that date.

 If you purchased an Eligible Security during the Class Period, other than AIG common stock, and held such Eligible Security until it matured, was redeemed or called by AIG at par, your Recognized Loss on the purchase of such Eligible Security will be zero.

If you continue to own such Eligible Securities, other than AIG common stock, your Recognized Loss on the purchase of that security will be zero, since such securities have regained their value compared to the offering prices.

### III.    ADDITIONAL PROVISIONS

Purchases or acquisitions and sales of AIG Securities shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date.  The receipt or grant by gift, inheritance or operation of law of AIG Securities shall not be deemed a purchase, acquisition or sale of such securities for the calculation of an authorized claimant's recognized loss for these securities, nor shall the receipt or grant be deemed an assignment of any claim relating to the purchase/acquisition of such AIG Securities, unless: (i) the donor or decedent purchased or otherwise acquired such AIG Securities during the class period; (ii) no proof of claim form was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such AIG Securities; and (iii) the assignment is specifically provided for in the instrument of gift or assignment.

To the extent a claimant had a market gain from his, her, or its overall transactions in AIG Securities during the relevant period, the value of the claim will be zero.  Such claimants will, in any event, be bound by the settlement.  To the extent that a claimant suffered an overall actual market loss on his, her, or its overall transactions in AIG Securities during the relevant period, but that actual market loss was less than the total recognized loss calculated above, then the claimant's Recognized Loss shall be limited to the amount of the actual market loss.

Each Authorized Claimant shall recover his, her, or its pro rata share of the Net Settlement Fund.  If the prorated share calculates to less than $10, it will be removed from the calculation and it will not be paid.

Distributions will be made to Authorized Claimants after all claims have been processed and after the Court has finally approved the Settlement. Following an initial distribution of the Net Settlement Fund, if Lead Counsel, in consultation with the Claims Administrator, determines that it is cost-effective to do so, the Claims Administrator will conduct a redistribution of any funds remaining in the Net Settlement Fund by reason of returned or uncashed checks or otherwise, to Authorized Claimants who have cashed their initial distribution checks and who would receive at least $10 on such redistribution based on their Recognized Losses, after payment from the Net Settlement Fund of any unpaid costs or fees incurred in administering the funds, including for such redistribution. Additional redistributions may occur thereafter to Authorized Claimants if Lead Counsel, in consultation with the Claims Administrator, determines that additional redistribution is cost-effective. At such time as it is determined that the redistribution of funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance of the Net Settlement Fund shall be contributed to a non-sectarian, not-for-profit charitable organization serving the public interest, designated by Lead Plaintiff and approved by the Court.

Each Claimant shall be deemed to have submitted to the jurisdiction of the United States District Court for the Southern District of New York with respect to his, her or its Proof of Claim form.

## SPECIAL NOTICE TO SECURITIES BROKERS AND OTHER NOMINEES

**25.    What if I bought AIG securities on someone else's behalf?**

If you purchased or otherwise acquired AIG securities during the Class Period for the beneficial interest of a person or organization other than yourself, the Court has directed that, WITHIN TEN (10) CALENDAR DAYS OF YOUR RECEIPT OF THIS NOTICE, you either:

(a) provide to the Claims Administrator the name and last known address of each person or organization for whom or which you purchased or otherwise acquired securities during the Class Period (preferably in an MS Excel, .CSV, or .TXT format), setting forth (i) title/registration, (ii) street address, and (iii) city/state/zip; (b) provide computer-generated mailing labels; or (c) request additional copies of this Notice and the Proof of Claim form, which will be provided to you free of charge, and within ten (10) calendar days of receipt of such copies send them by First-Class Mail, postage prepaid, directly to the beneficial owners of those AIG securities.

