UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE AMERICAN INTERNATIONAL GROUP, INC. 2008 SECURITIES LITIGATION | Master File No.: 08-CV-4772-LTS-DCF |
| This Document Relates To:  All Actions | |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR (1) FINAL DISTRIBUTION OF NET SETTLEMENT FUND, (2) APPROVAL OF PAYMENT OF THE CLAIMS ADMINSTRATOR'S EXPENSES, AND (3) APPROVAL OF LEAD COUNSEL'S POST SEPTEMBER 30, 2016 EXPENSES**

**BARRACK, RODOS & BACINE**
Jeffrey W. Golan (*pro hac vice*)
Robert A. Hoffman (*pro hac vice*)
Lisa M. Port
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
Tel.: (215) 963-0600

    and

A. Arnold Gershon (AG – 3809)
Michael A. Toomey (MT – 6688)
Eleven Times Square
640 Eighth Avenue, 10th Floor
New York, New York 10036
Tel.: (212) 688-0782

**THE MILLER LAW FIRM, P.C.**
E. Powell Miller (*pro hac vice*)
Marc L. Newman (*pro hac vice*)
950 West University Drive, Suite 300
Rochester, MI  48307
Tel.: (248) 841-2200

*Attorneys for Lead Plaintiff, State of Michigan Retirement Systems, and Lead Counsel for the Settlement Class*

# **TABLE OF CONTENTS**

I. Preliminary Statement .................................................................................................... 1

II. The Claims Administrative Process Following the Initial Distribution Order, Including the Acceptance and Rejection of Certain Claims and Amended Claim Information Received by Gilardi After October 4, 2016. ........................................................................ 3

III. The Court Should Approve the Claims Administrator's Determinations Regarding the Late-Cured Claims and Authorize a Supplemental Distribution from the Remainder of the Net Settlement Fund to Such Authorized Claimants. ....................................................... 5

IV. The Court Should Approve the Claims Administrator's Determinations to Reject All Other Claim Forms Received after the Cut-Off Dates. .......................................................... 7

V. The Court Should Authorize Payment of the Claims Administrator's Fees and Expenses and Lead Counsel's Additional Expenses. ............................................................. 8

VI. The Court Should Provide for a *Cy Pres* Recipient For Any Amount Left in the Net Settlement Fund When It Is Not Feasible to Make Further Distributions to Authorized Class Member Claimants. ........................................................................................................ 9

VII. Conclusion. ........................................................................................................................ 10

I.     **Preliminary Statement**

On September 12, 2014, the Settling Plaintiffs, on behalf of themselves and the proposed Settlement Class, and the Settling Defendants entered into a Stipulation and Agreement of Settlement in the above-captioned Action (the "Settlement Agreement") (Dkt. No. 445), pursuant to which the Settling Plaintiffs agreed to settle all claims against the Defendants that are based upon, arise out of, or relate to those asserted in this Action in exchange for Defendants' payment of $970.5 million into a Settlement Fund to be established for the benefit of the Settlement Class.

By Order dated October 7, 2014 (the "Preliminary Approval Order") (Dkt. No. 463), the Court preliminarily approved the parties' Settlement Agreement and appointed Gilardi & Co. LLC ("Gilardi") as the Claims Administrator to supervise and administer the Court-approved Notice of the Settlement to the Settlement Class Members, and to process the Class Members' Proofs of Claim. Gilardi has undertaken to perform these tasks.

Following the dissemination of the Notice of the Settlement to the Settlement Class Members and a public Settlement Hearing, the Court, on March 20, 2015, entered its Orders approving Lead Plaintiff's proposed Plan of Allocation (Dkt. No. 516), granting Lead Counsel's Fee and Expense Application (Dkt. No. 517), and granting final approval of the Settlement as fair, reasonable, and adequate, and in the best interests of Lead Plaintiff and the Settlement Class Members (the "Final Approval Order") (Dkt. No. 518). The Court retained broad jurisdiction over the implementation of the Settlement, including but not limited to any distributions of the Settlement Fund, the disposition of the Settlement Fund, and the hearing and determination of any applications for reimbursement of litigation expenses that will be paid out of the Settlement Fund.