If you choose to follow alternative procedure (c), the Court has directed that, upon such mailing, you shall send a statement to the Claims Administrator confirming that the mailing was made as directed.  You are entitled to reimbursement from the Settlement Fund of your reasonable expenses actually incurred in connection with the foregoing, including reimbursement of postage expenses and the cost of ascertaining the names and addresses of beneficial owners. Those expenses will be paid after request and submission of appropriate supporting documentation.  All communications concerning the foregoing should be addressed to the Claims Administrator:

*AIG 2008 Securities Litigation*
Claims Administrator
Attention:  **[insert]**
**[insert name and address]**
Phone within the U.S. and Canada:  XXX-XXX-XXXX; Phone outside the U.S. and Canada: 1-XXX-XXX-XXXX
Fax:  1-XXX-XXX-XXXX
**[insert email address]**
www.**[insert** **claims administrator**.com

**PLEASE DO NOT CONTACT THE COURT FOR INFORMATION OR QUESTIONS ABOUT THE TERMS OF THE SETTLEMENT.  INSTEAD, PLEASE DIRECT ALL QUESTIONS TO LEAD COUNSEL AND/OR THE CLAIMS ADMINISTRATOR, AS DIRECTED IN PARAGRAPH 24 ABOVE.**

Dated: _____, 2014

BY ORDER OF THE COURT
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# Exhibit A

## Corporate Units

| Security Name (CUSIP No.) | Offering Price ($ per share, % of par) | Price on 10/9/2008 ($ per share, % of par)[1] | Status or Price on 9/5/2014 |
|---|---|---|---|
| 8.50% Corporate Units (CUSIP No. 026874115) | $75.000 | $8.49 | Fully Converted |

## Series A Junior Subordinated Debentures

| Security Name (CUSIP No.) | | | |
|---|---|---|---|
| 6.25% Series A-1 Junior Subordinated Debentures (CUSIP No. 026874BE6) | 99.52% | 27.40% | 112.88% |
| 5.75% Series A-2 Junior Subordinated Debentures (CUSIP No. 026874BF3) | 99.04% | 12.50% | 105.05% |
| 4.875% Series A-3 Junior Subordinated Debentures (CUSIP No. 026874BG1) | 99.80% | 14.98% | 105.55% |
| 6.45% Series A-4 Junior Subordinated Debentures (CUSIP No. 026874800) | $25.00 | $2.80 | Called |
| 7.70% Series A-5 Junior Subordinated Debentures (CUSIP No. 026874859) | $25.00 | $4.25 | Called |

## Series G and Series MP Medium Term Notes

| Security Name (CUSIP No.) | | | |
|---|---|---|---|
| 5.60% Medium-Term Notes, Series G, Due October 18, 2016 (CUSIP No. 02687QBC1) | 99.91% | 42.00% | 109.10% |
| Floating Rate Medium-Term Notes, Series MP, Matched Investment Program, Due October 18, 2011 (CUSIP No. 02687QBD9) | 100.00% | 57.75% | Matured |
| 5.375% Medium-Term Notes, Series MP, Matched Investment Program, Due October 18, 2011 (CUSIP No. 02687QBE7) | 99.97% | 54.12% | Matured |
| Floating Rate Medium-Term Notes, Series MP, Matched Investment Program, Due March 20, 2012 (CUSIP No. 02687QBK3) | 100.00% | 45.50% | Matured |
| 4.95% Medium-Term Notes, Series MP, Matched Investment Program, Due March 20, 2011 (CUSIP No. 02687QBL1) | 99.79% | 50.00% | Matured |
| 5.450% Medium-Term Notes, Series MP, Matched Investment Program, Due May 18, 2017 (CUSIP No. 02687QBW7) | 99.89% | 41.00% | 110.81% |
| 5.450% Medium-Term Notes, Series MP, Matched Investment Program, Due May 18, 2017 (CUSIP No. 02687QBW7) | 98.86% | 41.00% | 110.81% |
| 5.450% Medium-Term Notes, Series MP, Matched Investment Program, Due May 18, 2017 (CUSIP No. 02687QBW7) | 98.36% | 41.00% | 110.81% |
| 5.850% Medium-Term Notes, Series G, Due January 16, 2018 (CUSIP No. 02687QDG0) | 99.45% | 42.90% | 113.40% |