On the Motion of Lead Plaintiff, the Court entered an Order on January 30, 2017 (the "Initial Distribution Order") (Dkt. No. 537) which (1) approved certain administrative

determinations by Gilardi accepting and denying Claims, (2) provided that any Claim Form postmarked after October 4, 2016 would be barred as untimely;[1] (3) directed the initial distribution of the Net Settlement Fund to the Settlement Class Members who Gilardi had determined were eligible to share in such; (4) approved the plan of Lead Plaintiff and Gilardi to redistribute any funds remaining in the Net Settlement Fund following the initial distributions to eligible Claimants; (5) authorized the destruction of paper and electronic copies of Claim records at prescribed times following the final distribution of the Net Settlement Fund; (6) authorized payment out of the Net Settlement Fund of Gilardi's then-outstanding fees and expenses, inclusive of fees and expenses Gilardi expected to incur through the initial distribution of the Net Settlement Fund; (7) authorized payment out of the Net Settlement Fund of expenses incurred by Lead Counsel since submission of their initial Fee and Expense Application; and (7) directed Lead Counsel and Gilardi to execute the Initial Distribution Order.

Lead Counsel and Gilardi did in fact execute that Order.

As set forth herein, Lead Plaintiff now requests that the Court enter an Order authorizing a final distribution of the Settlement Fund. In particular, Lead Plaintiff requests that the Court enter an Order:

1) Approving the administrative actions taken by Claims Administrator Gilardi in accepting and rejecting those Claims submitted in connection with the Settlement of the above-captioned Action which were timely submitted in connection with the Settlement but originally deficient and re-evaluated after the cut-off date;

---

[1] The Initial Distribution Order also provided that "any response to a Deficiency . . . Notice received after October 13, 2016" was likewise barred. Notwithstanding this language, Lead Plaintiff and Lead Counsel, supported by the Claims Administrator, nevertheless believe that the payment of previously deficient claims that have been cured is appropriate because the October 13, 2016 cut-off did not provide the Claims Administrator with sufficient time to properly consider the responses to Deficiency Notices for otherwise timely Claims. The October 13, 2016 deadline to respond to a Deficiency Notice should have only related to the availability of an initial distribution with respect to such claim.

2

2) Approving the administrative actions taken by Claims Administrator Gilardi in rejecting those Claims Forms first submitted in connection with the Settlement of the above-captioned Action which were postmarked after the October 4, 2016 cut-off date set forth in the Initial Distribution Order;

3) Directing payment out of the Net Settlement Fund to Gilardi of $181,977.11 for the fees incurred in connection with further administration of the Settlement and reserving from the Net Settlement Fund $299,500.00 for fees and expenses expected to be incurred through the supplemental distribution of the Net Settlement Fund;

4) Directing the supplemental distributions of the Net Settlement Fund to Authorized Claimants whose Claims have been approved for payment;

5) Approving additional expenses to Lead Counsel in the amount of $606.45; and

6) Unless the Court believes that another entity would be a more appropriate recipient, approving Lead Plaintiff's selection of the Council of Institutional Investors as a *cy pres* recipient for any remainder amount in the Net Settlement Fund that would not be feasible to distribute to Authorized Claimants within the Class.

A Proposed Order granting these requests shall be submitted to the Orders and Judgments Clerk in accordance with Your Honor's Individual Practices and the Court's Electronic Case Filing Rules and Instructions.

**II.    The Claims Administrative Process Following the Initial Distribution Order, Including the Acceptance and Rejection of Certain Claims and Amended Claim Information Received by Gilardi After October 4, 2016.**

As set forth in the Declaration of Mishka Ferguson in Support of Motion for Supplemental Distribution of the Net Settlement Fund, dated May 24, 2018 (the "Ferguson Declaration"), following the entrance of the Initial Distribution Order by the Court, Gilardi began mailing initial distribution checks to eligible claimants as set forth in that Order. (Ferguson Decl. ¶ 3).