## Series AIG FP Securities

| | | | |
|---|---|---|---|
| Medium-Term Notes, Series AIG-FP, CMS Curve Accrual Notes, Due March 23, 2012 (CUSIP No. 02687QBJ6) | 100.00% | 34.50% | Matured |
| Medium-Term Notes, Series AIG-FP, CMS Curve Accrual Notes, Due April 18, 2022 (CUSIP No. 02687QBM9) | 100.00% | 29.88% | Called |
| Medium-Term Notes, Series AIG-FP, CMS Curve Accrual Notes, Due May 4, 2022 (CUSIP No. 02687QBN7) | 100.00% | 35.00% | Called |

## Exhibit A

### Series AIG FP Securities

| Security Name (CUSIP No.) | Offering Price ($ per share, % of par) | Price on 10/9/2008 ($ per share, % of par)[1] | Status or Price on 9/5/2014 |
|---|---|---|---|
| Medium-Term Notes, Series AIG-FP, 6.50% Callable Increasing Principal Notes, Due May 16, 2052 (CUSIP No. 02687QBS6) | 100.00% | | Called |
| Medium-Term Notes, Series AIG-FP, CMS Curve Accrual Notes, Due May 18, 2022 (CUSIP No. 02687QBU1) | 100.00% | 89.00% | Called |
| Medium-Term Notes, Series AIG-FP, CMS Curve Notes, Due May 31, 2022 (CUSIP No. 02687QBV9) | 100.00% | 92.50% | Called |
| Medium-Term Notes, Series AIG-FP, CMS Curve Notes, Due June 1, 2027 (CUSIP No. 02687QBY3) | 100.00% | 9.76% | Called |
| Medium-Term Notes, Series AIG-FP, CMS Curve Accrual Notes, Due June 20, 2017 (CUSIP No. 02687QBZ0) | 100.00% | | Called |
| Medium-Term Notes, Series AIG-FP, CMS Curve Notes, Due June 29, 2017 (CUSIP No. 02687QCB2) | 100.00% | 98.06% | Called |
| Medium-Term Notes, Series AIG-FP, CMS Curve Notes, Due June 27, 2022 (CUSIP No. 02687QCC0) | 100.00% | 28.00% | Called |
| Medium-Term Notes, Series AIG-FP, CMS Curve Notes, Due July 20, 2027 (CUSIP No. 02687QCD8) | 100.00% | 23.25% | Called |
| Medium-Term Notes, Series AIG-FP, CMS Curve Notes, Due August 20, 2027 (CUSIP No. 02687QCJ5) | 100.00% | 100.00% | Called |
| Medium-Term Notes, Series AIG-FP, Callable CMS Curve Notes, Due December 14, 2022 (CUSIP No. 02687QCP1) | 100.00% | | Called |
| Medium-Term Notes, Series AIG-FP, Callable CMT Inverse Floating Rate Notes, Due October 31, 2012 (CUSIP No. 02687QCS5) | 100.00% | 97.63% | Matured |
| Medium-Term Notes, Series AIG-FP, CMS Curve Notes, Due November 6, 2017 (CUSIP No. 02687QCU0) | 100.00% | 100.00% | Called |
| Medium-Term Notes, Series AIG-FP Floating Rate LIBOR Notes, Due November 27, 2047 (CUSIP No. 02687QDC9) | 100.00% | 89.50% | - |
| Medium-Term Notes, Series AIG-FP Floating Rate LIBOR Notes, Due November 27, 2047 (CUSIP No. 02687QDC9) | 100.00% | 89.50% | - |
| Medium-Term Notes, Series AIG-FP, Callable CMS Curve Notes, Due December 31, 2027 (CUSIP No. 02687QDH8) | 100.00% | 96.00% | Called |
| Medium-Term Notes, Series AIG-FP, CMS Callable Leveraged CMS Spread Notes, Due February 22, 2023 (CUSIP No. 02687QDM7) | 100.00% | 100.00% | Called |
| Medium-Term Notes, Series AIG-FP, CMS Curve Notes, Due February 28, 2028 (CUSIP No. 02687QDN5) | 100.00% | 85.00% | Called |
| Medium-Term Notes, Series AIG-FP, CMS Curve Notes, Due February 28, 2028 (CUSIP No. 02687QDN5) | 100.00% | 85.00% | |
| Medium-Term Notes, Series AIG-FP, Floating Rate LIBOR Notes, Due November 27, 2046 (CUSIP No. 02687QBF4) | 100.00% | | |
| Medium-Term Notes, Series AIG-FP, Floating Rate LIBOR Notes, Due December 5, 2046 (CUSIP No. 02687QBG2) | 100.00% | 98.50% | |
| Medium-Term Notes, Series AIG-FP, Floating Rate LIBOR Notes, Due December 5, 2046 (CUSIP No. 02687QBG2) | 100.00% | 98.50% | |