There are two categories of Claims which Gilardi has received and administered between the entrance of the Initial Distribution Order and the submission of this Motion, and which are addressed herein. The first category includes those Claims which a claimant timely submitted in connection with the Settlement, but were rejected for deficiencies including, but not limited to,

incompleteness and improper documentation.  (*Id.* ¶ 4.)  For fifty-nine of the Claims in this category, Gilardi received amended Claim information sufficient to fully rectify any and all defaults in the time between the October 4, 2016 cut-off date and the date of this Motion.  (*Id.* ¶ 5.)  Gilardi recommends that these fifty-nine, which were originally timely but cured only after the cut-off date, and this category only, be approved to receive a full *pro rata* distribution from the Net Settlement Fund (the "Late-Cured Claims"). (*Id.*)

Gilardi has approved the Late-Cured Claims after subjecting them to the same procedures and rigor as was applied to all Claims which were resubmitted by Claimants in an attempt to cure defects, and would distribute to these Claimants their *pro rata* share of the Settlement Fund in the interest of equity.  (*Id.* ¶¶ 5–6.)  The total Recognized Claims for Late-Cured Claims that are being recommended for acceptance, as calculated pursuant to the Court-approved Plan of Allocation, is $144,161,311.72, and a list of those fifty-nine Claims is attached to the Ferguson Declaration as Exhibit A.  (*Id.* ¶ 5.)

The second category of Claims addressed herein are those Claims which were originally submitted and postmarked after the October 4, 2016 cut-off date the Court considered and approved in the Initial Distribution Order.  (*Id.* ¶ 7.)  After processing the relevant Claim Forms and entering them into the system of record, Gilardi has rejected these claims as untimely per the Initial Distribution Order.  (*Id.*)  Each person who submitted a Claim which was so-rejected received a notice of rejection advising that Gilardi was rejecting the Claim as untimely, and that the Claim was therefore not eligible to receive a distribution from the Net Settlement Fund ("Rejection Notice").  (*Id.*)  A total of 5,046 untimely Claim Forms were so-rejected.  (*Id.*)  Gilardi has not received any dispute of the Rejection Notices issued to the time-barred Claims.  (*Id.*)

### III. The Court Should Approve the Claims Administrator's Determinations Regarding the Late-Cured Claims and Authorize a Supplemental Distribution from the Remainder of the Net Settlement Fund to Such Authorized Claimants.

Fifty-nine timely filed Claim Forms that were sent a Deficiency Notice due to curable defects have now been fully cured and approved by Gilardi. Although the Initial Distribution Order, which was drafted by Lead Counsel and so-ordered by the Court, indicates that a response to a Deficiency Notice must have been received no later than October 13, 2016 or such claims would be time-barred, Lead Plaintiff, Lead Counsel and the Claims Administrator recommend modifying the Initial Distribution Order to allow for payment of these fifty-nine timely filed Claims. Lead Counsel, Lead Plaintiff, and Gilardi believe that it is in the interest of both justice and equity to accept these fifty-nine timely and now cured Claims, having subjected them to the same rigorous processes as all accepted claims. Accordingly, it is respectfully requested by Lead Plaintiff and Lead Counsel, as supported by Gilardi, that this Court approve and confirm their recommendation that these fifty-nine Claims be accepted and are entitled to a *pro rata* distribution from the Net Settlement Fund.