# Exhibit A

## Series AIG FP Securities

| Security Name (CUSIP No.) | Offering Price ($ per share, % of par) | Price on 10/9/2008 ($ per share, % of par)[1] | Status or Price on 9/5/2014 |
|---|---|---|---|
| Medium-Term Notes, Series AIG-FP, CMS Spread Range Notes, Due April 27, 2022 (CUSIP No. 02687QBP2) | 100.00% | | Called |
| Medium-Term Notes, Series AIG-FP, CMS Spread Range Notes, Due April 27, 2022 (CUSIP No. 02687QBQ0) | 100.00% | | Called |
| Medium-Term Notes, Series AIG-FP, Floating Rate CMT Notes, Due May 8, 2008 (CUSIP 02687QBR8) | 100.00% | | Matured |
| Medium-Term Notes, Series AIG-FP, LIBOR Range Notes, Due May 23, 2022 (CUSIP No. 02687QBT4) | 100.00% | 98.80% | Called |
| Medium-Term Notes, Series AIG-FP, LIBOR Range Notes, Due June 1, 2047 (CUSIP No. 02687QBX5) | 100.00% | 100.00% | |
| Medium-Term Notes, Series AIG-FP, CMS Inverse Floater Notes, Due June 14, 2012 (CUSIP No. 02687QCA4) | 100.00% | | Matured |
| Medium-Term Notes, Series AIG-FP, LIBOR Range Notes, Due July 27, 2017 (CUSIP No. 02687QCE6) | 98.50% | | Called |
| Medium-Term Notes, Series AIG-FP, LIBOR Range Notes, Due August 1, 2022 (CUSIP No. 02687QCF3) | 100.00% | 97.00% | Called |
| Medium-Term Notes, Series AIG-FP, Floating Rate CMT Notes, Due August 7, 2008 (CUSIP No. 02687QCK2) | 100.00% | | Matured |
| Medium-Term Notes, Series AIG-FP, LIBOR Range Notes, Due September 28, 2022 (CUSIP No. 02687QCL0) | 98.50% | 97.77% | Called |
| Medium-Term Notes, Series AIG-FP, LIBOR Range Notes, Due September 28, 2022 (CUSIP No. 02687QCM8) | 100.00% | 93.00% | Called |
| Medium-Term Notes, Series AIG-FP, CMS Curve Notes, Due October 10, 2017 (CUSIP No. 02687QCN6) | 100.00% | 100.00% | Called |
| Medium-Term Notes, Series AIG-FP, CMS Range Notes, Due October 26, 2017 (CUSIP No. 02687QCQ9) | 98.50% | 78.14% | Called |
| Medium-Term Notes, Series AIG-FP, CMS Curve Notes, Due October 15, 2022 (CUSIP No. 02687QCT3) | 99.80% | | Called |
| Medium-Term Notes, Series AIG-FP, LIBOR Range Notes, Due October 24, 2022 (CUSIP No. 02687QCV8) | 100.00% | 100.00% | Called |
| Medium-Term Notes, Series AIG-FP, LIBOR Range Notes, Due October 24, 2022 (CUSIP No. 02687QCY2) | 100.00% | | Called |
| Medium-Term Notes, Series AIG-FP, Municipal Index Linked Range Accrual Notes, Due January 8, 2009 (CUSIP No. 02687QDF2) | 100.00% | | Matured |
| Medium-Term Notes, Series AIG-FP, CMS Spread Range Notes, Due February 8, 2023 (CUSIP No. 02687QDJ4) | 100.00% | 94.50% | Called |
| Medium-Term Notes, Series AIG-FP, LIBOR Range Notes, Due January 9, 2023 (CUSIP No. 02687QDK1) | 100.00% | 93.00% | Called |
| Medium-Term Notes, Series AIG-FP, Principal Protected Notes Linked to the Performance of a Basket of Asian Currencies, Due June 8, 2009 (CUSIP No. 026874834) | 100.00% | | Matured |
| Medium-Term Notes, Series AIG-FP, Principal Protected Notes Linked to the Performance of a Basket of Asian Currencies, Due February 4, 2009 (CUSIP No. 026874842) | 100.00% | | Matured |
| Medium-Term Notes, Series AIG-FP, Principal Protected Currency Linked Notes, Due March 8, 2010 (CUSIP No. 026874867) | 100.00% | | Matured |