Before the Net Settlement Fund is finally distributed, this Court retains its broad and inherent equitable powers to include or not include claims that were submitted late. *Zients v. La Morte*, 459 F.2d 628, 630–31 (2d Cir. 1972); *see In re Cendant Corp. Prides Litig*, 233 F.3d 188, 194 (3d Cir. 2000) (hereinafter "*Cendant I*") (where the District Court retained jurisdiction over administration of the settlement, the settlement allowed claimants time to cure defects with their claims, and the court was permitted to review those late-cured claims, the District Court was within its discretion to accept these late-cured claims after the deadline originally supplied by the Court, even where allowing such claims would increase the defendant's settlement liability). "Until the fund created by the settlement is actually distributed, the court retains its traditional equity powers . . . to protect unnamed, but interested persons. A Court may assert this power to

5

allow late-filed proofs of claim and late-cured proofs of claim." *Cendant I*, 233 F.3d at 195 (quoting *In re Cendant Corp. Prides Litig.*, 189 F.R.D. 321, 323 (D.N.J. 1999); citing *Zients*, 459 F.2d at 630; *In re Agent Orange Prod. Liability Litig.*, 689 F. Supp. 1250, 1263 (E.D.N.Y. 1988)) (alteration in original).

As the Court's approval of any Late-Cured Claims would essentially be a matter of extending a court-ordered deadline, the proper standard for determining whether a late-filed claim should be allowed is excusable neglect, as stated in Federal Rule of Civil Procedure 6(a)(1)(B). *See Cendant I*, 233 F.3d at 195; *In re Crazy Eddie Secs. Litig.*, 906 F. Supp. 840, 844 (E.D.N.Y. 1995). Excusable neglect is a "somewhat 'elastic concept,'" which encompasses not only actions beyond the late-curing party's control, but also excusable "inadvertence or negligent omission[s]." *In re Crazy Eddie*, 906 F. Supp. at 844 (quoting *Pioneer Inv. Servs. v. Brunswick Assocs.*, 507 U.S. 380, 392 (1993)). It is within a court's equitable discretion to grant or deny a party's application to extend a court-ordered deadline to submit amendments to claims with deficient but curable defects based on excusable neglect, determinable only by reference to the totality of the circumstances. *In re Crazy Eddie*, 906 F. Supp. at 844. Factors which must be considered include "the danger of prejudice to [other parties], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* (quoting *Pioneer*, 507 U.S. at 395). Courts have accepted claims which were cured months after the deadline to do so where the defendant was not prejudiced by the delay and the court's administration of the settlement was not substantially hindered. *In re Cendant Corp. Prides Litig.*, 311 F. 3d 298, 305 (3d Cir. 2002) (hereinafter "*Cendant II*").

Lead Plaintiff and Lead Counsel, supported by Gilardi, believe that the equities are best served by accepting the Late-Cured Claims and awarding these Class Members their *pro rata* shares of the Net Settlement Fund. No prejudice would redound to Defendants here "as their exposure is both capped and fixed. Defendants have been released from liability and cannot be asked to fund additional consideration." *In re Bear Sterns Cos., Inc. Secs., Derivative, and ERISA Litig.*, 297 F.R.D. 90, 96 (S.D.N.Y. 2013) (citing *Blank v. Jacobs*, 03-CV-2111 (JS)(WDW), 2013 WL 1310503, at *3 (E.D.N.Y. Mar. 27, 2013)). Nor would the Class Members be materially prejudiced by allowing these Class Members to receive their distribution of the Net Settlement Fund. Nearly all timely claimants already received their *pro rata* portion of the Net Settlement Fund in the first distribution, "and there is ample money left over to cover the claims of the remaining class members even if [the Late-Cured Claims are] included in the second round of payments." *Id.* There is no reason to believe that accepting the fifty-nine Late-Cured Claims will substantially impact the judicial proceedings, nor is there any evidence that any of the Late-Cured Claims were submitted in anything but good faith. The Court should therefore find that the equities are served by approving the determination that the fifty-nine Late-Cured Claims be accepted and are eligible for a *pro rata* distribution from the Net Settlement Fund.