## Exhibit A

### Series AIG FP Securities

| Security Name (CUSIP No.) | Offering Price ($ per share, % of par) | Price on 10/9/2008 ($ per share, % of par)[1] | Status or Price on 9/5/2014 |
|---|---|---|---|
| Medium-Term Notes, Series AIG-FP, Principal Protected Notes Linked to a Basket of Latin American Currencies Due, May 7, 2009 (CUSIP No. 026874875) | 10.00% | | Matured |
| Medium-Term Notes, Series AIG-FP, Nikkei 225® Index Market Index Target-Term Securities®, Due January 5, 2011 (CUSIP No. 026874883) | $10.00 | $2.80 | Matured |
| Medium-Term Notes, Series AIG-FP, US Dollar Zero Coupon Callable Notes, Due January 18, 2047 (CUSIP No. 02687QBH0) | 7.39% | | Called |
| Medium-Term Notes, Series AIG-FP, US Dollar Zero Coupon Accreting Notes, Due July 2, 2019 (CUSIP No. 02687QCG1) | 50.72% | | 86.77% |
| Medium-Term Notes, Series AIG-FP, US Dollar Zero Coupon Accreting Notes, Due June 1, 2018 (CUSIP No. 02687QCH9) | 61.70% | | |
| Medium-Term Notes, Series AIG-FP, US Dollar Zero Coupon Accreting Notes, Due October 15, 2037 (CUSIP No. 02687QCR7) | 11.14% | | |
| Medium-Term Notes, Series AIG-FP, US Dollar Zero Coupon Notes, Due October 11, 2011 (CUSIP No. 02687QCW6) | 82.59% | | Matured |
| Medium-Term Notes, Series AIG-FP, Municipal Index Linked Range Accrual Notes, Due November 1, 2022 (CUSIP No. 02687QCX4) | 100.00% | | Called |
| Medium-Term Notes, Series AIG-FP, Step Up Callable Notes, Due November 16, 2022 (CUSIP No. 02687QCZ9) | 100.00% | 40.00% | Called |
| Medium-Term Notes, Series AIG-FP, Municipal Index Linked Range Accrual Notes, Due November 20, 2017 (CUSIP No. 02687QDB1) | 100.00% | | |
| Medium-Term Notes, Series AIG-FP, Principal Protected WTI Crude Oil Linked Notes, Due January 8, 2013 (CUSIP No. 02687QDD7) | 100.00% | 87.80% | Matured |
| Medium-Term Notes, Series AIG-FP, Principal-Protected Notes Linked to the USD/EUR Exchange Rate, Due July 8, 2009 (CUSIP No. 02687QDE5) | 100.00% | 100.00% | Matured |
| Medium-Term Notes, Series AIG-FP, Principal Protected Notes Linked to the Performance of a Basket of Currencies, Due February 4, 2010 (CUSIP No. 02687QDL9) | 100.00% | 50.00% | Matured |

Where price was not available on 10/9/2008 the latest price is reported.