IV. **The Court Should Approve the Claims Administrator's Determinations to Reject All Other Claim Forms Received after the Cut-Off Dates.**

Where, as here, a settlement is constituted as a finite pool of assets from which class members have received or will receive a proportional distribution, values of fair and efficient administration of justice require that claims submitted after a date-certain be barred as untimely. To those ends, the Court, in the Initial Distribution Order, barred "as untimely any Claim against the Net Settlement Fund received after October 4, 2016." To date, 5,046 such untimely Claim

7

Forms have been submitted. (Ferguson Decl. ¶ 7.) Each of these claims was rejected as untimely, and each putative Settlement Class Member who submitted an untimely Claim Form was sent a Rejection Notice advising them of the rejection of their Claim. (*Id.*) Notably, no person who received a Rejection Notice on the basis of untimeliness has disputed the rejection with Gilardi, a sample of which is attached to the Ferguson Declaration as Exhibit B. (*Id.*) Accordingly, it is respectfully requested by Lead Plaintiff and Lead Counsel, supported by Gilardi, that this Court approve and confirm their recommendation that these 5,046 Claims are time-barred and not entitled to any distribution from the Net Settlement Fund.

### V.    The Court Should Authorize Payment of the Claims Administrator's Fees and Expenses and Lead Counsel's Additional Expenses.

As set forth in the Ferguson Declaration, Gilardi was retained by Lead Counsel and agreed to serve as the Claims Administrator in exchange for payment of its fees and expenses. (Ferguson Decl. ¶ 8). Per the Initial Distribution Order, Gilardi received full payment of its invoice for $3,473,680.20, which represented the per-claim administration fees and expenses incurred in connection with the administration and initial distribution of the Net Settlement Fund. (*Id.* ¶ 9; *see* Initial Distribution Order ¶ 6.) An invoice for such fees and expenses is attached to the Ferguson Declaration as Exhibit C.

Since the completion of the Initial Distribution, Gilardi has incurred a total of $181,977.11 in additional fees and expenses in connection with the review and processing of late amendments and late claims. (Ferguson Decl. ¶ 10.) Gilardi expects that it will incur approximately $292,000 in additional fees and expenses through the supplemental distribution of the Net Settlement Fund, as well as approximately $7,500 in future tax preparation and compliance fees and expense, for a total of $299,500 in anticipated fees and expenses. (*Id.* at ¶ 11).

Gilardi respectfully requests that the Court approve full payment of Gilardi's outstanding invoice of $181,977.11.  Gilardi respectfully requests that the Court further reserve $299,500 from the Net Settlement Fund in order to pay further invoices for fees and expenses as such are actually incurred at the time of the next distribution.

Lead Counsel further respectfully requests that the Court approval payment of the expenses that Barrack, Rodos & Bacine ("BR&B") has incurred since the cut-off date in the motion seeking approval of the initial distribution of the Net Settlement Fund.  As shown in the chart attached hereto as Exhibit 1, BR&B's expenses come to $606.45 from that time to the present, for which BR&B respectfully seeks reimbursement from the Net Settlement Fund.  The expenses were necessarily incurred to further BR&B's continuing work in overseeing the claims administration and distribution process.

> **VI.   The Court Should Provide for a *Cy Pres* Recipient For Any Amount Left in the Net Settlement Fund When It Is Not Feasible to Make Further Distributions to Authorized Class Member Claimants.**

Finally, to the extent that after subsequent distributions, as sought for approval in this motion, there is a remainder amount in the Net Settlement Fund that would not be feasible to distribute to Authorized Claimants within the Class, Lead Plaintiff respectfully requests that the Court provide in its Order for a *cy pres* recipient to be granted such a *de minimus* amount.  For this purpose, Lead Plaintiff respectfully suggests that the Council of Institutional Investors ("CII") would serve as a worthy recipient for such a *cy pres* award, unless this Court believes that another entity would be a more appropriate recipient for any such remainder amount that cannot feasibly and practicably be distributed to Class Member Claimants.

In the context of a class action settlement, the *cy pres* doctrine is used to put undistributed funds "to its next best compensation use." *In re Holocaust Victim Assets Litig.*, 311 F. Supp. 2d 407, 416 (quoting Newberg on Class Actions, § 10.17 (4th Ed.)).  "Federal courts have

frequently approved [the *cy pres*] remedy in the settlement of class actions where the . . . distribution of damages [would be] costly." *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990).  A *cy pres* designation is appropriate when two elements are met.  "First, *cy pres* designations should be made only when it is 'not feasible to make further distributions to class members.'" *In re Citigroup Inc. Secs. Litig.*, 199 F. Supp. 3d 845, 848 (S.D.N.Y. 2016) (quoting *In re BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060, 1064 (8th Cir. 2015)).  "Second, the *cy pres* designee must have some relationship to the original class."  *In re Citigroup*, 199 F. Supp. 3d at 848 (citing *In re Lupron Mktg. & Sales Practices Litig.*, 677 F.3d 21, 33 (1st Cir. 2012)).  Here, Lead Plaintiff is requesting that the *cy pres* designee receive the remainder funds only when the Net Settlement Fund is so depleted that the administrative costs makes any further *pro rata* distribution for more than 350,000 approved claims so costly as to be impracticable.  Lead Plaintiff's proposed designee, CII, is a non-profit, non-partisan association of pension funds, other employee benefit funds, endowments and foundations, that seeks to improve corporate governance and foster timely and accurate corporate disclosures.  These goals are related to the allegations that underlay the claims in this case, and many of the larger Claimants in this case are also members of CII.  Accordingly, unless the Court believes that another entity would be a more appropriate recipient for the anticipated *de minimum* payment from the remainder of the Net Settlement Fund, Lead Plaintiff respectfully requests that the Court approve CII as the *cy pres* recipient.

### VII. Conclusion.

For the reasons set forth herein, Lead Plaintiff respectfully requests that the Court enter an Order:

> 7) Approving the administrative actions taken by Claims Administrator Gilardi in accepting and rejecting those Claims submitted in connection with the Settlement of

the above-captioned Action which were timely submitted in connection with the Settlement but originally deficient and re-evaluated after the cut-off date;

8) Approving the administrative actions taken by Claims Administrator Gilardi in rejecting those Claims Forms first submitted in connection with the Settlement of the above-captioned Action which were postmarked after the October 4, 2016 cut-off date set forth in the Initial Distribution Order;

9) Directing payment out of the Net Settlement Fund to Gilardi of $181,977.11 for the fees incurred in connection with further administration of the Settlement and reserving from the Net Settlement Fund $299,500.00 for fees and expenses expected to be incurred through the supplemental distribution of the Net Settlement Fund;

10) Directing the supplemental distributions of the Net Settlement Fund to Authorized Claimants whose Claims have been approved for payment;

11) Approving additional expenses to Lead Counsel in the amount of $606.45; and

12) Approving Lead Plaintiff's selection of CII as a *cy pres* recipient for any remainder amount in the Net Settlement Fund that would not be feasible to distribute to Authorized Claimants within the Class.

A Proposed Order granting these requests shall be submitted to the Orders and Judgments Clerk in accordance with Your Honor's Individual Practices and the Court's Electronic Case Filing Rules and Instructions.

Dated:  June 1, 2018                                  Respectfully submitted,

**BARRACK, RODOS & BACINE**                           **THE MILLER LAW FIRM, P.C.**

*/s/ Jeffrey W. Golan*                                */s/ E. Powell Miller*
Jeffrey W. Golan (*pro hac vice*)                     E. Powell Miller (*pro hac vice*)
Robert A. Hoffman (*pro hac vice*)                    Marc L. Newman (*pro hac vice*)
Lisa M. Port                                          950 West University Drive, Suite 300
Julie B. Palley                                       Rochester, MI  48307
3300 Two Commerce Square                              Tel.: (248) 841-2200
2001 Market Street
Philadelphia, PA  19103
Tel.: (215) 963-0600

    and

A. Arnold Gershon (AG – 3809)
Michael A. Toomey (MT – 6688)

11

Eleven Times Square
640 Eighth Avenue, 10th Floor
New York, New York 10036
Tel.: (212) 688-0782

*Attorneys for Lead Plaintiff, State of Michigan Retirement Systems,
and Lead Counsel for the Settlement Class*